## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING PAYMENT OF CERTAIN PREPETITION EMPLOYEE WAGES AND BENEFITS, AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion"):[2]

### Relief Requested

1. The Debtors seek entry of an interim order (the "Interim Order") and a final order (the "Final Order" and, together with the Interim Order, the "Proposed Orders"), substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) authorizing the Debtors to (i) pay certain prepetition wages, salaries, other compensation, and reimbursable expenses, and (ii) continue employee benefits programs in the ordinary course of their business, including payment of certain prepetition obligations related thereto, each subject to the caps and limits set forth herein, and (b) granting related relief. In addition, the Debtors request that the Court (as defined below) schedule a final hearing to consider approval of this Motion on a final basis.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to these chapter 11 cases and supporting this Motion, is set forth in the *Declaration of Gareth T. Joyce in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference. Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the First Day Declaration.

**Jurisdiction and Venue**

2.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "Amended Standing Order"). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.    Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to a final order with respect to this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.    Venue of these chapter 11 cases and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.    The bases for the relief requested herein are sections 105(a), 363(b), 363(c), 507, 1107, and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

**Background**

6.    On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have contemporaneously filed a Motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to

Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

### The Debtors' Compensation and Benefits Programs

**I.      The Debtors' Workforce**

7.      As of the Petition Date, the Debtors employ approximately 942 employees (the "Employees").  Approximately 937 of the Debtors' Employees are full-time Employees, and 5 work on a part-time basis or as interns.  An estimated 525 of the Debtors' Employees are salaried, and 417 earn wages on an hourly basis.

8.      Approximately 77 Employees (the "Represented Employees") are employed under that certain Collective Bargaining Agreement (the "CBA") between Debtor Proterra Inc and United Steel Paper & Forestry, Rubber, Manufacturing, Energy, Allied & Industrial Service Workers International Union AFL-CIO, CLC (the "Union").  Debtor Proterra Operating Company, Inc. and the Union are also party to that certain Effects Bargaining Agreement (the "EBA").

9.      The Debtors supplement their workforce by retaining from time to time individuals with specialized expertise as independent contractors (the "Independent Contractors"), who primarily assist the Debtors' finance, human resources, information technology, accounting, engineering, and supply chain departments.  The Debtors also retain certain supplemental workers (the "Staffing Agency Workers"), whose services are procured indirectly through certain third-party staffing agencies (collectively, the "Staffing Agencies").[3]  The Staffing Agency Workers primarily assist the Debtors with manufacturing and production assembly work.

---

[3]      The Staffing Agencies include HTI, Zing, Top Tempo, Aerotek, and Archway.  From time to time, the Debtors will hire individuals that had performed work for the Debtors through the Staffing Agencies on a full-time basis.

10.     As of the Petition Date, approximately six individuals based in foreign jurisdictions perform work for the Debtors under the Debtors' agreement with Globalization Partners (the "Foreign Workers," and together with the Independent Contractors and the Staffing Agency Workers, the "Supplemental Workers"). The Foreign Workers primarily assist the Debtors with technical and engineering guidance and support to foreign customers related to launches of new electric vehicles. The total number of Supplemental Workers that perform work for the Debtors varies from time to time.

11.     The Employees and the Supplemental Workers perform a variety of critical functions for the Debtors, and their knowledge, skills, and understanding of the Debtors' infrastructure, business operations, and customer and vendor relations is essential to the success of these chapter 11 cases. Without the continued service and dedication of the Employees and the Supplemental Workers, it will be difficult, if not impossible, to operate the Debtors' business without an unexpected or inopportune interruption, or to prosecute these chapter 11 cases in a manner that will maximize the value of the Debtors' estates. Thus, to successfully accomplish the foregoing, to minimize the personal hardship that the Employees and the Supplemental Workers will suffer if certain prepetition employee-related obligations are not paid when due or as otherwise expected, and to maintain employee morale and a focused workforce during this critical time, the Debtors believe that it is necessary and in the best interests of their estates and all stakeholders to seek the relief requested herein.

## II.     The Compensation and Benefits Programs

12.     To minimize the personal hardship the Employees and the Supplemental Workers could suffer if certain prepetition employee-related obligations are not paid when due or as expected, and to maintain stability in the Debtors' workforce during the administration of these chapter 11 cases, the Debtors seek the authority to: (a) pay and honor certain prepetition claims

relating to, among other things, wages, fees, salaries, and other compensation, payroll services, federal and state withholding taxes and other amounts withheld (including garnishments, Employees' share of insurance premiums, and taxes), reimbursable expenses, health insurance, workers' compensation benefits, life insurance, short- and long-term disability coverage, non-insider severance, ordinary course non-insider bonus programs, retiree benefits and retirement and savings plans, and certain other benefits that the Debtors have historically provided in the ordinary course to their Employees and Supplemental Workers, all as more fully described herein (collectively, the "Compensation and Benefits Programs"); (b) pay all costs incidental to the Compensation and Benefits Programs; (c) continue the Compensation and Benefits Programs in the ordinary course on a postpetition basis; and (d) honor all postpetition obligations related thereto.

13.    The Debtors estimate that no more than $7,042,004 in obligations (the "Interim Amount") related to the Compensation and Benefits Programs will become due and owing on account of prepetition obligations between the Petition Date and the date on which a hearing is scheduled to consider approval of this Motion on a final basis (the "Interim Period").  By this Motion, the Debtors seek authority to pay the Interim Amount in connection with prepetition obligations related to the Compensation and Benefits Programs in the ordinary course following entry of the Interim Order.  Upon entry of the Final Order, the Debtors seek authority to pay all prepetition obligations in connection with the Compensation and Benefits Programs in an amount not to exceed $11,192,410.

14.    Specifically, by this Motion, the Debtors seek authority to pay or honor up to the following aggregate prepetition amounts on account of the Compensation and Benefits Programs:

| Prepetition Compensation and Benefits Obligations | Interim Amount | Final Amount |
|---|---|---|
| Unpaid Wages | $5,980,716 | $6,074,316 |
| *Wage Deductions* | $1,236,000 | $1,236,000 |
| Non-Insider Employee Cash Bonus Programs | $4,800 | $4,800 |
| Expenses and Reimbursements | $120,000 | $120,000 |
| Employee Benefits Programs | $718,688 | $4,775,494 |
| *Insurance Benefits* | $533,288 | $533,288 |
| *Other Employee Benefits* | $185,400 | $4,242,205 |
| Employee Compensation Tax Obligations | $55,800 | $55,800 |
| Payroll Processor Fees | $162,000 | $162,000 |
| **Total** | **$7,042,004** | **$11,192,410** |

15.     Out of an abundance of caution, the Debtors request confirmation of their right to modify, change, and discontinue any of their Compensation and Benefits Programs and to implement new programs, policies, and benefits in the ordinary course during these chapter 11 cases in the Debtors' sole discretion and without the need for further Court approval, subject to applicable law.

16.     The Debtors are not seeking relief to pay any Compensation and Benefits Programs in excess of the statutory cap of $15,150 set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "Priority Cap").

**II.     The Compensation and Benefits Program**

**A.     Wages and Other Basic Compensation**

17.     Historically, the Debtors have paid gross wages of approximately $8,000,000 on average per month to their Employees.  Employees are generally paid wages and salaries on a bi-weekly basis on Fridays via direct deposit or checks mailed to the Employees' home addresses. Salaried employees are paid current.  Hourly workers are paid in arrears approximately six days after each pay period ends.

18.     The Debtors' most recent payroll payment was made on August 4, 2023 (the "Last Payroll"), was in the aggregate amount of approximately $4,000,000, of which approximately $2,800,000 was paid to salaried Employees.  The Last Payroll payment covered the pay period ending (a) July 29, 2023, for hourly employees, and (b) August 5, 2023, for salaried employees.

19.     The Debtors make payments to the Foreign Workers on a monthly basis, and compensate the Staffing Agency Workers through the applicable Staffing Agency in accordance with the terms of the Debtors' agreement with the applicable Staffing Agency.[4]  The Debtors pay approximately $1,262,930 per month in connection with obligations to the Supplemental Workers.

20.     Eight non-Employee directors  (the "Directors") serve on the Debtors' Boards of Directors (the "Boards").  Historically, the Debtors compensated their Directors through equity-based compensation and an annual cash retainer, paid in quarterly installments.[5]  Prior to the Debtors' filing of their chapter 11 cases, the Compensation Committee of the Debtors' Boards recommended, and the Boards adopted, resolutions providing that the Directors would instead be paid cash compensation on a monthly basis in lieu of vesting into unvested restricted stock units and receiving additional restricted stock units during the pendency of the restructuring.  The Debtors estimate that no more than approximately $93,600 remains outstanding on account of accrued but unpaid prepetition obligations to the Directors.  The Debtors seek to honor these prepetition obligations to the Directors only upon entry of the Final Order.

---

[4]     Independent Contractors are paid in accordance with the terms of the Debtors' agreement with the Independent Contractor.

[5]     Under the Debtors' historical Director compensation program, Directors could elect to receive equity-based compensation in lieu of the cash compensation component.

21.     Based on historical payroll, the Debtors believe that, as of the Petition Date, no more than approximately $2,838,000 in the aggregate remains outstanding on account of unpaid accrued wages, salaries, overtime pay, and other compensation due from the Debtors to the Employees, approximately $3,142,716 remains outstanding on account of accrued but unpaid prepetition obligations in connection with the Supplemental Workers, and no more than $93,600 remains outstanding in connection with obligations to the Directors (collectively, the "Unpaid Wages").

22.     The Debtors' failure to remit full payment of the amount that the Debtors believe remains outstanding as of the Petition Date on account of Unpaid Wages would inflict great financial hardship on the Employees and the Supplemental Workers, and would damage morale and impair the Debtors' chapter 11 efforts.  The Debtors, therefore, request authority from the Court to satisfy obligations owed to the Employees and Directors, and on account of the Supplemental Workers, in respect of Unpaid Wages, including, without limitation, to allow prepetition checks on account of Unpaid Wages that were not cashed prior to the Petition Date to be honored on a post-petition basis notwithstanding the commencement of these chapter 11 cases; *provided* that payments on account of prepetition Unpaid Wages will not exceed $5,980,716 in the Interim Period, and $6,074,316 upon entry of the Final Order.

23.     The prepetition amount owed to any individual Employee, Supplemental Worker, or Director on account of Unpaid Wages does not exceed the Priority Cap and is not in respect of any time period more than 180 days before the Petition Date.

a.      Wage Deductions

24.     During each applicable pay period, the Debtors routinely deduct certain amounts from the Employees' pay, including, without limitation, pre-tax and after-tax deductions payable

pursuant to certain of the Employee benefit programs discussed herein, such as the Employee's share of 401(k) contributions, legally ordered deductions, and other miscellaneous deductions (collectively, the "Wage Deductions"), and forward those amounts to various third-party recipients.  On average, the Debtors have historically deducted approximately $673,000 in the aggregate in Wage Deductions from the Employees' pay per month.  The Debtors believe that, as of the Petition Date, no more than approximately $1,236,000 is required to be remitted to the various third-party recipients on account of the Wage Deductions related to prepetition accrued Employee salaries and wages.  Accordingly, the Debtors seek authority to continue to forward prepetition Wage Deductions to the applicable third-party recipients on a postpetition basis in the ordinary course of their business, as routinely done prior to the Petition Date, including amounts determined to be related to the period prior to the Petition Date; *provided* that payments or remittances on account of prepetition Wage Deductions will not exceed $1,236,000 in the Interim Period, and $1,236,000 upon entry of the Final Order.

**B.    Non-Insider Employee Cash Bonus Programs**

25.    To incentivize performance by the Employees and prevent attrition, the Debtors have historically implemented certain discretionary bonus and incentive programs.  Currently, the Debtors maintain two annual employee bonus programs, the Proterra Short-Term Incentive Plan and the Proterra Sales Incentive Plan, (together, the "Annual Cash Bonus Programs").  Approximately 213 Employees are eligible to receive bonuses under the Annual Cash Bonus Programs.  Compensation earned pursuant to the Annual Cash Bonus Programs is remitted annually, and, subject to approval by the Boards, bonuses earned for performance year 2023 are scheduled to be paid by March 15, 2024.  For performance year 2022, approximately $3,300,000 was paid to eligible Employees under the Annual Cash Bonus Programs.  The Debtors do not

believe that any amounts are outstanding as of the Petition Date on account of the Annual Cash Bonus Programs.

26.    Approximately eleven of the Debtors' service Employees are eligible for a bonus program, paid out quarterly (the "Repeat Order Incentive Program").  Payments under the Repeat Order Incentive Program are made if service Employees meet specific sales and performance metrics.  The Debtors do not estimate that any prepetition obligations are outstanding under these programs.

27.    The Debtors also maintain the Greer Production Special Bonus Program (together with the Annual Bonus Programs, the Repeat Order Incentive Program, and the Employee Referral Bonus Programs (as defined below), the "Non-Insider Employee Cash Bonus Programs"), under which eligible hourly workers receive lump sum payments of between $160 and $240 per pay period if they meet certain requirements.  $13,000 was paid last month under the Greer Production Special Bonus Program.  The Debtors also maintain an employee referral bonus program (the "Employee Referral Bonus Program"), under which the Debtors' Employees can earn cash bonuses of between $500 and $3000 upon the Debtors' hiring an individual referred by the Employee.  As of the Petition Date, the Debtors believe that $4,800 is accrued but unpaid under the Non-Insider Employee Cash Bonus Programs.

28.    As described in the First Day Declaration, the Non-Insider Employee Cash Bonus Programs play a critical role in improving the financial and operational performance of the Company, in addition to incentivizing and motivating Employees and improving their morale.  The Annual Cash Bonus Programs and the Repeat Order Incentive Program are targeted to improve the financial performance of the Company through providing cash-based compensation only upon Employees achieving certain sales and performance metrics.  Thus, continuing these programs will

not only motivate the Employees to provide optimal performance to the Debtors, but will also maximize the value of the Debtors' business.  Similarly, the Greer Production Special Bonus Program is tailored to improve the financial performance of the Company through providing bonuses to eligible employees only if they elect to temporarily fill shifts at the Debtors' production facilities to assist with the Debtors' production needs or elect to take on additional responsibilities with respect to the Company's training of new employees.  The training of new Employees and ability to staff shifts at the Debtors' production facilities are critical to the Debtors' ability to continue their production and manufacturing operations and thus maximize the value of their business.  Finally, the Employee Referral Bonus Program incentivizes Employees to refer candidates to join the Debtors' workforce, improving the Debtors' access to a strong workforce.

29.     Accordingly, the Debtors believe that continuing the Non-Insider Employee Cash Bonus Programs is in the best interests of their estates.  The Debtors seek authority to pay amounts due under the Non-Insider Employee Cash Bonus Programs, regardless of when accrued, and to continue the Employee Bonus Programs in the ordinary course of business during the pendency of these chapter 11 cases, *provided* that no bonus or incentive payments will be made to any insiders (as defined in section 101(31) of the Bankruptcy Code) unless separately authorized by the Court; *provided*, *further,* that future payments on account of prepetition obligations under the Non-Insider Employee Cash Bonus Programs will not exceed $4,800 in the Interim Period and $4,800 upon entry of the Final Order.

### C.     Expenses and Reimbursements

30.     Prior to the Petition Date, the Debtors directly or indirectly reimbursed their Employees for certain expenses incurred in the scope of their employment on behalf of the Debtors (the "Employee Expenses").  The Employee Expenses are incurred in the ordinary course of the Debtors' business operations and include certain out-of-pocket travel-related expenses (the

"Travel Expenses"), a cell phone reimbursement program (the "Cell Phone Program"), a corporate credit card program (the "Corporate Card Program"), as well as reimbursements for other items related to an Employee's job duties, such as supplies, equipment, and uniform purchase and maintenance.  The Travel Expenses most often relate to air travel, lodging, ground transportation, meals, and parking and total approximately $30,000 per month in the aggregate on average, and the Debtors estimate that no more than approximately $60,000 of this amount is outstanding as of the Petition Date,  which the Debtors expect to become due and owing in the Interim Period.  Under the Cell Phone Program, eligible Employees can elect to have a $60 reimbursement deposited in their account on a monthly basis to reimburse for each Employees' cell phone expenses.

31.    Under the Corporate Card Program, the Debtors offer corporate credit cards to certain Employees to use for business-related expenses.  As of the Petition Date, approximately 330 cards are currently issued to the Debtors' Employees under the Corporate Card Program. Approximately 325 cards are issued through American Express and approximately 5 cards are issued by US Bank.  The Debtors spend approximately $375,000 in the aggregate on account of the Corporate Card Program each month.  As of the Petition Date, approximately $60,000 is outstanding on account of obligations in connection with the Corporate Card Program.

32.    The Debtors estimate that approximately no more than $120,000 in Employee Expenses is accrued but unpaid as of the Petition Date.  The Debtors seek authority to pay all obligations in connection with the Employee Expenses that have been incurred prepetition, and to continue such programs in the ordinary course of business on a postpetition basis consistent with past practices; *provided* that payments on account of prepetition Employee Expenses obligations will not exceed $120,000 in the Interim Period, and $120,000 upon entry of the Final Order.

**D.      Equity Incentive Program**

33.      The Debtors historically have maintained an equity incentive program to encourage and incentivize Employees to maximize their performance for the benefit of the Debtors' business (the "Equity Incentive Program").  Awards under the Equity Incentive Program were granted at the Debtors' discretion.  The Debtors are not seeking authority to grant additional awards under the Equity Incentive Program during these chapter 11 cases.

**E.      Employee Benefits Programs**

a.      Insurance Benefits

34.      The Debtors offer insurance benefits to all full-time Employees, and currently provide insurance benefits to approximately 872 Employees.  The Debtors provide healthcare benefits, including medical, dental, and vision insurance, life insurance and disability, COBRA benefits, and workers' compensation benefits, all as described herein (the "Insurance Benefits"). By this Motion, the Debtors seek authority to (a) continue to provide the Insurance Benefits to the Employees in the ordinary course of business, (b) continue making contributions to such benefit programs, (c) continue to pay amounts related thereto, including premiums, claim amounts, and administrative costs; and (d) pay any prepetition obligations due and owing in connection with the Insurance Benefits; *provided* that payments on account of prepetition Insurance Benefits will not exceed $533,288 in the Interim Period, and $533,288 upon entry of the Final Order.

i.      Health Benefits

35.      The Debtors sponsor several health and welfare benefit plans, including medical, dental, and vision care coverage, for certain of their Employees (collectively, the

"Health Benefits").[6]  The Debtors' medical and dental plans are self-insured, and the Debtors' vision benefits are fully insured.  Other than to the Represented Employees, the Debtors provide medical insurance through Cigna Healthcare, dental coverage through Delta Dental of South Carolina, and vision benefits through Vision Service Plan Insurance Company.  The Debtors provide healthcare coverage to the Represented Employees through Kaiser Permanente. Depending on the program, premiums are invoiced and paid either each month or each week in advance of the coverage period.  The Debtors pay approximately $56,000 per month in healthcare benefits for the Represented Employees.

36.     In 2022, the Debtors paid approximately $6,800,000 on account of the self-insured medical program, $490,000 on account of self-insured dental program, and approximately $132,000 in vision insurance benefits.  The Debtors pay an aggregate amount of $312,000 on account of the medical and dental self-insured benefits per month and $12,000 per month on account of the fully-insured vision insurance benefits.

37.     The Debtors pay an aggregate amount of approximately $390,240 per month on account of the Health Benefits.  As of the Petition Date, the Debtors estimate that no more than $14,400 in prepetition insurance premiums in connection with the vision benefits is outstanding, and no more than $374,400 in connection with prepetition dental and medical benefits is outstanding.  The Debtors seek authority to establish an escrow account to segregate funds to honor future obligations and claim amounts for the self-insured programs (the "Self-Insured Escrow Account").  The Debtors seek authority to deposit $374,400 in the Self-Insured Escrow Account (the "Self-Insured Escrow Amount") as soon as reasonably practicable after the Petition Date.

---

[6]     The Health Benefits also include insurance benefits provided to four Employees based in Canada.  The Debtors pay approximately $1,300 CAD per month on account of Health Benefits to Canadian Employees.

ii.      Life, Disability, and Related Insurance Coverage

38.      The Debtors provide 942 Employees with short-term and long-term disability insurance, accidental death and dismemberment insurance, and basic life insurance, which are all offered through Unum Group ("Unum").  In the aggregate, the average annual cost of maintaining these programs is approximately $820,000.  The Debtors estimate that as of the Petition Date they owe no more than approximately $39,600 in respect of these benefits.

iii.      Additional Coverage

39.      The Debtors also provide travel assistance, critical illness insurance, supplemental life insurance, accident insurance, and pet insurance through Unum.  The Debtors estimate that as of the Petition Date they owe no more than approximately $61,200 on account of prepetition obligations in respect of these benefits.

iv.      Workers Compensation

40.      Under the laws of various states, the Debtors are required to maintain workers' compensation insurance to provide their Employees with coverage for injury claims arising from or related to their employment with the Debtors.  The Debtors maintain a workers' compensation benefits program administered by Great American Insurance (the "Workers Compensation Program").  The annual premium under the Workers Compensation Policy is approximately $408,081, which is paid by the Debtors on a monthly basis.  The Debtors estimate that as of the Petition Date no more than $40,808 is accrued but unpaid in respect of the Workers Compensation Program in respect of prepetition premium obligations.

i.      COBRA Benefits

41.      The Debtors seek to continue to perform any obligations under Section 4980B of the Internal Revenue Code to administer Continuation Health Coverage (26 U.S.C. § 4980B) ("COBRA") in respect of Employees that are no longer eligible for the Insurance Benefits.

American Benefits Group (ABG) is the third-party COBRA administrator for the Debtors The Debtors have paid approximately $1,200 per month for administration of their COBRA obligations. The Debtors estimate that as of the Petition Date no more than approximately $1,440 is accrued but unpaid in respect of this benefit.

b.     Other Employee Benefits

42.     The Debtors have maintained other employee benefits programs, including paid and flexible time off programs, a 401(k) plan, and severance and retention programs, each as more fully described herein (the "Other Employee Benefits," and together with the Insurance Benefits, the "Employee Benefits Programs").   The Debtors seek authorization to pay prepetition amounts outstanding in connection with the Other Employee Benefits, to continue to provide the Other Employee Benefits to the Employees in the ordinary course on a postpetition basis, and to pay any prepetition and postpetition obligations related thereto; *provided* that payments on account of prepetition Other Employee Benefits will not exceed $185,400 in the Interim Period, and $4,242,205 upon entry of the Final Order.

i.     Paid and Flexible Time Off

43.     The Debtors offer a flexible time off policy ("FTO Policy") to their full-time and eligible part-time Employees.   Under the FTO Policy, eligible Employees are able to take unlimited paid time off, subject to business and staffing needs.   As no paid time off accrues pursuant to the FTO Policy, there are no prepetition amounts due and owing under the FTO Policy.

44.     The Debtors maintain a paid time off benefit ("Paid Time Off") for all Employees earning wages on an hourly basis, providing paid leave for circumstances including vacation, illness, caring for children, school activities, medical/dental appointments, personal business, or emergencies. The Debtors provide a range of Paid Time Off related to such Employees' tenure and position with the Debtors, and eligible Employees are generally provided with between 120

and 160 hours of Paid Time Off per year.[7]   The Debtors seek the authority to honor these obligations on a postpetition basis.

45.     The Debtors estimate that, as of the Petition Date, no more than approximately $510,000 in Paid Time Off for Employees is accrued but not yet honored.

ii.     401(k) Plan

46.     The Debtors offer a 401(k) plan for the benefit of their eligible Employees (the "401(k) Plan").  The program permits eligible Employees to defer a portion of their wages into the 401(k) Plan.  Historically, the Debtors have made matching contributions to the 401(k) Plans equal to 100% of the first 4% of each eligible Employee's compensation up to the Internal Revenue Service maximum (the "401(k) Matching Contribution").

47.     Historically, on an annual basis, the Debtors withheld from wages of participating Employees contributions to the 401(k) Plan of approximately $2,139,000.  As of the Petition Date, the Debtors estimate that approximately $99,000 has been withheld, or will be withheld, from the Employees' prepetition salaries and wages, and will be required to be remitted to the 401(k) Plan. The Debtors seek authority under the Proposed Orders, to continue to pay in the ordinary course of business amounts associated with the 401(k) Plan, including prepetition amounts and amounts owed to any 401(k) Plan fiduciaries.

48.     Further, as of the Petition Date, the Debtors have incurred approximately $2,516,000 on account of 401(k) Matching Contributions year-to-date.  As of the Petition Date, the Debtors estimate that there are no outstanding in accrued 401(k) Matching Contributions.  Out

---

[7]   Although the Debtors' full-time Employees have transitioned to the FTO Policy, the Debtors have outstanding obligations to approximately 57 of the Debtors' Employees in California under a legacy paid  time  off  policy. The Debtors are required to honor these obligations to the Employees under applicable California law. Approximately $510,000 is accrued but not yet honored pursuant to this legacy paid time off policy. This amount is included in the amounts outstanding on account of prepetition Paid Time Off.

of an abundance of caution, however, the Debtors seek the authority to pay any prepetition amounts

in connection with the 401(k) Matching Contributions, subject to the terms of the Proposed Orders.

The Debtors seek the authority to continue making the 401(k) Matching Contributions on a

postpetition basis.

49.     The 401(k) Plan is administered by Charles Schwab as the plan trustee. The

administrative costs associated with the 401(k) Plan are determined by the amount of plan assets

each quarter. The Debtors pay approximately $68,000 annually in plan fees to the 401(k) Plan

trustee.  The Debtors estimate that as of the Petition Date no more than approximately $36,000 is

accrued but unpaid in respect of the 401(k) Plan fees.

### iii.     Flexible Spending Accounts

50.     The Debtors offer 932 Employees the use of flexible spending accounts ("FSAs")

for various health and dependent care expenses (the "FSA Benefits").  The FSAs are administered

through American Benefits Group. The Debtors pay approximately $2,000 per month for

administration of the FSA Benefits. The Debtors estimate that as of the Petition Date no more than

$2,400 is accrued but unpaid in respect of the FSA Benefits.  The Debtors seek authorization to

continue to pay prepetition costs of the FSA Benefits during the pendency of these chapter 11

cases, subject to the terms of the Proposed Orders.

### iv.     Severance and Retention Programs

51.     Historically, the Debtors have provided severance and retention benefits under the

Executive Employee Severance Agreements, the RIF Agreement, their agreements with Non-

Union COI Workers, the EBA (each as defined herein), and under the EBA (collectively, the

"Severance and Retention Programs").  As of the Petition Date, no more than approximately

$1,407,339 is accrued but unpaid on account of prepetition obligations pursuant to the Severance

and Retention Programs.  The prepetition amount owed to any individual Employee on account of

the Severance and Retention Programs does not exceed the Priority Cap and is not in respect of any time period more than 180 days before the Petition Date

52.    *Executive Employee Severance Agreements.*    The Debtors historically offered severance benefits to eight executive Employees through individual agreements with each applicable executive Employee (the "Executive Employee Severance Agreements"). The Debtors are not seeking authority to continue these programs on a postpetition basis.

53.    *Informal Non-Executive Severance.*  Although not contained in a formal severance policy, the Debtors have historically paid severance benefits to non-executive employees on a discretionary, case-by-case basis.

54.    *RIF Agreement.*    Debtor Proterra Operating Company, Inc. is a party to a Reduction-in-Force agreement in connection with operations in Burlingame, California, (the "RIF Agreement"). Pursuant to the RIF Agreement, approximately 41 former Employees ceased working for the Debtors on July 27, 2023 (the "RIF Workers"). Upon satisfaction of certain conditions in the RIF Agreement, the RIF Workers will be entitled to certain retention payments. Approximately $84,000 remains outstanding on account of prepetition obligations under the RIF Agreement.

55.    *The EBA*.  Approximately 77 Represented Employees will remain working at the Debtors' manufacturing plant in City of Industry, California, (the "COI Plant") through September 30, 2023, pursuant to the terms set forth in the EBA (the "EBA Workers"). If the conditions outlined in the EBA are satisfied eligible employees will receive, in the aggregate, approximately $1,854,638 in retention payments, in addition to paid time off benefits to which the Represented Employees are entitled under the CBA.  Of this, the Debtors estimate that no more

than approximately $1,241,139 is on account of prepetition obligations that will become due and

owing following the Petition Date.[8]

56.     *The Non-Union City of Industry Workers*.  Approximately 33 non-Represented

Employees will also be entitled to retention payments only if they remain working at the COI Plant

through October 31, 2023 (the "Non-Represented COI Workers," together with the EBA Workers,

the "COI Workers").  Under the terms of the Debtors' agreements with the Non-Represented COI

Workers, the Debtors will pay the Non-Represented COI Workers $1,290,127 in the aggregate if

they remain working at the COI Plant through October 31, 2023.  Of this, the Debtors estimate that

no more than $82,200 could become due and owing on account of prepetition obligations to the

COI Workers.

57.     As described in the First Day Motion, the Debtors' ability to honor the retention

obligations to the COI Workers described above is paramount to the Debtors' ability to maintain

their business operations throughout these chapter 11 cases.  When the Debtors decided to pursue

an orderly wind down of the COI Plant to improve the operational efficiencies of the Debtors'

business, the Debtors negotiated extensively with the applicable COI Workers and the Union, as,

without the COI Workers continued work at the COI Plant, the Debtors would not be able to satisfy

outstanding customer orders and demand, and thus would suffer significant harm to their business.

The Debtors' ability to honor these retention payments to the COI Workers is critical to ensuring

that the COI Workers remain working at the COI Plant.  Further, the COI Plant competes in a

---

[8]     The Debtors are currently negotiating with the Union to extend obligations under the EBA by one month through October 31, 2023, in order to fulfill their obligations to customers and continue to operate their business through these chapter 11 cases.  For the reasons described in this Motion and in the First Day Declaration, the Debtors' ability to complete operations at the COI Plant in an orderly fashion is crucial to their ability to operate their business in the ordinary course. By the Proposed Orders, the Debtors request the authority to extend the EBA, *provided that* payments on account of prepetition Severance and Retention Programs will not exceed the amounts set forth in the Proposed Orders.

competitive labor market with a high turnover rate, and the Debtors believe that that they will not be able to hire additional employees if the COI Workers leave before the end of their term.  If the Debtors are unable to honor their retention payments to the COI Workers, the Debtors believe that their ability to continue to operate their business in the chapter 11 cases would be significantly disrupted.

58.    Similarly, if the Debtors are not able to honor the retention payments under the RIF Agreement to the RIF Workers, the Debtors believe that this would significantly impact morale in the Debtors' workforce and increase attrition, as it would undermine the confidence of other Employees, including the COI Workers, in the Debtors' ability to honor their obligations to the Employees.  For the reasons discussed above, it is crucial that the Debtors are able to retain their workforce in order to continue their operations through these chapter 11 cases.  Accordingly, the Debtors request the authority to continue to honor all obligations to the COI Workers and the RIF Workers in the ordinary course of the Debtors' business, subject to the caps set forth in the Proposed Orders.

### F.    Trust Fund and Payroll Taxes

59.    The Debtors are required by law to withhold from the Employees' pay certain amounts related to, among other things, federal, state, and local income taxes and social security and Medicare taxes (collectively, the "Trust Fund Taxes") for remittance to the appropriate federal, state, or local taxing authorities.

60.    The Debtors must then match from their own funds for social security and Medicare taxes and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (the "Payroll Taxes" and together with the Trust Fund Taxes, the "Employee Compensation Tax Obligations").  Historically, on a monthly basis, the Debtors remit approximately $2,000,000 in Trust Fund Taxes and $700,000 in Payroll Taxes.  The Debtors

believe that, as of the Petition Date, no more than approximately $55,800 is required to be remitted in respect of the Employee Compensation Tax Obligations on account of the prepetition accrued Employee salaries and wages.

61.    By this Motion, the Debtors seek authority to remit the Employee Compensation Tax Obligations in the ordinary course of business, including, without limitation, amounts determined to be related to the period prior to the Petition Date; *provided* that payments or remittances on account of prepetition Employee Compensation Tax Obligations will not exceed $55,800 in the Interim Period, and $55,800 upon entry of the Final Order.

**G.     Payroll Processor Fees**

62.    The Debtors use the services of UKG and PSI (the "Payroll Processors") to process direct deposit transfers and administer payroll checks to Employees.  The Payroll Processors calculate the Debtors' payroll, health benefit, and tax obligations for each Employee, and the Debtors then transfer funds sufficient to satisfy such obligations to the Payroll Processor in advance of the end of the applicable pay period.  The Debtors pay bi-weekly fees to the Payroll Processor for the payroll-related services that it provides to the Debtors and related administrative costs (the "Payroll Processor Fees").

63.    It is critical that the Debtors be able to compensate Employees on their historical payroll schedule.  The Debtors will be unable to preserve and maintain their historical payroll schedule without the Payroll Processor because the Payroll Processor is responsible for calculating benefits and administering paychecks for the Employees, and replacing the Payroll Processor would take a significant amount of time.  Accordingly, the Debtors seek authority to: (a) pay the Unpaid Payroll Processor Fees, and (b) continue paying the Payroll Processor Fees in the ordinary course of business on a postpetition basis; *provided* that payments on account of prepetition

Unpaid Payroll Processor Fees will not exceed $162,000 in the Interim Period, and $162,000 upon entry of the Final Order.

### Basis for Relief

I.   **The Bankruptcy Code Permits the Court to Authorize the Debtors to Pay Prepetition Wages and Benefits Where Such Payments Are Necessary to Protect and Preserve the Estate**

64.    Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."). In doing so, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

65.    Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the pre-plan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. at 499.

66.    Section 105(a) of the Bankruptcy Code and the "doctrine of necessity" permit the bankruptcy court to exercise its broad grant of equitable powers to authorize the payment of prepetition obligations when such payment is "essential to the continued operation" of the debtor's business. *See, e.g.*, *In re Lehigh & New England Railway. Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (Bankr. D. Del. 1999).

67.     The above-referenced sections of the Bankruptcy Code empower the Court to authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here.  *See, e.g.*, *In re Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims of certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re CoServ, L.L.C.*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the pre-petition claim in aid of preservation or enhancement of the estate.").

68.     For the reasons described herein and in the First Day Declaration, the Debtors submit that payment of up to $7,042,004 on an interim basis $11,192,410 on a final basis is necessary to the Debtors' continued and uninterrupted operations during these chapter 11 cases. Any delay in paying or otherwise honoring the Debtors' obligations under the Compensation and Benefits Programs could severely disrupt the Debtors' relationship with the Employees, and irreparably impair their morale at a time when their continued dedication, confidence, and cooperation are most critical to the Debtors and the success of these chapter 11 cases.  The Debtors face the risk that the success of these chapter 11 cases and the Debtors' ability to continue to operate their business without any unexpected interruption may be severely jeopardized if the Debtors are not immediately granted authority to honor their obligations under the Compensation and Benefits Programs pursuant to the Interim Order.

69.     Courts have also recognized the applicability of the doctrine of necessity with respect to the payment of prepetition employee compensation and benefits.  *See, e.g.*, *Mich. Bureau of Workers' Disability Comp.* v. *Chateaugay Corp.* (*In re Chateaugay Corp.*), 80 B.R. 279, 285– 89 (S.D.N.Y. 1987) (providing that under the "necessity of payment" doctrine, it is appropriate for

the bankruptcy court to defer to a debtor's business judgment in permitting payment of certain workers' compensation claims); *Ionosphere Clubs*, 98 B.R. at 176 ("This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor.").

70.     In addition, pursuant to section 507(a)(4) of the Bankruptcy Code, each Employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $15,150 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –
>
> (A)     wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> (B)     sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services, for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

11 U.S.C. § 507(a)(4).

71.     Likewise, under section 507(a)(5) of the Bankruptcy Code, Employees may ultimately be granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan –
>
> (A)     arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B)     for each such plan, to the extent of –
>
> > (i)     the number of employees covered by each such plan multiplied by $15,150; less

(ii)     the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

72.     The Debtors believe that all of the relief requested herein is within the statutory caps of sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  The Debtors, therefore, would be required to pay these claims in full before any of the Debtors' general unsecured obligations may be satisfied.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries, and commissions, and certain allowed unsecured claims for contributions to an employee benefit plan).  Thus, the Debtors submit that granting the relief requested herein will not prejudice general unsecured creditors.

73.     The Debtors submit that the circumstances of these chapter 11 cases warrant granting the requested relief, and that doing so is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, and therefore should be granted.  Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue the Compensation and Benefits Programs and pay prepetition claims related thereto on the terms set forth in the Proposed Orders.

### Processing of Checks and Electronic Funds Transfers Should Be Authorized

74.     The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein.  Accordingly, the Debtors believe that there is minimal risk that checks or wire transfer requests that the Court has not authorized will be

inadvertently made.  Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## Immediate Relief Is Necessary

75.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  As described above and in the First Day Declaration, any disruption of the Employee Wages and Benefits Programs, on the terms proposed, would substantially diminish or impair the Debtors' efforts in these chapter 11 cases to preserve and maximize the value of their estates.  For this reason and those set forth above and because in the First Day Declaration, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## Waiver of Stay Under Bankruptcy Rule 6004(h)

76.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As provided herein, and to implement the foregoing successfully, the Debtors request that the Proposed Orders include a finding that the Debtors have established cause to exclude such relief from the fourteen (14)-day stay period under Bankruptcy Rule 6004(h).

77.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Orders.

**Reservation of Rights**

78.     Nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as:  (a) an implication or admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

**Notice**

79.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative and collateral agents under the Debtors' prepetition credit facilities and counsel thereto; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the state attorneys general for states in

which the Debtors conduct business; (g) the Securities and Exchange Commission; (h) the Payroll Processor; (i) counsel to the Cowen Parties; (j) counsel to Bank of America; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:    August 7, 2023
         Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Andrew L. Magaziner*
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
       amagaziner@ycst.com
       sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Michael J. Colarossi (*pro hac vice* admission pending)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
      rbritton@paulweiss.com
      mcolarossi@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (___) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING
THE DEBTORS TO PAY PREPETITION EMPLOYEE
WAGES AND BENEFITS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>") of the Debtors[2] for entry of an interim order (this "<u>Interim Order</u>") (a) authorizing the Debtors to (i) pay certain prepetition wages, salaries, other compensation, and reimbursable expenses, and (ii) continue employee benefits programs in the ordinary course of their business, including payment of certain prepetition obligations related thereto, each subject to the caps and limits set forth herein, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized to pay, in an aggregate amount of $7,042,004, obligations in connection with the Compensation and Benefits Programs arising prior to the Petition Date, that the Debtors expect to become due and payable prior to the Final Hearing (the "Interim Period"), and to pay any postpetition Compensation and Benefits Programs obligations; *provided*, that the Debtors will not make payments on account of any prepetition severance obligations unless required by state law or make any payments to the Directors on account of prepetition obligations in the Interim Period.

3.      The Debtors are authorized to pay or remit, with respect to the each program outlined below, each as more fully described in the Motion, the following interim amounts during the Interim Period on account of prepetition obligations:

| Prepetition Compensation and Benefits Obligations | Interim Amount |
|---|---|
| Unpaid Wages | $5,980,716 |
| *Wage Deductions* | $1,236,000 |
| Non-Insider Employee Cash Bonus Programs | $4,800 |
| Expenses and Reimbursements | $120,000 |
| Employee Benefits Programs | $718,688 |
| *Insurance Benefits* | $533,288 |
| *Other Employee Benefits* | $185,400 |
| Employee Compensation Tax Obligations | $55,800 |
| Payroll Processor Fees | $162,000 |
| **Total** | **$7,042,004** |

4.      The Debtors are authorized to continue the Compensation and Benefits Programs described in the Motion in accordance with historical practice in the ordinary course of the Debtors' business, *provided* that the Debtors are not authorized to continue the Executive Employee Severance Agreements; *provided*, *further*, that this Interim Order does not authorize the Debtors to grant additional awards under the Equity Incentive Program during these chapter 11 cases.

5.      The Debtors are authorized to continue to honor all prepetition and postpetition obligations to the RIF Workers and the COI Workers; *provided, that*, payments on account of prepetition obligations to RIF Workers and COI Workers will not exceed that amounts set forth in this Interim Order.

6.      The Debtors may pay and remit any and all Wage Deductions, Employee Compensation Tax Obligations, and Payroll Taxes in the ordinary course of business on a postpetition basis.

7.      The Debtors are authorized to modify, change, and discontinue any of their Compensation and Benefits Programs and to implement new programs, policies, and benefits in the ordinary course during these chapter 11 cases in the Debtors' sole discretion and without the need for further Court approval, subject to applicable law, including, without limitation, modifying, extending, or changing the terms of the EBA; *provided that* payments on account of prepetition obligations under the EBA will not exceed the amounts provided in this Interim Order.

8.      The Debtors are authorized to establish the Self-Insured Escrow Account and deposit the Self-Insured Escrow Amount as soon as reasonably practicable following the Petition Date.

9.      The Debtors are authorized, but not directed, to continue the Workers' Compensation Program, in the ordinary course of business and in accordance with the Debtors' prepetition policies and programs, and to pay any workers' compensation claims, deductibles, retentions, premiums, and other amounts required in connection with the Workers Compensation Program as such amounts become due in the ordinary course during the pendency of these chapter 11 cases, regardless of when accrued.

10.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

11.     Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of

4

the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

12.     The requirements of Bankruptcy Rule 6003(b) have been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

13.     Notice of the Motion as provided therein is hereby deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order.

16.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

17.     The final hearing on the Motion shall be held on _____, 2023, at __:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion must be filed with the Court on or before 4:00 p.m., prevailing Eastern Time, on _____, 2023, and served on the following parties:  (a) counsel to the Debtors; (b) the Office of the United States Trustee for the District of Delaware; (c) the administrative and collateral agents under the Debtors' prepetition credit facilities and counsel thereto; and (d) the statutory committee of unsecured

creditors, if any has been appointed.  If no objections to entry of a final order on the Motion are timely received, the Court may enter such final order without need for the final hearing.

**Exhibit B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PROTERRA INC, *et al.*,[1] | ) | Case No. 23-11120 (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. __ & ___** |

**FINAL ORDER (I) AUTHORIZING
THE DEBTORS TO PAY PREPETITION EMPLOYEE
WAGES AND BENEFITS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>") of the Debtors[2] for entry of a final order (this "<u>Final Order</u>") (a) authorizing the Debtors to (i) pay certain prepetition wages, salaries, other compensation, and reimbursable expenses, and (ii) continue employee benefits programs in the ordinary course of their business, including payment of certain prepetition obligations related thereto, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized to pay, in an aggregate amount of $11,192,410 prepetition obligations in connection with the Compensation and Benefits Programs, and to pay any postpetition Compensation and Benefits Programs obligations.

3.      The Debtors are authorized to pay or remit, with respect to the each program outlined below, each as more fully described in the Motion, the following final amounts upon entry of this Final Order:

| Prepetition Compensation and Benefits Obligations | Final Amount |
|---|---|
| Unpaid Wages | $6,074,316 |
| *Wage Deductions* | $1,236,000 |
| Non-Insider Employee Cash Bonus Programs | $4,800 |
| Expenses and Reimbursements | $120,000 |
| Employee Benefits Programs | $4,775,494 |
| *Insurance Benefits* | $533,288 |
| *Other Employee Benefits* | $4,242,205 |
| Employee Compensation Tax Obligations | $55,800 |
| Payroll Processor Fees | $162,000 |
| **Total** | **$11,192,410** |

4.      The Debtors are authorized to continue the Compensation and Benefits Programs described in the Motion in accordance with historical practice in the ordinary course of the Debtors' business, *provided* that the Debtors are not authorized to continue the Executive

Employee Severance Agreements; *provided, further,* that this Final Order does not authorize the Debtors to grant additional awards under the Equity Incentive Program during these chapter 11 cases.

18.     The Debtors are authorized to continue to honor all prepetition and postpetition obligations to the RIF Workers and the COI Workers; *provided, that*, payments on account of prepetition obligations to RIF Workers and COI Workers will not exceed that amounts set forth in this Final Order.

5.     The Debtors may pay and remit any and all Wage Deductions, Employee Compensation Tax Obligations, and Payroll Taxes in the ordinary course of business on a postpetition basis.

6.     The Debtors are authorized to modify, change, and discontinue any of their Compensation and Benefits Programs and to implement new programs, policies, and benefits in the ordinary course during these chapter 11 cases in the Debtors' sole discretion and without the need for further Court approval, subject to applicable law, including, without limitation, modifying, extending, or changing the terms of the EBA; *provided that* payments on account of prepetition obligations under the EBA will not exceed the amounts provided in this Final Order.

7.     The Debtors are authorized to establish the Self-Insured Escrow Account and deposit the Self-Insured Escrow Amount as soon as reasonably practicable following the Petition Date.

8.     The Debtors are authorized, but not directed, to continue the Workers' Compensation Program, in the ordinary course of business and in accordance with the Debtors' prepetition policies and programs, and to pay any workers' compensation claims, deductibles, retentions, premiums, and other amounts required in connection with the Workers Compensation

Program as such amounts become due in the ordinary course during the pendency of these chapter 11 cases, regardless of when accrued.

9.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

10.     Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

19.    Notice of the Motion as provided therein is hereby deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

20.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

21.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order.