## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) <br> ) Chapter 11 <br> ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) <br> ) |
| Debtors. | ) (Joint Administration Requested) <br> ) |

## DEBTORS' MOTION FOR
## ENTRY OF INTERIM AND FINAL ORDERS
## (I) AUTHORIZING (A) CONTINUED USE OF CASH
## MANAGEMENT SYSTEM, (B) MAINTENANCE OF BANK
## ACCOUNTS AND BUSINESS FORMS, (C) CONTINUANCE OF
## CORPORATE CREDIT CARD PROGRAMS, AND (D) HONORING
## CERTAIN PREPETITION OBLIGATIONS; (II) WAIVING STRICT
## COMPLIANCE WITH 11 U.S.C. § 345(b) AND CERTAIN OPERATING
## GUIDELINES, AS APPLICABLE, AND (III) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (the "Motion"):[2]

### Relief Requested

1.     The Debtors seek entry of an interim order (the "Interim Order") and a final order

(the "Final Order" and, together with the Interim Order, the "Proposed Orders"), substantially in

the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) authorizing the Debtors to

(i) continue using their existing Cash Management System (as defined below), (ii) maintain the

Bank Accounts and Business Forms (each, as defined below), (iii) continue the Corporate Credit

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]     A detailed description of the Debtors and their business, including the facts and circumstances giving rise to these chapter 11 cases and supporting this Motion, is set forth in the *Declaration of Gareth T. Joyce in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.  Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the First Day Declaration.

Card Programs (as defined below), and (iv) honor certain prepetition obligations related to the Cash Management System; (b) waiving strict compliance with section 345(b) of the Bankruptcy Code and certain operating guidelines related to the Bank Accounts upon entry of the Final Order, to the extent applicable; and (c) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing to consider approval of this Motion on a final basis.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "Amended Standing Order").  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to a final order with respect to this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue of these chapter 11 cases and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105, 345, 363, 364(b), and 503(b) of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2015-2 of the Local Rules.

**Background**

6.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have contemporaneously filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

**The Debtors' Cash Management System**

**I.     Bank Accounts and Flow of Funds**

7.     In the ordinary course of business, the Debtors maintain a highly integrated cash management system (the "Cash Management System").  Pursuant to that certain Loan, Guaranty and Security Agreement dated as of May 8, 2019, by and among Legacy Proterra, the lenders from time to time party thereto and Bank of America, N.A. ("Bank of America"), as administrative agent (as amended, amended and restated, supplemented or otherwise modified, the "Senior Credit Agreement"), the Debtors maintain their active cash management and bank accounts with Bank of America and its affiliate, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill").  To provide the Court with a comprehensive overview of the Cash Management System, a diagram illustrating the movement of cash through the Cash Management System is attached hereto as **Exhibit C**.  In addition, the Bank Accounts are listed in the schedule attached hereto as **Exhibit D** and the Debtors' outstanding letters of credit are listed in the schedule attached hereto as **Exhibit E**.

8.    Cash generated from operations and other deposits are primarily deposited into the Cash Sweep Account (as defined below).  The Cash Sweep Account receives wires, electronic fund transfers ("EFTs"), and physical checks from a lockbox in the ordinary course of operations. Primarily all of the Debtors' deposits are received into the Cash Sweep Account and then are subsequently transferred to the Concentration Account (as defined below).  Prior to the Petition Date, and in the ordinary course of business, the Concentration Account operated as the central hub for routing funds into the Debtors' ZBA Accounts (as defined below) and the WCMA Account (as defined below).  The Debtors' ZBA Accounts are utilized to fund the Debtors' operations, including as follows:  (a) the Debtors utilize the Payroll Account (as defined below) for disbursements related to employee payroll and other expenses, (b) the Debtors utilize the Accounts Payable Account (as defined below) to pay vendors and other expenses via checks and EFTs, and (c) the Debtors utilize the Operating Account (as defined below, and collectively with the Payroll Account and Accounts Payable Account, the "ZBA Accounts") to make direct debits and initiate wire payments.  In the ordinary course of business, funds are automatically transferred from the Concentration Account on a daily basis to satisfy any debits from the ZBA Accounts during the course of the day, thereby bringing the ZBA Accounts' balances to zero each night.  Therefore, every night the ZBA Account balances are brought back up to zero with funds transferred from the Concentration Account.

9.    Additionally, prior to the Petition Date, and in the ordinary course of business, the Debtors maintained the WCMA Account (as defined below, and collectively with the Cash Sweep Account, Concentration Account, and ZBA Accounts, the "Bank Accounts").[3]  As of the Petition

---

[3]    In the past, money in excess of the amounts needed to fund the Debtors' operations and other expenses were transferred to the WCMA Account to earn interest as compared to the Concentration Account that does not bear interest at a material rate.

Date, the money held in the WCMA Account is invested in (i) seven series of U.S. Treasury Bills with an adjusted total cost basis of approximately $127,253,000 (the "U.S. Treasury Holdings")[4], (ii) BlackRock BLF FedFund[5] with an estimated market value of approximately $3,703,000 (the "BlackRock Fund"), and (iii) Merrill Deposit Program, which is FDIC Insured, with an estimated value of $700. When the Debtors need funding for their operations, cash is moved from the WCMA Account into the Concentration Account and onto the ZBA Accounts, as outlined above.

10.     The Senior Credit Agreement requires all of the Debtors' bank accounts to be held at Bank of America. Prior to the entering of the Senior Credit Agreement, the Debtors maintained three accounts with Silicon Valley Bank ("SVB" and collectively with Bank of America and Merrill, the "Banks") for working capital and other uses (collectively, the "SVB Accounts"). The SVB Accounts remain open but are largely dormant with minimal funds as of the Petition Date. The SVB Accounts occasionally receive checks from customers utilizing dated remittance information. These funds are subsequently routed to the Concentration Account, so that typically the SVB Accounts have no balance.[6]

11.     The Bank Accounts utilized by the Debtors in the ordinary course are described in further detail below:

---

[4]     The U.S. Treasury Holdings mature between August 17, 2023 and November 9, 2023. In the ordinary course of business, upon when the U.S. Treasury Holdings mature, they are typically reinvested into new U.S. Treasury Bills. The Debtors from time to time will sell U.S. Treasury Holdings prior to maturity for liquidity purposes.

[5]     The BlackRock Fund (named the "BLF FedFund") invests at least 99.5% of its total assets in cash, U.S. Treasury bills, notes, and other obligations issued or guaranteed as to the principal and interest by the U.S. Government, its agencies or instrumentalities, and repurchase agreements secured by such obligations or cash. The BlackRock Fund invests in securities maturing in 397 days or less (with certain exceptions) and the portfolio will have a dollar-weighted average maturity of 60 days or less and a dollar-weighted average life of 120 days or less.

[6]     Additionally, in March 2023, the Debtors opened a separate Investment Account at Morgan Stanley (the "Morgan Stanley Account") in an attempt to remove certain money that had been held in the SVB Accounts. No money has ever been transferred to the Morgan Stanley Account, and it has a zero dollar balance. The Debtors will seek to close the Morgan Stanley Account during the pendency of the chapter 11 cases.

| Bank Account | Description of Bank Account |
|---|---|
| **Cash Sweep Account** | |
| **Cash Sweep Account**<br><br>Bank of America<br>*bank account ending 0802* | The Debtors maintain a deposit account, which is used to collect the majority of the customer payments and other deposits to the Debtors (the "<u>Cash Sweep Account</u>").  The Cash Sweep Account receives wire transfers, EFTs, and physical check deposits from a lockbox in the ordinary course.  Funds are regularly distributed from the Cash Sweep Account to the Concentration Account.<br><br>As of the Petition Date, the Cash Sweep Account had a zero dollar balance. |
| **Concentration Account** | |
| **Concentration Account**<br><br>Bank of America<br>*bank account ending 5378* | The Debtors maintain a concentration account, which is primarily used to receive the funds distributed from the Cash Sweep Account and WCMA Account to then pay the ZBA Accounts to fund the Debtors' operations (the "<u>Concentration Account</u>").  Funds are sometimes deposited directly into the Concentration Account.<br><br>The Concentration Account funds the ZBA Accounts when the ZBA Accounts make payments to fund the Debtors' operations.  On a daily basis, the Concentration Account funds the ZBA Accounts in an amount sufficient to bring the ZBA Accounts' balances back to zero.  To fund these payments, the Concentration Account receives the funds from the Cash Sweep Account, and, as necessary, transfers from the WCMA Account.<br><br>As of the Petition Date, the Concentration Account had a balance of approximately $6,811,100. |
| **ZBA Accounts** | |
| **Payroll Account**<br><br>Bank of America<br>*bank account ending 0807* | The Debtors maintain a ZBA Account that is used primarily to make payroll disbursements to the Debtors' employees (the "<u>Payroll Account</u>").<br><br>Historically, funds are automatically transferred into the Payroll Account from the Concentration Account to cover payroll expenses issued on the relevant payment date.<br><br>The Payroll Account is a zero-balance account, meaning it does not carry a cash balance at the end of each business day.  The Concentration Account funds the payments made by the Payroll Account whenever such a payment is made, in order to bring the Payroll Account balance to zero.<br><br>As of the Petition Date, the Payroll Account had a zero dollar balance. |
| **Accounts Payable Account**<br><br>Bank of America<br>*bank account ending 2116* | The Debtors maintain a ZBA Account that is used primarily to make payments of accounts payable that arise in the ordinary course of the Debtors' operations (the "<u>Accounts Payable Account</u>").<br><br>Funds are transferred into the Accounts Payable Account from the Concentration Account to cover disbursements made from the account.  Disbursements made from the account are primarily issued via EFTs or checks.<br><br>The Accounts Payable Account is a zero-balance account, meaning it does not carry a cash balance at the end of each business day.  The Concentration Account funds disbursements made by the Accounts Payable Account whenever such a payment is made, in order to bring the Accounts Payable Account balance to zero.<br><br>As of the Petition Date, the Accounts Payable Account had a zero dollar balance. |

| Bank Account | Description of Bank Account |
|---|---|
| **Operating Account**<br><br>Bank of America<br>*bank account ending 0548* | The Debtors maintain a ZBA Account that is used to fund operations in the ordinary course of business, typically by direct debit or wires (the "<u>Operating Account</u>").<br><br>Funds are transferred into the Operating Account from the Concentration Account to cover expenses paid on the relevant date.<br><br>To that end, the Operating Account is a zero-balance account, meaning it does not carry a cash balance at the end of each business day. The Concentration Account funds the payments made by the Operating Account whenever such a payment is made, in order to bring the Operating Account balance to zero.<br><br>As of the Petition Date, the Operating Account had a zero dollar balance. |
| **Cash Investments Accounts** | |
| **WCMA Account**<br><br>Merrill<br>*bank account ending 3373* | The Debtors maintain an investment account for their cash investments (the "<u>WCMA Account</u>").<br><br>Surplus funds not needed to fund the Debtors' business operations are transferred to the WCMA Account from the Concentration Account for short-term cash investments in U.S. Treasury Bills and the BlackRock Fund. The WCMA Account transfers funds to the Concentration Account to satisfy obligations in the ordinary course.<br><br>As of the Petition Date, the WCMA had a balance of approximately $130,939,200. |
| **The SVB Accounts[7]** | |
| **SVB Deposit Account**<br><br>SVB<br>*bank account ending 8094* | The Debtors maintain an account that receives deposits from a SVB lockbox (the "<u>SVB Deposit Account</u>").<br><br>Historically, the SVB Deposit Account would act as a type of concentration account where it would receive funds from a SVB lockbox, which would then be swept by the SVB Money Market Account. The Debtors are in the process of closing this account as the account is no longer active.<br><br>As of the Petition Date, the SVB Deposit Account had a zero dollar balance. |
| **SVB Collateral MMA – LOC Collateral Account**<br>*bank account ending 7619* | The Debtors maintain an account to hold restricted cash for the benefit of a surety provider serving as collateral for a SVB letter of credit (the "<u>SVB Collateral MMA LOC Collateral Account</u>").<br><br>Historically, the SVB Collateral MMC LOC Collateral Account was used to hold funds serving as collateral for a SVB letter of credit issued to a surety provider. The letter of credit relating to the surety bond is no longer required. As such, the Debtors are in the process of closing this account.<br><br>As of the Petition Date, the SVB Collateral MMA – LOC Collateral Account has $131,500. |
| **SVB Money Market Account**<br>*bank account 2469* | The Debtors maintain a money market account that pools the funds from the other SVB Accounts (the "<u>SVB Money Market Account</u>").<br><br>Historically, the SVB Money Market Account pooled deposits from the SVB Deposit Account on a daily basis. |

---

[7]    In addition, the Debtors maintain the Morgan Stanley Account, which has never been funded and maintains a balance of zero dollars. The Debtors intend to close this account.

| Bank Account | Description of Bank Account |
|---|---|
| | As of the Petition Date, the SVB Money Market Account had a zero dollar balance. |

## II.        Bank and Processing Fees

12.        In the ordinary course of business, the Banks charge, and the Debtors pay, honor, or allow the deduction from the appropriate Bank Accounts, certain service charges, and other fees, costs, and expenses (collectively, the "Bank Fees").  The Bank Fees are paid by the Debtors monthly.  In 2022, the Debtors estimate that they paid approximately $4,500 in Bank Fees on average each month, depending on transaction volume, such as wire processing and check writing. As of the Petition Date, the Debtors estimate that there are approximately $10,000 in outstanding Bank Fees, all of which will come due within thirty (30) days of the Petition Date.

## III.        The Business Forms

13.        In the ordinary course of business, the Debtors use a variety of checks, correspondence, and business forms, including, without limitation, business letterhead, purchase orders, invoices, envelopes, and promotional materials (collectively, the "Business Forms"). Because the Business Forms were used prepetition, some of the Business Forms do not reference the Debtors' current status as debtors in possession.

14.        Most parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession as a result of the publicity surrounding the chapter 11 cases, particularly within the Debtors' industry, including by virtue of the notice of commencement of the chapter 11 cases that has been or will be provided to parties in interest.

15.        For the reasons outlined herein and in the First Day Declaration, the Debtors submit that requiring them to change existing Business Forms would unnecessarily distract the Debtors from their restructuring efforts and impose needless expenses on the estates.  For these reasons, the Debtors request that they be authorized to use their existing Business Forms without being

required to place the label "Debtor In Possession" on each.  Upon depletion of the Debtors' check stock, the Debtors will obtain new check stock bearing the designation "Debtor In Possession."

## IV.    Corporate Credit Card Programs

16.    In the ordinary course of business, the Debtors maintain two corporate credit card programs (the "Corporate Credit Card Programs") to help fund their operations:  (i) a corporate program issued by American Express (the "American Express Program") and (ii) one credit account by WEX, Inc. (the "WEX Program").

17.    The American Express Program is used in the ordinary course of business by the Debtors to purchase certain products.  There are approximately 55 American Express Program cards used by the Debtors.  The American Express Program is typically used to purchase products used in the Debtors' supply chains and for general corporate functions.  The Debtors incur on average approximately $50,000 in charges through the American Express Program per month.  As of the Petition Date, the Debtors estimate there are approximately $45,000 in outstanding prepetition amounts owed on account of the American Express Programs.

18.    Under the WEX Program certain of the Debtors' use credit cards issued by WEX to purchase fuel in relation to local truck transportation associated with the Debtors' ordinary course of business.  There is approximately one WEX Program card used by the Debtors.  The Debtors incur on average approximately $3,000 in charges through the WEX Program per month.  As of the Petition Date, the Debtors estimate there are approximately $3,000 in outstanding prepetition amounts owed on account of the WEX Program.

19.    By this Motion, the Debtors seek authority to continue the Corporate Credit Card Program in the ordinary course of business, including making ordinary course modifications

thereto, and to pay any outstanding amounts, regardless of whether such amounts arose before or after the Petition Date, in the ordinary course and consistent with historical practices.

**Bases For Relief**

**I.     Maintaining the Existing Cash Management System is Important to the Debtors' Operations and Chapter 11 Efforts**

20.     The Debtors' request for authority to continue using the Cash Management System is consistent with section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business, without notice or a hearing." 11 U.S.C. § 363(c)(1).  Section 363(c)(1) is intended to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business.  *See, e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992); *see also In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007).  Included within the purview of section 363(c) is a debtor's ability to continue the routine transactions necessitated by its cash management system.  *See Amdura Nat'l Distrib. Co.* v. *Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).  Nevertheless, the Debtors file this Motion out of an abundance of caution, to the extent any aspect of the Cash Management System could be considered as outside the ordinary course of business for purposes of section 363(c) of the Bankruptcy Code.

21.     The Debtors submit that maintaining the existing Cash Management System, is in the best interests of the Debtors' estates and all parties in interest and, therefore, should be approved.  The key components of the Cash Management System have been used by the Debtors since 2019 as a customary and essential business practice, and the Cash Management System was designed to comply with the terms of the Senior Credit Agreement.  As described herein and in the First Day Declaration, any disruption to the Cash Management System would have an immediate adverse impact on the Debtors' business and would impair the Debtors' ability to

continue operating their business in the ordinary course and successfully administer the chapter 11 cases.  It would be time consuming, difficult, and costly for the Debtors to establish an entirely new system of accounts and a new cash management system.  The attendant delays from revising cash management procedures, redirecting receipts, and implementing new payment protocols would create unnecessary pressure on the Debtors while they work to meet the other administrative obligations imposed by chapter 11 of the Bankruptcy Code.  In addition, preserving a "business as usual" atmosphere and avoiding the unnecessary and costly distractions that would inevitably be associated with any substantial disruption in the Cash Management System will facilitate the Debtors' efforts in this regard.

22.    Courts in this and other districts have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *rev'd on other grounds*, 997 F.2d 1039 (3d Cir. 1993); *see also Southmark Corp.* v. *Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").  The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient."  *In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1061 (3d Cir. 1993).

23.    The Court may also exercise its equitable powers to grant the relief requested herein.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Continuing the Cash Management System without interruption is important to the

success of the chapter 11 cases, and it is within the Court's equitable power under section 105(a) to approve its continued use.  For these reasons, the Debtors believe that they should be permitted to continue using the Cash Management System as described herein.

24.     The Debtors submit that the circumstances of these chapter 11 cases warrant granting the relief requested herein, and that doing so is in the best interests of the Debtors, their estates, their creditors, and their stakeholders, and therefore should be granted.  Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue maintaining their Cash Management System and pay certain prepetition claims described herein, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

## II.    The Court Should Authorize the Debtors to Maintain Existing Bank Accounts and Continue Using Their Existing Business Forms

25.     The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has set forth certain operating and reporting requirements for chapter 11 cases (the "U.S. Trustee Guidelines") that require debtors in possession to, among other things: (a) establish one debtor in possession bank account for all estate monies required for the payment of taxes, including payroll taxes; (b) close all existing bank accounts and open new debtor in possession accounts; (c) maintain a separate debtor in possession account for cash collateral; and (d) obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account on such checks.  These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, and to help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

26.     Enforcement of the U.S. Trustee Guidelines during these chapter 11 cases would severely disrupt the Debtors' ordinary financial operations, including disrupting the Debtors'

ability to efficiently obtain revenues.  Accordingly, for the reasons outlined herein and in the First Day Declaration the Debtors respectfully request that the Court allow them to operate each Bank Account as it was maintained in the ordinary course of business before the Petition Date as described herein.

27.     In addition, the Debtors have concurrently filed several motions seeking authority to pay certain prepetition obligations in the ordinary course of business.  If the Debtors were required to open new accounts, they would likely be unable to timely implement the critical relief sought in those motions.  The Debtors have the ability to monitor disbursements from the Bank Accounts to ensure that only those prepetition obligations expressly approved by the Court are paid.

28.     In the ordinary course of their business, the Debtors use a variety of checks and business forms.  To avoid disruption of the Cash Management System and unnecessary expense, the Debtors request that they be authorized to continue using their existing Business Forms as such forms were in existence immediately before the Petition Date, without reference to the Debtors' status as debtors in possession.  Pursuant to Local Rule 2015-2, in the event that the Debtors need to purchase new check stock during the pendency of these chapter 11 cases, such check stock will include a legend referring to the Debtors as "Debtors in Possession" or "DIP" and the lead case number.  In addition, within fifteen days of the entry of the proposed Interim Order, the Debtors will cause any electronically produced checks to reflect "Debtor in Possession" or "DIP" and the lead case number.

29.     The Debtors submit that parties in interest will not be prejudiced if the Debtors are authorized to continue using their existing Business Forms.  The Debtors will be sending a notice of commencement of these chapter 11 cases to all creditors.  Most parties doing business with the

Debtors will likely be aware of their status as debtors in possession; thus, the Debtors submit that changing Business Forms immediately is unnecessary and unduly burdensome.

### III. Authority to Honor Certain Prepetition Obligations Related to the Cash Management System Should be Granted

30.     The Debtors submit that payment of the prepetition Bank Fees is in the best interests of the Debtors and all parties in interest in these chapter 11 cases, as it will prevent unnecessary disruptions to the Cash Management System and ensure that the Debtors' receipt of funds is not delayed.  Payment of prepetition Bank Fees will not prejudice any parties in interest.  Indeed, because the Banks and credit processors likely have setoff rights for the Bank Fees, payment of prepetition Bank Fees should not alter the rights of unsecured creditors in these chapter 11 cases. Accordingly, the Debtors request authority to pay any outstanding prepetition Bank Fees and other similar service charges to maintain the Cash Management System.

### IV. Continuation of Corporate Credit Card Programs is Warranted Under Section 363 and 105(a) of the Bankruptcy Code

31.     The Corporate Credit Card Programs are essential to the Debtors' operations.  The Corporate Credit Card Programs allow the Debtors' employees to charge business-related expenses to the Debtors thereby allowing the employees to conduct business more efficiently. Continuing the Credit Card Programs and satisfying the prepetition and postpetition amounts outstanding thereunder will help minimize any adverse effect of the commencement of these chapter 11 cases on the Debtors' business.  Accordingly, the Debtors request authority to continue the Corporate Credit Card Programs in the ordinary course of business, including making ordinary course modifications thereto, and to pay any outstanding obligations, whether arising prepetition or postpetition, regarding the same.

**V.      The Court Should Waive Strict Compliance with Section 345(b) of the Bankruptcy Code, as Applicable**

32.      Section 345(a) of the Bankruptcy Code authorizes a debtor in possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  If a deposit or investment is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that a debtor must require that the entity with which the deposit or investment is made obtain a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety or deposit securities of the kind specified in 31 U.S.C. § 9303, unless the court for cause orders otherwise.  *See* 11 U.S.C. § 345(b); *see also* 140 Cong. Rec. H10767 (1994) (stating that while the requirement under section 345(b) for debtor funds to be FDIC insured, collateralized, or bonded may be "wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, it can work to needlessly handcuff larger, more sophisticated debtors").

33.      The Debtors seek a waiver of strict compliance with section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines with respect to the Bank Accounts to the extent applicable.  The Debtors' active Bank Accounts are maintained at Bank of America.[8]  The Debtors believe that each Bank Account held at Bank of America, except for the WCMA Account, complies with section 345(b) of the Bankruptcy Code because it is maintained at Bank of America, an authorized depository in accordance with the U.S. Trustee Guidelines.  However, to the extent that such Bank Accounts are not already in compliance with section 345(b) of the Bankruptcy

---

[8]      The SVB Accounts are also maintained at an authorized depository, First Citizens Bank and Trust Company. Additionally, these accounts primarily maintain a zero balance except for the SVB Collateral MMA LOC Collateral Account.

Code, the Debtors submit that cause exists for the Court to waive strict compliance with the requirements of section 345 of the Bankruptcy Code upon entry of the Final Order.  In particular, the BlackRock Fund yields approximately 5% per year while the U.S. Treasury Holdings maintain coupon yields in excess of 5%.  In comparison, the Concentration Account (or other similar bank accounts) would yield only a nominal rate, amounting to a significant difference in income per month based on the current balance in the WCMA Account as of the Petition Date.  For example, in July 2023, the Debtors received approximately $150,000 in income from the WCMA Account holdings.

**VI.     The Court Should Authorize the Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course of Business**

34.     In connection with the foregoing, the Debtors respectfully request that the Court (a) authorize the Banks to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the Debtors' representations with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion (such banks having no liability to any party for relying on such representations by the Debtors provided for herein); (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks, and (d) authorize the Debtors to continue to manage the U.S. Treasury Holdings in the ordinary course of business and otherwise operate the WCMA Account in the ordinary course of business.

**Immediate Relief Is Necessary**

35.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P.

6003. As described above and in the First Day Declaration, any disruption to the Cash Management System, on the terms proposed, would substantially diminish or impair the Debtors' efforts in these chapter 11 cases to preserve and maximize the value of their estates. For this reason and the others set forth above and in the First Day Declaration, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and because the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## Waiver of Stay Under Bankruptcy Rule 6004(h)

36.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As provided herein, and to implement the foregoing successfully, the Debtors request that the Proposed Orders include a finding that the Debtors have established cause to exclude such relief from the fourteen (14)-day stay period under Bankruptcy Rule 6004(h).

37.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Orders.

## Reservation of Rights

38.     Nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order

granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

## **Notice**

39.    The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the District of Delaware; (d) the Internal Revenue Service; (e) the state attorneys general for states in which the Debtors conduct business; (f) the Securities and Exchange Commission; (g) counsel to the Cowen Parties; (h) counsel to the Banks; (i) counsel to Morgan Stanley, and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders

granting the relief requested herein and such other relief as the Court deems appropriate under the

circumstances.

Dated:    August 7, 2023
          Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

*/s/ Andrew L. Magaziner*
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
        amagaziner@ycst.com
        sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Paul M. Basta (*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Michael J. Colarossi (*pro hac vice* admission pending)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
        rbritton@paulweiss.com
        mcolarossi@paulweiss.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PROTERRA INC, *et al.*,[1] | ) | Case No. 23-11120 (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING (A) CONTINUED
USE OF CASH MANAGEMENT SYSTEM, (B) MAINTENANCE OF
BANK ACCOUNTS AND BUSINESS FORMS, (C) CONTINUANCE OF
CORPORATE CREDIT CARD PROGRAMS, AND (D) HONORING
CERTAIN PREPETITION OBLIGATIONS; (II) WAIVING STRICT
COMPLIANCE WITH 11 U.S.C. § 345(b) AND CERTAIN OPERATING
GUIDELINES, AS APPLICABLE, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the Debtors[2] for entry of an interim order (this "Interim

Order") (a) authorizing the Debtors to (i) continue using their existing Cash Management System,

(ii) maintain the Bank Accounts and Business Forms, (iii) continue the Corporate Credit Card

Programs, and (iv) honor certain prepetition obligations related to the Cash Management System;

(b) waiving strict compliance with section 345(b) of the Bankruptcy Code and certain operating

guidelines related to the Bank Accounts upon entry of the Final Order, to the extent applicable;

and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day

Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334 and the Amended Standing Order; and this Court having found that this is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having

found that the relief requested in the Motion is in the best interests of the Debtors' estates, their

creditors, and other parties in interest; and this Court having found that the Debtors' notice of the

Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and

no other notice need be provided; and this Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing before this Court (the "Hearing");

and this Court having determined that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein; and upon all of the proceedings had

before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized to: (a) continue operating the Cash Management System

and honor certain prepetition obligations related thereto as set forth herein; (b) maintain existing

Bank Accounts and Business Forms; (c) maintain the ability to use debit, wire and ACH payments;

(d) continue to deposit funds in accordance with their prepetition practices to the extent set forth

herein; and (e) continue to manage the U.S. Treasury Holdings in the ordinary course of business.

3.      The Debtors are further authorized, in their sole discretion, to: (a) continue using,

with the same account numbers, all of the Bank Accounts in existence as of the Petition Date,

including those accounts identified on Exhibit D to the Motion; (b) use, in their present form, all

Business Forms, without reference to the Debtors' status as debtors in possession; (c) treat the

Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (d) deposit

funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire

transfers, ACH payments, and other debits; and (e) pay any ordinary course prepetition or

postpetition fees, including Bank Fees in an amount not to exceed $10,000 pending entry of a final order, incurred in connection with the Bank Accounts and to otherwise perform their obligations under the documents governing the Bank Accounts.

4.      The Banks at which the Bank Accounts are maintained are authorized to continue to maintain, service, and administer the Bank Accounts in accordance with prepetition practices as accounts of debtors in possession, without interruption and in the ordinary course of business. In this regard, the Banks are authorized to receive, process, honor and pay any and all checks, ACH payments and other instructions, and drafts payable through, drawn-on or directed on the Bank Accounts by holders, makers or other parties entitled to issue instructions with respect thereto on account of any claim, only if sufficient funds are on deposit in the applicable Bank Accounts to process and honor such instructions with respect to obligations; *provided*, *however*, that any check, draft, electronic fund transfer, or ACH drawn or issued by the Debtors before the Petition Date may be honored by a Bank only if specifically authorized by order of this Court and identified to the applicable Bank by the Debtors.

5.      In the course of providing cash management services to the Debtors, the Banks, without further order of this Court, are authorized to (a) charge, and the Debtors are authorized to pay or honor, both prepetition and postpetition service and other fees, costs, charges and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors, and (b) charge-back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course.

6.      The Debtors and the Banks are hereby authorized to continue to perform pursuant to the terms of any unexpired prepetition cash management agreements that may exist between them, except and to the extent otherwise directed by the terms of this Interim Order and except as

amended, modified, or supplemented by agreement between the Debtors and the Banks in the ordinary course of business; *provided*, that notwithstanding anything to the contrary in the Senior Credit Agreement, the Debtors shall not be permitted to remit any payments to the First Lien Agent constituting a payment on account of the prepetition outstanding principal amount of the Senior Credit Agreement during the pendency of these chapter 11 cases, unless otherwise ordered by this Court.

7.      Notwithstanding any other provision of this Interim Order, the Banks are authorized to rely on the Debtors' representations with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors should be honored pursuant to any order of this Court, whether or not such payments are dated, drawn, or issued prior to, on, or subsequent to the Petition Date.  Any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite the above-described protective measures, shall neither be deemed to be in violation of this Interim Order nor be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

8.      The Banks are further authorized to accept and hold the Debtors' funds in accordance with the Debtors' instructions; *provided*, in each case, that the Banks shall not have any liability to any party for relying on such representations.

9.      The Debtors are authorized to use their existing Business Forms; *provided*, *however*, that once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" or "DIP" and the corresponding bankruptcy

case number on all checks; *provided, further*, within fifteen (15) days of entry of this Interim Order, any electronically produced checks shall reflect the designation "Debtor in Possession" or "DIP" and the corresponding bankruptcy case number.

10.     The Debtors are authorized to (a) continue the Corporate Credit Card Programs in the ordinary course, including making ordinary course modifications thereto, (b) perform their obligations under the Corporate Credit Card Programs, and (c) pay outstanding prepetition expenses arising thereunder in the aggregate amount not to exceed $53,000 and postpetition expenses in the ordinary course.

11.     Notwithstanding anything contained herein, despite the Debtors' use of the consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which Debtor pays those disbursements.

12.     Each Bank is authorized to debit the Debtors' accounts in the ordinary course of business without need for further order of this Court for: (a) all checks, automated clearing house entries, and other items deposited or credited to one of Debtors' accounts with such Bank prior to filing of the petitions which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to filing of the petitions; and (b) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Bank or payment processors as service charges for the maintenance of the Cash Management System.

13.     For Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors will immediately, upon entry of this Order, (a) contact each Bank, (b) provide the Bank with the Debtors' employer identification

5

number, and (c) identify each Bank Account held at such Banks as being held by a debtor in possession in a bankruptcy case.

14.     Nothing contained herein shall prevent the Debtors from closing or implementing changes to any Bank Account(s) or opening any additional bank accounts, as they may deem necessary and appropriate, and any relevant Bank is authorized to honor the Debtors' requests and to close, open, or implement changes to such Bank Accounts or additional bank accounts, as the case may be, under the terms of the documents governing the Bank Accounts or otherwise agreed to by the relevant Bank, and to make any other modification to the prepetition cash management structure to comply with the requirements of any order entered by this Court authorizing the use of cash collateral entered in these chapter 11 cases; *provided* that notice of the opening or closure of any account shall be given to the U.S. Trustee, counsel to Bank of America, counsel to the Cowen Parties, and any statutory committee within fifteen (15) days of such opening or closure; and *provided*, further, that any new bank accounts shall be opened at a bank that is party to a Uniform Depository Agreement with the U.S. Trustee, or at a bank that is willing to immediately execute a Uniform Depository Agreement.  The Banks shall have no liability to any party for relying on any representations or instructions by the Debtors with respect to the foregoing.

15.     The relief granted in this Interim Order extends to any new bank account opened by the Debtors, and in accordance with the provisions of this Interim Order, such account shall be deemed a Bank Account, and the bank at which such Bank Account is opened, a Bank.

16.     The Debtors shall maintain accurate and detailed records of all transfers within the Cash Management System so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.

17.     To the extent that the Bank Accounts and Cash Management System, as applicable, are not in strict compliance with the requirements of section 345(b) of the Bankruptcy Code, the Debtors shall have thirty (30) days (or such additional time as may be extended by further order of the Court) from the date hereof to either come into compliance with section 345(b) of the Bankruptcy Code with respect to such Bank Accounts, solely to the extent applicable, or to make such other arrangements as agreed to by the U.S. Trustee.  If no such agreement can be reached, the Debtors shall seek further relief from this Court.

18.     Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

19.     The relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and accordingly Bankruptcy Rule 6003(b) has been satisfied.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order.

21.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

22.     The final hearing on the Motion shall be held on _____, 2023, at __:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion must be filed with the Court on or before 4:00 p.m., prevailing Eastern Time, on _____, 2023, and served on the following parties: (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn. Paul Basta (pbasta@paulweiss.com) and Robert Britton (rbritton@paulweiss.com); (b)  Young Conaway Stargatt & Taylor LLP, 1000 North Street, Wilmington, Delaware, 19801 Attn: Pauline Morgan (pmorgan@ycst.com) and Andrew Magaziner (amagaziner@ycst.com); (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801 (Attn: ____); (d) counsel to Bank of America, and (e) Counsel to the Cowen Parties.  If no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the final hearing. Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

**<u>Exhibit B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PROTERRA INC, *et al.*,[1] | ) | Case No. 23-11120 (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. __** |

**FINAL ORDER (I) AUTHORIZING (A) CONTINUED
USE OF CASH MANAGEMENT SYSTEM, (B) MAINTENANCE OF
BANK ACCOUNTS AND BUSINESS FORMS, (C) CONTINUANCE OF
CORPORATE CREDIT CARD PROGRAMS, AND (D) HONORING
CERTAIN PREPETITION OBLIGATIONS; (II) WAIVING STRICT
COMPLIANCE WITH 11 U.S.C. § 345(b) AND CERTAIN OPERATING
GUIDELINES, AS APPLICABLE, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>") of the Debtors[2] for entry of a final order

(this "<u>Final Order</u>") (a) authorizing the Debtors to (i) continue using their existing Cash

Management System, (ii) maintain the Bank Accounts and Business Forms, (iii) continue the

Corporate Credit Card Programs, and (iv) honor certain prepetition obligations related to the Cash

Management System; (b) waiving strict compliance with section 345(b) of the Bankruptcy Code

and certain operating guidelines related to the Bank Accounts, to the extent applicable; and

(c) granting related relief; all as more fully set forth in the Motion; and upon the First Day

Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334 and the Amended Standing Order; and this Court having found that this is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized to: (a) continue operating the Cash Management System and honor any prepetition obligations related thereto; (b) maintain existing Bank Accounts and Business Forms; (c) maintain the ability to use debit, wire and ACH payments; (d) continue to deposit funds in accordance with their prepetition practices to the extent set forth herein; and (e) continue to manage the U.S. Treasury Holdings in the ordinary course of business.

3.      The Debtors are further authorized, in their sole discretion, to: (a) continue using, with the same account numbers, all of the Bank Accounts in existence as of the Petition Date, including those accounts identified on Exhibit D to the Motion; (b) use, in their present form, all Business Forms, without reference to the Debtors' status as debtors in possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire

transfers, ACH payments, and other debits; and (e) pay any ordinary course prepetition or postpetition fees, including Bank Fees in an amount not to exceed $10,000 in the aggregate, incurred in connection with the Bank Accounts and to otherwise perform their obligations under the documents governing the Bank Accounts.

4.      The Banks at which the Bank Accounts are maintained are authorized to continue to maintain, service, and administer the Bank Accounts in accordance with prepetition practices as accounts of debtors in possession, without interruption and in the ordinary course of business.  In this regard, the Banks are authorized to receive, process, honor and pay any and all checks, ACH payments and other instructions, and drafts payable through, drawn-on or directed on the Bank Accounts by holders, makers or other parties entitled to issue instructions with respect thereto on account of any claim, only if sufficient funds are on deposit in the applicable Bank Accounts to process and honor such instructions with respect to obligations; *provided*, *however*, that any check, draft, electronic fund transfer, or ACH drawn or issued by the Debtors before the Petition Date may be honored by a Bank only if specifically authorized by order of this Court and identified to the applicable Bank by the Debtors.

5.      In the course of providing cash management services to the Debtors, the Banks, without further order of this Court, are authorized to (a) charge, and the Debtors are authorized to pay or honor, both prepetition and postpetition service and other fees, costs, charges and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors, and (b) charge-back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course.

6.      The Debtors and the Banks are hereby authorized to continue to perform pursuant to the terms of any unexpired prepetition cash management agreements that may exist between them, except and to the extent otherwise directed by the terms of this Final Order and except as amended, modified, or supplemented by agreement between the Debtors and the Banks in the ordinary course of business; *provided*, that notwithstanding anything to the contrary in the Senior Credit Agreement, the Debtors shall not be permitted to remit any payments to the First Lien Agent constituting a payment on account of the prepetition outstanding principal amount of the Senior Credit Agreement during the pendency of these chapter 11 cases, unless otherwise ordered by this Court.

7.      Notwithstanding any other provision of this Final Order, the Banks are authorized to rely on the Debtors' representations with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors should be honored pursuant to any order of this Court, whether or not such payments are dated, drawn, or issued prior to, on, or subsequent to the Petition Date.  Any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite the above-described protective measures, shall neither be deemed to be in violation of this Final Order nor be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

8.      The Banks are further authorized to accept and hold the Debtors' funds in accordance with the Debtors' instructions; *provided*, in each case, that the Banks shall not have any liability to any party for relying on such representations.

4

9.      The Debtors are authorized to use their existing Business Forms; *provided*, *however*, that once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" or "DIP" and the corresponding bankruptcy case number on all checks.

10.     The Debtors are authorized to (a) continue the Corporate Credit Card Programs in the ordinary course, including making ordinary course modifications thereto, (b) perform their obligations under the Corporate Credit Card Programs, and (c) pay outstanding prepetition expenses arising thereunder in the aggregate amount not to exceed $53,000 and postpetition expenses in the ordinary course.

11.     Notwithstanding anything contained herein, despite the Debtors' use of the consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which Debtor pays those disbursements.

12.     Each Bank is authorized to debit the Debtors' accounts in the ordinary course of business without need for further order of this Court for: (a) all checks, automated clearing house entries, and other items deposited or credited to one of Debtors' accounts with such Bank prior to filing of the petitions which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to filing of the petitions; and (b) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Bank or payment processors as service charges for the maintenance of the Cash Management System.

13.     For Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors will immediately, upon entry

of this Order, (a) contact each Bank, (b) provide the Bank with the Debtors' employer identification number, and (c) identify each Bank Account held at such Banks as being held by a debtor in possession in a bankruptcy case.

14.    Nothing contained herein shall prevent the Debtors from closing or implementing changes to any Bank Account(s) or opening any additional bank accounts, as they may deem necessary and appropriate, and any relevant Bank is authorized to honor the Debtors' requests and to close, open, or implement changes to such Bank Accounts or additional bank accounts, as the case may be, under the terms of the documents governing the Bank Accounts or otherwise agreed to by the relevant Bank, and to make any other modification to the prepetition cash management structure to comply with the requirements of any order entered by this Court authorizing the use of cash collateral entered in these chapter 11 cases; *provided* that notice of the opening or closure of any account shall be given to the U.S. Trustee, counsel to Bank of America, counsel to the Cowen Parties, and any statutory committee within fifteen (15) days of such opening or closure; and *provided*, further, that any new bank accounts shall be opened at a bank that is party to a Uniform Depository Agreement with the U.S. Trustee, or at a bank that is willing to immediately execute a Uniform Depository Agreement.  The Banks shall have no liability to any party for relying on any representations or instructions by the Debtors with respect to the foregoing.

15.    The relief granted in this Final Order extends to any new bank account opened by the Debtors, and in accordance with the provisions of this Final Order, such account shall be deemed a Bank Account and the bank at which such Bank Account is opened, a Bank.

16.    The Debtors shall maintain accurate and detailed records of all transfers within the Cash Management System so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.

17. Strict compliance with section 345(b) of the Bankruptcy Code and, as applicable, the U.S. Trustee Guidelines, is hereby waived on a final basis with respect to applicable Banks and the Bank Accounts maintained thereby.

18. Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

19. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

20. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order.

21.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## **EXHIBIT C**

**Diagram of Cash Management System**



## Legend



Notes
[1] Proterra Operating Company, Inc. is the account holder for all of the Debtors' bank accounts.

Defined Terms
- Bank of America, N.A. ("BOFA")
- Silicon Valley Bank ("SVB")



# **EXHIBIT D**

## **List of Bank Accounts**

| Ref | Debtor | Bank Name | Account Number (last 4 digits) | Balance ($) (8/7/2023) | Account Type |
|-----|--------|-----------|-------------------------------|------------------------|--------------|
| 1 | Proterra Operating Company, Inc. | Bank of America, N.A. | 5378 | $ 6,811,050.42 | Concentration Account |
| 2 | Proterra Operating Company, Inc. | Bank of America, N.A. | 0802 | $ - | Cash Sweep Account |
| 3 | Proterra Operating Company, Inc. | Bank of America, N.A. | 0807 | $ - | Zero Balance Account |
| 4 | Proterra Operating Company, Inc. | Bank of America, N.A. | 0548 | $ - | Zero Balance Account |
| 5 | Proterra Operating Company, Inc. | Bank of America, N.A. | 2116 | $ - | Zero Balance Account |
| 6 | Proterra Operating Company, Inc. | Merrill Lynch | 3373 | $ 130,939,165.16 | Working Capital Management Account |
| 7 | Proterra Operating Company, Inc. | Silicon Valley Bank | 8094 | $ - | Operating Account |
| 8 | Proterra Operating Company, Inc. | Silicon Valley Bank | 2469 | $ - | Money Market Account |
| 9 | Proterra Operating Company, Inc. | Silicon Valley Bank | 7619 | $ 131,470.00 | Cash Collateral Account |
| 10 | Proterra Operating Company, Inc. | Morgan Stanley | 0833 | $ - | Investment Account |

## **EXHIBIT E**

**List of Letters of Credit**

| Ref | Debtor | Issuer | Beneficiary | Expiration Date | Amount (USD) |
|---|---|---|---|---|---|
| 1 | Proterra Operating Company, Inc. | Bank of America, N.A. | Philadelphia Insurance Companies | 10/4/2023 | $ 2,610,221.00 |
| 2 | Proterra Operating Company, Inc. | Bank of America, N.A. | Carolina CC Venture XXXVII LLC | 11/3/2023 | $ 4,000,000.00 |
| 3 | Proterra Operating Company, Inc. | Bank of America, N.A. | LG Energy Solutions Ltd Tower 1 | 12/15/2023 | $ 10,000,000.00 |
| 4 | Proterra Operating Company, Inc. | Bank of America, N.A. | Great American Insurance Company | 1/29/2024 | $ 530,000.00 |
| 5 | Proterra Operating Company, Inc. | Bank of America, N.A. | Atlantic Specialty Insurance | 2/2/2024 | $ 1,373,700.00 |
| 6 | Proterra Operating Company, Inc. | Bank of America, N.A. | Atlantic Specialty Insurance | 3/27/2024 | $ 986,278.00 |
| 7 | Proterra Operating Company, Inc. | Bank of America, N.A. | Steelcase Financial Services Inc. | 5/19/2024 | $ 741,685.00 |
| 8 | Proterra Operating Company, Inc. | Bank of America, N.A. | Bond Safeguard Insurance Company | 6/8/2024 | $ 900,000.00 |
| 9 | Proterra Operating Company, Inc. | Bank of America, N.A. | BC Transit[1] | 7/1/2024 | $ 755,686.50 |
| 10 | Proterra, Inc. | Silicon Valley Bank | Philadelphia Insurance Companies | 6/14/2024 | $ 131,470.00 |

Notes
[1] CAD denominated letter of credit that is subject to currency rate fluctuations.