IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>PROTERRA INC, *et al.*,[1]<br><br>Debtors. | ) <br> ) Chapter 11 <br> ) <br> ) Case No. 23-11120 (BLS) <br> ) <br> ) (Joint Administration Requested) <br> ) |

**RESERVATION OF RIGHTS AND LIMITED
OBJECTION OF THE CSI PARTIES TO THE DEBTORS'
MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION (III) MODIFYING
THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

CSI GP I LLC, a Delaware limited liability company ("CSI"), in its capacity as collateral agent (the "Second Lien Agent") under that certain Note Purchase Agreement, dated August 4, 2020, by and among Debtor Proterra Operating Company, Inc. (f/k/a Proterra Inc) ("OpCo"), the investors from time to time party thereto, including CSI Prodigy Holdco LP, CSI Prodigy Co-Investment LP, and CSI PRTA Co-Investment LP (collectively, the "CSI Noteholders," collectively with the Second Lien Agent, the "CSI Parties," and collectively with any other noteholders, the "Noteholders"), the guarantors, if any, from time to time party thereto, and the Second Lien Agent (as amended by that certain Amendment No. 1 to Secured Convertible Promissory Notes and Note Purchase Agreement, dated August 31, 2020 and that certain Amendment No. 2 to Secured Convertible Promissory Notes and Note Purchase Agreement, dated March 31, 2023, and as may be further amended, amended and restated, supplemented or otherwise modified, the "Note Purchase Agreement" and, collectively with any convertible notes, security

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

agreements, and other documents entered into in connection with the Note Purchase Agreement and amendments thereto, the "Prepetition Second Lien Loan Documents"), together with the CSI Noteholders, by and through their undersigned counsel, Sidley Austin LLP, hereby submit this reservation of rights and limited objection (the "Reservation of Rights") to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [ECF No. 44] (the "Cash Collateral Motion").[2] In support of this Reservation of Rights, the CSI Parties respectfully state as follows:

### PRELIMINARY STATEMENT

1. The Debtors have taken the near-unprecedented step of **filing these chapter 11 cases without informing their secured creditor, CSI, which has a lien on, among other things, all of the Debtors' cash and cash equivalents**—the very cash collateral the Debtors seek to use. The Debtors assert that they took this at best unusual step because they believe it advantages their position in as of yet uncommenced litigation regarding a liquidation payment amount under the Note Purchase Agreement (the "Liquidation Payment Amount"). *See* Cash Collateral Motion at ¶¶ 18 – 21. The Debtors' conduct, the decision-making process of their board leading to the filing of these chapter 11 cases, and the allowable amount of the CSI Parties' claim are issues for another day. The Debtors agree. *Id.* at ¶ 22. However, the Debtors' conduct around the commencement of these chapter 11 cases and their filings at the outset of these cases suggest that the manner in which the cases were filed is nothing more than a litigation tactic designed to attempt to unfairly deny the CSI Parties the benefit of their bargain.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Cash Collateral Motion.

2.       The CSI Parties are confident that if and when the amount and allowance of their claims are considered by the Court, the Court will determine either that the Liquidation Payment Amount has already accrued or will inevitably accrue during these chapter 11 cases.  However, that issue is not before the Court at this time, especially since the value of the Debtors' assets and the course that this case will take are yet to be determined.  What is before the Court is the Debtors' ability to use the CSI Parties' cash collateral.  Thus, despite the Debtors' conduct, the CSI Parties have attempted, on the incredibly short notice provided them, to reach agreement with the Debtors on consensual use of cash collateral.  The CSI Parties have moved swiftly to engage financial advisors and in good faith have attempted to reach agreement with these Debtors on a short-term "vanilla" cash collateral order that will preserve the Debtors' going concern value and allow for payment of its employees while the CSI Parties and their professionals attempt to get up to speed.  As of this writing, the parties have not yet reached agreement, but the CSI Parties intend to continue to act in good faith to preserve the value of the Debtors' assets.

## BACKGROUND

3.       As the Debtors have acknowledged, OpCo's obligations related to the Prepetition Second Lien Loan Documents are secured by a second-priority lien in favor of CSI on substantially all of the assets of OpCo, including its intellectual property, which is junior only to a revolving loan and letter of credit facility provided by Bank of America, under which the Debtors' only exposure is approximately $21 million in undrawn letters of credit.  *See Declaration of Gareth T. Joyce in Support of Chapter 11 Petitions and First Day Pleadings*, at ¶ 45 (the "First Day Declaration").

4.       As of the date hereof, the Debtors owe approximately $177.2 million in principal and accrued interest under the Prepetition Second Lien Documents, plus certain fees, expenses,

and other obligations under the Prepetition Second Lien Loan Documents. In addition, the Debtors either currently owe the approximately $88.6 million Liquidation Payment Amount, or it will inevitably accrue at a later date. The CSI Parties own approximately 98% of the Second Lien Convertible Notes, and CSI is the collateral agent for the remaining Second Lien Convertible Notes.

5.  Nevertheless, the Debtors took the highly unusual step of filing for chapter 11 bankruptcy protection without first engaging with the CSI Parties whatsoever. The CSI Parties only learned of the Debtors' intention to file for bankruptcy protection after they had already done so. S*ee* First Day Declaration at ¶ 48.

6.  The CSI Parties did not receive a proposed draft of the cash collateral order in these chapter 11 cases from the Debtors until the early morning hours Eastern Time of August 8th (the day after the Petition Date), and did not receive a copy of the proposed cash collateral budget until just before business hours Eastern Time on August 8th. The CSI Parties did not receive the Cash Collateral Motion—the document that discloses the Debtors' interpretation of the Prepetition Second Lien Loan Documents—until it was filed the morning of August 9th. However, contrary to the Debtors' assertions, which the CSI Parties refute and will address at the appropriate time, their refusal to engage with the CSI Parties prior to the bankruptcy filing does not change the amount owed under the Prepetition Second Lien Loan Documents.

7.  Instead, the Debtors' lack of prepetition communication and failure to provide the relevant documents to the CSI Parties immediately upon the Debtors' bankruptcy filing shows a willingness to put the Debtors' operations in jeopardy to enhance a litigation strategy. Regardless of whatever strained arguments the Debtors may make that prepetition conversations about merely the use of cash collateral somehow (dis)advantages litigation, it cannot seriously be argued that

the Debtors burdened multiple parties (and may have risked their operational continuity) by not giving even bare notice of their intent to file, so that secured lenders (and other constituents) could begin to prepare for the first day hearing in an orderly fashion.

8. The Debtors' failure to communicate with CSI is particularly odd in light of the history of the parties. CSI first reached out to the Debtors in November 2022 to express a concern that the Debtors may breach covenants in the Note Purchase Agreement or experience cash flow issues shortly thereafter. Despite numerous attempts by CSI to open a dialogue with the Debtors in late 2022 and early 2023, the Debtors first engaged with CSI only a few days before their Form 10-K for fiscal year 2022 was due. At that time, absent action by CSI, the Debtors would have been required to disclose covenant breaches under the Note Purchase Agreement in their Form 10-K. Instead, the CSI Parties worked with the Debtors to negotiate a waiver of certain breaches and defaults on an expedited basis to give the Debtors time to address their issues and attempt to raise additional capital.

9. Nevertheless, the CSI Parties recognize the importance of the Debtors making certain payments in the early stages of these chapter 11 cases, particularly funding the payroll that the CSI Parties understand is due to be paid on August 18. The CSI Parties and their professionals are committed to working in good faith with the Debtors to negotiate a consensual, short-term interim cash collateral order that facilitates the Debtors' ability to make certain key payments in the opening days of these chapter 11 cases while preserving all of the CSI Parties' rights. We are hopeful that in the near term, these chapter 11 cases can be put on the track on which they should have been commenced.

[*Remainder of page intentionally left blank.*]

Dated: August 9, 2023

*/s/ Laura Davis Jones*
**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
Edward A. Corma (DE Bar No. 6718)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com

-and-

**SIDLEY AUSTIN LLP**
Thomas R. Califano (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: tom.califano@sidley.com

-and-

Dennis M. Twomey (admitted *pro hac vice*)
Jackson T. Garvey (admitted *pro hac vice*)
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
Email: dtwomey@sidley.com
Email: jgarvey@sidley.com

-and-

Maegan Quejada (admitted *pro hac vice*)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone: (713) 495-4500
Facsimile: (713) 495-7799
Email: mquejada@sidley.com

*Counsel to the CSI Parties*