**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| PRODERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| Debtors. | ) (Joint Administration Requested) |

In re:  ) Chapter 11
)
PROTERRA INC, *et al.*,[1] ) Case No. 23-11120 (BLS)
)
Debtors. ) (Joint Administration Requested)
)

**Ref. Docket Nos. 4 & 45**

**SUPPLEMENTAL DECLARATION OF JUSTIN D. PUGH
IN FURTHER SUPPORT OF DEBTORS' VENDOR CLAIMANTS MOTION**

Pursuant to 28 U.S.C. § 1746, I, Justin D. Pugh, do hereby declare, under penalty of perjury:

1. I am a Senior Managing Director of FTI Consulting, Inc. I am over the age of 18, and I am authorized by each of the Debtors to submit this declaration (this "Supplemental Declaration") on behalf of the Debtors in support of the relief requested in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of (A) Lien Claimants, (B) 503(B)(9) Claimants, and (C) Critical Vendors, (II) Authorizing the Debtors to Pay Claims in Respect of Outstanding Orders, and (III) Granting Related Relief* [D.I. 4] (the "Vendor Claimants Motion").[2]

2. In the *Declaration of Justin D. Pugh in Support of Debtors' (I) Cash Collateral Motion and (II) Vendor Claimants Motion* [D.I. 45] (the "Original Declaration"), I explained that, "[e]ven if the 503(b)(9) Claimants were not entitled to priority status under the Bankruptcy Code, the Debtors would still seek to pay most, if not

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (1379); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Vendor Claimants Motion.

30649509.1

all, of their claims in the ordinary course as a Critical Vendor given their importance to the Debtors and their business." Original Declaration, ¶ 28.  This Supplemental Declaration is provided in support of the Debtors' position that paying the vast majority of 503(b)(9) Claims, on the terms provided in the Vendor Claimants Motion and the Proposed Orders annexed thereto, is critical to the Debtors' business operations, and to further explain why, absent the relief requested, the Debtors will suffer immediate and irreparable harm that will damage the Debtors and their estates.

3. Like the Critical Vendors, many of the 503(b)(9) Claimants are critical partners with the Debtors and have relationships that are necessary for the success of the Debtors' business.  The 503(b)(9) Claimants holding the vast majority of the 503(b)(9) Claims satisfy one or more of the following criteria:

- such vendor is a sole-source, limited-source, or high volume provider of goods or services critical to the Debtors' business operations;

- there are no alternative vendors available that can provide requisite volumes of similar goods on equal (or better) terms, including, in some circumstances, no alternative vendors whatsoever;

- the costs to locate a replacement vendor (including, pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of such vendor's prepetition priority claim;

- such vendor is located in a jurisdiction other than the United States, such as China, Germany, Korea, Poland, and Switzerland (collectively, the "Foreign Vendors");

- such vendor may have a right of reclamation under section 546(c) of the Bankruptcy Code to reclaim such goods sold to the Debtors within 45 days of the Petition Date, including goods that are in transit and have not yet been delivered to the Debtors; and

- failure to pay all or part of a particular vendor's claim would likely cause the vendor to hold goods owned by the Debtors, or refuse to ship valuable inventory on a postpetition basis.

4.  Unlike the Critical Vendor Claimants, none of which have executory contracts with the Debtors as of the Petition Date, some 503(b)(9) Claimants are subject to executory contracts executed with the Debtors.  Nonetheless, I believe it is important to pay the vast majority of such vendors' claims in accordance with the terms outlined in the Proposed Orders.

5.  First, the vast majority of the 503(b)(9) Claims held by 503(b)(9) Claimants who have contracts with the Debtors are Foreign Vendors.  Given the jurisdictions in which these vendors operate, it may be difficult, if not impossible, to obtain relief against such vendors to compel them to comply with their contractual obligations. Furthermore, while I understand it is possible that the Debtors could bring action against all vendors, foreign or domestic, to seek to compel them to comply with contractual obligations, given the cost in pursuing such relief, the likely delay in obtaining such relief, and the pyrrhic victory that may result even if the Debtors ultimately succeed in compelling performance, including, among other things, discouraging such vendors from working with bidders for the Debtors' assets or the reorganized Debtors, as the case may be, on a go forward basis, the Debtors believe it is in the best interest of the estates to have the authority to satisfy 503(b)(9) Claims in an exercise of the Debtors' business judgment.  Accordingly, I believe it is essential that the Debtors obtain the authority to satisfy the vast majority of 503(b)(9) Claims held by vendors with contracts in accordance with the terms proposed in the Proposed Orders.

6.  FTI estimates that, based on the books and records of the Debtors, of the approximately $22 million of 503(b)(9) Claims which the Debtors believe may be validly asserted by applicable claimants, approximately $7.7 million will come due prior

to a final hearing on the Vendor Claimants Motion. Absent the relief requested, the Debtors will suffer immediate and irreparable harm, thereby compromising the go-forward enterprise value.

7. Any delay making payments to, and in the provision of goods by, the 503(b)(9) Claimants described herein, and any disruption to the relationship between the Debtors and the 503(b)(9) Claimants described herein, would cause irreparable harm to the Debtors' business. In some circumstances, the Debtors would be unable to manufacture, to completion, certain pivotal products, leaving the Debtors with partial inventory that has no marketable value. In other circumstances, as mentioned above, critical vendor relationships may be irredeemably impaired and ultimately terminated, thus harming the Debtors' business moving forward. For the avoidance of doubt, the Debtors are seeking the authority to pay such claimants in the ordinary course of business during the interim period only for those vendors that satisfy one or more of the criteria set forth in paragraph 3 of this Supplemental Declaration.

8. Accordingly, under the circumstances of these proceedings, taking into consideration the ongoing marketing and sale process and importance in maintaining ordinary course operations during this pivotal stage of these Chapter 11 proceedings, paying 503(b)(9) Claimants on the terms proposed in the Proposed Orders is both necessary and essential to the Debtors' ability to achieve their chapter 11 objectives and preserve the value of their estates for the benefit of all interested parties.

[*Remainder of page intentionally blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 10, 2023
       New York, New York

                                              /s/ *Justin Pugh*
                                              Justin Pugh
                                              Senior Managing Director
                                              FTI Consulting, Inc.