# Exhibit 1

## Bidding Procedures

**BIDDING PROCEDURES**

**BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL
ASSETS OF PROTERRA INC AND PROTERRA OPERATING COMPANY, INC.**

On August 7, 2023, Proterra Inc and Proterra Operating Company, Inc. (collectively, the "Debtors" or the "Company") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

On [●], 2023, the Court entered that certain *Order (A) Approving Bidding Procedures to Govern the Sale of All Or Substantially All of the Debtors' Assets Pursuant to Section 363 of the Bankruptcy Code, (B) Approving Procedures Regarding Entry Into One or More Stalking Horse Agreements, (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of the Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) Scheduling Auctions for the Sales of the Company Assets and Hearings to Consider Approval of the Sales and Approving the Form and Manner of the Notice Thereof, and (F) Granting Related Relief* [Docket No. __] (the "Bidding Procedures Order"), which approved, among other things, (a) procedures pursuant to which the Debtors are authorized to solicit and pursue (such procedures, the "Bidding Procedures") one or more sales or dispositions (each, a "Sale") of all or any portion of the Debtors' assets (the "Company Assets") under section 363 of the Bankruptcy Code (each, an "Asset Sale") and any other type of strategic transaction involving the Debtors and/or the Company Assets, including, without limitation, a financing process for the potential raising of debt or equity financing through a chapter 11 plan of reorganization and/or a chapter 11 plan of reorganization proposed by the Cowen Parties, as holders of the Second Lien Convertible Notes, premised upon the preservation of the Debtors' net operating losses upon their emergence from these chapter 11 cases (any of the immediately foregoing, a "Recapitalization Transaction", and, any of the foregoing, including an Asset Sale, a "Potential Transaction"), (b) the scheduling of a hearing to approve (i) the Sale of the Track A Assets (defined below) and (ii) the Sale of the Track B Assets (defined below), each free and clear of any liens, claims, and encumbrances under section 363 of the Bankruptcy Code, and (c) procedures in connection with the assumption and assignment of any executory contracts or unexpired leases the Debtors seek to have assumed and assigned in connection with a Potential Transaction. ***All interested bidders should carefully read the Bidding Procedures Order and these Bidding Procedures in their entirety.***[1]

---

[1] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order or the *Debtors' Motion for Entry of: (I) an Order (A) Approving Bidding Procedures to Govern the Sale of All or Substantially All of the Debtors' Assets Pursuant to Section 363 of the Bankruptcy Code, (B) Approving Procedures Regarding Entry Into One or More Stalking Horse Agreements, (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of the Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) Scheduling Auctions for the Sales of the Company Assets and Hearings to Consider Approval of the Sales and Approving the Form and Manner of the Notice Thereof, (F) Approving Certain Wind-Down Procedures, and (G) Granting Related Relief; and (II) an Order (A) Authorizing and Approving the Debtors' Entry Into One or More Asset Purchase Agreements, (B) Authorizing the Sale of All Or Substantially All of the Debtors' Assets Free and Clear Of Liens, (C) Approving the Assumption and Assignment of the Assumed Executory Contracts and Unexpired Leases, and (D) Granting Related Relief* [Docket No. 36] (the "Motion"), as applicable.

Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Kurtzman Carson Consultants LLC by calling 888-251-3076 (USA or Canada) or 310-751-2617 (International) or visiting the Debtors' restructuring website at www.kccllc.net/proterra.

All due diligence requests must be directed to Moelis & Company LLC, Attn: Rick Polhemus (Rick.Polhemus@moelis.com); John Kimm (john.kimm@moelis.com); Patrick Layton, (Patrick.Layton@moelis.com); Bassam Latif (Bassam.Latif@moelis.com); and Dave McGuiness (Dave.McGuiness@moelis.com).

## I.  Overview

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct a marketing process, and if necessary, one or more auctions (each, an "Auction"), for one or more Potential Transactions.

The Company has three business lines:  Proterra Transit; Proterra Energy (which includes Proterra Valence); and Proterra Powered (collectively, the "Business Lines"), each as further described in the First Day Declaration.  The Company will consider bids for the purchase of all or any portion of the Company Assets (including all or any portion of the Business Lines or any combination thereof) (a "Sale Bid").  The Company will also consider bids for any other type of strategic transaction involving the Debtors and/or all or any portion of the Company Assets, including, without limitation, a Recapitalization Transaction (a "Recapitalization Transaction Bid" and, together with any Sale Bids, the "Bids" and each, a "Bid").

Solely for purposes of determining the applicable Bidding Procedures timeline applicable to a given Bid, Bids are categorized as follows:

- **Track A Bids:**  A "Track A Bid" means any Bid for a transaction including all or any portion of the assets of (i) Proterra Transit or (ii) Proterra Energy (such assets ((i) and (ii)), collectively, the "Track A Assets").  For the avoidance of doubt, any Bid for a transaction including all or any portion of all three of Debtors' Business Lines constitutes a Track A Bid.

- **Track B Bids:**  A "Track B Bid" means any Bid for a transaction including no Track A Assets (except, in the Debtors' business judgement, Proterra Valence).  For the avoidance of doubt, any Bid for a transaction including only all or any portion of the assets of Proterra Powered and Proterra Valence (such assets, collectively, the "Track B Assets") constitutes a Track B Bid.

The Debtors reserve the right to modify these Bidding Procedures, in consultation with the Consultation Parties, including without limitation, to extend the deadlines and modify the requirements set forth herein or impose additional terms and conditions at any time to the extent they determine, in their reasonable business judgment, that doing so will best promote the goals of the bidding process, including during an Auction.

## II.    Key Sales Process Dates

      The Debtors shall assist interested parties in conducting their respective due diligence investigations and shall accept (i) non-binding indications of interest (an "Indication of Interest") on or before **September 26, 2023, at 4:00 p.m. (prevailing Eastern Time)** (as may be extended by the Debtors in their reasonable business judgment and in consultation with the Consultation Parties through notice to all Potential Bidders, the "Indication of Interest Deadline"), (ii) Track A Bids until **October 16, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Track A Bid Deadline"), and (iii) Track B Bids until **November 6, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Track B Bid Deadline" and, together with the Track A Bid Deadline, the "Bid Deadlines").  The other key dates for the marketing process are as follows:

| Deadline/Event | Proposed Dates/Deadlines | |
|---|---|---|
| | **Track A Bids** | **Track B Bids** |
| **Service and Publication of Sale Notice** | 1 business day after entry of Bidding Procedures Order or as soon as reasonably practicable thereafter | |
| **Debtors' Deadline to File a Proposed Form of Sale Order** | Monday, September 25, 2023 @ 4:00 p.m. (ET) | |
| **Debtors' Deadline to File and Serve Cure Notices** | Monday, September 25, 2023 | |
| **Initial Indication of Interest ("IOI") Deadline** | Tuesday, September 26, 2023 @ 4:00 p.m. (ET) | |
| **Sale Objection Deadline** | Monday, October 16, 2023 @ 4:00 p.m. (ET) | |
| **Cure/Assignment Objection Deadline** | Monday, October 16, 2023 @ 4:00 p.m. (ET) | |
| **Qualified Bid Submission Deadline (can be extended at Debtors' discretion, in consultation with the Consultation Parties)** | Monday, October 16, 2023 @ 4:00 p.m. (ET) | Monday, November 6, 2023 @ 4:00 p.m. (ET) |
| **Determination of Qualified Bids** | Wednesday, October 18, 2023 | Wednesday, November 8, 2023 |
| **Auction (if necessary)** | Thursday, October 19, 2023 @ 10:00 a.m. (ET) | Thursday, November 9, 2023 @ 10:00 a.m. (ET) |
| **Identification of Successful Bidder and Backup Bidder, if any** | Friday, October 20, 2023 (or as soon as | Friday, November 10, 2023 (or as soon as |

| Deadline/Event | Proposed Dates/Deadlines | |
|---|---|---|
| | **Track A Bids** | **Track B Bids** |
| | reasonably practicable thereafter) | reasonably practicable thereafter) |
| **Post-Auction Objection Deadline** | The later of Friday, October 27, 2023 @ 4:00 p.m. (ET) or within one day of the filing of the notice of the Successful Bidder | The later of Friday, November 17, 2023 @ 4:00 p.m. (ET) or within one day of the filing of the notice of Successful Bidder |
| **Deadline to File Replies in Connection with Sale** | Monday, October 30, 2023 @ 10:00 a.m. (ET) | Wednesday, November 22, 2023 @ 10:00 a.m. (ET) |
| **Sale Hearing** | Wednesday, November 1, 2023 @ 10:00 a.m. (ET) | Tuesday, November 28, 2023 @ 10:00 a.m. (ET) |
| **Closing Date** | As soon as reasonably practicable following entry of a Sale Order | As soon as reasonably practicable following entry of a Sale Order |

The Debtors may elect, in consultation with the Consultation Parties, to move Track A Bids from the schedule entitled "Track A Bids" above (the "Track A Schedule") to the schedule entitled "Track B Bids" above (the "Track B Schedule") to the extent the Debtors determine, in their reasonable business judgment and in consultation with the Consultation Parties, that doing so will best promote the goals of the bidding process, and any Bid that the Debtors move to the Track B Schedule shall be deemed to be a Track B Bid rather than a Track A Bid for purposes of these Bidding Procedures.

### III.    PUBLIC ANNOUNCEMENT OF AUCTION

As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall:  (a) serve on the Sale Notice Parties a notice of the Auctions and Sales (the "Sale Notice"); (b) post the Sale Notice on their restructuring website, www.kccllc.net/proterra; and (c) publish the Sale Notice, with any modifications necessary for ease of publication, in *USA Today*, *New York Times*, *The Wall Street Journal*, or another national publication, to provide notice to any other potential interested parties.

**BIDDING PROCESS**

**A. Submissions to the Debtors.**

These Bidding Procedures set forth the terms by which prospective bidders may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer for any combination of the Company Assets. The Debtors, in consultation with their advisors, will consider any Bid for all or any portion of the Company Assets (including all or any portion of the Business Lines or any combination thereof), including (i) any Bids for all or substantially all of the Company Assets (a "Whole Company Bid") and (ii) Bids for less than all or substantially all of the Company Assets (a "Partial Bid"), including, among other possibilities, multiple Bids submitted by the same bidder or one or more Bids submitted by a consortium acting as a single bidder) with the Debtors' prior written consent, in consultation with the Consultation Parties, in any combination; *provided* that the Debtors have consented to the Cowen Parties submitting both a Sale Bid in the form of a Credit Bid (defined below) and cash bid, to the extent necessary to acquire any unencumbered Company Assets and a Recapitalization Transaction Bid. The Debtors believe that a Bid that preserves the going concern value of the Debtors' Business Lines (either operated together or separately) is likely to be considered higher or better than a Bid that does not.

**B. Stalking Horse Bidder and Bid Protections.**

The Debtors are authorized, in consultation with the Consultation Parties, but not obligated, in an exercise of their business judgment, to: (a) select one or more Qualified Bidders to act as Stalking Horse Bidders, and enter into a Stalking Horse Agreement with each Stalking Horse Bidder so selected; and (b) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder, provide Bid Protections for any Stalking Horse Bidder, subject to Court approval after notice (to be provided five (5) business days' prior to a hearing to approve such Bid Protections) and a hearing. No later than two (2) business days after the selection of a Stalking Horse Bidder, the Debtors shall file a notice with the Court of such selection that includes a copy of the Stalking Horse Agreement.

After designating the Stalking Horse Bidders, if any, and designating other Qualified Bidders, if any, the Debtors may then hold an Auction for the applicable Company Assets.

**C. Potential Bidders.**

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, an entity interested in consummating a Potential Transaction must deliver the following to the Debtors (unless waived by the Debtors in their reasonable business judgment) (any such entity, a "Potential Bidder"):

(a) an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement");

(b) sufficient information, as determined by the Debtors, in consultation with the Consultation Parties, to allow the Debtors to determine that the interested party (i) has the financial wherewithal to consummate the applicable Potential Transaction; *provided* that a bidder that submits a Credit Bid that does not include a cash component shall not be required to provide

information under these Bidding Procedures to any party with respect to its financial wherewithal, other than as reasonably necessary in connection with a dispute on such bidder's provision of adequate assurance of future performance in connection with contracts such bidder may assume in connection with such bid, and (ii) intends to access the Data Room (as defined below) for a purpose consistent with these Bidding Procedures; and

(c)     any other evidence the Debtors may reasonably request to evaluate the entity's fitness to participate in the bidding process or ability to timely acquire the Company Assets.

**D.     Non-Binding Indications of Interest.**

To become a Qualified Bidder (as defined below), a Potential Bidder must submit an Indication of Interest on or before the Indication of Interest Deadline. The Indication of Interest must be submitted in accordance with the following requirements (unless waived by the Debtors in their business judgment and in consultation with the Consultation Parties):

**Delivery of Indication of Interest**. The Indication of Interest must be addressed and delivered in writing via email by no later than the Indication of Interest Deadline, and directed to (i) the Debtors at (a) Moelis & Company LLC, Attn: Rick Polhemus (Rick.Polhemus@moelis.com); John Kimm (john.kimm@moelis.com); Patrick Layton (Patrick.Layton@moelis.com); Bassam Latif (Bassam.Latif@moelis.com); and Dave McGuiness (Dave.McGuiness@moelis.com), and (b) Paul, Weiss, Rifkind, Wharton & Garrison LLP, Attn: Paul Basta (pbasta@paulweiss.com); Robert A. Britton (rbritton@paulweiss.com); Michael J. Colarossi (mcolarossi@paulweiss.com); Joshua A. Esses (jesses@paulweiss.com) and Austin S. Pollet (apollet@paulweiss.com); and (ii) the Committee at (a) Lowenstein Sandler LLP, Attn: Jeffrey Cohen (jcohen@lowenstein.com), Eric Chafetz (echafetz@lowenstein.com), Jordana Renert (jrenert@lowenstein.com), and Keara Waldron (kwaldron@lowenstein.com); and (b) Miller Buckfire & Co., LLC, Attn: John D'Amico (john.damico@millerbuckfire.com), Alexander Rohan (alex.rohan@millerbuckfire.com), Jim Nappo (nappoj@stifel), and Jonathan Risting (ristingj@stifel.com) (an email to such email addresses, an "Email Notice").

**Scope of Potential Transaction**. The Indication of Interest must include a reasonably detailed description of the Company Assets which the Potential Bidder seeks to acquire and the liabilities which the Potential Bidder seeks to assume, as well as a description of any post-closing transition or similar services to be obtained by the Potential Bidder.

**Valuation**. The Indication of Interest must indicate the proposed consideration that the Potential Bidder is prepared to provide for the applicable Company Assets. For the avoidance of doubt, this should be broken out and allocated by each Business Line or component thereof, as applicable.

**Key Valuation Assumptions**. The Indication of Interest must include a reasonably detailed description of how the Potential Bidder arrived at the valuation indicated, including describing the Potential Bidder's valuation approach and methodology used to determine the proposed consideration to be provided by the Potential Bidder. In addition,

the Indication of Interest must include any material assumptions, terms, conditions, or open due diligence points that may impact the Potential Bidder's view on valuation upon which the Indication of Interest is based, whether business, operational, financial, tax, or otherwise, as well as any other significant considerations the Potential Bidder believes would be helpful to the Debtors in evaluating the Potential Bidder's proposal.

**Financing**.  The Indication of Interest should include a detailed description of the intended sources and uses of funds that the Potential Bidder's contemplates needing to close the Potential Transaction.

**Identity & Credit Worthiness**.  To the extent known by the Potential Bidder, the Indication of Interest must include the identity (including full legal name) of any entity proposed to acquire Company Assets or provide consideration to the Debtors pursuant to the Potential Transaction and a description of such entity's jurisdiction, form of organization and affiliates, ultimate ownership, and financial capacity.  If the identity of such entity is not known by the Potential Bidder or such entity does not have the creditworthiness on its own to fully fund the contemplated transaction, the Indication of Interest should specify whether the Potential Bidder is willing to provide guarantees of such entity's commitments in connection with a potential transaction from creditworthy entities.

**Approvals**.  The Indication of Interest must specify any approvals that would be required to execute a definitive agreement governing the Potential Transaction, including any internal approvals and any external approvals, including governmental or regulatory approvals (excluding, for the avoidance of doubt, any Bankruptcy Court approvals).

**Due Diligence Requirements**.  The Indication of Interest must describe in reasonable detail the nature, timing, and extent of the key areas and specific matters needed to complete the Potential Bidder's due diligence review and any additional information, including any specific concerns, that the Potential Bidder would need to be addressed in order to submit a final binding proposal and finalize a definitive agreement governing the Potential Transaction.

**Contacts**.  The Indication of Interest must include contact details (including names, telephone numbers, and email addresses) of the individuals who will be prepared to discuss and answer any questions of the Debtors regarding the Indication of Interest.

Note that submitting an Indication of Interest by the Indication of Interest Deadline does not obligate the submitting party to submit a formal bid or to participate in the sale process and does not exempt the submitting party from also having to submit a Qualified Bid by the Bid Deadlines to participate in any Auction, each as defined below.

## E.     Due Diligence.

Only Potential Bidders shall be eligible to receive due diligence information and access to the Debtors' electronic data room (the "Data Room") and to receive additional non-public information regarding the Debtors.  **Only Potential Bidders that enter into a Confidentiality Agreement with the Debtors will be permitted to conduct any due diligence that includes**

**confidential information.** The Debtors will use commercially reasonable efforts to provide due diligence information to any such Potential Bidder, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post confidential information concerning the Company Assets to the Debtors' electronic data room which will be made available to Potential Bidders. Unless extended by the Debtors in their reasonable business judgment and in consultation with the Consultation Parties, each Potential Bidder's due diligence period will end on the applicable Bid Deadline, after which the Debtors shall have no obligation to furnish any due diligence information.

The Debtors need not furnish any confidential information relating to the Company Assets, liabilities of the Debtors, or any Asset Sale or Recapitalization Transaction to any person or entity except to a Potential Bidder or to such Potential Bidder's duly authorized representatives to the extent provided in the applicable Confidentiality Agreement and requested by such Potential Bidder. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided*, that the Debtors, in consultation with the Consultation Parties, may decline to provide (or elect to withdraw access to) due diligence information to any Potential Bidder who, at such time and in the Debtors' reasonable business judgment, has not established (or there is otherwise a reasonable basis to doubt) that such Potential Bidder intends in good faith to, or has the capacity to, consummate a Potential Transaction. To the extent a Potential Bidder no longer intends in good faith to, or lacks the capacity to, consummate a Potential Transaction, such Potential Bidder shall promptly notify the Debtors through Email Notice.

In consultation with the Consultation Parties, the Debtors also reserve the right to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder, including a Potential Bidder the Debtors determine is (or is affiliated with) a competitor or supplier of the Debtors, or is otherwise an entity to which the disclosure of sensitive or competitive information, in the Debtors' reasonable business judgment, may risk unduly placing the Debtors at a competitive disadvantage or subject them to regulatory scrutiny. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any entity that is not determined to be a Potential Bidder.

***All due diligence requests are to be sent to the Debtors through Email Notice.***

1. <u>Communications with Potential Bidders.</u>

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive communications related to Bids or any Potential Transaction relating to the Debtors between or amongst Potential Bidders shall be conducted exclusively through the Debtors and the Debtors' advisors. Communications between and amongst Potential Bidders relating to the Debtors or these Bidding Procedures is expressly prohibited unless the Debtors, in consultation with the Consultation Parties, expressly consent in writing to such communication; *provided*, that if such consent is given, a representative of the Debtors shall be present for or party to any such communications (unless otherwise agreed by the Debtors in their sole discretion, in consultation with the Consultation Parties).

2. <u>Due Diligence of Potential Bidders</u>.

Each Potential Bidder shall comply with any reasonable requests of the Debtors or their advisors for additional information or due diligence access regarding qualification as a Potential Bidder or Qualified Bidder, the terms of the Potential Bidder's Bid, or the ability of the Potential Bidder to acquire the applicable Company Assets. Failure by a Potential Bidder to comply with such reasonable requests may be a basis for the Debtors, in consultation with the Consultation Parties, to determine that such bidder is no longer a Potential Bidder or that any bid made by such Potential Bidder is not a Qualified Bid (a "<u>Non-Qualifying Bid</u>").

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the Chapter 11 Cases, in each case in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Debtors and the Debtors' advisors may disclose confidential information: (i) with the prior written consent of such Potential Bidder; (ii) to the applicable Potential Bidder; (iii) in accordance with these Bidding Procedures; and (iv) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular Potential Bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

*The Debtors encourage all Potential Bidders interested in participating in these marketing processes to promptly notify the Debtors and their advisors of such interest. Such Potential Bidders should describe, in as much specificity and as soon as practically feasible, the scope of Company Assets that are envisioned to be encompassed by any Indication of Interest or Bid that such Potential Bidders expect to submit, or if such Potential Bidders are interested in participating in a Recapitalization Transaction, such Potential Bidders should submit term sheets that allow the Debtors, in consultation with their advisors and the Consultation Parties, to assess, among other things, the feasibility of such Recapitalization Transaction standing alone, or in combination with complementary Bids or negotiations related thereto.*

## F.    Qualified Bidders.

1.  A "<u>Qualified Bidder</u>" is a Potential Bidder who satisfies the following requirements (unless waived by the Debtors in their reasonable business judgment and in consultation with the Consultation Parties):    (a) the Potential Bidder has demonstrated the financial capability to consummate the applicable Asset Sale or Recapitalization Transaction (as determined by the Debtors in consultation with the Consultation Parties); (b) the Potential Bidder's Bid is a Qualified Bid; (c) the Potential Bidder submitted an Indication of Interest by the Indication of Interest Deadline; and (d) the Debtors, in consultation with the Consultation Parties, have determined the Potential Bidder should be considered a Qualified Bidder. Within two (2) days after the applicable Bid Deadline, the Debtors' advisors will notify each Potential Bidder whether such Potential

Bidder is a Qualified Bidder. Any Stalking Horse Bidder shall be deemed a Qualified Bidder for all purposes under these Bidding Procedures.

2.   If any Potential Bidder is determined by the Debtors, in consultation with the Consultation Parties, not to be a Qualified Bidder, the Debtors will refund such Potential Bidder's Deposit and all accumulated interest, if any, thereon within five (5) business days of the applicable Bid Deadline.

3.   For the avoidance of doubt, after consulting with the Consultation Parties, the Debtors expressly reserve the right to notify a Potential Bidder that its Bid is a Non-Qualifying Bid and permit such Potential Bidder to revise or supplement a Non-Qualifying Bid to make it a Qualified Bid.

4.   Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the applicable Auction, if any, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Debtors, after consulting with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided*, that, for the avoidance of doubt, any Qualified Bid may be improved at the applicable Auction, if any, as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures, and the Debtors expressly reserve the right to request additional diligence information and assurances necessary to assess and ensure continued compliance (including additional information, assurances, or commitments regarding the applicable Qualified Bidder's financial capability to consummate the transactions contemplated by such improved Qualified Bid).

**G.     Bid Requirements.**

        A Bid by a Potential Bidder that is submitted in writing and satisfies each of the following requirements (the "Bid Requirements"), as determined by the Debtors in their reasonable business judgment and after consulting with the Consultation Parties, shall constitute a "Qualified Bid". Any Stalking Horse Bid shall be deemed a Qualified Bid for all purposes under these Bidding Procedures and at all times. The Debtors and their professionals shall promptly deliver copies of all bids to the Consultation Parties after the applicable bid deadline; *provided*, that the Debtors shall not deliver to the Cowen Parties any Bids for which the Cowen Parties are not Consultation Parties.

1.   Documentation.

                         (a)   With respect to a proposed Asset Sale, each Bid must be accompanied by a duly authorized and executed asset purchase agreement ("Purchase Agreement"), based on either the form asset purchase agreement uploaded to the Data Room or the Stalking Horse Agreement (if one exists), an electronic copy of such Purchase Agreement in Microsoft Word format, with a redline to the form asset purchase agreement, and in the case of an Auction with a Stalking Horse Bidder, a redline of such Purchase

Agreement marked to reflect the amendments and modifications made to the form of the Stalking Horse Agreement provided by the Debtors to Potential Bidders. Each such Purchase Agreement must provide for payment in cash at closing of the Bid Protections to the Stalking Horse Bidder, if any.

(b) With respect to another form of Potential Transaction, the Bid must be accompanied by a detailed transaction document capable of being executed, whether that be a credit agreement, reorganized equity purchase agreement, plan term sheet, or otherwise, as applicable.

The documents described in 1(a) and 1(b), above, are each defined as the "Qualified Bid Documents".

2. Purchase Price.

(a) With respect to a proposed Asset Sale, each Bid must clearly set forth the consideration to be provided for the applicable Company Assets, including the allocation of responsibility for the payment of any cure costs and otherwise identifying separately any cash and non-cash components, which non-cash components shall be limited only to credit-bids and assumed liabilities.

(b) With respect to another form of Potential Transaction, the Bid must set forth the cash or other consideration to be furnished, including and identifying separately any cash and non-cash components and a description of any liabilities to be assumed by such Potential Bidder.

The consideration described in 2(a) and 2(b), above, is each defined as the "Purchase Price".

3. Deposit. Each Bid must be accompanied by a cash deposit in the amount equal to ten percent (10%) of the aggregate cash Purchase Price of the Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "Deposit"). For the avoidance of doubt, each Credit Bid must also be accompanied by the Deposit to the extent of any cash component of such Credit Bid.

4. Terms; Specify Acquired Assets and Assumed Liabilities.

(a) With respect to a proposed Asset Sale, the Bid must identify the Company Assets (including the specific executory contracts and unexpired leases) such Potential Bidder wishes to bid on and the liabilities and obligations (including applicable cure costs) to be assumed by the Potential Bidder in the Asset Sale.

(b) With respect to a Recapitalization Transaction, the Bid must describe (i) in reasonable detail the terms and conditions of such Recapitalization Transaction and (ii) in the event the Bid is a plan term sheet or involves a

chapter 11 plan of reorganization, the contemplated chapter 11 plan of reorganization must comply with the applicable requirements of the Bankruptcy Code.

5. <u>Committed Financing</u>. To the extent that a Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the Potential Transaction set forth in its Bid with cash on hand, each Bid must include unconditional committed financing from a reputable financing institution, documented to the satisfaction of the Debtors, that demonstrates that the Qualified Bidder has: (i) received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price and other obligations under its Bid; and (ii) adequate working capital financing or resources to finance going concern operations for the applicable Company Assets and the proposed transactions. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, in consultation with the Consultation Parties.

6. <u>Contingencies; No Financing or Diligence Outs</u>. A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

7. <u>Identity</u>. Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid and the complete terms of any such participation. Each Bid must also fully disclose whether any current or former officer, director, or equity holder of the Debtors, or any entity affiliated with any current or former officer, director, or equity holder of the Debtors, will be bidding or otherwise participating in connection with such Bid, including any employment or compensation arrangements being negotiated or agreed to between the Qualified Bidder and any employee of the Debtors. Under no circumstances shall any undisclosed insiders, principals, equity holders, or financial backers of the Debtors be associated with any Bid (including any Overbid at the Auction). Each Bid must also include contact information for the specific persons and counsel whom Moelis & Company LLC, Paul, Weiss, Rifkind, Wharton & Garrison LLP, and Young Conaway Stargatt & Taylor, LLP should contact regarding such Bid.

8. <u>Adequate Assurance of Future Performance</u>. Each Bid must (i) reasonably identify any executory contracts and unexpired leases of the Debtors to be assumed or assumed and assigned in connection with the Potential Transaction, and (ii) demonstrate, in the Debtors' reasonable business judgment and in consultation with the Consultation Parties, that the Qualified Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases.

9. <u>Binding and Irrevocable</u>. A Qualified Bidder's Bid for the applicable Company Assets shall be irrevocable unless and until the Debtors notify such Qualified Bidder that such Bid has not been approved as a Successful Bid or a Backup Bid at the applicable Sale Hearing.

10. Expenses; Disclaimer of Fees.  Each Bid (other than the Stalking Horse Bids, if any (solely to the extent set forth in the Stalking Horse Agreement(s)) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no Qualified Bidder (other than the Stalking Horse Bids, should the Debtors have designated  one or more Stalking Horse Bidders, and in that case, solely to the extent set forth in the Stalking Horse Agreement(s)) will be permitted to request at any time, whether as part of an Auction, if any, or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

11. Authorization.  A Bid must include written evidence reasonably acceptable to the Debtors, in consultation with the Consultation Parties demonstrating appropriate corporate authorization to submit the Bid and consummate the proposed transaction; *provided* that if the bidder is an entity specially formed for the purpose of effectuating the proposed transaction, then the bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the submission of the Bid and consummation of the proposed transaction by equity holder(s) of such bidder.

12. As-Is, Where-Is.  Each Bid must include a written acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Company Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or such assets in making its Bid; and (iii) did not and will not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the applicable Company Assets or the completeness of any information provided in connection therewith or at an Auction, except those expressly stated in the Stalking Horse Agreement (if applicable).

13. Adherence to Bidding Procedures.  By submitting a Bid, each Qualified Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures and after the conclusion of any Auction, agrees not to submit a Bid, or seek to reopen the Auction.

14. Government Approvals.  Each Bid must include a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Asset Sale or Recapitalization Transaction, together with evidence satisfactory to the Debtors, in consultation with the Consultation Parties, of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals.

15. Government Approvals Timeframe.  Each Bid must set forth an estimated timeframe for obtaining any required, governmental, licensing, regulatory, or other approvals or consents for consummating any proposed Asset Sale or Recapitalization Transaction.

16. <u>Consent to Jurisdiction</u>. By submitting a Bid, each Qualified Bidder agrees and shall be deemed to have agreed, to submit to the jurisdiction of the Court and waives any right to a jury trial in connection with any disputes relating to the Debtors' qualification of bids, the Auctions, if any, the construction and enforcement of these Bidding Procedures, the Asset Sale or Recapitalization Transaction documents, and the closing, as applicable.

17. <u>Bid Deadlines</u>. Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** (a) by the Track A Bid Deadline—on or before **4:00 p.m. (prevailing Eastern Time) on October 16, 2023**—if such Bid is a Track A Bid, and (b) by the Track B Bid Deadline—on or before **4:00 p.m. (prevailing Eastern Time) on November 6, 2023**—if such Bid is a Track B Bid.

(a) **Debtors**. Proterra Inc, 1815 Rollins Road, Burlingame, California 94010 Attn: Jeff Mitchell (jmitchell@proterra.com)

(b) **Debtors' Counsel**. Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Paul Basta (pbasta@paulweiss.com); Robert A. Britton (rbritton@paulweiss.com); Michael J. Colarossi (mcolarossi@paulweiss.com); and Joshua A. Esses (jesses@paulweiss.com)

(c) **Debtors' Co-Counsel**. Young Conaway Stargatt & Taylor LLP, 1000 North Street, Wilmington, Delaware, 19801 Attn: Pauline Morgan (pmorgan@ycst.com); and Andrew Magaziner (amagaziner@ycst.com)

(d) **Debtors' Financial Advisors**. Moelis & Company LLC, Attn: Rick Polhemus (Rick.Polhemus@moelis.com); John Kimm (john.kimm@moelis.com); Patrick Layton (Patrick.Layton@moelis.com); Bassam Latif (Bassam.Latif@moelis.com); and Dave McGuiness (Dave.McGuiness@moelis.com)

*provided*, *however*, that the Debtors, in consultation with the Consultation Parties, reserve the right to reschedule or waive any Bid Deadline and related marketing process deadlines and hearing dates in their sole discretion.

## H. Right to Credit Bid

Subject to any party's challenge rights, at an Auction, if any, any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates (a "<u>Secured Creditor</u>") shall be permitted to submit a credit bid for all or a portion of the assets subject to such lien, up to the amount of such Secured Creditor's undisputed claims[2] (a "<u>Credit Bid</u>"), to the extent permitted under section 363(k) of the Bankruptcy Code, as it relates to the Company Assets; *provided*, *however*, any Secured Creditor other than the Cowen Parties that intends to participate in an Auction with a Bid that includes a Credit Bid shall, as a condition to such participation, (i) notify the Debtors and the Consultation Parties at least five (5) business days prior to the applicable Bid Deadline that it intends to submit a Credit Bid, (ii) provide all documentation requested by the

---

[2] For the avoidance of doubt, unless otherwise agreed to by the Debtors and the Committee in writing, any premium alleged to have arisen under that certain Note Purchase Agreement, dated as of August 4, 2020, is a disputed claim.

Debtors to establish the lien, claims, and encumbered assets that will be the subject of the Secured Creditor's potential Credit Bid; and (iii) pay cash for any unencumbered assets.

## I. Allocation of Value.

At any time, depending on the number and nature of the Bids submitted at the Auctions, the Debtors, in consultation with their advisors and the Consultation Parties, may require that Qualified Bidders submitting Whole Company Bids or bids for all or any portion of multiple Business Lines to allocate the values of such Bid attributable to certain Company Assets or Business Lines, including the assets of Proterra Transit, Proterra Energy, Proterra Powered, and Proterra Valence, for purposes of these Bidding Procedures only.

## J. Auctions.

1. <u>Qualified Partial Joint Bids</u>.

If one or more Partial Bids that constitute Qualified Bids are received, then the Debtors, in consultation with their advisors and the Consultation Parties, may (a) elect to conduct a sub-auction for a portion of the Company Assets subject to a given Auction, (b) oversee and facilitate a series of negotiations among all or any portion of the Qualified Bidders that submitted such Partial Bids, or (c) otherwise pursue any process that the Debtors, in consultation with their advisors and the Consultation Parties, believe will result in a value-maximizing joint Bid for all or any portion of the Company Assets (the "<u>Qualified Partial Joint Bid</u>," and such Qualified Bidders, the "<u>Qualified Partial Joint Bidders</u>").

The Debtors, in consultation with their advisors and the Consultation Parties, and in the exercise of their reasonable business judgment may allow such Qualified Partial Joint Bid to participate in an Auction. After any designation of a Qualified Partial Joint Bid, (i) the Qualified Partial Joint Bidders shall supplement their respective Deposits as necessary and use reasonable best efforts to arrange revised Qualified Bid Documents reflecting their joint pursuit of the Qualified Partial Joint Bid, and (ii) the Debtors may, in consultation with their advisors and the Consultation Parties, declare that any or all of the other Partial Bids of such Qualified Partial Joint Bidders shall no longer constitute Qualified Bids.

2. <u>Cancellation of Auctions</u>.

In the event that (i) the Debtors have entered into one or more Stalking Horse Agreements, and such Stalking Horse Agreements have been approved pursuant to the Bidding Procedures Order, if no Qualified Bids other than the Stalking Horse Bids, if any, are received in accordance with these Bidding Procedures with respect to a scheduled Auction, or (ii) only one Qualified Bid is received in connection with an Auction, then the Debtors may, in consultation with the Consultation Parties, cancel the Auction, and may decide, in the Debtors' reasonable business judgment and in consultation with the Consultation Parties, to designate the Stalking Horse Bid or only Qualified Bid as the Successful Bid for such Company Assets and pursue entry of the orders approving an Asset Sale of the Company Assets to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement or to the Qualified Bidder.

If any Auction is cancelled, the Debtors shall promptly file a notice of cancellation of the Auction and designation of the Stalking Horse Bid or only Qualified Bid as the Successful Bid.

3.      Bid Assessment Criteria.

The Debtors, in consultation with the Consultation Parties, shall evaluate all Qualified Bids (including any Partial Bid) and identify the Qualified Bid that is, in the Debtors' judgment, and after consulting with the Consultation Parties, the highest or otherwise best Qualified Bid(s) for the applicable Company Assets being sold at each respective Auction (the "Baseline Bid(s)"), and provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid(s) to each Qualified Bidder at or prior to each respective Auction.

When determining the highest or otherwise best Qualified Bid(s) and selecting the Baseline Bid(s) and the Successful Bid(s) (as defined below), as compared to other Qualified Bids, the Debtors, in consultation with the Consultation Parties, may consider the following factors in addition to any other factors that the Debtors deem appropriate (collectively, the "Bid Assessment Criteria"):

(a)    the number, type, and nature of any changes to the form of Purchase Agreement or Stalking Horse Agreement, if any, requested by the Qualified Bidder, including the type and amount of assets sought and obligations to be assumed in the Qualified Bid;

(b)    the amount and nature of the total consideration, including the assumption of liabilities;

(c)    the likelihood of the Qualified Bidder's ability to close the Asset Sale or Recapitalization Transaction and the timing thereof;

(d)    the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents;

(e)    the tax consequences of such Qualified Bid;

(f)    the impact on employees, including the number of employees proposed to be transferred;

(g)    the assumption of liabilities, including obligations under contracts and leases;

(h)    the cure amounts to be paid; and

(i)    the terms and conditions of a transition services agreement.

4.      Auction Time and Location.

The Auction in connection with the Track A Bids, if any, shall take place at Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 on **October 19, 2023 at 10:00 a.m. (prevailing Eastern Time)** or such other date, time,

and/or location as selected by the Debtors. The Auction in connection with the Track B Bids, if any, shall take place at Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 on **November 9, 2023 at 10:00 a.m. (prevailing Eastern Time)** or such other date, time, and/or location as selected by the Debtors. The Auctions, if any, shall be conducted in a timely fashion according to the procedures set forth herein.

5.  The Debtors Shall Conduct the Auction.

The Debtors and their professionals shall direct and preside over each Auction, if any. At the start of each Auction, the Debtors shall describe the material terms of the Baseline Bid(s) for the applicable Company Assets to be sold at such Auction. The Debtors shall maintain a written transcript of each Auction and all Bids made and announced at any Auction, if any, including the Baseline Bid(s), all applicable Overbids, and the Successful Bid.

Only (a) Qualified Bidders (including the Stalking Horse Bidder, if any) and their legal and financial advisors, (b) the Cowen Parties and their legal and financial advisors and investment bankers, (c) the Committee and its legal and financial advisors, and (d) actual creditors of the Debtors (provided that they give at least three (3) business days' notice to the Debtors' counsel and the Committee's counsel of their intention to attend an Auction via email to (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, Attn: Joshua A. Esses (jesses@paulweiss.com); and Vida Robinson (virobinson@paulweiss.com) and (ii) Lowenstein Sandler LLP, Attn: Jeffrey Cohen (jcohen@lowenstein.com), Eric Chafetz (echafetz@lowenstein.com), Jordana Renert (jrenert@lowenstein.com), and Keara Waldron (kwaldron@lowenstein.com), shall be entitled to attend the Auctions, if any, and the Qualified Bidders shall appear at the Auctions for which they are Qualified Bidders in person and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders (including the Qualified Partial Joint Bidders, if any) shall be entitled to bid at each Auction, if any.

The Debtors, in consultation with the Consultation Parties, explicitly reserve the right, in their business judgment, to exercise their discretion in conducting each Auction, including determining whether to adjourn each Auction to facilitate separate discussions between any Qualified Bidders and the Debtors, as applicable.

6.  Terms of Overbids.

"Overbid" means any bid made at each Auction, if any, by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid(s). Each applicable Overbid must comply with the following conditions:

(a) **Minimum Overbid Increment.** The Overbid(s) for the Company Assets shall provide for total consideration with a value that exceeds the value of the consideration under the Baseline Bid(s) by an incremental amount that is not less than an amount to be announced at or before the commencement of any Auction (as applicable, the "Minimum Overbid Increment"), and successive Overbids shall be higher than the Prevailing Highest Bid (as defined below) by at least the Minimum Overbid Increment. The Debtors reserve the right to, in consultation with the Consultation Parties, announce reductions or increases in the Minimum Overbid Increment at any time during each Auction, if any. Additional consideration in excess of the amount set forth in the respective Baseline Bid or Prevailing Highest Bid may include: (a) cash; (b) assumption of

liability, which shall be ascribed a value by the Debtors, in consultation with the Consultation Parties, in determining whether the Minimum Overbid Increment has been met; and (c) in the case of a Bid by a Secured Creditor, a credit bid on a Secured Creditor's collateral of up to the full amount of such Secured Creditor's allowed[3] secured claim pursuant to section 363(k) of the Bankruptcy Code.

(b) **Conclusion of Each Overbid Round.**    Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment and in consultation with the Consultation Parties, extend from time to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors.

(c) **Overbid Alterations.**    An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid so long as, after giving effect to the same, the terms of the Overbid are no less favorable to the Debtors' estates than any prior Bid or Overbid of such Qualified Bidder, as determined in the Debtors' reasonable business judgment and in consultation with the Consultation Parties, and shall otherwise comply with the terms of these Bidding Procedures.

(d) **Announcing Highest Bid.**    Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors, in consultation with the Consultation Parties, have identified in the applicable Overbid round, an Overbid (or combination of Overbids) as being higher or otherwise better than, in the Overbid round, the Baseline Bid plus the Minimum Overbid Increment, or in subsequent rounds, the Overbid previously designated by the Debtors, in consultation with the Consultation Parties, as the prevailing highest or otherwise best Bid (the "Prevailing Highest Bid"). The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

7.   Consideration of Overbids**.**

        The Debtors reserve the right, in their reasonable business judgment and in consultation with the Consultation Parties, to adjourn each Auction, if any, one or more times to, among other things: (i) facilitate discussions between and amongst the Debtors and the Qualified Bidders, as appropriate; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

8.   Closing the Auctions**.**

(a) Each Auction, if any, shall continue until there is one Bid (or a combination of Bids) for the Company Assets to be sold at such Auction that the Debtors determine, in their reasonable business

---

[3]    For the avoidance of doubt, unless otherwise agreed to by the Debtors and the Committee in writing, any premium alleged to have arisen under that certain Note Purchase Agreement, dated as of August 4, 2020, is a disputed claim.

judgment and in consultation with the Consultation Parties, to be the highest or otherwise best Bid (or Bids) for such Company Assets. Such Bid(s) shall be declared the "Successful Bid(s)" and such Qualified Bidder(s), the "Successful Bidder(s)," at which point such Auction will be closed. Each Auction, if any, shall not close unless and until all Qualified Bidders that have not previously declined to submit an Overbid in any prior round have been given a reasonable opportunity to submit an Overbid at such Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors, in consultation with the Consultation Parties, of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

(b) The Successful Bidder shall, within one (1) business day after the conclusion of the Auction at which the bidder was the Successful Bidder, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid. The Successful Bid may not be assigned to any party without the consent of the Debtors, in consultation with the Consultation Parties.

(c) As soon as reasonably practicable after closing each Auction, if any, and in any event not more than one business day following closing each Auction, the Debtors shall cause a notice of Successful Bid and Successful Bidder, and the Qualified Bid Documents for the Successful Bid and Backup Bid (defined below), to be filed with the Court.

(d) To the extent that any Qualified Bid is modified before, during, or after an Auction, the Debtors reserve the right to, in consultation with the Consultation Parties, require that such Qualified Bidder adjust its deposit so that it equals ten percent (10%) of the aggregate cash portion of the Purchase Price.

9. No Collusion; Good-Faith *Bona Fide* Offer.

Each Qualified Bidder participating in each Auction will be required to confirm on the record at such Auction, that (a) it has not engaged in any collusion with respect to the bidding and the Auction, (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder or Backup Bidder, and (c) the Qualified Bidder agrees to serve as the Backup Bidder if its Qualified Bid is the next highest or otherwise best bid after the Successful Bid.

## K. Backup Bidder.

1. Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Bid at each such Auction for the applicable assets, as determined by the Debtors in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, (the "Auction Backup Bid"), shall be required to serve as a backup bidder (the "Auction Backup Bidder") for such assets, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

2.  The identity of each Auction Backup Bidder and the amount and material terms of each Auction Backup Bid shall be announced by the Debtors at the conclusion of each Auction, if any, at the same time the Debtors announce the identity of the Successful Bidder.  Each Auction Backup Bidder shall be required to keep its Bid (or if the Auction Backup Bidder submits one or more Overbids at each Auction, its final Overbid) open and irrevocable until the closing of the transaction with the applicable Successful Bidder.  Each Auction Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.

3.  Each Auction Backup Bidder shall, within one (1) business day after the conclusion of such Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Backup Bid.  The Backup Bid may not be assigned to any party without the consent of the Debtors, in consultation with the Consultation Parties.

4.  For purposes of these Bidding Procedures, "<u>Backup Bid</u>" and "<u>Backup Bidder</u>" shall mean if one or more Auctions are held, the applicable Auction Backup Bid and Auction Backup Bidder, respectively.

All Qualified Bids (other than the Successful Bid(s) and the Backup Bid(s)) shall be deemed rejected by the Debtors on and as of the date of approval of the Successful Bid and Backup Bid by the Court.

**L.  Reservation of Rights.**

The Debtors reserve their rights to modify these Bidding Procedures in consultation with the Consultation Parties, in their reasonable business judgment in any manner that will best promote the goals of the bidding process, or impose, at or prior to any Auction, if any, additional customary terms and conditions on the Sale of the Company Assets, including:  (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning any Auction, including at the Auction and/or adjourning any Sale Hearing, including in open court, without further notice; (c) modifying the Bidding Procedures and/or adding procedural rules or methods of bidding that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling any Auction; (e) waiving, or imposing additional, terms and conditions set forth herein with respect to Potential Bidders; and (f) rejecting any or all bids or Bids.

**M.  Approval of Sale Transactions.**

A hearing to consider the approval of an Asset Sale subject to the Track A Schedule to a Successful Bidder and the approval of the corresponding Backup Bid, if any (the "<u>Track A Sale Hearing</u>"), will take place before the Honorable Brendan L. Shannon at the Bankruptcy Court, 824 Market Street, Wilmington, Delaware on **November 1, 2023 at 10:00 a.m. (prevailing Eastern Time)** (unless canceled in accordance with these Bidding Procedures).

A hearing to consider the approval of an Asset Sale subject to the Track B Schedule to a Successful Bidder and the approval of the corresponding Backup Bid, if any (the "<u>Track B Sale Hearing</u>," and, together with the Track A Sale Hearing, the "<u>Sale Hearings</u>")), will take place before the Honorable Brendan L. Shannon at the Bankruptcy Court, 824 Market Street, Wilmington, Delaware on  **November 28, 2023 at 10:00 a.m. (prevailing Eastern Time)** (unless canceled in accordance with these Bidding Procedures).

After consultation with the Consultation Parties, each Sale Hearing may be adjourned or continued to a later date by the Debtors by sending notice prior to, or making an announcement at such Sale Hearing. No further notice of any such adjournment or continuance will be required to be provided to any party (including any Stalking Horse Bidder).

At each Sale Hearing, the Debtors, in consultation with their advisors and the Consultation Parties, shall present the Successful Bid and any Backup Bid, to the Court for approval. The Sale Order submitted at each Sale Hearing shall provide that: (i) if the Successful Bid is not consummated, after consultation with the Consultation Parties, the Debtors may file a notice with the Court designating the applicable Backup Bidder(s) as the applicable Successful Bidder(s), and such Backup Bidder(s) shall be deemed the Successful Bidder(s) for all purposes; and (ii) the Debtors will be authorized, but not required, to consummate all transactions contemplated by the applicable Backup Bid, once so designated as the Successful Bid, without further order of the Court or notice to any party.

## N.    Return of Deposits.

The Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Court; *provided*, *however*, the Deposit of any Successful Bidder (including any Backup Bidder that becomes a Successful Bidder) may be forfeited to the Debtors or credited toward the Purchase Price set forth in the Successful Bid, in either case as set forth in these Bidding Procedures. The Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the applicable hearing to authorize the Debtors' consummation of the applicable Potential Transaction. The Deposit of the Backup Bidder, if any, shall be returned to such Backup Bidder no later than three (3) business days after the closing of the transaction with the Successful Bidder. Upon the return of the Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder (or Backup Bidder, as applicable) timely closes on its transaction, its Deposit shall be credited towards the applicable purchase price. If the Successful Bidder (or Backup Bidder, if applicable) fails to consummate a sale transaction because of a breach or failure to perform on the part of the Successful Bidder (or Backup Bidder, if applicable), the Debtors will not have any obligation to return the Deposit deposited by the Successful Bidder (or Backup Bidder, if applicable), and such Deposit shall irrevocably become property of the Debtors as partial compensation for the damages caused to the Debtors and their estates as a result of such breach or failure to perform without prejudice to any claims, rights, or remedies of the Debtors or their estates for additional damages.

## O.    Fiduciary Out.

Nothing in these Bidding Procedures shall restrain the board of directors, board of managers, or such similar governing body of any of the Debtors or their affiliates from taking any action, or refraining from taking any action, after consulting with the Consultation Parties, to the extent that such board of directors, board of managers, or such similar governing body determines, based on the written advice of counsel that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

<u>**Exhibit 2**</u>

**Sale Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PROTERRA INC, *et al.*,[1] | ) | Case No. 23-11120 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No. __** |

## NOTICE OF BIDDING PROCEDURES, AUCTION DATE, AND POTENTIAL SALES

    **PLEASE TAKE NOTICE** that, on August 7, 2023, Proterra Inc and Proterra Operating Company, Inc. (collectively, the "Debtors" or the "Company") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

    **PLEASE TAKE FURTHER NOTICE** that, on August 8, 2023, the Debtors filed the *Debtors' Motion for Entry of: (I) an Order (A) Approving Bidding Procedures to Govern the Sale of All Or Substantially All of the Debtors' Assets Pursuant to Section 363 of the Bankruptcy Code, (B) Approving Procedures Regarding Entry Into One or More Stalking Horse Agreements, (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of the Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) Scheduling Auctions for the Sales of the Company Assets and Hearings to Consider Approval of the Sales and Approving the Form and Manner of the Notice Thereof, (F) Approving Certain Wind-Down Procedures, and (G) Granting Related Relief; and (II) an Order (A) Authorizing and Approving the Debtors' Entry Into One or More Asset Purchase Agreements, (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of Liens, (C) Approving the Assumption and Assignment of the Assumed Executory Contracts and Unexpired Leases, and (D) Granting Related Relief* [Docket No. 36] (the "Motion").

    **PLEASE TAKE FURTHER NOTICE** that, on [●], 2023, the Court entered that certain *Order (A) Approving Bidding Procedures to Govern the Sale of All Or Substantially All of the Debtors' Assets Pursuant to Section 363 of the Bankruptcy Code, (B) Approving Procedures Regarding Entry Into One or More Stalking Horse Agreements, (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of the Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) Scheduling Auctions for the Sales of the Company Assets and Hearings to Consider Approval of the Sales and Approving the Form and Manner of the Notice Thereof, and (F) Granting Related Relief* [Docket No. __] (the "Bidding Procedures Order"),[2] which approved,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (1379); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not defined have the meanings ascribed to them in the Bidding Procedures Order.

among other things, (a) procedures pursuant to which the Debtors are authorized to solicit and pursue (such procedures, the "Bidding Procedures") one or more sales or dispositions of all or any portion of the Debtors' assets (the "Company Assets") under section 363 of the Bankruptcy Code (each, an "Asset Sale") and any other type of strategic transaction involving the Debtors and/or the Company Assets, including, without limitation, a financing process for the potential raising of debt or equity financing through a chapter 11 plan of reorganization and/or a chapter 11 plan of reorganization proposed by the Cowen Parties, as holders of the Second Lien Convertible Notes, premised upon the preservation of the Debtors' net operating losses upon their emergence from these chapter 11 cases (any of the immediately foregoing, a "Recapitalization Transaction", and, any of the foregoing, including an Asset Sale, a "Potential Transaction"), (b) the scheduling of a hearing to approve (i) the Sale of the Track A Assets and (ii) the Sale of the Track B Assets, each free and clear of any liens, claims, and encumbrances under section 363 of the Bankruptcy Code, and (c) procedures in connection with the assumption and assignment of any executory contracts or unexpired leases the Debtors seek to have assumed and assigned in connection with a Potential Transaction. ***All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.***

**PLEASE TAKE FURTHER NOTICE** the Bidding Procedures provide for the consideration of Qualified Bids (as defined therein) to acquire substantially all of the Company's assets or separate Bids to acquire portions of the Company Assets, to the extent that the consummation of such transactions maximizes value for stakeholders and can be accomplished efficiently.

**PLEASE TAKE FURTHER NOTICE** that all interested parties are invited to provide materials (as described in the Bidding Procedures) to apply to become a Potential Bidder (as defined in the Bidding Procedures) and submit a Bid in accordance with the Bidding Procedures and the Bidding Procedures Order. The Bidding Procedures provide information regarding the requirements for a Potential Bidder to be a "Qualified Bidder" and a bid to be a "Qualified Bid" for purposes of competing at an Auction (as defined below).

**PLEASE TAKE FURTHER NOTICE** that the deadline to submit a Qualified Bid for (i) the Track A Assets is **October 16, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Track A Bid Deadline") and (ii) the Track B Assets is **November 6, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Track B Bid Deadline" and, together with the Track A Bid Deadline, the "Bid Deadlines"). Pursuant to the Bidding Procedures Order, in the event that the Debtors timely receive one or more Qualified Bids other than one from the Stalking Horse Bidders, if any, the Debtors are authorized to conduct an auction (the "Auction") for the Track A Assets and the Track B Assets, respectively, in accordance with the Bidding Procedures Order. The Auctions, if held, will occur (i) for the Track A Assets, on **October 19, 2023 at 10:00 a.m. (prevailing Eastern Time)** and (ii), for the Track B Assets, on **November 9, 2023 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York or such other location as shall be timely communicated to all entities entitled to attend each respective Auction. Only (a) Qualified Bidders (including the Stalking Horse Bidder, if any) and their legal and financial advisors, (b) the Consultation Parties, and (c) actual creditors of the Debtors (provided that they give at least three (3) business days' notice to the Debtors' counsel and the Committee's counsel of their intention to attend an Auction via email to Paul, Weiss, Rifkind, Wharton & Garrison LLP (Attn: Joshua A. Esses (jesses@paulweiss.com) and Vida Robinson (virobinson@paulweiss.com)) and (ii) Lowenstein Sandler LLP (Attn: Jeffrey Cohen

(jcohen@lowenstein.com), Eric Chafetz (echafetz@lowenstein.com), Jordana Renert (jrenert@lowenstein.com), and Keara Waldron (kwaldron@lowenstein.com)), shall be entitled to attend an Auction. If an Auction is cancelled, the Debtors shall file a notice of cancellation of the Auction.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to any Sales (the "Sale Objections"), shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of Practice and Procedure for the United States Bankruptcy Court for the District of Delaware, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estate or properties, the basis for the objection, and the specific grounds therefore, and shall be filed and served upon the following so that such objections are received by **October 16, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline") by: (a) counsel for the Debtors, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn. Paul Basta (pbasta@paulweiss.com) and Robert Britton (rbritton@paulweiss.com)), and (ii) Young Conaway Stargatt & Taylor LLP, 1000 North Street, Wilmington, Delaware, 19801 (Attn: Pauline Morgan (pmorgan@ycst.com) and Andrew Magaziner (amagaziner@ycst.com)); (b) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801 (Attn: Linda J. Casey (linda.casey@usdoj.gov)); (c) counsel for the Committee, (i) Lowenstein Sandler LLP (Attn: Jeffrey Cohen (jcohen@lowenstein.com), Eric Chafetz (echafetz@lowenstein.com), Jordana Renert (jrenert@lowenstein.com), and Keara Waldron (kwaldron@lowenstein.com)) and (ii) Morris James LLP (Attn: Eric Monzo (emonzo@morrisjames.com) and Brya Keilson (bkeilson@morrisjames.com)); and (d) the Notice Parties.

**PLEASE TAKE FURTHER NOTICE** that, for each Auction that is held, if any, the deadline to object only to (i) the conduct at the Auction or (ii) solely with respect to the Non-Debtor Counterparties to the Contracts, to the specific identity of and adequate assurance of future performance provided by the Successful Bidder (only if such Successful Bidder is not the Stalking Horse Bidder) (such a limited objection, a "Post-Auction Objection") is (a) the later of **October 27, 2023 at 4:00 p.m. (prevailing Eastern Time)** or within one day of the filing of the notice of the Successful Bidder with respect to the Track A Sale Hearing and (b) the later of **November 17, 2023 at 4:00 p.m. (prevailing Eastern Time)** or within one day of the filing of the notice of the Successful Bidder with respect to the Track B Sale Hearing (these deadlines, together, the "Post-Auction Objection Deadlines"). A Post-Auction Objection must be filed with this Court and served in the same manner as Sale Objections set forth above so to be actually received no later than the Post-Auction Objection Deadline.

**PLEASE TAKE FURTHER NOTICE** that failure of any entity to file an objection on or before the Sale Objection Deadline or applicable Post-Auction Objection Deadline shall be deemed to constitute consent to the sale of the Company Assets to the Successful Bidder and the other relief requested in the Motion, and be a bar to the assertion, at the applicable Sale Hearing or thereafter, of any objection to the Motion, the applicable Auction, the applicable Sale, or the Debtors' consummation and performance of the terms of the applicable Definitive Purchase Agreement.

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures Order provides that a hearing to approve the Sale of (a) the Track A Assets to the Successful Bidder therefor shall take

place on **November 1, 2023 at 10:00 a.m. (prevailing Eastern Time),** and (b) the Track B Assets to the Successful Bidder therefor shall take place on **November 28, 2023 at 10:00 a.m. (prevailing Eastern Time)** (these hearings, together, the "Sale Hearings"). The Sale Hearings will be held before the Honorable Brendan L. Shannon, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 6th Floor, Wilmington, DE 19801.

For ease of reference, the following chart has been included to summarize key dates relevant to this notice:[3]

| **Deadline/Event** | **Proposed Dates/Deadlines** | |
| --- | --- | --- |
| | **Track A Bids** | **Track B Bids** |
| **Service and Publication of Sale Notice** | 1 business day after entry of Bidding Procedures Order or as soon as reasonably practicable thereafter | |
| **Debtors' Deadline to File a Proposed Form of Sale Order** | Monday, September 25, 2023 @ 4:00 p.m. (ET) | |
| **Debtors' Deadline to File and Serve Cure Notices** | Monday, September 25, 2023 | |
| **Initial Indication of Interest ("IOI") Deadline** | Tuesday, September 26, 2023 @ 4:00 p.m. (ET) | |
| **Sale Objection Deadline** | Monday, October 16, 2023 @ 4:00 p.m. (ET) | |
| **Cure/Assignment Objection Deadline** | Monday, October 16, 2023 @ 4:00 p.m. (ET) | |
| **Qualified Bid Submission Deadline (can be extended at Debtors' discretion, in consultation with the Consultation Parties)** | Monday, October 16, 2023 @ 4:00 p.m. (ET) | Monday, November 6, 2023 @ 4:00 p.m. (ET) |
| **Determination of Qualified Bids** | Wednesday, October 18, 2023 | Wednesday, November 8, 2023 |
| **Auction (if necessary)** | Thursday, October 19, 2023 @ 10:00 a.m. (ET) | Thursday, November 9, 2023 @ 10:00 a.m. (ET) |
| **Identification of Successful Bidder and Backup Bidder, if any** | Friday, October 20, 2023 (or as soon as reasonably practicable thereafter) | Friday, November 10, 2023 (or as soon as reasonably practicable thereafter) |

---

[3]    All dates, times, and deadlines are subject to change or modification in accordance with the Bidding Procedures Order.

| Deadline/Event | Proposed Dates/Deadlines | |
|---|---|---|
| | **Track A Bids** | **Track B Bids** |
| **Post-Auction Objection Deadline** | The later of Friday, October 27, 2023 @ 4:00 p.m. (ET) or within one day of the filing of the notice of the Successful Bidder | The later of Friday, November 17, 2023 @ 4:00 p.m. (ET) or within one day of the filing of the notice of Successful Bidder |
| **Deadline to File Replies in Connection with Sale** | Monday, October 30, 2023 @ 10:00 a.m. (ET) | Wednesday, November 22, 2023 @ 10:00 a.m. (ET) |
| **Sale Hearing** | Wednesday, November 1, 2023 @ 10:00 am (ET) | Tuesday, November 28, 2023 @ 10:00 a.m. (ET) |
| **Closing Date** | As soon as reasonably practicable following entry of a Sale Order | As soon as reasonably practicable following entry of a Sale Order |

**PLEASE TAKE FURTHER NOTICE** that this notice is subject to the full terms and conditions of the Motion, the Bidding Procedures Order, and the Bidding Procedures, and the Debtors urge parties in interest to review such documents in their entirety. Copies of the Motion, the Stalking Horse Agreements, if any, the Bidding Procedures, and the Bidding Procedures Order, in addition to any related documents that may be filed, may be obtained by accessing (a) the website of the Debtors' notice and claims agent, Kurtzman Carson Consultants LLC ("KCC"), at www.kccllc.net/proterra for no charge, or (b) the Court's internet site: https://ecf.deb.uscourts.gov, for a fee, through an account obtained from the PACER website at http://pacer.psc.uscourts.gov. The documents also may be obtained from the Debtors' claims and notice agent, KCC, at 888-251-3076 (USA or Canada) or 310-751-2617 (International).

<u>**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE A SALE OBJECTION**</u>

**ANY PARTY OR ENTITY THAT FAILS TO TIMELY FILE AND SERVE AN OBJECTION ON OR BEFORE THE SALE OBJECTION DEADLINE OR APPLICABLE POST-AUCTION OBJECTION DEADLINE, AS APPLICABLE, IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE COMPANY ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS AFFECTED THEREUNDER.**

**IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING. ANY CREDITOR THAT RECEIVES NOTICE OF A SALE HEARING AND FAILS TO TIMELY FILE AN OBJECTION TO THE SALE ON OR BEFORE THE APPLICABLE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE DEEMED TO HAVE CONSENTED UNDER SECTION 363(F)(2) OF THE BANKRUPTCY CODE TO SUCH SALE FREE AND CLEAR OF SUCH CREDITOR'S LIEN, CLAIMS, ENCUMBRANCES, OR INTERESTS, IF ANY.**

| | |
|---|---|
| Dated:    [●], 2023<br>        Wilmington, Delaware | Respectfully submitted, |

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ DRAFT*
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
        amagaziner@ycst.com
        sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:     (212) 373-3000
Fax:     (212) 757-3990
Email: pbasta@paulweiss.com
       rbritton@paulweiss.com
       mcolarossi@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Exhibit 3

## Cure Notice

|  |  |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. __** |

**NOTICE OF (I) POTENTIAL ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
<u>AND UNEXPIRED LEASES AND (II) PROPOSED CURE AMOUNTS</u>**

   **You are receiving this notice (this "<u>Notice</u>") because you may be a counterparty to a contract or lease with one or both of the Debtors (defined below) as set forth on <u>Appendix A</u> hereto.  Please read this notice carefully as your rights may be affected by the transactions described herein.**[2]

   **PLEASE TAKE NOTICE OF THE FOLLOWING**:

   1. On August 7, 2023, Proterra Inc and Proterra Operating Company, Inc. (collectively, the "<u>Debtors</u>" or the "<u>Company</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

   2. On August 8, 2023, the Debtors filed the *Debtors' Motion for Entry of: (I) an Order (A) Approving Bidding Procedures to Govern the Sale of All Or Substantially All of the Debtors' Assets Pursuant to Section 363 of the Bankruptcy Code, (B) Approving Procedures Regarding Entry Into One or More Stalking Horse Agreements, (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of the Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) Scheduling Auctions for the Sales of the Company Assets and Hearings to Consider Approval of the Sales and Approving the Form and Manner of the Notice Thereof, (F) Approving Certain Wind-Down Procedures, and (G) Granting Related Relief; and (II) an Order (A) Authorizing and Approving the Debtors' Entry Into One or More Asset Purchase Agreements, (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of Liens, (C) Approving the Assumption and Assignment of the Assumed Executory Contracts and Unexpired Leases, and (D) Granting Related Relief* [Docket No. 36] (the "<u>Motion</u>").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (1379); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2] This Notice is being sent to counterparties to contracts and leases that may be executory contracts and unexpired leases.  This notice is not an admission by the Debtors that such contract or lease is executory or unexpired.

3.     On [●], 2023, the Court entered that certain *Order (A) Approving Bidding Procedures to Govern the Sale of All Or Substantially All of the Debtors' Assets Pursuant to Section 363 of the Bankruptcy Code, (B) Approving Procedures Regarding Entry Into One or More Stalking Horse Agreements, (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of the Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) Scheduling Auctions for the Sales of the Company Assets and Hearings to Consider Approval of the Sales and Approving the Form and Manner of the Notice Thereof, and (F) Granting Related Relief* [Docket No. ___] (the "Bidding Procedures Order"),[3] which approved, among other things, (a) procedures pursuant to which the Debtors, in consultation with the Consultation Parties, are authorized to solicit and pursue (such procedures, the "Bidding Procedures") one or more sales or dispositions of all or any portion of the Debtors' assets (the "Company Assets") under section 363 of the Bankruptcy Code (each, an "Asset Sale") and any other type of strategic transaction involving the Debtors and/or the Company Assets, including, without limitation, a financing process for the potential raising of debt or equity financing through a chapter 11 plan of reorganization and/or a chapter 11 plan of reorganization proposed by the Cowen Parties, as holders of the Second Lien Convertible Notes, premised upon the preservation of the Debtors' net operating losses upon their emergence from these chapter 11 cases (any of the immediately foregoing, a "Recapitalization Transaction", and, any of the foregoing, including an Asset Sale, a "Potential Transaction"), (b) the scheduling of a hearing to approve (i) the Sale of the Track A Assets and (ii) the Sale of the Track B Assets, each free and clear of any liens, claims, and encumbrances under section 363 of the Bankruptcy Code, and (c) procedures in connection with the assumption and assignment of any executory contracts or unexpired leases the Debtors seek to have assumed and assigned in connection with a Potential Transaction.

4.     Pursuant to the Bidding Procedures Order: (i) the Track A Sale Hearing is scheduled to take place on **November 1, 2023 at 10:00 a.m. (prevailing Eastern Time)**; and (ii) the Track B Sale Hearing is scheduled to take place on **November 28, 2023 at 10:00 a.m. (prevailing Eastern Time)**.  The Sale Hearings will be held before the Honorable Brendan L. Shannon at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 6th Floor, Wilmington, DE 19801.[4]

5.     Pursuant to the Bidding Procedures Order, the Debtors **may** assume and assign to any Stalking Horse Bidder, Backup Bidder, or a Successful Bidder other than the Stalking Horse Bidder or the Backup Bidder, the executory contract(s) or unexpired lease(s) listed on **Appendix A** attached hereto (each, a "Contract") to which you are a counterparty.  The Debtors have conducted a review of their books and records and have determined that the cure amounts required to be paid pursuant to Bankruptcy Code section 365(b) in respect of such Contract(s) (the "Cure Amount") are as set forth on **Appendix A** attached hereto.  **If you disagree with the proposed Cure Amount, object to the proposed assumption and assignment of the Contract(s) to the Successful Bidder, or object to the Successful Bidder's ability to provide adequate assurance of future performance with respect to any Contract(s), you must file an**

---

[3]     Capitalized terms used but not defined have the meanings ascribed to them in the Bidding Procedures Order.

[4]     Dates relating to the Sales, including the scheduled dates for the Auctions and Sale Hearings, may be changed in accordance with the Bidding Procedures Order.

objection (a "**Cure/Assignment Objection**"), stating with specificity the nature of your objection, with the Bankruptcy Court no later than 4:00 p.m. (prevailing Eastern Time) on October 16, 2023 (the "**Cure/Assignment Objection Deadline**"). Cure/Assignment Objections must be filed and served *so as to be actually received by the Cure/Assignment Objection Deadline* by: (a) counsel for the Debtors, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn. Paul Basta (pbasta@paulweiss.com) and Robert Britton (rbritton@paulweiss.com)), and (ii) Young Conaway Stargatt & Taylor LLP, 1000 North Street, Wilmington, Delaware, 19801 (Attn: Pauline Morgan (pmorgan@ycst.com) and Andrew Magaziner (amagaziner@ycst.com)); (b) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801 (Attn: Linda J. Casey (linda.casey@usdoj.gov)); (c) counsel for the Committee, (i) Lowenstein Sandler LLP (Attn: Jeffrey Cohen (jcohen@lowenstein.com), Eric Chafetz (echafetz@lowenstein.com), Jordana Renert (jrenert@lowenstein.com), and Keara Waldron (kwaldron@lowenstein.com)) and (ii) Morris James LLP (Attn: Eric Monzo (emonzo@morrisjames.com) and Brya Keilson (bkeilson@morrisjames.com)); and (d) the Notice Parties.

6.      The Debtors propose that if the counterparty to any Contract(s) fails to file an objection by the Cure/Assignment Objection Deadline to (a) the Cure Amount(s), (b) the proposed assumption and assignment of all or some of the Contracts to the Successful Bidder, or (c) adequate assurance of the Successful Bidder's ability to perform under the Contracts, then that counterparty shall be (i) deemed to have agreed and stipulated to the accuracy of the Cure Amount(s) set forth on this **Appendix A**, (ii) forever barred, estopped, and enjoined from asserting any additional cure amount under or in respect of the Contract(s), and (iii) forever barred from objecting to the assumption and assignment of the Contract(s) to the Successful Bidder, including on the basis that there was a failure to provide adequate assurance of future performance.

7.      Promptly following the Debtors' selection of the Successful Bidder and the conclusion of each Auction (if any), the Debtors shall file notice of the Successful Bid and Successful Bidder (the "Successful Bidder Notice") with the Bankruptcy Court within one (1) day after such Auction. **If you would like to receive service of any Successful Bidder Notice via email, please visit www.kccllc.net/proterra and click the link for "Successful Bidder email notification" on the webpage.**

8.      If any Auction is held, the deadline for non-Debtor counterparties to the Contracts to object solely with respect to the specific identity of and adequate assurance of future performance provided by the Successful Bidder (only if such Successful Bidder is not the Stalking Horse Bidder, if any, or the Backup Bidder, if any) (such a limited objection, a "Post-Auction Objection") **is (i), with respect to the Contracts constituting Track A Assets that are proposed to be sold at the Track A Sale Hearing, the later of 4:00 p.m. (prevailing Eastern Time) on October 27, 2023 or within one day of the filing of the Successful Bidder Notice and (ii), with respect to the Contracts constituting Track B Assets that are proposed to be sold at the Track B Sale Hearing, the later of 4:00 p.m. (prevailing Eastern Time) on November 17, 2023 or within one day of the filing of the Successful Bidder Notice** (each, the "Post-Auction Objection Deadline"). A Post-Auction Objection must be filed with this Court and served in the same manner as a Cure/Assignment Objection set forth above so to be actually received no later than the Post-Auction Objection Deadline.

9.     With respect to any Contract(s) assumed and assigned to the Successful Bidder (the "Assumed Contracts"), if a non-Debtor party to an Assumed Contract has objected solely to the proposed Cure Amount, the Debtors may, with the consent of, or at the direction of, the Successful Bidder, pay the undisputed portion of such Cure Amount and place the disputed amount in a segregated account pending further order of the Court or mutual agreement of the parties. So long as such disputed amounts are held in such segregated account, the Debtors may, without delay, assume and assign such Assumed Contract to the applicable assignee. Under such circumstances, the objecting non-Debtor counterparty's recourse is limited to the funds held in such segregated account.

10.     Following the payment of the Cure Amount(s) (subject to the preceding paragraph), the Debtors' filing and service of a notice regarding the closing of a Sale shall serve as notice that such Assumed Contracts have actually been assumed and assigned.

11.     Notwithstanding anything herein, this notice shall not be deemed to be an assumption, assignment, adoption, rejection, termination, or concession to the executory nature of any Contract(s). Moreover, the Debtors explicitly reserve their rights, in their sole discretion, to reject or assume each Contract pursuant to section 365(a) of the Bankruptcy Code and nothing herein (a) alters in any way the prepetition nature of the Contract(s) or the validity, priority, or amount of any claims of a counterparty to any Contract against the Debtors that may arise under such Contract, (b) creates a postpetition contract or agreement, or (c) elevates to administrative expense priority any claims of an counterparty to a Contract against the Debtors that may arise under such Contract.

12.     This notice is subject to the full terms and conditions of the Motion, the Bidding Procedures Order, and the Bidding Procedures, which shall control in the event of any conflict, and the Debtors urge parties in interest to review such documents in their entirety. Copies of the Motion, the Stalking Horse Agreements, if any, the Bidding Procedures, and the Bidding Procedures Order, in addition to any related documents that may be filed, may be obtained by accessing (a) the website of the Debtors' notice and claims agent, Kurtzman Carson Consultants LLC ("KCC"), at www.kccllc.net/proterra for no charge, or (b) the Court's internet site: https://ecf.deb.uscourts.gov, for a fee, through an account obtained from the PACER website at http://pacer.psc.uscourts.gov. The documents also may be obtained from the Debtors' claims and notice agent, KCC, at 888-251-3076 (USA or Canada) or 310-751-2617 (International).

*[Remainder of Page Intentionally Left Blank]*

Dated:    [●], 2023          Respectfully submitted,
          Wilmington, Delaware

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

*/s/ DRAFT*
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
        amagaziner@ycst.com
        sborovinskaya@ycst.com

        - and -

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
        rbritton@paulweiss.com
        mcolarossi@paulweiss.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

**APPENDIX A TO CURE NOTICE**

| Counterparty Name | Contract/Lease | Cure Amount |
| --- | --- | --- |