**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PROTERRA INC, *et al.*,[1] | ) | Case No. 23-11120 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Ref. Docket No. 137** |
| | ) | |

**CERTIFICATION OF COUNSEL REGARDING ORDER AUTHORIZING**
**THE DEBTORS TO EMPLOY AND RETAIN MOELIS & COMPANY LLC**
**AS CAPITAL MARKETS ADVISOR AND INVESTMENT BANKER**
**EFFECTIVE AS OF THE PETITION DATE**

On August 25, 2023, the above-captioned debtors and debtors in possession

(together, the "Debtors") filed the *Debtors' Application for Entry of an Order Authorizing the*

*Debtors to Employ and Retain Moelis & Company LLC as Capital Markets Advisor and*

*Investment Banker Effective as of the Petition Date* [D.I. 137] (the "Application") with the United

States Bankruptcy Court for the District of Delaware (the "Court"). A proposed order (the

"Proposed Order") was attached to the Application as Exhibit A. The deadline to file objections

or otherwise respond to the Application was established as September 8, 2023 at 4:00 p.m. (ET)

(as may have been extended by the Debtors for any party, the "Objection Deadline").

Prior to the Objection Deadline, the Debtors received informal comments from the

Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") and the

Official Committee of Unsecured Creditors (the "Committee"). No other formal or informal

responses or objections to the Application were received.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (1379); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

Following discussions with the U.S. Trustee and Committee, the Debtors have submitted the *First Supplemental Declaration of Bassam J. Latif in Support of Debtors' Application for Entry of an Order Authorizing the Debtors to Employ and Retain Moelis & Company LLC as Capital Markets Advisor, and Investment Banker* [D.I. 265], and a revised proposed order (the "<u>Revised Proposed Order</u>"), a copy of which is attached hereto as **<u>Exhibit A</u>**, which resolves the U.S. Trustee's and Committee's comments. For the convenience of the Court and other interested parties, a blackline comparing the Revised Proposed Order against the Proposed Order is attached hereto as **<u>Exhibit B</u>**.

WHEREFORE, as the Debtors did not receive any objections or responses other than that described herein, and the U.S. Trustee and the Committee do not object to entry of the Revised Proposed Order, the Debtors respectfully request that the Court enter the Revised Proposed Order without further notice or hearing at the Court's earliest convenience.

[*Remainder of page intentionally left blank*]

Dated:  September 20, 2023
         Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
          amagaziner@ycst.com
          sborovinskaya@ycst.com

         - and -

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:     (212) 373-3000
Fax:     (212) 757-3990
Email:  pbasta@paulweiss.com
          rbritton@paulweiss.com
          mcolarossi@paulweiss.com

*Counsel to the Debtors and
Debtors in Possession*

# EXHIBIT A

## Revised Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
|  | ) Case No. 23-11120 (BLS) |
| PROTERRA INC, *et al.*,[1] | ) |
|  | ) (Jointly Administered) |
|  | ) |
| Debtors. | ) |
|  | ) **Re: Docket No. 137** |

**ORDER AUTHORIZING THE DEBTORS TO**
**EMPLOY AND RETAIN MOELIS & COMPANY LLC AS CAPITAL MARKETS**
**ADVISOR AND INVESTMENT BANKER EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), pursuant to sections 327(a), 328(a) and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 of the Bankruptcy Rules, and Local Rules 2014-1 and 2016-2:  (i) authorizing the Debtors to employ and retain Moelis & Company LLC ("Moelis") to serve as the Debtors' capital markets advisor and investment banker effective as of the Petition Date in accordance with the terms and conditions of the engagement letter between Moelis and the Debtors, dated as of August 21, 2023 ("Engagement Letter"), attached hereto as **Exhibit 1**, including the compensation arrangements and indemnification, contribution and reimbursement provisions set forth therein; (ii) modifying the timekeeping requirements of Bankruptcy Rule 2016(a), Local Rule 2016-2,  the guidelines of the United States Trustee for the District of Delaware (the "U.S. Trustee Guidelines") and any other applicable procedures and orders of this Court in connection with Moelis' engagement; and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not defined herein have the meanings given to them in the Application.

(iii) granting such other relief as this Court deems just and proper; and this Court having found that it has jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and consideration of the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and objections (if any) to the Application having been withdrawn, resolved or overruled on the merits; and upon consideration of the Application and the Latif Declaration; and upon the record of all proceedings had before this Court; and this Court having found and determined that the relief sought in the Application is in the best interests of the Debtors' estates, their creditors and other parties in interest, and that the legal and factual bases set forth in the Application and the Latif Declaration establish just cause for the relief granted herein; and this Court being satisfied, based on the representations made in the Application and the Latif Declaration, that (i) Moelis does not hold or represent an interest adverse to the Debtors' estates and (ii) Moelis is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Application is granted as set forth in this Order and the provisions set forth in the Engagement Letter (and all attachments thereto) are hereby approved, to the extent provided herein and except as otherwise expressly modified herein to the contrary.

2.      In accordance with sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2, effective as of the Petition Date, the Debtors are authorized to employ and retain Moelis as their capital markets advisor and investment banker in these chapter 11 cases in accordance with the terms and conditions set forth in the Engagement Letter, as modified herein, to pay fees and reimburse expenses, and to provide indemnification, contribution, and/or reimbursement to Moelis on the terms and at the times specified in the Engagement Letter as modified herein.

3.      Moelis shall be compensated for fees and reimbursed for out-of-pocket expenses by the Debtors in accordance with the terms of the Application and/or Engagement Letter, as modified herein, and all fees and out-of-pocket expense reimbursements to be paid to Moelis, including without limitation the Monthly Fees, the Capital Transaction Fee, the Sale Transaction Fee, and the Restructuring Fee, shall be subject to section 328(a) of the Bankruptcy Code, except as set forth herein.

4.      Notwithstanding anything to the contrary contained herein or in the Application and/or Engagement Letter, Moelis shall file interim and final fee applications for allowance of compensation and reimbursement of out-of-pocket expenses pursuant to Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines and any other procedures or orders of this Court, each as and to the extent modified pursuant to this Order; *provided, however*, the U.S. Trustee retains all rights to respond or object to Moelis' interim and final applications for compensation (including without limitation the Monthly Fees, the Capital Transaction Fee, the Sale Transaction Fee, and the Restructuring Fee) and reimbursement of out-of-pocket expenses pursuant to section 330 of the Bankruptcy Code, and this Court retains jurisdiction to consider the U.S. Trustee's response or objection to Moelis' interim and final fee

3

pursuant to section 330 of the Bankruptcy Code; and *provided, further*, that "reasonableness" shall be evaluated by comparing (among other things) the fees payable in these cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated solely on an hourly or length-of-case based criteria.  Notwithstanding the foregoing, while Moelis will file monthly fee applications, Moelis shall not be required to await approval of any fee application before receiving the Monthly Fees pursuant to the terms of the Engagement Letter.

5.    Notwithstanding anything to the contrary in the Application, the Engagement Letter, or this Order, the terms of the Engagement Letter are hereby modified as follows:

    i.    **Section 2(b) is deleted and replaced in its entirety with the following**: At the closing of a Restructuring, a fee (the "Restructuring Fee") of $3,750,000; *provided, however*, that the confirmation of solely a liquidating Plan which includes or is confirmed in connection with the consummation of a Sale Transaction shall not constitute a Restructuring which requires payment of a Restructuring Fee.

    ii.    **Section 2(c) is deleted and replaced in its entirety with the following**: At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of:

        (i)    $3,500,000, plus 2.5% of Transaction Value (as defined in *Annex A*) for amounts in excess of $175,000,000, for the Sale Transaction with the highest Transaction Value; plus

        (ii)    $2,000,000 plus 2.5% of Transaction Value (as defined in *Annex A*) for amounts in excess of $175,000,000, for the Sale Transaction with the second highest Transaction Value; plus

        (iii)    2.0% of Transaction Value (as defined in *Annex A*) for any other Sale Transactions.

The Company will pay a separate Sale Transaction Fee in respect of each Sale Transaction in the event more than one Sale Transaction

occurs. In the event more than one Sale Transaction occurs, and Moelis earns and is paid more than one Sale Transaction Fee, 25% of the Sale Transaction Fee earned per Section 2(c)(ii) shall be credited against the Sale Transaction Fee earned per Section 2(c)(i).

iii.   Notwithstanding anything in the Application or Engagement Letter to the contrary, the aggregate Transaction Fees (whether pursuant to the Tail Period or otherwise) and Monthly Fees payable under the Engagement Letter, taking into account any fee credits, shall not exceed $7,000,000.

iv.   Notwithstanding anything in the Application or Engagement Letter to the contrary, Moelis shall earn and be paid both a Restructuring Fee and a Sale Transaction Fee in the event both a Sale Transaction and a subsequent Restructuring Transaction pursuant to a Plan of Reorganization occur, provided, however, that in the event both a Restructuring Fee and any Sale Transaction Fees are earned by Moelis, 50% of the lesser of (a) the aggregate Sale Transaction Fees and (b) the Restructuring Fee shall be credited against the greater of the aggregate Sale Transaction Fees and the Restructuring Fee.

v.   Notwithstanding anything in the Application, Engagement Letter, or this Order to the contrary, Moelis shall not be entitled to receive any Termination Fee.

6.   Notwithstanding anything to the contrary in the Application, the Engagement Letter, or herein, the requirements of the Bankruptcy Rules, the Local Rules, the Trustee Guidelines and any other procedures or orders of this Court are hereby modified such that Moelis restructuring professionals shall be required only to keep summary time records in half-hour increments, Moelis' non-restructuring professionals and personnel in administrative departments (including legal) shall not be required to keep time records, Moelis' professionals shall not be required to keep time records on a project category basis, and Moelis shall not be required to provide or conform to any schedule of hourly rates.

7.   In the event that Moelis seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Moelis' own

applications, both interim and final, and these invoices and time records shall be subject to the approval of this Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code. Attorneys' fees and/or expenses reimbursed under the Engagement Letter shall be limited to those expended in representing Moelis in retention and fee application matters. For the avoidance of doubt, the preceding sentence does not apply to, and in no way limits, the provisions with respect to reimbursement of attorney's fees and/or expenses set forth in Annex B to the Engagement Letter with respect to indemnification. Notwithstanding anything contained or set forth in the Application or the Engagement Letter, Moelis shall not seek reimbursement of any fees or costs incurred defending any of Moelis' fee applications in these cases.

8.      The indemnification contribution, and reimbursement provisions included in Annex B to the Engagement Letter are approved, subject during the pendency of these cases to the following modifications:

    a.  No Moelis Person (as that term is defined in the Engagement Letter) shall be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement are approved by this Court.

    b.  The Debtors  shall have no obligation to indemnify any Moelis Person, or provide contribution or reimbursement to any Moelis Person, for any claim or expense to the extent it  is either:  (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from the Moelis Person's gross negligence, willful misconduct or bad faith; (ii) for a contractual dispute in which the Debtors allege breach of Moelis' contractual obligations, unless this Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003) ; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) hereof, to be a claim or expense for which the Moelis Person should not receive indemnity, contribution or

reimbursement under the terms of the Engagement Letter, as modified by this Order.

c.  If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases,  a Moelis Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation, the advancement of defense costs, the Moelis Person must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Moelis Person before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by any Moelis Person for indemnification, contribution and/or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to, any Moelis Person.  All parties in interest shall retain the right to object to any demand for indemnification, contribution and/or reimbursement.

9.    Any limitation of liability pursuant to the terms and conditions set forth in the Application, the Engagement Letter or any ancillary documents thereto shall not apply as to any losses, claims, damages or liabilities for which any Moelis Person would not be entitled to indemnification under the provisions of this Order. Any limitations on amounts to be contributed by any Moelis Person shall be eliminated. The Moelis Persons shall retain any rights they may have to contribution at common law.

10.    Moelis shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

11.    Notwithstanding anything in the Application or the Engagement Letter to the contrary, Moelis shall, (i) to the extent that Moelis uses the services of independent contractors, subcontractors, or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in these cases, pass through the cost of such Contractors to the Debtors at the same rate that Moelis pays the Contractors; and (ii) seek reimbursement for actual costs only.  The Debtors shall ensure

7

that any such Contractors are subject to the same conflict checks as required for Moelis and that they shall file with this Court such disclosures as required by Bankruptcy Rule 2014.

12.     Notwithstanding anything to the contrary in the Application or the Engagement Letter, during the course of these chapter 11 cases, any provision in the Engagement Letter to the effect that Moelis is not acting as a fiduciary of the Debtors shall have no force or effect.

13.     Moelis shall not unilaterally terminate its engagement under the Engagement Letter absent prior approval of the Court.

14.     Such services other than those set forth in the Application that the Debtors may request that Moelis provide during the course of these chapter 11 cases, to the extent agreed to by Moelis, shall be subject to separate application and order of this Court.

15.     The Debtors and Moelis are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

16.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

17.     Notwithstanding any provision to the contrary in the Application or the Engagement Letter, this Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation of this Order.

18.     To the extent that there may be any inconsistency between the terms of the Application, the Latif Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

## <u>EXHIBIT 1</u>

**Engagement Letter**

# Moelis

August 21, 2023

<u>CONFIDENTIAL</u>

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 6th Ave
New York, NY 10019
Attention: Robert A. Britton, Partner

Proterra Inc.
1815 Rollins Road
Burlingame, CA 94010
Attention: Gareth Joyce, Chief Executive Officer

Dear Gareth and Bob:

This letter agreement (the "<u>Agreement</u>") confirms that since July 17, 2023 (the "<u>Effective Date</u>"), Paul, Weiss, Rifkind, Wharton & Garrison LLP ("<u>Paul Weiss</u>" or "<u>Counsel</u>"), solely in its capacity as legal counsel to Proterra Inc and its direct and indirect subsidiaries (collectively, the "<u>Company</u>"), has engaged Moelis & Company LLC ("<u>Moelis</u>") to act as the exclusive financial advisor, capital markets advisor and investment banker to Counsel on behalf of the Company in connection with the Company's proposed Restructuring, Sale Transaction and/or Capital Transaction (each as defined below).

The parties acknowledge and agree that (i) this Agreement supersedes and replaces the prior Engagement Letter, dated July 31, 2023, between the Company and Moelis (which superseded and replaced the original Engagement Letter, dated April 19, 2023, between the Company and Moelis), and (ii) Moelis waives any rights to payment of fees (whether contingent or non-contingent) to Moelis under that certain Placement Agent Agreement among the Company, Moelis, and Morgan Stanley & Co. LLC, dated as of May 23, 2023 (other than pursuant to Schedule I thereof).

For purposes of this Agreement:

"<u>Restructuring</u>" means any restructuring, reorganization, repayment, refinancing, rescheduling or recapitalization of all or any material portion of the  liabilities of the Company (or its direct or indirect subsidiaries), however such result is achieved, including, without limitation, through a plan of reorganization or liquidation (a "<u>Plan</u>") confirmed in connection with a case (a "<u>Bankruptcy Case</u>") commenced by or against the Company or any of its subsidiaries or affiliates under title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), an exchange offer or consent solicitation, covenant relief, a rescheduling of debt maturities, a change in interest rates, a settlement or forgiveness of debt, a conversion of debt into equity, or other amendments to the Company's debt instruments.

"<u>Sale Transaction</u>" means (a) the sale of all or a majority of the issued and outstanding equity securities of the Company or any of its subsidiaries to one or more third parties (including creditors) (an "<u>Acquirer</u>"), (b) the merger or combination of the Company or any of its subsidiaries with an Acquirer or (c) an Acquirer's acquisition of all or a significant portion of the assets,

**Moelis**

properties or business of the Company or any of its subsidiaries, including any credit bids, or (d) an Acquirer's acquisition of any business unit, segment division or specified discrete assets that Moelis may be asked to sell, including any credit bids.

"Capital Transaction" means a transaction in which the Company (or any of its subsidiaries) raises or issues any (a) secured or unsecured debt (including, without limitation, any asset-backed debt, or debtor-in-possession financing in connection with a Bankruptcy Case); (b) equity interests (including, without limitation, preferred stock or common stock) or equity-linked interests (including convertible debt); (c) hybrid capital; or (d) options, warrants or other rights to acquire equity interests; *provided*, that any transaction that is (i) executed by an entity that is not an affiliate of the Company as of the date of the transaction and (ii) not executed in connection with the consummation of a Restructuring Transaction or a Sale Transaction shall not be deemed to be a Capital Transaction under this Agreement.

A "Transaction" means either a Restructuring, a Sale Transaction and/or a Capital Transaction, as the context requires.

A Transaction may be undertaken by the Company or any such entity to be formed to carry out a Transaction on behalf of the Company (including, without any limitation, any existing or newly formed general partner, manager, joint venture, partnership, subsidiary or affiliate). The Company shall cause any entity used to effectuate a Transaction (a "Transaction Co") to execute a joinder to this agreement in a form reasonably acceptable to Moelis within 5 business days of identifying such entity as a Transaction Co. All references in this Agreement to the "Company" shall include each Transaction Co who executes such a joinder. The obligations under this agreement of the entities comprising the Company shall be several and joint.

1.    Services

As part of its engagement, Moelis will, if appropriate and requested by Counsel (on behalf of the Company) or the Company:

(a)    assist Counsel in reviewing and analyzing the Company's results of operations, financial condition and business plan;

(b)    assist Counsel in reviewing and analyzing any potential Restructuring, Sale Transaction or Capital Transaction;

(c)    assist Counsel in negotiating any Restructuring, Sale Transaction or Capital Transaction;

(d)    advise Counsel on the terms of securities it offers in any potential Capital Transaction;

(e)    advise Counsel on its preparation of information memorandums for potential Sale Transactions or Capital Transactions (each, an "Information Memo");

(f)    assist Counsel in contacting potential Acquirers or purchasers of a Capital Transaction ("Purchasers") that Moelis and Counsel agree are appropriate, and

# Moelis

      meet with and provide them with the Information Memo and such additional information about the Company's assets, properties or businesses that is acceptable to the Company, subject to customary business confidentiality agreements;

(g)      assist Counsel in developing a strategy to effectuate the Transaction(s);

(h)      meet with the Company and its Board of Directors to discuss the proposed Transaction(s) and its financial implications;

(i)      provide testimony (and attend any related depositions) related to the aforementioned services, including the results of any marketing process for a potential Transaction;

(j)      provide such other financial advisory and investment banking services in connection with a Restructuring, Sale Transaction or Capital Transaction as Moelis and Counsel may mutually agree upon.

The parties understand and agree that Moelis is being engaged by Counsel on behalf of the Company, that the Company will be solely responsible for payment to Moelis of fees and expenses as provided herein, and that Counsel shall not have any liability for any fees, expenses, or other amounts payable under this agreement.

Please note that Moelis does not provide legal, tax, accounting or actuarial advice. This Agreement is not a commitment, express or implied, on the part of Moelis to purchase or place the Capital Transaction or any other financing and it is acknowledged that Moelis' services with respect to a Capital Transaction will be made on a reasonable best efforts basis. Moelis' obligations under this Agreement with respect to a Capital Transaction are subject to, among other things: (i) satisfactory completion of its due diligence review and (ii) satisfactory market conditions.

2.    <u>Compensation; Expenses</u>

As compensation for Moelis' services hereunder, the Company agrees to pay Moelis the following nonrefundable cash fees:

<u>Monthly Fee</u>

(a)      Beginning as of the Effective Date, and during the term of this Agreement, a fee of $200,000 for the first month and $150,000 per month thereafter (the "<u>Monthly Fee</u>"), payable in advance of each month. The Company will pay the first Monthly Fee immediately upon the execution of this Agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the Effective Date of this Agreement. Whether or not a Restructuring, Sale Transaction or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of this Agreement. 50% of the Monthly Fee beginning in the 4th month following the Effective Date of this Agreement shall be offset, to the extent

**Moelis**

previously paid, against the Restructuring Fee, Sale Transaction Fee and Capital Transaction Fee (as defined below).

Restructuring Fee

(b)     At the closing of a Restructuring, a fee (the "Restructuring Fee") of $3,750,000.

Sale Transaction Fee

(c)     At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of:

(a) $3,500,000; plus

(b) 2.5% of Transaction Value (as defined in **Annex A**) for amounts in excess of $175,000,000.

The Company will pay a separate Sale Transaction Fee in respect of each Sale Transaction in the event more than one Sale Transactions occurs pursuant to Section (d) of the definition of a Sale Transaction. In the event Moelis earns more than one Sale Transaction Fee, 25% of the lesser Sale Transaction Fee shall be credited against the greater Sale Transaction Fee.

Capital Transaction Fee

(d)     At the closing of a Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee") of:

(i) 5.0% of the aggregate gross amount or face value of capital Raised (as defined below) in the Capital Transaction as equity, equity-linked interests, options, warrants or other rights to acquire equity interests (including any rights offerings); plus

(ii) 2.5% of the aggregate gross amount of junior debt obligations Raised in the Capital Transaction; plus

(iii) 1.5% of the aggregate gross amount of secured debt obligations and other interests Raised in the Capital Transaction (including a debtor-in-possession financing (a "DIP Financing")).

The Company will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs.  The Capital Transaction Fee shall be payable upon the closing of any Capital Transaction; provided that if the capital is Raised in a DIP Financing (whether on a standalone basis or convertible into an exit facility), the Capital Transaction Fee shall be payable in full upon the earlier of (a) the execution of a term sheet (to the extent such term sheet is intended to be used as evidence of the DIP Financing commitment in bankruptcy court), a commitment letter, credit agreement or other similar document with respect to such DIP

# Moelis

Financing or (b) the closing of such DIP Financing (regardless of draw or funding schedule). "<u>Raised</u>" includes the amount committed to the Company, whether or not the Company draws the full amount, and whether or not the company applies such amounts to refinance any of its obligations.

<u>Termination Fee</u>

(e)    A termination fee (the "<u>Termination Fee</u>") equal to 25% of any "termination fee," "break-up fee," "topping fee," "expense reimbursement" or other form of compensation payable to the Company if, after the execution of an agreement for a Sale Transaction, such Sale Transaction fails to close and the Company receives any such compensation (the "<u>Breakup Fee</u>"). The Company will pay the Termination Fee when the Company receives any such Breakup Fee. If the Company receives any such Breakup Fee in a form other than cash, the value thereof shall be the fair market value on the day the Company receives such Breakup Fee.

The fees set forth in Section 2(b)), (c), and (d) shall be referred to herein as the "<u>Transaction Fees</u>". The Company agrees that it will pay the applicable Transaction Fee(s) for each Transaction in accordance with the terms hereof. In the event both a Restructuring Fee and two Sale Transaction Fees are earned by Moelis, 25% of the lesser of (a) the Restructuring Fee and (b) the aggregate Sale Transaction Fees shall be credited against the greater of the aggregate Sale Transaction Fees and the Restructuring Fees. Notwithstanding anything to the contrary contained herein, the aggregate Transaction Fees (whether pursuant to the Tail Period or otherwise) and Monthly Fees payable hereunder, taking into account any fee credits, shall not exceed $8,000,000.

In connection with a Transaction intended to be consummated in connection with a pre-packaged or pre-arranged Plan, the applicable Transaction Fee(s) shall be earned upon the execution of a definitive agreement with respect to such Plan; provided that if the Plan contemplating such Transaction(s) does not become effective, then Moelis shall credit the applicable Transaction Fee(s) against any future Transaction Fee that becomes due and payable upon the closing of another Transaction.

Whether or not any Transaction is consummated, the Company will reimburse Moelis upon request for all of its reasonable out-of-pocket expenses incurred (including such expenses incurred prior to the date of this Agreement) in entering into and performing services pursuant to this Agreement, including the reasonable costs of Moelis' outside legal counsel; provided, that the Company will not be obligated to reimburse Moelis for such amounts under this paragraph in excess of $150,000 in the aggregate (which such cap shall exclude Moelis' outside legal costs and expenses) without the consent of the Company (such consent not to be unreasonably withheld). The foregoing cap will not apply to **_Annex B_**. Moelis agrees to provide the Company with reasonable support for its expenses at the Company's request or at the Bankruptcy Court's direction.

The Company's obligation to pay any fees or expenses set forth herein or to pay any amounts under **_Annex B_** hereto are not subject to any reduction by way of setoff, recoupment or counterclaim. All fees, expenses and any other amounts payable hereunder are payable in U.S.

# Moelis

dollars, free and clear of any withholding taxes or deductions, to the bank account set forth on **Schedule 1**.

If Moelis is required to render services not set forth in this Agreement, the Company will pay Moelis additional fees to be mutually agreed for such services, plus reasonable costs and expenses related thereto.

Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for it.   Moreover, the actual time and effort required for the engagement may vary substantially from time to time.  In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that Counsel and the Company will require in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Company.

3.    <u>Bankruptcy</u>

If a Bankruptcy Case is commenced:

(a) The Company will use its reasonable best efforts to seek a final order of the Bankruptcy Court authorizing our employment as the Company's exclusive financial adviser under this Agreement pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), <u>nunc</u> <u>pro</u> <u>tunc</u> to the date of the filing of the Bankruptcy Case.  The retention application and any order authorizing Moelis' retention must be acceptable to Moelis. Prior to commencing a Bankruptcy Case, the Company will pay all fees then earned and payable and will reimburse Moelis for all expenses that Moelis incurred prior to commencement in accordance with this Agreement.

(b) Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order acceptable to Moelis under section 328(a) of the Bankruptcy Code within 60 days following the filing of a voluntary chapter 11 case or the entry of an order for relief in any involuntary chapter 11 case.  If neither the Company nor Moelis obtain such an order within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this Agreement, and the Company shall reimburse Moelis for all fees owing and expenses incurred prior to the date of termination, subject to the requirements of the Bankruptcy Rules, and Moelis shall be entitled to a contingent claim with respect to any fees that become payable under the last paragraph of Section 2(a).

(c) The Company will use its reasonable best efforts to ensure that Moelis' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of **Annex B** shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court.  Following entry of an order authorizing our retention, the Company will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee

**Moelis**

application. The Company will support Moelis' fee applications that are consistent with this Agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly our fees and expenses approved by the Bankruptcy Court and in accordance with the Bankruptcy Rules.

(d) The Company will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions, affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, managers, members, agents, representatives and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this Agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4.    Information

(a)    During the term of this engagement, the Company: (i) will furnish Moelis with information concerning the Company and, to the extent available to the Company, the Acquirer as Moelis reasonably deems appropriate (collectively, the "Information"); (ii) will provide Moelis with reasonable access to those of the Company's officers, directors, employees, accountants, counsel and other representatives of the Company and, as practicable, those of the Acquirer, in each case that the Company deems appropriate; and (iii) will advise Moelis promptly of any material event or material change in the business, affairs, condition (financial or otherwise) or prospects of the Company to the extent reasonably related to the services Moelis is providing hereunder.

(b)    To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. In performing its services hereunder, Moelis will be entitled to use and rely upon the Information as well as publicly available information without independent verification. Moelis is not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities of the Company. Moelis is not evaluating the solvency of any party under applicable laws relating to bankruptcy, insolvency or similar matters. Moelis will be entitled to assume that financial forecasts and projections the Company or any Acquirer makes available to Moelis have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company or such Acquirer, as the case may be, as to the matters covered thereby. The Company authorizes Moelis to transmit any Information Memos to potential parties to a Sale Transaction or Capital Transaction. The Company will be solely responsible for the contents of any Information Memo and all other information provided to prospective Purchasers in a Capital Transaction.

(c)    The Company represents and warrants to Moelis that the information provided to any prospective purchaser or seller of a security by or on behalf of the Company in any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof), at the closing thereof, taken

**Moelis**

as a whole, will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

(d)      At the closing of a Capital Transaction pursuant to an exemption from registration other than Section 1145, (i) the Company shall be deemed to make all the representations and warranties that the Company has made to purchasers of any security, (ii) the Company shall deliver to Moelis an opinion of Company counsel to the effect that the Capital Transaction was exempt from registration under the Securities Act and which shall also include all opinions delivered to the purchasers of any security, (iii) the Company shall deliver to Moelis from each purchaser of securities for Moelis' express benefit a big boy representation in the form of ***Annex C*** and (iv) the Company will also deliver to Moelis copies of such agreements, opinions, certificates and other documents delivered at the closing as Moelis may reasonably request.

(e)      Moelis will keep Information concerning the Company provided to it in connection with this Agreement confidential pursuant to the Confidentiality Agreement between the Company and Moelis, dated October 25, 2022, (the "Confidentiality Agreement"), in accordance with the terms thereof.

5.      Advice; Publicity

Neither Counsel nor the Company will disclose, summarize or refer to any of Moelis' advice or our valuation or the terms of this Agreement publicly or to any third party without the prior written consent of Moelis; provided, however, that the Company and Counsel may disclose the terms of this Agreement and Moelis' advice to its outside professional advisors on a confidential and non-reliance basis (so long as its outside professional advisors are subject to confidentiality restrictions and, with respect to Moelis' advice, agree to customary non-reliance provisions reasonably proposed by Moelis; it being agreed that the Company and Counsel will be responsible for any non-compliance with any such confidentiality restrictions or non-reliance provisions by any such advisors . In the event disclosure is required by law or by judicial or regulatory process, the Company and Counsel may disclose any of the foregoing to the extent required; provided that, to the extent legally permissible, the Company and Counsel will provide Moelis with reasonably prompt advance notice of any such disclosure and use reasonable efforts to cooperate with Moelis in (i) limiting the scope of any such disclosure and/or (ii) obtaining confidential treatment for any such information required to be disclosed. Moelis consents to the inclusion of a summary of its valuation in the disclosure statement for a Plan, if required to be included in such disclosure statement; provided that Moelis and its counsel have approved any reference to or summary or description of the valuation in advance.

Moelis may, at its option and expense and after announcement by the Company of any Transaction, publicize the Transaction and Moelis' role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on Moelis' website and in Moelis' marketing materials stating that Moelis has acted as exclusive financial advisor and/or investment banker, as applicable, to the Company in connection with any Transaction, in each case solely to the extent (a) such statements do not disclose more about the Transaction than what is publicly disclosed, and (b) such statements are not prohibited by a definitive agreement for a Transaction.  If requested by Moelis, the Company shall include a reference to Moelis in any

# Moelis

public announcement by the Company of the Transaction that is mutually acceptable to the Company and Moelis.

6.    Disclaimer; *Annex B*

Moelis is acting hereunder as an independent contractor with the contractual obligations expressly described herein owing only to Counsel and the Company. Moelis expressly disclaims any agency or fiduciary or other similar duties (regardless of whether Moelis has assisted or is assisting the Company on other matters).   Moelis will not be responsible for advice or services of the Company's other advisors or contractors.   Moelis is not providing legal, tax, accounting or actuarial advice.   Moelis is not authorized to enter into any binding agreement on behalf of the Company or any of its subsidiaries.   The Company will solely be responsible for any decision to enter into any transaction, and for the commercial assumptions on which any advice provided by Moelis is based.

Since Moelis will be acting on the Company's behalf, the Company and Moelis agree to the provisions set forth in *Annex B*, which are an integral part of this Agreement. Other than the Moelis Persons (as defined in *Annex B*), there are no third party beneficiaries of this Agreement.

7.    Termination; Tail

(a)     This Agreement may be terminated at any time, with or without cause, by Counsel (on behalf of the Company), the Company, or Moelis upon five (5) business days' written notice.  In the event of any termination, Moelis will continue to be entitled to the fees earned but not yet paid hereunder and the reimbursement of expenses incurred, in each case, prior to such termination. *Annex B* and Sections 3 through 9 shall remain in full force and effect after the termination of this Agreement in accordance with their terms.

(b)     If, at any time prior to the expiration of the Tail Period (as defined below), the Company consummates any Restructuring, Sale Transaction or Capital Transaction or enters into an agreement or a Plan is filed regarding any Restructuring, Sale Transaction or Capital Transaction and a Restructuring, Sale Transaction or Capital Transaction is subsequently consummated, then the Company (or its bankruptcy estates) will pay Moelis the applicable Transaction Fee(s) specified in Section 2 above immediately upon the closing of any such Transaction(s). If, at any time prior to the expiration of the Tail Period, the Company receives a Breakup Fee, then the Company will pay Moelis the Termination Fee specified above with respect to such Breakup Fee.

The "Tail Period" shall end 12 months following the expiration or termination of this Agreement.

8.    Acknowledgments

Moelis and its affiliates are engaged globally in a wide range of merchant banking, asset management, investment and investment banking activities for their own account and otherwise. Moelis and its affiliates may have interests that differ from the Company's interests.  Moelis and its affiliates have no duty to disclose to the Company, or use for the Company's benefit, any information acquired in the course of providing services to any other party, engaging in any transaction or carrying on any other businesses.  Moelis and its affiliates (and any of Moelis' or Moelis' affiliates' respective employees, officers and partners) may at any time own the

# Moelis

Company's securities or those of any other entity involved in any transaction contemplated by this Agreement, as well as provide investment banking and financial advisory services to any such entity.  Moelis recognizes its obligations under applicable securities laws in connection with the purchase and sale of such securities. Notwithstanding anything in this Agreement to the contrary, in no event shall Moelis provide financial advisory or M&A advice to any party (other than the Company) in connection with a Transaction during the term of Moelis' engagement hereunder

Moelis has provided, prior to the date hereof, disclosure to the Company in accordance with and based upon Moelis' customary conflicts-related clearance procedures with respect to relationships, taking into account and subject to pre-existing confidentiality obligations, that Moelis has with the Company and the potential Acquirers that have been identified as of the date hereof. Upon the Company's request, Moelis will promptly update these disclosures with respect to such parties and any new Acquirers identified by the Company with respect to a Transaction, as and to the extent that the Company desires to engage in substantive discussions and negotiations with such new Acquirers, taking into account and subject to pre-existing confidentiality obligations. During the term of Moelis' engagement hereunder, in the event that Moelis reasonably determines that it has a material conflict of interest with respect to Moelis' engagement hereunder as determined in accordance with and identified pursuant to Moelis' customary conflicts-related clearance procedures, Moelis will take steps that it reasonably believes are appropriate to mitigate or manage such conflict, which may include disclosure of such conflict to the Company in reasonable detail and in a manner not in violation of applicable confidentiality obligations to any third parties.

Moelis is required to obtain, verify, and record information that identifies each party with whom it does business in a manner that satisfies the requirements of and in accordance with the USA Patriot Act. Upon request, each of the parties hereto will provide Moelis with information necessary to verify such party's identity for purposes of the USA Patriot Act.  Pursuant to FINRA Rule 2111, the Company acknowledges that (i) the Company is capable of evaluating investment risks independently, both in general and with regard to transactions and investment strategies involving a security or securities and will exercise independent judgment in evaluating recommendations (if any) of Moelis and its associated persons, and (ii) the Company is an Institutional Account as defined in FINRA Rule 4512(c).

9.    Governing Law; Jurisdiction; Waiver of Jury Trial

This Agreement and any claims, counterclaims or disputes of any kind or nature (whether in contract, tort or otherwise) that may arise out of or relate to this Agreement shall be governed by and construed in accordance with the laws of the State of New York. This Agreement embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both Counsel and Moelis. If any part of this Agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent and the remainder of this Agreement shall continue in full force and effect. Any proceeding arising out of this Agreement shall be heard exclusively in a New York state or federal court sitting in the city and county of New York, to whose jurisdiction and forum Counsel, Moelis, and the Company irrevocably submit. Counsel and the Company also irrevocably consents to the service of process in any such proceeding by mail to the Company's address set forth above.   This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of

# Moelis

which shall constitute one and the same agreement.  This Agreement shall be binding upon the Counsel, the Company, and Moelis and the respective successors and permitted assigns of the Counsel, the Company, and Moelis. MOELIS, COUNSEL, AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

*(Signature page follows)*

# Moelis

Moelis is delighted to accept this engagement and looks forward to working with Counsel and the Company.  Please sign and return the enclosed duplicate of this Agreement.  The obligations of the Company under this Agreement, including the obligations under *Annex B* to this Agreement, will be the joint and several obligations of each of the entities comprising the Company. The individuals signing this Agreement each represent that he or she is authorized to execute and deliver it on behalf of the entities whose name appears above his or her signature.

Very truly yours,

**MOELIS & COMPANY LLC**

By: _____

Name:  Bassam Latif
Title:    Managing Director

Agreed to as of the date first written above
on behalf of Proterra Inc. and each of its direct and indirect subsidiaries:

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Robert A . Britton*
Name: Robert A. Britton
Title: Partner

Acknowledged and agreed:

**PROTERRA INC**

By: *Jeff Mitchell*
Name:
Title:

Acknowledged and agreed:

**PROTERRA OPERATING COMPANY, INC.**

By: *Jeff Mitchell*
Name:
Title:

12

**Moelis**

## ANNEX A

"<u>Transaction Value</u>" shall equal the sum of, without duplication:   (A) in the case of the sale, issuance or exchange of equity securities, the total consideration received or to be received for such securities (including amounts payable to holders of options, warrants and convertible securities and amounts held in escrow, and including amounts that are paid, at the direction of the Company, to retire or defease indebtedness of the acquired company or any of its subsidiaries or to cure defaults under executory contracts to be assumed), plus payments made in installments, amounts payable in connection with the Sale Transaction under consulting agreements, agreements not to compete or similar arrangements (including such payments to management), and contingent payments (whether or not related to future earnings or operations); (B) in the case of a sale or disposition of assets, the total consideration paid or received or to be paid or received for such assets (including amounts held in escrow and installment payments, and including amounts that are paid, at the direction of the Company, to retire or defease indebtedness of the acquired company or any of its subsidiaries or to cure defaults under executory contracts to be assumed), plus contingent payments (whether or not related to future earnings or operations); and (C) (i) in the case of the sale, issuance or exchange of equity securities, the principal amount of all indebtedness for borrowed money as set forth on the most recent consolidated balance sheet (the "<u>Balance Sheet</u>") of the acquired company prior to the consummation of the Sale Transaction (less the amount of cash and cash equivalents up to but not exceeding the total amount of indebtedness set forth on the Balance Sheet) and (ii) in the case of a sale or disposition of assets, the principal amount of all indebtedness for borrowed money as set forth on the Balance Sheet that the Acquirer assumes or acquires; and (D) the value implied in the Sale Transaction of any equity or assets retained by the security holders of the acquired company upon consummation of the Sale Transaction (such equity to be valued at the same price per share as paid in the Sale Transaction); (E) any amount by which the consideration payable by the Acquirer in respect of the Sale Transaction is reduced due to liabilities of the acquired company (other than indebtedness for borrowed money); (F) the assumption of any future funding obligations by the Acquirer, as estimated by the Company in any financial forecast used in the Sale Transaction, and (G) the amount of fees, costs, expenses or other payment obligations (including financial advisory and legal fees, change of control payments and "success" fees) the acquired company incurs in connection with or as a result of the Sale Transaction and that the Acquirer pays (either directly or indirectly by providing reimbursement to the acquired company) or assumes.

In the case of a joint or collaborative venture, strategic alliance or similar transaction (a "<u>Joint Venture</u>"), Transaction Value shall equal (i) the aggregate value, as Moelis and the Company mutually agree in good faith, of the proceeds, assets and other consideration all parties to the Joint Venture pay or contribute in connection with the Sale Transaction, including, without limitation, cash, notes, securities, installment or contingent amounts, intellectual property, licenses, distribution agreements and other property; or (ii) in the event the Sale Transaction does not involve the payment or contribution of consideration to a Joint Venture, such amount as Moelis and the Company mutually agree in good faith.

Transaction Value also shall include, without duplication of any of the amounts set forth above: any (i) dividends or other distributions paid on the acquired company's securities, other than normal recurring cash dividends in amounts not materially greater than currently paid; and

# Moelis

(ii) amounts the acquired company pays to repurchase any of its securities (excluding repurchases pursuant to and consistent with any current stock repurchase program of the acquired company).

The Company will pay any portion of the Sale Transaction Fee attributable to contingent payments constituting Transaction Value upon consummation of the Sale Transaction, based on the present value of such amounts, using a discount rate and probability of payment that the Company and Moelis mutually agree; provided amounts paid into escrow shall be deemed paid at closing.

For purposes of calculating the Transaction Value, equity securities constituting a part of the consideration payable in the Sale Transaction that are traded on a national securities exchange shall be valued at the volume-weighted average price thereof on the 14 trading days immediately prior to the closing of the Sale Transaction. Such equity securities that are traded in an over-the-counter market and any debt or other securities or other non-cash consideration shall be valued as the Company and Moelis may mutually agree.

**Moelis**

## ANNEX B

The Company will indemnify and hold harmless Moelis, its affiliates and any of Moelis' or Moelis' affiliates' respective current or former directors, officers, partners, managers, agents, representatives or employees (including any person controlling Moelis or any of its affiliates) (collectively, the "Moelis Persons") from and against any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to or arising out of the Company's actions or omissions (or the actions or omissions of the Company's officers, directors, employees and agents other than Moelis) in connection with the matters contemplated in the Agreement, (ii) related to or arising out of oral or written statements or omissions made or information provided by the Company or its agents in connection with the matters contemplated in the Agreement, or (B) otherwise arising out of, related to or in connection with the Agreement, the matters contemplated in the Agreement, or Moelis' performance of the Agreement (or any other services or advice the Company requests Moelis to provide) in each case, including prior to the date of the Agreement, except that clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, willful misconduct or gross negligence of such Moelis Person.

Each of Counsel and the Company agrees that no Moelis Person shall have any liability to the Company or its affiliates, Counsel or any of their respective owners, directors, officers, employees, security holders or creditors for any Losses (A)(i) related to or arising out of the Company's actions or omissions (or the actions or omissions of the Company's officers, directors, employees and agents other than Moelis) in connection with the matters contemplated in the Agreement, (ii) related to or arising out of oral or written statements or omissions made or information provided by the Company or its agents in connection with the matters contemplated in the Agreement, or (B) otherwise arising out of, related to or in connection with the Agreement, the matters contemplated in the Agreement or Moelis' performance of the Agreement (or any other services or advice the Company requests Moelis to provide) in each case, including prior to the date of the Agreement, except that clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, willful misconduct or gross negligence of such Moelis Person, or from a material breach (following written notice and reasonable opportunity to cure, if curable) by Moelis of the Confidentiality Agreement.

If such indemnification or limitation on liability is for any reason not available or is insufficient to hold a Moelis Person harmless, the Company agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company and/or Counsel, on the one hand, and by Moelis, on the other hand, with respect to the Agreement or, if such allocation is judicially determined to be unavailable, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Company and/or Counsel, on the one hand, and of Moelis, on the other hand, and any other equitable considerations; provided, however, that, to the extent permitted by applicable law, in no event shall the Moelis Persons be responsible for amounts that exceed the fees actually received by Moelis from the Company in connection with the Agreement. Relative benefits to the Company and Counsel, on the one hand, and Moelis, on the other hand, with respect to the Agreement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s) contemplated by the Agreement, whether or not consummated, bears to (ii) the fees actually received by Moelis in connection with the Agreement.

# Moelis

The Company and Counsel will not, without Moelis' prior written consent (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any actual or threatened action, claim, suit, investigation or proceeding (an "Action") (or participate in or facilitate a Settlement of any Action) in respect of which indemnification or contribution is or may be sought hereunder (whether or not a Moelis Person is a party thereto) unless such Settlement includes a release of each Moelis Person from any Losses arising out of such Action. The Company and Counsel will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of a Moelis Person without such Moelis Person's prior written consent. No Moelis Person seeking indemnification or contribution under the Agreement will, without the Company's prior written consent (not to be unreasonably withheld), agree to the Settlement of any Action. The Company's obligations set forth in this Annex B shall be in addition to any rights that any Moelis Person may have at common law or otherwise.

Promptly after receipt by a Moelis Person of notice of the commencement of any Action with respect to which indemnification is being or is reasonably expected to be sought hereunder, such Moelis Person will notify the Company in writing of the receipt of such notice; provided, that failure to so notify the Company will not relieve the Company from any liability or obligation hereunder except to the extent the Company suffers material prejudice as a result thereof. After receipt of such notice, the Company shall have the right, by written notice to such Moelis Person, to assume the defense of such Action, including the employment of counsel reasonably acceptable to Moelis, and the Company shall pay the fees, expenses, and disbursements of such counsel. If the Company elects to assume such defense, the Company shall not thereafter be liable to such Moelis Person under these indemnification provisions for the fees, expenses, and disbursements of any separate counsel retained by such Moelis Person in connection with such defense, other than reasonable costs of investigation and the production of documents or witnesses, unless (i) the Company has failed to assume such defense in a reasonably prompt manner or with counsel reasonably acceptable to Moelis, or (ii) such Moelis Person has been advised by its own counsel that having separate counsel would be reasonably necessary under the circumstances due to one or more actual or potential conflicts of interest, including the availability of one or more bona fide legal defenses that are different from or in addition to those available to the Company, or (iii) the use of counsel chosen by the Company to represent the Moelis Person would present such counsel with a conflict of interest or (iv) the Company has agreed to pay such fees and expenses. In the event that either of clauses (i), (ii) or (iii) of the preceding sentence occurs, such Moelis Person may employ separate counsel to represent and defend it in any Action, and the reasonable out-of-pocket documented fees and disbursements of such separate counsel will be paid by the Company; provided, that the Company will not be required to pay the fees, expenses, and disbursements of more than one counsel for all Moelis Persons in any single jurisdiction in any single Action unless a Moelis Person has been advised by its own counsel that having separate counsel would be reasonably necessary under the circumstances due to one or more actual or potential conflicts of interest between such Moelis Person and another Moelis Person subject to the same Action, including the availability of one or more bona fide legal defenses that are different from or in addition to those available to the Company.

In the event that any Moelis Person suffers Losses pursuant to any Action arising out of, related to or in connection with the Agreement or any matter referred to in the Agreement (including, without limitation, related matters prior to the date of the Agreement), the Company will reimburse such Moelis Person for its reasonable, documented out-of-pocket costs and expenses (including reasonable and documented counsel fees) of investigating, preparing for and responding to such

# Moelis

Action or enforcing the Agreement (including, without limitation, each of the provisions of this Annex B), as they are incurred; provided that to the extent it is subsequently finally judicially determined that such costs and expenses resulted primarily from the bad faith, willful misconduct or gross negligence of such Moelis Person, Moelis shall repay such costs and expenses previously reimbursed by the Company.

Prior to or substantially simultaneously with effecting any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein, the Company will notify Moelis in writing of its arrangements for the Company's obligations set forth herein to be assumed by another creditworthy party (for example through insurance, surety bonds or the creation of an escrow) upon terms and conditions reasonably satisfactory to the Company and Moelis.

**Moelis**

## ANNEX C

**Big Boy Representation**

The undersigned Purchaser represents and warrants that (i) the Purchaser is a sophisticated institutional accredited investor with extensive expertise and experience in financial and business matters and in evaluating private companies and purchasing and selling their securities; (ii) the Purchaser has conducted and relied upon its own due diligence investigation of the Company and its own in-depth analysis of the merits and risks of the Capital Transaction in making its investment decision and has not relied upon any information provided by Moelis or any  investigation of the Company conducted by Moelis; and (iii) the Purchaser agrees that Moelis shall have no liability to the Purchaser in connection with its purchase of the Capital Transaction.

**EXHIBIT B**

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket No. —137** |

**ORDER AUTHORIZING THE DEBTORS TO**
**EMPLOY AND RETAIN MOELIS & COMPANY LLC AS CAPITAL MARKETS**
**ADVISOR AND INVESTMENT BANKER EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), pursuant to sections 327(a), 328(a) and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 of the Bankruptcy Rules, and Local Rules 2014-1 and 2016-2:  (i) authorizing the Debtors to employ and retain Moelis & Company LLC ("Moelis") to serve as the Debtors' capital markets advisor and investment banker effective as of the Petition Date in accordance with the terms and conditions of the engagement letter between Moelis and the Debtors, dated as of August 21, 2023 ("Engagement Letter"), attached hereto as **Exhibit 1**, including the compensation arrangements and indemnification, contribution and reimbursement provisions set forth therein; (ii) modifying the timekeeping requirements of Bankruptcy Rule 2016(a), Local Rule 2016-2,  the guidelines of the United States Trustee for the District of Delaware (the "U.S. Trustee Guidelines") and any other applicable procedures and orders of this Court in connection

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Application.

with Moelis' engagement; and (iii) granting such other relief as this Court deems just and proper; and this Court having found that it has jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and consideration of the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and objections (if any) to the Application having been withdrawn, resolved or overruled on the merits; and upon consideration of the Application and the Latif Declaration; and upon the record of all proceedings had before this Court; and this Court having found and determined that the relief sought in the Application is in the best interests of the Debtors' estates, their creditors and other parties in interest, and that the legal and factual bases set forth in the Application and the Latif Declaration establish just cause for the relief granted herein; and this Court being satisfied, based on the representations made in the Application and the Latif Declaration, that (i) Moelis does not hold or represent an interest adverse to the Debtors' estates and (ii) Moelis is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth in this Order and the provisions set forth in the Engagement Letter (and all attachments thereto) are hereby approved, to the extent provided herein and except as otherwise expressly modified herein to the contrary.

2.      In accordance with sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2, **effective as of the Petition Date,** the Debtors are authorized to employ and retain Moelis as their capital markets advisor and investment banker in these chapter 11 cases in accordance with the terms and conditions set forth in the Engagement Letter, as modified herein, to pay fees and reimburse expenses, and to provide indemnification, contribution, and/or reimbursement to Moelis on the terms and at the times specified in the Engagement Letter as modified herein, effective as of the Petition Date.

3.      Moelis shall be compensated for fees and reimbursed for out-of-pocket expenses by the Debtors in accordance with the terms of the Application and/or Engagement Letter, as modified herein, and all fees and out-of-pocket expense reimbursements to be paid to Moelis, including without limitation the Monthly Fees, the Capital Transaction Fee, the Sale Transaction Fee, **and** the Restructuring Fee, and the Termination Fee, shall be subject to section 328(a) of the Bankruptcy Code, except as set forth herein.

4.      Notwithstanding anything to the contrary contained herein or in the Application and/or Engagement Letter, Moelis shall file interim and final fee applications for allowance of compensation and reimbursement of out-of-pocket expenses pursuant to Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines and any other procedures or orders of this Court, each as and to the extent modified pursuant to this Order; *provided, however*, the U.S. Trustee retains all rights to respond or object to Moelis' interim and final applications for compensation (including without limitation the Monthly Fees, the Capital Transaction Fee, the Sale Transaction Fee, **and** the Restructuring Fee, and the Termination Fee) and reimbursement of out-of-pocket expenses pursuant to section 330

3

of the Bankruptcy Code, and this Court retains jurisdiction to consider the U.S. Trustee's response or objection to Moelis' interim and final fee pursuant to section 330 of the Bankruptcy Code; and *provided, further*, that "reasonableness" shall be evaluated by comparing (among other things) the fees payable in these cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated solely on an hourly or length-of-case based criteria. **Notwithstanding the foregoing, while Moelis will file monthly fee applications, Moelis shall not be required to await approval of any fee application before receiving the Monthly Fees pursuant to the terms of the Engagement Letter.**

**5.     Notwithstanding anything to the contrary in the Application, the Engagement Letter, or this Order, the terms of the Engagement Letter are hereby modified as follows:**

> **i.     Section 2(b) is deleted and replaced in its entirety with the following: At the closing of a Restructuring, a fee (the "Restructuring Fee") of $3,750,000; *provided, however*, that the confirmation of solely a liquidating Plan which includes or is confirmed in connection with the consummation of a Sale Transaction shall not constitute a Restructuring which requires payment of a Restructuring Fee.**

> **ii.    Section 2(c) is deleted and replaced in its entirety with the following: At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of:**

>> **(i)   $3,500,000, plus 2.5% of Transaction Value (as defined in *Annex A*) for amounts in excess of $175,000,000, for the Sale Transaction with the highest Transaction Value; plus**

>> **(ii)  $2,000,000 plus 2.5% of Transaction Value (as defined in *Annex A*) for amounts in excess of $175,000,000, for the Sale Transaction with the second highest Transaction Value; plus**

(iii)    **2.0% of Transaction Value (as defined in *Annex A*) for any other Sale Transactions.**

**The Company will pay a separate Sale Transaction Fee in respect of each Sale Transaction in the event more than one Sale Transaction occurs.  In the event more than one Sale Transaction occurs, and Moelis earns and is paid more than one Sale Transaction Fee, 25% of the Sale Transaction Fee earned per Section 2(c)(ii) shall be credited against the Sale Transaction Fee earned per Section 2(c)(i).**

iii.    **Notwithstanding anything in the Application or Engagement Letter to the contrary, the aggregate Transaction Fees (whether pursuant to the Tail Period or otherwise) and Monthly Fees payable under the Engagement Letter, taking into account any fee credits, shall not exceed $7,000,000.**

iv.    **Notwithstanding anything in the Application or Engagement Letter to the contrary, Moelis shall earn and be paid both a Restructuring Fee and a Sale Transaction Fee in the event both a Sale Transaction and a subsequent Restructuring Transaction pursuant to a Plan of Reorganization occur, provided, however, that in the event both a Restructuring Fee and any Sale Transaction Fees are earned by Moelis, 50% of the lesser of (a) the aggregate Sale Transaction Fees and (b) the Restructuring Fee shall be credited against the greater of the aggregate Sale Transaction Fees and the Restructuring Fee.**

v.    **Notwithstanding anything in the Application, Engagement Letter, or this Order to the contrary, Moelis shall not be entitled to receive any Termination Fee.**

56.    Notwithstanding anything to the contrary in the Application, the Engagement Letter, or herein, the requirements of the Bankruptcy Rules, the Local Rules, the Trustee Guidelines and any other procedures or orders of this Court are hereby modified such that Moelis restructuring professionals shall be required only to keep summary time records in ~~hourly~~**half-hour** increments, Moelis' non-restructuring professionals and personnel in administrative departments (including legal) shall not be required to keep time records, Moelis'

5

professionals shall not be required to keep time records on a project category basis, and Moelis shall not be required to provide or conform to any schedule of hourly rates.

6<u>7</u>.     In the event that Moelis seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Moelis' own applications, both interim and final, and these invoices and time records shall be subject to the approval of this Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.  Attorneys' fees and/or expenses reimbursed under the Engagement Letter shall be limited to those expended in representing Moelis in retention and fee application matters.  For the avoidance of doubt, the preceding sentence does not apply to, and in no way limits, the provisions with respect to reimbursement of attorney's fees and/or expenses set forth in <u>Annex B</u> to the Engagement Letter with respect to indemnification.  **Notwithstanding anything contained or set forth in the Application or the Engagement Letter, Moelis shall not seek reimbursement of any fees or costs incurred defending any of Moelis' fee applications in these cases.**

7<u>8</u>.     The indemnification contribution, and reimbursement provisions included in <u>Annex B</u> to the Engagement Letter are approved, subject during the pendency of these cases to the following modifications:

> a. **No** Moelis ~~shall not be entitled to indemnification contribution, or reimbursement set forth~~**Person (as that term is defined** in the Engagement Letter~~, unless such~~**) shall be entitled to** indemnification, contribution~~,~~ or reimbursement ~~is~~**pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement are** approved by this Court.

b. ~~Notwithstanding any provision of the Engagement Letter to the contrary, the~~**The** Debtors  shall have no obligation to indemnify any Moelis Person ~~(as defined in the Engagement Letter)~~, or provide contribution or reimbursement to any Moelis Person, for any claim or expense ~~that~~**to the extent it**  is either:  (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from ~~such~~**the** Moelis Person's gross negligence, willful misconduct, **or** bad faith~~, or self-dealing to which the Debtors have not consented~~; (ii) for a contractual dispute in which the Debtors allege breach of ~~such~~ Moelis ~~Person's~~**'** **contractual** obligations ~~to maintain the confidentiality of nonpublic information~~, unless this Court determines that indemnification, contribution~~,~~ or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003) ; or (iii) settled ~~without the Debtors' consent~~ prior to a judicial determination as to ~~such Moelis Person's gross negligence, willful misconduct, bad faith, or unconsented self-dealing~~**the exclusions set forth in clauses (i) and (ii) above**, but determined by this Court, after notice and a hearing **pursuant to subparagraph (c) hereof**, to be a claim or expense for which ~~such~~**the** Moelis Person should not receive ~~indemnification~~**indemnity,** contribution~~,~~ or reimbursement under the terms of the Engagement Letter, as modified by this Order.

c. If, before the earlier of:~~ (i) the entry of an order confirming a chapter 11 plan in the ~~chapter~~**Chapter** 11 ~~cases~~**Cases** (that order having become a final order no longer subject to appeal)~~;~~ and (ii) the entry of an order closing the ~~chapter~~**Chapter** 11 ~~cases~~**Cases**,  a Moelis Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution~~,~~ and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including~~,~~ without limitation, the advancement of defense costs, ~~such~~**the** Moelis Person must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Moelis Person before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses **by any Moelis Person** for indemnification, contribution~~,~~ and/or reimbursement ~~by any Moelis Persons~~, and ~~is~~ not a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to, ~~the~~**any** Moelis ~~Persons~~**Person**.  All parties in interest shall retain the right to object to any demand ~~by any Moelis Person~~ for indemnification, contribution~~,~~ and/or reimbursement.

**9.**    **Any limitation of liability pursuant to the terms and conditions set forth in the Application, the Engagement Letter or any ancillary documents thereto shall**

**not apply as to any losses, claims, damages or liabilities for which any Moelis Person would not be entitled to indemnification under the provisions of this Order. Any limitations on amounts to be contributed by any Moelis Person shall be eliminated. The Moelis Persons shall retain any rights they may have to contribution at common law.**

8<u>10</u>.    Moelis shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

9<u>11</u>.    Notwithstanding anything in the Application or the Engagement Letter to the contrary, Moelis shall, (i) to the extent that Moelis uses the services of independent contractors, subcontractors, or employees of foreign affiliates or subsidiaries (collectively, the "<u>Contractors</u>") in these cases, pass through the cost of such Contractors to the Debtors at the same rate that Moelis pays the Contractors; and (ii) seek reimbursement for actual costs only. The Debtors shall ensure that any such Contractors are subject to the same conflict checks as required for Moelis and that they shall file with this Court such disclosures as required by Bankruptcy Rule 2014.

**12.    Notwithstanding anything to the contrary in the Application or the Engagement Letter, during the course of these chapter 11 cases, any provision in the Engagement Letter to the effect that Moelis is not acting as a fiduciary of the Debtors shall have no force or effect.**

**13.    Moelis shall not unilaterally terminate its engagement under the Engagement Letter absent prior approval of the Court.**

10<u>14</u>.    Such services other than those set forth in the Application that the Debtors may request that Moelis provide during the course of these chapter 11 cases, to the extent agreed to by Moelis, shall be subject to separate application and order of this Court.

~~11~~**15**.    The Debtors and Moelis are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

~~12~~**16**.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

~~13~~**17**.    Notwithstanding any provision to the contrary in the Application or the Engagement Letter, this Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation of this Order.

~~14~~**18**.    To the extent that there may be any inconsistency between the terms of the Application, the Latif Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

## __EXHIBIT 1__

**Engagement Letter**

***Intentionally Omitted***