## Exhibit B

**Morgan Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Proterra Inc., *et al.,*[1] | ) | Case No. 23-11120 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF STEVEN D. MORGAN IN SUPPORT**
**OF THE DEBTORS' APPLICATION FOR THE ENTRY OF**
**AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT**
**OF KPMG LLP TO PROVIDE AUDIT AND TAX RESTRUCTURING**
**SERVICES TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

I, Steven D. Morgan, being duly sworn, deposes and says:

1.      I am a Certified Public Accountant and a partner of KPMG LLP, a Delaware limited liability partnership ("KPMG").  I submit this declaration on behalf of KPMG in support of the application (the "Retention Application")[2] of the above-captioned debtors and debtors-in-possession (the "Debtors"), for entry of an order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the Debtors to retain and employ KPMG to provide audit and tax restructuring services to the Debtors effective as of the Petition Date.  I am authorized to make this declaration on behalf of KPMG, and I make this declaration based on

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]     Capitalized terms used herein but not otherwise defined shall have those meanings set forth in the Retention Application.

my own knowledge, review of KPMG's business records, and discussions with other professionals at KPMG.

## KPMG's Qualifications

2.      KPMG is a professional firm providing audit, tax, and advisory services.  The Debtors have selected KPMG to provide audit and tax restructuring services because of the firm's diverse experience and extensive knowledge in the fields of accounting, taxation, and operational controls for large, sophisticated companies both in chapter 11 as well as outside of chapter 11. The Debtors have employed KPMG since 2012.  KPMG is qualified to continue to provide such services to the Debtors.  As such, retaining KPMG is an efficient and cost-effective manner in which the Debtors may obtain the requisite services.

## Services to be Rendered

3.      The terms of retention and employment of KPMG are set forth in the five engagement letters between KPMG and one or both of the Debtors, covering (i) Audit Services (as defined herein), pursuant to the engagement letters attached hereto as Exhibit C-1 entered on or about June 16, 2021 (the "2021 Audit Engagement Letter"), Exhibit C-2 entered on or about June 17, 2022 (the "2022 Audit Engagement Letter"), Exhibit C-3 entered on or about July 10, 2023 (the "2023 Audit Engagement Letter"), and Exhibit C-4 entered on or about August 2, 2023 (the "Audit Out-of-Scope Engagement Letter" and, collectively with the 2021 Audit Engagement Letter, 2022 Audit Engagement Letter, and 2023 Audit Engagement Letter, the "Audit Engagement Letters"), and (ii) Tax Restructuring Services (as defined herein), pursuant to an engagement letter attached hereto as Exhibit C-5 entered on or about August 23, 2023 (the "Tax Restructuring Engagement Letter") (collectively, the "Engagement Letters"),   subject to certain clarifications and modifications to which the Debtors and KPMG have agreed in connection with this Retention Application as described herein (the terms set forth in the Engagement Letters, as modified as set forth below, the "Engagement Terms").  Pursuant to the Engagement Terms, and

subject to Court approval of this Retention Application, KPMG will provide the following

services:[3]

**Audit Services**

A. Pursuant to language in the Audit Engagement Letters, KPMG will perform, but is not
limited to the following services for the Debtors:

   i. Review the condensed consolidated balance sheets of the Debtors, as set forth in
   Appendix I of engagement letter dated July 10, 2023, and the related condensed
   consolidated statements of operations, comprehensive loss, stockholders' equity and
   cash flows for the quarterly and year-to-date periods, which are to be included in the
   quarterly reports (Form 10-Q) proposed to be filed by the Debtors under the Securities
   Exchange Act of 1934.   KPMG will also conduct a review of the Debtors' fourth
   quarter interim financial information if the selected quarterly financial data specified by
   Item 302 of Regulation S-K is required to be included in the annual report (Form 10-K)
   proposed to be filed by the Debtors under the Securities Exchange Act of 1934;

   ii. Integrated Audit Services:

      a. Audit of consolidated balance sheets of Proterra Inc as of December 31, 2023 and
      2022, the related consolidated statements of operations, comprehensive loss,
      stockholders' equity, and cash flows for each of the years in the three-year period
      ended December 31, 2023 and the related notes to the financial statements and audit
      of internal control over financial reporting as of December 31, 2023;

   iii. Quarterly Review Procedures for the following periods:

      a. Quarter ended March 31, 2023;

      b. Quarter ended June 30, 2023;

      c. Quarter ended September 30, 2023; and

   iv. Pursuant to the Audit Out-of-Scope Engagement Letter, to the extent that any audit
   services involve procedures in connection with the Debtors' activities in connection
   with any restructuring or bankruptcy filing, such work was not included in the estimated
   fees as disclosed in Appendix 1 in the 2023 Audit Engagement Letter, but will be
   considered out of scope (the "Out-of-Scope Services") under the engagement letter.
   Such Out-of-Scope Services include professional time required to prepare detailed
   applications in accordance with the Bankruptcy Code, and may also include auditing
   and accounting considerations related to debt restructuring during and on emergence
   from bankruptcy, fresh-start accounting, valuation of assets and liabilities on emergence

---

[3]    To the extent there is any inconsistency between the descriptions of the services in the applicable Engagement
Letter and in this Retention Application, the description in the applicable Engagement Letter shall control;
*provided* that notwithstanding anything in the Engagement Letters to the contrary, the Debtors and KPMG have
agreed that, for the avoidance of doubt, KPMG shall not provide to the Debtors, nor be entitled to any fees on
account of, any services which the Debtors direct KPMG not to provide.

from bankruptcy, income tax matters rising as a result of bankruptcy or other debt restructuring activities as a result of bankruptcy, and increased professional time to deliver audit services due to loss of Debtors' personnel or other changes in circumstances as a result of bankruptcy that increases the effort to deliver audit services.[4]

**Tax Restructuring Services**

    B.  Pursuant to the Tax Restructuring Engagement Letter, KPMG will analyze U.S. federal, state, local, and international tax implications of the Debtors potential restructuring of debt and/or capital structure (the "Potential Restructuring").   Services hereunder may include, but are not limited to, analyses of:

       i.  I.R.C. Section 382 issues related to historical transactions and potential restructuring alternatives, including a sensitivity analysis to reflect the I.R.C. Section 382 impact of the proposed and/or hypothetical equity transactions;

      ii.  Net unrealized built-in gains and losses and Notice 2003-65 as applied to the ownership change, if any, resulting from or in connection with the Potential Restructuring;

     iii.  Debtors' tax attributes, including net operating losses, tax basis in assets, and tax basis in subsidiaries' stock as relevant to the Potential Restructuring;

     iv.  Cancellation of debt income, including the application of I.R.C. Section 108 and consolidated tax return regulations relating to the restructuring of non-intercompany debt and the completed capitalization/settlement of intercompany debt;

      v.  Application of the attribute reduction rules under I.R.C. Section 108(b) and Treasury Regulation Section 1.1502-28, including a benefit analysis of I.R.C. Sections 108(b)(5) and 1017(b)(3)(D) elections as related to the Potential Restructuring;

     vi.  Relevant tax elections available and filing of any necessary election statements;

    vii.  Tax implications of any internal reorganizations and restructuring alternatives;

   viii.  Cash tax modeling of the tax benefits or tax costs of restructuring alternatives;

     ix.  Tax implications of any dispositions of assets and/or subsidiary stock pursuant to the Potential Restructuring;

      x.  Potential bad debt, worthless stock, and retirement tax losses associated with the Potential Restructuring;

     xi.  Tax treatment of restructuring related costs; and

---

[4]  KPMG will identify and describe any Audit Out-of-Scope Services. For such Out-of-Scope Services, KPMG will be compensated based on hourly rates, the majority of which reflect a reduction of up to 20% from KPMG's normal and customary rates, depending on the types of services to be rendered.

xii.  Proof of claims from tax authorities:

    a.  KPMG will search the proof of claim register for claims from the taxing authorities at the direction of management;

    b.  KPMG will summarize the identified tax proof of claims; and

    c.  KPMG will review the tax claims and provide the summarized tax proof of claim summary schedule to the KPMG tax compliance team(s) for additional commentary and support (*e.g.*, filed income/non-income tax returns, etc.), where applicable;

    d.  KPMG will provide the tax proof of claim summary schedule, the tax proof of claims, and supporting documentation (*e.g.*, filed income/non-income tax returns, etc.), where applicable, to Debtors' management for their review and assessment; and

    e.  The Debtors will review the information provided and be responsible for making any determinations as it relates to the claims as well as any additional remediation steps that would be required.

    4.  In addition to the foregoing, KPMG will provide such other consulting, advice, research, planning, and analysis regarding Audit and Tax Restructuring Services as may be necessary, desirable, or requested from time to time by the Debtors. Should KPMG and the Debtors enter into any additional engagement letters and/or statement(s) of work regarding additional services to be provided to the Debtors during these Chapter 11 Cases, KPMG and the Debtors will follow the procedure for authorization to provide such additional services as set forth in the Court's order approving the Retention Application. To the extent that the Debtors wish to expand the scope of KPMG's services beyond those services set forth in the Retention Application or Engagement Terms, it is KPMG's understanding that the Debtors will file a notice (the "Notice of Additional Services") of any proposed additional services (the "Proposed Additional Services") and attach any underlying engagement letter with the Court and serve such notice upon (a) the U.S. Trustee; (b) the United States Attorney's Office for the District of Delaware; (c) the Internal Revenue Service; (d) the state attorneys general for states in which the Debtors conduct business; (e) the Securities and Exchange Commission; (f) counsel to the First Lien Agent, Holland & Knight, One Arts Plaza, 1722 Routh Street, Suite 1500, Dallas, Texas 75201 Attn: Robert Jones

(robert.jones@hklaw.com) and Brent McIlwain (brent.mcilwain@hklaw.com); (g) counsel to the Second Lien Agent, Sidley Austin LLP, 787 Seventh Ave, New York, NY 10019, Attn: Thomas R. Califano (tom.califano@sidley.com) and Dennis M. Twomey (dtwomey@sidley.com); (h) proposed counsel to the Official Committee of Unsecured Creditors, (a) Lowenstein Sandler LLP 1251 6th Ave. 17th Fl., New York, NY 10020, Attn: Jeffrey Cohen (jcohen@lowenstein.com), Eric Chafetz (echafetz@lowenstein.com), Jordana Renert (jrenert@lowenstein.com), and Keara Waldron (kwaldron@lowenstein.com), and (b) Morris James LLP, 500 Delaware Ave # 1500, Wilmington, DE 19801, Attn: Eric Monzo (emonzo@morrisjames.com) and Brya Keilson (bkeilson@morrisjames.com); and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.   It is KPMG's understanding that the Debtors propose that, if no interested party files an objection to the provision of Proposed Additional Services within fourteen (14) days of serving such notice, the Proposed Additional Services and underlying engagement agreement shall be deemed approved by the Court without further notice or hearing

5.      Subject to this Court's approval of the Retention Application, KPMG is prepared to provide to the Debtors and to perform the services described above.

## Professional Compensation

6.      Subject to Court approval, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and such other procedures as may be fixed by order of the Court, including the *Order (I) Authorizing and Establishing Procedures for Interim Compensation and Reimbursement of Professionals, and (II) Granting Related Relief* [Docket No. 188] (the "Interim Compensation Order"), the Debtors will compensate KPMG in accordance with the terms and conditions of the Engagement Terms, which, in relevant part, provide for the following compensation structure.[5]

---

[5]   As set forth below, the Debtors and KPMG have agreed to the following modifications of the Engagement Letters: (i) KPMG will bill the Debtors for Audit Services, based on the level of the professionals who will perform the

**Audit Services**

7.      KPMG and the Debtors have agreed to a fixed fee of $2,400,000 for services relating to integrated audit and quarterly review procedures (the "<u>Audit Fixed Fee</u>"). Approximately $700,000 of the Audit Fixed Fee was paid prepetition.  Subject to the Court's approval and pursuant to the terms and conditions of the Audit Engagement Letters, as modified by the Engagement Terms, the remaining amount of the Fixed Fee to be billed shall not exceed $1,700,000.   Per an agreement entered with the client subsequent to the Petition Date, KPMG will bill the remainder of the Audit Fixed Fee based on the level of the professionals who will perform the services, at a discount of approximately 50% to KPMG's standard hourly rates applicable to those professionals.   Those discounted rates are set forth in the table below:

| Professional Level | Discounted Rate (Range) |
|---|---|
| Partners | $550 - $675 |
| Managing Directors | $525 - $600 |
| Directors/Senior Managers | $450 - $550 |
| Managers | $400 - $475 |
| Senior Associates | $350 - $450 |
| Associates | $250 - $325 |

services, at a discount of approximately 50% to KPMG's standard hourly rates applicable to those professionals; (ii) the total fees which KPMG shall be permitted to bill the Debtors for Audit Services shall not exceed $2,400,000 in total, and $1,700,000 for the post-petition period, beginning on August 07, 2023; and (iii) if, during the post-petition period, the total fees KPMG would bill the Debtors for Audit Services at the 50% discounted rates specified would exceed $1,700,000, KPMG shall continue to provide those Audit Services and complete time entries therefor, but shall not bill the Debtor for any such amounts in excess of $1,700,000; *provided, additionally*, that KPMG shall not provide to the Debtors, nor be entitled to any fees on account of, any services which the Debtors direct KPMG not to provide.

8.      For the avoidance of doubt, KPMG will not bill the client for any services relating to integrated audit and quarterly review procedures in excess of the Audit Fixed Fee, consisting of approximately $700,000 in amounts paid prepetition and a maximum of $1,700,000 to be paid postpetition.   To the extent postpetition amounts billed on the foregoing discounted basis exceed $1,700,000, KPMG will continue to complete time entries for services provided, but will not bill the client for any additional amounts for services relating to integrated audit and quarterly review procedures.

9.      For the further avoidance of doubt, the Audit Fixed Fee constitutes the maximum amount that may be billed for Audit Services.   KPMG will not bill the client for any services related to integrated audit and quarterly review procedures in excess of the amount billed based on the level of the professionals who perform the services, at a discount of approximately 50% to KPMG's standard hourly rates applicable to those professionals, as set forth above.

10.      The Audit Fixed Fee does not apply to fees and expenses for services under the Audit Out-of-Scope Engagement Letter, and KPMG may bill the client for any fees and expenses permitted under the Audit Out-of-Scope Engagement Letter.

11.      As further described in the 2023 Audit Engagement Letter, the Debtors have agreed to an additional fixed fee of $35,000, payable upon completion, for each instance that KPMG is required to provide consent to include or incorporate by reference KPMG's reports on the consolidated financial statements in a filing under the Securities Act of 1933 or an exempt offering.

12.      To the extent that the Debtors require Out-of-Scope Services by KPMG, such work is not included in the Audit Fixed Fees described above.   For such Out-of-Scope Services, KPMG will be compensated based on hourly rates, the majority of which reflect a reduction of up to 20% from KPMG's normal and customary rates, depending on the types of services to be rendered.

The hourly rates for any Out-of-Scope Services rendered by KPMG in these Chapter 11 Cases are as follows:

| Professional Level | Discounted Rate (Range) |
|---|---|
| Partners | $875 - $1,025 |
| Managing Directors | $825 - $980 |
| Directors/Senior Managers | $725 - $875 |
| Managers | $650 - $775 |
| Senior Associates | $550 - $700 |
| Associates | $425 - $500 |

**Tax Restructuring Services**

13.    KPMG's requested compensation for professional services rendered to the Debtors will be based upon the hours actually expended by each assigned staff member at each staff member's hourly billing rate, and the Debtors have agreed to compensate KPMG at such rate, as follows:

| Professional Level | Discounted Rate (Range) |
|---|---|
| Partners | $1,280 - $1,380 |
| Managing Directors | $1,200 - $1,280 |
| Directors/Senior Managers | $1,100 |
| Managers | $1,000 |
| Senior Associates | $760 |
| Associates | $460 |

The majority of fees to be charged for tax restructuring services reflect a reduction of approximately 20% from KPMG's normal and customary rates.  With respect to the Tax Restructuring Engagement, and as disclosed in the Tax Restructuring Engagement Letter, "any

time incurred by KPMG international member firms will be billed based on the standard hourly market rates in those respective jurisdictions."

14.     In the normal course of KPMG's business, its hourly rates are subject to periodic increases.   To the extent any hourly rates referenced herein are increased, KPMG requests that, with respect to the work to be performed after such increase, the rates herein be amended to reflect the increase.

15.     KPMG also will seek reimbursement for reasonable and necessary costs and expenses incurred,[6] including but not limited to meals, lodging, travel, photocopying, delivery service, postage, vendor charges, value added tax, reasonable and documented outside counsel legal fees and expenses, and other out-of-pocket costs and expenses incurred in providing professional services.

16.     KPMG apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of the Court, including *the Order (I) Authorizing and Establishing Procedures for Interim Compensation and Reimbursement of Professionals, and (II) Granting Related Relief* [Docket No. 188] (the "Interim Compensation Order").   Such applications will include time records setting forth a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.   It is not the general practice of KPMG professionals, to keep detailed records similar to those customarily kept by attorneys.   Because KPMG does not ordinarily maintain contemporaneous time records in one-tenth hour increments, to the extent that KPMG is being paid a fixed or contingent fee, such as the

---

[6]     As disclosed in Appendix I of the 2023 Audit Engagement Letter, "expenses for items such as travel, telephone and postage are estimated at $30,000" and are billed for reimbursement as incurred.

Audit Fixed Fee, pursuant to Local Rule 2016-2(h), KPMG requests that, for all services rendered on a Fixed Fee basis, it be permitted to file time records in half-hour increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors. For all services rendered on an hourly basis, KPMG will maintain detailed records in one-tenth hour increments.

17.     KPMG's applications for compensation and expenses will be paid by the Debtors pursuant to the Engagement Terms, in accordance with Bankruptcy Local Rule 2016-1 and any procedures established by the Court, including the Interim Compensation Order.  KPMG has agreed to accept as compensation such sums as may be allowed by the Court and understands that interim and final fee awards are subject to approval by the Court.

18.     KPMG has agreed to modify the Engagement Letters during the course of these Chapter 11 Cases as set forth in the Proposed Order attached to the Retention Application as **Exhibit A**.

19.     As of the Petition Date, the Debtors owed KPMG $9,052.98 in unpaid fees or expenses, which KPMG has agreed to waive.

20.     According to KPMG's books and records, during the 90-day period prior to the Petition Date, KPMG received $820,000.00 from the Debtors for professional services performed and expenses incurred as follows:

| Invoice Number | Invoice Date | Amount Billed | Date Invoice Paid | Amount Paid |
|---|---|---|---|---|
| 8004756097 | 04/21/2023 | $50,000.00 | 05/18/2023 | $50,000.00 |
| 8004756117 | 04/21/2023 | $35,000.00 | 05/18/2023 | $35,000.00 |
| 8004923830 | 07/21/2023 | $400,000.00 | 07/27/2023 | $400,000.00 |
| 8004933009 | 07/26/2023 | $35,000.00 | 07/31/2023 | $35,000.00 |
| 8004934915 | 07/27/2023 | $300,000.00 | 07/31/2023 | $300,000.00 |

21.     Except as explained in paragraphs herein (a) no commitments have been made or received by KPMG with respect to compensation or payment in connection with these cases other than in accordance with the provisions of the Bankruptcy Code; and (b) there is no agreement or understanding between KPMG and any other entity, other than a member, partner or regular associate of KPMG, for the sharing of compensation received or to be received for services rendered in connection with these proceedings.

### Disinterestedness of Professionals

22.     Based upon information supplied by the Debtors, KPMG searched the database described below to identify connections or relationships with the individuals and entities listed on **Schedule 1** attached hereto and incorporated herein.

23.     KPMG's review identified current clients of any KPMG member firm, as well as former clients with engagements in the past three years and potential clients with engagements that have not yet been agreed.  This engagement management system identifies not only the clients but other parties whose interests may be adverse to, in conflict with, or potentially negatively impacted by the engagement.  Accordingly, the search can identify whether an engagement is adverse to the Debtors or relates to the bankruptcy estates.

24.     In connection with its proposed retention by the Debtors in these cases, KPMG sent an e-mail to any KPMG partners, principals or other professionals currently providing and/or expected to provide services to the Debtors pursuant to the Engagement Letters, to determine if any such individuals or members of their immediate family (a) holds or controls any securities of the Debtors, (b) is related or connected to any bankruptcy judge in the District of Delaware, any employee in the judges' offices, or any employee in the United States Trustee's Office located in

the District; or (c) is or was within two years prior to the bankruptcy filing an officer, director or employee of the Debtors or any of their affiliates.

      25.     To the best of my knowledge, based on the searches discussed above, KPMG has determined that certain connections should be disclosed as follows:

          a.     KPMG may provide or has provided services   to the potential parties-in-interest or their affiliates listed on **Schedule 2**.   The connections listed on **Schedule 2** involve only services that are unrelated to the Debtors or their estates.

          b.     Law firms identified on **Schedule 2**, including Sidley Austin LLP, Duane Morris, LLP, Levi & Korsinsky, LLP, Davis Wright Tremaine LLP, Greenberg Traurig, LLP, Troutman Pepper Hamilton Sanders LLP, Womble Bond Dickinson (US) LLP, Cooley LLP, Ogletree, Deakins, Nash, Smoak & Stewart, PC, Constangy, Brooks, Smith & Prophete, LLP, Fennemore Craig, P.C., Shutts & Bowen LLP, Nexsen Pruet LLC, Fenwick and West LLP, Kilpatrick Townsend & Stockton LLP, Cleary Gottlieb Steen & Hamilton LLP, Pachulski Stang Ziehl & Jones LLP, have provided, currently provide and may in the future provide legal services to KPMG or KPMG professionals in matters unrelated to the Debtors or their estates, and/or KPMG has provided, currently provide and may in the future provide services to such firms or their clients in matters unrelated to the Debtors or their estates.

          c.     Certain financial institutions or their respective affiliates, including U.S. Bank, listed on **Schedule 2** (i) are lenders to KPMG and/or (ii) have

financed a portion of the capital and/or capital loan requirements of various managing partners and principals, respectively, of KPMG.

d.    KPMG has provided and continues to provide professional services to certain of the Debtors' secured lenders and/or their affiliates, in matters unrelated to the Debtors or their estates.    With respect to those connections that are attest clients, KPMG provides such clients with ordinary course auditing services and may conduct typical audit procedures that arise from such potential parties-in-interests' business arrangements with the Debtors.

26.    KPMG is the United States member firm of the KPMG global network of independent member firms affiliated with KPMG International Limited ("KPMG International"), a private English company limited by guarantee.   KPMG International is an entity that is legally separate from each member.   KPMG International and the member firms are not a global partnership, single firm, multinational corporation, joint venture, or in a principal or agent relationship or partnership with each other.   The KPMG International member firm structure reflects the fact that the member firms are not affiliates, subsidiaries, or branch offices of each other or of a global parent.   No member firm has any authority to obligate or bind KPMG International any of its related entities or any other member firm vis-à-vis third parties, nor does KPMG International or any of its related entities have any such authority to obligate or bind any member firm.   KPMG does not share profits with the other KPMG member firms or with KPMG International.

27.    KPMG International acts as the coordinating entity for the overall benefit of the KPMG member firms but does not provide professional services to clients.   Professional services to clients are exclusively provided by member firms.   KPMG member firms commit to conduct their operations in compliance with a common set of values, standards and service quality

expectations.   Partners and employees within those firms commit to act with integrity at all times. Each member firm takes responsibility for its management and the quality of its work.

28.    While KPMG is a separate and distinct legal entity from all other member firms of KPMG International, KPMG International has a global conflict internal computer database containing actual and potential engagement activity of the member firms for at least the last three years.   The client database was created to include engagements and prospective engagements of all member firms of the KPMG International network of independent firms and firms and entities controlled by, or under common control with, one or more such member firms (collectively, the "Other KPMG Entities"), and is maintained by the Global Business Operations Office funded by KPMG International.   KPMG International has given permission to a limited number of professionals located in the United States to use the system to identify potential conflicts and potentially adverse engagements, while additional professionals are able to use the system to identify connections.   For the sake of clarity, the disclosures included herein identify connections with KPMG or any Other KPMG Entities, and none of those connections involved an engagement which was adverse to the Debtors or their estates.

29.    On an ongoing basis, KPMG will conduct further reviews of its professional contacts as it becomes aware of new parties of interest, as is stated below.   To the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, KPMG neither holds nor represents an interest adverse to the Debtors estates in accordance with section 327 of the Bankruptcy Code.

30.    To the best of my knowledge, KPMG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that, KPMG:

a.    is not a creditor, an equity security holder, or an insider of the Debtors;

b.　　　is not and was not, within two years before the date of filing of these chapter 11 cases, a director, officer, or employee of the Debtors; and

c.　　　does not have an interest materially adverse to the interest of the Debtors estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason.

31.　　　KPMG has in the past been retained by, and presently provides and likely in the future will provide services for, certain creditors of the Debtors, other parties-in-interest and their respective attorneys and accountants in matters unrelated to such parties' claims against the Debtors or interests in these chapter 11 cases.　KPMG has not identified any material relationships or connections with any law firm, financial consultant or investment banker involved in these chapter 11 cases that would cause it to be adverse to the Debtors, the Debtors' estates, any creditor or any other party-in-interest.　KPMG currently performs, has previously performed or may have performed such services for the entities listed in **Schedule 2,** however, except as disclosed herein, such services, to the extent performed by KPMG, are unrelated to the Debtors or their chapter 11 cases.

32.　　　To the best of my knowledge, except as set forth herein and in **Schedule 2**, (a) KPMG has no connections with the creditors, any other party-in-interest, or their respective attorneys and accountants; (b) none of the KPMG partners and professionals working in these chapter 11 cases is a relative of or has any known connection with the U.S. Trustee of the District of Delaware or of any known employee in the office thereof, or any United States Bankruptcy Judge of the District of Delaware; and (c) none of the KPMG partners and professionals is or was within two years prior to the bankruptcy filing, an officer, director or employee of the Debtors or their non-debtor affiliates.

33.     KPMG has not provided, and will not provide, any professional services to any of the creditors, other parties-in-interest, or their respective attorneys and accountants with regard to any matter related to these Chapter 11 Cases.

34.     Notwithstanding anything to the contrary herein, from time to time, KPMG may use the services of certain professionals from the Other KPMG Entities when necessary to the performance of its professional duties and services to the Debtors.   The use of such professionals allows KPMG to maximize resources and minimize costs to the Debtors' estates.   KPMG will pay such Other KPMG Entities directly for the use of such professionals, and will include such amounts in its fee application at KPMG's cost without any mark-up or increase.[7]

35.     In addition, from time to time, KPMG may use independent contractors, such as software providers.   However, KPMG will not profit from the use of such persons. Notwithstanding any use of any Other KPMG Entities or independent contractors, KPMG shall remain fully and solely responsible for any liabilities and obligations in respect of its engagement and services to the Debtors in these cases.

36.     Only KPMG is being retained in these matters.   KPMG cannot assure that an engagement will not be accepted by a foreign member firm of KPMG International for another party that may bear upon KPMG's engagement by the Debtors.   However, to the extent KPMG becomes aware of such engagement and believes such engagement may bear upon KPMG's engagement by the Debtors, KPMG will file a supplemental declaration with the Court.

37.     If and when additional information becomes available with respect to any other connections or relationships which may exist between KPMG, foreign member firms of KPMG

---

[7]     Except for professionals of KPMG International firm members who provide services pursuant to the Tax Restructuring Engagement Letter, the hourly rates set forth above include the rates to be charged to KPMG by professionals from KPMG International member firms. With respect to the Tax Restructuring Engagement, and as disclosed on page 3 of the Tax Restructuring Engagement Letter, "any time incurred by KPMG international member firms will be billed based on the standard hourly market rates in those respective jurisdictions."

International, or their partners and professionals, and the Debtors, creditors, or any other parties in interest which may affect these cases, KPMG shall file a supplemental declaration describing such information with the Court.

38.    This declaration is provided in accordance with sections 327 and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-2.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of October, 2023.

*/s/ Steven D. Morgan*

Steven D. Morgan
KPMG LLP
3975 Freedom Circle
Mission Towers I, Suite 600
Santa Clara, CA 95054

## Schedule 1

**Potential Parties in Interest**

### 1. Debtors

Proterra Inc
Proterra Operating Company, Inc.

### 2. Non-Debtor Affiliate/Subsidiary Companies

N/A

### 3. Current Directors and Officers

Jan R. Hauser
Gareth T. Joyce
Michael D. Smith
Mary Louise Krakauer
Roger M. Nielsen
Jeannine P. Sargent
Brook F. Porter
Constance E. Skidmore
David S. Black
Christopher L. Bailey
Julian R. Soell
Jeffrey D. Embt
Jill Frizley

### 4. Current Director and Officer Affiliations

Milwaukee School of Engineering Board of Regents
Lurie Children's Hospital of Chicago
Enfusion, Inc.
Synpsys Inc.
Fortive Corporation
Breakthrough Energy Ventures
Generation Investment Management LLP
Katalyst Ventures Management LLC
Northwestern University
G2VP, LLC
Comfort Systems USA, Inc.
Sensata Technologies Holding Plc

### 5. Former Directors and Officers (1 year)

John J. Allen
Joan Robinson-Berry

Karina F. Padilla
JoAnn C. Covington

### 6. Secured Creditors

***Prepetition Lenders***

**$75 Million Asset Based Loan ($25 million Letter of Credit Sub Letter)**

Bank of America, N.A.,

***Major Debt Holders***

**5% Quarterly Cash Interest and 7% Quarterly PIC Convertible Notes Maturing 8-4-2028**

CSI GP LLC
CSI Prodigy Holdco LP
CSI Prodigy Co-Investment LP
CSI PRTA Co-Investment LP
Generation IM

**5% Quarterly Cash Interest and 7% Quarterly PIC Convertible Notes Maturing 8-24-2028**

Generation IM

### 7. Contract Counterparties with Significant Remaining Liability

Bloomington-Normal Public Transit System
Bow Valley Regional Transit Services Commission
Capital Metropolitan Transportation Authority
Chicago Transit Authority
City of Edmonton
City of Fresno
Highland Electric Transportation, Inc.
Los Angeles Department of Transportation
Miami-Dade County
Navistar, Inc.
Nikola Corporation
Port Authority of New York and New Jersey
Valley Regional Transit
Volta Trucks Ltd
Freightliner Custom Chassis-DTNA
Van Hool
LG Energy Solution, Ltd.

TPI Composites, Inc.
Power Electronics USA
Sensata Technologies, Inc.
BC Transit
Pierce (subsidiary of OSHKOSH)
Lightening eMotors
Anadolu Isuzu

## 8. Taxing and Regulatory Agencies

Utah State Tax Commission
Alabama Department of Revenue
South Carolina Department of Labor, Licensing & Regulation
North Carolina Department of Revenue
Tennessee Department of Revenue
State of Rhode Island Division of Taxation
Texas Department of Motor Vehicles
Florida Department of Revenue
Los Angeles County Tax Collector
Internal Revenue Service
City of Greenville
Kentucky Department of Revenue
Louisiana Motor Vehicle Commission
San Mateo County Tax Collector
Montana Department of Revenue
Illinois Secretary of State
Maryland Department of Assessments & Taxation
California Franchise Tax Board
Secretary of State of California
Illinois Department of Revenue
South Carolina Department of Revenue
State of Michigan
Greenville County Tax Collector
South Carolina Department of Motor Vehicle
Cogency
Commonwealth of Massachusetts
Canada Revenue Agency
Idaho State Tax Commission
British Columbia Ministry of Finance

## 9. Substantial Equity Holders – Public Filings

Tao Pro LLC
Isaac E. Pritzker

Lori D. Mills
James Schwaba
The Vanguard Group
BlackRock Inc.
Franklin Resources Inc.
Charles B. Johnson
Rupert H. Johnson, Jr.
Franklin Advisors Inc.
ArcLight CTC Holdings Lp
Daniel R. Revers
KPCP Green Growth Fund, LLC c/o Kleiner Perkins Caufield & Byers LLC
KPCP GGF Associates, LLC c/o Kleiner Perkins Caufield & Byers LLC
Weiss Asset Management
BIP GP LLC
WAM GP LLC
Andrew M. Weiss, PHD

### 10. Banks

Silicon Valley Bank
Bank of America
Merrill Lynch
Morgan Stanley
U.S. Bank

### 11. Significant Unsecured Creditors (Greater than $1 million)

LG Energy Solution, LTD.
TPI Composites, INC.
Power Electronics USA
Munich Electrification
Woodruff-Sawyer Oregon, Inc.
Danfoss Power Solutions (US) Company
Manaflex Inc.
DWFritz Automation, Inc.
Ningbo Yexing Automotive Part Co., Ltd.
Cooley LLP
Sensata Technologies, Inc.
Sigma Machine, Inc.
Ron Whites's Air Compressor Sales
Manz AG
Forbes Bros. Ltd

Bossard Inc.
Protiviti Inc.

### 12. Real Estate Lessors

G&T Properties LLP
PAC Operating Limited Partnership
San Bernardino International Airport Authority
WIN.IT America, Inc.
CoreSite
Electrolux Home Products, Inc._MDH F1 Greenville AG14, LLC
Fairforest of Greenville, LLC
Smith Development Company Inc.
International Transportation Innovation Center (ITIC)
Greenville, City and County of_SCTAC
Michelin North America Inc.
Verdae Properties, LLC
Carolina CC Venture XXXVII, LLC (CBRE)
First Industrial LP

### 13. Parties to Pending Litigation

Southeastern Pennsylvania Transportation Authority (SEPTA)
Duane Morris, LLP
Stephanie Bitetti
Maho Lazo, et al
Justice Law Corporation
Wilshire Law Firm
Amar Khatib
Hector Ruiz
Otkupman Law Firm
LaToya Lomax
Kirby G. Smith Law Firm, LLC
U.S. Equal Employment Opportunity Commission (EEOC) (Lomax)
Jorge Sanchez (need counsel)
Nikola Corporation (need counsel)
Jeremy Villanueva, et al
Levi & Korsinsky, LLP
Marco Gudino
USW Local 675
Samuel Gastelum
The Rutten Law Firm, APC
San Mateo County Transit District (SamTrans)
Hanson Bridgett

Janieka L. Pearson
DWFritz Automation, LLC
Davis Wright Tremaine LLP

## 14. Issuer and Beneficiaries of any Guarantees, Performance Bonds, or Payment/Surety Bonds

Issuing Carriers:
Philadelphia Indemnity Insurance Company
Atlantic Specialty Insurance Company
Lexon Insurance Company
Intact Insurance Company

Surety Bond Beneficiaries:
Biddeford Saco Old Orchard Beach Transit
Board of County Commissions of Miami-Dade County
Canada Border Services Agency
Capital Metropolitan Transportation Authority
Chicago Transit Authority
City and County of San Francisco
City of Visalia
Contractor's License Board
Delaware Transit Authority
Department of Homeland Security
Metropolitan Washington Airports Authority
Sacramento Regional Transit District
Santa Clara Valley Transportation Authority
Southeastern Pennsylvania Transportation Authority
Spokane Transit Authority
State of California
State of California, Contractors License Board
State of Oregon
State of Washington/Contractors Board
Transportation District Commission of Hampton Roads

## 15. Issuers and Beneficiaries of any outstanding (standby) Letters of Credit

Issuing Bank:
Bank of America, N.A.

Beneficiaries:
Philadelphia Insurance Companies
Carolina CC Venture XXXVII LLC
LG Energy Solutions Ltd Tower 1
Great American Insurance Company
Atlantic Specialty Insurance

Steelcase Financial Services Inc.
Bond Safeguard Insurance Company
BC Transit

### 16. Major Insurance Brokers and Carriers

<u>Brokers:</u>
Woodruff Sawyer & Co.
Marsh USA, Inc.
Willis Tower Watson

<u>Insurance Carriers:</u>
American Internationa Group (AIG)
Allied World Specialty Insurance Company
AXA XL Professional Insurance
Axix
Berkley Professional Liability
Chubb Group of Insurance Co.
Chubb Bermuda Insurance Ltd.
Crum & Forester & Forster Specialty Insurance Company
Everest National Insurance Company
Falls Lake National Insurance Company
Great American Insurance Company
Houston Casualty Company (UK Branch)
Hudson Insurance Group
Indian Harbor Insurance Company
Inigo Insurance
Intact Insurance Group USA LLP
Ironshore Indemnity Inc.
Landmark American Insurance Company
Lloyds of London
National Union Fire Insurance Company of Pittsburgh, Pa.
North American Capacity Insurance Company
Philadelphia Insurance Group
RSUI Indemnity Company
Scottsdale Insurance Company
Starr Surplus Lines Insurance Company
Travelers Indemnity Company
United Specialty Insurance Company
Westchester Surplus Lines Insurance Company
XL Specialty Insurance Company

### 17. Debtors' Restructuring Professionals

FTI Consulting, Inc.
Moelis & Company
Paul, Weiss, Rifkind, Wharton & Garrison LLP
Young Conaway Stargatt & Taylor, LLP
Alvarez & Marsal

### 18. Major Competitors

Bloom Energy Corporation
Bluebird Corporation
BYD
Canoe, Inc.
ChargePoint Holdings, Inc.
Cummins
EBusco
Faraday Future
FuelCell Capital Energy Incorporated
Gillig
Hylion Holdings Corporation
Hyzon Motors, Inc.
Lion Electric Company
Microvast Holdings, Inc.
Nikola Corporation
NFI Group, Inc.
Novabus
Our Next Energy (ONE)
Plug Power, Inc.
QuantumScape Corporation
Stem, Inc.
XL Fleet Corporation
Xos, Inc.
The Workhorse Group Incorporated

### 19. Strategic Partners

Our Next Energy (ONE)

### 20. Ordinary Course Professionals

Greenberg Traurig, LLP
Troutman Pepper Hamilton Sanders LLP
Womble Bond Dickinson (US) LLP
Cooley LLP
Ogletree, Deakins, Nash, Smoak & Stewart, PC

Constancy, Brooks, Smith & Prophete, LLP.
Demler, Armstrong & Rowland, LLP
Fennemore Craig, P.C.
Bookoff McAndrews PLLC
Shutts & Bowen LLP
Nexsen Pruet LLC
Fenwick and West LLP
Kilpatrick Townsend & Stockton LLP
California Strategies & Advocacy, LLC
KPMG LLP
BDO USA, LLP
Andersen Tax Holdings LLC
Dixon Hughes Goodman
Alvarez & Marsal Holdings, LLC
J. J. Keller & Associates, Inc.
Aon Consulting, Inc
Environmental Outsource, Inc.
CALSTART, Inc.
V-Soft Consulting Group, Inc.
Triniti Corporation
Exponent, Inc.
Britt, Peters & Associates, Inc
Rose Tse
Protiviti Inc.
Odgers Berndtson LLC
Doerrer Group LLC, The
Sigalit Yochay-Wise
Matthew T Shafer
Stock & Option Solutions, Inc.
Onset Financial
Kristie deJong
ETRADE Financial Corporate Services, Inc.
Cleary Gottlieb Steen & Hamilton LLP

### 21. UCC Lien Search Results

Hercules Capital, Inc.
Hercules Capital, Inc., as agent
Hercules Technology Growth Capital, Inc.,
Hercules Technology Growth Capital, Inc., as agent
JR Automation Technologies, LLC
J.R. Automation Technologies, LLC
Bank Of American, N.A., As agent
Macquarie Corporate and Asset Funding Inc.

HYG Financial Services, Inc.
Crown Equipment Corporation
CSI GP I LLC, as Collateral Agent
Dell Financial Services L.L.C.
Steelcase Financial Services Inc.

### 22. Utility Providers

Southern California Edison
Greenville Water System
U.S. TelePacific Corp.
Verizon Wireless
The Gas Company (SoCalGas)
City of Industry
City of Burlingame
AT&T Mobility
Duke Energy
Pacific Gas & Electric
Republic Services #744
Recology San Mateo County
Piedmont Natural Gas
Commission of Public Works, City of Greet
J2 Cloud Services LLC
Spectrum Business
Valley Vista Services
Waste Management of South Carolina

### 23. Bankruptcy Judges

The Honorable Brendan Linehan Shannon
The Honorable Craig T. Goldblatt
The Honorable J. Kate Stickles
The Honorable John T. Dorsey
The Honorable Karen B. Owens
The Honorable Laurie Selber Silverstein, Chief Judge
The Honorable Mary F. Walrath
The Honorable Thomas M. Horan

### 24. United States Trustee for the District of Delaware

Joseph McMahon
Lauren Attix
Linda Casey
Denis Cooke

Joseph Cudia
Holly Dice
Shakima L. Dortch
Timothy J. Fox, Jr.
Diane Giordano
Christine Green
Benjamin Hackman
Ramona Harris
Nyanquoi Jones
Jane Leamy
Hannah M. McCollum
James R. O'Malley
Michael Panacio
Linda Richenderfer
Juliet Sarkessian
Richard Schepacarter
Edith A. Serrano
Rosa Sierra-Fox
Dion Wynn

## 25. Notices of Appearance / Pro Hac Vice

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and
Service Workers International Union - United Steelworkers - David R. Jury
United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and
Service Workers International Union - Law Office of Susan E. Kaufman, LLC - Susan E. Kaufman
CSI GP I LLC - Sidley Austin LLP - Thomas R. Califano
CSI GP I LLC - Sidley Austin LLP - Dennis M. Twomey
CSI GP I LLC - Sidley Austin LLP - Jackson T. Garvey
CSI GP I LLC - Sidley Austin LLP - Maegan Quejada
CSI GP I LLC - Pachulski Stang Ziehl & Jones LLP - Laura Davis Jones
CSI GP I LLC - Pachulski Stang Ziehl & Jones LLP - Peter J. Keane
CSI GP I LLC - Pachulski Stang Ziehl & Jones LLP - Edward A. Corma
Waste Management - Monzack Mersky and Browder, P.A - Rachel B. Mersky

## Schedule 2

**KPMG Relationships**

## 1. Debtors

Proterra Inc
Proterra Operating Company, Inc.

## 2. Non-Debtor Affiliate/Subsidiary Companies

N/A

## 3. Current Directors and Officers

Jan R. Hauser
Gareth T. Joyce
Michael D. Smith
Mary Louise Krakauer
Roger M. Nielsen
Jeannine P. Sargent
Brook F. Porter
Constance E. Skidmore
Christopher L. Bailey
Julian R. Soell
Jeffrey D. Embt

## 4. Current Director and Officer Affiliations

Milwaukee School of Engineering Board of Regents
Lurie Children's Hospital of Chicago
Enfusion, Inc.
Fortive Corporation
Breakthrough Energy Ventures
Generation Investment Management LLP
Katalyst Ventures Management LLC
Northwestern University
G2VP, LLC
Comfort Systems USA, Inc.
Sensata Technologies Holding Plc

## 5. Former Directors and Officers (1 year)

John J. Allen
Joan Robinson-Berry
JoAnn C. Covington

### 6. Secured Creditors

*Prepetition Lenders*

**$75 Million Asset Based Loan ($25 million Letter of Credit Sub Letter)**

Bank of America, N.A.,

**5% Quarterly Cash Interest and 7% Quarterly PIC Convertible Notes Maturing 8-4-2028**

CSI GP LLC
CSI Prodigy Holdco LP
CSI Prodigy Co-Investment LP
CSI PRTA Co-Investment LP
Generation IM

**5% Quarterly Cash Interest and 7% Quarterly PIC Convertible Notes Maturing 8-24-2028**

Generation IM

### 7. Contract Counterparties with Significant Remaining Liability

Bow Valley Regional Transit Services Commission
Capital Metropolitan Transportation Authority
Chicago Transit Authority
City of Edmonton
City of Fresno
Highland Electric Transportation, Inc.
Los Angeles Department of Transportation
Miami-Dade County
Navistar, Inc.
Nikola Corporation
Port Authority of New York and New Jersey
Valley Regional Transit
Volta Trucks Ltd
Freightliner Custom Chassis-DTNA
Van Hool
LG Energy Solution, Ltd.
TPI Composites, Inc.
Power Electronics USA
Sensata Technologies, Inc.

BC Transit
Pierce (subsidiary of OSHKOSH)
Lightening eMotors
Anadolu Isuzu

## 8. Taxing and Regulatory Agencies

Utah State Tax Commission
Alabama Department of Revenue
South Carolina Department of Labor, Licensing & Regulation
North Carolina Department of Revenue
Tennessee Department of Revenue
State of Rhode Island Division of Taxation
Texas Department of Motor Vehicles
Florida Department of Revenue
Los Angeles County Tax Collector
Internal Revenue Service
City of Greenville
Kentucky Department of Revenue
Louisiana Motor Vehicle Commission
San Mateo County Tax Collector
Montana Department of Revenue
Illinois Secretary of State
Maryland Department of Assessments & Taxation
California Franchise Tax Board
Secretary of State of California
Illinois Department of Revenue
South Carolina Department of Revenue
State of Michigan
Greenville County Tax Collector
South Carolina Department of Motor Vehicle
Cogency
Commonwealth of Massachusetts
Canada Revenue Agency
Idaho State Tax Commission
British Columbia Ministry of Finance

## 9. Substantial Equity Holders – Public Filings

The Vanguard Group
BlackRock Inc.
Franklin Resources Inc.

Charles B. Johnson
Rupert H. Johnson, Jr.
Franklin Advisors Inc.
ArcLight CTC Holdings Lp
KPCP Green Growth Fund, LLC c/o Kleiner Perkins Caufield & Byers LLC
KPCP GGF Associates, LLC c/o Kleiner Perkins Caufield & Byers LLC
Weiss Asset Management
BIP GP LLC
WAM GP LLC

### 10. Banks

Silicon Valley Bank
Bank of America
Merrill Lynch
Morgan Stanley
U.S. Bank

### 11. Significant Unsecured Creditors (Greater than $1 million)

LG Energy Solution, LTD.
TPI Composites, INC.
Power Electronics USA
Woodruff-Sawyer Oregon, Inc.
Danfoss Power Solutions (US) Company
DWFritz Automation, Inc.
Ningbo Yexing Automotive Part Co., Ltd.
Cooley LLP
Sensata Technologies, Inc.
Manz AG
Forbes Bros. Ltd
Bossard Inc.
Protiviti Inc.

### 12. Real Estate Lessors

PAC Operating Limited Partnership
San Bernardino International Airport Authority
WIN.IT America, Inc.
CoreSite
Electrolux Home Products, Inc._MDH F1 Greenville AG14, LLC
Greenville, City and County of_SCTAC

Michelin North America Inc.
Carolina CC Venture XXXVII, LLC (CBRE)
First Industrial LP

### 13. Parties to Pending Litigation

Southeastern Pennsylvania Transportation Authority (SEPTA)
Duane Morris, LLP
U.S. Equal Employment Opportunity Commission (EEOC) (Lomax)
Jorge Sanchez (need counsel)
Nikola Corporation (need counsel)
Levi & Korsinsky, LLP
USW Local 675
San Mateo County Transit District (SamTrans)
Hanson Bridgett
DWFritz Automation, LLC
Davis Wright Tremaine LLP

### 14. Issuer and Beneficiaries of any Guarantees, Performance Bonds, or Payment/Surety Bonds

Issuing Carriers:
Philadelphia Indemnity Insurance Company
Atlantic Specialty Insurance Company
Lexon Insurance Company
Intact Insurance Company
Surety Bond Beneficiaries:
Biddeford Saco Old Orchard Beach Transit
Board of County Commissions of Miami-Dade County
Canada Border Services Agency
Capital Metropolitan Transportation Authority
Chicago Transit Authority
City and County of San Francisco
City of Visalia
Contractor's License Board
Delaware Transit Authority
Department of Homeland Security
Metropolitan Washington Airports Authority
Sacramento Regional Transit District
Santa Clara Valley Transportation Authority
Southeastern Pennsylvania Transportation Authority
State of California
State of California, Contractors License Board

State of Oregon
State of Washington/Contractors Board
Transportation District Commission of Hampton Roads

### 15. Issuers and Beneficiaries of any outstanding (standby) Letters of Credit

Issuing Bank:
Bank of America, N.A.

Beneficiaries:
Philadelphia Insurance Companies
Carolina CC Venture XXXVII LLC
LG Energy Solutions Ltd Tower 1
Great American Insurance Company
Atlantic Specialty Insurance
Steelcase Financial Services Inc.
Bond Safeguard Insurance Company
BC Transit

### 16. Major Insurance Brokers and Carriers

Brokers:
Woodruff Sawyer & Co.
Marsh USA, Inc.
Willis Tower Watson

Insurance Carriers:
American Internationa Group (AIG)
Allied World Specialty Insurance Company
AXA XL Professional Insurance
Berkley Professional Liability
Chubb Group of Insurance Co.
Chubb Bermuda Insurance Ltd.
Crum & Forester & Forster Specialty Insurance Company
Everest National Insurance Company
Falls Lake National Insurance Company
Great American Insurance Company
Houston Casualty Company (UK Branch)
Hudson Insurance Group
Indian Harbor Insurance Company
Intact Insurance Group USA LLP
Ironshore Indemnity Inc.

Landmark American Insurance Company
Lloyds of London
National Union Fire Insurance Company of Pittsburgh, Pa.
North American Capacity Insurance Company
RSUI Indemnity Company
Scottsdale Insurance Company
Starr Surplus Lines Insurance Company
Travelers Indemnity Company
United Specialty Insurance Company
Westchester Surplus Lines Insurance Company
XL Specialty Insurance Company

### 17. Debtors' Restructuring Professionals

FTI Consulting, Inc.
Moelis & Company
Paul, Weiss, Rifkind, Wharton & Garrison LLP
Young Conaway Stargatt & Taylor, LLP
Alvarez & Marsal

### 18. Major Competitors

Bloom Energy Corporation
Bluebird Corporation
BYD
Canoe, Inc.
ChargePoint Holdings, Inc.
Cummins
EBusco
Faraday Future
FuelCell Capital Energy Incorporated
Gillig
Hylion Holdings Corporation
Hyzon Motors, Inc.
Lion Electric Company
Microvast Holdings, Inc.
Nikola Corporation
NFI Group, Inc.
Novabus
Our Next Energy (ONE)
Plug Power, Inc.
QuantumScape Corporation

Stem, Inc.
XL Fleet Corporation
Xos, Inc.
The Workhorse Group Incorporated

### 19. Strategic Partners

Our Next Energy (ONE)

### 20. Ordinary Course Professionals

Greenberg Traurig, LLP
Troutman Pepper Hamilton Sanders LLP
Womble Bond Dickinson (US) LLP
Cooley LLP
Ogletree, Deakins, Nash, Smoak & Stewart, PC
Constangy, Brooks, Smith & Prophete, LLP.
Fennemore Craig, P.C.
Shutts & Bowen LLP
Nexsen Pruet LLC
Fenwick and West LLP
Kilpatrick Townsend & Stockton LLP
California Strategies & Advocacy, LLC
BDO USA, LLP
Andersen Tax Holdings LLC
Dixon Hughes Goodman
Alvarez & Marsal Holdings, LLC
J. J. Keller & Associates, Inc.
Aon Consulting, Inc
CALSTART, Inc.
V-Soft Consulting Group, Inc.
Triniti Corporation
Exponent, Inc.
Protiviti Inc.
Odgers Berndtson LLC
Matthew T Shafer
Stock & Option Solutions, Inc.
ETRADE Financial Corporate Services, Inc.
Cleary Gottlieb Steen & Hamilton LLP

### 21. UCC Lien Search Results

Hercules Capital, Inc.
Hercules Capital, Inc., as agent
Hercules Technology Growth Capital, Inc.,
Hercules Technology Growth Capital, Inc., as agent
JR Automation Technologies, LLC
J.R. Automation Technologies, LLC
Bank Of American, N.A., As agent
Macquarie Corporate and Asset Funding Inc.
HYG Financial Services, Inc.
Crown Equipment Corporation
CSI GP I LLC, as Collateral Agent
Dell Financial Services L.L.C.
Steelcase Financial Services Inc.

### 22. Utility Providers

Southern California Edison
Greenville Water System
U.S. TelePacific Corp.
Verizon Wireless
The Gas Company (SoCalGas)
City of Industry
City of Burlingame
AT&T Mobility
Duke Energy
Pacific Gas & Electric
Republic Services #744
Recology San Mateo County
Piedmont Natural Gas
Commission of Public Works, City of Greet
J2 Cloud Services LLC
Spectrum Business
Waste Management of South Carolina

### 23. Bankruptcy Judges

No KPMG Connections

### 24. United States Trustee for the District of Delaware

No KPMG Connections

### 25. Notices of Appearance / Pro Hac Vice

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and
Service Workers International Union - United Steelworkers - David R. Jury
United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and
CSI GP I LLC - Sidley Austin LLP - Thomas R. Califano
CSI GP I LLC - Sidley Austin LLP - Dennis M. Twomey
CSI GP I LLC - Sidley Austin LLP - Jackson T. Garvey
CSI GP I LLC - Sidley Austin LLP - Maegan Quejada
CSI GP I LLC - Pachulski Stang Ziehl & Jones LLP - Laura Davis Jones
CSI GP I LLC - Pachulski Stang Ziehl & Jones LLP - Peter J. Keane
CSI GP I LLC - Pachulski Stang Ziehl & Jones LLP - Edward A. Corma
Waste Management - Monzack Mersky and Browder, P.A - Rachel B. Mersky

**<u>Exhibit C-1</u>**

**Audit Engagement Letter Dated June 16, 2021**



KPMG LLP
Mission Towers I
Suite 100
3975 Freedom Circle Drive
Santa Clara, CA 95054

June 16, 2021

Proterra Inc
1815 Rollins Road
Burlingame, California 94010

Attention: Ms. Constance Skidmore, *Audit Committee Chair*

This letter (Engagement Letter) confirms our understanding of our engagement to provide professional services to Proterra Inc.

**Objectives and Limitations of Services**

*Integrated Audit Services*

We will perform an audit of Proterra Inc's consolidated financial statements and an audit of its internal control over financial reporting (collectively, the Integrated Audit).

Based on our Integrated Audit, we will issue our reports on:

- The consolidated financial statements of Proterra Inc as set forth in Appendix I;

- Schedules supporting such financial statements; and

- The effectiveness of internal control over financial reporting as set forth in Appendix I.

These reports will be included in the annual report (Form 10-K) proposed to be filed by Proterra Inc under the Securities Exchange Act of 1934.

A company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of the financial reporting and preparation of financial statements for external purposes in accordance with U.S. generally accepted accounting principles. A company's internal control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with U.S. generally accepted accounting principles, and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the company's assets that could have a material effect on the financial statements.

We have the responsibility to conduct and will conduct the:

a.  audit of the consolidated financial statements in accordance with the standards of the Public Company Accounting Oversight Board (United States) ("PCAOB"), with the objective of expressing an opinion as to whether the presentation of the consolidated financial statements and schedules conforms with U.S. generally accepted accounting principles.

KPMG LLP a Delaware limited liability partnership and a member firm of
the KPMG global organization of independent member firms affiliated with
KPMG International Limited, a private English company limited by guarantee.



Proterra Inc
June 16, 2021
Page 2 of 13

b.  audit of internal control over financial reporting in accordance with the standards of the PCAOB, with the objective of expressing an opinion on the effectiveness of internal control over financial reporting. We will plan and perform the audit to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects.

The consolidated financial statements and schedules, management's assessment of the effectiveness of internal control over financial reporting, and our reports on the consolidated financial statements and schedules and the effectiveness of internal control over financial reporting are subject to review by the Securities and Exchange Commission (SEC) staff and to the application by them of their interpretation of the relevant rules and regulations.

Our Integrated Audit will include:

a.  performing tests of the accounting records and such other procedures, as we consider necessary in the circumstances, to provide a reasonable basis for our opinions.

b.  assessing the accounting policies used and significant estimates made by management, and evaluating the overall consolidated financial statement presentation.

c.  obtaining an understanding of internal control over financial reporting, assessing the risk that a material weakness exists, testing and evaluating the design and operating effectiveness of internal control based on the assessed risk, and performing such other procedures as we consider necessary in the circumstances.

Our Integrated Audit:

a.  will be planned and performed to obtain reasonable assurance about whether the consolidated financial statements are free of material misstatement, whether caused by error or fraud and whether effective internal control over financial reporting was maintained in all material respects. Accordingly, there is some risk that a material misstatement of the consolidated financial statements or a material weakness in internal control over financial reporting would remain undetected. Although not absolute assurance, reasonable assurance is a high level of assurance. Absolute assurance is not attainable because of the nature of audit evidence and the characteristics of fraud. Therefore, there is also a risk that material errors, fraud (including fraud that may be an illegal act), and other illegal acts may exist and not be detected by an Integrated Audit performed in accordance with the standards of the PCAOB. Also, an Integrated Audit is not designed to detect error or fraud that is immaterial to the consolidated financial statements or deficiencies in internal control over financial reporting that, individually or in combination, are less severe than a material weakness.

b.  cannot provide absolute assurance of achieving financial reporting objectives because of its inherent limitations. Internal control over financial reporting is a process that involves human diligence and compliance and is subject to lapses in judgment and breakdowns resulting from human failures. Internal control over financial reporting can be circumvented by collusion or improper management override. Because of such limitations, there is a risk that material misstatements may not be prevented or detected on a timely basis by internal control over financial reporting. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

Subject to the remainder of this paragraph, we will issue written reports upon completion of our Integrated Audit addressed to the stockholders and the board of directors of Proterra Inc. The reports will be in a form that is in accordance with the published rules and regulations of the SEC and the standards of the PCAOB. If, for any reason, we are unable to complete the audit or unable to form or have not formed an opinion, we may decline



Proterra Inc
June 16, 2021
Page 3 of 13

to express an opinion or decline to issue a report as a result of the engagement. In addition, we cannot provide assurance that unqualified opinions will be rendered. Circumstances may arise in which it is necessary for us to modify our reports, add explanatory or emphasis-of-matter paragraphs or withdraw from the engagement. If, during the performance of our Integrated Audit procedures, such circumstances arise, we will communicate to the audit committee our reasons for modification or withdrawal. Prior to the issuance of our written reports, we will provide a draft and discuss the reports with the audit committee.

As part of our Integrated Audit, we will read the other information in your annual report (Form 10-K) and consider whether such information, or the manner of its presentation, is materially inconsistent with information, or the manner of its presentation, appearing in the consolidated financial statements or is inconsistent with the results of our audit of internal control over financial reporting. However, our Integrated Audit does not include the performance of procedures to corroborate such other information (including forward-looking statements).

*Quarterly Review Services*

We will review the condensed consolidated balance sheets of Proterra Inc, as set forth in Appendix I, and the related condensed consolidated statements of operations, stockholders' equity, and cash flows for the quarterly and year-to-date periods, which are to be included in the quarterly reports (Form 10-Q) proposed to be filed by Proterra Inc under the Securities Exchange Act of 1934. We will also conduct a review of Proterra's fourth quarter interim financial information if the selected quarterly financial data specified by Item 302 of Regulation S-K is required to be included in the annual report (Form 10-K) proposed to be filed by Proterra Inc under the Securities Exchange Act of 1934.

We have the responsibility to conduct our reviews in accordance with the standards of the PCAOB. The objective of a review of interim financial information is to provide us with a basis for communicating whether we are aware of any material modifications that should be made to such interim financial information for it to conform with U.S. generally accepted accounting principles. Our procedures will be substantially less in scope than an Integrated Audit performed in accordance with the standards of the PCAOB, the objective of which is the expression of opinions regarding the financial statements and internal control over financial reporting. Accordingly, we will not express an opinion on Proterra Inc's interim financial information.

Our reviews will consist principally of performing analytical procedures applied to financial data and making inquiries of Proterra Inc's personnel responsible for financial and accounting matters. Our reviews will include obtaining sufficient knowledge of Proterra Inc's business and its internal control as it relates to the preparation of both annual and interim financial information to (a) identify the types of potential material misstatements in the interim financial information and consider the likelihood of their occurrence, and (b) select the inquiries and analytical procedures that will provide us with a basis for communicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with U.S. generally accepted accounting principles.

A review does not contemplate tests of internal controls or accounting records, tests of responses to inquiries by obtaining corroborating evidential matter, and certain other procedures ordinarily performed during an Integrated Audit. Thus, a review does not provide assurance that we will become aware of all significant matters that would be disclosed in an Integrated Audit. Further, a review is not designed to provide assurance on internal control or to identify material weaknesses or significant deficiencies and cannot be relied on to detect errors, fraud, or illegal acts.  However, we are responsible for communicating with the audit committee regarding any material weaknesses and significant deficiencies that come to our attention.

As agreed, we will not issue a written report upon completion of each review. Proterra Inc understands that any reference to interim financial information as reviewed by us when such information is included in documents



Proterra Inc
June 16, 2021
Page 4 of 13

issued to stockholders or third parties (including the SEC) will necessitate the issuance of a written review report, which must accompany the interim financial information in the document.

If during the performance of our quarterly review services we become aware of matters that cause us to believe the interim information filed, or to be filed, with the SEC, is probably materially misstated as a result of a departure from U.S. generally accepted accounting principles, we will discuss such matters with management and, if appropriate, communicate such matters to the audit committee.

*Registration Statements and Other Offering Documents*

Should Proterra Inc wish to include or incorporate by reference the consolidated financial statements and schedules, management's assessment of the effectiveness of internal control over financial reporting, and our audit reports on the financial statements and schedules and the effectiveness of internal control over financial reporting into a future filing under the Securities Act of 1933, or an exempt offering, prior to our consenting to include or incorporate by reference our reports on the consolidated financial statements and schedules and internal control over financial reporting, we would consider our consent to the inclusion of our reports and the terms thereof at that time. We will be required to perform procedures as required by the standards of the PCAOB, including, but not limited to, reading other information incorporated by reference in the registration statement or other offering document and performing subsequent event procedures. Our reading of the other information included or incorporated by reference in the offering document will consider whether such information, or the manner of its presentation, is materially inconsistent with information, or the manner of its presentation, appearing in the consolidated financial statements and schedules or is inconsistent with the results of our audit of internal control over financial reporting. However, we will not perform procedures to corroborate such other information (including forward-looking statements). The specific terms of our future services with respect to future filings or other offering documents will be determined at the time the services are to be performed.

*Comfort Letters*

Should a comfort letter be requested in connection with a future filing under the Securities Act of 1933, or an exempt offering, the specific terms of our services will be determined at that time. Prior to our issuance of a comfort letter, management of Proterra Inc agrees to supply us with a representation letter that will, among other things, confirm that no events have occurred that would require adjustments to (or additional disclosures in) the audited consolidated financial statements or management's assessment of the effectiveness of Proterra Inc's internal control over financial reporting referred to above and confirm Proterra Inc's responses to certain inquiries made in connection with our issuance of the comfort letter.

**Our Responsibility to Communicate with the Audit Committee and the Board of Directors**

We will report to the audit committee the following matters prior to the issuance of our audit reports:

- An overview of our overall audit strategy, timing of the audit and the significant risks identified during our risk assessment procedures.

- Management's initial selection of, or changes in, significant accounting policies or the application of such policies in the current period; and the effect on the consolidated financial statements or disclosures of significant accounting policies in controversial areas or areas for which there is a lack of authoritative guidance or consensus, or diversity in practice.

- All critical accounting policies and practices to be used, including the reasons certain policies and practices are considered critical; and how current and anticipated future events might affect the determination of whether certain policies and practices are considered critical.



Proterra Inc
June 16, 2021
Page 5 of 13

- A description of the process management used to develop critical accounting estimates, management's significant assumptions used in critical accounting estimates that have a high degree of subjectivity, and any significant changes management made to the process used to develop critical accounting estimates or management's significant assumptions, including a description of management's reasons for the changes and the effects of the changes on the financial statements.

- Significant transactions that are outside of the normal course of business for Proterra Inc or that otherwise appear to be unusual due to their timing, size, or nature; and the policies and practices used to account for significant unusual transactions, and our understanding of the business purpose (or lack thereof) of significant unusual transactions.

- Our evaluation of the quality of Proterra Inc's financial reporting.

- All material weaknesses[a] and significant deficiencies[b] in internal control over financial reporting identified during the Integrated Audit, in writing, and when we have informed management of all internal control deficiencies.

- Corrected misstatements arising from the Integrated Audit and the implications that such corrected misstatements might have on Proterra's financial reporting process. In this context, corrected misstatements are proposed corrections of the consolidated financial statements that were recorded by management and, in our judgment, may not have been detected except through the auditing procedures performed.

- Uncorrected misstatements aggregated during the current engagement and pertaining to the latest period presented that were determined by management to be immaterial, both individually and in the aggregate.

- All relationships between KPMG LLP (KPMG) and its related entities and Proterra Inc and its related entities or persons in financial reporting oversight roles at Proterra Inc that may reasonably be thought to bear on independence.

- Other matters required to be communicated by the standards of the PCAOB or that are deemed by us to be significant to the oversight of Proterra Inc's financial reporting process.

We will report to the board of directors any conclusion that the audit committee's oversight of Proterra Inc's external financial reporting and internal control over financial reporting is ineffective, in writing.

We will also read minutes, if any, of audit committee meetings for consistency with our understanding of the communications made to the audit committee and determine that the audit committee has received copies of all material written communications between ourselves and management.

_____

[a] A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis.

[b] A significant deficiency is a deficiency, or a combination of deficiencies, in internal control over financial reporting that is less severe than a material weakness, yet important enough to merit attention by those responsible for oversight of the company's financial reporting.



Proterra Inc
June 16, 2021
Page 6 of 13

To the extent that they come to our attention, we will inform the appropriate level of management about any illegal acts, unless they are clearly inconsequential, material errors in the consolidated financial statements and any instances of fraud. Further, to the extent they come to our attention, we also will communicate directly to the audit committee illegal acts unless they are clearly inconsequential, material errors in the consolidated financial statements and any instances of fraud that involve senior management or that, in our judgment, cause a material misstatement of the consolidated financial statements. In the case of illegal acts which, in our judgment, would have a material effect on the consolidated financial statements of Proterra Inc, we are also required to follow the procedures set forth in the Private Securities Litigation Reform Act of 1995, which under certain circumstances requires us to communicate our conclusions to the SEC.

In addition, if we become aware of information that relates to the consolidated financial statements and/or management's assessment of the effectiveness of internal control over financial reporting after we have issued our reports or completed our interim review procedures, but which was not known to us at the date of our reports or completion of our interim review procedures, and which is of such a nature and from such a source that we would have investigated that information had it come to our attention during the course of our Integrated Audit and/or interim review procedures, we will, as soon as practicable: (1) communicate such an occurrence to the audit committee; and (2) undertake an investigation to determine whether the information is reliable and whether the facts existed at the date of our reports or completion of our interim review procedures. Further, management agrees that in conducting that investigation, we will have the full cooperation of Proterra Inc's personnel. If the subsequently discovered information is found to be of such a nature that (a) our reports or completion of our interim review procedures would have been affected if the information had been known as of the date of our reports or completion of our interim review procedures and (b) we believe that the reports or interim review procedures are currently being relied upon or are likely to be relied upon by someone who would attach importance to the information, appropriate steps will be taken by KPMG and expected from Proterra Inc to prevent further reliance on our reports or interim review procedures. Such steps include appropriate disclosures by Proterra Inc of the newly discovered facts and the impact to the consolidated financial statements.

**Our Responsibility to Communicate with Management**

We will report to management the following matters prior to the issuance of our audit reports:

- All material weaknesses and significant deficiencies in internal control over financial reporting identified during the Integrated Audit, in writing.

- All internal control deficiencies identified during the Integrated Audit and not previously communicated in writing by us or by others, including internal auditors or others within Proterra Inc.

**Audit Committee Responsibilities**

The audit committee is directly responsible for the appointment of KPMG as independent auditor, determining our compensation, and oversight of our Integrated Audit work, including resolution of disagreements between management and us regarding financial reporting. We understand that we report directly to the audit committee. The audit committee is responsible for preapproval of all audit and non-audit services provided by us.

**Management Responsibilities**

The management of Proterra Inc is responsible for the fair presentation, in accordance with U.S. generally accepted accounting principles, of the consolidated financial statements, including disclosures, schedules, and interim financial information and all representations contained therein. Management also is responsible for identifying and ensuring that Proterra Inc complies with the laws and regulations applicable to its activities, and



Proterra Inc
June 16, 2021
Page 7 of 13

for informing us of any known material violations of such laws and regulations. Management also is responsible for preventing and detecting fraud, including the design and implementation of programs and controls to prevent and detect fraud, for adopting sound accounting policies, and for establishing and maintaining effective internal control over financial reporting and procedures for financial reporting to maintain the reliability of the consolidated financial statements or interim financial information and to provide reasonable assurance against the possibility of misstatements that are material to the consolidated financial statements or interim financial information. Management is also responsible for informing us, of which it has knowledge, of all deficiencies in the design or operation of such controls.

The management of Proterra Inc is also responsible for:

- Accepting responsibility for the effectiveness of Proterra Inc's internal control over financial reporting;

- Evaluating the effectiveness of Proterra Inc's internal control over financial reporting using a suitable control criteria;

- Supporting its evaluation with sufficient evidence, including documentation; and

- Presenting a written assessment of the effectiveness of Proterra Inc's internal control over financial reporting as of Proterra Inc's fiscal year end.

The Integrated Audit does not relieve management or those charged with governance of their responsibilities. If management does not fulfill these responsibilities above, we cannot complete the Integrated Audit.

Management is responsible for making all financial records and relevant information available to the auditor and agrees that all records, documentation, and information we request in connection with our Integrated Audit will be made available to us, that all material information will be disclosed to us, and that we will have the full cooperation of Proterra Inc's personnel. At the conclusion of the engagement, management will provide us with a letter that confirms certain representations made during the audit, including specific inquiries of management required by the standards of the PCAOB about the representations embodied in the consolidated financial statements or interim financial information and the effectiveness of internal control over financial reporting. The responses to our inquiries, the written representations, and the results of audit tests, among other things, comprise the evidential matter we will rely upon in forming an opinion on the consolidated financial statements and the effectiveness of internal control over financial reporting.

Management is responsible for adjusting the annual consolidated financial statements and interim financial information to correct material misstatements relating to accounts or disclosures and for affirming to us in the representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the consolidated financial statements being reported upon, or the interim information being reviewed, taken as a whole.



Proterra Inc
June 16, 2021
Page 8 of 13

*Use of Internal Audit*

Management and the audit committee acknowledge and understand that internal auditors providing direct assistance to us will be allowed to follow our instructions and that personnel of Proterra Inc will not intervene in the work the internal auditor performs for us. Further, management and the audit committee acknowledge and understand that if, in our sole judgment, we believe the objectivity of internal auditors providing direct assistance to us has been impaired, we will be unable to use the work performed or planned to be performed.

## Dispute Resolution

Any dispute or claim between the parties shall be submitted first to non-binding mediation and if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution ("IICPR"). Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these dispute resolution procedures, including any contention that all or part of these procedures is invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. By operation of this provision, the parties agree to forgo litigation over such disputes in any court of competent jurisdiction.

Mediation shall take place at a location to be designated by the parties using Mediation Procedures of the IICPR, with the exception of paragraph 2 (Selecting the Mediator). Arbitration shall take place in New York, New York and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. Party-selected arbitrators shall be selected from the lists of neutrals maintained by either the IICPR or by JAMS, Inc., but the chair of the arbitration panel does not have to be selected from those specific lists. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in IICPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. For the sake of clarity, the preceding sentence is not intended to prohibit any claim for punitive damages with respect to the services provided under this Engagement Letter. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm, enforce or vacate any final award entered in arbitration, in any court of competent jurisdiction, provided that any party moving to enforce, confirm or vacate any such agreement or award, as the case may be, will file such motion under seal unless prohibited under applicable court rules. Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

## Other Matters

All disputes between the parties (whether based in contract, tort, statute, regulation, or otherwise and whether pending in court or in an arbitral forum) shall be governed by and construed in accordance with the substantive and procedural laws of the State of New York, including without limitation, its statutes of limitations, without regard to the conflict of laws provisions of New York or any other state or jurisdiction. In the event that any term or provision of this Engagement Letter shall be held to be invalid, void or unenforceable, then the remainder of the Engagement Letter shall not be affected, and each such term and provision shall be valid and enforceable to the fullest extent permitted by law.

This Engagement Letter shall serve as Proterra Inc's authorization for the use of e-mail and other electronic methods to transmit and receive information, including confidential information, between KPMG and Proterra Inc and between KPMG and outside specialists or other entities engaged by either KPMG or Proterra Inc. Proterra Inc acknowledges that e-mail travels over the public Internet, which is not a secure means of communication and, thus, confidentiality of the transmitted information could be compromised through no fault



Proterra Inc
June 16, 2021
Page 9 of 13

of KPMG. KPMG will employ commercially reasonable efforts and take appropriate precautions to protect the privacy and confidentiality of transmitted information.

In an effort to facilitate efficient communication between KPMG and Proterra Inc related to the Integrated Audit and to track engagement progress during the course of the engagement, KPMG may provide Proterra Inc with access to certain online tools. If such access is provided to Proterra Inc, Proterra Inc shall be responsible for: (i) its users' access and use of such tools (including the information its users may upload to such tools and compliance with all laws and regulations applicable to use or access by Proterra Inc's users outside of the United States (e.g. export control and data privacy laws and regulations)), and (ii) protecting the security of the account credentials in its possession for each user including timely informing KPMG when Proterra Inc individuals' access should be removed. Proterra Inc acknowledges that it shall not provide third parties (agents or contractors) with access to such tools without KPMG's written consent, use such tools as a system of record, nor use such tools other than for purposes of the audit engagement. The KPMG online tools include technology licensed from Microsoft, and Proterra Inc's use of such Microsoft technology is subject to the Microsoft End-User Terms available at http://www.kpmginfo.com/NDPPS/media/docs/144210-1A_NAS_MicrosoftEnd-UserTerms.pdf.

Except as permitted by law or as set forth in this paragraph, neither party shall acquire hereunder any right to use the name or logo of the other party or any part thereof, and any such use shall require the express written consent of the owner party. Any approved KPMG use of the Proterra Inc logo will comply with reasonable brand guidelines, if such guidelines are provided by Proterra Inc. Proterra Inc consents that KPMG may list Proterra Inc as a client in KPMG's internal and external marketing materials, without use of the Proterra logo, including KPMG websites and social media, indicating the general services rendered (e.g., "Proterra Inc is an Audit client of KPMG LLP"), which such consent may be revoked by Proterra Inc at any time in writing (email being sufficient). Further, for purposes of the services described in this Engagement Letter only, Proterra Inc hereby grants to KPMG a limited, revocable, non-exclusive, non-transferable, paid up and royalty-free license, without right of sublicense, to use all logos, trademarks and service marks of Proterra Inc solely for presentations or reports to Proterra Inc or for internal KPMG presentations and intranet sites.

Proterra Inc and KPMG acknowledge and agree that each shall comply with all applicable United States export control laws and regulations in the performance of each party's respective responsibilities under the Engagement Letter. Unless requested by KPMG to allow it to complete its audit, Proterra Inc will not provide KPMG, or grant KPMG access to, (a) information (including technical data or technology), verbally, electronically, or in hardcopy, (b) software or (c) hardware, that is controlled for export by the United States government under the Arms Export Control Act of 1976, Export Control Reform Act of 2018, the International Traffic in Arms Regulations ("ITAR"), Export Administration Regulations ("EAR"), Department of Energy Part 810 Regulations or Nuclear Regulatory Commission Part 110 Regulations, except information, software or hardware that is classified as EAR99 under the EAR ("Export Controlled Information"). If KPMG requests Export Controlled Information from Proterra Inc, Proterra Inc shall provide KPMG with notice of provision of Export Controlled Information at least 48 hours prior to providing such Export Controlled Information to KPMG.

KPMG is a limited liability partnership comprising both certified public accountants and certain principals who are not licensed as certified public accountants. Such principals may participate in the engagements to provide the services described in this Engagement Letter.

Proterra Inc will not solicit for employment, nor will Proterra Inc hire, any current or former partner or professional employee of KPMG or any of its affiliated member firms, in a financial reporting oversight role (as defined in the SEC independence rules) if such partner or professional employee previously participated in the Integrated Audit of Proterra Inc or quarterly review procedures until the applicable "cooling off" period under the SEC independence rules has expired and our written approval has been obtained. The "cooling off" period



Proterra Inc
June 16, 2021
Page 10 of 13

would commence with the latest date on which the individual participated in the Integrated Audit or quarterly review procedures and would expire upon the filing by Proterra Inc of its Form 10-K for the succeeding fiscal year.

KPMG, as an accounting firm, has an obligation to comply with applicable professional standards. Certain professional standards, including AICPA Code of Professional Conduct Section 1.700, "Confidential Client Information Rule," adopted by the American Institute of Certified Public Accountants and similar rules adopted by the boards of accountancy of many states, prohibit the disclosure of client confidential information without client consent, except in limited circumstances. KPMG represents to Proterra Inc that KPMG will treat Proterra Inc's confidential information in accordance with applicable professional standards.

KPMG may work with and use the services of other members of the international KPMG network of independent firms and entities controlled by, or under common control with, one or more KPMG member firms (together with KPMG, the "KPMG Firms") to provide services to Proterra Inc. The KPMG Firms, together with the entities comprising KPMG International, shall be referred to herein as the "KPMG Parties." In connection with the performance of services under this Engagement Letter, the KPMG Firms may, in their discretion, utilize the services of third party service providers within or outside of the United States to complete the services under this Engagement Letter. KPMG Parties and such third parties may have access to your confidential information from offshore locations. In addition, KPMG uses third party service providers within and outside of the United States to provide, at its direction, back-office administrative and clerical, or analytical services to KPMG and these third party service providers may in the performance of such services have access to your confidential information. In particular, KPMG's audit technologies, software productivity tools and certain technology infrastructure and, necessarily, your confidential information, may be hosted in cloud environments operated by KPMG Parties or such third party service providers. Any services performed by a KPMG Firm or third party service provider shall be performed in accordance with the terms of this Engagement Letter, including confidentiality obligations, but KPMG shall remain responsible to you for the performance of such services and KPMG shall be responsible for any KPMG Firm or third party service provider failure to comply with the obligations set forth herein applicable to KPMG hereunder. In addition, KPMG Parties may have access to certain of your information in respect to engagement acceptance and other professional responsibilities such as maintaining independence and performing conflict checks. KPMG represents that it has technical, legal and/or other safeguards, measures and controls in place to protect your confidential information from unauthorized disclosure or use.

You also understand and agree that the KPMG Parties, with the assistance of third parties as outlined above, may use all Proterra Inc's information for other purposes consistent with our professional standards, such as improving the delivery or quality of audit and other services or technology to you and to other clients, thought leadership projects, to allow you and other clients to evaluate various business transactions and opportunities, and for use in presentations to you, other clients and non-clients. When your information is used outside of the KPMG Parties or such third parties assisting them as outlined above, Proterra Inc will not be identified as the source of the information.

It may be necessary or convenient for Proterra Inc to use KPMG-owned or -licensed software, software agents, scripts, technologies, tools or applications (collectively "KPMG Technology") designed to extract data from Proterra Inc's electronic books and records systems or other systems (collectively, "Systems"), in connection with the audit. Proterra Inc understands and agrees that it is solely responsible for following appropriate change management policies, processes and controls relating to use of such technology (including without limitation appropriate backup of Proterra Inc's information and Systems) (collectively, "Change Management Processes") before such KPMG Technology is utilized to extract data from the Systems. In the event Proterra Inc fails to use such Change Management Processes or if such Change Management Processes prove to be inadequate, Proterra Inc acknowledges that the Systems and/or KPMG Technology may not function as intended. In



Proterra Inc
June 16, 2021
Page 11 of 13

consideration of the foregoing, KPMG hereby grants Proterra Inc the right to use KPMG Technology solely to facilitate Proterra Inc's necessary or convenient provision of information to KPMG in connection with the audit, and this grant does not extend to any other purposes or use by third parties outside of your organization without our prior written approval, provided that third party contractors of Proterra Inc having a need to know in order to perform their services to Proterra Inc are permitted to use KPMG Technology to the extent necessary for such parties to perform such services, so long as Proterra Inc exercises the same level of care to protect such KPMG Technology and KPMG confidential Information as it uses to protect its own confidential information, but in no event less than reasonable care. Other than as expressly permitted hereby, Proterra Inc agrees to keep KPMG Technology confidential, using no less than a reasonable standard of care to protect it from unauthorized disclosure or use, and to notify KPMG of any legal compulsions to disclose it, in accordance with the provisions governing legal demand of confidential information which appear in this engagement letter with respect to which the KPMG Technology is being used, *mutatis mutandis*. If the KPMG Technology is subject to any third party license terms and conditions before being provided to Proterra Inc, Proterra Inc may be required to accept such terms and conditions before using the KPMG Technology, in which case KPMG will provide such license terms and conditions to Proterra Inc in writing before Proterra Inc elects to use the KPMG Technology.

Except as otherwise provided for in this Engagement Letter, neither party may assign, transfer or delegate any of its rights, obligations, claims or proceeds from claims arising under or relating to this Engagement Letter (including by operation of law, in which case the assigning party will, to the extent legally permissible, give as much advance written notice as is reasonably practicable thereof) without the prior written consent of the other party, such consent not to be unreasonably withheld. Any assignment in violation hereof shall be null and void.

Proterra Inc agrees to provide prompt notification if Proterra Inc or any of its subsidiaries whose financial statements are being audited by KPMG, currently are, become subject to, or were previously but are no longer subject to, the laws of a foreign jurisdiction that require regulation of any securities issued by Proterra Inc or such subsidiary. Such situations could include but are not limited to the listing or selling of securities on a foreign securities market or exchange or the submission of filings to a foreign securities regulator.

For the purpose of complying with SEC and PCAOB independence rules, Proterra Inc agrees to provide to KPMG, in connection with each audit and interim review engagement, a complete and accurate legal entity listing and a listing of other affiliated entities not included on the legal entity listing (e.g., parent company, entities under common control, joint ventures, equity method investments, and others). Proterra Inc further agrees to provide a listing of beneficial owners (known through reasonable inquiry) of equity securities of Proterra Inc and its affiliates where such beneficial owners have significant influence over Proterra Inc. Proterra Inc will also provide a complete and accurate listing of affiliated persons, which includes officers, members of the board of directors, and persons in financial reporting oversight roles[c]. Proterra Inc also agrees to provide information to KPMG about acquisitions, investments or other transactions that may result in changes to the legal entity listing, the listing of other affiliated entities, not included on the legal entity listing, or the listing of

---

[c] The term "financial reporting oversight role" means a role in which a person is in a position to or does exercise influence over the contents of the financial statements or anyone who prepares them, such as when the person is a member of the board of directors or similar management or governing body, chief executive officer, president, chief financial officer, chief operating officer, general counsel, chief accounting officer, controller, director of internal audit, director of financial reporting, treasurer, or any equivalent position. It also includes individuals in those roles at subsidiaries or investees when the financial statements they oversee are material to the consolidated financial statements.



Proterra Inc
June 16, 2021
Page 12 of 13

beneficial owners with significant influence, prior to the effective date of the acquisition, investment or other transaction.

*Access to Audit Documentation by Regulators and Others*

The audit documentation for this engagement is the property of KPMG. If KPMG receives a subpoena; other validly issued administrative, judicial, government or investigative regulatory demand or request; or other legal process requiring it to disclose Proterra Inc's confidential information ("Legal Demand"), KPMG shall, unless prohibited by law or such Legal Demand, provide prompt written notice to Proterra Inc of such Legal Demand in order to permit it to seek a protective order. So long as KPMG gives notice as provided herein, KPMG shall be entitled to comply with such Legal Demand to the extent required by law, subject to any protective order or the like that may have been entered in the matter. In the event KPMG is requested or authorized by Proterra Inc, or is required by law, rule, regulation or Legal Demand in a proceeding or investigation to which KPMG is not a named party or respondent, to produce KPMG's documents or personnel as witnesses or for interviews, or otherwise to make information relating to the service under the Engagement Letter available to a third party, or Proterra Inc, Proterra Inc shall reimburse KPMG for its professional time, at its then-current standard hourly rates, and expenses, including reasonable attorneys' fees and expenses, incurred in producing documents or personnel or providing information pursuant to such requests, authorizations or requirements.

We may be requested to make certain audit documentation available to the PCAOB and state, federal, and foreign regulators pursuant to authority provided by law or regulation. If so requested, access to such audit documentation will be provided and KPMG will also respond to written and oral questions related to our audit, if received. Furthermore, the PCAOB and state, federal, and foreign regulators may obtain copies of selected audit documentation. The PCAOB and such regulators may intend, or decide, to distribute the copies or information so received to others, including the SEC and other government agencies. We agree to communicate to you on a timely basis (a) receipt of a notification of inspection by the PCAOB of the audit covered by this Engagement Letter and the related requests for access to the audit documentation and (b) when the PCAOB desires direct contact with members of the audit committee.

*Reports, Services and Associated Fees*

Appendix I to this Engagement Letter lists the reports we will issue and services we will provide as part of this engagement and our fees for professional services to be performed under this Engagement Letter.

In addition, fees for any special audit-related projects, such as research and/or consultation on special business or financial issues, will be billed separately from the audit fees for professional services set forth in Appendix I and may be subject to written arrangements supplemental to those in this Engagement Letter.

\* \* \* \* \* \* \*

Our engagement herein is for the provision of annual audit services for the consolidated financial statements for the periods described in Appendix I, and it is understood that such services are provided as a single annual engagement. Pursuant to our arrangement as reflected in this Engagement Letter, we will provide the services set forth in Appendix I as a single engagement for each of Proterra Inc's subsequent fiscal years until either the audit committee or we terminate this agreement or mutually agree to the modification of its terms. The fees for each subsequent year will be annually subject to negotiation and approval by the audit committee.

This Engagement Letter and any exhibits, attachments and appendices hereto, and amendments thereto agreed in writing by the parties, shall constitute the entire agreement between KPMG and Proterra Inc with respect to the subject matter hereof and thereof, and supersede all other previous oral and written representations, understandings or agreements relating to the subject matter of this agreement.



Proterra Inc
June 16, 2021
Page 13 of 13

We shall be pleased to discuss this Engagement Letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this Engagement Letter. Please sign and return it to us to indicate your acknowledgement of, and agreement with, the arrangements for our Integrated Audit of the consolidated financial statements including our respective responsibilities.

Very truly yours,

KPMG LLP

Dennis V. Rothman
*Partner*

cc:  Amy Ard, *Chief Financial Officer*


ACCEPTED


Proterra Inc

_____
Authorized Signature
Constance E. Skidmore

_____
Audit Committee Chair
Title

_____
June 16, 2021
Date



**Appendix I**

**Reports, Services and Associated Fees**

Based upon our discussions with and representations of management, our fees for services we will perform are estimated as follows:

Integrated Audit:

> Audit of consolidated balance sheets of Proterra Inc as of December 31, 2021 and 2020, the related consolidated statements of operations, stockholders' equity, and cash flows for each of the years in the three-year period ended December 31, 2021 and the related notes to the financial statements and audit of internal control over financial reporting as of December 31, 2021      $1,700,000

Quarterly review services:

> Quarter ended March 31, 2021
> Quarter ended June 30, 2021      included in audit fee
> Quarter ended September 30, 2021

Consent to include or incorporate by reference our reports on the consolidated financial statements and schedules and internal control over financial reporting in a filing under the Securities Act of 1933 or an exempt offering      $20,000

***Non-Audit Services***

> KPMG will provide a subscription to KPMG's Accounting Research Online, an online library of accounting, auditing and financial reporting literature and related guidance and the automated Accounting Disclosure Checklist, which is a filterable, web-based tool to identify required financial statement disclosures      included in audit fee

> KPMG will provide access to KPMG public training events (e.g., KPMG conferences, seminars, share forums, self-study web-based training) on accounting, industry or technical topics. Fees for training services, if any, will be agreed in advance

The above estimates are based on the level of experience of the individuals who will perform the services. In addition, expenses are billed for reimbursement as incurred. Expenses for items such as travel, telephone and postage are estimated not to exceed $25,000. Circumstances encountered during the performance of these services that warrant additional time or expense could cause us to be unable to deliver them within the above estimates. We will endeavor to notify you of any such circumstances as they are assessed.

We may incur time and expenses for services associated with new or forthcoming accounting or auditing requirements (Additional Services). For example, we may conduct discussions on



the potential effect a new requirement may have on Proterra Inc, help evaluate available transition options, perform gap analysis, provide feedback on Proterra Inc's assessment in relation to the adoption of the new requirement's impact on financial statements, income taxes, systems and processes, people, etc., review internal control considerations, perform procedures to audit disclosures required by Staff Accounting Bulletin No. 74, review draft notes and accounting policies, provide training or assist as Proterra Inc develops training for new accounting standard requirements (or otherwise describe applicable topic of the training) in relation to general knowledge and understanding of technical aspects of the standard (or other topic) or perform a real time system implementation assessment. We may also perform Additional Services to assess the accounting for discontinued operations of a subsidiary, perform special audit-related projects such as research and/or consultations on special business or financial issues, review registration statements and other offering documents, and issue comfort letters. Fees for these services will be billed at 60% of our standard rates applicable at the time the services are provided.

It is understood and agreed that KPMG's Additional Services may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Proterra Inc. KPMG will not perform management functions or make decisions for Proterra Inc.

In connection with KPMG's provision of Additional Services under the Engagement Letter, Proterra Inc agrees that Proterra Inc, and not KPMG, shall perform the following functions: (i) make all management decisions and perform all management functions; (ii) designate an individual who possesses suitable skill, knowledge and experience, preferably within senior management, to oversee such services, and to evaluate the adequacy and results of such services; (iii) accept responsibility for the results of such services; and (iv) establish and maintain internal controls over the processes with which such services are concerned, including monitoring on-going activities

Professional standards prohibit us from performing services for audit clients where the fee for such services is contingent, or has the appearance of being contingent, upon the results of such services.

Professional standards also indicate that independence may be impaired if fees for professional services are outstanding for an extended period of time; therefore, it is important that our fees be paid promptly when billed.  If a situation arises in which it may appear that our independence would be questioned because of past due unpaid fees, we may be prohibited from issuing our audit report and associated consent.

Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to the client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges which may be charged to clients.

All fees, charges and other amounts payable to KPMG under the Engagement Letter do not include any sales, use, excise, value added, income or other applicable taxes, tariffs or duties, payment of which shall be Proterra Inc's sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

# **Exhibit C-2**

**Audit Engagement Letter Dated June 17, 2022**



KPMG LLP
Mission Towers I
Suite 600
3975 Freedom Circle
Santa Clara, CA 95054

Telephone    +1 408 367 5764
Fax          +1 408 877 3034
kpmg.com

June 17, 2022

Proterra Inc
1815 Rollins Road
Burlingame, California 94010

Attention: Ms. Constance Skidmore, *Audit Committee Chair*

This letter amends our engagement letter dated June 16, 2021, confirming our understanding to provide professional audit services to Proterra Inc by substituting the attached Appendix I for the Appendix I originally attached to our engagement letter and amending its terms as noted below.

As set forth in our engagement letter, we will issue a written report upon completion of our integrated audit. Our report will be addressed to the stockholders and the board of directors of Proterra Inc and a draft will be provided and reviewed with the audit committee prior to issuance.

*Quarterly Review Services*

The parties agree that the first paragraph under the "Quarterly Review Services" section in the engagement letter shall be revised in its entirety, as follows: "We will review the attached condensed consolidated balance sheets of Proterra Inc, as set forth in Appendix I, and the related condensed consolidated statements of operations, comprehensive loss, stockholders' equity and cash flows for the quarterly and year-to-date periods, which are to be included in the quarterly reports (Form 10-Q) proposed to be filed by Proterra Inc under the Securities Exchange Act of 1934. We will also conduct a review of Proterra Inc's fourth quarter interim financial information if the selected quarterly financial data specified by Item 302 of Regulation S-K is required to be included in the annual report (Form 10-K) proposed to be filed by Proterra Inc under the Securities Exchange Act of 1934."

*Audit Committee Responsibilities*

The audit committee is also responsible for approving any in-process permissible services that are being provided by KPMG or any KPMG member firms to any acquired entities that are newly consolidated affiliates. To the extent that the in-process services being performed at the newly consolidated affiliates are consistent with permissible services that KPMG or KPMG member firms have been approved to perform for Proterra Inc*,* the continuation of such in-process services are considered permissible and pre-approved by the audit committee and will be reported to the full audit committee in a timely manner.

*Other Matters*

In an effort to facilitate efficient communication between KPMG and Proterra Inc related to the Integrated Audit and to track engagement progress during the course of the engagement, KPMG may provide Proterra Inc with access to a service coordination tool known as KPMG Clara for clients. If such access is provided to Proterra Inc, the provisions set forth in Appendix II shall apply to such access.

Proterra Inc agrees that KPMG may reference Proterra Inc as a client in its marketing materials, including KPMG websites and social media, indicating the general services rendered (e.g., "Proterra Inc is an audit client of KPMG LLP").

KPMG LLP, a Delaware limited liability partnership and a member firm of
the KPMG global organization of independent member firms affiliated with
KPMG International Limited, a private English company limited by guarantee.



Proterra Inc
June 17, 2022
Page 2 of 4

The parties agree that the disclosure in the engagement letter referencing "back-office administrative and clerical services" is revised to reference "back-office administrative and clerical, or analytical services."

Except for the sentence contained in the "Other Matters" section of the engagement letter regarding KPMG Firms utilizing, in their discretion, the services of third party service providers within or outside of the United States to complete the services under the engagement letter, all other references to "KPMG Firms" contained in the engagement letter are replaced by the term "KPMG Parties." The term "KPMG Parties" shall mean the KPMG Firms, together with the entities comprising KPMG International.

In the event that affiliates of Proterra Inc located outside of the United States separately engage KPMG Firms to perform audit related services, for example for purposes of statutory audits, we may share Proterra Inc's and/or its affiliates' confidential information with such KPMG Firms for purposes of their services for such affiliates.

For purposes of clarification, the paragraph contained in the "Other Matters" section of the engagement letter which states that KPMG Parties and third party service providers may have access to your confidential information is revised to include the following and is subject to the representations and other protective provisions set forth in such paragraph: "In particular, KPMG's audit technologies, software productivity tools and certain technology infrastructure and, necessarily, your confidential information, may be hosted in cloud environments operated by KPMG Parties or such third party service providers. In addition, KPMG Parties may have access to certain of your information in respect to engagement acceptance and other professional responsibilities such as maintaining independence and performing conflict checks."

The parties further agree that the provision contained in the engagement letter that addresses the use of Proterra Inc's information for other purposes shall be revised in its entirety to read as follows: "You also understand and agree that the KPMG Parties, with the assistance of third parties as outlined in the engagement letter, may use all Proterra Inc's information for other purposes consistent with our professional standards, such as improving the delivery or quality of audit and other services or technology to you and to other clients, thought leadership projects, to allow you and other clients to evaluate various business transactions and opportunities, and for use in presentations to you, other clients and non-clients. When your information is used outside of the KPMG Parties or such third parties assisting them as outlined in the engagement letter, Proterra Inc will not be identified as the source of the information."

Except as otherwise provided for in the engagement letter, neither party may assign, transfer or delegate any of its rights, obligations, claims or proceeds from claims arising under or relating to the engagement letter (including by operation of law, in which case the assigning party will, to the extent legally permissible, give as much advance notice as is reasonably practicable thereof) without the prior written consent of the other party, such consent not to be unreasonably withheld. Any assignment in violation hereof shall be null and void.

It may be necessary or convenient for Proterra Inc to use KPMG-owned or licensed software, software agents, scripts, technologies, tools or applications (collectively "KPMG Technology") designed to extract data from Proterra Inc's electronic books and records systems or other systems (collectively, "Systems"), in connection with the audit. Proterra Inc understands and agrees that it is solely responsible for following appropriate change management policies, processes and controls relating to use of such technology (including without limitation appropriate backup of Proterra Inc's information and Systems) (collectively, "Change Management Processes") before such KPMG Technology is utilized to extract data from the Systems. In the event Proterra Inc fails to use such Change Management Processes or if such Change Management Processes prove to be inadequate, Proterra Inc acknowledges that the Systems and/or KPMG Technology may not function as intended. In consideration of the foregoing, KPMG hereby grants Proterra Inc the right to use KPMG Technology solely to



Proterra Inc
June 17, 2022
Page 3 of 4

facilitate Proterra Inc's necessary or convenient provision of information to KPMG in connection with the audit, and this grant does not extend to any other purposes or use by third parties outside of your organization without our prior written approval, provided that third party contractors of Proterra Inc having a need to know in order to perform their services to Proterra Inc are permitted to use KPMG Technology to the extent necessary for such parties to perform such services, so long as Proterra Inc exercises the same level of care to protect such KPMG Technology and KPMG confidential information as it uses to protect its own confidential information, but in no event less than reasonable care. Other than as expressly permitted hereby, Proterra Inc agrees to keep KPMG Technology confidential, using no less than a reasonable standard of care to protect it from unauthorized disclosure or use, and to notify KPMG of any legal compulsions to disclose it, in accordance with the provisions governing legal demand of confidential information which appear in the engagement letter with respect to which the KPMG Technology is being used, mutatis mutandis. If the KPMG Technology is subject to any third party license terms and conditions before being provided to Proterra Inc, Proterra Inc may be required to accept such terms and conditions before using the KPMG Technology, in which case KPMG will provide such license terms and conditions to Proterra Inc in writing before Proterra Inc elects to use the KPMG Technology.

The parties further agree that the paragraph in the engagement letter that references legal entity listings shall be revised in its entirety, as follows: "Proterra Inc agrees to provide prompt notification if Proterra Inc or any of its subsidiaries whose financial statements are being audited by KPMG, currently are, become subject to, or were previously but are no longer subject to, the laws of a foreign jurisdiction that require regulation of any securities issued by Proterra Inc or such subsidiary. Such situations could include but are not limited to the listing or selling of securities on a foreign securities market or exchange or the submission of filings to a foreign securities regulator. For the purpose of complying with SEC and PCAOB independence rules, Proterra Inc agrees to provide to KPMG, in connection with each audit and interim review engagement, a complete and accurate legal entity listing and a listing of other affiliated entities not included on the legal entity listing (e.g., parent company, entities under common control, joint ventures, equity method investments, and others). Proterra Inc further agrees to provide a listing of beneficial owners (known through reasonable inquiry) of equity securities of Proterra Inc and its affiliates where such beneficial owners have significant influence over Proterra Inc. Proterra Inc will also provide a complete and accurate listing of affiliated persons, which includes officers, members of the board of directors, and persons in financial reporting oversight roles. Proterra Inc also agrees to provide information to KPMG about acquisitions, investments or other transactions that may result in changes to the legal entity listing, the listing of other affiliated entities, not included on the legal entity listing, or the listing of beneficial owners with significant influence, prior to the effective date of the acquisition, investment or other transaction."

The attached Appendix I lists the services to be rendered and related fees to provide each specified service for the identified time period. Except as specified in this letter and in the Appendix I attached to this letter, all provisions of the aforementioned engagement letter remain in effect until either the audit committee or we terminate this agreement or mutually agree to the modification of its terms.

* * * * * * *



Proterra Inc
June 17, 2022
Page 4 of 4

We shall be pleased to discuss this letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this letter. Please sign in the space provided and return the copy to us.

Very truly yours,

KPMG LLP

Dennis V. Rothman
*Partner*

Enclosures

cc:  Karina Padilla, Chief Financial Officer

<u>ACCEPTED</u>

Proterra Inc

_____
Authorized Signature


Chief Financial Officer
_____
Title


07/13/2022
_____
Date

Audit Committee Chair

    7/14/2022

  Date

**Appendix I**

**Reports, Services and Associated Fees**

Based upon our discussions with and representations of management, our fees for services we will perform are estimated as follows:

Integrated Audit:

      Audit of consolidated balance sheets of Proterra Inc as of December 31, 2022 and 2021, the related consolidated statements of operations, comprehensive loss and stockholders' equity, and cash flows for each of the years in the three-year period ended December 31, 2022 and the related notes to the financial statements and audit of internal control over financial reporting as of December 31, 2022       $1,960,000

Quarterly Review Procedures:

      Quarter ended March 31, 2022

      Quarter ended June 30, 2022

      Quarter ended September 30, 2022       included in audit fee

      Consent to include or incorporate by reference our reports on the consolidated financial statements in a filing under the Securities Act of 1933 or an exempt offering       $25,000 each

**Non-Audit Services**

      KPMG will provide a subscription to KPMG's Accounting Research Online, an online library of accounting, auditing and financial reporting literature and related guidance or the automated Accounting Disclosure Checklist, which is a filterable, web-based tool to identify required financial statement disclosures       included in audit fee

The above estimates are based on the level of experience of the individuals who will perform the services. In addition, expenses are billed for reimbursement as incurred. Expenses for items such as travel, telephone and postage are estimated not to exceed $25,000. Circumstances encountered during the performance of these services that warrant additional time or expense could cause us to be unable to deliver them within the above estimates. We will endeavor to notify you of any such circumstances as they are assessed.

Professional standards prohibit us from performing services for audit clients where the fee for such services is contingent, or has the appearance of being contingent, upon the results of such services.

Professional standards also indicate that independence may be impaired if fees for professional services are outstanding for an extended period of time; therefore, it is important that our fees be paid promptly when billed. If a situation arises in which it may appear that our independence would be questioned

because of past due unpaid fees, we may be prohibited from issuing our audit report and associated consent.

Where KPMG is reimbursed for expenses, KPMG will bill Proterra Inc for the amount it paid and will not add any markup to the expense. After such expenses are incurred, KPMG may receive rebates or incentive payments based on its aggregate purchases, which may include expenses reimbursed by Proterra Inc in addition to other clients. Such rebates are not credited back to Proterra Inc but are used to reduce KPMG's overhead.

All fees, charges and other amounts payable to KPMG under the engagement letter do not include any sales, use, excise, value added, income or other applicable taxes, tariffs or duties, payment of which shall be Proterra Inc's sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

**Appendix II**

**KPMG CLARA FOR CLIENTS**

**TERMS OF USE**

KPMG Clara for clients ("KPMG Clara") is a service coordination tool provided by KPMG to Proterra Inc (the "Company") that allows a group of users to access a virtual repository for the purposes of sharing information, engaging in online discussions and using KPMGI Content (as defined below). These terms of use (the "Terms") are between the Company and KPMG and shall govern the Company's use of KPMG Clara and the KPMGI Content. If Company is comprised of itself and other legal entities, the Company agrees that (a) it has the authority to bind all of the entities, in which case the term "Company" shall refer to such entities, and (b) these Terms shall govern the Company's and such entities' use of KPMG Clara and the KPMGI Content. In the event of any conflict or inconsistency between these Terms and the contract(s) between KPMG and Company to which these Terms or KPMG Clara relates, these Terms shall govern with respect to Company's use of KPMG Clara only. "KPMGI Content" shall mean any content posted on KPMG Clara and identified as being provided by or for KPMG International Services Limited, KPMG International Limited, or KPMG International Cooperative.

1. Company and its Authorized Users (as defined below) may access and use KPMG Clara solely in furtherance of KPMG's engagement(s) with the Company. KPMG Clara is not intended for use as a document retention system and should not be regarded as a system of record. Company should download any information from KPMG Clara it wishes to retain for its files. Access to information within KPMG Clara may be removed or become unavailable within a reasonable time once the corresponding engagement is completed. "Authorized User" means Company's employees and other personnel authorized by Company and approved by KPMG to access and use KPMG Clara. Company shall ensure that all Authorized Users who access and use KPMG Clara or the KPMGI Content comply with these Terms. Company shall promptly notify KPMG about any Authorized User who should no longer have access to KPMG Clara or improper access to the password of an Authorized User.

2. Company may not: (a) copy, translate, modify, adapt or create derivative works from KPMG Clara, or KPMGI Content; (b) rent, lease, lend, pledge, or directly or indirectly transfer or distribute KPMG Clara or KPMGI Content to any third party; or (c) use KPMG Clara to upload, store, post, email, transmit or otherwise make available any content that is unlawful and/or infringes any intellectual property rights or data protection, privacy or other rights of any other party. Company is responsible for the information its users may upload to such tools and compliance with all laws and regulations applicable to use or access by Company's users outside the U.S. (e.g. export control and data privacy laws and regulations). Except for the license granted herein to Company, Company acquires no right or interest of any kind in or to KPMG Clara or any KPMGI Content.

3. Technical factors such as bandwidth, network configurations, and browser settings can affect KPMG Clara's speed and accessibility. KPMG does not guarantee the continuous, uninterrupted or error-free operability of KPMG Clara, or compatibility with Company's computer browser or any other part of its computing systems. Access to KPMG Clara may be suspended or limited at any time, and content may be unavailable. KPMG is not responsible for the content of any third-party websites, or hyperlinks which may be featured on KPMG Clara.

4. If KPMG's relationship with Company terminates for any reason, all further access to and use of KPMG Clara by Company and its Authorized Users must immediately cease and KPMG may deactivate or delete related user accounts, unless otherwise required by applicable law or professional standards to maintain such accounts. KPMG reserves the right to terminate Company's access to KPMG Clara for any reason.

5.  EXCEPT AS EXPRESSLY STATED IN THESE TERMS, KPMG CLARA IS MADE AVAILABLE ON AN "AS-IS", "AS AVAILABLE" BASIS WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED.

6.  Refer to KPMG's Privacy Statement (https://home.kpmg/us/en/home/misc/privacy.html) for information about how KPMG collects, uses, and protects personal data.

## **Exhibit C-3**

**Audit Engagement Letter Dated July 10, 2023**



KPMG LLP
Mission Towers I
Suite 100, 3975 Freedom Circle Drive
Santa Clara, CA 95054

Telephone    +1 408 367 5764
Fax          +1 408 877 3034
kpmg.com

July 10, 2023

Proterra Inc
1815 Rollins Road
Burlingame, California 94010

Attention: Ms. Constance Skidmore, Audit Committee Chair

This letter amends our engagement letter dated June 16, 2021, confirming our understanding to provide professional audit services to Proterra Inc by substituting the attached Appendix I for the Appendix I originally attached to our engagement letter and amending its terms as noted below.

As set forth in our engagement letter, we will issue written reports upon completion of our integrated audit. Our reports will be addressed to the stockholders and the board of directors of Proterra Inc and a draft will be provided and reviewed with the audit committee prior to issuance.

*Quarterly Review Services*

The parties agree that the first paragraph under the "Quarterly Review Services" section in the engagement letter shall be revised in its entirety, as follows: "We will review the condensed consolidated balance sheets of Proterra Inc, as set forth in Appendix I, and the related condensed consolidated statements of operations, comprehensive loss, stockholders' equity and cash flows for the quarterly and year-to-date periods, which are to be included in the quarterly reports (Form 10-Q) proposed to be filed by Proterra Inc under the Securities Exchange Act of 1934. We will also conduct a review of Proterra Inc's fourth quarter interim financial information if the selected quarterly financial data specified by Item 302 of Regulation S-K is required to be included in the annual report (Form 10-K) proposed to be filed by Proterra Inc under the Securities Exchange Act of 1934."

*Audit Committee Responsibilities*

The audit committee is also responsible for approving any in-process permissible services that are being provided by KPMG or any KPMG member firms to any acquired entities that are newly consolidated affiliates. To the extent that the in-process services being performed at the newly consolidated affiliates are consistent with permissible services that KPMG or KPMG member firms have been approved to perform for Proterra Inc, the continuation of such in-process services are considered permissible and pre-approved by the audit committee and will be reported to the full audit committee in a timely manner.

**Other Matters**

In an effort to facilitate efficient communication between KPMG and Proterra Inc related to the Integrated Audit and to track engagement progress during the course of the engagement, KPMG may provide Proterra Inc with access to certain service coordination tools (e.g., KPMG Clara for clients). If such access is provided to Proterra Inc, the provisions set forth in Appendix II shall apply to such access.

Proterra Inc agrees that KPMG may reference Proterra Inc as a client in its marketing materials, including KPMG websites and social media, indicating the general services rendered (e.g., "Proterra Inc is an audit client of KPMG LLP").

KPMG LLP is a Delaware limited liability partnership and the U.S. member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ("KPMG International"), a Swiss entity.



Proterra Inc
July 10, 2023
Page 2 of 4

The paragraph contained in the "Other Matters" section of the engagement letter which states that KPMG Parties and third party service providers may have access to your confidential information is revised as follows: "KPMG may work with and use the services of other members of the international KPMG network of independent firms and entities controlled by, or under common control with, one or more KPMG member firms (together with KPMG, the "KPMG Firms") to provide services to Proterra Inc. The KPMG Firms, together with the entities comprising KPMG International, shall be referred to herein as the "KPMG Parties." In connection with the performance of services under the Engagement Letter, the KPMG Firms may, in their discretion, utilize the services of third-party service providers within or outside of the United States to complete the services under the Engagement Letter. KPMG Parties and such third parties may have access to your confidential information from offshore locations. In the event that affiliates of Proterra Inc located outside of the United States separately engage KPMG Firms to perform audit related services, for example for purposes of statutory audits, we may share Proterra Inc's and/or its affiliates' confidential information with such KPMG Firms for purposes of their services for such affiliates. In addition, KPMG uses third party service providers within and outside of the United States to provide, at its direction, back-office administrative and clerical, or analytical services to KPMG and these third-party service providers may in the performance of such services have access to your confidential information. In particular, KPMG's audit technologies, software productivity tools and certain technology infrastructure and, necessarily, your confidential information, may be hosted in cloud environments operated by KPMG Parties or such third-party service providers. In addition, KPMG Parties may have access to certain of your information in respect to engagement acceptance and other professional responsibilities such as maintaining independence and performing conflict checks. KPMG represents that it has technical, legal and/or other safeguards, measures and controls in place to protect your confidential information from unauthorized disclosure or use; and KPMG shall remain responsible to you for maintaining the confidentiality of your confidential information. KPMG shall remain responsible to Proterra Inc for the performance of such services by any KPMG Parties or other third parties, including obligations of confidentiality, to the same extent KPMG is obligated under the terms of the Engagement Letter."

The parties further agree that the provision contained in the engagement letter that addresses the use of Proterra Inc's information for other purposes shall be revised in its entirety to read as follows: "You also understand and agree that the KPMG Parties, with the assistance of third parties as outlined in the engagement letter, may use all Proterra Inc's information to (i) analyze trends, perform comparative analysis, and develop and improve benchmarks; (ii) develop and improve technology and services; and (iii) improve other services to Proterra Inc and to provide insights to Proterra Inc about its business. Such information will not be disclosed to third parties other than third parties as outlined above assisting KPMG Parties with these uses unless such information is in an aggregated or anonymized format that does not identify Proterra Inc."

Except as otherwise provided for in the engagement letter, neither party may assign, transfer or delegate any of its rights, obligations, claims or proceeds from claims arising under or relating to the engagement letter (including by operation of law, in which case the assigning party will, to the extent legally permissible, give as much advance written notice as is reasonably practicable thereof) without the prior written consent of the other party, such consent not to be unreasonably withheld. Any assignment in violation hereof shall be null and void.

It may be necessary or convenient for Proterra Inc to use KPMG-owned or licensed software, software agents, scripts, technologies, tools or applications (collectively "KPMG Technology") designed to extract data from Proterra Inc's electronic books and records systems or other systems (collectively, "Systems"), in connection with the audit, or to otherwise facilitate KPMG's services hereunder. Proterra Inc understands and agrees that it is solely responsible for following appropriate change management policies, processes and controls relating to use of such technology (including without limitation appropriate backup of Proterra Inc's information and Systems) (collectively, "Change Management Processes") before any such KPMG Technology is utilized to extract data from the Systems. In the event Proterra Inc fails to use such Change Management Processes or if



Proterra Inc
July 10, 2023
Page 3 of 4

such Change Management Processes prove to be inadequate, Proterra Inc acknowledges that the Systems and/or KPMG Technology may not function as intended. In consideration of the foregoing, KPMG hereby grants Proterra Inc the right to use KPMG Technology solely to facilitate Proterra Inc's necessary or convenient provision of information to KPMG in connection with the audit, or to otherwise facilitate KPMG's services hereunder, and this grant does not extend to any other purposes or use by third parties outside of your organization without our prior written approval, provided that third party contractors of Proterra Inc having a need to know in order to perform their services to Proterra Inc are permitted to use KPMG Technology to the extent necessary for such parties to perform such services, so long as Proterra Inc exercises the same level of care to protect such KPMG Technology and KPMG confidential Information as it uses to protect its own confidential information, but in no event less than reasonable care. Other than as expressly permitted hereby, Proterra Inc agrees to keep KPMG Technology confidential, using no less than a reasonable standard of care to protect it from unauthorized disclosure or use, and to notify KPMG of any legal compulsions to disclose it, in accordance with the provisions governing legal demand of confidential information which appear in the engagement letter with respect to which KPMG Technology is being used, *mutatis mutandis*. KPMG Technology is not intended to be used as a system of record, repository, or hosting service, and Proterra Inc acknowledges that its access to KPMG Technology and/or information contained therein may be removed within a reasonable period of time (no less frequently than annually) following the conclusion of the services to which such provision of access to KPMG Technology relates. Proterra Inc may not redistribute, reproduce (except as necessary to run), modify, commercialize, allow third parties to access (except as permitted above or as otherwise authorized by KPMG in writing), or reverse engineer or decompile (except where such rights cannot be limited by applicable law) KPMG Technology. KPMG Technology is provided on an "as is", "as available" basis. If KPMG Technology is subject to any third-party license terms and conditions, then before being provided to Proterra Inc, Proterra Inc may be required to accept such terms and conditions before using KPMG Technology, in which case KPMG will provide such license terms and conditions to Proterra Inc in writing before Proterra Inc elects to use KPMG Technology.

The parties further agree that the paragraph in the engagement letter that references legal entity listings shall be revised in its entirety, as follows: "Proterra Inc agrees to provide prompt notification if Proterra Inc or any of its subsidiaries whose financial statements are being audited by KPMG, currently are, become subject to, or were previously but are no longer subject to, the laws of a foreign jurisdiction that require regulation of any securities issued by Proterra Inc or such subsidiary. Such situations could include but are not limited to the listing or selling of securities on a foreign securities market or exchange or the submission of filings to a foreign securities regulator. For the purpose of complying with SEC and PCAOB independence rules, Proterra Inc agrees to provide to KPMG, in connection with each audit and interim review engagement, a complete and accurate legal entity listing and a listing of other affiliated entities not included on the legal entity listing (e.g., parent company, entities under common control, joint ventures, equity method investments, and others). Proterra Inc further agrees to provide a listing of beneficial owners (known through reasonable inquiry) of equity securities of Proterra Inc and its affiliates where such beneficial owners have significant influence over Proterra Inc. Proterra Inc will also provide a complete and accurate listing of affiliated persons, which includes officers, members of the board of directors, and persons in financial reporting oversight roles. Proterra Inc also agrees to provide information to KPMG about acquisitions, investments or other transactions that may result in changes to the legal entity listing, the listing of other affiliated entities, not included on the legal entity listing, or the listing of beneficial owners with significant influence, prior to the effective date of the acquisition, investment or other transaction."



Proterra Inc
July 10, 2023
Page 4 of 4

The attached Appendix I lists the services to be rendered and related fees to provide each specified service for the identified time period. Except as specified in this letter and in the Appendix I attached to this letter, all provisions of the aforementioned engagement letter remain in effect until either the audit committee or we terminate this agreement or mutually agree to the modification of its terms.

* * * * * * *

We shall be pleased to discuss this letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this letter. Please sign in the space provided and return the copy to us.

Very truly yours,

KPMG LLP

*Steven Morgan*
Steven Morgan
*Partner*


ACCEPTED

Proterra Inc

*David S. Black*                    *Constance Skidmore*
Authorized Signature


Chief Financial Officer          Audit Committee Chair
Title


7/11/2023                        7/11/2023
Date

**Appendix I**

**Reports, Services and Associated Fees**

Based upon our discussions with and representations of management, our fees for services we will perform are estimated as follows:

Integrated Audit:

Audit of consolidated balance sheets of Proterra Inc as of December 31, 2023 and 2022, the related consolidated statements of operations, comprehensive loss, stockholders' equity, and cash flows for each of the years in the three-year period ended December 31, 2023 and the related notes to the financial statements and audit of internal control over financial reporting as of December 31, 2023                                                $2,400,000

Quarterly Review Procedures:

Quarter ended March 31, 2023
Quarter ended June 30, 2023
Quarter ended September 30, 2023                          included in audit fee

Other:

Consent to include or incorporate by reference our reports on the consolidated financial statements in a filing under the Securities Act of 1933 or an exempt offering                                                        $35,000 each

Non-Audit Services:

KPMG will provide a subscription to KPMG's Accounting Research Online, an online library of accounting, auditing and financial reporting literature and related guidance or the automated Accounting Disclosure Checklist, which is a filterable, web-based tool to identify required financial statement disclosures                      included in audit fee

The above estimates are based on the level of experience of the individuals who will perform the services. In addition, expenses are billed for reimbursement as incurred. Expenses for items such as travel, telephone and postage are estimated at $30,000. Circumstances encountered during the performance of these services that warrant additional time or expense could cause us to be unable to deliver them within the above estimates. We will endeavor to notify you of any such circumstances as they are assessed.

Professional standards prohibit us from performing services for audit clients where the fee for such services is contingent, or has the appearance of being contingent, upon the results of such services.

Professional standards also indicate that independence may be impaired if fees for professional services are outstanding for an extended period of time; therefore, it is important that our fees be paid promptly when billed. If a situation arises in which it may appear that our independence would be questioned

because of past due unpaid fees, we may be prohibited from issuing our audit report and associated consent.

Where KPMG is reimbursed for expenses, KPMG will bill Proterra Inc for the amount it paid and will not add any markup to the expense. After such expenses are incurred, KPMG may receive rebates or incentive payments based on its aggregate purchases, which may include expenses reimbursed by Proterra Inc in addition to other clients. Such rebates are not credited back to Proterra Inc but are used to reduce KPMG's overhead.

All fees, charges and other amounts payable to KPMG under the engagement letter do not include any sales, use, excise, value added, income or other applicable taxes, tariffs or duties, payment of which shall be Proterra Inc's sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

**Appendix II**

KPMG CLARA
TERMS OF USE

As used herein, "KPMG Clara" shall refer to those service coordination tools made available to Proterra Inc (the "Company") by KPMG (e.g., KPMG Clara for clients) that allow a group of users to access a virtual repository for the purposes of sharing information, engaging in online discussions, and accessing certain content. These terms of use (the "Terms") are between the Company and KPMG and shall govern the Company's use of KPMG Clara, including content posted to KPMG Clara by KPMG and/or its licensors. If Company is comprised of multiple legal entities, Company agrees that (a) it has the authority to bind all such entities, and (b) these Terms shall govern such entities' use of KPMG Clara. In the event of any conflict or inconsistency between these Terms and the contract(s) between KPMG and Company to which these Terms or KPMG Clara relates, these Terms shall govern with respect to Company's use of KPMG Clara only.

1. Company and its Authorized Users (as defined below) may access and use KPMG Clara solely in furtherance of KPMG's engagement(s) with the Company. KPMG Clara is not intended for use as a document retention system and should not be regarded as a system of record. Company should retain or download any information from KPMG Clara it wishes to retain for its files. Access to information within KPMG Clara may be removed or become unavailable within a reasonable time once the corresponding engagement is completed. "Authorized User" means Company's employees and other personnel authorized by Company and approved by KPMG to access and use KPMG Clara. Company shall ensure that all Authorized Users who access and use KPMG Clara comply with these Terms. Company shall promptly notify KPMG about any Authorized User who should no longer have access to KPMG Clara or improper access to the password of an Authorized User.

2. Company may not: (a) copy, translate, modify, adapt or create derivative works from KPMG Clara; (b) rent, lease, lend, pledge, or directly or indirectly transfer or distribute KPMG Clara to any third party; or (c) use KPMG Clara to upload, store, post, email, transmit or otherwise make available any content that is unlawful and/or infringes any intellectual property rights or data protection, privacy or other rights of any other party. Company is responsible for the information its users may upload to such tools and compliance with all laws and regulations applicable to use or access by Company's users outside the U.S. (e.g. export control and data privacy laws and regulations). Except for the license granted herein to Company, Company acquires no right or interest of any kind in or to KPMG Clara.

3. Technical factors such as bandwidth, network configurations, and browser settings can affect KPMG Clara's speed and accessibility. KPMG does not guarantee the continuous, uninterrupted or error-free operability of KPMG Clara, or compatibility with Company's computer browser or any other part of its computing systems. Access to KPMG Clara may be suspended or limited at any time, and content may be unavailable. KPMG is not responsible for the content of any third-party websites, or hyperlinks which may be featured on KPMG Clara.

4. If KPMG's relationship with Company terminates for any reason, all further access to and use of KPMG Clara by Company and its Authorized Users must immediately cease and KPMG may deactivate or delete related user accounts, unless otherwise required by applicable law or professional standards to maintain such accounts. KPMG reserves the right to terminate Company's access to KPMG Clara for any reason.

5. EXCEPT AS EXPRESSLY STATED IN THESE TERMS, KPMG CLARA IS MADE AVAILABLE ON AN "AS-IS", "AS AVAILABLE" BASIS WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED.

6.  Refer to KPMG's Privacy Statement (https://home.kpmg/us/en/home/misc/privacy.html) for information about how KPMG collects, uses, and protects personal data.

## **Exhibit C-4**

**Audit Out-of-Scope Engagement Letter Dated August 2, 2023**



KPMG LLP
Mission Towers I
Suite 600
3975 Freedom Circle
Santa Clara, CA 95054

August 2, 2023

Proterra Inc
1815 Rollins Road
Burlingame, California 94010

Attention: Ms. Constance Skidmore, Audit Committee Chair

This letter amends our engagement letter dated June 16, 2021, as amended by engagement letters dated July 10, 2023 and July 17, 2022. (collectively referred to as the "engagement letter").

The purpose of this amendment is to update the "Other Matters" section of the letters by adding the following considerations:

KPMG understands that if Proterra files a bankruptcy petition, the Bankruptcy Court must approve its engagement and its fees in order to be compensated. In that event, KPMG intends to file applications with the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any order of the Bankruptcy Court establishing procedures for monthly compensation and reimbursement of expenses for professionals. Proterra Inc. acknowledges that professional time required to prepare detailed applications in accordance with the Bankruptcy Code, applicable rules and guidelines differ from KPMG's normal engagement and billing procedures and, as a result, will require significant effort by KPMG to comply therewith. Proterra Inc. agrees that, subject to Bankruptcy Court approval, KPMG shall be reimbursed for such professional time incurred.

Furthermore, to the extent that the services involve procedures in connection with the company's activities in connection with any restructuring or bankruptcy filing, such work was not included in the estimated fees as disclosed in Appendix 1 in the engagement letter dated July 10, 2023 but will be considered Out-of-Scope Services under the engagement letter.  Such Out-of-Scope Services include professional time required to prepare detailed applications in accordance with the Bankruptcy Code, as well as may include auditing and accounting considerations related to debt restructuring during and on emergence from bankruptcy, fresh-start accounting, valuation of assets and liabilities on emergence from bankruptcy, income tax matters rising as a result of bankruptcy or other debt restructuring activities as a result of bankruptcy, and increased professional time to deliver audit services due to loss of Debtors' personnel or other changes in circumstances as a result of bankruptcy that increases the effort to deliver audit services.  In its fee applications, KPMG will identify and describe any Out-of-Scope Services.  For such Out-of-Scope Services, KPMG will be compensated based on hourly rates, the majority of which reflect a reduction of up to 20% from KPMG's normal and customary rates, depending on the types of services to be rendered. The hourly rates for any Out-of-Scope Services rendered by KPMG in the Chapter 11 Cases are as follows:

| *Audit and Audit-Related Out of Scope Services* | *Discounted Rate (Range)* |
| --- | --- |
| Partners/Principals | $875 - $1025 |
| Managing Directors | $825 - $980 |
| Senior Managers/Directors | $725 - $875 |
| Managers | $650 - $775 |
| Senior Associates | $550 - $700 |
| Associates | $425 - $500 |

KPMG LLP, a Delaware limited liability partnership and a member firm of the KPMG global organization of independent member firms affiliated with KPMG International Limited, a private English company limited by guarantee.
KPMG LLP, a Delaware limited liability partnership and the U.S. member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ("KPMG International"), a Swiss entity.

DocuSign Envelope ID: A4C92383-A932-4149-A989-68A2A28DF452



Proterra Inc
August 2, 2023
Page 2 of 2

\* \* \* \* \* \* \*

We shall be pleased to discuss this letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this letter. Please sign in the space provided and return the copy to us.

Very truly yours,

KPMG LLP

Steven Morgan
*Partner*

<u>ACCEPTED</u>

Proterra Inc

| | |
|---|---|
| David S Black | Constance Skidmore |
| Authorized Signature | |
| | |
| Chief Financial Officer | Audit Committee Chair |
| Title | |
| | |
| 8/2/2023 | 8/2/2023 |
| Date | |

**<u>Exhibit C-5</u>**

**Tax Restructuring Engagement Letter Dated August 23, 2023**

DocuSign Envelope ID: C349BB30-ADBG-4C79-86D5-5AE13A904FE8



KPMG LLP
811 Main Street
Houston, TX 77002

Telephone    +1 713 319 2000
Fax          +1 713 319 2041
kpmg.com

August 23, 2023

PRIVATE

Proterra Inc.
1815 Rollins Road
 Burlingame, CA 94010

Proterra Operating Company, Inc.
1815 Rollins Road
 Burlingame, CA 94010

Attention: David Black
            Chief Financial Officer

This engagement letter, which includes the Standard Terms and Conditions and any exhibits, attachments, addenda or appendices attached thereto (collectively, the "Agreement")", dated as of August 11, 2023 (the "Effective Date"), is between Proterra Inc. and Proterra Operating Company, Inc. (together, "Proterra" or "Client") and KPMG LLP ("KPMG"), whereby Client has engaged KPMG to provide the professional services described herein (the "Services").

**Scope of Services**

   1.   *Debt Restructuring Services*

KPMG will analyze U.S. federal, state, local, and international tax implications of Client's potential restructuring of debt and/or capital structure (the "Potential Restructuring"). Services hereunder may include, but are not limited to, analyses of:

   1.1.   Section 382 issues related to historical transactions and potential restructuring alternatives, including a sensitivity analysis to reflect the Section 382 impact of the proposed and/or hypothetical equity transactions;

   1.2.   Net unrealized built-in gains and losses and Notice 2003-65 as applied to the ownership change, if any, resulting from or in connection with the Potential Restructuring;

   1.3.   Client's tax attributes, including net operating losses, tax basis in assets, and tax basis in subsidiaries' stock as relevant to the Potential Restructuring;

   1.4.   Cancellation of debt income, including the application of Section 108 and consolidated tax return regulations relating to the restructuring of non-intercompany debt and the completed capitalization/settlement of intercompany debt;

   1.5.   Application of the attribute reduction rules under Section 108(b) and Treasury Regulation Section 1.1502-28, including a benefit analysis of Section 108(b)(5) and 1017(b)(3)(D) elections as related to the Potential Restructuring;



Proterra Inc.
Proterra Operating Company Inc.
August 23, 2023

    1.6.    Relevant tax elections available and filing of any necessary election statements;

    1.7.    Tax implications of any internal reorganizations and restructuring alternatives;

    1.8.    Cash tax modeling of the tax benefits or tax costs of restructuring alternatives;

    1.9.    Tax implications of any dispositions of assets and/or subsidiary stock pursuant to the Potential Restructuring;

    1.10.    Potential bad debt, worthless stock, and retirement tax losses associated with the Potential Restructuring;

    1.11.    Tax treatment of restructuring related costs; and

    1.12.    Proof of claims from tax authorities.

        a.  KPMG will search the proof of claim register for claims from the taxing authorities at the direction of management;

        b.  KPMG will summarize the identified tax proof of claims;

        c.  KPMG will review the tax claims and provide the summarized tax proof of claim summary schedule to the KPMG tax compliance team(s) for additional commentary and support (e.g., filed income/non-income tax returns, etc.), where applicable; and

        d.  KPMG will provide the tax proof of claim summary schedule, the tax proof of claims, and supporting documentation (e.g., filed income/non-income tax returns, etc.), where applicable, to management for their review and assessment.

        e.  Client will review the information provided and be responsible for making any determinations as it relates to the claims as well as any additional remediation steps that would be required.

    *2.   Deliverables*

Deliverables are expected to include:

    2.1.    A quantitative analysis reflecting the restructuring tax matters (including modeling calculations to reflect the cash tax liability and impact on tax attributes under various restructuring scenarios), and

    2.2.    Tax memoranda, slide decks, proposals, recommendations and/or tax opinion(s) requested in writing by Client regarding in-scope analyses.

Prior to issuing our opinion, we will review relevant documents such as financial statements, tax returns, tax provision workpapers, and transaction documents. In addition, we will require Proterra and other relevant parties to provide us with a representation letter regarding certain aspects of the transaction, on which we will rely upon in issuing our opinion so long as we determine that the representations contained in the letter are reasonable. To the extent we cannot determine the reasonableness of any one or more representations on which you ask us to rely, it may not be possible for us to opine on one or more issues that are the subject matter of the opinion. We will inform you as soon as possible if we determine circumstances exist that prevent us from issuing the tax opinion.

The opinions expressed in the opinion letter will be rendered only with respect to the specific matters discussed therein, and we will express no opinion with respect to other federal, state or local income taxes of the Potential Restructuring. The opinions we render will not be binding upon the Internal Revenue Service, any other tax authority or any court, and no assurance can be given that a position contrary to that expressed therein will not be asserted by a tax authority and ultimately sustained by a court.



Proterra Inc.
Proterra Operating Company Inc.
August 23, 2023

Further, we anticipate, at the request of Client, interacting with other advisors to Client throughout the Potential Restructuring process.

**Applicable Standards**

When providing tax services, KPMG applies standards that may be higher than those required by law, regulation, or other professional requirements. We will promptly inform you if, during this engagement, we conclude that a tax return position cannot meet these higher standards.

**Fees**

The fee for services provided by KPMG will be based on the actual time incurred to complete the work at our discounted hourly rates shown in the table below for the individuals involved in providing the services:

| Professional | Rate Card |
| --- | --- |
| Partner / Principal | $1,280 - $1,380 |
| Managing Director | $1,200 - $1,280 |
| Senior Manager / Director | $1,100 |
| Manager | $1,000 |
| Senior Associate | $760 |
| Associate | $460 |

Note any time incurred by KPMG international member firms will be billed based on the standard hourly market rates in those respective jurisdictions.

*Other Fees & Expenses*

We will notify you if we encounter circumstances that warrant additional time or expense likely to change previously provided quotes or estimates. If such matters exceed the scope of this engagement contract, we will issue an addendum or separate engagement contract.

Solely with respect to this engagement, KPMG agrees to waive the technology recovery fee.

KPMG understands that the Bankruptcy Court must approve its engagement and its fees in order to be compensated. In that regard, KPMG intends to file applications with the Bankruptcy Court for its retention and the allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any order of the Bankruptcy Court establishing procedures for monthly compensation and reimbursement of expenses for professionals. The Client acknowledges that professional time required to prepare detailed applications in accordance with the Bankruptcy Code, applicable rules and guidelines differ from KPMG's normal engagement and billing procedures and, as a result, will require significant effort by KPMG to comply therewith. The Client agrees that, subject to Bankruptcy Court approval, KPMG shall be reimbursed for such professional time incurred.

*Payment Schedule*

We will render progress billings as work is performed.

**Consents to Disclose and Use Tax Return Information**

To enable the completion of the services under this engagement contract and related activities, the attached **Consents to Disclose and Use Tax Return Information** are hereby agreed to and made part of this letter.

**Corporate Alternative Minimum Tax Impact**

Advice provided under this engagement contract will not address the impact of the Corporate Alternative Minimum Tax.



Proterra Inc.
Proterra Operating Company Inc.
August 23, 2023

**Other Matters**

*Additional Provisions for SEC Audit Client or Affiliate*

Proterra will designate a managerial-level individual or individuals who will be responsible for overseeing the services provided, evaluating the adequacy of the services performed and any work product delivered. Such individual, or individuals, will have responsibility to raise any relevant queries regarding the nature and adequacy of our services, accept the results of our services, and establish and maintain necessary internal controls for Proterra's needs.  KPMG will not prepare any journal entries, nor compute the balance of any financial statement expense/(benefit) or asset/liability.  KPMG will provide all deliverables (e.g., power point slides, memoranda, etc.) to Proterra on KPMG letterhead or similar static (i.e., non-modifiable) KPMG "branded" documents.

*Use of Models*

KPMG may make spreadsheets, workflows, or other files used for calculation or modelling but that do not constitute Deliverables ("Models") available to Client. Models are provided solely for Client's internal use on an "as-is" basis, without representation, warranty, or right to further distribute the Models, and will be locked from editing.

While KPMG remains responsible to Client for its Services and Deliverables that may be based on Models pursuant to the terms of this engagement, Client is solely responsible for its own use of the Models, including any modifications to the Models, or judgments or decisions it makes based on the Models.

*Enabling Tools*

KPMG will license the Enabling Tools enumerated within this Engagement Contract for use by Proterra to facilitate the services. All other use is prohibited.

Proterra may not redistribute, reproduce (except as necessary to run), modify, commercialize, allow third parties to access (unless authorized by KPMG in writing), or reverse engineer or decompile (except where such rights cannot be limited by applicable law) Enabling Tools. KPMG shall indemnify, hold harmless, and defend Proterra from and against third-party claims that authorized use of Enabling Tools infringes the intellectual property rights of a third party, subject to any limits or requirements imposed by KPMG's licensors; and Proterra shall indemnify, hold harmless, and defend KPMG and its licensors from and against third-party claims arising from Proterra or its users unauthorized use of Enabling Tools, or information introduced to the Enabling Tools by Proterra and its users. Enabling Tools are not intended to be used as a system of record, repository, or hosting service, and Proterra access to the Deliverables and other documents will be removed from the Enabling Tools within a reasonable period of time (no less frequently than annually for audit clients and their affiliates) following the conclusion of the engagement to which they relate. Proterra shall download such deliverables and documents for its records. Enabling Tools are provided on an "as is" "as available" basis.

Unless otherwise indicated, logins and passwords to Enabling Tools will be managed by KPMG. To provision access to Enabling Tools, Proterra should provide a list of its users and shall promptly notify KPMG if a user leaves its employ, or is no longer involved in the services, or should otherwise be removed as a user.

For the avoidance of doubt, Proterra's permission to use the Enabling Tools does not extend to use independent of KPMG's services.

*Use of SharePoint Online*

To facilitate the delivery of the tax services described in this engagement contract, KPMG will provide Proterra with access to SharePoint Online as an Enabling Tool.

* * * * * * *



Proterra Inc.
Proterra Operating Company Inc.
August 23, 2023

The attached Standard Terms and Conditions for Advisory and Tax Services (March 27, 2017 Release – March 2021) are made part of this letter.

Unless otherwise terminated, modified, or superseded in writing, this engagement contract is intended to apply for a period of 15 months as of the Effective Date of this engagement contract. In addition, effective as of the date of signing, this engagement contract supersedes any and all previously issued engagement contracts pertaining to the services described above.

Please contact me at +1 205 586 0928 or okukoyi@kpmg.com if you have any questions or need clarification of the services KPMG will provide. If you agree with the terms set forth herein, please sign where indicated below (or otherwise provide your digital or facsimile signature) and return the signed copy to my attention at your earliest convenience so that we may begin work on this engagement.

Your digital or facsimile signature (if used) on this engagement contract on behalf of Proterra shall be deemed to be your legally valid and binding signature of such contract to the same extent as if you had hand-signed it.

Very truly yours,

KPMG LLP

DocuSigned by:

Olayinka Kukoyi
*Partner*

ACCEPTED

Proterra Inc.

DocuSigned by:

David S. Black
7E73DA4C09AE423...

Authorized Signature

Title   Chief Financial Officer
Date:   8/24/2023

Proterra Operating Company Inc.

DocuSigned by:

David S. Black
7E73DA4C09AE423...

Authorized Signature

Title   Chief Financial Officer
Date:   8/24/2023

Enclosures:
Consents to Disclose and Use Tax Return Information
Standard Terms and Conditions for Advisory and Tax Services (March 27, 2017 Release – March 2021)



**Consents to Disclose and Use Tax Return Information**

In connection with the tax services provided to Client under this engagement, KPMG may be subject to certain federal and state laws that prohibit KPMG from disclosing Client's tax return information to third parties, or KPMG's use of that information for purposes other than the provision of tax services to Client, unless such disclosure or use is otherwise authorized by law or Client consents to such disclosure or use. Likewise, federal law generally precludes KPMG from disclosing Client's tax return information to service providers outside the United States without Client's consent. Accordingly, KPMG requests Client's consent for the disclosures and uses described with more specificity below.

*Consent for Disclosure of Tax Return Information to Third Parties Within and Outside the United States*

To complete the Services, which may include tax return preparation services, as well as preliminary engagement preparation and tax return preparation activities for the immediately succeeding tax year, KPMG may disclose some or all of Client's tax return information from prior tax years, the current tax year and the immediately succeeding tax year to certain third party contractors, other entities or service providers within or outside the United States. The entities that may receive such disclosures include: KPMG Global Services Private Limited ("KGS"), an entity that is located in India and controlled by KPMG and certain other members of the KPMG network; any successor entity to KGS; and certain other members of the KPMG network and other third-party subcontractors that may otherwise assist in the completion of the Services.

To complete the Services, KPMG may also disclose some or all of Client's tax return information to certain third-party contractors located within the United States who are under KPMG's oversight and assist in the delivery of the Services.

Client hereby consents to the disclosure of Client's tax return information to the third parties who are located within and outside the United States, as described above.

*Consent to Use and Disclose Client's Tax Return Information Within or Outside the United States to Develop Analytics that May Enhance the Services KPMG Offers to Client and Other Clients and to Develop New Services and Technologies*

Supplementary to the terms of this engagement contract, KPMG requests Client's specific consent to use Client's tax return information for other purposes, such as improving the delivery or quality of services or technology to Client and other clients, thought leadership projects and to allow Client and other clients to evaluate various business transactions and opportunities. More particularly, KPMG requests Client's consent to allow KPMG to produce anonymized statistical compilations, to analyze tax return information, to develop benchmarks as well as new services and technology, and to allow KPMG to evaluate KPMG's performance on Client's behalf and on behalf of KPMG's other clients ("Data Analytics Services"). KPMG also requests Client's specific consent to disclose Client's tax return information to members of the KPMG network and other onshore and/or offshore third-party service providers such as KGS and the other parties described above to assist KPMG in performing the type of Data Analytics Services described above.

In addition, Client hereby acknowledges that KPMG and such third-party service providers may also prepare reports, studies and presentation decks reflecting statistics and reasoned conclusions regarding tax metrics, economic benchmarks, and tax and general business compliance risks and opportunities (the "Output"); and Client consents to KPMG's disclosure of the Output to other clients since these materials will be intended to help Client and KPMG's other KPMG network clients understand where each of KPMG's clients stands relative to peers, to identify transactions that may be beneficial for Client's businesses, and to suggest areas in which KPMG or other members of the KPMG network might work with Client or our other clients to achieve Client's or such clients' objectives, both with respect to accurate and compliant tax reporting and tax efficient planning. Any such disclosures of the Output will be anonymous as to taxpayer identity as required by law.



Client hereby consents to: (i) the use by KPMG and the third parties identified herein of any and all tax return information including any such information contained in Client's federal, state and foreign income tax returns set forth in this engagement contract and supporting schedules for the development and provision of the Data Analytics Services; (ii) the disclosure of such information to the members of the KPMG network and other third-party service providers assisting KPMG with the development and delivery of Data Analytics Services; and (iii) the disclosure to KPMG's and other KPMG network members' clients and potential clients of the Output from the Data Analytics Services.

*Representation Regarding Protection of Tax Return Information from Unauthorized Disclosure or Use*

Consistent with the terms of this engagement contract, KPMG represents that with respect to each member of the KPMG network and third party referred to in the consents set forth above, KPMG and the third parties each have technical, legal and/or other safeguards, measures and controls in place to protect Client's tax return information from unauthorized disclosure or use.

*Duration of the Consent*

If Client agrees to the disclosure and use of Client's tax return information for the purposes set forth above and in the terms of this engagement contract, Client's consent is valid for seven (7) years in order for KPMG to complete the Services, including, but not limited to administrative support activities such as data storage, or for such longer periods as required in order for KPMG to assist Client with future tax-related needs and/or to comply with legal, regulatory, and professional standards.

*Right to Refuse to Provide Consent*

Client has the right to decline to provide any or all of the consents requested herein or to request a more limited disclosure of Client's tax return information than that provided in any such consent. However, KPMG reserves the right to decline to provide any tax return preparation services described in this engagement contract to which this consent relates in the absence of consent or if KPMG concludes that the more limited disclosure Client authorizes will interfere with the efficient and effective performance of such tax return preparation services.



**KPMG LLP**
**Standard Terms and Conditions for Advisory and Tax Services**

1. **Services; Client Responsibilities**.

(a) References herein to Client shall refer to the addressee of the Proposal or Engagement Letter to which these Standard Terms and Conditions are attached or incorporated (the "Engagement Letter") and references herein to KPMG shall refer to KPMG LLP, a Delaware registered limited liability partnership and the United States member firm of the KPMG network of independent firms (the "KPMG Network"). Client, its parent company and their affiliates, and their respective directors, officers, employees, and agents are collectively referred to herein as the "Client Parties." KPMG, the other member firms of the KPMG Network and firms and entities controlled by, or under common control with, one or more such member firms (collectively, the "Member Firms"), and their affiliates, and their respective partners, principals, employees, and agents and the legal entities comprising KPMG International are collectively referred to herein as the "KPMG Parties." Any work performed in connection with the engagement described in the Engagement Letter before its execution is also governed thereby and by these Standard Terms and Conditions.

(b) It is understood and agreed that KPMG's services may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Client. KPMG will not perform management functions or make management decisions for Client.

(c) If KPMG audits the financial statements of Client or provides any other attestation services to Client, the rules of the American Institute of Certified Public Accountants ("AICPA") require Client to agree to the following provisions of this Paragraph 1(c). In connection with KPMG's provision of services under the Engagement Letter, Client agrees that Client, and not KPMG, shall perform the following functions: (i) assume all management responsibilities and perform all management functions; (ii) oversee such services, by designating an individual, preferably within senior management, who possesses suitable skill, knowledge and/or experience; (iii) evaluate the adequacy and results of such services; (iv) accept responsibility for the results of such services; and (v) establish and maintain internal controls over the processes with which such services are concerned, including performing ongoing evaluations of Client's internal control as part of its monitoring activities.

(d) Subsequent to the completion of this engagement, KPMG will not update its Advice (as defined below) for changes or modifications to the law and regulations, or to the judicial and administrative interpretations thereof, or for subsequent events or transactions, unless Client separately engages KPMG to do so in writing after such changes or modifications, interpretations, events or transactions.

2. **Fees; Tax on Services**. Unless otherwise agreed to in the Engagement Letter, KPMG will bill Client monthly in arrears for the fees incurred for the applicable Services. Client agrees to pay KPMG's invoices within 30 days after receipt. Prior to September 15th of any year, Client shall pay all outstanding invoices issued. Unless otherwise agreed to in the Engagement Letter, KPMG will also bill Client for its reasonable out-of-pocket expenses. All fees, charges and other amounts payable to KPMG under the Engagement Letter do not include any sales, use, excise, value

added, income or other applicable taxes, tariffs or duties, payment of which shall be Client's sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

3. **Termination**. Either party may terminate the Engagement Letter at any time by giving written notice to the other party not less than 30 calendar days before the effective date of termination, provided that either party may terminate the Engagement Letter upon written notice to the other party if laws, rules, regulations or professional standards applicable to a party preclude it from continuing to perform or receive the Services thereunder.

4. **Ownership and Use of Deliverables**.

(a) Upon full and final payment to KPMG under the Engagement Letter, KPMG assigns and grants to Client, title in the tangible items specified as deliverables or work product in the Engagement Letter (the "Deliverables") and any copyright interest in the Deliverables; provided that if and to the extent that any KPMG property is contained in any of the Deliverables ("KPMG Property"), KPMG hereby grants Client, under KPMG's intellectual property rights in such KPMG Property, a royalty-free, non-exclusive, non- transferable, perpetual license to use such KPMG Property solely in connection with Client's use of the Deliverables. KPMG acknowledges that it shall obtain no ownership right in Confidential Information (as defined below) of Client.

(b) Should Client make a Deliverable bearing the "KPMG" name or logo available to a third party, it must be made available only in its entirety. KPMG may retain for its files copies of each of the Deliverables, subject to the provisions of Paragraph 11 below.

(c) Client acknowledges and agrees that notwithstanding Paragraph 4(a), any advice, recommendations, information, Deliverables or other work product ("Advice") provided by KPMG in connection with the services under the Engagement Letter is intended for Client's sole benefit and KPMG does not authorize any party other than Client to benefit from or rely upon such Advice, or make any claims against KPMG relating thereto. Any such benefit or reliance by another party shall be at such party's sole risk. Client agrees that if such Advice is made available to any third party other than as expressly permitted by the Engagement Letter, the provisions of Paragraph 8(b) shall apply unless Client has a written notice substantially in the form of Appendix A hereto (the "Notice") acknowledged in writing by such third party and returned to Client. Upon request, Client shall provide KPMG with a copy of the Notice acknowledged by such third party. Notwithstanding the foregoing, in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 18(a) below, no acknowledgement of the Notice shall be required to avoid application of Paragraph 8(b). For the avoidance of doubt, no Notice or acknowledgement shall be required to avoid application of Paragraph 8(b) with respect to disclosures expressly authorized by the Engagement Letter.

5. **Warranties**. KPMG's services under the Engagement Letter are subject to and will be performed in accordance with AICPA and other professional standards applicable to the services

March 27, 2017 Release
– March 2021

**Standard Terms and Conditions for Advisory and Tax Services**

provided by KPMG under the Engagement Letter and in accordance with the terms thereof. KPMG disclaims all other warranties, either express or implied.

6. **Limitation on Damages**. Except for the respective indemnification obligations of Client and KPMG set forth herein, the liability of the Client Parties and the KPMG Parties to one another, on account of any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Engagement Letter shall be limited to the amount of fees paid or owing to KPMG under the Engagement Letter. In no event shall any of the Client Parties or any of the KPMG Parties be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). For avoidance of doubt, any damages awarded against any of the Client Parties or the KPMG Parties based on a third party claim subject to indemnification hereunder shall not be subject to the disclaimer in the previous sentence. The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss asserted, whether in contract, statute, rule, regulation or tort (including but not limited to negligence) or otherwise.

7. **Infringement**.

(a)   KPMG hereby agrees to indemnify, hold harmless and defend the Client Parties from and against any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), fines, penalties, taxes or damages (collectively "Liabilities") asserted by a third party against any of the Client Parties to the extent such Liabilities result from the infringement by the Deliverables (including any KPMG Property contained therein) of such third party's patents issued in the United States as of the date the Deliverables are delivered to Client, trademarks or copyrights. Such KPMG obligations shall not apply to any infringement to the extent arising out of (i) use of the Deliverables other than in accordance with applicable documentation or instructions supplied by KPMG or other than for Client's internal business purposes; (ii) any alteration, modification or revision of the Deliverables not expressly agreed to in writing by KPMG; or (iii) the combination or operation of the Deliverables with materials not supplied or approved by KPMG.

(b)   In case any of the Deliverables (including any KPMG Property contained therein) or any portion thereof is held, or in KPMG's reasonable opinion is likely to be held, to constitute infringement, KPMG may, within a reasonable time, at its option either: (i) secure for Client the right to continue the use of such infringing item; or (ii) replace, at KPMG's sole expense, such item with a substantially equivalent non-infringing item or modify such item so that it becomes non-infringing. In the event KPMG is, in its reasonable discretion, unable to perform either of the options described in clauses (i) or (ii) above, Client shall return the allegedly infringing item to KPMG, and KPMG's sole liability shall be to refund to Client the amount paid to KPMG for such item; provided that the foregoing shall not be construed to limit KPMG's indemnification obligation set forth in Paragraph 7(a) above.

(c)   The provisions of this Paragraph 7 state KPMG's entire liability and Client's sole and exclusive remedy with respect to any infringement or claim of infringement.

8. **Indemnification**.

(a)   KPMG agrees to indemnify, hold harmless and defend the Client Parties from and against any and all Liabilities for physical injury to, or death of, any person regardless of status, and damage to or destruction of any tangible property, which any of the Client Parties may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the KPMG Parties. Client agrees to indemnify, hold harmless and defend the KPMG Parties from and against any and all Liabilities for physical injury to, or death of, any person regardless of status, and damage to or destruction of any tangible property, which any of the KPMG Parties may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the Client Parties.

(b)   Subject to Paragraph 4(c), Client agrees to indemnify, defend and hold harmless the KPMG Parties from and against any and all Liabilities incurred or suffered by or asserted against any of the KPMG Parties in connection with a third party claim arising from KPMG's Advice. The foregoing indemnification obligation shall apply regardless of whether the third party claim alleges a breach of contract, violation of statute, rule, regulation or tort (including without limitation negligence) by the KPMG Parties.

(c)   The party entitled to indemnification (the "Indemnified Party") shall promptly notify the party obligated to provide such indemnification (the "Indemnifying Party") of any claim for which the Indemnified Party seeks indemnification. The Indemnifying Party shall have the right to conduct the defense or settlement of any such claim at the Indemnifying Party's sole expense, and the Indemnified Party shall cooperate with the Indemnifying Party. The party not conducting the defense shall nonetheless have the right to participate in such defense at its own expense. The Indemnified Party shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages for which the Indemnifying Party has accepted responsibility.

9. **Cooperation; Use of Information**.

(a)   Client agrees to cooperate with KPMG in the performance of the services under the Engagement Letter and shall provide or arrange to provide KPMG with timely access to and use of the personnel, facilities, systems, software, equipment, data and information necessary for KPMG to perform the services under the Engagement Letter. The Engagement Letter may set forth additional details regarding KPMG's access to and use of personnel, facilities, equipment, data and information.

(b)   The Engagement Letter may set forth additional obligations of Client in connection with the services under the Engagement Letter necessary for KPMG to perform its obligations under the Engagement Letter. Client acknowledges that its failure to satisfy these obligations could adversely affect KPMG's ability to provide the services under the Engagement Letter.

(c)   Client acknowledges and agrees that KPMG will, in performing the services under the Engagement Letter, base its conclusions on the facts and assumptions that Client furnishes and that KPMG may use data, material, and other information furnished by or at the request or direction of Client without any independent investigation or verification and that KPMG shall be entitled to rely upon the accuracy and completeness of such data, material and other information. Inaccuracy or

March 27, 2017 Release – March 2021

**KPMG LLP**
**Standard Terms and Conditions for Advisory and Tax Services**

incompleteness of such data, material and other information furnished to KPMG could have a material adverse effect on KPMG's conclusions.

10. **Independent Contractor**. It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other. Confidentiality.

**11. Confidentiality.**

(a) "Confidential Information" means all documents, software, reports, data, records, forms and other materials obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party") or at the request or direction of the Disclosing Party in the course of performing the services under the Engagement Letter: (i) that have been marked as confidential; (ii) whose confidential nature has been made known by the Disclosing Party to the Receiving Party; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential. Notwithstanding the foregoing, Confidential Information does not include information which: (1) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (2) is or becomes publicly known through no wrongful act of the Receiving Party; (3) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; (4) is permitted to be disclosed by Paragraphs 18(a) or (b); or (5) is received by the Receiving Party from a third party without restriction and without a breach of an obligation of confidentiality.

(b) The Receiving Party will deliver to the Disclosing Party or destroy all Confidential Information of the Disclosing Party and all copies thereof when the Disclosing Party requests the same, except for copies retained in work paper files or records, anything that may be stored in back up media or other electronic data storage systems, latent data and metadata. Except as otherwise set forth in this Paragraph 11 or Paragraph 15 below, the Receiving Party shall not disclose to any person, firm or entity any Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission; provided, however, that notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent that it is required or necessary to be disclosed pursuant to a statutory or regulatory provision or court or administrative order, or, subject to appropriate conditions of confidentiality, to fulfill professional obligations and standards (including quality and peer review) or to submit and process an insurance claim.

(c) The KPMG Parties, with the assistance of third parties outlined in Paragraph 15, may use all Client's information provided to the KPMG Parties for other purposes, such as improving the delivery or quality of services or technology to Client and other clients, thought leadership projects, to allow Client and other clients to evaluate various business transactions and opportunities, and for use in presentations to Client, other clients and non-clients. When Client's information is used outside of the KPMG Parties or such third parties assisting them, Client will not be identified as the source of the information.

(d) Each party shall exercise the same level of care to protect the

other's information as it exercises to protect its own confidential information but in no event less than reasonable care, except to the extent that applicable law or professional standards impose a higher requirement.

(e) If the Receiving Party receives a subpoena or other validly issued administrative, judicial, government or investigative regulatory demand or request or other legal process ("Legal Demand") requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall, unless prohibited by law or such Legal Demand, provide prompt written notice to the Disclosing Party of such Legal Demand in order to permit it to seek a protective order. So long as the Receiving Party gives notice as provided herein, the Receiving Party shall be entitled to comply with such Legal Demand to the extent required by law, subject to any protective order or the like that may have been entered in the matter. In the event that KPMG is requested or authorized by Client, or is required by law, rule, regulation or Legal Demand in a proceeding or investigation to which KPMG is not a named party or respondent, to produce KPMG's documents or personnel as witnesses or for interviews, or otherwise to make information relating to the services under the Engagement Letter available to a third party, or Client, Client shall reimburse KPMG for its professional time, at its then-current standard hourly rates, and expenses, including reasonable attorneys' fees and expenses, incurred in responding to such requests, authorizations or requirements.

12. **Assignment**. Subject to Paragraph 15 below, neither party may assign, transfer or delegate any of its rights or obligations, claims or proceeds from claims arising under or relating to this Engagement Letter (including by operation of law, in which case the assigning party will, to the extent legally permissible, give as much advance written notice as is reasonably practicable thereof) without the prior written consent of the other party, such consent not to be unreasonably withheld. Any assignment, transfer or delegation in violation hereof shall be null and void.

13. **Governing Law; Severability**. All disputes between the parties (whether based in contract, tort, statute, rule, regulation or otherwise and whether pending in court or in an arbitral forum) shall be governed by and construed in accordance with the substantive and procedural laws of the State of New York, including without limitation its statutes of limitations, without regard to the conflict of laws provisions of New York or any other state or jurisdiction. In the event that any term or provision of the Engagement Letter or these terms shall be held to be invalid, void or unenforceable, then the remainder of the Engagement Letter and these terms shall not be affected, and each such term and provision shall be valid and enforceable to the fullest extent permitted by law.

14. **Alternative Dispute Resolution**.

(a) Any dispute or claim between the parties shall be submitted first to non-binding mediation and, if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non- Administered Arbitration of the International Institute for Conflict Prevention and Resolution (the "IICPR"). Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these dispute resolution

March 27, 2017 Release
– March 2021

**KPMG LLP**
**Standard Terms and Conditions for Advisory and Tax Services**

procedures, including any contention that all or part of these procedures is invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

(b)   Mediation shall take place at a location to be designated by the parties using the Mediation Procedures of the IICPR, with the exception of paragraph 2 (Selecting the Mediator).

(c)   Arbitration shall take place in New York, New York and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. Party- selected arbitrators shall be selected from the lists of neutrals maintained by either the IICPR or by JAMS, Inc., but the chair of the arbitration panel does not have to be selected from those specific lists. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in IICPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties (including Paragraph 6 above), that are punitive in nature, or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

(d)   Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm, enforce or vacate any final award entered in arbitration, in any court of competent jurisdiction, provided that any party moving to enforce, confirm or vacate any such agreement or award, as the case may be, will file such motion under seal unless prohibited under applicable court rules.

(e)   Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

**15   Use of Member Firms and Third Parties.**

(a)   Client acknowledges and agrees that the services under the Engagement Letter, including any applicable tax advice, may be performed by a Member Firm located outside of the United States. Client understands that each Member Firm is a separate, distinct and independent legal entity and is not a partner, principal, agent or affiliate of KPMG and KPMG is not a partner, principal, agent or affiliate of any other Member Firm.

(b)   Client further acknowledges and agrees that in connection with the performance of services under the Engagement Letter, KPMG and Member Firms, in their discretion or at Client's direction, may utilize the services of third parties within and outside of the United States to complete the services under the Engagement Letter or analyze Client information.

(c)   Client further acknowledges and agrees that KPMG Parties may have access to Confidential Information from offshore locations, and that KPMG Parties may use third parties within and outside of the United States to provide at KPMG Parties' direction administrative, clerical or analytical services to KPMG Parties. These KPMG Parties and third parties may in the performance of

such services have access to Client's Confidential Information. KPMG represents to Client that with respect to each Member Firm and third party, KPMG has technical, legal and/or other safeguards, measures and controls in place to protect Confidential Information of Client from unauthorized disclosure or use. KPMG shall be responsible to Client for their failure to comply.

(d)   Accordingly, Client's agreement above extends to disclosure, ability to access, and use of its Confidential Information by the parties and for the purposes set forth in Paragraph 11 and this Paragraph 15.

(e)   Any services performed by a Member Firm or third party shall be performed in accordance with the terms of the Engagement Letter and these Standard Terms and Conditions, including Paragraph 11 (Confidentiality), but KPMG shall remain responsible to Client for the performance of such services. Client agrees that any claim relating to the services under the Engagement Letter may only be made against KPMG and not any other Member Firm or third party referred to above.

16.   **Miscellaneous.**

(a)   **Sarbanes-Oxley**. Except as otherwise set forth in the Engagement Letter, in accepting this engagement, Client acknowledges that completion of this engagement or acceptance of Deliverables resulting from this engagement will not constitute a basis for Client's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). The services under the Engagement Letter shall not be construed to support Client's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

(b)   **Electronic Communications**. KPMG and Client may communicate with one another by electronic mail or otherwise transmit documents in electronic form during the course of this engagement. Each party accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices). Client agrees that the final hardcopy or electronic version of a document, including a Deliverable, or other written communication that KPMG transmits to Client shall supersede any previous versions transmitted by KPMG to Client.

(c)   **California Accountancy Act**. For engagements where services will be provided by KPMG through offices located in California, Client acknowledges that certain of KPMG's personnel who may be considered "owners" under the California Accountancy Act and implementing regulations (California Business and Professions Code section 5079(a); 16 Cal. Code Regs. sections 51 and 51.1) and who may provide services in connection with this engagement, may not be licensed as certified public accountants under the laws of any of the various states.

(d)   **Volume Rebates**. Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time

March 27, 2017 Release
– March 2021

**KPMG LLP**
**Standard Terms and Conditions for Advisory and Tax Services**

the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to Client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges that may be charged to clients.

(e) **Use of Names and Logos**. Except as permitted by law or as set forth in the Engagement Letter or this Paragraph 16(e), neither party shall acquire hereunder any right to use the name or logo of the other party or any part thereof, and any such use shall require the express written consent of the owner party. Client agrees that KPMG may list Client as a customer in KPMG's internal and external marketing materials, including KPMG websites and social media, indicating the general services rendered (e.g., "Client is an Audit, Advisory and/or Tax client of KPMG LLP."). In addition, Client gives KPMG the right to use Client's logo on the Deliverables and documents prepared for Client internally (e.g., internal presentations, etc.) or for internal KPMG presentations and intranet sites.

(f) **Export Control**. KPMG and Client acknowledge and agree that each shall comply with all applicable United States export control laws and regulations in the performance of each party's respective activities under the Engagement Letter. Client shall not provide KPMG, or grant KPMG access to, (a) information (including technical data or technology), verbally, electronically, or in hardcopy, (b) software or (c) hardware, that is controlled for export by the United States government under the Arms Export Control Act of 1976, Export Administration Act of 1979, the International Traffic in Arms Regulations ("ITAR"), Export Administration Regulations ("EAR"), Department of Energy Part 810 Regulations or Nuclear Regulatory Commission Part 110 Regulations, except information, software or hardware that is classified as EAR99 under the EAR.

(g) **Active Spreadsheets and Electronic Files**. KPMG may use models, electronic files and spreadsheets with embedded macros created by KPMG to assist KPMG in providing the services under the Engagement Letter. If Client requests a working copy of any such model, electronic file or spreadsheet KPMG may, at its discretion, make such item available to Client for its internal use only on an as- is basis and such item shall be considered a Deliverable subject to Paragraph 4 above; provided that Client is responsible for obtaining the right to use any third party products necessary to use or operate such item.

(h) **Non-Solicitation**. During the term of the Engagement Letter and for one year thereafter, neither party shall solicit for hire as an employee, consultant or otherwise any of the other party's personnel who have had direct involvement with the services under the Engagement Letter, without such other party's express written consent. This prohibition shall not apply to any offers of employment which result from a general solicitation for employment, including without limitation, through the Internet, newspapers, magazines and radio.

(i) **Force Majeure**. Except for the obligation of a Party to make payments required hereunder, neither Party shall be responsible for any delay or failure in performance of any part of this Engagement Letter or the Services to the extent that such delay or failure is caused by reason of acts of God, wars, revolution, civil commotion, pandemic, epidemic, terrorism, acts of public enemy,

embargo, acts of government in its sovereign capacity, labor difficulties, including without limitation, strikes, slowdowns, picketing or boycotts, or any other circumstances beyond the reasonable control of the non-performing Party ("Condition"). The Party delayed or unable to perform ("Delayed Party"), shall be excused from such performance on a day-to-day basis during the continuance of such Condition (and the other Party shall likewise be excused from performance of its obligations on a day-to-day basis during the same period); provided, however, that the Delayed Party shall use commercially reasonable efforts to avoid or remove such Condition, and both Parties shall proceed promptly with the performance of their obligations under this Engagement Letter whenever such Condition is removed or ceases. If the Condition continues for more than ninety (90) days, then the Party affected may terminate this Engagement Letter upon written notice to the Delayed Party.

17. **Entire Agreement**. The Engagement Letter and these Standard Terms and Conditions, and any exhibits, attachments, addenda and appendices hereto and thereto, and amendments to any of the foregoing that are agreed in writing between the parties, shall constitute the final, complete and exclusive agreement between the parties with respect to the subject matter of the foregoing, and supersede all other previous and contemporaneous oral and written representations, understandings or agreements relating to that subject matter.

18. **Additional Terms for Engagements Involving Tax Services.**

(a) Notwithstanding anything to the contrary set forth herein, no provision in the Engagement Letter or these Standard Terms and Conditions is or is intended to be construed as a condition of confidentiality within the scope of the Internal Revenue Code of 1986 (the "IRC") section 6011 as implemented through Treasury Regulation 1.6011-4(b)(3)(i) (without regard to references to payment or receipt of a minimum fee) or under any similar or analogous provisions of the laws of a state or other jurisdiction. In particular, Client, its directors, officers, employees and agents may disclose to any and all persons, without limitation of any kind, tax information KPMG provides to Client, including all materials such as tax opinions, memoranda, or other written tax advice that describes or otherwise relates to, either or both of the tax treatment and tax structure of any transaction on which KPMG's services are provided. Client agrees to use commercially reasonable efforts to inform KPMG of any conditions of confidentiality imposed by third party advisors with respect to any transaction on which KPMG's services are requested. Such notification must occur prior to KPMG providing any advice with respect to the transaction.

(b) Treasury regulations under IRC section 6011 require taxpayers to disclose to the IRS their participation in reportable transactions and IRC section 6707A imposes strict penalties for noncompliance with IRC section 6011. IRC section 6111 and the laws of various states require a material advisor with respect to a reportable transaction to make a return containing specified information concerning the transaction to the IRS or a designated state tax authority by a prescribed date, and IRC section 6707 imposes penalties for noncompliance with IRC section 6111. IRC section 6112 and the laws of various states require the material advisor to maintain, and make available to the IRS or designated state tax authority upon request, a list containing prescribed information with respect to persons

March 27, 2017 Release
– March 2021

**KPMG LLP**

**Standard Terms and Conditions for Advisory and Tax Services**

advised and other information with respect to the reportable transaction, and IRC section 6708 imposes penalties for noncompliance with IRC section 6112. Client agrees to use commercially reasonable efforts to inform KPMG if Client is required to disclose any transaction covered by the Engagement Letter as a reportable transaction to the IRS or to any state or other jurisdiction adopting similar or analogous provisions to IRC section 6011. KPMG will use commercially reasonable efforts to inform Client if KPMG provides Client's identifying information to the IRS under IRC section 6111 or 6112, or to any state tax authority or other jurisdiction adopting similar or analogous provisions thereto.

(c)    Unless expressly provided for, KPMG's services do not include representing Client in the event of a challenge by the IRS or other tax or revenue authorities.

(d)    In rendering tax advice, KPMG may consider, for example, the applicable provisions of the IRC, and the Employee Retirement Income Security Act of 1974, each as amended, and the relevant state, local and foreign statutes, the regulations thereunder, income tax treaties, and judicial and administrative interpretations, thereof. These authorities are subject to change, retroactively or prospectively, and any such changes could affect the validity of KPMG's advice.

March 27, 2017 Release
– March 2021



**APPENDIX A**

**[FORM OF NOTICE AND ACKNOWLEDGEMENT]**

[Name of Third Party] Address

The advice, recommendations, information, deliverables and other work product ("KPMG Advice") being made available to you in connection with this notice were prepared for the sole benefit of [Name of Client], based on the specific facts and circumstances of [Name of Client], and its use is limited to the scope of KPMG LLP's engagement for [Name of Client]. It has been made available to you for informational purposes only. You acknowledge and agree that KPMG does not authorize any party other than [Name of Client] to benefit from or rely upon it, or make any claims against KPMG relating thereto, and any such reliance by you or anyone else shall be at your or their own risk. Accordingly, KPMG accepts no responsibility or liability in respect of such KPMG Advice and you shall have no right to make it available to anyone else without including a copy of this notice and, unless disclosure is required by law or to fulfill a professional obligation required under applicable professional standards, obtaining a signed acknowledgement of this notice from the party to whom disclosure is made and you provide a copy thereof to [Name of Client]. You acknowledge and agree that you will be responsible for any damages suffered by KPMG as a result of your failure to comply with the terms of this notice.

Please acknowledge your acceptance of the foregoing by signing and returning to us a copy of this letter.*

Very truly yours, [Name of

Client]

By: Name:
    Title:

**Accepted and Agreed to on this_____day of_____, 20 by:***

[Name of Third Party

By: Name:
    Title:

*Remove in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 18(a) of the Standard Terms and Conditions in which case an acknowledgement is not required by the terms of Paragraph 4(c).

March 27, 2017 Release
– March 2021