**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>PROTERRA INC, et al.,[1]<br>Debtors | Chapter 11<br>Case No. 23-11120-BLS<br>Jointly Administered<br>**Re: Docket Numbers 218, 222, 278** |

**OBJECTION OF THE CITY OF DETROIT TO**
**THE SALE ORDER PROPOSED BY THE DEBTORS**

The City of Detroit, Michigan ("City"), by and through its undersigned counsel, objects to the proposed sale order ("Sale Order") attached to the *Notice of Filing of Proposed Sale Order* (Doc. No. 278). Paragraph 12 of the Bidding Procedures Order[2] requires the filing of any objections to the Sale Order by no later than October 16, 2023. Paragraph 22 makes clear that failure to file a timely objection will forever bar any objection to its entry.

The City objects to specific language in the Sale Order regarding the assumption and assignment of contracts that is overly broad, noncompliant with section 365 of the Bankruptcy Code, and objectionable. Also, because the Debtors are seeking approval of the Sale Order early in the process, before many essential and material facts are known, the City must also respectfully

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2] Order (A) Approving Bidding Procedures to Govern the Sale of All or Substantially All of the Debtors' Assets Pursuant to Section 363 of the Bankruptcy Code, (B) Approving Procedures Regarding Entry Into One or More Stalking Horse Agreements, (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of the Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) Scheduling Auctions for the Sales of the Company Assets and Hearings to Consider Approval of the Sales and Approving the Form and Manner of the Notice Thereof, and (F) Granting Related Relief, Docket Number 218.

object now to certain proposed provisions in the Sale Order to preserve its right to object later if needed when such facts become known and disclosed.

## I. Contract assumption and assignment objections

### A. Overly broad release provisions

1. The Sale Order proposed by the Debtors contains language that is far broader than permitted under Bankruptcy Code § 365 and that, followed to its logical conclusion, undermines and contradicts the purpose of § 365.[3]

2. The City has a contract with the Debtors (the "City Contract").[4] For purposes of Bankruptcy Code § 365, the City Contract is an executory contract, not an unexpired lease of real property. Thus, to assume the City Contract, the Debtor must (1) cure all non-penalty defaults under the City Contract at the time of assumption (or provide adequate assurance that they will be cured promptly), (2) compensate (or provide adequate assurance of prompt compensation) for any actual pecuniary losses from defaults, and (3) provide adequate assurance of future performance under the City Contract. 11 U.S.C. § 365(b)(1). If these conditions are met, the Bankruptcy Code permits the Debtors to assume the City Contract regardless of whether the City consents. The Bankruptcy Code does not provide any further releases; indeed, the contract must be assumed *cum onere*. *In re Fleming Cos., Inc.*, 499 F.3d 300, 308 (3d Cir. 2007). Yet, the language of the Sale Order impermissibly changes this outcome through the inclusion of overly broad release language.

---

[3] The primary purpose of Bankruptcy Code §365(b) is to protect the rights of a counterparty to an executory contract by requiring a debtor to provide a cure, or prompt cure, of any extant defaults as a condition precedent to the assumption and/or assignment of an executory contract. Nothing in the language of §365(b) suggests that it is intended to provide a debtor and/or an assignee with an extraordinary form or mechanism of bar or estoppel of the counterparty to assert its rights under an assumed and/or assigned contract. In fact, the concepts of adequate assurance and in §§365(b), (f), and (k) suggest that the converse is true.

[4] There is also a small lease, as noted in the cure notice objection filed contemporaneously. This Objection focuses on the larger City Contract for buses, chargers, and other equipment.

The proposed release language, if permitted to stand, literally converts an obligation to disclose and resolve extant non-penalty defaults into a bar date order for the assertion and quantification of all claims that have arisen or may yet arise in the future under the City Contract.

3. The City Contract contains a number of forward-looking provisions, such as warranty provisions which have not yet expired. For claim filing purposes, these provisions likely would be considered pre-petition contingent claims, as they arguably "relate back" to date the City Contract became effective. *See In re City of Detroit, Mich.*, 548 B.R. 748, 751 (Bankr. E.D. Mich. 2016) (discussing the "fair contemplation" test and its use in determining which claims arise prepetition). In other words, for bankruptcy claim purposes, warranty claims are contingent claims that "arise" when the contract is executed, even though performance is not triggered until a default is discovered, and even though no default has occurred or may ever be discovered.

4. This works well to ensure that all claims are dealt with when a case is filed, but it does not carry over to contract assumption. There, the focus is on whether a debtor or its assignee can continue to perform obligations when they become due. And, to that end, the Bankruptcy Code provides protections, such as requiring a debtor or assignee to provide adequate assurance that they can perform when the time comes. 11 U.S.C. § 365(b)(1)(C).

5. In seeking to provide maximum protection for their buyers (and value to their estates), the Debtors have gone too far with the language they propose in the Sale Order. The proposed Sale Order language states that "The payment of the applicable Cure Amounts . . . will effect a cure of . . . all other obligations or liabilities under any Assumed Contract existing . . . prior to the date that such executory contracts or unexpired leases are assumed . . . ." Sale Order, ¶ 23. It is not limited to obligations or liabilities that are in default at the time of assumption, and thereby known, to be asserted and quantified by the counterparty to the executory contract. As

noted, warranty obligations (and, indeed, *any* future obligations) are contingent liabilities that exist prior to the date that the contract is assumed: By the proposed language, payment of the Cure Amount extinguishes any future need to perform by the proposed buyer (because any obligations or liabilities under any Assumed Contract arguably and literally have been "forever barred" by the Sale Order).[5]

6. This concept appears multiple times in the Sale Order. For example,

> Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assumed Contracts are forever barred from raising or asserting against the Debtors and their estates or the Buyer any assignment fee, default, breach, claim, pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts, existing as of the date that such Assumed Contracts are assumed or arising by reason of or in connection with the Closing.

Sale Order, ¶ 35 (emphasis added). Other language can be similarly construed:

> Except as otherwise set forth in the APA, including the Assumed Liabilities and Cure Amounts that will be paid as provided in the APA, neither the Buyer, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Claim or Interest that arose or occurred prior to the Closing, or otherwise is assertable against the Debtors or is related to the Assets prior to the Closing.

Sale Order, ¶ 36. Paragraph 24 of the Sale Order appears to be a more ordinary statement of how contract assumption works under the Bankruptcy Code, but it remains uncertain whether that one paragraph suffices to walk back the broad language cited earlier in the proposed Sale Order.

[5] The language proposed in the Sale Order also negates the need for section 365(k) of the Bankruptcy Code which "*relieves the trustee and the estate from any liability for any breach of such contract . . . occurring after such assignment*." (emphasis added). If the Sale Order is read literally to "forever bar any *Claims* that arose or occurred prior to Closing" as opposed to "defaults," then section 365(k) is unnecessary and rendered a nullity (as is, for that matter, any obligation of future performance by an assignee and the corresponding need for adequate protection of future performance) under any interpretation of "Claim" that involves the "fair contemplation" test for determining when a claim arises, a test that has been adopted and applied by many courts.

7. There is no justification or need for this overly expansive language in the Sale Order. Payment of a Cure Amount for a contract should extinguish any claims for existing monetary defaults under that contract, as provided by § 365, and nothing more. Further sweeping language in contravention of Bankruptcy Code § 365 is inappropriate. It does injustice to the language and purpose of §365, and, where it additionally requires quantification of the contingent, unliquidated and, in some cases, unknown claims, as it does here, does not comport with notions of fundamental fairness.

8. The City thus objects to the Sale Order to the extent that it can be interpreted as allowing a cure payment to waive or reduce the City's future right to demand performance under any provision of the City Contract, regardless of when the City's right to demand performance may be considered to have arisen.

**B. Premature fixing of cure amounts**

9. The objection deadlines require fixing of the cure amounts now, as does paragraph 25 of the Sale Order. The cure amounts could change prior to the effective date of contract assignment, however, as a result of intervening circumstances. An example of this would be new claims under warranty provisions that manifest themselves as a result of equipment failures between now and the contract assignment date. The City objects to the fixing of the cure amount of the City Contract now without the possibility of revision to account for intervening circumstances between the current date and the date of its assumption, should that occur.[6]

[6] The Sale Order should expressly preserve, and not release, discharge or otherwise forever bar, the assertion and enforcement of any claim after assumption under the City Contract against the assignee of the City Contract after payment of any Cure Amount even though the claim arguably arose at the time the parties entered into the City Contract within the meaning and interpretation of §101(5). The Sale Order should be modified to make that clear.

**II. Undefined terms**

10. There are a number of places in the Sale Order that rely on definitions to be provided later by an Asset Purchase Agreement ("APA"). No APA has been filed on the docket as of the date of this filing, however. A draft APA has been shared, but the City has been told that it is confidential and subject to negotiation and change. As a result, no reliance can be placed by the City on an APA that can be changed at any time and in any way *after* the October 16 deadline for filing objections.

11. To be sure, it is possible that the City's objection might be limited or resolved if these terms were known. For example, if the term "Assumed Liabilities" is defined to include warranty obligations under any assumed contracts (and is not contradicted or overridden by other terms of the APA or Sale Order), then the question of whether warranty obligations are to be treated as prepetition claims is obviated. Conversely, the definitions could create new problems not currently foreseen or foreseeable. The City reserves the right to object to the Sale Order should one of the terms to be defined by the APA impair any rights the City has under the City Contract, other than such impairments as are permitted or required under Bankruptcy Code § 365.

**III. Fact finding premature**

12. The Sale Order contains numerous findings of fact that may or may not be correct at the time the Sale Order is entered. For example, much will depend on who, if anyone, is to replace the Debtors as the counterparty to the City Contract. There is no way to evaluate these findings until the time comes to enter the Sale Order, but, as noted previously, a failure to object now arguably forfeits the right to raise such objections later. Bidding Procedure Order, ¶ 22. Thus, the City reserves the right to object to the Sale Order to the extent that any finding of fact is not true at the time the final hearing is held on entry of the Sale Order.

13. With that said, and not by way of limitation, a few findings warrant specific comment

now. In particular, the City objects to paragraphs Y and 24 unless and until it is shown that "payment of the proposed Cure Amounts in accordance with the terms of the APA" actually is appropriate and in compliance with the requirements of Bankruptcy Code § 365. The City likewise objects to the extent that the "Excluded Liabilities" in paragraph FF may be defined in such a way as to conflict with any liabilities that must be assumed in connection with assumption of the City Contract.

## IV. Conclusion

The City normally would raise many of these objections later in the process, when counterparties to contracts are known, the terms of a sale or sales are presented, and the Sale Order is being considered for entry. To comply with the Bid Procedures Order, however, they arguably must be raised now, and thus for the reasons stated, the City objects to the Sale Order in its current proposed form.

Dated: October 16, 2023

Respectfully submitted,

**CONNOLLY GALLAGHER LLP**

*_/s/ Karen C. Bifferato_*
KAREN C. BIFFERATO (#3279)
1201 N. Market Street, 20th Floor
Wilmington, DE 19801
Telephone: 302-757-7300
Facsimile: 302-757-7299
kbifferato@connallygallagher.com

\- and -

**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**

Marc N. Swanson (Michigan P71149)
Ronald A. Spinner (Michigan P73198)
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
(313) 496-7829
(313) 496-8452 (Fax)
swansonm@millercanfield.com
spinner@millercanfield.com

*Attorneys for the City of Detroit, Michigan*