## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| PROTERRA INC, et al.,[1] | Case No. 23-11120-BLS |
|  | Jointly Administered |
| Debtors | **Re: Docket Number 279** |
|  | **Obj. Deadline:  10/16/23 at 4:00 p.m. (ET)** |

### OBJECTION OF THE CITY OF DETROIT TO NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) PROPOSED CURE AMOUNTS

The City of Detroit, Michigan ("City"), by and through its undersigned counsel, objects to the *Notice of (I) Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (II) Proposed Cure Amounts* ("Notice," Doc. No. 279), respectfully stating as follows.

1.  The Notice lists five purported contracts with the City:

- #459 Purchase Order (Purchase Order: 3054962 For Contract Agreement: 6003774 Change Order: 1) 1/21/2022

- #460 Purchase and Sale of FOUR 40FT BEBs and Charging Stations (Contract No.PA-2021-001-DDOT) 6/18/2021

- #461 Contract Purchase Agreement Dated August 3, 2021 (Contract No. 6003774) 8/3/2021

- #462 Department of Transportation (DDOT) Bus Acceptance (3054320) 2/15/2022

- #1008 Quote for Construction and Temporary Equipment Installation 3/1/2022

With respect to these purported contracts, the City has the following objections.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

2.    The first four items[2] are actually all one contract (the "City Contract"), and are various

purchase orders and documents that implement the City Contract.  Because these are all part of

one contract -- the City Contract -- they cannot be assumed or rejected piecemeal.  *In re Fleming*

*Cos., Inc.*, 499 F.3d 300, 308 (3d Cir. 2007).  The City objects to any attempt to characterize the

City Contract in any other manner than as a single agreement, assumable or rejectable *cum onere*.

3.    Item #1008 appears to be an unexpired lease for a temporary charger.

4.    The remainder of this Objection treats the Notice as proposing assumption of two

contracts with the City, the City Contract and item #1008 (the unexpired lease), for which Proterra

asserts that there is no cure amount due.  The focus will be on the City Contract, as it is by far the

larger, although the Objection applies equally to each.

5.    The Notice implements paragraph 5d of the Bidding Procedures Order,[3] which requires

the filing of

> Objections . . . if any, to one or more of (i) a scheduled Cure Amount,
> (ii) the ability of the Stalking Horse Bidders, if any, to provide
> adequate assurance of future performance, and (iii) the proposed
> assumption, assignment, and/or transfer of such Contract (including
> the transfer of any related rights or benefits thereunder), other than
> objections that relate specifically to the identity of any Successful
> Bidder (other than the Stalking Horse Bidders, if any) . . . .

---

[2] The Debtors' notations on the Notice are not entirely clear; this represents the City's best interpretation from its internal documents.

[3] *Order (A) Approving Bidding Procedures to Govern the Sale of All or Substantially All of the Debtors' Assets Pursuant to Section 363 of the Bankruptcy Code, (B) Approving Procedures Regarding Entry Into One or More Stalking Horse Agreements, (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of the Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) Scheduling Auctions for the Sales of the Company Assets and Hearings to Consider Approval of the Sales and Approving the Form and Manner of the Notice Thereof, and (F) Granting Related Relief*, Docket Number 218.

Bidding Procedures Order, ¶ 5d.  As of the date of this Objection, the City has not received any notice identifying any Stalking Horse bidders.

6.   For its part, the Notice states

> If you disagree with the proposed Cure Amount, object to the proposed assumption and assignment of the Contract(s) to the Successful Bidder, or object to the Successful Bidder's ability to provide adequate assurance of future performance with respect to any Contract(s), you must file an objection (a "Cure/Assignment Objection"), stating with specificity the nature of your objection . . . .

Notice, ¶ 5.  Taking these points in turn, the City has the additional following limited objections.

7.   **Cure Amount.**  For purposes of Bankruptcy Code § 365, the City Contract is an executory contract, not an unexpired lease of real property.  Thus, speaking broadly, to assume the City Contract, the Debtor must cure all non-penalty defaults under it, or provide adequate assurance of prompt cure of such defaults.  As the City is a buyer of goods and services from the Debtors, rather than a seller, the City does not believe it is currently due any money under the City Contract (but it may have claims under the City Contract).

8.   That said, the City Contract contains a number of forward-looking provisions, such as warranty provisions which have not yet expired.  Under certain legal principles, claims under these provisions might arguably "relate back" to as early as the date that the City Contract became effective.  *See In re City of Detroit, Mich.*, 548 B.R. 748, 751 (Bankr. E.D. Mich. 2016) (discussing the "fair contemplation" test and its use in determining which claims arise prepetition).  Claims that arise under a contract are generally considered within the "fair contemplation" of the parties and thus can be considered pre-petition claims.  And this principle, taken with the language proposed by the Debtors for its orders, could lead to such claims being lost as part of the contract assumption and assignment process.

9.   The Debtors' language triggers these concerns.  For example, paragraph 5f of the

- 3-

Bidding Procedures Order could be interpreted in this fashion.  Contract counterparties that fail to

object

> (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure <u>or other amounts</u> with respect to such Contract in the event it is assumed and/or assigned by the Debtors….; and (ii)…<u>shall be forever barred and estopped from . . . asserting</u> or claiming against the Debtors or the applicable assignee <u>that any additional pre-assignment amounts are due</u> or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied under such Contract, that any related right or benefit under such Contract cannot or will not be available to the relevant assignee, or that the assignee failed to provide such Non-Debtor Counterparty with adequate assurance of future performance.

Bidding Procedures Order, ¶ 5f.  A warranty claim is arguably a pre-petition claim for bankruptcy

purposes, which makes it is a pre-assignment claim.  Under this directive, failure to object could

be read to mean loss of the warranty claim, even though the contract has been assumed.

10. The proposed Sale Order filed at Docket Number 278 contains even stronger language.

> <u>The payment of the applicable Cure Amounts (if any)</u>, or any other cure amount reached by agreement after any Cure/Assignment Objection, <u>will effect a cure of</u> all defaults and <u>all other obligations or liabilities under any Assumed Contract existing</u>, occurring, arising, or accruing <u>prior to the date that such executory contracts or unexpired leases are assumed</u> and compensate for any actual pecuniary loss to such Non-Debtor Counterparty resulting from such default.

Sale Order, ¶ 22 (emphasis added).[4]  For further example from the Sale Order,

> Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, <u>all counterparties to the Assumed Contracts are forever barred from raising</u> or asserting against the Debtors and their estates or the Buyer <u>any</u> assignment fee, default, breach, <u>claim</u>, pecuniary loss, or condition to assignment, <u>arising under or related to the Assumed Contracts, existing as of the date that such Assumed Contracts are assumed</u> or arising by reason of or in connection with the Closing.

Sale Order, ¶ 35 (emphasis added).

---

[4] An objection to the Sale Order is being filed contemporaneously with this Objection.

11. "Claim" is defined very broadly in the Bankruptcy Code. 11 U.S.C. § 101(5). As noted previously, the "fair contemplation" test makes contingent claims, like warranty claims, prepetition claims so that they can be dealt with in the bankruptcy context. *See City of Detroit*, 548 B.R. at 751. But what works for claim resolution does not work well for contract assumption. The cure provisions and Sale Order language are drafted so broadly that they could dispose of these claims without payment, as there is no monetary "cure" amount due for them. Such a result takes the admirable goal of dealing with all claims at once and turns it on its head to vitiate the protections of Bankruptcy Code § 365.

12. There is no need for such broad language; Bankruptcy Code § 365 provides all the protections required. Thus, the City is both objecting separately to the proposed Sale Order and objecting here to the $0 cure amount proposed to the extent that it might be interpreted as including any future contractual performance obligations within it.

13. For this reason, the City objects to any interpretation of the City Contract and bankruptcy law that would hold that failure to insist on a non-zero cure amount under the City Contract operates to waive the City's future right to demand performance under any provision of the City Contract, regardless of when the City's right to demand performance may be considered to have arisen.

14. **Adequate Assurance**. As worded in the above-quoted section of the Notice, the City is to identify any objections it has with respect to "the Successful Bidder's ability to provide adequate assurance of future performance with respect to [the City's contract]." This is not yet possible because the identity of the Successful Bidder (including any Stalking Horse bidders) is not known. The Bidding Procedures Order also requires the City to object to the ability of the Stalking Horse Bidders, if any, to provide adequate assurance of future performance. The City is

41249521.3/022765.00213

Case 23-11120-BLS    Doc 412    Filed 10/16/23    Page 6 of 7

not aware of a Stalking Horse Bidder. To the extent there is one, the City has not received any adequate assurance of future performance and objects on that basis.

15. "The statutory requirement of adequate assurance of future performance by the assignee affords needed protection to the non-debtor party because the assignment relieves the trustee and the bankruptcy estate from liability for breaches arising after the assignment." *Fleming Cos.*, 499 F.3d at 305. Assignment of a contract cannot occur without the Debtors making this showing. 11 U.S.C. § 365(b)(1)(C)). Here, without the identity of the assignee known, there is no way this showing can be made.

16. To be clear, the City is aware that paragraph 8 of the Notice appears to preserve this objection for when the identity of the Successful Bidder, if any, becomes known. Further, counsel for the Debtors have communicated that, paragraph 5 of the Notice notwithstanding, it is not the Debtors' intent to require such objections at this stage of the process. However, because the language of paragraph 5 of the Notice does not match this understanding, and because paragraph 5d of the Bidding Procedures Order expressly carves out Stalking Horse bidders from this understanding, the City must expressly reserve its rights to object to assignment of the City Contract to any specific entity, and further to that entity's ability to perform under the contract, for such time as when the identity of the entity officially is made known to the City and the entity's ability to perform can be reviewed.

- 6-

41249521.3/022765.00213

Dated:  October 16, 2023        Respectfully submitted,

**CONNOLLY GALLAGHER LLP**

*/s/ Karen C. Bifferato*
KAREN C. BIFFERATO (#3279)
1201 N. Market Street, 20th Floor
Wilmington, DE 19801
Telephone: 302-757-7300
Facsimile: 302-757-7299
kbifferato@connallygallagher.com

- and -

**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**
Marc N. Swanson (Michigan P71149)
Ronald A. Spinner (Michigan P73198)
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
(313) 496-7829
(313) 496-8452 (Fax)
swansonm@millercanfield.com
spinner@millercanfield.com

*Attorneys for the City of Detroit, Michigan*

41249521.3/022765.00213