**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PROTERRA INC, et al.,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 23-11120 (BLS)<br>(Jointly Administered)<br><br>**Re D.I.: 279** |

**OBJECTION OF THE CITY OF EDMONTON TO NOTICE OF**
**(I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES AND (II) PROPOSED CURE AMOUNTS**

The City of Edmonton ("**Edmonton**"), through its counsel Benesch, Friedlander, Coplan & Aronoff LLP, hereby objects (this "**Objection**") to the *Debtor's Notice of (I) Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (II) Proposed Cure Amounts* [D.I. 279] (the "**Assumption and Cure Notice**"). In support of this Objection, Edmonton states the following:

**BACKGROUND**

A.      **The Contract**

1.      Prior to the Petition Date, as defined below, on October 31, 2018, Debtor Proterra Inc. ("**Proterra**") and Edmonton entered into Contract No. 929211 40FT BEBs and Charging Systems (929211) (the "**Contract**"), pursuant to which Proterra agreed to supply Edmonton with heavy duty, forty-foot battery-electric transit buses equipped for use by Edmonton's transit passengers, as well as a number of charging stations and control systems for the fleet of electric buses.  Under the Contract, Edmonton ordered a total of 60 electric buses (the "**Buses**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (1379); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

23378324

2.    In consideration for delivery of the Buses, Edmonton agreed to pay Proterra the sum of $58,761,600.00 (USD).   In exchange for the purchase price, the Contract—and the negotiated request for proposal (the "**NRFP**") that precipitated it—provided expressly that the electric buses delivered by Proterra must meet certain qualifications, including with respect to range, battery life, reliability, and durability.  As discussed below, to Edmonton's detriment, the electric buses have failed to meet those qualifications.

3.    Under the Contract, Proterra delivered the Buses to Edmonton, and Edmonton paid the Purchase Price to Proterra.  Unfortunately, Edmonton has experienced multiple issues with the Buses,  which has caused the Buses to be regularly out of service, at times resulting in more than half of the Buses to be out of service for non-routine maintenance.

4.    The deficiencies with the Buses include but are not limited to: the actual range of the electric buses being shorter than stated by Proterra—an issue that is exacerbated in Edmonton's cold winters, issues with the construction and durability of the body of the Buses and other hardware installed on the Buses, and issues with the reliability of the software that controls the Buses.

5.    The foregoing issues, all relating to poorly implemented design choices or poor craftsmanship and workmanship by Proterra, were in direct breach of Proterra's duties and obligations under the Contract.  The practical result of these issues is damages incurred by Edmonton in the form of, without limitation: (i) internal labor costs related to maintenance and repairs; (ii) parts purchased from Proterra and other vendors to perform maintenance or make repairs; and (iii) "battery blankets" purchased to ameliorate the cold-weather range issues. Specifically, Edmonton has incurred the following actual damages:

| Category: | Damages: (in $CAD) |
|---|---|
| Internal labor costs: | $302,263.33 |
| Parts purchased (not including battery blankets): | $824,777.67 |
| Purchase of battery blankets: | $206,122.50 |
| Outstanding A/R | $19,492.08 |
| **Total:[2]** | **$1,352,655.58** |

6.      With respect to Proterra's default of its obligation to provide Edmonton with a product that met the Contractual and industry standards, in its "General Conditions", the Contract provides that Edmonton "may, without prejudice to any other right or remedy it may have…[c]orrect such default and deduct from any amount payable to [Proterra] the difference of the cost of correcting the default from the Pricing [Proterra] would have been entitled to charge [Edmonton] had [Proterra] not defaulted on its obligations under this Contract."  Contract, General Conditions, Art. 19.4.2.[3]

7.      Article 1.7 of the "Supplementary General Conditions" to the Contract, which amends Article 6.0 of the General Conditions provides, in turn:

> Without limiting any other remedy which [Edmonton] may have under this Contract or at law, [Proterra] at its sole cost upon written request of [Edmonton] will rectify the Work which has not been performed in accordance with the care, skill, diligence, and efficiency as warranted or represented by [Proterra] or which has not otherwise been performed in accordance with the terms of this Contract, and will do all such things that may be reasonably required by [Edmonton] to satisfy [Edmonton] that the Services have been

---

[2]  The calculation contained herein is made solely for the purpose of responding to the Cure and Assumption Notice and in connection with the potential assumption and assignment of the Contract.  Edmonton notes that there are potentially significant contingent or unliquidated claims that may arise under the Contact or otherwise and reserves the right to amend the amount of its claim in connection with, among other things, the ongoing sale process and the assumption of the Contract in any Potential Transaction, and the filing of any proof or proofs of claim in these Chapter 11 Cases.

[3]  As the Contact and the attachments thereto are voluminous and copies should already be in the Debtors' possession, Edmonton has not attached it as an exhibit to this Objection.  A copy of the Contract will be provided upon request to undersigned counsel.  Defined terms used, but not defined, in the description of the Contract have the meaning given in the Contract.

duly performed or rectified in accordance with the terms of this Contract.

Contract, Supplementary General Conditions, Art. 1.7.

8.      Finally, Article 1.12 of the Supplementary General Conditions, which amends Article 12.1 of the General Conditions, provides that, in an instance where Proterra is unable to supply a particular Product or Service to Edmonton in accordance with the Contract, including without limitation, with respect to timing, quantity, or quality of the Product or Service, then Edmonton is "entitled, in its sole discretion, to purchase the particular Product or Service from any other supplier." Contract, Supplementary General Conditions, Art. 1.7. In that case, Edmonton is "entitled to deduct the difference of the price of the Product or Service provided by the other supplier from the Pricing [Proterra] would have charged for the Product or Service had it been delivered by [Proterra] in accordance with this Contract." *Id.*

9.      Taken together these provisions provide that, as a result of Proterra's default of its obligation to deliver a working fleet of Buses to Edmonton, Edmonton is entitled under the Contract to reimbursement of the expenses it incurred in the form of internal and third-party labor, the purchase of replacement parts and materials, and the loss of use of the Buses for significant periods of time. These damages form the basis for the Actual Cure Amount, as defined below.

10.      In addition to the actual damages already incurred by Edmonton that underlie the Actual Cure Amount, the Contract provides for significant obligations owed from Proterra (or any subsequent assignee) to Edmonton. Specifically, among other things the Contract provides for an ongoing Product Warranty and Service Warranty for the Buses. *See* Contract, General Conditions, at Art. 11.0. Additionally, the Contract requires that Proterra (or any subsequent assignee) must indemnify Edmonton for certain claims or damages caused by Proterra's actions or the deficiencies with the Buses. *See* Contract, General Conditions, at Art. 22.0. Proterra's (or any subsequent

assignee) representations as well as its warranty and indemnification obligations survive the expiration and termination of the Contract. *See* Contract, General Conditions, at Art. 26.1.

11.    Given its experiences thus far with the Buses, it is likely that Edmonton will incur damages in the future under the representations, warranties, and indemnification provisions of the Contract, and reserves all rights with respect to the same.

**B.    The Bankruptcy Cases**

12.    On August 7, 2023, Proterra Inc and Proterra Operating Company, Inc. (the "**Debtors**") commenced their cases under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") that are now pending with this Court. The Debtors cases are being jointly administered.

13.    The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

14.    On August 8, 2023, the Debtors filed a motion [D.I. 36] (the "**Sale Motion**"), seeking, among other things, approval of certain bidding procedures to govern the sale of all or substantially all of the Debtors' assets pursuant to Section 363 of the Bankruptcy Code and, in connection therewith, establishing procedures for the assumption and assignment of executory contracts and unexpired leases.

15.    On September 7, 2023, the Bankruptcy Court entered an order [D.I. 218] (the "**Bidding Procedures Order**"),[4] which approved, among other things, certain bidding procedures pursuant to which the Debtors are authorized to solicit and pursue one or more sales or dispositions of all or any portion of the Debtors' assets under section 363 of the Bankruptcy Code or any other type of strategic transaction involving the Debtors' assets (such an asset sale or other

---

[4] Capitalized terms used but not defined herein have the meanings given in the Bidding Procedures Order.

strategic transaction referred to as a "**Potential Transaction**"), and procedures in connection with

the assumption and assignment of any executory contracts or unexpired leases the Debtors seek to

have assumed and assigned in connection with a Potential Transaction.

16.    On September 25, 2023, the Debtors filed the Assumption and Cure Notice.

17.    Appendix A to the Assumption and Cure Notice lists the following contracts with

Edmonton (collectively, the "**Identified Contracts**")[5] as contracts the Debtors may potentially

assume and/or assign in connection with a Potential Transaction, with an aggregate cure amount

of $13,874.67 (the "**Proposed Cure Amount**"):

| # | Contract Description | Date |
|---|---|---|
| 463 | City of Edmonton Contract No. 929211 40FT BEBs and Charging Systems (929211) | 10/31/2018 |
| 464 | City of Edmonton Contract No. 929211 40FT BEBs and Charging Systems (929211) | 10/31/2018 |
| 465 | City of Edmonton Letter re: Renewal for 1 Year | 6/8/2020 |
| 466 | City of Edmonton Letter re: Renewal with Rate Schedule | 6/2/2021 |
| 467 | City of Edmonton Letter re: Contract Renewal (929211A) | 6/2/2021 |
| 468 | City of Edmonton Letter re: Exercising Option to Renew for One Year Term | 7/20/2023 |
| 469 | City of Edmonton Change to C-Release | 2/15/2019 |
| 470 | City of Edmonton Change to C-Release | 5/17/2019 |
| 471 | City of Edmonton Change to C-Release | 5/22/2019 |
| 472 | City of Edmonton Change to C-Release | 5/23/2019 |
| 473 | City of Edmonton Change to C-Release | 12/3/2019 |
| 474 | City of Edmonton Change to C-Release | 3/3/2020 |
| 475 | City of Edmonton Change to C-Release | 3/3/2020 |
| 476 | City of Edmonton Order Form | Unknown |
| 477 | City of Edmonton Order Form: Valence Platform | Unknown |
| 478 | City of Edmonton Contract Form (929211) | 10/31/2018 |

---

[5] Most of the items listed as separate Identified Contracts are in fact amendments, extensions, or other modifications to or other documents (including exhibits and purchase orders) that are part of the initial Contract between Proterra and Edmonton, which itself appears to be listed twice on lines 463 and 464 of the Assumption and Cure Notice. However, these are not stand-alone agreements with the Debtors, they are ancillary to and included within the Contract or arise out of the unitary transaction completed thereunder.  To the extent the Assumption and Cure Notice implies that Potential Transaction might include assignment of only some but not all of the Identified Contracts, Edmonton objects to such an assignment.  All components of a single contract must be assumed or rejected with the entirety of the Contract to which they relate.  *See, e.g. In re Physiotherapy Holdings, Inc.*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *In re Exide Techs.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006) ("An executory contract must be assumed or rejected in toto. A contract will not be bifurcated into parts that will be rejected and those that will not. Correspondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract.") (internal citations omitted), vacated on other grounds, 607 F.3d 957 (3d Cir. 2010).

| # | Contract Description | Date |
|---|---|---|
| 479 | City of Edmonton Amending Agreement #1 | 7/9/2018 |
| 480 | City of Edmonton Amending Agreement #2 | 9/18/2018 |
| 481 | City of Edmonton Amending Agreement #3 | 9/27/2018 |
| 482 | City of Edmonton Amending Agreement #4 | 10/23/2018 |
| 483 | City of Edmonton Amending Agreement #5 | 11/26/2018 |
| 484 | City of Edmonton Amending Agreement #6 | 2/14/2019 |
| 485 | City of Edmonton Amending Agreement #7 | 6/10/2019 |
| 486 | City of Edmonton Amending Agreement #8 | 7/22/2019 |
| 487 | City of Edmonton Amending Agreement #9 | 11/21/2019 |
| 488 | City of Edmonton Amending Agreement #10 | 12/31/2019 |
| 489 | City of Edmonton Amending Agreement #11 | 3/3/2020 |
| 490 | City of Edmonton Amending Agreement #1 (D929211A) | 3/15/2022 |
| 491 | City of Edmonton Purchase Order (Order No: 4000178026) | 2/6/2023 |

18.     The deadline for counterparties to object to the proposed assumption or assignment of contracts and any proposed cure amounts was October 16, 2023, which was extended for Edmonton through and including October 20, 2023.

19.     Edmonton is filing this Objection to: (a) assert the Actual Cure Amount, as defined below, as to the Contract; (b) to preserve all warranty or indemnity claims it may have against the Debtors based upon goods or services provided by the Debtors to Edmonton; and (c) to preserve all objections to adequate assurance of future performance under the Contract.

**OBJECTION**

**1.     The Proposed Cure Amount is Inadequate**

20.     Section 365(b)(1) of the Bankruptcy Code provides that a debtor may not assume an unexpired lease or executory contract on which there has been a default unless it: (a) cures the default or provides adequate assurance that the default will be promptly cured; (b) compensates or provides adequate assurance that any pecuniary loss of the counterparty resulting from the default will be promptly compensated; and (c) provides adequate assurance of future performance under the contract. 11 U.S.C. § 365(b)(1); *see also Kimmelman v. Port Auth. of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.),* 344 F.3d 311, 317-18 (3d Cir. 2003) ("In order to assume [an executory

contract or unexpired lease], the debtor in possession must cure defaults and provide assurance of future performance.").

21.     According to Edmontons's books and records, the Cure Amount for the Contract as of October 20, 2023 is **$1,352,655.58 (CAD)** (the "**Actual Cure Amount**")[6] based upon, as outlined above, the actual damages incurred by Edmonton as a result of Proterra's delivery of defective Buses as calculated as of the date of this Objection.

22.     Edmonton therefore objects to the stated Proposed Cure Amount for the Contract and asserts that, in order for Proterra to assume and assign the Contract, the Debtors must pay the Actual Cure Amount plus any obligations incurred thereunder through the date of assumption.

23.     In addition, Edmonton may have cure claims with respect to warranty or indemnity claims against the Debtors that are not yet identified or identifiable but arise under provisions of the Contract that have not yet expired. Under certain legal principles, claims under these provisions might be considered to be pre-petition claims.  The cure provisions and language in the proposed sale order are drafted so broadly that they could dispose of these claims without payment, as there is no monetary "cure" amount presently due for them.

24.     However, it is axiomatic that the assumption and assignment of the Contract will carry with it the full benefits and burdens of that Contract.  In other words, obligations and burdens may not be "cherry picked." *See In re Taylor*, 913 F.2d 102, 106-07 (3d Cir. 1990) ("[T]he 'assume' or 'reject' dichotomy means simply that if the trustee wishes to obtain for the estate the future benefits of the executory portion of the contract, the trustee must also assume the burdens

---

[6] The calculation of Actual Cure Amount contained herein is made solely for the purpose of responding to the Cure and Assumption Notice and in connection with the potential assumption and assignment of the Contract.  Edmonton notes that there are potentially significant contingent or unliquidated claims that may arise under the Contact or otherwise and reserves the right to amend the amount of its claim in connection with, among other things, the ongoing sale process and the assumption of the Contract in any Potential Transaction, and the filing of any proof or proofs of claim in these Chapter 11 Cases.

of that contract . . ."); *In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir. 1951) ("The trustee, however, may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens.").

25.     Edmonton objects to the Proposed Cure Amount to the extent that it that it might be interpreted cutting off any future contractual performance obligations that must be assumed with the Contract, including, without limitation, claims for potential warranty or indemnity claims that Edmonton may have for buses, parts, batteries, chargers, and other items or services that it purchased from the Debtors.  Thus, to avoid unnecessary disputes in the future, the Court should condition the assumption and assignment of the Contract on any purchaser assuming on all obligations coming due on or after the filing of this Objection, including, without limitation all claims arising under the warranty or indemnity provisions of the Contract.

**2.      The Debtors Have Not Provided Edmonton with Adequate Assurance of Future Performance under the Contract**

26.     In addition to payment of the Actual Cure Amount, the Contract may not be assumed and assigned unless Edmonton is provided adequate assurance of future performance under the Contract by any proposed assignee. *See* 11 U.S.C. §§ 365(b)(1)(C) & 365(f)(2).

27.     As outlined above, the Contract imposes performance obligations in connection with the production, delivery and maintenance of the Buses and chargers and related components thereof as well as warranty and indemnification provisions that Proterra (or its subsequent assignee) must comply with, all of which necessarily will be assumed by the Successful Bidder should the Contract be assumed and assigned under any Potential Transaction.

28.     Edmonton, however, has not yet been definitively advised as to whether any Successful Bidder intends to seek assignment of the Contract.  Edmonton accordingly does not have, and the Debtors have not supplied, any information, much less sufficient information or a

9

reasonable amount of time, to determine if a Successful Bidder would be capable of providing adequate assurance of future performance.

29.     Therefore, Edmonton objects to the Cure and Assumption Notice on the basis that it does not have adequate assurance of future performance as required by § 365(f)(2) of the Bankruptcy Code.  While Edmonton does not object *per se* to the possible assumption of the Contract in a Potential Transaction—indeed it would welcome it under the right circumstances— at the time of filing this Objection, in addition to the cure issues identified above, Edmonton must be provided with sufficient information to determine the wherewithal of any potential assignee to meet its obligations under the Contract and to build a productive partnership with Edmonton going forward.

30.     Accordingly, if the Debtor wants to assume or assign the Contract, it must both pay the Actual Cure Amount and expressly assume and satisfy all warranty and indemnity obligations relating to goods or services provided by the Debtors to Edmonton under the Contract through the date of assumption and any proposed assignee must assume those obligations going forward.

31.     Additionally, because the Debtors have not demonstrated adequate assurance of future performance under the Contract nor identified the ultimate buyer or assignee, Edmonton hereby reserves all rights to object to adequate assurance of future performance under the Contract until the buyer or assignee has been identified and Edmonton can determine whether the buyer or assignee can provide adequate assurance of future performance.

**RESERVATION OF RIGHTS**

32.     Edmonton expressly reserves the right to amend this Objection or to make such other and further objections as may be appropriate or necessary with respect to any Potential Transaction, including, without limitation, (i) to amend the amount of its claim in connection with,

among other things, the ongoing sale process and the assumption of the Contract in any Potential

Transaction, and the filing of any proof or proofs of claim in these Chapter 11 Cases, and (ii) to

raise any additional objections regarding the assignment of the Contract to a Successful Bidder

once any Successful Bidder is identified.

    **WHEREFORE**, to the extent the Debtors seek to assume and assign the Contract,

Edmonton respectfully requests that the Court order that (i) any assumption and assignment of the

Contract be conditioned upon the provision to Edmonton of sufficient information to demonstrate

and provide adequate assurance of future performance under the Contract; (ii) the Debtors or the

applicable assignee be required to expressly assume and satisfy all warranty and indemnity

obligations relating to goods or services provided under the Contract; and (iii) the Cure Amount

for the Contract be established as **$1,352,655.58 (CAD)**.


Date: October 20, 2023

                                    **BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**

                                    */s/ Daniel N. Brogan*
                                    Jennifer R. Hoover (DE No. 5111)
                                    Daniel N. Brogan (DE No. 5723)
                                    1313 North Market Street, Suite 1201
                                    Wilmington, DE 19801
                                    Telephone: (302) 442-7010
                                    Facsimile: (302) 442-7012
                                    E-mail:    jhoover@beneschlaw.com
                                                      dbrogan@beneschlaw.com

                                    *Counsel to the City of Edmonton*

**CERTIFICATE OF SERVICE**

       I, Daniel N. Brogan, hereby certify that, on October 20, 2023, I caused a true and correct copy of the foregoing *Objection of the City of Edmonton to Notice of (I) Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (II) Proposed Cure Amounts* to be served by CM/ECF with a copy by electronic mail, where available, upon the parties listed below:

Paul Basta
Robert Britton
Paul, Weiss, Rifkind, Wharton & Garrison LLP
pbasta@paulweiss.com, rbritton@paulweiss.com
*Counsel for Debtors*

Pauline K. Morgan
Andrew L. Magaziner
Young Conaway Stargatt & Taylor LLP
pmorgan@ycst.com, amagaziner@ycst.com
*Counsel for Debtors*

Linda J. Casey
Office of the United States Trustee
District of Delaware
linda.casey@usdoj.gov

Jeffrey Cohen
Eric Chafetz
Jordana Renert
Keara Waldron
Lowenstein Sandler LLP
jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com, kwaldron@lowenstein.com
*Counsel for the Committee*

Eric Monzo Brya
Keilson Morris James LLP
emonzo@morrisjames.com, bkeilson@morrisjames.com
*Counsel for the Committee*

                                */s/ Daniel N. Brogan*
                                Daniel N. Brogan (#5723)