**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>PROTERRA, INC., et al.,[1]<br>Debtors. | Chapter 11<br>Case No. 23-11120-BLS<br>Jointly Administered<br>**Re: Docket Number 529** |

**OBJECTION AND RESERVATION OF RIGHTS OF THE CITY OF MADISON TO NOTICE OF (A) SUCCESSFUL BIDDER REGARDING DEBTORS' (I) TRANSIT ASSETS AND (II) ENERGY ASSETS AND (B) CANCELLATION OF THE SALE HEARING WITH RESPECT TO PROTERRA ENERGY**

The City of Madison, Wisconsin ("City"), by and through its undersigned counsel, objects to the *Notice of (A) Successful Bidder Regarding Debtors' (I) Transit Assets and (II) Energy Assets and (B) Cancellation of the Sale Hearing Solely with Respect to Proterra Energy* ("Notice," Doc. No. 529). As provided in the Notice, "objections, if any, [. . .] to the specific identity of and adequate assurance of future performance provided by the Successful Bidder, must be filed by Tuesday, November 21, 2023 at 4:00 p.m. (prevailing Eastern Time)." *Id.* (Emphasis removed). Based on the information available thus far, the City objects to the lack of adequate assurance of future performance of its contracts with the Debtors.

As noted in its prior objections,[2] the City has one contract with the Debtors for buses, chargers, and other equipment. This contract contains forward-looking provisions, including warranty obligations on the part of the Debtors. The Notice[3] provides that the "Proterra Transit" assets are to be sold to Phoenix Motor, Inc. ("Buyer"). The Buyer would thus become the

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra, Inc. (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2] Docket numbers 443 and 444.

[3] Docket number 529.

counterparty for the City's contract.

The City would like nothing more than to have its contract assumed by a counterparty which it can trust to fulfill future obligations. The sparse information available to the City thus far, however, does not give the City confidence that the Buyer can fulfill the City's contract. The City objects because insufficient information has been provided (much less reviewed and confirmed to the satisfaction of the City) to demonstrate that the Buyer can step up to the challenge of performing the Debtors' contract for the City while simultaneously doing the same for the Debtor's numerous other municipal customers.

The City's contract is also very clear on assignment, stating that "Contractor [i.e., Proterra] shall not assign or subcontract any interest of obligation under this Contract without the City's prior written approval. All of the services required hereunder will be performed by Contractor and employees of Contractor." This language explicitly supersedes any other assignment language in the contract.

### A.     Reasons for concern

The City's contract is for buses used in municipal transit and for related equipment. A review of the Buyer's website[4] shows that the Buyer "manufactures electric shuttle buses, work trucks, and school buses." The Buyer's website does not indicate much (or any) experience with municipal transit. Shuttle and school buses are not necessarily the same as those used in municipal transit. Municipal buses are typically built for heavier duty and are subject to significant wear and tear. Thus, it is unclear whether the Buyer has the experience needed to perform this type of contract.

The Buyer appears to be a small company, with (on information and belief) around 50-60

---

[4] Presumed to be https://phoenixmotorcars.com/overview/default.aspx.

employees, which might make it difficult to absorb a large operation such as that of Proterra Transit. On information and belief, the Buyer proposes to assume a large number of other municipal contracts at the same time. That would seem to be a daunting challenge for a company as small as the Buyer appears to be. The City requires additional evidence that the Buyer will be able to meet this challenge.

Finally, the proposed bid appears to be $10 million, which is nearly half of the Debtors' recent market capitalization.[5] As a further indication of how small the Buyer is, it appears the Buyer recently was in danger of being delisted from the NASDAQ exchange for having too low of a share price.[6] This calls into question whether the Buyer has the financial strength it will need to be able to absorb the obligations involved in performing the Proterra Transit contracts.

Taken together, the Buyer's proposed purchase of the Proterra Transit assets, and assumption of related contracts, causes the City concern. The Proterra Transit arm of the Debtors' business is working at the cutting edge of technology, providing a very specific set of transit solutions for municipal customers. The City requires concrete evidence that the Buyer, a small company of apparently limited size and scope, will be able to perform the City's contract and those of other municipalities.

Additionally, Federal Transit Authority rules, regulations, and grant requirements, as well as compliance with City policies and ordinances, require certifications by parties with whom the City contracts. These various certifications include Disadvantaged Business Enterprise requirements, Affirmative Action requirements, and more. These various certifications and requirements are included within the City's contract. The Buyer has not completed these federally

---

[5] https://finance.yahoo.com/quote/PEV/ (accessed Nov. 20, 2023 by agents of another creditor).
[6] https://finance.yahoo.com/news/phoenix-motor-inc-regains-compliance-160000509.html.

and municipally required forms or shown any equivalent information that would satisfy these requirements for doing business with the City's transit service generally or performing the obligations of the contract specifically.

## II. The law on assumption and assignment of contracts requires that the Debtors provide adequate assurance that the Buyer can perform the City's contracts.

Before a debtor may assume and assign a contract, it must provide adequate assurance that the party to whom the contract will be assigned can perform the obligations required under the contract. 11 U.S.C. § 365(b)(1), (f)(2); Fed. R. Bankr. P. 6006(c), (f)(4). The requirement to provide adequate assurance of future performance is for the protection of the non-debtor counterparty. *Cinicola v. Scharffenberger*, 248 F.3d 110, 119-20 (3d Cir. 2001). The debtor has the burden of providing this adequate assurance. *Stanley Jacobs Prod., Ltd. v. 9472541 Canada Inc. (In re Thane Int'l, Inc.)*, 586 B.R. 540, 546 (Bankr. D. Del. 2018).

To assume and assign the City's contract to the Buyer, the Debtors must provide adequate assurance that the Buyer can meet its future monetary and non-monetary obligations under the contract. *See in re GP Express Airlines, Inc.*, 200 B.R. 222, 234 (Bankr. D. Neb. 1996) ("In order to assume the contracts, Debtor must provide adequate assurance that it can perform its nonmonetary obligations in the future. If such assurance is not provided, the City's contract cannot be assumed under section 365(b)(1)(C)."). This is especially true where, as here, circumstances call into question whether the party tasked to perform under the contract will be able to meet those obligations. *See in re Texas Health Enters., Inc.*, 246 B.R. 832 (Bankr. E.D. Tex. 2000) (denying assumption of contract).

Here, there are ample grounds for concern. The Buyer's low number of employees, small market capitalization, and apparent inexperience with municipal bus systems calls into question

its ability to take on a project the size of Proterra Transit.  The City objects so as to reserve and preserve its rights until evidence is presented to show that the Buyer is up to this challenge.

### III.     Conclusion

The City thus objects to the Buyer assuming its contracts with the Debtors until and unless adequate assurance is provided that the Buyer has the wherewithal to perform its obligations under the contract alongside the myriad of other similar contracts with other creditors.

Dated this 21st day of November, 2023.

                                              **CITY OF MADISON**
                                              Office of the City Attorney

                                              By:  /s/ *Eric A. Finch*
                                              Eric A. Finch, Asst. City Attorney (SBN 1101771)
                                              Counsel Pro Hac Vice for the City of Madison, WI
                                              City-County Building, Room 401
                                              210 Martin Luther King, Jr. Boulevard
                                              Madison, WI 53703-3345
                                              Tel.: (608) 266-4511
                                              Fax: (608) 267-8715
                                              E-mail: efinch@cityofmadison.com