**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PROTERRA INC, *et al.*,[1] | ) | Case No. 23-11120 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Ref. Docket No. 529** |

**NOTICE OF FILING FIRST AMENDMENT TO
(I) BATTERY LEASE ASSET PURCHASE AGREEMENT
AND (II) TRANSIT ASSET PURCHASE AGREEMENT, EACH
BY AND AMONG THE DEBTORS AND PHOENIX MOTOR, INC.**

**PLEASE TAKE NOTICE** that, on September 7, 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered that certain *Order (A) Approving Bidding Procedures to Govern the Sale of All Or Substantially All of the Debtors' Assets Pursuant to Section 363 of the Bankruptcy Code, (B) Approving Procedures Regarding Entry Into One or More Stalking Horse Agreements, (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of the Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) Scheduling Auctions for the Sales of the Company Assets and Hearings to Consider Approval of the Sales and Approving the Form and Manner of the Notice Thereof, and (F) Granting Related Relief* [Docket No. 218] (the "Bidding Procedures Order"), which approved, among other things, procedures pursuant to which the Debtors are authorized to solicit and pursue one or more sales or dispositions of all or any portion of the Debtors' assets (the "Company Assets") under section 363 of the Bankruptcy Code and any other type of strategic transaction involving the above captioned debtors and debtors in possession (the "Debtors") and/or the Company Assets.

**PLEASE TAKE FURTHER NOTICE** that, on November 13, 2023, the Debtors filed the *Notice of (A) Successful Bidder Regarding Debtors' (I) Transit Assets and (II) Energy Assets and (B) Cancellation of the Sale Hearing Solely With Respect to Proterra Energy* [Docket No. 529] (the "Notice of Successful Bidder")[2] in accordance with the Bidding Procedures Order, thereby announcing that Phoenix Motor, Inc. ("Phoenix") was the Successful Bidder at the conclusion of the Auction for the Company Assets for the Battery Lease Assets and Proterra Transit.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2] Capitalized terms used but not defined herein shall have the meaning given to such terms in the Bidding Procedures Order or Notice of Successful Bidder, as applicable.

**PLEASE TAKE FURTHER NOTICE** that attached to the Notice of Successful Bidder (i) at Exhibit A was that certain *Asset Purchase Agreement* (as it may be amended in accordance with its terms, the "Battery Lease APA") by and among the Debtors and Phoenix for the Battery Lease Assets and (ii) at Exhibit B was that certain *Asset Purchase Agreement* (as it may be amended in accordance with its terms, the "Transit APA" and, together with the Battery Lease APA, the "APAs") by and among the Debtors and Phoenix for certain Company Assets relating to Proterra Transit.

**PLEASE TAKE FURTHER NOTICE** that, on December 1, 2023, the Debtors and Phoenix entered into (i) that certain *First Amendment to Asset Purchase Agreement*, attached hereto as **Exhibit 1**, amending the Battery Lease APA and (ii) that certain *First Amendment to Asset Purchase Agreement*, attached hereto as **Exhibit 2**, amending the Transit APA.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Order, the APAs, and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of the Debtors' claims and noticing agent, Kurtzman Carson Consultants, LLC, at https://kccllc.net/proterra. You may also obtain pleadings filed in these chapter 11 cases by visiting the Court's website via PACER at http://deb.uscourts.gov.

*[Remainder of Page Intentionally Left Blank]*

| | | |
|---|---|---|
| Dated: | December 4, 2023<br>Wilmington, Delaware | Respectfully submitted, |

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
             amagaziner@ycst.com
             sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:     (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
             rbritton@paulweiss.com
             mcolarossi@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

## **EXHIBIT 1**

**Battery Lease APA Amendment**

*EXECUTION VERSION*

# FIRST AMENDMENT
# TO
# ASSET PURCHASE AGREEMENT

This First Amendment to Asset Purchase Agreement (this "**Amendment**") is made and entered into as of December 1, 2023, by and among PROTERRA INC, a Delaware corporation ("**Holdco**"), PROTERRA OPERATING COMPANY, INC., a Delaware corporation (together with Holdco, "**Sellers**" and each a "**Seller**"), and PHOENIX MOTOR INC., a Delaware corporation ("**Purchaser**"). Each of the parties named above may be referred to herein as a "**Party**" and collectively as the "**Parties**."

**WHEREAS**, the Parties entered into that certain Asset Purchase Agreement, dated as of November 13, 2023 (the "**Purchase Agreement**");

**WHEREAS**, Section 12.4 of the Purchase Agreement provides that the Purchase Agreement may be amended, superseded, canceled, renewed, or extended by a written instrument signed by the parties to the Purchase Agreement; and

**WHEREAS**, each of the Parties desires to amend the Purchase Agreement on the terms and conditions set forth in this Amendment.

**NOW, THEREFORE**, in consideration of the foregoing and the respective covenants and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1. <u>Capitalized Terms</u>. Capitalized terms used but not otherwise defined herein shall have the meanings assigned thereto in the Purchase Agreement.

2. <u>Agreements and Amendments to the Purchase Agreement</u>.

   (i) The definition of "Outside Closing Date" is hereby deleted in its entirety and replaced with the following:

   ""**Outside Closing Date**" means December 22, 2023."

   (ii) In Section 1.1 of the Purchase Agreement, the following definition is hereby added immediately following the definition of "Representative":

   ""**Revised Hearing Date**" means December 12, 2023."

   (iii) The second sentence of Section 2.5(a) of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

   "Purchaser shall be responsible for Cure Amounts and for satisfying the requirements of "adequate assurance of future performance" as required by section 365 of the Bankruptcy Code (which shall include a post-Closing

financing commitment of no less than $20,000,000) and shall cooperate fully with each Seller in seeking such approval from the Bankruptcy Court, including Purchaser providing the necessary evidence required in connection with the Sale Hearing by no later than December 8, 2023, as applicable, to approve this Agreement and the transactions contemplated herein."

(iv)    The third sentence of Section 2.5(b) of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

"Purchaser shall have the right to request that Sellers add or remove any Contract identified in the Schedule of Transferred Contracts at any time on or prior to the Revised Hearing Date."

(v)    The first sentence of Section 3.1(b) of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

"Purchaser or one of its Affiliates has made an earnest deposit by wire transfer of immediately available funds into the Deposit Escrow Account equal to ten percent (10%) of the cash amount of the Purchase Price (the "**Initial Earnest Deposit**") in accordance with the Bidding Procedures Order and shall increase the Initial Earnest Deposit by an additional ten percent (10%) of the cash amount of the Purchase Price (the "**Increased Deposit Amount**" and, together with the Initial Earnest Deposit, the "**Earnest Deposit**") on or prior to December 5, 2023."

(vi)    Section 7.8 of the Purchase Agreement is hereby added to the Purchase Agreement with the following:

Section 7.8 <u>Successor Liability.</u> Purchaser shall have no liability or responsibility for any Liability or other obligation of Sellers arising under, related to or in connection with the Acquired Assets other than as expressly set forth in this Agreement. Without limiting the effect of the foregoing, the transfer of the Acquired Assets will not subject Purchaser to any Liability or other obligation in connection with claims against Sellers or the Acquired Assets, including, claims for successor or vicarious liability, by reason of such transfer under the laws of the United States, any state, territory or possession thereof applicable to such transactions. Purchaser shall not be deemed, as a result of the consummation of the transactions contemplated by this Agreement and the Related Agreements, to be a successor of any Seller, have, de facto or otherwise, merged with or into Sellers, be a mere continuation or substantial continuation of Sellers or the enterprise of Sellers or be responsible for any Liability or other obligation of Sellers or for payment of any benefit accruing to Sellers, except as expressly set forth in this Agreement.

2

(vii)    Section 10.1(b) of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

"by Sellers by written notice to Purchaser, if (i) the Closing has not occurred on or prior to the Outside Closing Date (unless the failure to consummate the Closing by such date is due to the failure of a Seller to have fulfilled any of its obligations under this Agreement), (ii) the Increased Deposit Amount has not been transferred into the Deposit Escrow Account on or prior to December 5, 2023, or (iii) Purchaser has not, on or prior to December 8, 2023, (A) provided adequate assurance of future performance (which shall include a post-Closing financing commitment of no less than $20,000,000) or (B) filed an adequate assurance and good faith declaration on the jointly administered docket of the Sellers' Bankruptcy Cases;"

(viii)    Section 10.2 of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

"In the event of the termination of this Agreement in accordance with Section 10.1, this Agreement will thereafter become void and have no effect, and no party hereto will have any liability to the other party hereto or their respective Affiliates, directors, officers or employees, except for the obligations of the parties hereto contained in this Section 10.2, in Article XII and in Section 7.5; provided, however, that (a) if this Agreement is validly terminated by Purchaser prior to Closing pursuant to Section 10.1(e)(ii), Escrow Agent shall, within two (2) Business Days following the termination of this Agreement and without the requirement of any approval by the Bankruptcy Court, distribute the Deposit Escrow Funds to Purchaser and such distribution to Purchaser shall be Purchaser's sole and exclusive remedy as a result of such termination, and (b) if this Agreement is validly terminated by Sellers or Purchaser prior to Closing for any reason other than by Purchaser pursuant to Section 10.1(e)(ii), then, without the requirement of any approval by the Bankruptcy Court, (i) Escrow Agent shall, within two (2) Business Days following the termination of this Agreement, distribute the Deposit Escrow Funds to Sellers and Sellers shall be entitled to retain the Deposit Escrow Funds, and (ii) Purchaser shall, within two (2) Business Days following the termination of this Agreement, pay, to the extent not deposited into the Deposit Escrow Account prior to such termination, the Increased Deposit Amount, by wire transfer of immediately available funds to an account designated by Sellers."

(ix)    Section 11.3(a) of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

"Purchaser agrees that it will promptly take such actions as are reasonably requested by Sellers to assist in obtaining entry of the Sale Order and a finding of adequate assurance of future performance by Purchaser (which

3

shall include a post-Closing financing commitment of no less than $20,000,000), including furnishing affidavits or other documents or information for filing by no later than December 8, 2023 with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under the Transferred Contracts and demonstrating that Purchaser is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code. Without limiting the foregoing, Sellers and Purchaser shall each use Reasonable Efforts to cooperate to obtain a Sale Order finding that Purchaser is purchasing the Acquired Assets in good faith within the meaning of Section 363(m) of the Bankruptcy Code."

3.  <u>Effectiveness; Continuing Effect; Miscellaneous</u>. This Amendment shall take effect as of the date of execution of this Amendment. Except as amended by this Amendment, the Purchase Agreement shall be and remain unmodified and in full force and effect in accordance with its terms, and each and every one of its provisions, as amended by this Amendment, are hereby adopted, ratified, and affirmed, and further it is understood and agreed that this Amendment does not limit or alter any rights or remedies of the Parties under any document, agreement or instrument other than the Purchase Agreement, except to the extent that the provisions hereof expressly address the matters set forth therein. Upon execution of this Amendment, this Amendment and the Purchase Agreement shall constitute one agreement. Any references to the "Agreement" in the Purchase Agreement or to the words hereof, hereunder or words of similar affect in the Purchase Agreement shall mean the Purchase Agreement as amended by this Amendment, although this change shall not alter the dates as of which any provision of the Agreement speaks, except as expressly provided herein. For example, phrases such as "the date hereof" and "the date of this Agreement" shall continue to refer to November 13, 2023, the date that the Purchase Agreement was executed, except as expressly provided herein. The provisions of Article XII of the Purchase Agreement shall apply to this Amendment *mutatis mutandis*.

[*Signature Pages to Follow*]

IN WITNESS WHEREOF, the Parties, intending to be legally bound, have caused this Amendment to be duly executed as of the day and year first herein above written.

**SELLERS:**

PROTERRA INC

By: _____
*DocuSigned by: 91FE4B1D772C44B...*
Name: Gareth Joyce
Title: President, Proterra Inc.

PROTERRA OPERATING COMPANY, INC.

By: _____
*DocuSigned by: 91FE4B1D772C44B...*
Name: Gareth Joyce
Title: President, Proterra Inc.

[Signature Page to First Amendment to Asset Purchase Agreement]

**PURCHASER:**

PHOENIX MOTOR INC.

By: _/s/ James Mark Hastings_
Name: JAMES MARK HASTINGS
Title: SENIOR VICE PRESIDENT,
CORPORATE DEVELOPMENT & STRATEGY

# EXHIBIT 2

**Transit APA Amendment**

*EXECUTION VERSION*

# FIRST AMENDMENT
# TO
# ASSET PURCHASE AGREEMENT

This First Amendment to Asset Purchase Agreement (this "**Amendment**") is made and entered into as of December 1, 2023, by and among PROTERRA INC, a Delaware corporation ("**Holdco**"), PROTERRA OPERATING COMPANY, INC., a Delaware corporation (together with Holdco, "**Sellers**" and each a "**Seller**"), and PHOENIX MOTOR INC., a Delaware corporation ("**Purchaser**"). Each of the parties named above may be referred to herein as a "**Party**" and collectively as the "**Parties**."

**WHEREAS**, the Parties entered into that certain Asset Purchase Agreement, dated as of November 13, 2023 (the "**Purchase Agreement**");

**WHEREAS**, Section 12.4 of the Purchase Agreement provides that the Purchase Agreement may be amended, superseded, canceled, renewed, or extended by a written instrument signed by the parties to the Purchase Agreement; and

**WHEREAS**, each of the Parties desires to amend the Purchase Agreement on the terms and conditions set forth in this Amendment.

**NOW, THEREFORE**, in consideration of the foregoing and the respective covenants and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1. <u>Capitalized Terms</u>. Capitalized terms used but not otherwise defined herein shall have the meanings assigned thereto in the Purchase Agreement.

2. <u>Agreements and Amendments to the Purchase Agreement</u>.

    (i)  Each of subsections (iv), (v) and (vi) of the definition of "Assumed Liabilities" is hereby deleted in its entirety and replaced with the following corresponding subsection:

    "(iv) any Product Liability Claim related to products sold by the Acquired Business after the Closing Date (regardless of when manufactured),

    (v)  any Warranty Liability Claim, excluding any such claim or Liability asserted by Southeastern Pennsylvania Transportation Authority,

    (vi)  [Reserved],"

(ii) The definition of "Excluded Liabilities" is hereby amended by adding the following language to the end of the definition:

"(x) all Liabilities of each Seller with respect to any Product Liability Claim or similar claim with respect to any products sold or any service performed by any Seller prior to the Closing Date;

(xi) any Liability asserted by Southeastern Pennsylvania Transportation Authority; and

(xii) all Liabilities under any Contracts or Real Property Leases that are not assigned to Purchaser."

(iii) The definition of "Outside Closing Date" is hereby deleted in its entirety and replaced with the following:

""**Outside Closing Date**" means December 22, 2023."

(iv) In Section 1.1 of the Purchase Agreement, the following definition is hereby added immediately following the definition of "Representative":

""**Revised Hearing Date**" means December 12, 2023."

(v) The second sentence of Section 2.5(a) of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

"Purchaser shall be responsible for Cure Amounts and for satisfying the requirements of "adequate assurance of future performance" as required by section 365 of the Bankruptcy Code (which shall include a post-Closing financing commitment of no less than $20,000,000) and shall cooperate fully with each Seller in seeking such approval from the Bankruptcy Court, including Purchaser providing the necessary evidence required in connection with the Sale Hearing by no later than December 8, 2023, as applicable, to approve this Agreement and the transactions contemplated herein."

(vi) The third and fourth sentences of Section 2.5(b) of the Purchase Agreement are hereby deleted in their entirety and replaced with the following:

"Purchaser shall have the right to request that Sellers add or remove any Contract identified in the Schedule of Transferred Contracts at any time on or prior to the Revised Hearing Date. Purchaser acknowledges and agrees that it may not be possible for certain Transferred Contracts to be assumed and assigned to Purchaser."

(vii)   The first sentence of Section 3.1(b) of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

"Purchaser or one of its Affiliates has made an earnest deposit by wire transfer of immediately available funds into the Deposit Escrow Account equal to ten percent (10%) of the Cash Component Price of the Purchase Price (the "**Initial Earnest Deposit**") in accordance with the Bidding Procedures Order and shall increase the Initial Earnest Deposit by an additional ten percent (10%) of the Cash Component Price of the Purchase Price (the "**Increased Deposit Amount**" and, together with the Initial Earnest Deposit, the "**Earnest Deposit**") on or prior to December 5, 2023."

(viii)   Section 7.12 of the Purchase Agreement is hereby added to the Purchase Agreement with the following:

Section 7.12 <u>Successor Liability.</u> Purchaser shall have no liability or responsibility for any Liability or other obligation of Sellers arising under, related to or in connection with the Acquired Assets and the Acquired Business other than as expressly set forth in this Agreement. Without limiting the effect of the foregoing, the transfer of the Acquired Assets will not subject Purchaser to any Liability or other obligation in connection with claims against Sellers or the Acquired Assets, including, claims for successor or vicarious liability, by reason of such transfer under the laws of the United States, any state, territory or possession thereof applicable to such transactions. Purchaser shall not be deemed, as a result of the consummation of the transactions contemplated by this Agreement and the Related Agreements, to be a successor of any Seller, have, de facto or otherwise, merged with or into Sellers, be a mere continuation or substantial continuation of Sellers or the enterprise of Sellers or be responsible for any Liability or other obligation of Sellers or for payment of any benefit accruing to Sellers, except as expressly set forth in this Agreement.

(ix)   Section 10.1(b) of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

"by Sellers by written notice to the Purchaser, if (i) the Closing has not occurred on or prior to the Outside Closing Date (unless the failure to consummate the Closing by such date is due to the failure of a Seller to have fulfilled any of its obligations under this Agreement), (ii) the Increased Deposit Amount has not been transferred into the Deposit Escrow Account on or prior to December 5, 2023, or (iii) Purchaser has not, on or prior to December 8, 2023, (A) provided adequate assurance of future performance (which shall include a post-Closing financing commitment of no less than $20,000,000) or (B) filed an adequate assurance and good faith declaration on the jointly administered docket of the Sellers' Bankruptcy Cases."

(x) Section 10.2 of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

"In the event of the termination of this Agreement in accordance with Section 10.1, this Agreement will thereafter become void and have no effect, and no party hereto will have any liability to the other party hereto or their respective Affiliates, directors, officers or employees, except for the obligations of the parties hereto contained in this Section 10.2, in Article XII and in Section 7.6; provided, however, that (a) if this Agreement is validly terminated by Purchaser prior to Closing pursuant to Section 10.1(e)(ii), Escrow Agent shall, within two (2) Business Days following the termination of this Agreement and without the requirement of any approval by the Bankruptcy Court, distribute the Deposit Escrow Funds to Purchaser and such distribution to Purchaser shall be Purchaser's sole and exclusive remedy as a result of such termination, and (b) if this Agreement is validly terminated by Sellers or Purchaser prior to Closing for any reason other than by Purchaser pursuant to Section 10.1(e)(ii), then, without the requirement of any approval by the Bankruptcy Court, (i) Escrow Agent shall, within two (2) Business Days following the termination of this Agreement, distribute the Deposit Escrow Funds to Sellers and Sellers shall be entitled to retain the Deposit Escrow Funds, and (ii) Purchaser shall, within two (2) Business Days following the termination of this Agreement, pay, to the extent not deposited into the Deposit Escrow Account prior to such termination, the Increased Deposit Amount, by wire transfer of immediately available funds to an account designated by Sellers."

(xi) Section 11.3(a) of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

"Purchaser agrees that it will promptly take such actions as are reasonably requested by Sellers to assist in obtaining entry of the Sale Order and a finding of adequate assurance of future performance by Purchaser (which shall include a post-Closing financing commitment of no less than $20,000,000), including furnishing affidavits or other documents or information for filing by no later than December 8, 2023 with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under the Transferred Contracts and demonstrating that Purchaser is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code."

(xii) The second sentence of Schedule 1-I of the Purchase Agreement is hereby deleted in its entirety and replaced with the following :

"Any amounts (i) invoiced at any time to and/or payments received from or on behalf of Broward County Transit, (ii) invoiced prior to the Closing to and/or payments received prior to the Closing from British Columbia Transit and (iii) invoiced at any time to and/or payments received from or

4

on behalf of Capital Metropolitan Transportation Authority to the extent relating to buses 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, in each case, less any out-of-pocket fees and expenses actually and directly incurred by Purchaser in connection with the final preparation and delivery of buses to such customers. Following the Closing, Purchaser shall complete, deliver and invoice buses to Broward County Transit and Capital Metropolitan Transportation Authority in accordance with Sellers' historical practices and shall use Reasonable Efforts to collect amounts underlying such invoices."

(xiii)   Schedule 7.10 of the Purchase Agreement is hereby deleted in its entirety and replaced with the new Schedule 7.10 attached hereto as Annex A.

3.   Effectiveness; Continuing Effect; Miscellaneous. This Amendment shall take effect as of the date of execution of this Amendment. Except as amended by this Amendment, the Purchase Agreement shall be and remain unmodified and in full force and effect in accordance with its terms, and each and every one of its provisions, as amended by this Amendment, are hereby adopted, ratified, and affirmed, and further it is understood and agreed that this Amendment does not limit or alter any rights or remedies of the Parties under any document, agreement or instrument other than the Purchase Agreement, except to the extent that the provisions hereof expressly address the matters set forth therein. Upon execution of this Amendment, this Amendment and the Purchase Agreement shall constitute one agreement. Any references to the "Agreement" in the Purchase Agreement or to the words hereof, hereunder or words of similar affect in the Purchase Agreement shall mean the Purchase Agreement as amended by this Amendment, although this change shall not alter the dates as of which any provision of the Agreement speaks, except as expressly provided herein. For example, phrases such as "the date hereof" and "the date of this Agreement" shall continue to refer to November 13, 2023, the date that the Purchase Agreement was executed, except as expressly provided herein. The provisions of Article XII of the Purchase Agreement shall apply to this Amendment *mutatis mutandis*.

**[*Signature Pages to Follow*]**

IN WITNESS WHEREOF, the Parties, intending to be legally bound, have caused this Amendment to be duly executed as of the day and year first herein above written.

**SELLERS:**

PROTERRA INC

By: _____
Name: Gareth Joyce
Title: President, Proterra Inc.

PROTERRA OPERATING COMPANY, INC.

By: _____
Name: Gareth Joyce
Title: President, Proterra Inc.

[Signature Page to First Amendment to Asset Purchase Agreement]

**PURCHASER:**

PHOENIX MOTOR INC.

By: _/s/ James Mark Hastings_
Name: JAMES MARK HASTINGS
Title: SENIOR VICE PRESIDENT, CORPORATE DEVELOPMENT + STRATEGY

## ANNEX A
**Schedule 7.10**

*[See attached.]*

## Schedule 7.10

## Support Obligations

### Standby Letters of Credit

| Issuing Entity | Beneficiary | Document Number | Amount (in USD) | Expiration Date | Evergreen? | Stand Alone or ABL | Issuing Bank | Category | Description |
|---|---|---|---|---|---|---|---|---|---|
| Opco | Steelcase Financial Services Inc. | 68180451 | 741,685.00 | 5/19/2024 | Y | ABL | Bank of America, N.A. | Lease | Greer Furniture Lease |

### Surety Bonds

| Bond Number | Issuing Carrier | Principal | Obligee | Type of Bond | Expiration Date | Bond Amount | Bond Premium |
|---|---|---|---|---|---|---|---|
| PB02182000037 | Philadelphia Indemnity Insurance Company | Holdco | Chicago Transit Authority | Miscellaneous Contracts | 6/29/2024 | 15,619,205.00 | 312,384.00 |
| 800018815 | Atlantic Specialty Insurance Company | Opco | City and County of San Francisco | Electrical – Public | 1/16/2024 | 2,465,696.01 | 49,314.00 |
| PB01989700035 | Philadelphia Indemnity Insurance Company | Holdco | State of California | License & Permit | 5/31/2024 | 50,000.00 | 1,000.00 |
| 22C0023NM | Lexon Insurance Company | Opco | Department of HomeLand Security | Customs – Continuous – All Other * | 12/19/2023 | 600,000.00 | 2,700.00 |
| PB00438200020 | Philadelphia Indemnity Insurance Company | Holdco | Santa Clara Valley Transportation Authority | Supply Maintenance – Public | 8/23/2023 | 440,393.49 | 1,982.00 |
| PB02182000052 | Philadelphia Indemnity Insurance Company | Holdco | Sacramento Regional Transit District | All Other Miscellaneous Contracts – NOC – Public | 10/18/2023 | 890,403.35 | 40,068.00 |
| PB01989700045 | Philadelphia Indemnity Insurance Company | Holdco | Transportation District Commission of Hampton Roads | Miscellaneous Contracts * | 7/2/2023 | 506,637.60 | 25,332.00 |
| 962-019-625 | Intact Insurance Company | Holdco | Canada Border Services Agency | Customs – Continuous – All Other * | 3/1/2023 | 270,307.00 | - |
| PB00438200024 | Philadelphia Indemnity Insurance Company | Opco | Metropolitan Washington Airports Authority | Lien and Payment Bonds – Given at or near Commence-ment of Project | 12/31/2023 | 780,755.00 | 27,326.00 |