# Exhibit A

# UVA FINANCE

## PSDS CONTRACT TRACKING SUMMARY SHEET

| |
|---|
| **SUBJECT**: Electric buses and related equipment for Parking and Transportation |

**BACKGROUND INFORMATION:**

| Submitter/Buyer:  John Gerding | | Date Prepared: 5/11/2022 | |
|---|---|---|---|
| Dollar Value Per Year: $3,905,519.76 | | Total Dollar Value: $3,905,519.76 | |
| Department | Department Contact | Department Email | Department Phone # |
| Parking and Transportation | Kendall Howell | klh3t@virginia.edu | 434.924.7346 |
| Supplier | Supplier Contact | Supplier Email | Supplier Phone # |
| Proterra | Ethan Carbaugh | ecarbaugh@proterra.com | 864.906.8469 |

**SUMMARY:**

Authorize the purchase of four electric buses and related components for UVa's Parking and Transportation (P&T) using the attached Houston-Galveston Area Council (H-GAC) Cooperative Agreement No. BT01-21.

These buses will replace diesel Gillig buses in the P&T fleet for student and staff transportation routes around grounds.

The purchase order requires UVA EVP/COO signature due to it being more than $3M, but less than $5M.

**RECOMMENDATION**: Please review the associated document(s) and sign the purchase order.

**REVIEWED (Initials/Date):**

| Strategic Sourcing Director: | PSDS Director: | AVPFO: | EVP-COO: |
|---|---|---|---|
| AS    5/11/2022 | JG    5/13/2022 | am    5/13/2022 | JWD    5/13/2022 |

# Purchase Order

**UNIVERSITY OF VIRGINIA**
Educational Procurement.

PROCUREMENT & SUPPLIER DIVERSITY SERVICES
CARRUTHERS HALL RM 270 (POB 400202)
1001 N EMMET ST
Charlottesville, VA 22904-4202
Phone: 434-924-4212       Fax: 434-982-2690

| | |
|---|---|
| Page Number: | 1 of 1 |
| Purchase Order: | 2451573 |
| Order Date: | 02-MAY-22 |
| Revision: | 0 |
| Revision Date: | |
| Requested By: | Lawrence, Ruth Charlene |
| Requestor Phone: | 434-924-6771 |

**SUPPLIER:** PROTERRA
1 WHITLEE CT
GREENVILLE,SC 29607-3791
United States

THIS PURCHASE ORDER NUMBER MUST BE QUOTED ON
ALL INVOICES AND CORRESPONDENCE OR INVOICES
WILL BE DISCARDED.

**SHIP TO:** UNIVERSITY OF VIRGINIA
PARKING & TRANSPORTATION
1101 MILLMONT ST REAR
PARTS ROOM
Charlottesville, VA 22903

**INVOICE TO:** University of Virginia Accounts Payable
PO Box 3025
E-mail:vendor-invoices@virginia.edu
Scranton, PA 18508

| Supplier No. | Payment Terms | | Freight Terms | FOB | | Ship Via |
|---|---|---|---|---|---|---|
| 383503 | PW ACH 1.5% Net 15 | | | Destination | | |
| **Buyer Telephone** | **Buyer Name** | | **Delivery Location Code** | **UVA Contract Number** | | |
| 434-982-2563 | John Gerding | | PTMIL | | | |

| LINE NO. | PART NUMBER / DESCRIPTION | NEED BY DATE | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| 1 | Your #:    n/a <br> Proposal 4/28/22: (4) Battery Electric Buses 35' ZX5+ (450 kWh) with configurables per 2019 Gillig specs, dealer fee & warranty support, Sonny Merryman. <br><br> Trans Reason:          COOPERATIVE CONTRACT <br> Shipment          1 <br> PTAEO: 103879   101     SP00120  Eq Capital Motor Vehicle: 20495 BU-Parking Operations | 30-APR-22 | 4.00 | Each | 900254.94 | 3,601,019.76 |
| 2 | Your #:    n/a <br> Proposal 4/28/22: (3) 180kW Charging system, Cabinet; commissioning (per cabinet) startup and testing. <br> Shipment          1 <br> PTAEO: 103879   101     SP00120  Eq Capital Electronic          20495 BU-Parking Operations | 30-APR-22 | 3.00 | Each | 70000 | 210,000.00 |
| 3 | Your #:    n/a <br> Proposal 4/28/22: (6) 300A Dual cable charging dispensers with 18-foot charge cables. <br> Shipment          1 <br> PTAEO: 103879   101     SP00120  Eq Capital Electronic          20495 BU-Parking Operations | 30-APR-22 | 6.00 | Each | 15750 | 94,500.00 |

This purchase order will be governed by the University Purchasing terms and conditions, a copy of which may be obtained from the Procurement Services web site (www.virginia.edu/procurement).

All prices and amounts on this order are expressed in USD
For questions call the buyer listed above.

| Total | $3,905,519.76 |
|---|---|

Jennifer (JJ) Wagner Davis
AUTHORIZED SIGNATURE



April 28, 2022

Kendall Howell
Assistant Director of Parking & Transportation
University of Virginia
1101 Millmont Street
PO Box 400000
Charlottesville, VA 22904

**Subject:  Updated  Proterra Pricing Proposal for the University of Virginia**

Dear Mr. Howell:

Proterra Inc ("Proterra") is pleased to provide this pricing proposal to the University of Virginia ("UVA"). As the leading innovator in heavy-duty electric transportation, Proterra is excited about the opportunity to provide electric buses and charging equipment to UVA via the Houston-Galveston Area Council (H-GAC) Cooperative Agreement No. BT01-21.

Pricing Proposal

*Battery Electric Bus Pricing*

Included below is a pricing proposal for four (4) 35' Proterra ZX5+ Battery Electric Buses (BEBs), including an estimate of UVA specific vehicle configurables. This estimate is subject to adjustment once UVA and Proterra review and finalize the vehicle configuration. More details about the 35' Proterra ZX5+ battery electric buses can be found in Exhibit A and information on the chargers is provided in Exhibit B.

| Qty | Length | Product, Battery Electric Bus | Unit Price | Total Price |
|-----|--------|-------------------------------|------------|-------------|
| 4 | 35' | ZX5+ (450 kWh) | $829,082.94* | $3,316,331.76 |
| 4 | - | UVA Estimated Configurables, based on 2019 Gillig Spec | $53,672.00 | $214,688.00 |
| 4 | - | Dealer Fee & Warranty Support, Sonny Merryman | $17,500.00 | $70,000.00 |
| | | **Total, ZX5+ Configured** | **$900,254.94** | **$3,601,019.76** |

\* Note: the $829,082.94 price is the anticipated updated price on the H-GAC contract for the 35' ZX5+ BEB. Proterra and H-GAC are in the process of working through the formal price change process and anticipate the contract being formally updated in the next 30 days.

*Charger Pricing*

Please find pricing for the plug-in charging equipment required to support ZX5 buses.  The 180kW chargers quoted below will fully charge the ZX5 Max buses in under 4 hours in typical operating environments.

Headquarters
1815 Rollins Road, Burlingame, CA 94010

East Coast Manufacturing
1 Whitlee Court, Greenville, SC 29607

West Coast Manufacturing
383 Cheryl Lane, City of industry, CA 91789

www.proterra.com

**PROTERRA**

| Product, 180kW Charging Stations | Qty | UNIT PRICE | TOTAL |
|---|---|---|---|
| 180kW Charging System, Cabinet | 3 | $68,000 | $204,000 |
| 300A dual cable charging dispensers with 18-foot charge cables | 6 | $15,750 | $94,500 |
| Commissioning (per cabinet) * | 3 | $2,000 | $6,000 |
| Total, Three 180kW Charging Stations | | | $304,500 |

**\*Charger Commissioning:** Commissioning is a Proterra representative traveling to your site to perform the initial checks and startup of the equipment. Once the equipment has been commissioned and tested, the units are put into service and the warranty starts.

**Pricing for the Charger and Dispenser installation is not included in this quote and will follow via a separate proposal.**

**Pricing will remain valid for 30 days.**

<u>Base Vehicle</u> The base pricing offered herein for the 35' ZX5 buses includes the following components / systems:

- Passenger Seating: 27-passenger layout, USSC Gemini Seats
- ADA Securements: Two (2) 3-point ADA securement systems
- ADA Ramp: 1:4 Ricon
- Doors: Ventura System, Pneumatic
- Destination Signs: Hanover, Amber, Front, Curb Side, and Rear
- Flooring: Altro Transflor Meta
- Tires: Michelin X InCity Energy Z LR L- 315/80R22.5
- Wheels: JC FORGED (XINFA) - Machined Finish Aluminum, PN 229H30381N
- Operator's Seat: Recaro Ergo Metro PN 8H0.01.591.VV11
- Plug-In Charge Port: Single, Curb-Side Rear SAE J1772 CCS Type 1 Charge Port
- Passenger Windows: Flush Mounted, 50% LT, Grey, 2 Egress Windows
- HVAC: Valeo R407 Refrigerant
- Driver Foot Controls: Non-Adjustable Pedals
- Exterior Finishing: Base Composite Gel-Coat, White
- Overhead Passenger Assists: 6 Grey Nylon Prima Grab Straps
- Stop Request System: Pull Cord
- Roof Hatches: One (1), Opaque

Most of the above standard items can be swapped out with alternative selections subject to cost adjustments, up or down, as appropriate; e.g. Ventura electric doors in lieu of pneumatic doors, etc.

Headquarters
1815 Rollins Road, Burlingame, CA 94010

East Coast Manufacturing
1 Whitlee Court, Greenville, SC 29607

West Coast Manufacturing
383 Cheryl Lane, City of Industry, CA 91789

www.proterra.com

PROTERRA

Customer Configurable Options

The following items are not included in the base price as they are highly customized items that often change with each order. Pricing for these items (if selected) will be determined when they are confirmed with UVA.

- Farebox (if required)
- WiFi
- ITS System
- Customer Communication System

Warranty

The base pricing offered herein includes Proterra's standard warranty terms; which are included below for UVA's review.

- Complete Bus (Bumper to Bumper): 1 year / 50,000 miles
- Energy Storage Systems: Battery Pack Material and Workmanship Warranty 6 Years / Unlimited Mileage; 80% or higher retention of initial Usable Energy* for 6 years / 133,000 kWh Gross Discharge Throughput per battery pack, whichever comes first.
  *as shown in The Proterra Diagnostic Tool as Battery State of Health (SOH)
- Main Composite Monocoque Structure (Body / Class 1 & 2 Failures): 12 years / 500,000 miles
- Structural Systems: 3 years / 150,000 miles
- Major Components: 2 years / 100,000 miles
  - Propulsion System
  - Brake System
  - Axles
  - Destination Signs
  - Door Systems
  - Defroster
  - Air Compressor
  - Air Dryer
  - ADA Ramp
  - Passenger Seating
  - Passenger Windows
  - A/C Unit & Compressor
  - Power Steering Unit
- Chargers: 3 years

Training

The following training is included with the purchase of the buses:

- Operator Training
  - 16 hours of operator training

Headquarters
1815 Rollins Road, Burlingame, CA 94010

East Coast Manufacturing
1 Whitlee Court, Greenville, SC 29607

West Coast Manufacturing
383 Cheryl Lane, City of Industry, CA 91789

www.proterra.com



- o Utilizes a "train-the-trainer" approach to enable customers to provide as much training as required for their operators
- o 50/50 split between classroom and seat-time for the operators

- Bus Maintenance Training
    - o 32 hours of vehicle maintenance training.
    - o Classroom and hands-on training

- Bus Introduction Training
    - o 16 hours of general bus introduction training
    - o Meant for supervisors, managers, procurement

- Charger Maintenance Training
    - o 8 hours of charger maintenance training
    - o Classroom and hands-on training

If UVA desires additional training, it can be purchased for an additional price.

Summary
Proterra is the world's premiere battery-electric bus and charging systems provider and we're eager to support UVA with this opportunity. If you would like any additional information, please do not hesitate to ask and we will be happy to provide it for you.

If you have any questions or concerns, please feel free to contact me at (864) 906-8469 or at ecarbaugh@proterra.com.

Sincerely,

Ethan Carbaugh
Director, Business Engagement
Proterra Operating Company, Inc.

Cc:     Joshua Helm, Regional Sales Director

Headquarters
1815 Rollins Road, Burlingame, CA 94010

East Coast Manufacturing
1 Whitlee Court, Greenville, SC 29607

West Coast Manufacturing
383 Cheryl Lane, City of Industry, CA 91789

www.proterra.com



**PROTERRA**

# Exhibit A – ZX5 Spec

Headquarters
1815 Rollins Road, Burlingame, CA 94010

East Coast Manufacturing
1 Whitlee Court, Greenville, SC 29607

West Coast Manufacturing
383 Cheryl Lane, City of Industry, CA 91789

www.proterra.com



**ZX5** 35 FOOT BUS
PLATFORM SPECIFICATIONS



| Description | | ZX5 | ZX5+ |
|---|---|---|---|
| **ZX5 VEHICLE WITH DUOPOWER™ DRIVETRAIN** | | | |
| Total Energy | kWh | 225 | 450 |
| Operating Efficiency* | kWh/mile | 1.5-2.0 | 1.6-2.3 |
| | MPGe | 18.8-25.1 | 16.4-23.5 |
| Operating Range* | Miles | 95-125 | 172-240 |
| Top Speed (Proterra-governed) | mph (per tire rating) | 65 | 65 |
| Acceleration (at SLW, seconds) | 0 to 20 mph | 5.7 | 5.7 |
| | 20 to 50 mph | 18 | 12.4 |
| Gradability (top speed at % grade, at SLW, mph) | 5% | 51.5 | 65 |
| | 10% | 27.5 | 49.6 |
| | 15% | 22.4 | 27.7 |
| Max Grade (at SLW) | | 32.1% | 28.7% |
| Horsepower | Peak | 338 | 550 |
| | Continuous | 170 | 338 |
| Motor | Dual independent 205 kW motors | • | • |
| Gearbox | Proterra 2-speed auto-shift EV gearbox | • | • |
| Curb Weight | lbs | 26,358 | 29,658 |
| Max Gross Vehicle Weight Rating | lbs | 42,000 | 42,000 |
| **ZX5 VEHICLE WITH PRODRIVE 2.0 DRIVETRAIN** | | | |
| Total Energy | kWh | 225 | 450 |
| Operating Efficiency* | kWh/mile | 1.6-2.0 | 1.7-2.4 |
| | MPGe | 18.8-23.5 | 15.7-22.2 |
| Operating Range* | Miles | 94-124 | 164-227 |
| Top Speed (Proterra-governed) | mph (per tire rating) | 65 | 65 |
| Acceleration (at SLW, seconds) | 0 to 20 mph | 6 | 6.2 |
| | 20 to 50 mph | 20.4 | 21.6 |
| Gradability (top speed at % grade, at SLW, mph) | 5% | 48.8 | 47.6 |
| | 10% | 29.9 | 29 |
| | 15% | 21.1 | 19.2 |
| Max Grade (at SLW) | | 33.1% | 29.5% |
| Horsepower | Peak | 335 | 335 |
| | Continuous | 170 | 240 |
| Motor | Single 240kW permanent magnet drive motor | • | • |
| Gearbox | 4-speed EV transmission | • | • |
| Curb Weight | lbs | 26,558 | 29,858 |
| Max Gross Vehicle Weight Rating | lbs | 42,000 | 42,000 |
| **CHARGING** | | | |
| Max Plug-in Charge Rate at 200A | kW | 147 | 147 |
| Max Plug-in Charge Rate at 300A | kW | 184 | 221 |
| Max Overhead Charge Rate | kW | 184 | 370 |
| Overhead Charging | Miles replenished per 10 minutes ** | 13 | 24 |
| | Est. time Empty to Full at 450 kW | 3 hrs | 3 hrs |
| Plug-in Charging | Est. time Empty to Full at 120 kW | 3.1 hrs | 4.3 hrs |
| | Est. time Empty to Full at 180 kW | 3 hrs | 3.8 hrs |

*Operating range and efficiencies approximated from simulations based on Altoona testing results at SLW, and will vary with route conditions, weather, vehicle configuration and driver behavior.
** ProDrive powertrain efficiencies  |  *** Charge time will vary depending on charger type. Estimated charge time empty to full as displayed on driver dashboard.



# ZX5
## 35 FOOT BUS
### PLATFORM SPECIFICATIONS



|  | Description |
|---|---|
| **VEHICLE DIMENSIONS** | |
| Length | 443" |
| Height | 128" |
| Width (without mirrors) | 102" |
| Width (with mirrors) | 118.8" |
| Wheelbase | 243" |
| Approach Angle | 9.3° |
| Breakover Angle | 7.8° |
| Departure Angle | 9.3° |
| Turning Radius | 432" |
| **INTERIOR** | |
| Seating Capacity | 29 |
| Door Width | Front 43.2", Rear 49.1" |
| Lighting | LED interior lighting system |
| Handles | Stainless-steel stanchion system |
| Stop Request | ADA pull cord or touch tape stop request |
| Doors | Sensitive edges on both front and rear door |
| Wipers | Electric wipers and washers |
| HVAC | Overhead integrated system |
| **EXTERIOR** | |
| Bus Body | Carbon-fiber-reinforced composite material |
| Tires | Standard: Michelin 315/80R22.5 |
| Exterior Lights | LED |
| **BRAKES & SUSPENSION** | |
| Braking System | Regenerative braking; front & rear air disk brakes |
| Traction | 4-wheel ABS with optional traction control |
| Suspension | Multi-Link Air Ride rear suspension |
| **ELECTRICAL SYSTEM** | |
| Battery System | Integrated battery management system |
| Low Voltage | Two, Group 31 700 CCA 12v batteries |
| Charge Ports | J1772 CCS: One port standard at curb-side rear, 2nd port optional at street-side rear or curb-side front |
| Overhead Charging | Optional |
| Plug-In Charging | Universal standard J1772-CCS |
| Overhead Charging | Universal standard J3105 |
| **ADA** | |
| | Two ADA locations, one on each side of the aisle directly behind the front wheel |
| | ADA securement system |
| | Front ADA power wheelchair ramp (4:1, 6:1 slope) |
| | Rear door modesty panels |
| | Aisle width between front wheel wells: 35.7" |
| **WARRANTY** | |
| Vehicle | Complete Bus - 1 year or 50,000 miles<br>Extended warranties and service contracts available upon request |
| Batteries | Standard: 6 years \| Extended: 12 years |

SPEC_35_002A_2022_Q2



# Exhibit B – Charger Specifications

Headquarters
1815 Rollins Road, Burlingame, CA 94010

East Coast Manufacturing
1 Whitlee Court, Greenville, SC 29607

West Coast Manufacturing
383 Cheryl Lane, City of Industry, CA 91789

www.proterra.com



## RELIABLE DC FAST CHARGING FOR FLEETS

INDUSTRIAL SERIES

The Proterra Industrial Series charging system is designed explicitly for fleet applications.

Available in 60kW, 90kW, 120kW, 150kW and 180kW configurations.

Charge up to 4 vehicles from the same charger with automated, multi-dispenser configurations, including up to 4 single-cable dispensers.

Dispensers can be sited separately (up to 500 feet away) from the charging cabinet, enabling greater flexibility in design and configuration for fleets.

Remote monitoring, intelligent diagnostics and a modular design allows for quick issue resolution and efficient field service.

Broad voltage range (up to 1000VDC) ensures compatibility with both today's and next generation electric vehicles.

- **OCPP compliant and 4G enabled**
- **Small footprint**
- **Multi-dispenser option**
- **Supports CCS1 and pantograph options**
- **3 Year Standard Warranty with extensions available**





 Proterra charging systems are compliant with Federal DOT Buy America requirements.



# PROTERRA®
# CHARGING SYSTEMS

| MODEL | PC-060-PI | PC-090-PI | PC-120-PI | PC-150-PI | PC-180-PI |
|---|---|---|---|---|---|
| **ELECTRICAL OUTPUT** | | | | | |
| Continuous DC Output Power | 60 kW | 90 kW | 120 kW | 150 kW | 180 kW |
| DC Output Voltage | 150-1000 VDC | | | | |
| Continuous DC Output Current | 200 A, 500 A Pantograph (Optional) | | | 300 A, 500 A Pantograph (Optional) | |
| **ELECTRICAL INPUT** | | | | | |
| AC Input Power | 63 kVA | 95 kVA | 126 kVA | 158 kVA | 189 kVA |
| AC Input Current | 76 A | 114 A | 152 A | 190 A | 227 A |
| AC Input Voltage | 480V +/- 10% | | | | |
| AC Input Topology | 5-wire WYE (3ph + N + GND) | | | | |
| AC Input Frequency | 60 Hz | | | | |
| Current THD% at full power | <3% | | | | |
| Power Factor | >0.99 | | | | |
| Efficiency | 95% | | | | |
| **MECHANICAL** | | | | | |
| Cooling | Integrated air cooling | | | | |
| Weight | 825 lbs | 880 lbs | 935 lbs | 990 lbs | 1056 lbs |
| Dimensions (D x W x H) | 31.2 in x 39.6 in x 79.2 in \| 80 cm x 100 cm x 200 cm | | | | |
| Required side doork clearance | None | | | | |
| Required Front and Rear Clearance | 1000 mm | | | | |
| **ENVIRONMENTAL** | | | | | |
| Environmental Rating | NEMA 3R | | | | |
| Maximum Altitude | 3000m \| 9800 ft (power derates above 2000m \| 6500 ft) | | | | |
| Operating temperature | -22°F to 122°F \| -30°C to 50°C | | | | |
| Operating Humidity | 4-95% | | | | |
| **MISC** | | | | | |
| Approved charger-to-vehicle interfaces | CCS1 Industrial dispenser<br>J3105-1 Infrastructure-Down Pantograph | | | | |
| Approved number of dispensers per power cabinet | Up to 4 Single Cable Dispensers | | | | |
| Sequential Charging Capabilities | 1 @ 60 kW | 1 @ 90 kW | 1 @ 120 kW | 1 @ 150 kW | 1 @ 180 kW |
| Simultaneous Charging Capabilities | - | - | 2 @ 60 kW | - | 3 @ 60 kW |
| Power Cabinet to dispenser or pantograph control box communications | Modbus TCP via fiber optic | | | | |
| Max Distance between Power Cabinet and Dispenser | 500 ft \| 152.4 m (fiber optics) | | | | |
| Management Communications | OCPP 1.6 control via 4G Cellular (standard)<br>Supports WiFi, Ethernet (optional) | | | | |
| Certifications | UL 2231, UL 2202 (pending) | | | | |
| Warranty | 3 year standard, 5 year extended warranty (optional) | | | | |





# PROTERRA®
# CHARGING SYSTEMS

## INDUSTRIAL SERIES

## RELIABLE
## DC FAST CHARGING
## FOR FLEETS

The Proterra Industrial dispenser is designed explicitly for fleet applications.

Charge up to 4 vehicles from the same charger with automated, multi-dispenser configurations, including up to 4 single-cable dispensers.

Dispensers can be sited separately (up to 500 feet away) from the charging cabinet, enabling greater flexibility in design and configuration for fleets.

Remote monitoring, intelligent diagnostics and a modular design allows for quick issue resolution and efficient field service.

Broad voltage range (up to 1000VDC) ensures compatibility with both today's and next generation electric vehicles.

• **OCPP compliant and 4G enabled**

• **200A and 300A cables available**

• **Supports CCS1**

• **3 Year Standard Warranty with extensions available.**





 Proterra charging systems are compliant with Federal DOT Buy America requirements.



# PROTERRA®
# CHARGING SYSTEMS

| MODEL | PD-200-1-PI | PD-300-1-PI |
|---|---|---|
| **ELECTRICAL OUTPUT** | | |
| DC Output Voltage | 150-1000 VDC | |
| Max Continuous DC Output Current | 200A | 300A |
| **MECHANICAL** | | |
| Cooling | Integrated air cooling | |
| Weight w/o pedestal (wall mounted) | 130 lbs \| 59 kg | |
| Weight with pedestal | 183 lbs \| 83 kg | |
| Dimensions w/o pedestal (wall mounted) (D x W x H) | 12 in x 24 in x 31.5 in \| 30.5 cm x 61 cm x 80 cm | |
| Dimensions w pedestal (D x W x H) | 12 in x 24 in x 56.7 in \| 30.5 cm x 61 cm x 145 cm | |
| Required side clearance | 40 in \| 1 m | |
| Required back clearance | None | |
| Required door Clearance | 24 in \| 61 cm | |
| **ENVIRONMENTAL** | | |
| Environmental Rating | NEMA 3R | |
| Maximum Altitude | 3000m, power derates above 2000m | |
| Operating temperature | -22°F to 122°F \| -30°C to 50°C | |
| Operating Humidity | 4-95% | |
| **MISC** | | |
| Approved charger-to-vehicle interfaces | J1772 CCS Type 1 Universal Plug-in | |
| CCS Cable Lengths | 18, 25 ft (optional) | |
| Number of CCS output cables per industrial dispenser | 1 CCS1 Cable (standard)<br>2 CCS1 Cables (optional, sequential operation)<br>2 CCS1 Cables (optional, simultaneous operation) | |
| Approved number of dispensers per power cabinet | Up to 4 single-cable dispensers operating sequentially | |
| Power Cabinet to dispenser or pantograph control box communications | Modbus TCP via fiber optic | |
| Max Distance between Power Cabinet and Dispenser | 500 ft \| 152.4 m (fiber optics) | |
| V2G Capable | Yes (optional) | |
| Management Communications | OCPP 1.6 control via 4G Cellular (standard)<br>Supports WIFI, Ethernet (optional) | |
| User Interface | Stop session button, Emergency stop button,<br>Status LED | |
| Certifications | UL 2231, UL 2202, UL 1741SA, IEEE 1547 (pending) | |
| Warranty | 3 year standard, 5 year extended warranty options available | |

SPEC_CHG SYS DISP_NBI_Q1_2022

# H-GAC

**Houston-Galveston Area Council**
**P.O. Box 22777 · 3555 Timmons · Houston, Texas 77227-2777**

Cooperative Agreement - Proterra Inc. - Public Services - ID: 6156

## GENERAL PROVISIONS

This Agreement is made and entered into, by and between the Houston-Galveston Area Council hereinafter referred to as H-GAC having its principal place of business at 3555 Timmons Lane, Suite 120, Houston, Texas 77027 and Proterra Inc., hereinafter referred to as the Contractor, having its principal place of business at 1815 Rollins Road, Burlingame, CA 94010.

WITNESSETH:

WHEREAS, H-GAC hereby engages the Contractor to perform certain services in accordance with the specifications of the Agreement; and

WHEREAS, the Contractor has agreed to perform such services in accordance with the specifications of the Agreement;

NOW, THEREFORE, H-GAC and the Contractor do hereby agree as follows:

## ARTICLE 1: LEGAL AUTHORITY

The Contractor warrants and assures H-GAC that it possesses adequate legal authority to enter into this Agreement. The Contractor's governing body, where applicable, has authorized the signatory official(s) to enter into this Agreement and bind the Contractor to the terms of this Agreement and any subsequent amendments hereto.

## ARTICLE 2: APPLICABLE LAWS

The Contractor agrees to conduct all activities under this Agreement in accordance with all applicable rules, regulations, directives, standards, ordinances, and laws, in effect or promulgated during the term of this Agreement, including without limitation, workers' compensation laws, minimum and maximum salary and wage statutes and regulations, and licensing laws and regulations. When required, the Contractor shall furnish H-GAC with satisfactory proof of its compliance therewith.

## ARTICLE 3: INDEPENDENT CONTRACTOR

The execution of this Agreement and the rendering of services prescribed by this Agreement do not change the independent status of H-GAC or the Contractor. No provision of this Agreement or act of H-GAC in performance of the Agreement shall be construed as making the Contractor the agent, servant or employee of H-GAC, the State of Texas or the United States Government. Employees of the Contractor are subject to the exclusive control and supervision of the Contractor.   The Contractor is solely responsible for employee related disputes and discrepancies, including employee payrolls and any claims arising therefrom.

## ARTICLE 4: WHOLE AGREEMENT

The General Provisions, Special Provisions, and Attachments, as provided herein, constitute the complete Agreement ("Agreement") between the parties hereto, and supersede any and all oral and written agreements between the parties relating to matters herein. Except as otherwise provided herein, this Agreement cannot be modified without written consent of the parties.

## ARTICLE 5: SCOPE OF SERVICES

The services to be performed by the Contractor are outlined in an Attachment to this Agreement.

## ARTICLE 6: PERFORMANCE PERIOD

This Agreement shall be performed during the period which begins Jan 01 2021 and ends Dec 31 2022. All services under this Agreement must be rendered within this performance period, unless directly specified under a written change or extension provisioned under Article 14, which shall be fully executed by both parties to this Agreement.

## ARTICLE 7: PAYMENT OR FUNDING

Payment provisions under this Agreement are outlined in the Special Provisions.

## ARTICLE 8: REPORTING REQUIREMENTS

If the Contractor fails to submit to H-GAC in a timely and satisfactory manner any report required by this Agreement, or otherwise fails to satisfactorily render performances hereunder, H-GAC may terminate this agreement with notice as identified in Article 15 of these General Provisions. H-GAC has final determination of the adequacy of performance and reporting by Contractor. Termination of this agreement for failure to perform may affect Contractor's ability to participate in future opportunities with H-GAC. The Contractor's failure to timely submit any report may also be considered cause for termination of this Agreement.

Any additional reporting requirements shall be set forth in the Special Provisions of this Agreement.

## ARTICLE 9: INSURANCE

Contractor shall maintain insurance coverage for work performed or services rendered under this Agreement as outlined and defined in the attached Special Provisions.

## ARTICLE 10: SUBCONTRACTS and ASSIGNMENTS

Except as may be set forth in the Special Provisions, the Contractor agrees not to subcontract, assign, transfer, convey, sublet or otherwise dispose of this Agreement or any right, title, obligation or interest it may have therein to any third party without prior written approval of H-GAC. The Contractor acknowledges that H-GAC is not liable to any subcontractor or assignee of the Contractor. The Contractor shall ensure that the performance rendered under all subcontracts shall result in compliance with all the terms and provisions of this Agreement as if the performance rendered was rendered by the Contractor. Contractor shall give all required notices, and comply with all laws and regulations applicable to furnishing and performance of the work. Except where otherwise expressly required by applicable law or regulation, H-GAC shall not be responsible for monitoring Contractor's compliance, or that of Contractor's subcontractors, with any laws or regulations.

## ARTICLE 11: AUDIT

Notwithstanding any other audit requirement, H-GAC reserves the right to conduct or cause to be conducted an independent audit of any transaction under this Agreement, such audit may be performed by the H-GAC local government audit staff, a certified public accountant firm, or other auditors designated by H-GAC and will be conducted in accordance with applicable professional standards and practices. The Contractor understands and agrees that the Contractor shall be liable to the H-GAC for any findings that result in monetary obligations to H-GAC.

## ARTICLE 12: EXAMINATION OF RECORDS

The Contractor shall maintain during the course of the work complete and accurate records of all of the Contractor's costs and documentation of items which are chargeable to H-GAC under this Agreement. H-GAC, through its staff or designated public accounting firm, the State of Texas, and United States Government, shall have the right at any reasonable time to inspect, copy and audit those records on or

off the premises by authorized representatives of its own or any public accounting firm selected by H-GAC. The right of access to records is not limited to the required retention period, but shall last as long as the records are retained. Failure to provide access to records may be cause for termination of the Agreement. The records to be thus maintained and retained by the Contractor shall include (without limitation): (1) personnel and payroll records, including social security numbers and labor classifications, accounting for total time distribution of the Contractor's employees working full or part time on the work, as well as cancelled payroll checks, signed receipts for payroll payments in cash, or other evidence of disbursement of payroll payments; (2) invoices for purchases, receiving and issuing documents, and all other unit inventory records for the Contractor's stocks or capital items; and (3) paid invoices and cancelled checks for materials purchased and for subcontractors' and any other third parties' charges.

The Contractor further agrees that the examination of records outlined in this article shall be included in all subcontractor or third-party agreements.

## ARTICLE 13: RETENTION OF RECORDS
The Contractor and its subcontractors shall maintain all records pertinent to this Agreement, and all other financial, statistical, property, participant records, and supporting documentation for a period of no less than seven (7) years from the later of the date of acceptance of the final payment or until all audit findings have been resolved.  If any litigation, claim, negotiation, audit or other action involving the records has been started before the expiration of the retention period, the records shall be retained until completion of the action and resolution of all issues which arise from it, or until the end of the seven (7) years, whichever is later, and until any outstanding litigation, audit, or claim has been fully resolved.

## ARTICLE 14: CHANGES AND AMENDMENTS
A.  Any alterations, additions, or deletions to the terms of this Agreement, which are required by changes in federal or state law or by regulations, are automatically incorporated without written amendment hereto, and shall become effective on the date designated by such law or by regulation.
B.  To ensure the legal and effective performance of this Agreement, both parties agree that any amendment that affects the performance under this Agreement must be mutually agreed upon and that all such amendments must be in writing.  After a period of no less than 30 days subsequent to written notice, unless sooner implementation is required by law, such amendments shall have the effect of qualifying the terms of this Agreement and shall be binding upon the parties as if written herein.

## ARTICLE 15: TERMINATION PROCEDURES
The Contractor acknowledges that this Agreement may be terminated for Convenience or Default.
A.  *Convenience*
    H-GAC may terminate this Agreement at any time, in whole or in part, with or without cause, whenever H-GAC determines that for any reason such termination is in the best interest of H-GAC, by providing written notice by certified mail to the Contractor. Upon receipt of notice of termination, all services hereunder of the Contractor and its employees and subcontractors shall cease to the extent specified in the notice of termination.

    The Contractor may cancel or terminate this Agreement upon submission of thirty (30) days written notice, presented to H-GAC via certified mail. The Contractor may not give notice of cancellation after it has received notice of default from H-GAC.
B.  *Default*

H-GAC may, by written notice of default to the Contractor, terminate the whole or any part of the Agreement, in any one of the following circumstances:

(1)  lf the Contractor fails to perform the services herein specified within the time specified herein or any extension thereof; or

(2)  If the Contractor fails to perform any of the other provisions of this Agreement for any reason whatsoever, or so fails to make progress or otherwise violates the Agreements that completion of services herein specified within the Agreement term is significantly endangered, and in either of these two instances does not cure such failure within a period often (10) days (or such longer period of time as may be authorized by H-GAC in writing) after receiving written notice by certified mail of default from H-GAC.

## ARTICLE 16: SEVERABILITY
H-GAC and Contractor agree that should any provision of this Agreement be determined to be invalid or unenforceable, such determination shall not affect any other term of this Agreement, which shall continue in full force and effect.

## ARTICLE 17: FORCE MAJEURE
To the extent that either party to this Agreement shall be wholly or partially prevented from the performance of any obligation or duty placed on such party by reason of or through strikes, stoppage of labor, riot, fire, flood, acts of war, insurrection, accident, order of any court, act of God, or specific cause reasonably beyond the party's control and not attributable to its neglect or nonfeasance, in such event, the time for the performance of such obligation or duty shall be suspended until such disability to perform is removed. Determination of force majeure shall rest solely with H-GAC.

## ARTICLE 18: CONFLICT OF INTEREST
No officer, member or employee of the Contractor or  subcontractor, no member of the governing body of the Contractor, and no other public officials of the Contractor who exercise any functions or responsibilities in the review or Contractor approval of this Agreement, shall participate in any decision relating to this Agreement which affects his or her personal interest, or shall have any personal or pecuniary interest, direct or indirect, in this Agreement.

## ARTICLE 19: FEDERAL COMPLIANCE
Contractor agrees to comply with all federal statutes relating to nondiscrimination, labor standards, and environmental compliance.  Additionally, for work to be performed under the Agreement or subcontract thereof, including procurement of materials or leases of equipment, Contractor shall notify each potential subcontractor or supplier of the Contractor's federal compliance obligations.  These may include, but are not limited to: (a) Title VI of the Civil Rights Act of 1964 (P.L. 88-352) which prohibits discrimination on the basis of race, color or national origin; (b) Title IX of the Education Amendments of 1972, as amended (20 U.S.C. §§ 1681-1683, and 1685-1686), which prohibits discrimination on the basis of sex; (c) the Fair Labor Standards Act of 1938 (29 USC 676 et. seq.), (d) Section 504 of the Rehabilitation Act of 1973, as amended (29 U.S.C. § 794), which prohibits discrimination on the basis of handicaps and the Americans with Disabilities Act of 1990; (e) the Age Discrimination in Employment Act of 1967 (29 USC 621 et. seq.) and the Age Discrimination Act of 1974, as amended (42 U.S.C. §§ 6101-6107), which prohibits discrimination on the basis of age; (f) the Drug Abuse Office and Treatment Act of 1972 (P.L. 92-255), as amended, relating to nondiscrimination on the basis of drug abuse; (g) the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970 (P.L. 91-616), as amended, relating to the nondiscrimination on the basis of alcohol abuse or alcoholism; (h) §§ 523 and 527 of the Public Health Service Act of 1912 (42 U.S.C. 290 dd-3 and 290 ee-3), as amended, relating to confidentiality of alcohol and drug abuse patient records; (i) Title VIII of the Civil Rights Act of 1968 (42 U.S.C. § 3601 et seq.), as amended, relating to nondiscrimination in the sale, rental or financing of housing; (j) any other nondiscrimination provisions in any specific statute(s)

applicable to any Federal funding for this Agreement; (k) the requirements of any other nondiscrimination statute(s) which may apply to this Agreement; (l) applicable provisions of the Clean Air Act (42 U.S.C. §7401 et seq.), the Federal Water Pollution Control Act, as amended (33 U.S.C. §1251 et seq.), Section 508 of the Clean Water Act (33 U.S.C. 1368), Executive Order 11738, and the Environmental Protection Agency regulations at 40 CPR Part 15; (m) applicable provisions of the Davis- Bacon Act (40 U.S.C. 276a - 276a-7), the Copeland Act (40 U.S.C. 276c), and the Contract Work Hours and Safety Standards Act (40 U.S.C. 327-332), as set forth in Department of Labor Regulations at 20 CPR 5.5a; (n) the mandatory standards and policies relating to energy efficiency which are contained in the state energy conservation plan issued in compliance with the Energy Policy and Conservation Act (P.L. 94-163).

## ARTICLE 20: CRIMINAL PROVISIONS AND SANCTIONS

The Contractor agrees to perform the Agreement in conformance with safeguards against fraud and abuse as set forth by the H-GAC, the State of Texas, and the acts and regulations of any related state or federal agency. The Contractor agrees to promptly notify H-GAC of any actual or suspected fraud, abuse, or other criminal activity through the filing of a written report within twenty-four (24) hours of knowledge thereof. Contractor shall notify H-GAC of any accident or incident requiring medical attention arising from its activities under this Agreement within twenty-four (24) hours of such occurrence. Theft or willful damage to property on loan to the Contractor from H-GAC, if any, shall be reported to local law enforcement agencies and H-GAC within two (2) hours of discovery of any such act.

The Contractor further agrees to cooperate fully with H-GAC, local law enforcement agencies, the State of Texas, the Federal Bureau of Investigation and any other duly authorized investigative unit, in carrying out a full investigation of all such incidents.

The Contractor shall notify H-GAC of the threat of lawsuit or of any actual suit filed against the Contractor pertaining to this Agreement or which would adversely affect the Contractor's ability to perform services under this Agreement.

## ARTICLE 21: INDEMNIFICATION AND RECOVERY

H-GAC's liability under this Agreement, whether for breach of contract, warranty, negligence, strict liability, in tort or otherwise, is limited to its order processing charge. In no event will H-GAC be liable for any loss of use, loss of time, inconvenience, commercial loss, lost profits or savings or other incidental, special or consequential damages to the full extent such use may be disclaimed by law. Contractor agrees, to the extent permitted by law, to defend and hold harmless H-GAC, its board members, officers, agents, officials, employees and indemnities from any and all claims, costs, expenses (including reasonable attorney fees), actions, causes of action, judgements, and liens arising as a result of Contractor's negligent act or omission under this Agreement. Contractor shall notifiy H-GAC of the threat of lawsuit or of any actual suit filed against Contractor relating to this Agreement.

## ARTICLE 22: LIMITATION OF CONTRACTOR'S LIABILITY

Except as specified in any separate writing between the Contractor and an END USER, Contractor's total liability under this Agreement, whether for breach of contract, warranty, negligence, strict liability, in tort or otherwise, but excluding its obligation to indemnify H-GAC, is limited to the price of the particular products/services sold hereunder, and Contractor agrees either to refund the purchase price or to repair or replace product(s) that are not as warranted. In no event will Contractor be liable for any loss of use, loss of time, inconvenience, commercial loss, loss of profits or savings or other incidental, special or consequential damages to the full extent such use may be disclaimed by law. Contractor understands and agrees that it shall be liable to repay and shall repay upon demand to

END USER any amounts determined by H-GAC, its independent auditors, or any agency of State or Federal government to have been paid in violation of the terms of this Agreement.

## ARTICLE 23: TITLES NOT RESTRICTIVE
The titles assigned to the various Articles of this Agreement are for convenience only. Titles shall not be considered restrictive of the subject matter of any Article, or part of this Agreement.

## ARTICLE 24: JOINT WORK PRODUCT
This Agreement is the joint work product of H-GAC and the Contractor.  This Agreement has been negotiated by H-GAC and the Contractor and their respective counsel and shall be fairly interpreted in accordance with its terms and, in the event of any ambiguities, no inferences shall be drawn against any party.

## ARTICLE 25: DISPUTES
All disputes concerning questions of fact or of law arising under this Agreement, which are not addressed within the Whole Agreement as defined pursuant to Article 4 hereof, shall be decided by the Executive Director of H-GAC or his designee, who shall reduce his decision to writing and provide notice thereof to the Contractor. The decision of the Executive Director or his designee shall be final and conclusive unless, within thirty (30) days from the date of receipt of such notice, the Contractor requests a rehearing from the Executive Director of H-GAC. In connection with any rehearing under this Article, the Contractor shall be afforded an opportunity to be heard and offer evidence in support of its position. The decision of the Executive Director after any such rehearing shall be final and conclusive.  The Contractor may, if it elects to do so, appeal the final and conclusive decision of the Executive Director to a court of competent jurisdiction.  Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the Agreement and in accordance with H- GAC's final decision.

## ARTICLE 26: CHOICE OF LAW: VENUE
This Agreement shall be governed by the laws of the State of Texas. Venue and jurisdiction of any suit or cause of action arising under or in connection with the Agreement shall lie exclusively in Harris County, Texas.  Disputes between END USER and Contractor are to be resolved in accordance with the law and venue rules of the state of purchase.  Contractor shall immediately notify H-GAC of such disputes.

## ARTICLE 27: ORDER OF PRIORITY
In the case of any conflict between or within this Agreement, the following order of priority shall be utilized: 1) General Provisions, 2) Special Provisions, 3) Scope of Work, and, 4) Other Attachments.

**SIGNATURES:**

H-GAC and the Contractor have read, agreed, and executed the whole Agreement as of the date first written above, as accepted by:

**Proterra Inc.**

Signature

Name     John Walsh

Title       Sr. Vice President - Sales

Date      3/16/2021

**H-GAC**

Signature

Name     Chuck Wemple

Title       Executive Director

Date      3/16/2021

# H-GAC

**Houston-Galveston Area Council**
**P.O. Box 22777  · 3555 Timmons  · Houston, Texas 77227-2777**

Cooperative Agreement - Proterra Inc. - Public Services -                    20-01626

## SPECIAL PROVISIONS

Incorporated by attachment, as part of the whole agreement, H-GAC and the Contractor do, hereby agree to the Special Provisions as follows:

## ARTICLE 1: BIDS/PROPOSALS INCORPORATED

In addition to the whole Agreement, the following documents listed in order of priority are incorporated into the Agreement by reference: Bid/Proposal Specifications and Contractor's Response to the Bid/Proposal.

## ARTICLE 2: END USER AGREEMENTS ("EUA")

**H-GAC** acknowledges that the **END USER** may choose to enter into an End User Agreement ("EUA) with the **Contractor** through this Agreement**,** and that the term of the EUA may exceed the term of the current **H-GAC** Agreement.  **H-GAC's** acknowledgement is not an endorsement or approval of the End User Agreement's terms and conditions.  **Contractor** agrees not to offer, agree to or accept from the **END USER**, any terms or conditions that conflict with those in **Contractor's** Agreement with **H-GAC.**  Contractor affirms that termination of its Agreement with H-GAC for any reason shall not result in the termination of any underlying EUA, which shall in each instance, continue pursuant to the EUA's stated terms and duration. Pursuant to the terms of this Agreement, termination of this Agreement will disallow the **Contractor** from entering into any new EUA with **END USERS.** Applicable **H-GAC** order processing charges will be due and payable to **H-GAC** on any EUAs, surviving termination of this Agreement between **H-GAC** and **Contractor.**

## ARTICLE 3: MOST FAVORED CUSTOMER CLAUSE

Contractor shall provide its most favorable pricing and terms to H-GAC.  If at any time during this Agreement, Contractor develops a regularly followed standard procedure of entering into agreements with other governmental customers within the State of Texas, and offers the same or substantially the same products/services offered to **H-GAC** on a basis that provides prices, warranties, benefits, and or terms more favorable than those provided to **H-GAC**, **Contractor** shall notify **H-GAC** within ten (10) business days thereafter, and this Agreement shall be deemed to be automatically retroactively amended, to the effective date of Contractor's most favorable past agreement with another entity.   **Contractor** shall provide the same prices, warranties, benefits, or terms to **H-GAC** and its END USER as provided in its most favorable past agreement. H-GAC shall have the right and option at any time to decline to accept any such change, in which case the amendment shall be deemed null and void.  If **Contractor** claims that a more favorable price, warranty, benefit, or term that was charged or offered to another entity during the term of this Agreement, does not constitute more favorable treatment, than **Contractor** shall, within ten (10) business days, notify **H-GAC** in writing, setting forth the detailed reasons **Contractor** believes the aforesaid offer is not in fact most favored treatment. **H-GAC**, after due consideration of Contractor's written explanation, may decline to accept such explanation and thereupon this Agreement between **H-GAC** and **Contractor** shall be automatically amended, effective retroactively, to the effective date of the most favored agreement, to provide the same prices, warranties,

benefits, or terms to H-GAC and the END USER.

***EXCEPTION:*** *This clause shall not be applicable to prices and price adjustments offered by a bidder, Proposer or contractor, which are not within bidder's/proposer's control [example; a manufacturer's bid concession], or to any prices offered to the Federal Government and its agencies.*

## ARTICLE 4: PARTY LIABILITY

Contractor's total liability under this Agreement, whether for breach of contract, warranty, negligence, strict liability, in tort or otherwise, is limited to the price of the particular products/services sold hereunder. Contractor agrees either to refund the purchase price or to repair or replace product(s) that are not as warranted. Contractor accepts liability to repay, and shall repay upon demand to END USER, any amounts determined by H-GAC, its independent auditors, or any state or federal agency, to have been paid in violation of the terms of this Agreement.

## ARTICLE 5: GOVERNING LAW & VENUE

Contractor and H-GAC agree that Contractor will make every reasonable effort to resolve disputes with the **END USER** in accord with the law and venue rules of the state of purchase. **Contractor** shall immediately notify **H-GAC** of such disputes.

## ARTICLE 6: SALES AND ORDER PROCESSING CHARGE

**Contractor** shall sell its products to **END USERS** based on the pricing and terms of this Agreement. **H-GAC** will invoice **Contractor** for the applicable order processing charge when H-GAC receives notification of an END USER order. **Contractor shall remit to H-GAC** the full amount of the applicable order processing charge, after delivery of any product or service and subsequent END USER acceptance**.** Payment of the Order Processing Charge shall be remitted from Contractor to H-GAC, within thirty (30) calendar days or ten (10) business days after receipt of an END USER's payment, whichever comes first, notwithstanding Contractor's receipt of invoice. For sales made by **Contractor** based on this Agreement**,** including sales to entities without Interlocal Agreements, **Contractor** shall pay the applicable order processing charges to **H-GAC.** Further, **Contractor** agrees to encourage entities who are not members of H-GAC**'s** Cooperative Purchasing Program to execute an **H-GAC** Interlocal Agreement. **H-GAC** reserves the right to take appropriate actions including, but not limited to, Agreement termination if **Contractor** fails to promptly remit the appropriate order processing charge to H-GAC. In no event shall **H-GAC** have any liability to **Contractor** for any goods or services an **END USER** procures from **Contractor.** At all times, **Contractor** shall remain liable to pay to **H-GAC** any order processing charges on any portion of the Agreement actually performed**,** and for which compensation was received by **Contractor.**

## ARTICLE 7: LIQUIDATED DAMAGES

Contractor and H-GAC agree that Contractor shall cooperate with the END USER at the time an END USER purchase order is placed, to determine terms for any liquidated damages.

## ARTICLE 8: INSURANCE

Unless otherwise stipulated in Section B of the Bid/Proposal Specifications, **Contractor** must have the following insurance and coverage minimums:

a. **General liability** insurance with a Single Occurrence limit of at least $1,000,000.00, and a General

Aggregate limit of at least two times the Single Occurrence limit.

**Product liability** insurance with a Single Occurrence limit of at least $1,000,000.00, and a General Aggregate limit of at least two times the Single Occurrence limit for all Products except Automotive Fire Apparatus. For Automotive Fire Apparatus, see Section B of the Bid/Proposal Specifications.

**Property Damage or Destruction** insurance is required for coverage of **End User** owned equipment while in **Contractor's** possession, custody or control. The minimum Single Occurrence limit is $500,000.00 and the General Aggregate limit must be at least two times the Single Occurrence limit. This insurance may be carried in several ways, e.g. under an Inland Marine policy, as art of Automobile coverage, or under a Garage Keepers policy. In any event, this coverage must be specifically and clearly listed on insurance certificate(s) submitted to **H-GAC**.

b. Insurance coverage shall be in effect for the length of any contract made pursuant to the Bid/Proposal, and for any extensions thereof, plus the number of days/months required to *deliver* any outstanding order after the close of the contract period.

c. Original Insurance Certificates must be furnished to **H-GAC** on request, showing **Contractor** as the insured and showing coverage and limits for the insurances listed above.

d. If any Product(s) or Service(s) will be provided by parties other than **Contractor**, all such parties are required to carry the minimum insurance coverages specified herein, and if requested by **H-GAC**, a separate insurance certificate must be submitted for each such party.

e. **H-GAC** reserves the right to contact insurance underwriters to confirm policy and certificate issuance and document accuracy.

## ARTICLE 9: PERFORMANCE AND PAYMENT BONDS FOR INDIVIDUAL ORDERS

**H-GAC's** contractual requirements DO NOT include a Performance & Payment Bond (PPB); therefore, Contractor shall offer pricing that reflects this cost savings. **Contractor** shall remain prepared to offer a PPB to cover any order if so requested by the **END USER**. **Contractor** shall quote a price to **END USER** for provision of any requested PPB, and agrees to furnish the PPB within ten business (10) days of receipt of **END USER's** purchase order.

## ARTICLE 10: CHANGE OF STATUS

**Contractor** shall immediately notify **H-GAC,** in writing, of **ANY** change in ownership, control, dealership/franchisee status, Motor Vehicle license status, or name. Contractor shall offer written guidance to advise H-GAC if this Agreement shall be affected in any way by such change. **H-GAC** shall have the right to determine whether or not such change is acceptable, and to determine what action shall be warranted, up to and including cancellation of Agreement.

## ARTICLE 11: TEXAS MOTOR VEHICLE BOARD LICENSING

All that deal in motor vehicles shall maintain current licenses that are required by the Texas Motor Vehicle Commission Code. If at any time during this Agreement term, any required **Contractor** license is denied, revoked, or not renewed, **Contractor** shall be in default of this Agreement, unless the Texas Motor Vehicle

Board issues a stay or waiver.  Contractor shall promptly provide copies of all current applicable Texas Motor Vehicle Board documentation to **H-GAC** upon request.

| Attachment A | | | |
|---|---|---|---|
| Proterra, Inc. | | | |
| Buses-Shuttle, Transit, Trams and Other Specialty Buses | | | |
| Contract No. BT01-21 | | | |
| These Vehicles Can Only Be Sold in States Outside Texas | | | |
| **Code** | **Manufacturer** | **Description** | **Price** |
| **XTF** | Proterra, LLC | 60 kW Shop Charger | $47,500 |
| **XTG** | Proterra, LLC | 125 kW Charger | $65,000 |
| **XTH** | Proterra, LLC | 35' low-floor Catalyst E2 Composite Body Battery Electric 440 kWh, 29 seated passengers with 2 ADA Positions | $765,755 |
| **XTI** | Proterra, LLC | 40' low-floor Catalyst E2 Composite Body Battery Electric 440 kWh, 40 seated passengers with 2 ADA Positions | $780,755 |
| **XTJ** | Proterra, LLC | 40' low-floor Catalyst E2 MAX Composite Body Battery Electric 660 kWh, 40 seated passengers with 2 ADA Positions | $878,855 |



**UNIVERSITY** *of* **VIRGINIA**

## PROCUREMENT & SUPPLIER DIVERSITY SERVICES

CARRUTHERS HALL, (POB 400202)
1001 N EMMET ST
Charlottesville, VA 22904-4202
Phone  434 924 4212 Fax  434 982 2690

National Association of Educational Procurement

Vendors may look up their invoice payment status for the past
90 days at https://invoices.uvafinance.virginia.edu/

| Purchase Order | | | |
|---|---|---|---|
| Purchase Order Date | PO/Reference No. | Revision No. | Revision Date |
| **May 2, 2022** | **2451573** | **3** | **Jun 23, 2023** |

| **Delivery Information** | |
|---|---|
| Required By Date | Apr 30, 2022 |
| Ship Via | Best Carrier-Best Way |
| Freight Terms | . |
| **Buyer Information** | |
| University Contact Name | John E Gerding |
| University Contact Phone | +1 434-982-2563 |
| University Contact Email | jeg5y@virginia.edu |

| **Supplier Information** | | **Delivery Information** | |
|---|---|---|---|
| upplier Name | Proterra | **Delivery Address**<br>University Of Virginia | |
| upplier Number | PL 29964 | 1001 EMMET  T | |
| Address | 1 Whitlee Ct | 1001 EMMET ST | |
| | Greenville, South Carolina 29607 United | CHARLOTTE VILLE VA 22903 | |
| | States | United States | |
| Duns No. | | hipTo Address Code        FM 0579 | |
| Contract Number | . | | |

| Line No. | Product Description | Catalog No. | Size / Packaging | Unit Price | Quantity | Ext. Price |
|---|---|---|---|---|---|---|
| 1 of 3 | <<<<<<<<<<<<<<<<<<<<<<<< LINE MODIFIED (see Purchase Order History below) >>>>>>>>>>>>>>>>>>>>>>>> | | | | | |
| | Proposal 4/28/22: (4) Battery Electric Buses 35' ZX5+ (450 kWh) with configurables per 2019 Gillig specs  dealer fee & warranty support, Sonny Merryman. | n/a | EA | 916,041.94 U D | 4 EA | 3,664,167.76 U D |
| | Reference Number | | | | | |
| 2 of 3 | <<<<<<<<<<<<<<<<<<<<<<<< LINE MODIFIED (see Purchase Order History below) >>>>>>>>>>>>>>>>>>>>>>>> | | | | | |
| | Proposal 4/28/22: (3) 180kW Charging system, Cabinet; commissioning (per cabinet) startup and testing | n/a | EA | 101,500.00 U D | 3 EA | 304,500.00 U D |
| | Reference Number        . | | | | | |
| 3 of 3 | <<<<<<<<<<<<<<<<<<<<<<<< LINE CANCELLED >>>>>>>>>>>>>>>>>>>>>>>>> | | | | | |
| **LINE CANCELLED** | Proposal 4/28/22: (6) 300A Dual cable charging dispensers with 18 foot charge cables | n/a | EA | 15,750.00 U D | 6 EA | 94,500.00 U D |
| | Reference Number        . | | | | | |

This purchase order will be governed by the University's Purchasing Terms and Conditions, a copy of which can be obtained from Procurement Services website (https://uvafinance.virginia.edu/resources/terms-conditions). See above for specific shipping instructions.

**Total**        3,968,667.76 USD

| Billing Information | | Billing Address |
|---|---|---|
| Payment Terms | 0% 0  Net 30 | University Of Virginia |
| F O B | Destination | |

The supplier must send a separate original invoice following each shipment for this purchase order. This purchase order number must be on all invoices or the invoice will be discarded.

| Purchase Order History | | | | | | |
|---|---|---|---|---|---|---|
| **Line No.** | **Date/Time** | **User** | **Action** | **Field Name** | **From** | **To** |
| 3 | 6/23/2023 6:24:45 PM | System | PO Line Cancelled | | | |
| | 6/23/2023 6:24:45 PM | System | PO modified | Payment Terms | 0% 0, Net 45 | 0% 0, Net 30 |
| 2 | 6/23/2023 6:24:45 PM | System | PO modified | Unit Price | 70,000.00 USD | 101,500.00 USD |
| | 12/15/2022 10:55:09 AM | System | PO modified | Shipping address | 1001 EMMET ST, 1001 EMMET T CHARLOTTE VILLE  VA 22903, United States | 1001 EMMET ST, 1001 EMMET T CHARLOTTE VILLE  VA 22903, United States |
| | 12/15/2022 10:55:09 AM | System | PO modified | Payment Terms | 0% 0, Net 45 | 0% 0, Net 45 |
| 1 | 12/15/2022 10 55 09 AM | ystem | PO modified | Unit Price | 900 254 94 U  D | 916 041 94 U  D |
| | 10/13/2022 4:12:20 PM | System | PO modified | Billing address | University of Virginia Accounts Payable, PO Box 3025  E mail vendor invoices@virginia.edu, Scranton, PA 18508, United States | |
| | 10/13/2022 4 12 20 PM | ystem | PO modified | hipping address | UNIV OF VA (PTMIL) PARKING & TRANSPORTATION, 1101 MILLMONT ST REAR, PARTS ROOM  Charlottesville  VA 22903, United States | 1001 EMMET  T  1001 EMMET ST, CHARLOTTESVILLE, VA 22903, United States |
| | 10/13/2022 4:12:20 PM | System | PO modified | Payment Terms | 1.5% 15, Net 15 | 0% 0, Net 45 |



# Invoice

Proterra Operating Company Inc.
1815 Rollins Road
Burlingame CA 94010
**US FEIN – 27-1878459**
**CAD GST/HST – 73390 6887**

**REMIT TO:**
Wire: Bank of America
A/C ████0802 ABA ████████
Lockbox: Proterra Lockbox 741340
P.O.Box 741340
Los Angeles CA 90074-1340

| | |
|---|---|
| **INVOICE NUMBER** | 1060920 |
| **INVOICE DATE** | 02-JUN-23 |
| **TERMS** | 15 NET |
| **CUSTOMER#** | 192016 |
| **DUE DATE** | 17-JUN-23 |
| **SALES ORDER #** | 47179 |
| **CUST CONTRACT#** | |
| **CUST PO#** | 2451573 |

**BILL TO:**  Attn: Accounts Payable
Rector and Visitors of the University of Virginia
1001 N. Emmet St
Charlottesville VA 22904

**SHIP TO:**  Rector and Visitors of the University of Virginia
1101 Millmont St
Charlottesville VA 22903

| ITEM# | DESCRIPTION | QTY | UNIT | UNIT PRICE | EXTENDED PRICE | Taxable |
|---|---|---|---|---|---|---|
| 030966 | 100% payment of charger unit price when charger is delivered | 1 | Each | 101,500.0000 | 101,500.00 | |

**Shipping Details**
Bill of Lading

Method of Shipment    Echo-LTL-TL Standard

Delivery #

Delivery Terms

| | |
|---|---|
| **Subtotal** | 101,500.00 |
| **Freight Charges** | 0.00 |
| **Total Sales Tax** | 0.00 |
| **Invoice Total** | 101,500.00 |
| **Currency** | USD |



# Invoice

| INVOICE NUMBER | 1060921 |
|---|---|
| INVOICE DATE | 02-JUN-23 |
| TERMS | 15 NET |
| CUSTOMER# | 192016 |
| DUE DATE | 17-JUN-23 |
| SALES ORDER # | 47180 |
| CUST CONTRACT# | |
| CUST PO# | 2451573 |

**REMIT TO:**
Wire: Bank of America
A/C ▮▮▮▮0802 ABA ▮▮▮▮▮
Lockbox: Proterra Lockbox 741340
P.O.Box 741340
Los Angeles CA 90074-1340

Proterra Operating Company Inc.
1815 Rollins Road
Burlingame CA 94010
**US FEIN – 27-1878459**
**CAD GST/HST – 73390 6887**

**BILL TO:**    Attn: Accounts Payable
Rector and Visitors of the University of Virginia
1001 N. Emmet St
Charlottesville VA 22904

**SHIP TO:**    Rector and Visitors of the University of Virginia
1101 Millmont St
Charlottesville VA 22903

| ITEM# | DESCRIPTION | QTY | UNIT | UNIT PRICE | EXTENDED PRICE | Taxable |
|---|---|---|---|---|---|---|
| 030966 | 100% of charger unit price upon delivery | 1 | Each | 101,500.0000 | 101,500.00 | |

**Shipping Details**
Bill of Lading

Method of Shipment    Echo-LTL-TL Standard

Delivery #

Delivery Terms

| | |
|---|---|
| **Subtotal** | 101,500.00 |
| **Freight Charges** | 0.00 |
| **Total Sales Tax** | 0.00 |
| **Invoice Total** | 101,500.00 |
| **Currency** | USD |



# Invoice

**REMIT TO:**
Wire: Bank of America
A/C ████0802 ABA ████████
Lockbox: Proterra Lockbox 741340
P.O.Box 741340
Los Angeles CA 90074-1340

| INVOICE NUMBER | 1060922 |
|---|---|
| INVOICE DATE | 02-JUN-23 |
| TERMS | 15 NET |
| CUSTOMER# | 192016 |
| DUE DATE | 17-JUN-23 |
| SALES ORDER # | 47181 |
| CUST CONTRACT# | |
| CUST PO# | 2451573 |

Proterra Operating Company Inc.
1815 Rollins Road
Burlingame CA 94010
**US FEIN – 27-1878459**
**CAD GST/HST – 73390 6887**

**BILL TO:** Attn: Accounts Payable
Rector and Visitors of the University of Virginia
1001 N. Emmet St
Charlottesville VA 22904

**SHIP TO:** Rector and Visitors of the University of Virginia
1101 Millmont St
Charlottesville VA 22903

| ITEM# | DESCRIPTION | QTY | UNIT | UNIT PRICE | EXTENDED PRICE | Taxable |
|---|---|---|---|---|---|---|
| 030966 | 100% payment of charger unit price upon delivery | 1 | Each | 101,500.0000 | 101,500.00 | |

**Shipping Details**
Bill of Lading

Method of Shipment     Echo-LTL-TL Standard

Delivery #

Delivery Terms

| | |
|---|---|
| **Subtotal** | 101,500.00 |
| **Freight Charges** | 0.00 |
| **Total Sales Tax** | 0.00 |
| **Invoice Total** | 101,500.00 |
| **Currency** | USD |