**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| PROTERRA INC., *et al.*[1], | ) ) ) | Case No. 23-11120 (BLS) |
| Debtors. | ) ) ) | (Jointly Administered) |

**PHILADELPHIA INDEMNITY INSURANCE COMPANY'S OBJECTION AND
RESERVATION OF RIGHTS WITH RESPECT TO ASSUMPTION,
ASSIGNMENT, AND CURE AMOUNTS**

**COMES NOW** Philadelphia Indemnity Insurance Company ("Philadelphia"), by and through the undersigned counsel, hereby submits this *Philadelphia Indemnity Insurance Company's Objection and Reservation of Rights with Respect to Assumption, Assignment, and Cure Amounts* (the "Objection"). In support of this Objection, Philadelphia respectfully states as follows:

**BACKGROUND**

1. Prior to these chapter 11 cases, Philadelphia issued various surety bonds (the "Bonds", and each a "Bond") in the aggregate penal amount of not less than $32,343,956.34 on behalf of the above-referenced Debtors to assure the performance and payments of the Debtors' obligations owed to various of the obligees under the Bonds with respect to various contracts, state permits, and/or state licenses (collectively, the "Bonded Contracts"). A non-exclusive list of the Bonds is attached as **Exhibit 1**.

2. In consideration of Philadelphia issuing the Bonds on behalf of the Debtors, Debtor Proterra Inc. ("Proterra") executed that certain *General Indemnity Agreement Commercial Surety* dated September 30, 2016 (the "Indemnity Agreement"), on behalf of itself and any subsidiary or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

affiliate (the "Indemnitors"), and agreed, among other things, to indemnify and hold harmless Philadelphia from and against any Liability & Loss (as defined in the Indemnity Agreement). A redacted copy of the Indemnity Agreement is attached as **Exhibit 1**. Moreover, the Indemnitors agreed in the Indemnity Agreement to the following:

> [Philadelphia] may consent to changes in any Bond or to changes in the contract or obligation, which is the subject of any Bond, including any changes that might increase the liability of any Principals or Indemnitors, or [Philadelphia] may refuse to consent to any such change. Surety's actions in consenting or in not consenting to any such change shall not release or affect the obligations of Indemnitors to [Philadelphia] under this Agreement.

3.    Along with the contractual indemnity and other contractual rights and remedies provided under the Indemnity Agreement, Philadelphia has certain rights and remedies against both Debtors as named principals under the respective Bonds, especially indemnity, exoneration, and the right of equitable subrogation under common law.

4.    Moreover, as security for the Bonds issued on behalf of the Debtors, the Debtors provided Philadelphia with $12,433,804.00 in cash collateral and an irrevocable letter of credit issued by Bank of America, N.A. in the amount of $2,610,221.00 (the rights and remedies discussed above, the cash collateral, and the irrevocable letter of credit, collectively, the "Philadelphia Collateral").

## PROCEDURAL BACKGROUND

5.    On August 8, 2023, the Debtors moved for entry of an order approving bid procedures and certain other processes related to sales of the Debtors' assets (the "Bid Procedures

Motion") [Doc. No. 36]. And the Court granted and entered an order approving the Bid Procedures Motion on September 7, 2023 (the "Bid Procedures Order") [Doc. No. 218].

6. Pursuant to the Bid Procedures Order, the Debtors filed a *Notice of Filing of Proposed Sale Order* [Doc. No. 278] on September 25, 2023, with a proposed sale order approving any future sales of the Debtors' assets attached (the "Proposed Sale Order").

7. In accordance with Philadelphia's rights and remedies under the Bonds and Indemnity Agreement, Philadelphia, along with Atlantic Specialty Insurance Company, negotiated with the Debtors to include the following language in the Proposed Sale Order:

> 27. Nothing in this Order, the APA, or any document, agreement, or instrument contemplated by any of the foregoing shall: (i) be construed to authorize or permit (a) the assumption and/or assignment of any surety bond issued by (x) Philadelphia Indemnity Insurance Company or (y) Atlantic Specialty Insurance Company (collectively, the "Sureties" and, each individually, a "Surety") on behalf of the Debtors (collectively, the "Surety Bonds" and, each individually, a "Surety Bond"), (b) the assumption and/or assignment of any indemnity agreements executed by one or more of the Debtors pursuant to which the Surety Bonds were issued (the "Indemnity Agreements" and, each individually, an "Indemnity Agreement"), or (c) obligate a Surety to replace any Surety Bond and/or issue any new surety bond on behalf of a Buyer; or (ii) be deemed to provide a Surety's consent to the involuntary substitution of any principal under any Surety Bond and/or any Indemnity Agreement, including, for the avoidance of doubt, that the Buyer shall not be a substitute principal under any Surety Bond or any Indemnity Agreement absent a Surety's consent thereto or further order of the Court. The Debtors and the Buyer reserve the right to add to Exhibit B as an Assumed Contract any Indemnity Agreement, Surety Bond, or similar instrument (collectively, the "Surety Agreements"), and the inclusion of any of the Surety Agreements in Exhibit B shall not prejudice (I) the rights of the Sureties to object or respond to such proposed assumption and/or assignment of any Surety Agreement issued by the Surety, including, without limitation, the right to object to an involuntary substitution of principal under any Surety Bond or (II) the rights of the Debtors or any other party-in-interest's rights to challenge any of the foregoing actions (or lack thereof).
>
> 28. Additionally, nothing in this Order, the APA, or any other document, agreement, or instrument contemplated by any of the foregoing shall be deemed to alter, limit, modify, release, waive, or prejudice any rights, remedies, and/or defenses that the Sureties have or may have under applicable bankruptcy and non-bankruptcy laws, under any of the their [sic] respective Surety

      Agreements, or related agreements, or any letters of credit, or other Surety collateral relating thereto.

[Doc. No. 278 at 28-29].

8. The Debtors held an auction for the Debtors' Proterra Powered Business Unit assets on November 9, 2023, and filed a *Notice of Successful Bidder Regarding Debtors' Powered Assets* [Doc. No. 525] a day later, specifying Volvo Battery Solutions LLC ("Volvo") as the successful bidder and providing an executed *Asset Purchase Agreement* between the Debtors and Volvo for the Proterra Powered Business Unit assets (the "Volvo APA").

9. The Debtors held an auction for the Debtors' Battery Lease Assets[2] and an auction for the Debtors' Transit Business Unit assets on November 13, 2023, and filed a *Notice of (A) Successful Bidder Regarding Debtors' (I) Transit Assets and (II) Energy Assets and (B) Cancellation of the Sale Hearing Solely with Respect to Proterra Energy* [Doc. No. 529] that same day, specifying Phoenix Motor, Inc. ("Phoenix") as the successful bidder at each auction and providing an executed *Asset Purchase Agreement* between the Debtors and Phoenix for each package of assets (the "Battery APA", the "Transit APA", and, collectively, the "Phoenix APAs").

10. A hearing for entry of a sale order(s), approval of the Volvo APA and Phoenix APAs, and consummation of the sale transactions took place on November 28, 2023, before this Court (the "Sale Hearing").

11. Also on September 25, 2023, the Debtors filed a *Notice of (I) Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (II) Proposed Cure Amounts* (the "Original Contract and Cure Notice") [Doc. No. 279]. And the Debtors subsequently filed the following:

---

[2] As defined in the *Notice of (A) Successful Bidder Regarding Debtors' (I) Transit Assets and (II) Energy Assets and (B) Cancellation of the Sale Hearing Solely with Respect to Proterra Energy* [Doc. No. 529].

- *First Amended Notice of (I) Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (II) Proposed Cure Amounts* (the "First Amended Contract and Cure Notice") [Doc. No. 472] on October 25, 2023,
- *Second Amended Notice of (I) Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (II) Proposed Cure Amounts* (the "Second Amended Contract and Cure Notice") [Doc. No. 528] on November 10, 2023, and
- *Third Amended Notice of (I) Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (II) Proposed Cure Amounts* (the "Third Amended Contract and Cure Notice") [Doc. No. 643] on November 27, 2023.

The Third Amended Contract and Cure Notice included as Appendix C thereto a complete list of all the potentially assumed and assigned contracts with corresponding cure amounts (the "Schedule of Potentially Assumed and Assigned Contracts and Cure Amounts"). The Third Amended Contract and Cure Notice includes at least one Bonded Contract, and the Schedule of Potentially Assumed and Assigned Contracts and Cure Amounts includes at least one of Philadelphia's Bonds, the Indemnity Agreement, and various Bonded Contracts, as further set forth in the non-exclusive list attached as **Exhibit 2**.

## LIMITED OBJECTION

12.     The Schedule of Potentially Assumed and Assigned Contracts and Cure Amounts includes at least one of Philadelphia's Bonds, the Indemnity Agreement, and various Bonded Contracts but does not specify which, if any, of the APAs relates to the potential assumption and assignment. Nor do any of the APAs provide any notice of specific contracts to be transferred as

part of the transaction. Philadelphia accordingly objects to the assumption or assignment of the Bonds, the Indemnity Agreement, the Bonded Contracts, and any cure amounts thereto.

13.     None of the Bonds should be included in the Schedule of Potentially Assumed and Assigned Contracts and Cure Amounts because the Bonds are neither assumable nor assignable.[3] However, to the extent any of the Bonds are assumable and assignable, which, again, they are not, the Debtors or assignee must provide adequate assurance of future performance to (a) pay bond premiums for the Bond and (b) perform all obligations under every Bonded Contract related to the Bond.

14.     For the same reasons, the Indemnity Agreement should not be included in the Schedule of Potentially Assumed and Assigned Contracts and Cure Amounts. To the extent it is

---

[3] First, the Debtors cannot assume and assign the Bonds because they do not constitute property of the estate. *See O'Malley Lumber Co. v. Lockard (In re Lockard)*, 884 F.2d 1171, 1178 (9th Cir. 1989); *Ohio v. Mansfield Tire and Rubber Co. (In re Mansfield Tire and Rubber Co.)*, 660 F.2d 1108, 1115 (6th Cir. 1981); *Globe Constr. Co. v. Okla. City Hous. Auth.*, 571 F.2d 1140, 1143 (10th Cir. 1978), *cert. denied*, 439 U.S. 835 (1978); *In re Buna Painting & Drywall Co.*, 503 F.2d 618, 619 (9th cir. 1974); *McLean Trucking Co. v. Dep't of Indus. Relations (In re McLean Trucking Co.)*, 74 B.R. 820, 826 (Bankr. W.D.N.C. 1987); *Moran v. Johns-Manville Sales Corp.*, 28 B.R. 376, 378 (N.D. Ohio 1983); *Fintel v. Oregon (In re Fintel)*, 10 B.R. 50, 51 (Bankr. D. Or. 1981). Second, even if the Bonds are property of the estate, they are executory contracts that constitute non-assumable/non-assignable financial accommodations. *See* 11 U.S.C. § 365(c)(2) (debtors "may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if such contract is a contract to . . . extend . . . financial accommodations, to or for the benefit of the debtor"); *In re United Airlines*, 368 F.3d 720, 723-24 (7th Cir. 2004) ("Although the Bankruptcy Code does not define 'financial accommodation,' it is common ground among the parties that a guaranty or other form of suretyship fits the bill."); *In re Thomas B. Hamilton Co., Inc.*, 969 F.2d 1013, 1018-19 (11th Cir. 1992) (finding guaranty and surety contracts constitute financial accommodations); *In re Edwards Mobile Home Sales, Inc.*, 119 B.R. 857, 858-59 (Bankr. M.D. Fla. 1990) (finding that obligations to pay another's debts constitute financial accommodations); *Wegner Farms Co. v. Merchants Bonding Co. (In re Wegner Farms Co.)*, 49 B.R. 440, 444 (Bankr. N.D. Iowa 1985) (finding surety bonds constitute non-assumable financial accommodations); *In re Adana Mortg. Bankers, Inc.*, 12 B.R. 977, 987 (Bankr. N.D. Ga. 1980) (finding guaranty agreements constitute non-assumable financial accommodations). Third, the Bonds only assure payment and/or performance of the named principal thereunder for which Philadelphia conducted underwriting, due diligence, and risk assessment of prior to issuing any surety credit. Forcing Philadelphia to assure a different party's payment and/or performance materially alters the risks under the Bonds without Philadelphia's consent or ability to conduct underwriting, due diligence, and risk assessment. It is a pillar of surety law that such constitutes an involuntary substitution of principal under that discharges Philadelphia's obligations under the Bonds. Thus, even if the Debtors were to attempt to assumption and assignment, such would be ineffective because Philadelphia would be discharged and owe no obligations to Volvo under to the Bonds. *See In re Liquidation of Union Indem. Ins. Co.*, 749 N.Y.S.2d 250, 251 (N.Y. App. Div. 2002); *Nat'l Fuel Gas Distribution Corp. v. Hartford Fire Ins. Co.*, 815 N.Y.S.2d 495 (Sup. Ct. 2005), *aff'd as modified*, 814 N.Y.S.2d 436 (2006); RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 37 (1996); SURETY ASPECTS OF BANKRUPTCY LAW AND PRACTICE 147-48 (Chad L. Schexnayder & Michael E. Collins eds., 2021).

assumable and assignable, which it is not, its cure amount should should be the penal sum of the Bonds, subject to the terms of the Bonds.  Moreover, the obligations under the Indemnity Agreement cannot be bifurcated to cover only those obligations with respect to certain of the Bonds.  The Debtors or any assignee must pay a cure amount of all Liability & Loss (as defined in the Indemnity Agreement), including, without limitation, past due bond premiums and legal fees and expenses, that Philadelphia has incurred as a result of or in connection with **all** the Bonds, or enforcing any obligations of the Debtors under the Indemnity Agreement.  Further, the Debtors or any assignee must provide adequate assurance of future performance to (a) pay bond premiums for all of the Bonds, not just those assumed or assigned, (b) perform all obligations under every Bonded Contract related to all the Bonds, not just those assumed or assigned, and (c) indemnify Philadelphia from all Liability & Loss (as defined in the Indemnity Agreement) with respect to all of the Bonded Contracts and Bonds, not just those assumed or assigned.

15.    With respect to the Bonded Contracts, Philadelphia reserves any and all liens, interests, rights, claims, remedies, defenses, and the like it may assert on its own or on behalf of any principal, obligee, or bond beneficiary, including, without limitation, setoff and recoupment rights, subject to Philadelphia's right to equitable subrogation, under the Bankruptcy Code, or under any applicable non-bankruptcy law and additionally reserves the right to amend and/or supplement this Objection.

16.    Philadelphia is currently and will continue working with the Debtors to resolve its concerns and issues prior to the Sale Hearing.

**WHEREFORE**, Philadelphia requests this Court deny assumption and assignment of the Bonds, Indemnity Agreement, and Bonded Contracts and, to the extent the Court does not so deny the assumption and assignment, condition such assumption and assignment on the Debtors or

assignee(s) providing the proper cure amount or adequate assurance of future performance and grant such other and further relief the Court deems just and proper.

                Respectfully submitted,

                **MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Dated: December 11, 2023        */s/ Gaston P. Loomis*
                Gary D. Bressler, Esq. (#5544)
                Gaston Loomis, Esq. (#4812)
                300 Delaware Avenue, Suite 1014
                Wilmington, Delaware 19801
                Telephone: (302) 300-4515
                Facsimile: (302) 654-4031
                E-mail: gbressler@mdmc-law.com
                        gloomis@mdmc-law.com
                -and-

                Scott C. Williams (admitted *pro hac vice*)
                S. Marc Buchman (admitted *pro hac vice*)
                **MANIER & HEROD, P.C.**
                1201 Demonbreun Street, Suite 900
                Nashville, Tennessee 37203
                Telephone: (615) 244-0030
                Facsimile: (615) 242-4203
                E-mail: swilliams@manierherod.com
                        mbuchman@manierherod.com

                *Attorneys for Philadelphia Indemnity Insurance Company*