## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### DEBTORS' TWENTY-SIXTH OMNIBUS MOTION FOR
### ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO
### REJECT CERTAIN EXECUTORY CONTRACTS, (II) GRANTING RELATED RELIEF

> **ANY PARTY RECEIVING THIS MOTION SHOULD LOCATE ITS NAME
> AND ITS REJECTED CONTRACT IDENTIFIED ON EXHIBIT 1 TO THE
> PROPOSED ORDER, AS APPLICABLE, ATTACHED HERETO AS EXHIBIT A**

The above-captioned debtors and debtors in possession (together, the "Debtors")
respectfully state as follows in support of this motion (this "Motion"):

### Relief Requested

1.      The Debtors seek entry of an order (the "Proposed Order"), substantially in the form
attached hereto as **Exhibit A**, (i) authorizing, but not directing, the Debtors to reject those certain
executory contracts set forth on Exhibit 1 to the Proposed Order
(collectively, the "Transit Contracts"), effective as of January 11, 2024
(the "Rejection Effective Date"), and (ii) granting related relief.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has
jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

*Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "<u>Amended Standing Order</u>").  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.　　Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), the Debtors consent to a final order with respect to this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.　　Venue of these chapter 11 cases and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.　　The bases for the relief requested herein are sections 105(a) and 365(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

<b><u>Background</u></b>

## I.　　General

6.　　On August 7, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the instant cases (the "<u>Chapter 11 Cases</u>").  The Debtors continue to manage and operate their business as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

7.　　On August 25, 2023, the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") appointed the Official Committee of Unsecured Creditors (the "<u>Committee</u>") in these Chapter 11 Cases [Docket No. 133].  No trustee or examiner has been appointed in these Chapter 11 Cases.  The Debtors' Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

8.    On September 7, 2023, the Court approved the bidding procedures to govern a postpetition marketing process of the Debtors' assets (the "Marketing Process").[2]  Pursuant to the Marketing Process, the Debtors held an auction on November 13, 2023, for the Proterra Transit and Proterra Energy business lines (the "Auction").  As set forth in the *Notice of (A) Successful Bidder Regarding Debtors' (I) Transit Assets and (II) Energy Assets and (B) Cancellation of Sale Hearing Solely with Respect to Proterra Energy* [Docket No. 529] (the "Successful Bids Notice"), *Notice of Filing First Amendment to (I) Battery Lease Asset Purchase Agreement and (II) Transit Asset Purchase Agreement, Each by and among the Debtors and Phoenix Motor, Inc.* [Docket No. 671], and *Notice of Filing of Second Amendment to (I) Battery Lease Asset Purchase Agreement and (II) Transit Asset Purchase Agreement, Each by and Among the Debtors and Phoenix Motor, Inc. and Rescheduling Sale Hearing With Respect to Proterra Transit* [Docket No. 743] (the "Asset Purchase Agreements"), the Debtors selected Phoenix Motor, Inc. ("Phoenix") as the Successful Bidder with respect to (i) certain battery lease assets (the "Battery Lease Assets") and (ii) Proterra Transit.  The Court approved the Asset Purchase Agreements (as may be amended) on January 8, 2024.  [Docket No. 833].  The Debtors closed the sale of Proterra Transit (excluding the Battery Lease Assets) pursuant to the applicable Asset Purchase Agreement on January 11, 2024 (the "Transit Sale") and seek to close the sale of the Battery Lease Assets (together with the Transit Sale, the "Sales") expeditiously.

---

[2]    *See Order (A) Approving Bidding Procedures to Govern the Sale of All or Substantially All of the Debtors' Assets Pursuant to Section 363 of the Bankruptcy Code, (B) Approving Procedures Regarding Entry Into One or More Stalking Horse Agreements, (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) Scheduling Auctions for the Sales of the Company Assets and Hearings to Consider Approval of the Sales and Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief* [Docket No. 218] (the "Bidding Procedures Order").

9.    Information regarding the Debtors' business, their capital and debt structure, and the events leading to the filing of the Chapter 11 Cases is contained in the *Declaration of Gareth T. Joyce in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 16].

## II.    Transit Contracts to be Rejected

10.    During the negotiation of the Asset Purchase Agreements, the Debtors and Phoenix identified certain contracts to be assumed and assigned to Phoenix in connection with Sales consummation.  It was the parties' understanding that any contracts not assumed and assigned to Phoenix would be rejected because each remaining Transit Contract would potentially require the Debtors to incur costs or other liabilities that no longer provide commensurate benefits to the Debtors given the Transit Sale.  Therefore, the Debtors concluded that these Transit Contracts are burdensome to their estates.[3]

11.    Accordingly, the Debtors have determined, in their business judgment, that rejecting the Transit Contracts furthers the Debtors' goals of preserving and maximizing the value of the Debtors' estates for the benefit of all stakeholders.  The Debtors therefore seek authority to reject the Transit Contracts effective as of the Rejection Effective Date.  The Rejection Effective Date proposed herein is appropriate because the Debtors will have unequivocally terminated services under the Transit Contracts, and the requested relief will allow the estates to limit potential administrative costs associated with contracts that the Debtors, after due consideration, have determined to reject.

---

[3]    The Proposed Order includes the rejection of the contract between the Debtors and the Rector and Visitors of the University of Virginia ("UVA"), which was previewed to the Court at the hearing held on January 8, 2024.

## Bases for Relief

I. **Rejection of the Transit Contracts is a Sound Exercise of the Debtors' Business Judgment**

12.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the Debtor."  11 U.S.C. § 365(a).  Section 365(a) is intended "to permit the trustee or debtor in possession, to use valuable property of the estate and to renounce title to and abandon burdensome property." *In re Republic Airways Holdings Inc.*, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016) (quoting *In re Orion Pictures Corp.* v. *Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1098 (2d Cir. 1993)); *see also In re Buffets Holdings, Inc.*, 387 B.R. 115, 119 (Bankr. D. Del. 2008) ("the authority to reject an executory contract is vital to the basic purpose to a chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.") (quoting *N.L.R.B.* v. *Bildisco & Bildisco* (*In re Bildisco*), 465 U.S. 513 (1984)).  Pursuant to Bankruptcy Rule 6006(f), a trustee or debtor-in-possession may file a motion seeking the authority to reject multiple contracts or leases, so long as any such omnibus rejection motion complies with the requirements of that rule.  Fed. R. Bankr. P. 6006(f).

13.     The standard applied by courts to determine whether the assumption or rejection of an executory contract should be authorized is the "business judgment" test, which "merely requires a showing that rejection will benefit the debtor's estate." *In re Extraction Oil & Gas*, 622 B.R. 608, 615 (Bankr. D. Del. 2020).  In applying the business judgment test in this context, courts will generally defer to a debtor's judgment in reaching the decision to reject. *See Mission Product Holdings, Inc.* v. *Tempnology*, 139 S.Ct. 1652, 1658 (2019) (following a decision by a debtor that an executory contract is not a "good deal," "the bankruptcy court will generally approve" a debtor's

decision to reject an executory contract); *see also In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'") (quoting *Wheeling-Pittsburgh Steel Corp.* v. *W. Penn. Power Co.* (*In re Wheeling-Pittsburgh Steel Corp.*), 72 B.R. 845, 849–50 (Bankr. W.D. Pa. 1987)); *Sharon Steel Corp.* v. *National Fuel Gas Distribution Corp*., 872 F.2d 36 (3d Cir. 1989) (A debtor's motion to reject an executory contract is properly granted upon a finding that "rejection would benefit the estate" under the traditional business judgment test).

14.     Under this standard, the Debtors submit that rejection of the Transit Contracts is well within the Debtors' business judgment and will serve to maximize the value of the Debtors' estates.  After evaluating and analyzing each Transit Contract in consultation with their advisors, and Phoenix having determined not to take assignment of such contracts in connection with the Sale, the Debtors have determined that there is no net benefit to retaining the Transit Contracts. The Transit Contracts do not provide value to the Debtors after the Transit Sale, and would require the Debtors to incur significant go-forward costs which the Debtors have determined are not justified by any benefits provided to their estates thereunder, and are thus similarly burdensome.

15.     Accordingly, the Debtors have concluded that the rejection of the Transit Contracts is in the best interest of the Debtors' estates, their creditors, and other parties in interest.

## II.    The Court Should Deem the Transit Contracts Rejected Effective as of the Rejection Effective Date

16.     Courts in this district and others have recognized that section 365 of the Bankruptcy Code permits courts to approve the retroactive rejection of executory contracts.  *In re Chi-Chi's, Inc.*, 305 B.R. 396 (Bankr. D. Del. 2004) (recognizing that courts can approve retroactive rejections after "balancing the equities in a particular case"); *In re Romacorp, Inc.*, 2006 WL 6544088 at *4 (Bankr. N.D. Tex. Feb. 2, 2006) (Noting that "[t]his Court is not alone in allowing

retroactive rejection of unexpired leases; in fact, a number of other courts around the country have recognized this equitable practice," collecting cases). The entry of an order authorizing rejection retroactively is appropriate where the balance of the equities favors such relief. *In re Thinking Machines Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995) ("Bankruptcy courts are courts of equity, and, particularly in the chapter 11 context, they may sometimes abandon mechanical solutions in favor of the pliant reins of fairness. In the section 365 context, this means that courts may enter retroactive orders of approval, and should do so when the balance of the equities preponderates in favor of such remediation.") (internal quotations omitted).

17.     Under this standard, the balance of the equities justifies the authorization of retroactive rejections where debtors no longer needed the services provided under a rejected contract as of the applicable rejection date, where debtors cannot satisfy their obligations under the applicable contracts, or where the contracts to be rejected create burdens on a debtor's estate. *In re Rupari Holding Corp.*, 2017 WL 5903498 at *6 (Bankr. D. Del. Nov. 28, 2017). Such is the case with respect to the Transit Contracts. The Debtors have determined that, after the Sales, the Transit Contracts provide goods or services that will no longer be essential to the operation of the Debtors' business or operational wind down and include terms which are uneconomic and will similarly burden their estates. The incurrence of additional administrative expenses under the Transit Contracts would thus burden the Debtors' estates without providing any continued benefit.

18.     Furthermore, the counterparties to the Transit Contracts will not be unduly prejudiced if the Transit Contracts are rejected effective as of the date requested herein. The Debtors will serve the affected counterparties with this Motion by electronic mail and/or facsimile, to the extent such contact information is known, and by first-class mail, substantially concurrently with the filing of this Motion, ensuring receipt by those parties of prompt notice of this Motion.

19.     To eliminate the potential for unnecessary administrative claims against the Debtors' estates and to avoid any further accrual of obligations under the Transit Contracts, the Debtors respectfully submit that retroactive rejection of the Transit Contracts effective as of the dates requested herein is appropriate.

## Reservation of Rights

20.     Nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as:  (i) an implication or admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (ii) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (v) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (vi) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (vii) a waiver of the obligation of any party in interest to file a proof of claim; or (viii) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

## Notice

21.     The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) the United States Attorney's Office for the District of Delaware; (iv) the Internal Revenue Service; (v) the state attorneys general for states in which the Debtors conduct

business; (vi) the Securities and Exchange Commission; (vii) counsel to the Cowen Parties; (viii) counsel to Bank of America (ix) the counterparties to the Transit Contracts listed on Exhibit 1 to the Proposed Order, respectively (via first-class mail and electronic mail delivery); and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  January 11, 2024
        Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

_/s/ Andrew L. Magaziner_
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
        amagaziner@ycst.com
        sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (_pro hac vice_ admission pending)
Robert A. Britton (_pro hac vice_ admission pending)
Michael J. Colarossi (_pro hac vice_ admission pending)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email:  pbasta@paulweiss.com
        rbritton@paulweiss.com
        mcolarossi@paulweiss.com

_Counsel to the Debtors and Debtors in Possession_