**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Ref. Docket No. 793** |

**NOTICE OF FILING OF REVISED PROPOSED ORDER
(A) APPROVING THE ADEQUACY OF THE DISCLOSURE
STATEMENT; (B) APPROVING THE SOLICITATION AND
NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION
OF THE DEBTORS' JOINT CHAPTER 11 PLAN OF
REORGANIZATION; (C) APPROVING THE FORMS OF
BALLOTS AND NOTICES IN CONNECTION THEREWITH;
(D) SCHEDULING CERTAIN DATES WITH RESPECT
THERETO; AND (E) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that, on January 2, 2024, the above-captioned debtors and debtors in possession (together, the "Debtors") filed the *Debtors' Motion for Entry of an Order (A) Approving the Adequacy of the Disclosure Statement; (B) Approving the Solicitation and Notice Procedures With Respect to Confirmation of the Debtors' Joint Chapter 11 Plan of Reorganization; (C) Approving the Forms of Ballots and Notices in Connection Therewith; (D) Scheduling Certain Dates With Respect Thereto; and (E) Granting Related Relief* [Docket No. 793] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that, subsequent to filing the Motion, the Debtors received informal comments from the Official Committee of Unsecured Creditors (the "Committee"), and Anthelion Prodigy Co-Investment LP (f/k/a CSI Prodigy Co-Investment LP), Anthelion I Prodigy Holdco LP (f/k/a CSI I Prodigy Holdco LP), and Anthelion PRTA Co-Investment LP (f/k/a CSI PRTA Co-Investment LP) (collectively, the "Plan Sponsor"), with respect to the proposed form of order (the "Proposed Order") attached as Exhibit A to the Motion.

**PLEASE TAKE FURTHER NOTICE** that in order to address the comments received from the Committee and the Plan Sponsor, the Debtors revised the Proposed Order, as reflected in the revised form of order (the "Revised Proposed Order") attached hereto as **Exhibit 1**. For the convenience of the Court and all interested parties, a blackline comparing the Revised Proposed Order against the Proposed Order is attached hereto as **Exhibit 2**.

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to present the Revised Proposed Order at the hearing scheduled for **January 23, 2024 at 11:00 a.m. (ET)** (the "Hearing") before The Honorable Brenden Linehan Shannon, United States Bankruptcy Judge for the District of Delaware.  The Debtors reserve all rights to modify the Revised Proposed Order at or prior to the Hearing.

Dated:   January 15, 2024
          Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
       amagaziner@ycst.com
       sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:   (212) 373-3000
Fax:   (212) 757-3990
Email: pbasta@paulweiss.com
      rbritton@paulweiss.com
      mcolarossi@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

**Exhibit 1**

**Revised Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Ref. Docket No. 793** |

**ORDER (A) APPROVING THE ADEQUACY OF THE
DISCLOSURE STATEMENT; (B) APPROVING THE SOLICITATION AND NOTICE
PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS'
JOINT CHAPTER 11 PLAN; (C) APPROVING THE FORMS OF BALLOTS
AND NOTICES IN CONNECTION THEREWITH; (D) SCHEDULING CERTAIN
DATES WITH RESPECT THERETO; AND (E) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for entry of an order, pursuant to sections

105, 341, 502, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017,

3018, 3020, 9006, and 9008, and Local Rules 2002-1, 3017-1, 3018-1, 3020-1 and 9006-1 and

3020-1, (a) approving the Disclosure Statement, (b) approving the Solicitation and Voting

Procedures with respect to confirmation of the Plan, (c) approving the forms of Ballots and Notices

in connection therewith, (d) scheduling certain dates with respect thereto, and (e) granting related

relief, all as more fully set forth in the Motion; and this Court having found that it has jurisdiction

over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of

Reference from the United States District Court for the District of Delaware, dated as of February

29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2); and this Court having found that it may enter a final order consistent with Article III

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"), if any; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

## I.      Approval of the Disclosure Statement

2.      The Disclosure Statement is hereby approved as providing holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code.

3.      The Disclosure Statement (including all applicable exhibits thereto) provides holders of Claims, holders of Interests, and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article IX of the Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

4.      The Debtors are authorized to file the Financial Projections (as defined in the Plan) with the Plan Supplement.

**II.     Approval of the Solicitation and Voting Procedures**

5.      The Debtors are authorized to solicit, receive, and tabulate votes to accept and reject the Plan in accordance with the Solicitation and Voting Procedures attached hereto as **Exhibit 2**, which are hereby approved in their entirety.

6.      Any party wishing to file a motion under Bankruptcy Rule 3018(a) to temporarily allow a Claim or Interest for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion") shall have until ten (10) days from the Solicitation Date to file and serve such a motion with respect to any claim as to which there is an objection pending as of the date of the entry of this Order (the "Rule 3018(a) Motion Deadline").  The Debtors and other parties in interest shall have until the date that is ten (10) days prior to the Voting Deadline as the deadline by which the Debtors or parties in interest must file objections to any Rule 3018(a) Motion (the "Rule 3018(a) Motion Objection Deadline").

7.      If a Claim subject to an objection other than a "reduce and allow" objection that is filed with this Court prior to the Voting Record Date, the applicable holder of such Claim shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event (as defined herein) occurs as provided herein.

8.      A "Resolution Event" shall mean the occurrence of one or more of the following events no later than three (3) business days prior to the Voting Deadline (the "Resolution Event Deadline"):

      **a.**      an order of this Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

      **b.**      an order of this Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

    **c.**    a stipulation or other agreement is executed between the holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed-upon amount; or

    **d.**    the pending objection is voluntarily withdrawn by the Debtors.

9.    No later than two (2) business days following the occurrence of a Resolution Event, the Debtors shall cause the Solicitation Agent to distribute via electronic mail, hand delivery, or overnight-courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant holder.  Such claimant must then return a duly completed, properly executed Ballot to the Solicitation Agent so that it is received no later than the Voting Deadline (unless the Debtors, in consultation with the Committee, extend the deadline in their sole discretion to facilitate a reasonable opportunity for such creditor to vote on the Plan).

10.    Solely for the purpose of voting to accept or reject the Plan and not for purposes of the allowance of, or distribution on account of, a Claim or Interest, the following hierarchy shall be used to determine the amount of the Claim or Interest associated with each claimant's or interest holder's vote:

    a.    the Claim amount:  (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with this Court; (ii) set forth in an order of this Court; or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court;

    b.    the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event under the procedures set forth in the Solicitation and Voting Procedures;

    c.    the Claim amount contained in a Proof of Claim that has been timely filed (or deemed timely filed by the Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; if such Claim is not subject to an objection filed in the Court on or before the Voting Record Date; *provided, however*, that Ballots cast by holders of Claims who timely file a Proof of Claim in respect of a contingent Claim or in a wholly-unliquidated or unknown amount (based on a reasonable review by the Debtors and/or the Solicitation Agent) that is not the subject of an objection will count for satisfying the numerosity

requirement of section 1126(c) of the Bankruptcy Code and will count as Ballots for Claims in the amount of $1.00, solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and, if a Proof of Claim is filed as partially liquidated and partially unliquidated, such Claim will be Allowed for voting purposes only in the liquidated amount; *provided further*, that to the extent the Claim amount contained in the Proof of Claim is different from the Claim amount (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with this Court; (ii) set forth in an order of this Court; or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court, such Claim amount shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes;

d.      the Claim amount listed in the Schedules, *provided* that such Claim is not scheduled as contingent, disputed, or unliquidated (for the avoidance of doubt, to the extent a Claim is scheduled as contingent, disputed, or unliquidated and no Proof of Claim is timely filed, the holder of such Claim shall not be entitled to vote on the Plan); *provided further* that if the Bar Date applicable to governmental units has not expired prior to the Voting Record Date with respect to a Claim of a governmental unit that is listed in the Schedules as contingent, disputed or unliquidated, such Claim shall be allowed to vote only in the amount of $1.00, solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code; and

e.      in the absence of any of the foregoing, such Claim shall be disallowed for voting purposes unless otherwise ordered by the Court.

## III.    Approval of the Materials and Timeline for Soliciting Votes

### A.      Approval of Key Dates and Deadlines with Respect to the Plan and Disclosure Statement

11.      The following dates are hereby established (subject to modification as necessary) with respect to the solicitation of votes to accept or reject, and voting on, the Plan:

a.      January 18, 2024 shall serve as the date of record for holders of Claims and Interests for purposes of voting on the Plan (the "Voting Record Date"). In addition, with respect to any transferred Claim in the Voting Classes, the transferee will be entitled to receive a Solicitation Package and cast a Ballot on account of the transferred Claim only if all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e), if any, have

been completed on or before the Voting Record Date.  In the event a Claim is transferred after the transferor has completed a Ballot, the transferee of such Claim shall be bound by any vote made on the Ballot by the transferor;

b.    the Debtors shall distribute Solicitation Packages to holders of Claims entitled to vote on the Plan by the date that is four (4) business days from the entry of this Order (the "Solicitation Date");

c.    the Debtors shall file the initial Plan Supplement, if any, by the date that is ten (10) days prior to the Voting Deadline (as defined below) (such date, the "Plan Supplement Deadline"); and

d.    all holders of Claims entitled to vote on the Plan must complete, execute, and return their Ballots so that they are **actually received** by the Solicitation Agent pursuant to the Solicitation and Voting Procedures, on or before February 27, 2024 at 4:00 PM (ET) (the "Voting Deadline").

**B.    Approval of the Form of, and Distribution of, Solicitation Packages to Parties Entitled to Vote on the Plan**

12.    In addition to the Disclosure Statement and exhibits thereto, the Solicitation Packages to be transmitted on or before the Solicitation Deadline to those holders of Claims in the Voting Classes entitled to vote on the Plan as of the Voting Record Date shall include the following, the form of each of which is hereby approved:

a.    A copy of the Solicitation and Voting Procedures attached hereto as **Exhibit 2**;

b.    A Ballot, together with detailed voting instructions and a pre-addressed, postage pre-paid return envelope attached hereto as **Exhibits 3-A** and **3-B**, respectively; [3]

c.    The Solicitation Package Cover Letter, including the UCC Letter, attached hereto as **Exhibit 7**;

d.    The Disclosure Statement (and exhibits thereto, including the Plan);

e.    This Disclosure Statement Order (without exhibits, except the Solicitation and Voting Procedures); and

---

[3]    The Debtors will use commercially reasonable efforts to ensure that any holder of a Claim who has filed duplicate Claims against the Debtors (whether against the same or both Debtors) that are classified under the Plan in the same Voting Class, receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class.

f.      the Confirmation Hearing Notice attached hereto as **Exhibit 1**.

13.      The Solicitation Packages provide the holders of Claims entitled to vote on the Plan with adequate information to make informed decisions with respect to voting on the Plan in accordance with section 1125 of the Bankruptcy Code, Bankruptcy Rules 2002(b) and 3017(d), and Local Rules 2002-1 and 3017-1.

14.      The Debtors shall distribute Solicitation Packages to all holders of Claims entitled to vote on the Plan on or before the Solicitation Deadline.  Such service shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

15.      The Debtors are authorized to distribute the Plan, the Disclosure Statement, and this Order to holders of Claims entitled to vote on the Plan in electronic format (i.e., flash drive). **Only** the Ballots, as well as the Cover Letter and the Confirmation Hearing Notice, must be provided in paper form.[4]

16.      The Solicitation Agent is authorized to assist the Debtors in:  (a) distributing the Solicitation Package; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by holders of Claims against the Debtors; (c) responding to inquiries from holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan; and (d) soliciting votes on the Plan.

---

[4]      On or before the Solicitation Deadline, the Debtors (through their Solicitation Agent) shall provide complete Solicitation Packages (other than Ballots) to the U.S. Trustee and to all parties on the Rule 2002 List as of the Voting Record Date.  Any party that receives the materials in electronic format that would prefer to receive materials in paper format may contact the Solicitation Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).

17.     The Solicitation Agent is also authorized to accept Ballots and Opt-Out Forms via electronic online transmission solely through a customized online balloting portal on the Debtors' case website (https://kccllc.net/proterra).   The encrypted data and audit trail created by such electronic submission shall become part of the record of any Ballot or Opt-Out Form submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.   Ballots or Opt-Out Forms submitted via the customized online balloting portal shall be deemed to contain an original signature.

18.     All votes to accept or reject the Plan must be cast by using the appropriate Ballot. All Ballots must be properly executed, completed, and delivered according to their applicable voting instructions by:  (a) first-class U.S. mail, in the return envelope provided with each Ballot; (b) overnight delivery; or (c) personal delivery, such that the Ballots are **actually received** by the Solicitation Agent no later than the Voting Deadline at the return address set forth in the applicable Ballot.   Alternatively, Ballots may be submitted electronically through the Solicitation Agent's online Ballot submission portal at https://kccllc.net/proterra by no later than the Voting Deadline. The Debtors are authorized to extend the Voting Deadline in their sole discretion, in consultation with the Committee, without further order of this Court.

### C.     Approval of the Confirmation Hearing Notice

19.     The Confirmation Hearing Notice, substantially in the form attached hereto as **Exhibit 1** is approved and shall be deemed good and sufficient notice of the Confirmation Hearing and no further notice need be given.   The Debtors shall file and serve the Confirmation Hearing Notice upon parties in interest in these Chapter 11 Cases by no later than the date that is four (4) business days from the entry of this Order.   The Debtors shall also cause the Confirmation Hearing Notice, as may be modified for purposes of publication, to be published one time on or before the date that is seven (7) business days from the entry of this Order in the national edition of one of

the following newspapers: The Wall Street Journal, The New York Times, or USA Today. Service of the Confirmation Hearing Notice, as well as the publication of such notice, as set forth herein constitutes adequate and sufficient notice of the hearings to consider approval of the Plan, the manner in which a copy of the Plan could be obtained, and the time fixed for filing objections thereto, in satisfaction of the requirements of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

### D.    Approval of Notice of Filing of the Plan Supplement

20.    The Debtors are authorized to send notice of the filing of the Plan Supplement, which shall be filed and served at least ten (10) days prior to the Voting Deadline, on the date the Plan Supplement is filed or as soon as reasonably practicable thereafter.

### E.    Approval of the Form of Notices to Non-Voting Classes

21.    Except to the extent that the Debtors determine otherwise, in consultation with the Committee, the Debtors are not required to provide Solicitation Packages to holders of Claims or Interests in Non-Voting Classes, as such holders are not entitled to vote on the Plan. Instead, on or before the Solicitation Deadline, the Solicitation Agent shall mail (first-class, postage pre-paid) a Non-Voting Status Notice in lieu of Solicitation Packages, the form of each of which is hereby approved, to those parties outlined below that are not entitled to vote on the Plan:

    **a.**    ***Unimpaired Claims-Conclusively Presumed to Accept***.  Holders of Claims in Classes 1, 2, and 3 are not impaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan.  As such, holders of such Claims will receive a notice, substantially in the form attached to the Proposed Order as **Exhibit 4-A**, in lieu of a Solicitation Package.

    **b.**    ***Other Interests-Deemed to Reject***.  Holders of Interests in Classes 7, 8 and 9 are receiving no distribution under the Plan and, therefore, are deemed to reject the Plan and will receive a notice, substantially in the form attached to the Proposed Order as **Exhibit 4-B**, in lieu of a Solicitation Package.  To the extent that a proof of claim is filed that is based solely on a Holder's equity Interests or the losses thereto, such Holder will be classified as a Class 8 or Class 9 claimant and such Claim will be treated in accordance

with Class 8 or Class 9 and not entitled to vote. Accordingly, pursuant to section 1126(g) of the Bankruptcy Code, those Holders are deemed to reject the Plan and/or are otherwise not entitled to vote on account of such claims.

    c.      ***Intercompany Claims.*** Holders of Claims in Class 6 (Intercompany Claims) shall either (i) have their Claim Reinstated in accordance with Article III.C of the Plan and therefore be conclusively presumed to have accepted the Plan; or (ii) have their Claims cancelled, released, and extinguished and without any distribution and therefore be deemed to reject the Plan. With respect to holders of Claims in Class 6, the Debtors are requesting authority to waive any requirement to serve such holders with a Solicitation Package or any other type of notice in connection with solicitation of the Plan.

    d.      ***Disputed Claims***. Holders of Claims subject to pending objection by the Debtors are not entitled to vote the disputed portion of their claim. As such, holders of such Claims will receive a notice, substantially in the form attached to the Proposed Order as **Exhibit 4-C**.

    e.      ***Opt-Out Release Forms***. Holders of Interests in Classes 8 and 9 are receiving no distribution under the Plan and, therefore, are deemed to reject the Plan. Any and all claims against "Released Parties," including the directors and officers of the Debtors, and other creditors and third parties covered by the Defined Terms (as defined in the Plan), will be released unless holders of such interests complete an opt-out release form (an "Opt-Out Form"). As such, holders of such Interests will receive a notice and opt-out form, substantially in the form attached to the Proposed Order as **Exhibits 5-A**, **5-B**, and **5-C**, as applicable.

    22.      The Debtors are not required to mail Solicitation Packages or other solicitation materials to: (a) holders of Claims that have already been paid in full during these Chapter 11 Cases pursuant to an order previously entered by this Court; or (b) any party to whom notice of the Disclosure Statement Hearing was sent but subsequently returned as undeliverable. The Debtors are likewise authorized to rely on the address information for the Voting and Non-Voting Classes as compiled and maintained by the Solicitation Agent as of the Voting Record Date, such that the Debtors and Solicitation Agent will not be required to conduct any additional research for updated addresses based on undeliverable Solicitation Packages or Notices of Non-Voting Status and will not be required to resend Solicitation Packages or other materials, including Notices of

Non-Voting Status, that are returned as undeliverable unless the Debtors are provided with accurate addresses for such parties at least seven (7) days prior to the Voting Deadline.

F. **Approval of Notices to Contract and Lease Counterparties**

23.     The Debtors are authorized to mail a notice of assumption (or assumption and assignment) of any Executory Contracts or Unexpired Leases (and any corresponding cure claims), in the forms attached hereto as **Exhibit 6** to the applicable counterparties to Executory Contracts and Unexpired Leases that will be assumed (or assumed and assigned) pursuant to the Plan (as the case may be), within the time periods specified in the Plan.  For the avoidance of doubt, a holder of a claim associated with a rejected Executory Contract and Unexpired Lease shall only be entitled to vote on account of such claim if it is reflected on the Solicitation Agent's claims register as of the Voting Record Date.

IV. **Approval of Procedures for Confirming the Plan**

A. **Approval of the Timeline for Filing Objections to the Plan and Confirming the Plan**

24.     The following dates are hereby established (subject to modification as needed) with respect to filing objections to the Plan and confirming the Plan:

a. **February 27, 2024 at 4:00 PM (ET)** shall be date by which objections to the Plan must be filed with this Court and served on the appropriate notice parties (as identified below) (the "Plan Objection Deadline");

b. **March 1, 2024** at **4:00 PM (ET)** shall be the date by which the Voting Declaration must be filed with this Court;

c. **March 1, 2024 at 4:00 PM (ET)** shall be the date by which replies to objections to the Plan must be filed with this Court and served by the appropriate notice parties (as identified below) (the "Plan Objection Reply Deadline");

d. **March 1, 2024** at **4:00 PM (ET)** shall be the date by which the Debtors shall file their brief in support of Confirmation (the "Brief in Support of Plan"); and

     **e.**    this Court shall consider Confirmation of the Plan at the hearing to be held on **March 5, 2024 at 10:00 AM (ET)** (the "<u>Confirmation Hearing Date</u>").

**B.**    **Approval of the Procedures for Filing Objections to the Plan**

25.    Objections to the Plan will not be considered by this Court unless such objections are timely filed and properly served in accordance with this Order.  Specifically, all objections to confirmation of the Plan or requests for modifications to the Plan, if any, **<u>must</u>**:  (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (d) be filed with this Court (contemporaneously with a proof of service) and served upon the notice parties identified in the Confirmation Hearing Notice on or before February 27, 2024 at 4:00 PM (ET).

**V.**    **Miscellaneous**

26.    The Debtors' right to modify the Plan in accordance with Article XII thereof, including the right to withdraw the Plan as to one or both Debtors at any time before the Confirmation Hearing Date, is hereby reserved.

27.    Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

28.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

29.    This Court shall retain exclusive jurisdiction over all matters arising from or related to the interpretation, implementation, and enforcement of this Order.

**<u>Exhibit 1</u>**

**Confirmation Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PROTERRA INC, *et al.*,[1] | ) | Case No. 23-11120 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Hearing Date: January 23, 2024 at 11:00 AM (ET)** |
|  | ) | **Obj. Deadline: January 16, 2024 at 4:00 PM (ET)** |
|  | ) |  |
|  | ) |  |

**NOTICE OF (A) HEARING TO CONSIDER CONFIRMATION OF THE**
**CHAPTER 11 PLAN OF REORGANIZATION FOR PROTERRA INC AND ITS**
**DEBTOR AFFILIATE AND (B) RELATED VOTING AND OBJECTION DEADLINES**

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

**ARTICLE IX** OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER. FAILURE TO FILE A TIMELY OBJECTION TO THE PLAN OR, WITH RESPECT TO THE RELEASES SET FORTH IN ARTICLE IX OF THE PLAN, TO TIMELY OPT OUT VIA BALLOT OR OPT-OUT NOTICE OR FILE A TIMELY OBJECTION TO THE PLAN THAT REMAINS UNRESOLVED AS OF CONFIRMATION, AS APPLICABLE, WILL RESULT, IF THE PLAN IS CONFIRMED, IN THE APPLICATION OF THE PROVISIONS SET FORTH BELOW, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS CONTAINED THEREIN, TO EACH OF THE DEBTORS' CREDITORS AND INTEREST HOLDERS.

**PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors") to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on March 5, 2024 at 10:00 AM (ET), before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

---

**PLEASE BE ADVISED**: THE CONFIRMATION HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE COURT OR THE DEBTORS IN CONSULTATION WITH THE COMMITTEE **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

---

## CRITICAL INFORMATION REGARDING VOTING ON THE PLAN

**Voting Record Date**. The voting record date was January 18, 2024 (the "Voting Record Date"), which is the date for determining which Holders of Claims in Classes 4 and 5 are entitled to vote on the Plan.

**Voting Deadline**. Within four (4) business days after entry of the Disclosure Statement Order, the Debtors will complete the mailing of Solicitation Packages to solicit votes to accept or reject the Plan from the Holders of Claims in Class 4 and holders of Claims in Class 5 each as of the Voting Record Date. The deadline for voting on the Plan is on February 27, 2024 at 4:00 PM (ET) (the "Voting Deadline"). If you received a Solicitation Package, including a Ballot, and intend to vote on the Plan, you **must**: (a) follow the instructions carefully; (b) complete **all** of the required information on the Ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is **actually received** by the Debtors' voting and solicitation agent, Kurtzman Carson Consultants LLC ("KCC" or the "Solicitation Agent"), on or before the Voting Deadline. **A failure to follow such instructions may disqualify your vote**.

**Voting Classes**. Only Holders of Second Lien Convertible Notes Claims (Class 4) and General Unsecured Claims (Class 5) are entitled to vote to accept or reject the Plan. All other classes of Claims and Interests are deemed either to accept or reject the Plan.

**Non-Voting Status of Holders of Certain Claims and Interests**. Certain Holders of Claims and Interests are **not** entitled to vote on the Plan. As a result, such parties will not receive any ballots or other related solicitation materials to vote on the Plan. The Holders of Claims and Interests in Class 1 (Other Secured Claims); Class 2 (Other Priority Claims); Class 3 (First Lien Claims); Class 6 (Intercompany Claims); Class 7 (Existing Equity Interests in OpCo); Class 8

(Existing Equity Interests in TopCo); and Class 9 (Section 510(b) Claims) are not entitled to vote on the Plan and will not receive a solicitation materials to vote on the Plan.

**Plan Objection Deadline**.  The deadline for filing objections to the Plan is **February 27, 2024 at 4:00 PM (ET) (**the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind, Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |
| **U.S. Trustee** ||
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey ||

## <u>ADDITIONAL INFORMATION</u>

**Obtaining Solicitation Materials**.  The materials in the Solicitation Package are intended to be self-explanatory.  If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials if you received electronic access to the solicitation materials), contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot

Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov. Please be advised that the Solicitation Agent is authorized to answer any questions about, and provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

**Notice of the Assumption of Executory Contracts**. Under the terms of Article V of the Plan, on the Effective Date, except as provided in the Plan (including, with respect to D&O Policies, under Article IV.P of the Plan), the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases, unless such Executory Contract is a D&O Policy or an Insurance Contract, that (a) had not been identified on the Schedule of Assumed Executory Contracts and Unexpired Leases, if any (which shall be included in the Plan Supplement), (b) have not been otherwise rejected, assumed, or assumed and assigned, including in connection with any Sale, or which have not been designated for assumption or assumption and assignment pursuant to the terms of any Sale Order, or (c) are not otherwise rejected, assumed, assumed and assigned, or the subject of a motion filed by the Debtors prior to the Effective Date to assume, assume and assign, or reject such Executory Contracts and Unexpired Leases on which the Bankruptcy Court has not ruled and is still pending.

---

**<u>BINDING NATURE OF THE PLAN:</u>**

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASES OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, OR (III) VOTED TO REJECT THE PLAN.**

---

**NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN THE PLAN**

**Releases, Exculpation, and Injunction under Article IX. Please be advised that under Article IX of the Plan:**

**<u>Releases by the Debtors</u>**

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, as of the Effective Date, each of the Released Parties is unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged by the Debtors, the Reorganized Debtors, any Wind Down Debtor, and each of their Estates, including any successors to the Debtors or any Estate's representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their**

Estates, any Causes of Action that any Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Debtors, the Reorganized Debtors, any Wind Down Debtor, or their Estates (whether individually or collectively) ever had, now has, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Released Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release: (a) to the extent that any Claims or other Causes of Action against the Debtors are not released pursuant to the Plan, are not discharged pursuant to the Plan, or are Disputed, any rights of the Debtors, the Reorganized Debtors, and the Wind Down Debtors to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims or other Causes of Action in response to such Causes of Action; (b) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (c) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any other document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (e) any obligations of any party or Entity under the Sale Documents; (f) any Retained Causes of Action; or (g) any Causes of Action asserted or assertable by any Debtor against any non-Debtor party to any Retained Cause of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) essential to the Confirmation of the Plan; (b) an exercise of the Debtors' business judgment; (c) in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (d) a good faith settlement and compromise of the Causes of Action released by the Debtor Release; (e) in the best interests of the Debtors and all Holders of Claims and Interests; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Debtors, the Reorganized Debtors, the Wind Down Debtors, and the Estates, including any successors to the Debtors or any Estate's representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, asserting any Cause of Action released pursuant to the Debtor Release.

Each of the Debtors expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that each Debtor does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Debtor expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each of the Debtors expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.

<u>Releases by the Releasing Parties</u>

As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the

Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in  accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; or (g) any Cause of Action asserted or assertable by any Releasing

Party against any non-Debtor party to any Retained Cause of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:   (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.

<u>Exculpation</u>

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur any liability to any person or Entity for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action related to any act or omission in connection with,

relating to, or arising out of, the Debtors' restructuring efforts, the Chapter 11 Cases, preparation for the Chapter 11 Cases, the filing of the Chapter 11 Cases, formulation, preparation, dissemination, negotiation, filing, or termination of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with any of the foregoing, the Sales, the funding of the Plan, the occurrence of the Effective Date, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, the issuance of securities pursuant to the Plan, the issuance of the New Common Stock, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, gross negligence, or willful misconduct, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The foregoing shall not be deemed to release, affect, or limit any post-Effective Date rights or obligations of the Exculpated Parties under the Plan, any Restructuring Transaction, or any other document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement).

The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**Discharge; Injunction**

This Discharge and Injunction shall become effective only in the event that a Reorganization, as defined in the Plan, occurs.

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on

account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Interest on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing).  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released pursuant to the Plan provisions setting forth the releases granted by the Debtors or the Releasing Parties, or discharged pursuant to the Plan, or are subject to exculpation pursuant to the article of the Plan which provides for the exculpation of the Exculpated Parties, shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Wind Down Debtors, the Exculpated Parties, or the Released Parties or the Distribution Trust:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has, on or before the Effective Date, asserted such setoff right in a document filed with the Bankruptcy Court (i.e., a timely filed motion or proof of claim) explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

### Non-Discharge of the Debtors; Injunction

This Non-Discharge and Injunction shall become effective only in the event that a Plan Support Agreement Termination, as defined in the Plan, occurs.

In accordance with section 1141(d)(3) of the Bankruptcy Code, the Plan does not discharge the Debtors. Section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. As such, no Entity holding a Claim or Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan. All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

Except as otherwise expressly provided for in the Plan or Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities are permanently enjoined, on and after the Effective Date, on account of or in connection with any Claim or Interest or Cause of Action, from:

      a.      commencing or continuing in any manner any action or other proceeding of any kind against any of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee;

      b.      enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee;

      c.      creating, perfecting or enforcing any encumbrance of any kind against any of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee;

      d.      asserting any right of setoff or subrogation of any kind against any obligation due from any of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed proof of Claim or motion filed before the Effective Date; or

      e.      commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Interest or Cause of Action released under this Article IX.

Such injunction shall extend to any successors and assigns of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee and their respective assets and properties. Any Entity injured by any willful violation of such injunction may seek actual damages and, in appropriate circumstances, may seek punitive damages from the willful violator.

Unless otherwise provided herein, any injunction or stay arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code or otherwise

that is in existence on the Confirmation Date shall remain in full force and effect until the Chapter 11 Cases are closed.

**Setoffs**

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim or an Interest, each Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee (as applicable) may set off against any Allowed Claim or Allowed Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Allowed Interest (before any distribution is made on account of such Allowed Claim or Allowed Interest), any claims, rights and Causes of Action of any nature that such Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee, as applicable, may hold against the Holder of such Allowed Claim or Allowed Interest, to the extent such claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee of any such claims, rights and Causes of Action that such Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee may possess against such Holder.  In no event shall any Holder of Claims or Interests be entitled to set off any Claim or Interest against any claim, right or Cause of Action of the applicable Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee unless such Holder has timely Filed a motion or proof of claim with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date.

The Plan also contains other related provisions that may affect your rights against the Debtors.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

*[Remainder of Page Intentionally Left Blank]*

Dated:   [Month DD, YYYY]
      Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

[]_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
       amagaziner@ycst.com
       sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email:  pbasta@paulweiss.com
       rbritton@paulweiss.com
       mcolarossi@paulweiss.com

*Counsel to the Debtors and
Debtors in Possession*

---

If you have questions about this Notice, please contact:
KCC
**Telephone:** (888) 251-3076 (Toll Free U.S. & Canada) or +1 (310) 751-2617 (Non-U.S. &
Canada Parties)
**Website:** https://www.kccllc.net/proterra

## **Exhibit 2**

**Solicitation and Voting Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## SOLICITATION AND VOTING PROCEDURES

**PLEASE TAKE NOTICE THAT**, on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**A.    The Voting Record Date for Class 4 (Second Lien Convertible Notes) and Class 5 (General Unsecured Claims)**

1.    The record date to determine which Claims in Class 4 and Class 5 was January 18, 2024 (the "Voting Record Date").

**B.    The Voting Deadline**

2.    The Court has approved February 27, 2024 at 4:00 PM (ET) as the deadline to submit Ballots and/or Opt-Out forms (the "Voting Deadline") for the Plan.  The Debtors may extend the Voting Deadline, in their discretion, in consultation with the Committee, without further order of the Court.

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

3.      To be counted as votes to accept or reject the Plan, all ballots sent to registered holders of Claims (each, a "<u>Ballot</u>") must be properly executed, completed, and returned in the pre-paid, pre-addressed return envelope included in the Solicitation Package or delivered by: (a) first-class U.S. mail; (b) overnight courier; (c) personal delivery; or (d) "E-Ballot", so that they are *actually received*, in any case, no later than the Voting Deadline by Kurtzman Carson Consultants LLC ("<u>KCC</u>" or the "<u>Solicitation Agent</u>").

4.      All Ballots should be submitted as follows:  (a) if by first class mail, overnight, or personal delivery, to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (b) if via "E-Ballot" submission, by visiting https://kccllc.net/proterra.  Delivery of a Ballot to the Solicitation Agent by facsimile or electronic mail shall not be valid and shall not be counted by the Solicitation Agent.

5.      Any holder of a Claim that (i) (a) votes to "Reject" or does not vote on the Plan and (b) checks the Release Opt-Out box under Item 2 of the Ballot, (ii) returns a properly completed Opt-Out Form indicating that such holder has elected to opt-out of the releases set forth in Article IX of the Plan, or (iii) timely files an objection to the Plan that is not consensually resolved before Confirmation or files on the docket any pleading evidencing support for any such objection or objector, shall *not* be a Releasing Party.  To be counted as a holder of a Claim deemed to have opted out of the release, such holder must (i) properly execute, complete, and deliver its Ballot or Opt-Out Form, as applicable, so that it is *actually received*, in any case, no later than the Voting Deadline by the Solicitation Agent, or (ii) timely file an objection to the Plan that is not resolved prior to confirmation, or file on the docket any pleading evidencing support for any such objection or objector.

6.      All Opt-Out Forms should be submitted as follows:  (a) if by first class mail, overnight, or personal delivery, to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (b) if via "E-Ballot" submission, by visiting https://kccllc.net/proterra.  With regard to Opt-Out Forms by holders of Class 8 TopCo Interests, Beneficial Holders should follow the instructions provided by their Nominees to submit their elections.   Nominees may submit their Master Opt-Out Forms via electronic mail at ProterraInfo@kccllc.com.  Delivery of an Opt-Out Form to the Solicitation Agent by facsimile or electronic mail, other than by Nominees of their Master Opt-Out Forms, shall not be valid and shall not be counted by the Solicitation Agent.

**C.      Form, Content, and Manner of Notices**

**The Solicitation Package**

7.      The  following  materials  shall  constitute  the  solicitation  package (the "<u>Solicitation Package</u>"):

        a.      A copy of these Solicitation and Voting Procedures attached as **<u>Exhibit 2</u>** to the Proposed Order;

b.        A Ballot, together with detailed voting instructions and a pre-addressed, postage pre-paid return envelope attached hereto as **Exhibits 3-A** and **3-B** to the Proposed Order, respectively;[3]

c.        The Solicitation Package Cover Letter and UCC Letter attached hereto as **Exhibit 7** to the Proposed Order;

d.        The Disclosure Statement (and exhibits thereto, including the Plan);

e.        This Disclosure Statement Order;

f.        the Confirmation Hearing Notice attached hereto as **Exhibit 1** to the Proposed Order; and

g.        such other materials as the Court may direct.

**Distribution of the Solicitation Package**

8.      The Solicitation Package shall provide the Plan, the Disclosure Statement, and the Disclosure Statement Order (without exhibits), and the Solicitation and Voting Procedures in electronic format (i.e., flash drive), and all other contents of the Solicitation Package, including Ballots, shall be provided in paper format.  Any party that receives the materials in electronic format but would prefer paper format may contact the Solicitation Agent by:  (a) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International); (b) visiting the Debtors' restructuring website at:  https://www.kccllc.net/proterra; (c) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300 El Segundo, CA 90245; and/or (d) email via www.kccllc.net/proterra/inquiry (with "Proterra Solicitation" in the inquiry) and requesting paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).

9.      The Debtors shall serve, or cause to be served, all of the materials in the Solicitation Package (excluding the Ballots) on the U.S. Trustee and all parties who have requested service of papers in this case pursuant to Bankruptcy Rule 2002 as of the Voting Record Date.  In addition, the Debtors shall mail, or cause to be mailed, the Solicitation Package to all holders of Claims in the Voting Classes who are entitled to vote by the date that is four (4) business days after the Court enters the Disclosure Statement Order, as described below in Section D.

10.    To avoid duplication and reduce expenses, the Debtors will use commercially reasonable efforts to ensure that any holder of a Claim who has filed duplicative Claims against a Debtor (whether against the same or both Debtors) that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class as against that Debtor.

---

[3]    The Debtors will use commercially reasonable efforts to ensure that any holder of a Claim who has filed duplicate Claims against the Debtors (whether against the same or both Debtors) that are classified under the Plan in the same Voting Class, receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class.

**Resolution of Disputed Claims for Voting Purposes; Resolution Event**

a.  Absent a further order of the Court, the holder of a Claim in a Voting Class that is the subject of a pending objection filed with the Court by the Debtors on a "reduce and allow" basis shall be entitled to vote such Claim in the reduced amount contained in such objection.

b.  If a Claim in a Voting Class is subject to an objection other than a "reduce and allow" objection that is filed with the Court before the Voting Record Date:  (i) the Debtors shall cause the applicable holder to be served with a Disputed Claim Notice substantially in the form annexed as **Exhibit 4-C** to the Disclosure Statement Order; and (ii) the applicable holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless  a Resolution Event (as defined herein) occurs as provided herein.

c.  A "Resolution Event" means the occurrence of one or more of the following events no later than three (3) business days prior to the Voting Deadline:

   i.  an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

   ii.  an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

   iii.  a stipulation or other agreement is executed between the holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed-upon amount; or

   iv.  the pending objection is voluntarily withdrawn by the Debtors.

d.  No later than two (2) business days following the occurrence of a Resolution Event, the Debtors shall cause the Solicitation Agent to distribute via electronic mail, hand delivery, or overnight-courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant holder.  Such claimant must then return a duly completed, properly executed Ballot to the Solicitation Agent so that it is received no later than the Voting Deadline (unless the Debtors extend the deadline in their sole discretion, in consultation with the Committee to facilitate a reasonable opportunity for such creditor to vote on the Plan).

**Non-Voting Status Notices for Unimpaired Classes and Classes Deemed to Reject the Plan**

11.     Certain Holders of Claims and Interests that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code or who are not entitled to vote because they are Unimpaired or otherwise conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code will receive only the Notice of Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan, substantially in the form annexed as **Exhibit 4-A** to the Disclosure Statement Order.  Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).  Certain holders of Claims and Interests who are not entitled to vote because they are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code will receive the Notice of Non-Voting Status to Holders of Impaired Interests Deemed to Reject the Plan, substantially in the form annexed as **Exhibit 4-B** to the Disclosure Statement Order.  Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

**D.     Voting and Tabulation Procedures**

**Holders of Claims Entitled to Vote**

12.     Only the following holders of Claims in the Voting Classes shall be entitled to vote with regard to such Claims:

> a.     holders of Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim (or an untimely Proof of Claim that has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) that:  (i) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date and (ii) is not the subject of a pending objection filed with the Court by the Voting Record Date; *provided*, that a holder of a Claim that is the subject of a pending objection on a "reduce and allow" basis shall receive a Solicitation Package and be entitled to vote such Claim in the reduced amount contained in such objection absent a further order of the Court; *provided, further*, that if a Claim is subject to an objection other than a "reduce and allow" objection that is filed with the Court prior to the Voting Record Date, the applicable holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event (as defined herein) occurs as provided herein;

> b.     holders of Claims that are listed in the Schedules (as defined in the plan) (to the extent a superseding Proof of Claim has not yet been timely filed as of the Voting Record Date) in an amount greater than $0; *provided* that if the applicable Bar Date has not expired prior to the Voting Record Date, a Claim listed in the Schedules as contingent, disputed, or unliquidated that has not been paid in full or superseded by a filed Proof of Claim shall be allowed to vote only

5

in the amount of $1.00, solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code;

d.      holders whose Claims arise:  (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court; (ii) in an order entered by the Court; or (iii) in a document executed by the Debtors pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed;

e.      holders of any Disputed Claim that has been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018(a);

f.      with respect to any entity described in subparagraphs (a) through (e) above, who, on or before the Voting Record Date, has transferred such entity's Claim to another entity, the assignee of such Claim; provided that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register (as defined in the Plan) as of the Voting Record Date.

### Establishing Claim Amounts for Voting Purposes

13.    **Class 4 Claims**.  Notwithstanding anything to the contrary set forth herein, the Claims amount of Class 4 Second Lien Convertible Notes, for voting purposes only, will be established by reference to (a) the Debtors' applicable books and records and (b) the list of record holders maintained by the Second Lien Agent (as defined in the Plan), dated as of the Voting Record Date, as evidenced by the applicable records provided by the Second Lien Agent to the Debtors or the Solicitation Agent, which records shall be provided no later than one (1) Business Day following the Voting Record Date.  Proofs of Claim for $0.00 are not entitled to vote.

If a Proof of Claim is amended, the last filed claim shall be subject to these rules and will supersede any earlier filed claim, and any earlier filed claim will be disallowed for voting purposes.

14.    **Class 5 Claims**.  Notwithstanding anything to the contrary set forth herein, the Claims amount of Class 5 General Unsecured Claims, for voting purposes only, will be established based on the amount of the applicable positions held by such Class 5 Claim holder, as of the Voting Record Date, as evidenced by (a) the Schedules and (b) the official register of Claims in the Chapter 11 Cases.  Proofs of Claim filed for $0.00 are not entitled to vote.

If a Proof of Claim is amended, the last filed claim shall be subject to these rules and will supersede any earlier filed claim, and any earlier filed claim will be disallowed for voting purposes.

15.    **Filed/Scheduled Claims**.  The Claim amount established herein shall control for voting purposes only and shall not constitute the Allowed (as defined in the Plan) amount of any Claim.  Moreover, any amounts filled in on Ballots by the Debtors through the Solicitation Agent, as applicable, are not binding for purposes of allowance and distribution.  In tabulating votes, the

following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

a.    the Claim amount: (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court; (ii) set forth in an order of the Court; or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court;

b.    the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event under the procedures set forth in these Solicitation and Voting Procedures;

c.    the Claim amount contained in a Proof of Claim that has been timely filed (or deemed timely filed by the Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; if such Claim is not subject to an objection filed in the Court on or before the Voting Record Date; *provided, however*, that Ballots cast by holders of Claims who timely file a Proof of Claim in respect of a contingent Claim or in a wholly-unliquidated or unknown amount (based on a reasonable review by the Debtors and/or the Solicitation Agent) that is not the subject of an objection will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count as Ballots for Claims in the amount of $1.00, solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and, if a Proof of Claim is filed as partially liquidated and partially unliquidated, such Claim will be Allowed for voting purposes only in the liquidated amount; *provided further*, that to the extent the Claim amount contained in the Proof of Claim is different from the Claim amount (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court; (ii) set forth in an order of the Court; or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court, such Claim amount shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes;

d.    the Claim amount listed in the Schedules, *provided* that such Claim is not scheduled as contingent, disputed, or unliquidated (for the avoidance of doubt, to the extent a Claim is scheduled as contingent, disputed, or unliquidated and no Proof of Claim is timely filed, the holder of such Claim shall not be entitled to vote on the Plan); *provided further* that if the Bar Date applicable to governmental units has not expired prior to the Voting Record Date with respect to a Claim of a governmental unit that is listed in the Schedules as contingent, disputed or unliquidated, such Claim shall be allowed to vote only in the amount of $1.00, solely for the purposes of

satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code; and

e.  in the absence of any of the foregoing, such Claim shall be disallowed for voting purposes unless otherwise ordered by the Court.

### Voting and Ballot Tabulation Procedures

16.  The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right, in consultation with the Committee, to waive any of the below specified requirements for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules:

a.  Except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline (as the same may be extended by the Debtors, in consultation with the Committee, or by order of the Court), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with Confirmation of the Plan.

b.  The Debtors will file with the Court, not later than March 1, 2024 at 4:00 PM (ET), a certification of votes (the "Voting Declaration"). The Voting Declaration shall, among other things, certify to the Court in writing the amount and number of Allowed Claims of each Class accepting or rejecting the Plan, and delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or necessary information, received via facsimile or e-mail, or damaged (all such Ballots, "Irregular Ballots"). The Voting Report shall indicate the Debtors' intentions with regard to each such Irregular Ballot.

c.  The method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Solicitation Agent actually receives the executed Ballot.

d.  An executed Ballot is required to be submitted by the entity submitting such Ballot. Subject to the other procedures and requirements herein, completed, executed Ballots may be submitted to the Solicitation Agent via the Solicitation Agent's E-Ballot system at https://kccllc.net/proterra. However, Ballots submitted by electronic mail or facsimile will not be valid and will not be counted by the Solicitation Agent.

e.     No Ballot should be sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), the Debtors' financial or legal advisors, and any Ballot so sent will not be counted.

f.     If multiple Ballots are received from the same holder with respect to the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior Ballot.

g.     Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted. Further, to the extent there are multiple Claims within the same Class filed by the same holder, the Debtors may, in their discretion, aggregate the Claims of any particular holder within a Class for the purpose of counting votes.

h.     A person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a holder of Claims must indicate such capacity when signing and, if required, or requested by KCC, the Debtors, or the Court, must submit evidence satisfactory to the requesting party to act on behalf of the holder of the Claim.

i.     Subject to any contrary order of the Court, the Debtors, in consultation with the Committee, further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. KCC, in its discretion, may contact entities entitled to vote to cure any defects in the Ballot; provided, however, that KCC is not obligated to do so.

j.     Unless waived or otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted.

k.     In the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected.

l.      If a Claim has been estimated or otherwise Allowed for voting purposes only by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution.

m.      If an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein.

n.      After the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors, in consultation with the Committee.

o.      The Debtors, in consultation with the Committee, are authorized to enter into stipulations with the holder of any Claim agreeing to the amount of a Claim for voting purposes.

p.      Where any portion of a single Claim has been transferred to a transferee, the holders of any portion of such single Claim will be: (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other voting and solicitation procedures set forth herein); and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan.  In the event that:  (i) a Ballot; (ii) a group of Ballots within a Voting Class received from a single creditor; or (iii) a group of Ballots received from the various holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots shall not be counted.

q.      Claims filed for $0.00 are not entitled to vote.

r.      Creditors with claims that have been indefeasibly paid, in full or in part, shall only be permitted to vote the unpaid amount of that Claim, if any, to accept or reject the Plan.

s.      Duplicate Claims within the Voting Classes will be deemed temporarily allowed for voting purposes only in an amount equal to one of those Claims and not in an amount equal to the aggregate of those Claims.

t.      Creditors will not be entitled to vote Claims to the extent their Claims have been superseded and/or amended by other Claims filed by or on behalf of such creditors, regardless of whether the Debtor has objected to the earlier filed Claim.

u.      If a proof of claim is filed that is based solely on a Holder's equity Interests or the losses thereto, such Holder will be classified as a

Class 8  or Class 9 claimant and such Claim will be treated in accordance with Class 8 or Class 9 and not entitled to vote.

v.    For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in one of the Voting Classes will be aggregated as if that creditor held one claim in such Voting Class, and the votes related to those Claims will be treated as a single vote to accept or reject the Plan.

w.    The holder of a Claim must complete each section of the Ballot, including, without limitation, certifying the amount of its Claim, voting to accept or reject the Plan, completing the requested identification information, and signing and dating the Ballot.

x.    The following Ballots shall not be counted in determining the acceptance or rejection of the Plan:

i.    any Ballot that is illegible or contains insufficient information to permit the identification of the holder of such Claim;

ii.    any Ballot that (a) does not indicate an acceptance or rejection of the Plan, (b) indicates both an acceptance and rejection of the Plan, and/or (c) partially accepts and partially rejects the Plan;

iii.    any Ballot cast by a person who does not hold, or represent a person that holds, a Claim in a Voting Class as of the Voting Record Date, or who otherwise is not entitled to vote pursuant to the procedures described herein;

iv.    any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed;

v.    any Ballot received after the Voting Deadline unless the Debtors, in consultation with the Committee, have granted an extension in writing (including e-mail) with respect to such Ballot.  The Holder of a Claim may choose the method of delivery of its Ballot to the Solicitation Agent at its own risk. Delivery of the Ballot will be deemed made only when the original properly executed Ballot is actually received by the Solicitation Agent;

vi.    any Ballot delivered by facsimile transmission, electronic mail, or any other means not specifically approved herein, provided that Ballots submitted through the E-Ballot will be counted;

11

vii.     any Ballot submitted to the Debtors or any person, entity, or agent of the Debtors other than the Solicitation Agent; and

viii.    any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot cast via the Debtors' online "E-Ballot" submission portal will be deemed to have an original signature).

**Amendments to the Plan and Solicitation and Voting Procedures**

17.     The Debtors, in consultation with the Committee, reserve the right to make changes to the Disclosure Statement, Plan, Confirmation Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Cover Letter, Solicitation and Voting Procedures, Plan Cure Notice, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

**<u>Exhibit 3-A</u>**

**Form of Class 4 Ballot**

(Second Lien Convertible Notes)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PROTERRA INC, *et al.*,[1] | ) | Case No. 23-11120 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11
## PLAN OF REORGANIZATION FOR PROTERRA INC AND ITS DEBTOR AFFILIATE

---

**THIRD-PARTY RELEASE**

**PLEASE BE ADVISED THAT <u>ARTICLE IX</u> OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING THOSE SET FORTH BELOW.**

**<u>ARTICLE IX</u> CONTAINS A THIRD-PARTY RELEASE. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN <u>ARTICLE IX</u> OF THE PLAN AS YOUR RIGHTS MAY BE AFFECTED.**

---

**HOLDERS OF CLASS 4 SECOND LIEN CONVERTIBLE NOTES CLAIMS SHOULD READ THIS ENTIRE BALLOT BEFORE COMPLETING.**

**PLEASE COMPLETE, DATE, AND SIGN THE BALLOT AND RETURN IT TO THE SOLICITATION AGENT IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE, BY FIRST CLASS MAIL, OVERNIGHT COURIER, HAND DELIVERY, OR VIA ELECTRONIC BALLOT.**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

**YOUR VOTE MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE "<u>VOTING DEADLINE</u>").**

**The boxes to accept or reject the Plan and to exercise your right with respect to the third-party releases are contained on page 3 of this Ballot.**

Proterra Inc and Proterra Operating Company, Inc. (together, the "<u>Debtors</u>") in the above-captioned Chapter 11 Cases, are soliciting votes with respect to the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "<u>Plan</u>"). The Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has approved that certain *First Amended Disclosure Statement for Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [●] (the "<u>Disclosure Statement Order</u>"). Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court. Capitalized terms used but not otherwise defined herein shall have the same meanings set forth in the Plan.

You are receiving this Class 4 Ballot because you were a Holder of a Class 4 Claim as of January 18, 2024 (the "<u>Voting Record Date</u>"). Under the terms of the Plan, Holders of Class 4 Claims are entitled to vote to accept or reject the Plan. The boxes to accept or reject the Plan and to exercise rights on third party releases are contained on page 3 of this Ballot.

**Included in Item 2 of this Class 4 Ballot is an Opt-Out Form related to the releases by Holders of Claims set forth in Article IX of the Plan. You are deemed to have consented to the releases by Holders of Claims unless you (a) either vote to "REJECT" or do not vote on the Plan; and (b) check the Release Opt-Out box under Item 2 of this Ballot, and complete the Certification in Item 4 of this Ballot, and return this Ballot so that it is actually received no later than the Voting Deadline, or timely File an objection to the releases by Holders of Claims. If you vote to "ACCEPT" the Plan, you are deemed to consent to the releases by Holders of Claims unless you timely file an objection to the Plan that is not resolved prior to confirmation, or file on the docket any pleading evidencing support for any such objection or objector.**

Your rights are further described in the Disclosure Statement, which was included in the package (the "<u>Solicitation Package</u>") you are receiving with this Class 4 Ballot. If you need to obtain additional Solicitation Packages, you may obtain them (at the Debtors' expense) by (a) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International); (b) visiting the Debtors' restructuring website at: https://www.kcccllc.net/proterra; (c) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300 El Segundo, CA 90245; and/or (d) emailing via www.kccllc.net/proterra/inquiry (with "Proterra Solicitation" in the inquiry) and requesting paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense). You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, opting out of the Releases by Holders of Claims, and making certain certifications with respect to the Plan.  If you believe you have received this Class 4 Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately at the address, or telephone number set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class 4 under the Plan.  If you hold Claims in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.  If the Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

## Item 1. Amount of Claim.

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of a Class 4 Claim in the following aggregate unpaid principal amount (insert amount in box below):

> Amount of Claim: $ _____

## Item 2. Vote on Plan.

The Holder of the Class 4 Claim set forth in Item 1 votes to (please check only <u>one</u> box):

> ☐ **ACCEPT** (vote FOR) the Plan          ☐ **REJECT** (vote AGAINST) the Plan

## IMPORTANT INFORMATION REGARDING THE THIRD PARTY RELEASE IN ARTICLE IX OF THE PLAN:

**IF YOU ARE A "RELEASED PARTY" OR YOU VOTE TO ACCEPT THE PLAN OR DO NOT OTHERWISE OPT-OUT, YOU SHALL BE A "RELEASING PARTY" UNDER THE PLAN, AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE PROVISIONS CONTAINED IN THE PLAN.  YOUR DECISION ON THIS ELECTION DOES NOT AFFECT THE AMOUNT OF DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

The Holder of the Class 4 Claim against the Debtors set forth in Item 1 elects to:

☐ **OPT OUT** of the Third Party Release set forth in Article IX.C of the Plan

## Item 3. The Plan Includes Certain Release Provisions.

To provide additional information regarding the Third Party Release, the following sections of the Plan have been copied immediately below: Article I.A. (definition of Related Party), Article I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), **Article IX.C (Releases by the Releasing Parties)**, Article IX.D (Exculpation), and Article IX.E (Non-Discharge of the Debtors; Injunction).[2]   To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following:

(a)    Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it:  (a) elects to opt out of the releases contained in the Plan, (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector, or (c) is an LG Party.

(b)    Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims and Interests who are Unimpaired under the Plan, (i) with respect to each of the foregoing Persons, in clauses (a) through (h), each of their Affiliates, and (j) with respect to each of the foregoing Persons in clauses (a) through (i), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such; provided that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector**.**

---

[2]    Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

(c)     Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair: (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in  accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any**

commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; or (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.

**Item 4. Certifications**

By Signing this Ballot, the undersigned certifies to the Court and the Debtors:

1.      that as of the Voting Record Date, the undersigned is either: (a) the Holder of the Class 4 Claim(s) (Second Lien Convertible Notes) being voted or (b) an authorized signatory for the Holder of the Class 4 Claim(s) (Second Lien Convertible Notes) being voted;

2.      that it has received the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

3.      that it has cast the same vote with respect to all Class 4 Claims (Second Lien Convertible Notes) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

4.      that no other Ballots with respect to the amount of the Class 4 (Second Lien Convertible Notes) Claim(s) identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim(s), then any such Ballots dated earlier are hereby revoked;

5.      it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 4 Claim(s) (Second Lien Convertible Notes) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

6.      that it understands and, if accepting the Plan, agrees with the treatment provided under the Plan for the Claim(s) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

7.      that it understands that, if it casts a vote to accept the Plan and does not timely file an objection to the Plan or file on the docket a pleading evidencing support for any such objection or objector; or votes to reject the Plan or does not vote either to accept or reject the Plan, and does not complete the Opt-Out Form in Item 2 or timely file an objection to the releases by Holders of Claims, it or the Holder on whose behalf it is submitting this Ballot, as applicable, shall be a "Releasing Party" under the Plan (unless such Holder is already a "Releasing Party" by virtue of being a "Released Party");

8.      that it acknowledges and understands that (a) if no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class and (b) any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily allowed by the Court as of the date of the Confirmation Hearing may be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code; and

9.      that it acknowledges and agrees that the Debtors, in consultation with the Committee, may make conforming changes to the Plan to the extent provided by Bankruptcy Rule 3019 as may be reasonably necessary and that the Debtors will not re-solicit acceptances or rejections of the Plan in the event of such conforming changes.

Name of Holder: _____

Signature: _____

Name of Signatory (If other than Holder)[3]: _____

Title: _____

Address: _____

_____

_____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN ACCORDANCE WITH ONE OF THE APPROVED SUBMISSION METHODS DESCRIBED ABOVE. YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS FEBRUARY 27, 2024 AT 4:00 PM (ET)**

---

[3]    If you are completing this Ballot on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing.  You may be required to provide additional information or documentation with respect to such relationship.

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT IN THE PROVIDED RETURN ENVELOPE *PROMPTLY* VIA FIRST CLASS
MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

| If by First Class Mail: | If by Overnight Courier or Hand Delivery: |
|---|---|
| Proterra Ballot Processing Center<br>c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 | Proterra Ballot Processing Center<br>c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 |

**PLEASE SELECT JUST ONE OPTION TO VOTE.
EITHER RETURN A PROPERLY EXECUTED PAPER BALLOT WITH YOUR VOTE**

**OR**

**IF COMPLETING AND SUBMITTING THIS BALLOT BY USING THE eBALLOT
PLATFORM**, You will need the following information to retrieve and submit your customized
eBallot:

https://www.kccllc.net/proterra

Unique eBallot ID#: _____

PIN#: _____

Holders of Claims who cast an eBallot should NOT also submit a paper ballot.

IF THE SOLICITATION AGENT DOES NOT ***ACTUALLY RECEIVE*** THIS BALLOT BY
FEBRUARY 27, 2024 AT 4:00 PM (ET) (AND IF THE VOTING DEADLINE IS NOT
EXTENDED), YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED
TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE
DEBTORS, IN CONSULTATION WITH THE COMMITTEE.

**Instructions for Completing Ballots**

1.      The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan or the Disclosure Statement Order, as applicable.

**2.      The Court may confirm the Plan and thereby bind you by the terms of the Plan.  Please review the Disclosure Statement for more information.**

3.      KCC's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.  To have your vote counted, you must electronically complete, sign, and return a customized electronic Ballot by utilizing the E-Ballot on KCC's website, http://www.kccllc.net/proterra.  Your Ballot must be received by KCC no later than the Voting Deadline, unless such time is extended by the Debtors.

**HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT.**

4.      If you prefer to return a hard copy of your Ballot, you may return it in the enclosed preaddressed, postage prepaid envelope or via first class mail, overnight courier, or hand delivery to:

<div align="center">

Proterra Ballot Processing Center
c/o Kurtzman Carson Consultants LLC
222 N. Pacific Coast Highway
Suite 300
El Segundo, CA 90245

</div>

5.      To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) sign and return the Ballot to the address set forth on the enclosed pre-addressed envelope or by a method provided herein.  The Voting Deadline for the receipt of Ballots by KCC is February 27, 2024 at 4:00 PM (ET).  Your completed Ballot must be actually received by KCC on or before the Voting Deadline.

6.      Except as otherwise provided herein or unless waived by the Debtors or permitted by order of the Court, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtors shall reject such Ballot as invalid and, therefore, decline to count it in connection with confirmation of the Plan.

7.      If you cast more than one Ballot voting the same Claim(s) before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect your intent and, thus, shall be deemed supersede any prior Ballot. If you simultaneously cast inconsistent Ballots, such Ballots will not be counted.

8.      If you cast a Ballot that is properly completed, executed and timely returned to KCC but that does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

9.      If you cast a Ballot that is properly completed, executed, and timely returned to KCC but that indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

10.     You shall be deemed to have voted the full amount of your Claim and shall not be entitled to split your vote within a particular Class.  Any Ballot that partially accepts and partially rejects the Plan will not be counted.

11. The following Ballots shall not be counted:

   a.   any Ballot that is illegible or contains insufficient information to permit the identification of the Holder;

   b.   any Ballot that (i) does not indicate an acceptance or rejection of the Plan, (ii) indicates both an acceptance and rejection of the Plan, and/or (iii) partially accepts and partially rejects the Plan;

   c.   any Ballot cast by a person who does not hold, or represent a person that holds, a Claim in a Voting Class as of the Voting Record Date, or who otherwise is not entitled to vote pursuant to the procedures described herein;

   d.   any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed;

   e.   any Ballot received after the Voting Deadline unless the Debtors, in consultation with the Committee, have granted an extension in writing (including e-mail) with respect to such Ballot.  The Holder of a Claim may choose the method of delivery of its Ballot to KCC at its own risk. Delivery of the Ballot will be deemed made only when the original properly executed Ballot is actually received by KCC;

   f.   any Ballot delivered by facsimile transmission, electronic mail, or any other means not specifically approved herein, provided that Ballots submitted through the E-Ballot will be counted;

   g.   any Ballot submitted to the Debtors or any person, entity, or agent of the Debtors other than KCC; and

   h.   any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot cast via the Debtors' online "E-Ballot" submission portal will be deemed to have an original signature).

12.     If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by KCC,

the Debtors, or the Court, you must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, you should provide their name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

13.    The Debtors, subject to contrary order of the Court, may waive any defect or irregularity as to any particular Ballot at any time, either before or after the close of voting, and any such waiver shall be documented in the Voting Declaration.

14.    Neither the Debtors, KCC, nor any other entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Declaration, nor will any of them incur any liability for failure to provide such notification.

15.    Unless waived by the Debtors, in consultation with the Committee, subject to contrary order of the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted.

16.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claim, and neither the Debtors nor KCC will accept delivery of any such certificates or instruments surrendered together with a Ballot.

17.    This Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim or (b) an assertion or admission of a Claim.

18.    If you believe you have received the wrong Ballot, you should contact KCC immediately by calling or emailing at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or ProterraInfo@kccllc.com (with "Proterra Inc Ballots" in the subject line).

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT KCC BY CALLING OR EMAILING AT (888) 251-3076 (USA OR CANADA, TOLL-FREE) OR +1 (310) 751-2617 (INTERNATIONAL) OR PROTERRAINFO@KCCLLC.COM**

**<u>Exhibit 3-B</u>**

**Form of Class 5 Ballot**

(General Unsecured Claims)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE CHAPTER 11 PLAN**
**OF REORGANIZATION FOR PROTERRA INC AND ITS DEBTOR AFFILIATE**

---

**THIRD-PARTY RELEASE**

**PLEASE BE ADVISED THAT ARTICLE IX OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING THOSE SET FORTH BELOW.**

**ARTICLE IX CONTAINS A THIRD-PARTY RELEASE.  YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE IX OF THE PLAN AS YOUR RIGHTS MAY BE AFFECTED.**

---

**HOLDERS OF CLASS 5 GENERAL UNSECURED CLAIMS SHOULD READ THIS ENTIRE BALLOT BEFORE COMPLETING.**

**PLEASE COMPLETE, DATE, AND SIGN THE BALLOT AND RETURN IT TO THE SOLICITATION AGENT IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE, BY FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY, OR VIA ELECTRONIC BALLOT.**

**YOUR VOTE MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE "VOTING DEADLINE").**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

> **The boxes to accept or reject the Plan and to exercise your right with respect to the third-party releases are contained on page 3 of this Ballot.**

Proterra Inc, as debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case, is soliciting votes with respect to the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan"). The Bankruptcy Court for the District of Delaware (the "Court") has approved that certain *First Amended Disclosure Statement for Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [●] (the "Disclosure Statement Order"). Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court. Capitalized terms used but not otherwise defined herein shall have the same meanings set forth in the Plan.

You are receiving this Class 5 Ballot because you were a Holder of a Class 5 Claim as of January 18, 2024 (the "Voting Record Date"). Under the terms of the Plan, Holders of Class 5 Claims are entitled to vote to accept or reject the Plan. The boxes to accept or reject the Plan and to exercise rights on third party releases are contained on page 3 of this Ballot.

> **Included in Item 2 of this Class 5 Ballot is an Opt-Out Form related to the releases by Holders of Claims set forth in Article IX of the Plan. You are deemed to have consented to the releases by Holders of Claims unless you (a) either vote to "REJECT" or do not vote on the Plan; and (b) check the Release Opt-Out box under Item 2 of this Ballot, and complete the Certification in Item 4 of this Ballot, and return this Ballot so that it is actually received no later than the Voting Deadline, or timely File an objection to the releases by Holders of Claims. If you vote to "ACCEPT" the Plan, you are deemed to consent to the releases by Holders of Claims unless you timely file an objection to the Plan that is not resolved prior to confirmation, or file on the docket any pleading evidencing support for any such objection or objector.**

Your rights are further described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 5 Ballot. If you need to obtain additional Solicitation Packages, you may obtain them (at the Debtors' expense) by (a) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International); (b) visiting the Debtors' restructuring website at: https://www.kcccllc.net/proterra; (c) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300 El Segundo, CA 90245; and/or (d) emailing via www.kccllc.net/proterra/inquiry (with "Proterra Solicitation" in the inquiry) and requesting paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense). You may also obtain copies of any pleadings filed in this Chapter 11 Case for a fee via PACER at: http://www.deb.uscourts.gov.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, opting out of the Releases by Holders of Claims, and making certain certifications with respect to the Plan. If you believe you have received this Class 5 Ballot in error, or if you believe

that you have received the wrong Ballot, please contact the Solicitation Agent immediately at the address, or telephone number set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 5 under the Plan. If you hold Claims in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.  If the Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

## Item 1. Amount of Claim.

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of a Class 5 Claim(s) in the following aggregate unpaid principal amount (insert amount in box below):

> Amount of Claim: $ _____

## Item 2. Vote on Plan.

The Holder of the Class 5 Claim set forth in Item 1 votes to (please check only <u>one</u> box):

☐ **ACCEPT** (vote FOR) the Plan          ☐ **REJECT** (vote AGAINST) the Plan

### IMPORTANT INFORMATION REGARDING THE THIRD PARTY RELEASE IN ARTICLE IX OF THE PLAN:

IF YOU ARE A "RELEASED PARTY" OR YOU VOTE TO ACCEPT THE PLAN OR DO NOT OTHERWISE OPT-OUT, YOU SHALL BE A "RELEASING PARTY" UNDER THE PLAN, AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE PROVISIONS CONTAINED IN THE PLAN. YOUR DECISION ON THIS ELECTION DOES NOT AFFECT THE AMOUNT OF DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.

The Holder of the Class 5 Claim against the Debtors set forth in Item 1 elects to:

☐ **OPT OUT** of the Third Party Release set forth in Article IX.C of the Plan

## Item 3. The Plan Includes Certain Release Provisions.

To provide additional information regarding the Third Party Release, the following sections of the Plan have been copied immediately below: Article I.A. (definition of Related Party), Article I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), **Article IX.C (Releases by the Releasing Parties)**, Article IX.D (Exculpation), and Article IX.E (Non-Discharge of the Debtors; Injunction).[2]  To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following:

(a)     Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it:  (a) elects to opt out of the releases contained in the Plan, (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector, or (c) is an LG Party.

(b)     Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims and Interests who are Unimpaired under the Plan, (i) with respect to each of the foregoing Persons, in clauses (a) through (h), each of their Affiliates, and (j) with respect to each of the foregoing Persons in clauses (a) through (i), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such; provided that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector**.**

(c)     Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally,**

---

[2]     Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in  accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity

under the Sale Documents; or (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:   (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.

## Item 4. Certifications

By Signing this Ballot, the undersigned certifies to the Court and the Debtor:

1.      that as of the Voting Record Date, the undersigned is either: (a) the Holder of the Class 5 Claim(s) (General Unsecured Claims) being voted or (b) an authorized signatory for the Holder of the Class 5 Claim(s) (General Unsecured Claims) being voted;

2.      that it has received the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

3.      that it has cast the same vote with respect to all Class 5 Claims (General Unsecured Claims) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

4.      that no other Ballots with respect to the amount of the Class 5 (General Unsecured Claims) Claim(s) identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim(s), then any such Ballots dated earlier are hereby revoked;

5.      it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 5 Claim(s) (General Unsecured Claims) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

6.      that it understands and, if accepting the Plan, agrees with the treatment provided under the Plan for the Claim(s) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

7.      that it understands that, if it casts a vote to accept the Plan and does not timely file an objection to the Plan, or file on the docket any pleading evidencing support for any such objection or objector; or votes to reject the Plan or does not vote either to accept or reject the Plan, and does not complete the Opt-Out Form in Item 2 or timely file an objection to the releases by Holders of Claims, it or the Holder on whose behalf it is submitting this Ballot, as applicable, shall be a "Releasing Party" under the Plan (unless such Holder is already a "Releasing Party" by virtue of being a "Released Party");

8.      that it acknowledges and understands that (a) if no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class and (b) any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily allowed by the Court as of the date of the Confirmation Hearing may be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code; and

9.      that it acknowledges and agrees that the Debtors, in consultation with the Committee, may make conforming changes to the Plan to the extent provided by Bankruptcy Rule 3019 as may be reasonably necessary and that the Debtors will not re-solicit acceptances or rejections of the Plan in the event of such conforming changes.

Name of Holder: _____

Signature:

_____

Name of Signatory (If other than Holder)[3]: _____

Title: _____

Address: _____

_____

_____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT
AND RETURN IT PROMPTLY IN ACCORDANCE WITH
ONE OF THE APPROVED SUBMISSION METHODS
DESCRIBED ABOVE. YOUR BALLOT MUST BE
ACTUALLY RECEIVED BY THE VOTING DEADLINE,
WHICH IS FEBRUARY 27, 2024 AT 4:00 PM (ET)**

---

[3]    If you are completing this Ballot on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing.  You may be required to provide additional information or documentation with respect to such relationship.

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT IN THE PROVIDED RETURN ENVELOPE *PROMPTLY* VIA FIRST CLASS
MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

| <u>If by First Class Mail:</u> | <u>If by Overnight Courier or Hand Delivery:</u> |
|---|---|
| Proterra Ballot Processing Center<br>  c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 | Proterra Ballot Processing Center<br>  c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 |

**PLEASE SELECT JUST ONE OPTION TO VOTE.
EITHER RETURN A PROPERLY EXECUTED PAPER BALLOT WITH YOUR VOTE**

**<u>OR</u>**

**IF COMPLETING AND SUBMITTING THIS BALLOT BY USING THE eBALLOT
PLATFORM,** You will need the following information to retrieve and submit your customized
eBallot:

https://www.kccllc.net/proterra

Unique eBallot ID#:        _____

          PIN#:        _____

     Holders of Claims who cast an eBallot should NOT also submit a paper ballot.

> IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT BY
> FEBRUARY 27, 2024 AT 4:00 PM (ET) (AND IF THE VOTING DEADLINE IS NOT
> EXTENDED), YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED
> TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE
> DEBTOR.

**Instructions for Completing Ballots**

1.      The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan or the Disclosure Statement Order, as applicable.

**2.      The Court may confirm the Plan and thereby bind you by the terms of the Plan.  Please review the Disclosure Statement for more information.**

3.      KCC's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted. To have your vote counted, you must electronically complete, sign, and return a customized electronic Ballot by utilizing the E-Ballot on KCC's website, http://www.kccllc.net/proterra.  Your Ballot must be received by KCC no later than the Voting Deadline, unless such time is extended by the Debtor.

**HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT.**

4.      If you prefer to return a hard copy of your Ballot, you may return it in the enclosed preaddressed, postage prepaid envelope or via first class mail, overnight courier, or hand delivery to:

<div align="center">

Proterra Ballot Processing Center
c/o Kurtzman Carson Consultants LLC
222 N. Pacific Coast Highway
Suite 300
El Segundo, CA 90245

</div>

5.      To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) sign and return the Ballot to the address set forth on the enclosed pre-addressed envelope or by a method provided herein.  The Voting Deadline for the receipt of Ballots by KCC is February 27, 2024 at 4:00 PM (ET).  Your completed Ballot must be actually received by KCC on or before the Voting Deadline.

6.      Except as otherwise provided herein or unless waived by the Debtors or permitted by order of the Court, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtors shall reject such Ballot as invalid and, therefore, decline to count it in connection with confirmation of the Plan.

7.      If you cast more than one Ballot voting the same Claim(s) before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect your intent and, thus, shall be deemed supersede any prior Ballot.  If you simultaneously cast inconsistent Ballots, such Ballots will not be counted.

8.      If you cast a Ballot that is properly completed, executed and timely returned to KCC but that does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

9.      If you cast a Ballot that is properly completed, executed, and timely returned to KCC but that indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

10.      You shall be deemed to have voted the full amount of your Claim and shall not be entitled to split your vote within a particular Class.  Any Ballot that partially accepts and partially rejects the Plan will not be counted.

11. The following Ballots shall not be counted:

a.   any Ballot that is illegible or contains insufficient information to permit the identification of the Holder;

b.   any Ballot that (i) does not indicate an acceptance or rejection of the Plan, (ii) indicates both an acceptance and rejection of the Plan, and/or (iii) partially accepts and partially rejects the Plan;

c.   any Ballot cast by a person who does not hold, or represent a person that holds, a Claim in a Voting Class as of the Voting Record Date, or who otherwise is not entitled to vote pursuant to the procedures described herein

d.   any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed;

e.   any Ballot received after the Voting Deadline unless the Debtors have granted an extension in writing (including e-mail) with respect to such Ballot.  The Holder of a Claim may choose the method of delivery of its Ballot to KCC at its own risk. Delivery of the Ballot will be deemed made only when the original properly executed Ballot is actually received by KCC;

f.   any Ballot delivered by facsimile transmission, electronic mail, or any other means not specifically approved herein, provided that Ballots submitted through the E-Ballot will be counted;

g.   any Ballot submitted to the Debtors or any person, entity, or agent of the Debtors other than KCC; and

h.   any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot cast via the Debtors' online "E-Ballot" submission portal will be deemed to have an original signature).

12.      If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by KCC,

the Debtors, or the Court, you must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, you should provide their name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

13.     The Debtors, in consultation with the Committee, subject to contrary order of the Court, may waive any defect or irregularity as to any particular Ballot at any time, either before or after the close of voting, and any such waiver shall be documented in the Voting Declaration.

14.     Neither the Debtors, KCC, nor any other entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Declaration, nor will any of them incur any liability for failure to provide such notification.

15.     Unless waived by the Debtors, subject to contrary order of the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted.

16.     The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claim, and neither the Debtors nor KCC will accept delivery of any such certificates or instruments surrendered together with a Ballot.

17.     This Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim or (b) an assertion or admission of a Claim.

18.     If you believe you have received the wrong Ballot, you should contact KCC immediately by calling or emailing at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or ProterraInfo@kccllc.com (with "Proterra Inc Ballots" in the subject line).

### PLEASE SUBMIT YOUR BALLOT PROMPTLY

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT KCC BY CALLING OR EMAILING AT (888) 251-3076 (USA OR CANADA, TOLL-FREE) OR +1 (310) 751-2617 (INTERNATIONAL) OR PROTERRAINFO@KCCLLC.COM**

**Exhibit 4-A**

**Form of Notice of Non-Voting Status for Unimpaired Classes**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**NOTICE OF NON-VOTING STATUS OF HOLDERS OF
UNIMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN**

PLEASE TAKE NOTICE that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

PLEASE TAKE FURTHER NOTICE that, because of the nature and treatment of your Claim under the Plan, **you are not entitled to vote on the Plan**. Specifically, under the terms of the Plan, as a holder of a Claim (as currently asserted against the Debtors) that is not Impaired and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are **not** entitled to vote on the Plan.

PLEASE TAKE FURTHER NOTICE that the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024** at **10:00**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

**AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing objections to the Plan is **February 27, 2024 at 4:00 PM (ET)** (the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,**<br>**Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |

| The Official Committee of Unsecured Creditors |
|---|
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com |
| **U.S. Trustee** |
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey |

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/protera/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

*[Remainder of Page Intentionally Left Blank]*

Dated:   [Month DD, YYYY]          Respectfully submitted,
      Wilmington, Delaware          **YOUNG CONAWAY STARGATT &**
                                       **TAYLOR, LLP**

                                     [ ]_____
                                     Pauline K. Morgan (No. 3650)
                                     Andrew L. Magaziner (No. 5426)
                                     Shella Borovinskaya (No. 6758)
                                     Rodney Square
                                     1000 North King Street
                                     Wilmington, Delaware 19801
                                     Telephone: (302) 571-6600
                                     Facsimile: (302) 571-1253
                                     Email:  pmorgan@ycst.com
                                               amagaziner@ycst.com
                                               sborovinskaya@ycst.com

                                         - and -

                                   **PAUL, WEISS, RIFKIND,**
                                   **WHARTON & GARRISON LLP**
                                   Paul M. Basta (admitted *pro hac vice*)
                                   Robert A. Britton (admitted *pro hac vice*)
                                   Michael J. Colarossi (admitted *pro hac vice*)
                                   1285 Avenue of the Americas
                                   New York, New York 10019
                                   Tel:    (212) 373-3000
                                   Fax:    (212) 757-3990
                                   Email:  pbasta@paulweiss.com
                                               rbritton@paulweiss.com
                                               mcolarossi@paulweiss.com

                                   *Counsel to the Debtors and*
                                   *Debtors in Possession*

## **Exhibit 4-B**

**Form of Notice of Non-Voting Status for Impaired Classes**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**NOTICE OF NON-VOTING STATUS OF HOLDERS OF
IMPAIRED CLAIMS OR INTERESTS DEEMED TO REJECT THE PLAN**

**PLEASE TAKE NOTICE THAT THE PLAN CONTAINS A SERIES OF RELEASES. NON-VOTING HOLDERS OF IMPAIRED CLAIMS OR INTERESTS SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED and if the Effective Date occurs, the Released Parties, as defined in Article I.A. of the Plan and as reproduced in paragraph (b) of the attached optional opt-out release form, will be receiving releases from the Debtors, their estates, and other "Releasing Parties" (as defined in Article I.A. of the Plan and reproduced in paragraph (c) of the attached opt-out release form), and will benefit from an injunction as set forth in Article IX.E or IX.F of the Plan and as further described in Article V of the Disclosure Statement. Pursuant to Article I.A. of the Plan, and as reproduced in paragraph (c) of the attached optional opt-out election form, the definition of "Releasing Parties" granting the third party release described in Article IX.C of the Plan provides that a Holder of Claims or Interests may not be a Releasing Party if it either (a) elects to opt out of the releases contained in Article IX.C of the Plan, or (b) timely files with the Court on the docket of the Chapter 11 Case an objection to the releases contained in Article IX.C of the Plan that is not resolved before Confirmation.**

**PLEASE TAKE FURTHER NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of*

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

*Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE** that, because of the nature and treatment of your Claim under the Plan, **you are not entitled to vote on the Plan**. Specifically, under the terms of the Plan, as a holder of a Claim (as currently asserted against the Debtors) that is not Impaired and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are **not** entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing objections to the Plan is **February 27, 2024 at 4:00 PM (ET)** (the "Plan Objection Deadline"). All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,<br>Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>- and -<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** ||
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>- and -<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com ||
| **U.S. Trustee** ||
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey ||

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring

hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra.  You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

[*Remainder of Page Intentionally Left Blank*]

Dated:   [Month DD, YYYY]  
      Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

[ ]_____  
Pauline K. Morgan (No. 3650)  
Andrew L. Magaziner (No. 5426)  
Shella Borovinskaya (No. 6758)  
Rodney Square  
1000 North King Street  
Wilmington, Delaware 19801  
Telephone: (302) 571-6600  
Facsimile: (302) 571-1253  
Email:  pmorgan@ycst.com  
        amagaziner@ycst.com  
        sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**  
Paul M. Basta (admitted *pro hac vice*)  
Robert A. Britton (admitted *pro hac vice*)  
Michael J. Colarossi (admitted *pro hac vice*)  
1285 Avenue of the Americas  
New York, New York 10019  
Tel:   (212) 373-3000  
Fax:   (212) 757-3990  
Email: pbasta@paulweiss.com  
       rbritton@paulweiss.com  
       mcolarossi@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PROTERRA INC, *et al.*,[1] | Case No. 23-11120 (BLS) |
| Debtors. | (Jointly Administered) |

## OPT-OUT ELECTION FORM

### IMPAIRED NON-VOTING STATUS CLAIMS OR INTERESTS

**Important Information Regarding the Release by Certain Holders of Claims**

      To provide additional information regarding the third party releases, the following sections of the Plan have been copied immediately below:  I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), **Article IX.C (Releases by the Releasing Parties)**.[2]  To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following.

      (a)    Article I.A. of the Plan defines "Released Party" as:

      "**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it:  (a) elects to opt out of the releases contained in the Plan, (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector, or (c) is an LG Party.

      (b)    Article I.A. of the Plan defines "Releasing Parties" as:

      "**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims and Interests who are Unimpaired under the Plan, (i) with respect to each of the foregoing Persons, in clauses (a) through (h), each of their Affiliates, and (j) with respect to each of the foregoing Persons in clauses (a) through (i), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such; provided that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector**.**

(c)     Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective**

Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in  accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; or (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in

each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

**Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.**

**If you wish to opt-out of being a "Releasing Party" under Article IX.C of the Plan, please check the following box and complete this form. Your decision on this election does not affect the amount of distribution you will receive under the Plan.**

| The undersigned elects to: |
|---|
| ☐ **OPT OUT** of the Third Party Release set forth in Article IX.C of the Plan |

| | |
|---|---|
| Name of Holder: | Address: |
| Signature: | Telephone Number: |
| Name of Signatory: | Email: |
| Title: | Date Completed: |

**IF YOU WISH TO OPT OUT OF THE THIRD PARTY RELEASES, THE OPT-OUT FORM MUST BE COMPLETED AND SUBMITTED, ON OR BEFORE THE OPT-OUT DEADLINE OF FEBRUARY 27, 2024 AT 4:00 PM (ET), BY <u>ONLY ONE</u> OF THE FOLLOWING APPROVED SUBMISSION METHODS:**

| **First Class Mail, Overnight Courier or Hand-Delivery To:** | **Electronic, online submission:** |
|---|---|
| Proterra Ballot Processing Center<br>c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 | To submit your Opt-Out Form via KCC's online portal, please visit: https://kccllc.net/Proterra and click on "Submit E-Ballot" and follow the instructions to submit your Opt-Out Form.<br><br>IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Opt-Out Form:<br><br>Unique Opt-Out ID#:_____<br><br>Pin #: _____<br><br>KCC's online portal is the sole manner in which Opt-Out Forms will be accepted via electronic or online transmission. Opt-Out Forms submitted by facsimile, email, or other means of electronic transmission will **not** be counted.<br><br>Creditors who submit an Opt-Out Form using KCC's online portal should **NOT** also submit a paper Opt-Out Form.<br><br>If you have any questions, please contact KCC at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or ProterraInfo@kccllc.com. |

**<u>Exhibit 4-C</u>**

**Form of Notice to Disputed Claim Holders**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PROTERRA INC, *et al.*,[1] | Case No. 23-11120 (BLS) |
| Debtors. | (Jointly Administered) |

**NOTICE OF NON-VOTING STATUS WITH RESPECT TO DISPUTED CLAIM**
**OR INTEREST**

    **PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

    **PLEASE TAKE FURTHER NOTICE** that you are receiving this notice because your Claim(s) against the Debtors is/are subject to a pending objection by the Debtors and therefore, pursuant to the Solicitation Procedures Order and sections 502(a) and 1126(a) of the Bankruptcy Code, **you are not entitled to vote to accept or reject the Plan on account of your Disputed Claim(s) unless one of the following Resolution Events occurs, in any event no later than February 22, 2024, the Resolution Event Deadline (as defined in the Solicitation and Voting Procedures):**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

(i)     an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

(ii)    an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

(iii)   a stipulation or other agreement is executed between the holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed-upon amount; or

(iv)    the pending objection is voluntarily withdrawn by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that if a Resolution Event occurs, then no later than two (2) business days thereafter, the Solicitation Agent shall distribute a ballot, and a pre-addressed, postage pre-paid envelope to you, which must be returned to the Solicitation Agent no later than the Voting Deadline, which is on F**ebruary 27, 2024** at **4:00 PM (ET)**.

**PLEASE TAKE FURTHER NOTICE** that if you seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), to temporarily allow such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion").  Any party wishing to file a Rule 3018(a) Motion shall have until ten (10) days from the Solicitation Date to file and serve such a motion with respect to any claim as to which there is an objection pending as of the date of the entry of this Order (the "Rule 3018(a) Motion Deadline").  The Debtors and other parties in interest shall have until the date that is ten (10) days prior to the Voting Deadline as the deadline by which the Debtors or parties in interest must file objections to any Rule 3018(a) Motion (the "3018(a) Motion Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if a Holder of a Disputed Claim files a Rule 3018(a) Motion by the Rule 3018(a) Motion Deadline, the Solicitation Agent, at the direction of the Debtors or their counsel, shall send such holder a Solicitation Package, including an applicable Ballot as soon as practicable after such Rule 3018(a) Motion is filed.  A Ballot returned by a Holder of a Disputed Claim to the Solicitation Agent in compliance with the Solicitation Procedures shall only be counted to the extent that a Resolution Event has occurred with respect to the holder's Disputed Claim by the Resolution Event Deadline.

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing objections to the Plan is **February 27, 2024 at  4:00 PM (ET)** (the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a

2

proof of service) and served upon the following parties so as to be **actually** **received** on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,<br>Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** ||
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com ||
| **U.S. Trustee** ||
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey ||

**IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT ACCORDING TO THE INSTRUCTIONS ABOVE.**

[*Remainder of Page Intentionally Left Blank*]

Dated:   [Month DD, YYYY]
   Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

[   ]_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
   amagaziner@ycst.com
   sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 373-3000
Fax: (212) 757-3990
Email: pbasta@paulweiss.com
   rbritton@paulweiss.com
   mcolarossi@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

## **Exhibit 5-A**

**Form of Notice & Opt-Out Form:  Beneficial Holders**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**NOTICE TO SHAREHOLDERS**
**OF RIGHT TO OPT-OUT OF THIRD PARTY RELEASE**

> You are receiving this notice because you are a shareholder of Proterra Inc (with Proterra Operating Company, Inc., the "<u>Company</u>" or "<u>Debtors</u>").
>
> You will not receive any payment on account of your shares in the bankruptcy case, and your shares will be cancelled.
>
> The Debtors are seeking court approval for a plan of reorganization and disclosure statement filed as part of their bankruptcy proceeding.
>
> Under the plan of reorganization, shareholders will not be entitled to any payment from the Debtors on account of their shares and do not get to vote on the plan of reorganization because shareholders are deemed to reject the plan of reorganization.
>
> However, as part of the plan of reorganization, unless shareholders take additional action as described herein, and affirmatively opt-out, shareholders will be deemed to release any and all claims they may have against the Debtors, their officers and directors, certain creditors, and other third parties, all as further described in the Plan.
>
> <u>You have the right to opt-out, to avoid releasing claims against these third-parties, the Debtors, and their officers and directors by completing the opt-out form on pages 5–6 of this Notice and returning this form to your nominee.</u> The applicable definitions of released and releasing parties are also attached to this Notice for your convenience of review. These Defined Terms control the scope of the Release provisions.

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

## I.    Notice of Disclosure Statement, Plan, and Confirmation Hearing

On [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing the Debtors to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

You are receiving this Notice because you are a shareholder of the Company and **do not have the right to vote on the Plan in your capacity as a shareholder** because you are not receiving anything under the Plan.  Any and all your claims against "Released Parties," including the directors and officers of the Debtors, and other creditors and third parties covered by the Defined Terms, will be released **unless** you complete the opt-out form on pages 5–6 of this notice.

The hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

The deadline for filing objections to the Plan is **February 27, 2024 at  4:00 PM (ET)** (the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,<br>Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and<br>Michael J. Colarossi<br>Email: pbasta@paulweiss.com,<br>rbritton@paulweiss.com,<br>mcolarossi@paulweiss.com<br><br>- and -<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L.<br>Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com,<br>amagaziner@ycst.com,<br>sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** ||
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>- and -<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com ||
| **U.S. Trustee** ||
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey ||

If you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via

www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

## II.    Right to Opt-Out of Third Party Release

On the Effective Date of the Plan, the release, injunction, and discharge provisions contained in Article IX of the Plan will become effective. These provisions are reproduced on pages 9-11 of this notice for ease of reference. **You may choose to opt-out of the third party release set forth in Article IX.C of the Plan** by completing and returning the two page document that follows (the "Opt-Out Release Form") according to the instructions in this notice. If you do not complete the Opt-Out Release Form, **any and all your claims against "Released Parties," including the directors and officers of the Debtor, will be released**.

**IF YOU WISH TO OPT-OUT OF THE THIRD PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN YOU MUST (1) COMPLETE THE TABLE BELOW FOR YOUR NOMINEE; AND (2) COMPLETE AND RETURN THE OPT-OUT RELEASE FORM TO YOUR NOMINEE BY THE DEADLINE GIVEN BY YOUR NOMINEE.**

| | |
|---|---|
| **Name of Holder:** | _____ |
| | **(Print or Type)** |
| **Social Security or Federal Tax Identification Number:** | _____ |
| **Signature:** | _____ |
| **Name of Signatory:** | _____ |
| | **(If other than Holder)** |
| **Title:** | _____ |
| **Address:** | _____ |
| | _____ |
| | _____ |
| | _____ |
| **Date Completed:** | _____ |

**IF YOU WISH TO OPT OUT OF THE THIRD PARTY RELEASES, THIS OPT-OUT RELEASE FORM MUST BE RETURNED TO YOUR NOMINEES WITH SUFFICIENT TIME TO ALLOW YOUR NOMINEE TO SEND IT TO THE DEBTORS' SOLICITATION AGENT SO THAT IT IS ACTUALLY RECEIVED ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE "RELEASE OPT-OUT DEADLINE"). IF THE FORM FROM YOUR NOMINEE IS RECEIVED AFTER THE RELEASE OPT-OUT**

**DEADLINE, IT WILL NOT BE COUNTED BY THE SOLICITATION AGENT AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN.**

[*Remainder of Page Intentionally Left Blank*]

## OPT-OUT RELEASE FORM

**PLEASE COMPLETE THE FOLLOWING:**

### Item 1. Opt-Out for Third Party Release

By checking this box, the undersigned Holder:

☐ Elects **not** to grant the third party release contained in Article IX.C of the Plan.

(if the Holder does not check this box, any and all claims of the Holder against "Released Parties," including the directors and officers of the Debtor, will be released)

**If you do not wish to give the third party release provided in Article IX.C of the Plan, you must check the Opt-Out box above, and submit this ballot to your nominee by the deadline set forth by your nominee. Your nominee must then return the form so that it is received by the Release Opt-Out Deadline.**

**If you do not check the Opt-Out box above, you will be deemed to consent to giving the third party release provided in Article IX.C of the Plan.**

**Opting out of giving the third party release provided in Article IX.C of the Plan shall not affect whether you receive any payment under the Plan. Holders of Claims and Interests in Class 8 will not receive any payment under the Plan.**

**PLEASE BE ADVISED THAT BY CHECKING THE BOX ABOVE YOU ELECT NOT TO GRANT THE THIRD PARTY RELEASE AGAINST THE "RELEASED PARTIES" AS THAT TERM IS DEFINED IN THE PLAN. YOU MUST AFFIRMATIVELY CHECK THE BOX ABOVE IN ORDER TO OPT-OUT OF THE THIRD PARTY RELEASE.**

PLEASE ALSO BE ADVISED THAT THE DEBTORS RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN IS SEPARATE FROM AND INDEPENDENT OF THE THIRD PARTY RELEASE. IF YOU OBJECT TO THE DEBTORS RELEASE, YOU MUST FILE A SEPARATE OBJECTION WITH THE COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER BY FEBRUARY 27, 2024 AT 4:00 PM (ET).

### Item 2. Certifications

By signing this Opt-Out Release Form, the undersigned certifies to the Court and the Debtors that:

i.   the undersigned is a Holder of Claims or Interests;
ii.  the undersigned has received the Notice to Shareholders Deemed to Reject the Plan of Right to Opt-Out of Third Party Release, and that this Opt-Out Release Form is submitted pursuant to the terms and conditions set forth therein;
iii. the undersigned has submitted the same election with respect to all of its Claims or Interests; and

6

iv.   the undersigned has not submitted any other Opt-Out Release Form for its Claims
      or Interests, or if another form has been previously submitted, such form is revoked.

[*Remainder of page intentionally left blank.*]

_____
Name of Holder

_____
Signature

_____
Name of Signatory and Title

_____
Name of Institution (if different than Holder)

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

### III.    Definitions Applicable to the Release ("Defined Terms")

To provide additional information regarding the third party releases, the following sections of the Plan have been copied immediately below:  I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), **Article IX.C (Releases by the Releasing Parties)**.[34]  To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following.

(a)    Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it:  (a) elects to opt out of the releases contained in the Plan, (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector, or (c) is an LG Party.

(b)    Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims and Interests who are Unimpaired under the Plan, (i) with respect to each of the foregoing Persons, in clauses (a) through (h), each of their Affiliates, and (j) with respect to each of the foregoing Persons in clauses (a) through (i), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such; provided that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector**.**

(c)    Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or**

---

[34]    Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in  accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; or (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval,

pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.

*[Remainder of Page Intentionally Left Blank]*

Dated:    [Month DD, YYYY]          Respectfully submitted,
          Wilmington, Delaware        **YOUNG CONAWAY STARGATT &
                                      TAYLOR, LLP**

                                      [   ]_____
                                      Pauline K. Morgan (No. 3650)
                                      Andrew L. Magaziner (No. 5426)
                                      Shella Borovinskaya (No. 6758)
                                      Rodney Square
                                      1000 North King Street
                                      Wilmington, Delaware 19801
                                      Telephone: (302) 571-6600
                                      Facsimile: (302) 571-1253
                                      Email:  pmorgan@ycst.com
                                              amagaziner@ycst.com
                                              sborovinskaya@ycst.com

                                          - and -

                                      **PAUL, WEISS, RIFKIND,
                                      WHARTON & GARRISON LLP**
                                      Paul M. Basta (admitted *pro hac vice*)
                                      Robert A. Britton (admitted *pro hac vice*)
                                      Michael J. Colarossi (admitted *pro hac vice*)
                                      1285 Avenue of the Americas
                                      New York, New York 10019
                                      Tel:    (212) 373-3000
                                      Fax:    (212) 757-3990
                                      Email: pbasta@paulweiss.com
                                              rbritton@paulweiss.com
                                              mcolarossi@paulweiss.com

                                      *Counsel to the Debtors and
                                      Debtors in Possession*

12

## **Exhibit 5-B**

**Form of Notice & Opt-Out Form: Master Form**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**NOTICE AND MASTER OPT-OUT FORM FOR
CLASS 8 – DEBTORS' INTERESTS**

**PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

The hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

You are receiving this notice and opt-out form (the "Master Opt-Out Form") because you are a bank, broker, or other financial institution (each, a "Nominee") that holds equity securities

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

in Proterra Inc (the "Debtors' Interests") in "street name" on behalf of a Beneficial Holder[3] of such Debtors' Interests as of January 18, 2024 (the "Voting Record Date"), or you are a Nominee's agent.

Pursuant to the terms of the Plan, shareholders in Class 8 are not entitled to receive or retain any recovery under the Plan and, therefore, pursuant to section 1126(g) of the Bankruptcy Code, Beneficial Holders of Class 8 Debtors' Interests are deemed to reject the Plan. Beneficial Holders of Class 8 Debtors' Interests, however, have the right to, subject to the limitations set forth herein, affirmatively opt out of the third party release contained in Article IX.C of the Plan (the "Third-Party Release"), if they so choose. Nominees or their agents should use this Master Opt-Out Form to convey the election of such Beneficial Holders to opt-out of the Third-Party Release.

This Master Opt-Out Form may not be used for any purpose other than conveying their Beneficial Holder clients' elections to opt out of the Third-Party Release. If you believe you have received this Master Opt-Out Form in error, or if you believe that you have received the wrong Master Opt-Out Form, please contact the Solicitation Agent immediately at the address, email address, or telephone number set forth below. Nothing contained herein or in the enclosed documents shall render you or any other entity an agent of the Debtors or the Solicitation Agent or authorize you or any other entity to use any document or make any statements on behalf of any of with respect to the Plan, except for the statement contained in the documents enclosed herewith.

You are required to distribute the Beneficial Holder Notice and Opt-Out Form contained herewith to your Beneficial Holder clients holding equity Interests in Class 8 Debtors' Interests as of the Voting Record Date within five (5) business days of your receipt of the Solicitation Packages in which this Master Opt-Out Form was included. With respect to the Beneficial Holder Opt-Out Forms returned to you, you must (a) execute this Master Opt-Out Form so as to reflect the Third-Party Release elections set forth in such Beneficial Holder Opt-Out Forms and (b) forward this Master Opt-Out Form to Kurtzman Carson Consultants LLC (the "Solicitation Agent") in accordance with the Master Opt-Out Form Instructions accompanying this Master Opt-Out Form. **Any election delivered to you by a Beneficial Holder shall not be counted unless you complete, sign, and return this Master Opt-Out Form to the Solicitation Agent so that it is actually received by the Opt-Out Deadline.**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS MASTER OPT-OUT FORM CAREFULLY BEFORE COMPLETING THIS MASTER OPT-OUT FORM.

**IF YOU WISH TO OPT OUT OF THE THIRD PARTY RELEASES, THIS MASTER OPT-OUT FORM MUST BE COMPLETED, EXECUTED AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE "OPT-OUT DEADLINE").**

---

[3]     A "Beneficial Holder" means an entity that beneficially owns Class 7 Debtors' Interests whose claims have not been satisfied prior to the Voting Record Date pursuant to Court order or otherwise, as reflected in the records maintained by the Nominee.

**<u>Item 1</u>. Certification of Authority to Make Elections.**

The undersigned certifies that as of the Voting Record Date, the undersigned:

☐    Is a Nominee for the Beneficial Holders in the principal number of Class 8 Debtors' Interests listed in Item 2 below, or

☐    Is acting under a power of attorney or agency (a copy of which will be provided upon request) granted by a Nominee for the Beneficial Holders in the principal number of Class 8 Debtors' Interests listed in Item 2 below, or

☐    Has been granted a proxy (an original of which is attached hereto) from a Nominee for the Beneficial Holders (or the Beneficial Holders itself/themselves) in the principal number of Class 8 Debtors' Interests listed in Item 2 below;

and accordingly, has full power and authority to convey decisions to opt-out of the Third-Party Release, on behalf of the Beneficial Holders of the Class 8 Debtors' Interests described in Item 2.

**<u>Item 2</u>. Optional Third-Party Release Election.**

The undersigned certifies that that the information provided below (including any information provided on additional sheets attached hereto) is a true and accurate schedule of the Beneficial Holders of Class 8 Debtors' Interests, as identified by their respective account numbers, that made a decision to opt-out of the Third-Party Release via e-mail, telephone, internet application, facsimile, voting instruction form, or other customary means of conveying such information.

Indicate in the appropriate column below the Beneficial Holder/Account Number of each Beneficial Holder that completed and returned the Beneficial Holder Opt-Out Form and the aggregate number of Class 8 Debtors' Interests held by such Beneficial Holder/Account Number electing to opt-out of the Third-Party Release or attach such information to this Master Opt-Out Form in the form of the following table.

Please complete the information requested below (add additional sheets if necessary):

| Beneficial Holder/Account Number | Amount of Class 8 – Debtors' Interest Holders Electing to Opt-Out of Third-Party Release |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |

| Beneficial Holder/Account Number | Amount of Class 8 – Debtors' Interest Holders Electing to Opt-Out of Third-Party Release |
|---|---|
| **TOTAL** | |

**Item 3. Additional Certifications.**

By signing this Master Opt-Out Form, the undersigned certifies to the Court and the Debtor:

a.      that either: (i) the undersigned has received a completed Opt-Out Form from each Beneficial Holder of Class 8 Debtors' Interests listed in Item 2 of this Master Opt-Out Form, or (ii) an e-mail, recorded telephone call, internet transmission, facsimile, voting instruction form, or other customary means of communication conveying a decision to opt-out of the releases from each Holder of Class 8 Debtors' Interests;

b.      that the undersigned is a Nominee (or agent of the Nominee) of the Class 8 Debtors' Interests; and

c.      that the undersigned has properly disclosed for each Beneficial Holder who submitted a Beneficial Holder Opt-Out Form or opt-out decisions via other customary means: (i) the respective number of the Class 8 Debtors' Interests owned by each Beneficial Holder and (ii) the customer account or other identification number for each such Beneficial Holder.

| | |
|---|---|
| **Institution:** | _____ |
| | **(Print or Type)** |
| **DTC Participant Number:** | _____ |
| **Signature:** | _____ |
| **Name of Signatory:** | _____ |
| **Title:** | _____ |
| **Address:** | _____ |
| | _____ |
| | _____ |
| **Date Completed:** | _____ |

If your address or contact information has changed, please note the new information here.

**PLEASE COMPLETE, SIGN AND DATE THIS MASTER OPT-OUT FORM AND RETURN IT PROMPTLY VIA FIRST CLASS MAIL, OVERNIGHT COURIER, EMAIL OR HAND DELIVERY TO:**

Proterra Ballot Processing Center
c/o Kurtzman Carson Consultants LLC
222 N. Pacific Coast Highway, Suite 300,
El Segundo, CA 90245

Email: ProterraInfo@kccllc.com

If you have any questions on the procedures for voting on the Plan, please call the Solicitation Agent at (877) 499-4509 (USA or Canada, toll-free) or +1 (917) 281-4800 (International).

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS MASTER OPT-OUT FORM ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET), THE ELECTIONS TRANSMITTED HEREBY WILL <u>NOT</u> BE EFFECTIVE.**

**OPT-OUT FORMS SENT BY FACSIMILE OR TELECOPY WILL <u>NOT</u> BE ACCEPTED.  MASTER OPT-OUT FORMS MAY BE SUBMITTED BY EMAIL TO: ProterraInfo@kccllc.com**

**Class 8 Debtors' Interests**

## <u>INSTRUCTIONS FOR COMPLETING THIS MASTER OPT-OUT FORM</u>

1. Capitalized terms used in the Master Opt-Out Form or in these instructions (the "<u>Master Opt-Out Form Instructions</u>") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.

2. **<u>Distribution of the Opt-Out Forms</u>:**

   ☐ You should immediately distribute the Beneficial Holder Notice and Opt-Out Forms accompanied by pre-addressed, postage-paid return envelopes to all Beneficial Holders of **Class 8** Debtors' Interests as of the Voting Record Date and take any action required to enable each such Beneficial Holders to make an opt-out election timely.  You must include a pre-addressed, postage-paid return envelope or must certify that your Beneficial Holder clients that did not receive return envelopes were provided with electronic or other means (consented to by such Beneficial Holder clients) of returning their Beneficial Holder Opt-Out Forms in a timely manner.

   ☐ Any election delivered to you by a Beneficial Holder shall not be counted until you complete, sign, and return this Master Opt-Out Form to the Solicitation Agent, so that it is actually received by the Opt-Out Deadline.

3. You should solicit elections from your Beneficial Holder clients via the (a) delivery of duly completed Beneficial Holder Opt-Out Forms or (b) conveyance of their decision to opt-out of the releases via e-mail, telephone, internet application, facsimile, voting instruction form, or other customary and approved means of conveying such information.

4. With regard to any Beneficial Holder Opt-Out Forms returned to you by a Beneficial Holder, you must: (a) compile and validate the elections and other relevant information of each such Beneficial Holder on the Master Opt-Out Form using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Opt-Out Form; and (c) transmit the Master Opt-Out form to the Solicitation Agent.

5. **<u>Return of Master Opt-Out Form</u>**: The Master Opt-Out Form must be returned to the Solicitation Agent so as to be **<u>actually received</u>** by the Solicitation Agent on or before the Opt-Out Deadline, which is February 27, 2024 at 4:00 PM (ET).

6.    If a Master Opt-Out Form is received by the Solicitation Agent <u>after</u> the Opt-Out Deadline, it will not be effective, unless the Debtors have granted an extension of the Opt-Out Deadline in writing with respect to such Master Opt-Out Form.  Additionally**,** the following Opt-Out Forms will <u>NOT</u> be counted:

      ☐  ANY MASTER OPT-OUT FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE EQUITY INTEREST;

      ☐  ANY MASTER OPT-OUT FORM CAST BY OR ON BEHALF OF AN ENTITY THAT IS NOT ENTITLED TO OPT-OUT OF THE THIRD-PARTY RELEASE;

      ☐  ANY MASTER OPT-OUT FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE SOLICITATION AGENT), ANY INDENTURE TRUSTEE OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;

      ☐  ANY UNSIGNED MASTER OPT-OUT FORM**;** OR

      ☐  ANY MASTER OPT-OUT FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED BY THE COURT.

7.    The method of delivery of Master Opt-Out Forms to the Solicitation Agent is at the election and risk of Nominee.  Except as otherwise provided herein, such delivery will be deemed made to the Solicitation Agent only when the Solicitation Agent **actually** **receives** the originally executed Master Opt-Out Form.  Instead of effecting delivery by first-class mail, it is recommended, though not required, that Nominees use an overnight or hand delivery service.  In all cases, Nominees should allow sufficient time to assure timely delivery.

8.    Multiple Master Opt-Out Forms may be completed and delivered to the Solicitation Agent. Elections reflected by multiple Master Opt-Out Forms will be deemed valid.  If two or more Master Opt-Out Forms are submitted, please mark the subsequent Master Opt-Out Form(s) with the words "Additional Election" or such other language as you customarily use to indicate an additional election that is not meant to revoke an earlier election.

9.    The Master Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to transmit elections to opt-out of the Third-Party Release.  Holders of Class 8 Debtors' Interests should not surrender certificates (if any) representing their Class 8 Debtors' Interests at this time, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates transmitted together with a Master Opt-Out Form

10.    This Master Opt-Out Form does <u>not</u> constitute, and shall not be deemed to be, (a) a proof of claim or interest or (b) an assertion or admission of an equity Interest.

11.   <u>Please be sure to sign and date your Master Opt-Out Form</u>.  If you are signing a Master Opt-Out Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors or the Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Opt-Out Form.

12.   No fees or commissions or other remuneration will be payable to any broker, bank, dealer or other person in connection with this solicitation.  Upon written request, however, the Debtors will reimburse you for customary mailing and handling expenses incurred by you in forwarding the Opt-Out Forms to your client(s).

**<u>IF YOU WISH TO OPT OUT OF THE THIRD PARTY RELEASES, PLEASE RETURN YOUR MASTER OPT-OUT FORM PROMPTLY!</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER OPT-OUT FORM OR THE VOTING INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT AT:**

**(877) 499-4509 (USA or Canada) or +1 (917) 281-4800 (international) Or via email: ProterraInfo@kccllc.com**

---

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS MASTER OPT-OUT FORM FROM YOU BEFORE THE OPT-OUT DEADLINE, WHICH IS FEBRUARY 27, 2024 AT 4:00 PM (ET) THEN YOUR VOTE TRANSMITTED HEREBY WILL NOT BE COUNTED.**

---

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION PACKAGE MAILED HEREWITH.

**<u>NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN</u>**

**PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS:**

To provide additional information regarding the third party releases, the following sections of the Plan have been copied immediately below:  I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), **Article IX.C (Releases by the Releasing Parties)**.[4]  To the extent of any discrepancy between the following and the corresponding sections in the Plan,

---

[4]   Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following.

(a)        Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it:  (a) elects to opt out of the releases contained in the Plan, (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector, or (c) is an LG Party.

(b)        Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims and Interests who are Unimpaired under the Plan, (i) with respect to each of the foregoing Persons, in clauses (a) through (h), each of their Affiliates, and (j) with respect to each of the foregoing Persons in clauses (a) through (i), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such; provided that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector**.**

(c)        Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation,**

or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in  accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; or (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of

the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.

[*Remainder of Page Intentionally Left Blank*]

Dated:   [Month DD, YYYY]          Respectfully submitted,
         Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

[   ]_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
        amagaziner@ycst.com
        sborovinskaya@ycst.com

         - and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
       rbritton@paulweiss.com
       mcolarossi@paulweiss.com

*Counsel to the Debtors and
Debtors in Possession*

**<u>Exhibit 5-C</u>**

**Form of Notice & Opt-Out Form:  Registered Shareholders**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date: January 23, 2024 at 11:00 AM (ET)** |
| | ) **Obj. Deadline: January 16, 2024 at 4:00 PM (ET)** |
| | ) |

### NOTICE TO SHAREHOLDERS
### OF RIGHT TO OPT-OUT OF THIRD PARTY RELEASE

> **You are receiving this notice because you are a shareholder of Proterra Inc (the "<u>Company</u>" or "<u>Debtors</u>").**
>
> **You will not receive any payment on account of your shares in the bankruptcy case, and your shares will be cancelled.**
>
> **The Debtors are seeking court approval for a plan of reorganization and disclosure statement filed as part of its bankruptcy proceeding.**
>
> **Under the plan of reorganization, shareholders will not be entitled to any payment from the Debtors on account of their Proterra shares and do not get to vote on the plan of reorganization because shareholders are deemed to reject the plan of reorganization.**
>
> **However, as part of the plan of reorganization, unless shareholders take additional action as described here, and affirmatively opt-out, shareholders will be deemed to release claims they may have against the Debtors, their officers and directors, and certain creditors and other third parties.**
>
> **<u>You have the right to opt-out, to avoid releasing any claims, against these third-parties, the Debtor, and its officers and directors by completing the opt-out form on pages 5–6 of this notice.</u> The applicable definitions of released and releasing parties are also attached to this notice for your convenience of review. These Defined Terms control the scope of the Release provisions.**

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

## I.    Notice of Disclosure Statement, Plan, and Confirmation Hearing

**PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

You are receiving this notice because you are a shareholder of the Debtors and therefore **do not have the right to vote on the Plan** because you are not receiving anything under the Plan. Any and all your claims against "Released Parties," including the directors and officers of the Debtors, and other creditors and third parties covered by the Defined Terms, will be released **unless** you complete the opt-out form on pages 5–6 of this notice.

The hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

The deadline for filing objections to the Plan is **February 27, 2024 at 4:00 PM (ET)** (the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,**<br>**Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** ||
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com ||
| **U.S. Trustee** ||
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey ||

If you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via

www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

## II.    Right to Opt-Out of Third Party Release

On the Effective Date of the Plan, the release, injunction, and discharge provisions contained in Article IX of the Plan will become effective.  These provisions are reproduced on pages 9-11 of this notice for ease of reference.  **You may choose to opt-out of the third party release set forth in Article IX.C of the Plan** by completing and returning the two page document that follows (the "Opt-Out Release Form") according to the instructions in this notice.  If you do not complete the Opt-Out Release Form, **any and all your claims against "Released Parties," including the directors and officers of the Debtors, will be released**.

**IF YOU WISH TO OPT-OUT OF THE THIRD PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN COMPLETE AND RETURN THE OPT-OUT RELEASE FORM ACCORDING TO EITHER SECTION (1) OR (2) BELOW:**

(1)    Please complete, sign, and date this Opt-Out Release Form and return it to KCC by first class mail, overnight or hand delivery to:

| If by First Class Mail: | If by Overnight Courier or Hand Delivery: |
|---|---|
| Proterra Ballot Processing Center<br> c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 | Proterra Ballot Processing Center<br> c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 |

-   OR   -

(2)    Submit your opt-out release form via KCC's online portal at https://kccllc.net/proterra. Click on the "submit e-ballot" section of the website and follow the instructions to submit your opt-out release form.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit our customized electronic Opt-Out Release Form:

Unique e-Ballot ID#:                _____

        PIN#:                _____

**The Solicitation Agent's online portal is the only manner in which Opt-Out Release Forms will be accepted via electronic or online transmission.  Opt-Out Release Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

Each E-Ballot ID# and pin is to be used solely for opting out of the Third Party Release on account of the your equity interests.  Please complete and submit an electronic Opt-Out Release Form for each E-Ballot ID# you receive, as applicable.

4

Holders of Claims who cast an Opt-Out Release Form using the Balloting Agent's online portal should NOT also submit a paper Opt-Out Release Form.

**IF YOU WISH TO OPT OUT OF THE THIRD PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN, THIS OPT-OUT RELEASE FORM MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE "<u>RELEASE OPT-OUT DEADLINE</u>").  IF THIS OPT-OUT RELEASE FORM IS RECEIVED AFTER THE RELEASE OPT-OUT DEADLINE, IT WILL NOT BE COUNTED BY THE SOLICITATION AGENT AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN.**

[*Remainder of Page Intentionally Left Blank*]

## <u>OPT-OUT RELEASE FORM</u>

**PLEASE COMPLETE THE FOLLOWING:**

### Item 1. Opt-Out for Third Party Release

By checking this box, the undersigned Holder:

□ Elects **<u>not</u>** to grant the third party release contained in Article IX.C of the Plan.

(if the Holder does not check this box, any and all claims of the Holder against "Released Parties," including the directors and officers of the Debtor, will be released)

□ **If you do not wish to give the third party release provided in Article IX.C of the Plan, you must check the Opt-Out box above, and submit this ballot to KCC so it is received by the Release Opt-Out Deadline.**

□ **If you do not check the Opt-Out box above, you will be deemed to consent to giving the third party release provided in Article IX.C of the Plan.**

□ **Opting out of giving the third party release provided in Article IX.C of the Plan shall not affect whether you receive any payment under the Plan. Holders of Claims and Interests in Class 8 will not receive any payment under the Plan.**

**PLEASE BE ADVISED THAT BY CHECKING THE BOX ABOVE YOU ELECT NOT TO GRANT THE THIRD PARTY RELEASE AGAINST THE "RELEASED PARTIES" AS THAT TERM IS DEFINED IN THE PLAN.  <u>YOU MUST AFFIRMATIVELY CHECK THE BOX ABOVE IN ORDER TO OPT-OUT OF THE THIRD PARTY RELEASE.</u>**

PLEASE ALSO BE ADVISED THAT THE DEBTORS RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN IS SEPARATE FROM AND INDEPENDENT OF THE THIRD PARTY RELEASE.  IF YOU OBJECT TO THE DEBTORS RELEASE, YOU MUST FILE A SEPARATE OBJECTION WITH THE COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER BY FEBRUARY 27, 2024 AT 4:00 PM (ET).

### Item 2. Certifications

By signing this Opt-Out Release Form, the undersigned certifies to the Court and the Debtors that:

a.  the undersigned is a Holder of Claims or Interests as set forth in Item 1;

b.  the undersigned has received the Notice to Shareholders Deemed to Reject the Plan of Right to Opt-Out of Third Party Release, and that this Opt-Out Release Form is submitted pursuant to the terms and conditions set forth therein;

c.  the undersigned has submitted the same election with respect to all of its Claims or Interests; and

d.  the undersigned has not submitted any other Opt-Out Release Form for its Claims or Interests, or if another form has been previously submitted, such form is revoked.

[*Remainder of page intentionally left blank.*]

_____
Name of Holder

_____
Signature

_____
Name of Signatory and Title

_____
Name of Institution (if different than Holder)

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

## II.    Definitions Applicable to the Release ("Defined Terms")

To provide additional information regarding the third party releases, the following sections of the Plan have been copied immediately below:  I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), **Article IX.C (Releases by the Releasing Parties)**.[1]  To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following.

(a)    Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it:  (a) elects to opt out of the releases contained in the Plan, (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector, or (c) is an LG Party.

(b)    Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims and Interests who are Unimpaired under the Plan, (i) with respect to each of the foregoing Persons, in clauses (a) through (h), each of their Affiliates, and (j) with respect to each of the foregoing Persons in clauses (a) through (i), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such; provided that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector**.**

(c)    Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or**

---

[1]    Article IX.B of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates.

assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in  accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; or (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval,

pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.

[*Remainder of Page Intentionally Left Blank*]

Dated:    [Month DD, YYYY]
          Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

[ \_ ]_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
        amagaziner@ycst.com
        sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
       rbritton@paulweiss.com
       mcolarossi@paulweiss.com

*Counsel to the Debtors and
Debtors in Possession*

**Exhibit 6**

**Form of Notice of Assumption of Executory Contracts and Unexpired Leases**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**NOTICE OF (A) EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE
ASSUMED BY THE DEBTORS PURSUANT TO THE PLAN, (B) CURE AMOUNTS,
IF ANY, AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH**

**PLEASE TAKE NOTICE THAT**, on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article V.A of the Plan, as of the Effective Date, except as provided in the Plan (including, with respect to D&O Policies, Article IV.P thereof), the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases, unless such Executory Contract is a D&O Policy or an Insurance Contract, that (a) have not been identified on the Assumption Schedule (as defined herein), (b) have not been otherwise rejected, assumed, or assumed and assigned, including in connection with any Sale, or which have not been designated for assumption or assumption and assignment pursuant to the terms of any Sale Order, or (c) are not otherwise rejected, assumed, assigned, or the subject of a motion filed by the Debtors prior to the Effective Date to assume, assume and assign, or reject such Executory Contracts and Unexpired Leases on which the Bankruptcy Court has not ruled and is still pending.

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article V.D of the Plan, at least fourteen (14) calendar days before the Confirmation Hearing and solely to the extent the applicable Executory Contract or Unexpired Lease was not included in the Cure Notice (or if the proposed Cure Claim for such Executory Contract or Unexpired Lease is different than the proposed Cure Claim listed in the Cure Notice), the Debtors shall distribute, or cause to be distributed, Plan Cure Notices and proposed amounts of Cure Claims to the applicable Executory Contract or Unexpired Lease counterparties.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Debtors at least seven (7) calendar days before the Confirmation Hearing.  Any such objection to the assumption of an Executory Contract or Unexpired Lease shall be heard by the Bankruptcy Court on or before the Effective Date, unless a later date is agreed to between the Debtors or the Reorganized Debtors, on the one hand, and the counterparty to the Executory Contract or Unexpired Lease, on the other hand, or by order of the Bankruptcy Court.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount shall be deemed to have assented to such assumption and/or cure amount.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the Schedule of Assumed Executory Contracts and Unexpired Leases (the "Assumption Schedule") with the Court as part of the Plan Supplement on [●], 2024, as contemplated under the Plan.  The determination to assume (or assume and assign) the agreements identified on the Assumption Schedule was made as of [●] and is subject to revision.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtors' records reflect that you are a party to a contract that is listed on the Assumption Schedule and that such contract has not previously been listed on a Cure Notice, or that the amount required to cure defaults, if any, under such contract (the "Cure Amount") has changed following its inclusion on a Cure Notice.  Therefore, you are advised to review carefully the information contained in this notice and the related provisions of the Plan, including the Assumption Schedule.

**PLEASE TAKE FURTHER NOTICE** that the Debtors are proposing to assume (or assume and assign) the Executory Contract(s) and Unexpired Lease(s) listed on Exhibit A, attached hereto, to which you are a party.[3]

---

[3]    Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumption Schedule, nor anything contained in the Plan or each Debtor's schedule of assets and liabilities, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of assumption, that any Reorganized Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement.  Further, the Debtors expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Assumption Schedule and reject such

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the Cure Amounts, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed on <u>Exhibit A</u> attached hereto. Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no Cure Amount outstanding for such contract or lease.

**PLEASE TAKE FURTHER NOTICE THAT** absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contract(s) and Unexpired Lease(s) identified above will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtors in Cash on the Effective Date. In the event of a dispute regarding (a) the amount of the Cure Claim, (b) the ability of the Reorganized Debtors or any assignee to provide 'adequate assurance of future performance' (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall only be made following the entry of a Final Order or orders resolving the dispute and approving the assumption by mutual agreement between the Debtors or the Reorganized Debtors, as applicable, and the applicable counterparty, with the consent of the Second Lien Agent, such consent not to be unreasonably withheld.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Plan Objection Deadline (as defined herein). Any such objection to the assumption of an Executory Contract or Unexpired Lease shall be heard by the Bankruptcy Court on or before the Effective Date, unless a later date is agreed to between the Debtors or the Reorganized Debtors, on the one hand, and the counterparty to the Executory Contract or Unexpired Lease, on the other hand, or by order of the Bankruptcy Court.

The Debtors or Reorganized Debtors, as applicable, reserve the right to reject any Executory Contract or Unexpired Lease in their discretion, subject to the consent rights set forth in the Plan Support Agreement, including in connection with the resolution of any cure disputes. Notwithstanding anything to the contrary herein, if at any time the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice or the Assumption Schedule, the Debtors or Reorganized Debtors, as applicable, will have the right, at such time, to remove such Executory Contract or Unexpired Lease from the Assumption Schedule, in which case such Executory Contract or Unexpired Lease shall be deemed rejected as of the Effective Date.

**PLEASE TAKE FURTHER NOTICE THAT any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment or related Cure Amount must be Filed, served, and actually received by the**

---

Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date and (b) contest any Cure Claim (or Cure Amount) asserted in connection with assumption of any Executory Contract or Unexpired Lease.

**Debtors by the Plan Objection Deadline.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, or proposed assumption and assignment, or Cure Amount will be deemed to have consented to such matters and will be deemed to have forever released and waived any objection to such proposed assumption, proposed assumption and assignment, and Cure Amount.**

PLEASE TAKE FURTHER NOTICE THAT the deadline for filing objections to the Plan, including, as set forth in Article IV.D.2 of the Plan, to the assumption (or assumption and assignment) of an Executory Contract or Unexpired Lease, is **February 27, 2024** at **4:00 PM (ET)** (the "Plan Objection Deadline").  Any objection **must** (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (d) be filed with this Court (contemporaneously with a proof of service) and served upon the notice parties identified in the Confirmation Hearing Notice so as to be **actually received** on or before **February 27, 2024** at **4:00 PM (ET)**.

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind, Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |

| The Official Committee of Unsecured Creditors |
|---|
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com |
| **U.S. Trustee** |
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey |

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the assumption of the Executory Contract(s) and Unexpired Lease(s) identified above and/or related cure or adequate assurances proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the Confirmation Hearing (or such other date as fixed by the Court).

**PLEASE TAKE FURTHER NOTICE THAT assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date of the Debtors or Reorganized Debtors assume such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Court.**

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

Dated:    [Month DD, YYYY]          Respectfully submitted,
          Wilmington, Delaware

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

[   ]_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
         amagaziner@ycst.com
         sborovinskaya@ycst.com

            - and -

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email:  pbasta@paulweiss.com
         rbritton@paulweiss.com
         mcolarossi@paulweiss.com

*Counsel to the Debtors and
 Debtors in Possession*

6

**<u>Exhibit A</u>**

**Assumption Schedule**



**Exhibit A**

| Counterparty Name | Description of Contract | Debtor Counterparties | Entity to be Assigned Contract (if applicable) | Amount Required to Cure Default Thereunder, If Any |
|---|---|---|---|---|
|  |  |  |  |  |

**<u>Exhibit 7</u>**

**Solicitation Package Cover Letter**



<div align="center">

**[●], 2024**

</div>

Via First Class Mail

<u>RE</u>:    <u>**In re Proterra Inc**</u>
<u>**Chapter 11 Case No. 23-11120 (BLS)**</u>

TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN:

Proterra Inc and its affiliated debtor (together, the "<u>Debtors</u>")[1] filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") on August 7, 2023.

You have received this letter and the enclosed materials because you are entitled to vote on the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "<u>Plan</u>").[2] On [●], 2024, the Court entered an order [Docket No. ●] (the "<u>Disclosure Statement Order</u>"):  (a) authorizing the Debtors to solicit acceptances for the Plan; (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "<u>Solicitation Packages</u>"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan

<div style="border:1px solid black; padding:10px; text-align:center">

**YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE PLAN.  THEREFORE, YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

</div>

In addition to this cover letter, the enclosed materials comprise your Solicitation Package, and were approved by the Court for distribution to Holders of Claims in connection with the solicitation of votes to accept the Plan.  The Solicitation Package consists of the following:

a.    a copy of the Solicitation and Voting Procedures;

b.    a Ballot, together with detailed voting instructions and a pre-addressed, postage pre-paid return envelope;

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.



c.      this Solicitation Package Cover Letter and the UCC Letter;

d.      the Disclosure Statement (and exhibits thereto, including the Plan);

e.      the Disclosure Statement Order (without exhibits, except the Solicitation and Voting Procedures);

f.      the Confirmation Hearing Notice; and

g.      such other materials as the Court may direct.

The Debtors have filed the Plan and are soliciting votes to accept the Plan. **The Debtors believe that the acceptance of the Plan is in the best interests of their estates, Holders of Claims, and all other parties in interest. The Plan is the culmination of the Debtors' extensive efforts to achieve the best possible outcome for all creditors. Moreover, the Debtors believe that any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller distributions (or no distributions) on account of Claims asserted in the chapter 11 cases. IF THE PLAN IS NOT CONFIRMED, THE DEBTORS CURRENTLY HAVE NO ALTERNATIVES FOR PRESERVING THE ESTATES.**

---

**THE DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN, IN ACCORDANCE WITH THE INSTRUCTIONS INDICATED ON YOUR BALLOT.**

**THE VOTING DEADLINE IS FEBRUARY 27, 2024 AT 4:00 PM (ET).**

---

The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials if you received electronic access to the solicitation materials), contact KCC, the Debtors' Solicitation Agent, by: (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 North Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: https://www.deb.uscourts.gov/. Please be advised that the Solicitation Agent is authorized to answer any questions about, and



provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

Sincerely,

[ ]_____
Gareth T. Joyce
Chief Executive Officer
Proterra Inc, on behalf of itself

## **Exhibit 8**

**Form of Plan Supplement Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF FILING OF PLAN SUPPLEMENT FOR THE JOINT**
**CHAPTER 11 PLAN OF REORGANIZATION**
**FOR PROTERRA INC AND ITS DEBTOR AFFILIATE**

**PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (collectively, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto, and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors hereby file certain exhibits to the Plan consisting of the following:

| Exhibit | Document[3] |
|---|---|
| A | [TBD] |
| B | [TBD] |
| C | [TBD] |
| D | [TBD] |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

[3] The exhibits set forth in the Plan Supplement remain subject to ongoing review and material revision in all respects.

**PLEASE TAKE FURTHER NOTICE** that the documents, schedules, and other information contained in this Plan Supplement are integral to and part of the Plan.  These documents have not yet been approved by the Court.  If the Plan is approved, the documents contained in the Plan Supplement will be approved by the Court pursuant to the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve all rights to amend, modify, or supplement the Plan Supplement, and any of the documents contained therein, in accordance with the terms of the Plan.  If material amendments or modifications are made to any of these documents, the Debtors will file a blackline with the Court prior to the Confirmation Hearing marked to reflect the same.

**PLEASE TAKE FURTHER NOTICE THAT** all votes to accept or reject the Plan must be **actually received** by the Debtors' Solicitation Agent at the Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA, 90245 by no later than **FEBRUARY 27, 2024 AT 4:00 PM (ET)**.

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.  **The Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court.**

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing objections to the Plan is **February 27, 2024 at  4:00 PM (ET)** (the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,**<br>**Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com,<br>rbritton@paulweiss.com,<br>mcolarossi@paulweiss.com<br><br>- and -<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com,<br>amagaziner@ycst.com,<br>sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** ||
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>- and -<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com ||
| **U.S. Trustee** ||
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey ||

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring

hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

---

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS CONTAINED IN ARTICLE IX OF THE PLAN. ARTICLE IX.C OF THE PLAN CONTAINS THIRD-PARTY RELEASES. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT AS SPECIFIED ABOVE. PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE. IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.**

---

*[Remainder of Page Intentionally Left Blank]*

Dated:    [Month DD, YYYY]
       Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

[  ]_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
      amagaziner@ycst.com
      sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
      rbritton@paulweiss.com
      mcolarossi@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

**Exhibit 2**

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Ref. Docket No. 793** |

**ORDER (A) APPROVING THE ADEQUACY OF THE**
**DISCLOSURE STATEMENT; (B) APPROVING THE SOLICITATION AND NOTICE**
**PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS'**
**JOINT CHAPTER 11 PLAN; (C) APPROVING THE FORMS OF BALLOTS**
**AND NOTICES IN CONNECTION THEREWITH; (D) SCHEDULING CERTAIN**
**DATES WITH RESPECT THERETO; AND (E) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for entry of an order, pursuant to sections 105, 341, 502, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, 3020, 9006, and 9008, and Local Rules 2002-1, 3017-1, 3018-1, 3020-1 and 9006-1 and 3020-1, (a) approving the Disclosure Statement, (b) approving the Solicitation and Voting Procedures with respect to confirmation of the Plan, (c) approving the forms of Ballots and Notices in connection therewith, (d) scheduling certain dates with respect thereto, and (e) granting related relief, all as more fully set forth in the Motion; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012; and this Court having found that this is a core proceeding

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"), if any; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is GRANTED as set forth herein.

## I.    Approval of the Disclosure Statement

2.    The Disclosure Statement is hereby approved as providing holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code.

3.    The Disclosure Statement (including all applicable exhibits thereto) provides holders of Claims, holders of Interests, and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article IX of the Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

4.    The Debtors are authorized to file the Financial Projections (as defined in the Plan) with the Plan Supplement.

## II.    Approval of the Solicitation and Voting Procedures

5.    4. The Debtors are authorized to solicit, receive, and tabulate votes to accept and reject the Plan in accordance with the Solicitation and Voting Procedures attached hereto as **Exhibit 2**, which are hereby approved in their entirety.

6.    5. Any party wishing to file a motion under Bankruptcy Rule 3018(a) to temporarily allow a Claim or Interest for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion") shall have until ten (10) days from the Solicitation Date to file and serve such a motion with respect to any claim as to which there is an objection pending as of the date of the entry of this Order (the "Rule 3018(a) Motion Deadline").  The Debtors and other parties in interest shall have until the date that is ten (10) days prior to the Voting Deadline as the deadline by which the Debtors or parties in interest must file objections to any Rule 3018(a) Motion (the "Rule 3018(a) Motion Objection Deadline").

7.    6. If a Claim subject to an objection other than a "reduce and allow" objection that is filed with this Court prior to the Voting Record Date, the applicable holder of such Claim shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event (as defined herein) occurs as provided herein.

8.    7. A "Resolution Event" shall mean the occurrence of one or more of the following events no later than three (3) business days prior to the Voting Deadline (the "Resolution Event Deadline"):

> a.    an order of this Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

    **b.**    an order of this Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

    **c.**    a stipulation or other agreement is executed between the holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed-upon amount; or

    **d.**    the pending objection is voluntarily withdrawn by the Debtors.

9. ~~8.~~ No later than two (2) business days following the occurrence of a Resolution Event, the Debtors shall cause the Solicitation Agent to distribute via electronic mail, hand delivery, or overnight-courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant holder. Such claimant must then return a duly completed, properly executed Ballot to the Solicitation Agent so that it is received no later than the Voting Deadline (unless the Debtors, in consultation with the Committee, extend the deadline in their sole discretion to facilitate a reasonable opportunity for such creditor to vote on the Plan).

10. ~~9.~~ Solely for the purpose of voting to accept or reject the Plan and not for purposes of the allowance of, or distribution on account of, a Claim or Interest, the following hierarchy shall be used to determine the amount of the Claim or Interest associated with each claimant's or interest holder's vote:

    a.    the Claim amount: (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with this Court; (ii) set forth in an order of this Court; or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court;

    b.    the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event under the procedures set forth in the Solicitation and Voting Procedures;

    c.    the Claim amount contained in a Proof of Claim that has been timely filed (or deemed timely filed by the Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; if such Claim is not subject to an objection filed in the Court on or before the Voting Record Date; *provided, however*, that Ballots cast by holders of Claims who

timely file a Proof of Claim in respect of a contingent Claim or in a wholly-unliquidated or unknown amount (based on a reasonable review by the Debtors and/or the Solicitation Agent) that is not the subject of an objection will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count as Ballots for Claims in the amount of $1.00, solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and, if a Proof of Claim is filed as partially liquidated and partially unliquidated, such Claim will be Allowed for voting purposes only in the liquidated amount; *provided further*, that to the extent the Claim amount contained in the Proof of Claim is different from the Claim amount (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with this Court; (ii) set forth in an order of this Court; or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court, such Claim amount shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes;

d.    the Claim amount listed in the Schedules, *provided* that such Claim is not scheduled as contingent, disputed, or unliquidated (for the avoidance of doubt, to the extent a Claim is scheduled as contingent, disputed, or unliquidated and no Proof of Claim is timely filed, the holder of such Claim shall not be entitled to vote on the Plan); *provided further* that if the Bar Date applicable to governmental units has not expired prior to the Voting Record Date with respect to a Claim of a governmental unit that is listed in the Schedules as contingent, disputed or unliquidated, such Claim shall be allowed to vote only in the amount of $1.00, solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code; and

e.    in the absence of any of the foregoing, such Claim shall be disallowed for voting purposes unless otherwise ordered by the Court.

## III.    Approval of the Materials and Timeline for Soliciting Votes

### A.    Approval of Key Dates and Deadlines with Respect to the Plan and Disclosure Statement

11.    ~~10.~~ The following dates are hereby established (subject to modification as necessary) with respect to the solicitation of votes to accept or reject, and voting on, the Plan:

a.    January 18, 2024 shall serve as the date of record for holders of Claims and Interests for purposes of voting on the Plan (the "<u>Voting Record</u>

Date"). In addition, with respect to any transferred Claim in the Voting Classes, the transferee will be entitled to receive a Solicitation Package and cast a Ballot on account of the transferred Claim only if all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e), if any, have been completed on or before the Voting Record Date. In the event a Claim is transferred after the transferor has completed a Ballot, the transferee of such Claim shall be bound by any vote made on the Ballot by the transferor;

    **b.**    the Debtors shall distribute Solicitation Packages to holders of Claims entitled to vote on the Plan by the date that is four (4) business days from the entry of this Order (the "<u>Solicitation Date</u>");

    **c.**    the Debtors shall file the initial Plan Supplement, if any, by the date that is ten (10) days prior to the Voting Deadline (as defined below) (such date, the "<u>Plan Supplement Deadline</u>"); and

    **d.**    all holders of Claims entitled to vote on the Plan must complete, execute, and return their Ballots so that they are **actually received** by the Solicitation Agent pursuant to the Solicitation and Voting Procedures, on or before February 27, 2024 at 4:00 PM (ET) (the "<u>Voting Deadline</u>").

**B.**    **Approval of the Form of, and Distribution of, Solicitation Packages to Parties Entitled to Vote on the Plan**

<u>12.</u>    ~~11.~~ In addition to the Disclosure Statement and exhibits thereto, the Solicitation Packages to be transmitted on or before the Solicitation Deadline to those holders of Claims in the Voting Classes entitled to vote on the Plan as of the Voting Record Date shall include the following, the form of each of which is hereby approved:

    **a.**    A copy of the Solicitation and Voting Procedures attached hereto as **<u>Exhibit 2</u>**;

    **b.**    A Ballot, together with detailed voting instructions and a pre-addressed, postage pre-paid return envelope attached hereto as **<u>Exhibits 3-A</u>** and **<u>3-B</u>**, respectively; [3]

---

[3]    The Debtors will use commercially reasonable efforts to ensure that any holder of a Claim who has filed duplicate Claims against the Debtors (whether against the same or both Debtors) that are classified under the Plan in the same Voting Class, receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class.

      **c.**      The Solicitation Package Cover Letter, including the UCC Letter, attached hereto as **Exhibit 7**;

      **d.**      The Disclosure Statement (and exhibits thereto, including the Plan);

      **e.**      This Disclosure Statement Order (without exhibits, except the Solicitation and Voting Procedures); and

      **f.**      the Confirmation Hearing Notice attached hereto as **Exhibit 1**.

13.  ~~12.~~ The Solicitation Packages provide the holders of Claims entitled to vote on the Plan with adequate information to make informed decisions with respect to voting on the Plan in accordance with section 1125 of the Bankruptcy Code, Bankruptcy Rules 2002(b) and 3017(d), and Local Rules 2002-1 and 3017-1.

14.  ~~13.~~ The Debtors shall distribute Solicitation Packages to all holders of Claims entitled to vote on the Plan on or before the Solicitation Deadline.  Such service shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

15.  ~~14.~~ The Debtors are authorized to distribute the Plan, the Disclosure Statement, and this Order to holders of Claims entitled to vote on the Plan in electronic format (i.e., flash drive).  **Only** the Ballots, as well as the Cover Letter and the Confirmation Hearing Notice, must be provided in paper form.[4]

16.  ~~15.~~ The Solicitation Agent is authorized to assist the Debtors in:  (a) distributing the Solicitation Package; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by holders of Claims against the Debtors; (c) responding to inquiries from holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the

---

[4]    On or before the Solicitation Deadline, the Debtors (through their Solicitation Agent) shall provide complete Solicitation Packages (other than Ballots) to the U.S. Trustee and to all parties on the Rule 2002 List as of the Voting Record Date.  Any party that receives the materials in electronic format that would prefer to receive materials in paper format may contact the Solicitation Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).

Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan; and (d) soliciting votes on the Plan.

17.    ~~16.~~ The Solicitation Agent is also authorized to accept Ballots and Opt-Out Forms via electronic online transmission solely through a customized online balloting portal on the Debtors' case website (https://kccllc.net/proterra).  The encrypted data and audit trail created by such electronic submission shall become part of the record of any Ballot or Opt-Out Form submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Ballots or Opt-Out Forms submitted via the customized online balloting portal shall be deemed to contain an original signature.

18.    ~~17.~~ All votes to accept or reject the Plan must be cast by using the appropriate Ballot.  All Ballots must be properly executed, completed, and delivered according to their applicable voting instructions by:  (a) first-class U.S. mail, in the return envelope provided with each Ballot; (b) overnight delivery; or (c) personal delivery, such that the Ballots are **actually received** by the Solicitation Agent no later than the Voting Deadline at the return address set forth in the applicable Ballot.  Alternatively, Ballots may be submitted electronically through the Solicitation Agent's online Ballot submission portal at https://kccllc.net/proterra by no later than the Voting Deadline.  The Debtors are authorized to extend the Voting Deadline in their sole discretion, in consultation with the Committee, without further order of this Court.

### C.    Approval of the Confirmation Hearing Notice

19.    ~~18.~~ The Confirmation Hearing Notice, substantially in the form attached hereto as **Exhibit 1** is approved and shall be deemed good and sufficient notice of the Confirmation Hearing and no further notice need be given.  The Debtors shall file and serve the Confirmation

Hearing Notice upon parties in interest in these Chapter 11 Cases by no later than the date that is

four (4) business days from the entry of this Order.  The Debtors shall also cause the

Confirmation Hearing Notice, as may be modified for purposes of publication, to be published

one time on or before the date that is seven (7) business days from the entry of this Order in the

national edition of one of the following newspapers:  The Wall Street Journal, The New York

Times, or USA Today.  Service of the Confirmation Hearing Notice, as well as the publication of

such notice, as set forth herein constitutes adequate and sufficient notice of the hearings to

consider approval of the Plan, the manner in which a copy of the Plan could be obtained, and the

time fixed for filing objections thereto, in satisfaction of the requirements of the applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

>        **D.**      **Approval of Notice of Filing of the Plan Supplement**

20.    ~~19.~~ The Debtors are authorized to send notice of the filing of the Plan

Supplement, which shall be filed and served at least ten (10) days prior to the Voting Deadline,

on the date the Plan Supplement is filed or as soon as reasonably practicable thereafter.

>        **E.**      **Approval of the Form of Notices to Non-Voting Classes**

21.    ~~20.~~ Except to the extent that the Debtors determine otherwise, in consultation with

the Committee, the Debtors are not required to provide Solicitation Packages to holders of

Claims or Interests in Non-Voting Classes, as such holders are not entitled to vote on the Plan.

Instead, on or before the Solicitation Deadline, the Solicitation Agent shall mail (first-class,

postage pre-paid) a Non-Voting Status Notice in lieu of Solicitation Packages, the form of each

of which is hereby approved, to those parties outlined below that are not entitled to vote on the

Plan:

>        a.     ***Unimpaired Claims-Conclusively Presumed to Accept***.  Holders of
>        Claims in Classes 1, 2, and 3 are not impaired under the Plan and,
>        therefore, are conclusively presumed to have accepted the Plan.  As such,

holders of such Claims will receive a notice, substantially in the form attached to the Proposed Order as **Exhibit 4-A**, in lieu of a Solicitation Package.

b.    ***Other Interests-Deemed to Reject***.  Holders of Interests in Classes 7, 8 and 9 are receiving no distribution under the Plan and, therefore, are deemed to reject the Plan and will receive a notice, substantially in the form attached to the Proposed Order as **Exhibit 4-B**, in lieu of a Solicitation Package.  To the extent that a proof of claim is filed that is based solely on a Holder's equity Interests or the losses thereto, such Holder will be classified as a Class 8 or Class 9 claimant and such Claim will be treated in accordance with Class 8 or Class 9 and not entitled to vote.  Accordingly, pursuant to section 1126(g) of the Bankruptcy Code, those Holders are deemed to reject the Plan and/or are otherwise not entitled to vote on account of such claims.

c.    ***Intercompany Claims***.  Holders of Claims in Class 6 (Intercompany Claims) shall either (i) have their Claim Reinstated in accordance with Article III.C of the Plan and therefore be conclusively presumed to have accepted the Plan; or (ii) have their Claims cancelled, released, and extinguished and without any distribution and therefore be deemed to reject the Plan.  With respect to holders of Claims in Class 6, the Debtors are requesting authority to waive any requirement to serve such holders with a Solicitation Package or any other type of notice in connection with solicitation of the Plan.

d.    ***Disputed Claims***.  Holders of Claims subject to pending objection by the Debtors are not entitled to vote the disputed portion of their claim.  As such, holders of such Claims will receive a notice, substantially in the form attached to the Proposed Order as **Exhibit 4-C**.

e.    ***Opt-Out Release Forms***.  Holders of Interests in Classes 8 and 9 are receiving no distribution under the Plan and, therefore, are deemed to reject the Plan.  Any and all claims against "Released Parties," including the directors and officers of the Debtors, and other creditors and third parties covered by the Defined Terms (as defined in the Plan), will be released unless holders of such interests complete an opt-out release form (an "Opt-Out Form").  As such, holders of such Interests will receive a notice and opt-out form, substantially in the form attached to the Proposed Order as **Exhibits 5-A**, **5-B**, and **5-C**, as applicable.

22.    ~~21.~~ The Debtors are not required to mail Solicitation Packages or other solicitation materials to:  (a) holders of Claims that have already been paid in full during these Chapter 11 Cases pursuant to an order previously entered by this Court; or (b) any party to whom

10

notice of the Disclosure Statement Hearing was sent but subsequently returned as undeliverable. The Debtors are likewise authorized to rely on the address information for the Voting and Non-Voting Classes as compiled and maintained by the Solicitation Agent as of the Voting Record Date, such that the Debtors and Solicitation Agent will not be required to conduct any additional research for updated addresses based on undeliverable Solicitation Packages or Notices of Non-Voting Status and will not be required to resend Solicitation Packages or other materials, including Notices of Non-Voting Status, that are returned as undeliverable unless the Debtors are provided with accurate addresses for such parties at least seven (7) days prior to the Voting Deadline.

### F.    Approval of Notices to Contract and Lease Counterparties

23.    ~~22.~~ The Debtors are authorized to mail a notice of assumption (or assumption and assignment) of any Executory Contracts or Unexpired Leases (and any corresponding cure claims), in the forms attached hereto as **Exhibit 6** to the applicable counterparties to Executory Contracts and Unexpired Leases that will be assumed (or assumed and assigned) pursuant to the Plan (as the case may be), within the time periods specified in the Plan.  For the avoidance of doubt, a holder of a claim associated with a rejected Executory Contract and Unexpired Lease shall only be entitled to vote on account of such claim if it is reflected on the Solicitation Agent's claims register as of the Voting Record Date.

## IV.    Approval of Procedures for Confirming the Plan

### A.    Approval of the Timeline for Filing Objections to the Plan and Confirming the Plan

24.    ~~23.~~ The following dates are hereby established (subject to modification as needed) with respect to filing objections to the Plan and confirming the Plan:

a.    **February 27, 2024 at 4:00 PM (ET)** shall be date by which objections to the Plan must be filed with this Court and served on the appropriate notice parties (as identified below) (the "<u>Plan Objection Deadline</u>");

b.    **March 1, 2024** at **4:00 PM (ET)** shall be the date by which the Voting Declaration must be filed with this Court;

c.    **March 1, 2024 at 4:00 PM (ET)** shall be the date by which replies to objections to the Plan must be filed with this Court and served by the appropriate notice parties (as identified below) (the "<u>Plan Objection Reply Deadline</u>");

d.    **March 1, 2024** at **4:00 PM (ET)** shall be the date by which the Debtors shall file their brief in support of Confirmation (the "<u>Brief in Support of Plan</u>"); and

e.    this Court shall consider Confirmation of the Plan at the hearing to be held on **March 5, 2024 at 10:00 AM (ET)** (the "<u>Confirmation Hearing Date</u>").

**B.    Approval of the Procedures for Filing Objections to the Plan**

25.    ~~24.~~ Objections to the Plan will not be considered by this Court unless such objections are timely filed and properly served in accordance with this Order.  Specifically, all objections to confirmation of the Plan or requests for modifications to the Plan, if any, **must**:  (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (d) be filed with this Court (contemporaneously with a proof of service) and served upon the notice parties identified in the Confirmation Hearing Notice on or before February 27, 2024 at 4:00 PM (ET).

**V.    Miscellaneous**

26.    ~~25.~~ The Debtors' right to modify the Plan in accordance with Article XII thereof, including the right to withdraw the Plan as to one or both Debtors at any time before the Confirmation Hearing Date, is hereby reserved.

27.    ~~26.~~ Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

28.    ~~27.~~ The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

29.    ~~28.~~ This Court shall retain exclusive jurisdiction over all matters arising from or related to the interpretation, implementation, and enforcement of this Order.

**<u>Exhibit 1</u>**

**Confirmation Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PROTERRA INC, *et al.*,[1] | ) | Case No. 23-11120 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Hearing Date: January 23, 2024 at 11:00 AM (ET)** |
|  | ) | **Obj. Deadline: January 16, 2024 at 4:00 PM (ET)** |
|  | ) |  |
|  | ) |  |

**NOTICE OF (A) HEARING TO CONSIDER CONFIRMATION OF THE
CHAPTER 11 PLAN OF REORGANIZATION FOR PROTERRA INC AND ITS
DEBTOR AFFILIATE AND (B) RELATED VOTING AND OBJECTION DEADLINES**

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

ARTICLE IX OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER. FAILURE TO FILE A TIMELY OBJECTION TO THE PLAN OR, WITH RESPECT TO THE RELEASES SET FORTH IN ARTICLE IX OF THE PLAN, TO TIMELY OPT OUT VIA BALLOT OR OPT-OUT NOTICE OR FILE A TIMELY OBJECTION TO THE PLAN THAT REMAINS UNRESOLVED AS OF CONFIRMATION, AS APPLICABLE, WILL RESULT, IF THE PLAN IS CONFIRMED, IN THE APPLICATION OF THE PROVISIONS SET FORTH BELOW, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS CONTAINED THEREIN, TO EACH OF THE DEBTORS' CREDITORS AND INTEREST HOLDERS.

**PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors") to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

*its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "<u>Plan</u>");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "<u>Solicitation Packages</u>"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider Confirmation of the Plan (the "<u>Confirmation Hearing</u>") will commence on March 5, 2024 at 10:00 AM (ET), before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

<div style="border:1px solid black">

<u>PLEASE BE ADVISED</u>: THE CONFIRMATION HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE COURT OR THE DEBTORS IN CONSULTATION WITH THE COMMITTEE **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

</div>

## <u>CRITICAL INFORMATION REGARDING VOTING ON THE PLAN</u>

**Voting Record Date**.  The voting record date was January 18, 2024 (the "<u>Voting Record Date</u>"), which is the date for determining which Holders of Claims in Classes 4 and 5 are entitled to vote on the Plan.

**Voting Deadline**.  Within four (4) business days after entry of the Disclosure Statement Order, the Debtors will complete the mailing of Solicitation Packages to solicit votes to accept or reject the Plan from the Holders of Claims in Class 4 and holders of Claims in Class 5 each as of the Voting Record Date.  The deadline for voting on the Plan is on February 27, 2024 at 4:00 PM (ET) (the "<u>Voting Deadline</u>").  If you received a Solicitation Package, including a Ballot, and intend to vote on the Plan, you **must**: (a) follow the instructions carefully; (b) complete **all** of the required information on the Ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is **actually received** by the Debtors' voting and solicitation agent, Kurtzman Carson Consultants LLC ("<u>KCC</u>" or the "<u>Solicitation Agent</u>"), on or before the Voting Deadline.  **A failure to follow such instructions may disqualify your vote**.

**Voting Classes**.  Only Holders of Second Lien Convertible Notes Claims (Class 4) and General Unsecured Claims (Class 5) are entitled to vote to accept or reject the Plan.  All other classes of Claims and Interests are deemed either to accept or reject the Plan.

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

**Non-Voting Status of Holders of Certain Claims and Interests**.  Certain Holders of Claims and Interests are **not** entitled to vote on the Plan.  As a result, such parties will not receive any ballots or other related solicitation materials to vote on the Plan.  The Holders of Claims and Interests in Class 1 (Other Secured Claims); Class 2 (Other Priority Claims); Class 3 (First Lien Claims); Class 6 (Intercompany Claims); Class 7 (Existing Equity Interests in OpCo); Class 8 (Existing Equity Interests in TopCo); and Class 9 (Section 510(b) Claims) are not entitled to vote on the Plan and will not receive a solicitation materials to vote on the Plan.

**Plan Objection Deadline**.  The deadline for filing objections to the Plan is **February 27, 2024 at 4:00 PM (ET) (**the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan                              Objection                              Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,**<br>**Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |
| **U.S. Trustee** | |
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey | |

## ADDITIONAL INFORMATION

**Obtaining Solicitation Materials**.  The materials in the Solicitation Package are intended to be self-explanatory.  If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials if you received electronic access to the solicitation materials), contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra.  You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.  Please be advised that the Solicitation Agent is authorized to answer any questions about, and provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

**Notice of the Assumption of Executory Contracts**.  Under the terms of Article V of the Plan, on the Effective Date, except as provided in the Plan (including, with respect to D&O Policies, under Article IV.P of the Plan), the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases, unless such Executory Contract is a D&O Policy or an Insurance Contract, that (a) have not been identified on the Schedule of Assumed Executory Contracts and Unexpired Leases, if any (which shall be included in the Plan Supplement), (b) have not been otherwise rejected, assumed, or assumed and assigned, including in connection with any Sale, or which have not been designated for assumption or assumption and assignment pursuant to the terms of any Sale Order, or (c) are not otherwise rejected, assumed, assumed and assigned, or the subject of a motion filed by the Debtors prior to the Effective Date to assume, assume and assign, or reject such Executory Contracts and Unexpired Leases on which the Bankruptcy Court has not ruled and is still pending.

---

### BINDING NATURE OF THE PLAN:

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASES OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, OR (III) VOTED TO REJECT THE PLAN.**

---

### NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN THE PLAN

**Releases, Exculpation, and Injunction under Article IX.  Please be advised that under Article IX of the Plan:**

**Releases by the Debtors**

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, as of the Effective Date, each of the Released Parties is unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged by the Debtors, the Reorganized Debtors, any Wind Down Debtor, and each of their Estates, including any successors to the Debtors or any Estate's representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, any Causes of Action that any Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Debtors, the Reorganized Debtors, any Wind Down Debtor, or their Estates (whether individually or collectively) ever had, now has, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Released Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release:  (a) to the extent that any Claims or other Causes of Action against the Debtors are not released pursuant to the Plan, are not discharged pursuant to the Plan, or are Disputed, any rights of the Debtors, the Reorganized Debtors, and the Wind Down Debtors to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims or other Causes of Action in response to such Causes of Action; (b) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and

services being performed; (c) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any other document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (e) any obligations of any party or Entity under the Sale Documents; (f) any Retained Causes of Action; or (g) any Causes of Action asserted or assertable by any Debtor against any non-Debtor party to any Retained Cause of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) essential to the Confirmation of the Plan; (b) an exercise of the Debtors' business judgment; (c) in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (d) a good faith settlement and compromise of the Causes of Action released by the Debtor Release; (e) in the best interests of the Debtors and all Holders of Claims and Interests; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Debtors, the Reorganized Debtors, the Wind Down Debtors, and the Estates, including any successors to the Debtors or any Estate's representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, asserting any Cause of Action released pursuant to the Debtor Release.

Each of the Debtors expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that each Debtor does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Debtor expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each of the Debtors expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or

6

released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.

**Releases by the Releasing Parties**

As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair: (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility

or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in  accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; or (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.**

<u>Exculpation</u>

**To the fullest extent permitted by applicable law, no Exculpated Party will have or incur any liability to any person or Entity for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Debtors' restructuring efforts, the Chapter 11 Cases, preparation for the Chapter 11 Cases, the filing of the Chapter 11 Cases, formulation, preparation, dissemination, negotiation, filing, or termination of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with any of the foregoing, the Sales, the funding of the Plan, the occurrence of the Effective Date, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, the issuance of securities pursuant to the Plan, the issuance of the New Common Stock, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, gross negligence, or willful misconduct, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The foregoing shall not be deemed to release, affect, or limit any post-Effective Date rights or obligations of the Exculpated Parties under the Plan, any Restructuring Transaction, or any other document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement).**

**The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

**The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

<u>Discharge; Injunction</u>

This Discharge and Injunction shall become effective only in the event that a

9

Reorganization, as defined in the Plan, occurs.

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Interest on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing).  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.**

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released pursuant to the Plan provisions setting forth the releases granted by the Debtors or the Releasing Parties, or discharged pursuant to the Plan, or are subject to exculpation pursuant to the article of the Plan which provides for the exculpation of the Exculpated Parties, shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Wind Down Debtors, the Exculpated Parties, or the Released Parties or the Distribution Trust:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has, on or before the Effective**

**Date, asserted such setoff right in a document filed with the Bankruptcy Court (i.e., a timely filed motion or proof of claim) explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

<u>**Non-Discharge of the Debtors; Injunction**</u>

This Non-Discharge and Injunction shall become effective only in the event that a Plan Support Agreement Termination, as defined in the Plan, occurs.

**In accordance with section 1141(d)(3) of the Bankruptcy Code, the Plan does not discharge the Debtors. Section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. As such, no Entity holding a Claim or Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan. All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.**

**Except as otherwise expressly provided for in the Plan or Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities are permanently enjoined, on and after the Effective Date, on account of or in connection with any Claim or Interest or Cause of Action, from:**

> a. **commencing or continuing in any manner any action or other proceeding of any kind against any of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee;**

> b. **enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee;**

> c. **creating, perfecting or enforcing any encumbrance of any kind against any of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee;**

> d. **asserting any right of setoff or subrogation of any kind against any obligation due from any of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee, except to the extent a right to setoff or subrogation is asserted with**

**respect to a timely filed proof of Claim or motion filed before the Effective Date; or**

e.      **commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Interest or Cause of Action released under this Article IX.**

**Such injunction shall extend to any successors and assigns of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee and their respective assets and properties.  Any Entity injured by any willful violation of such injunction may seek actual damages and, in appropriate circumstances, may seek punitive damages from the willful violator.**

**Unless otherwise provided herein, any injunction or stay arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code or otherwise that is in existence on the Confirmation Date shall remain in full force and effect until the Chapter 11 Cases are closed.**

### Setoffs

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim or an Interest, each Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee (as applicable) may set off against any Allowed Claim or Allowed Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Allowed Interest (before any distribution is made on account of such Allowed Claim or Allowed Interest), any claims, rights and Causes of Action of any nature that such Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee, as applicable, may hold against the Holder of such Allowed Claim or Allowed Interest, to the extent such claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee of any such claims, rights and Causes of Action that such Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee may possess against such Holder.  In no event shall any Holder of Claims or Interests be entitled to set off any Claim or Interest against any claim, right or Cause of Action of the applicable Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee unless such Holder has timely Filed a motion or proof of claim with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date.

The Plan also contains other related provisions that may affect your rights against the Debtors.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

[*Remainder of Page Intentionally Left Blank*]

Dated:   [Month DD, YYYY]           Respectfully submitted,
         Wilmington, Delaware           **YOUNG CONAWAY STARGATT &**
                                       **TAYLOR, LLP**

[]_____

Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
          amagaziner@ycst.com
          sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:   (212) 373-3000
Fax:   (212) 757-3990
Email: pbasta@paulweiss.com
         rbritton@paulweiss.com
         mcolarossi@paulweiss.com

*Counsel to the Debtors and*
*Debtors in Possession*

---

If you have questions about this Notice, please contact:
KCC
**Telephone:** (888) 251-3076 (Toll Free U.S. & Canada) or +1 (310) 751-2617 (Non-U.S. &
Canada Parties)
**Website:** https://www.kccllc.net/proterra

**<u>Exhibit 2</u>**

**Solicitation and Voting Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## SOLICITATION AND VOTING PROCEDURES

**PLEASE TAKE NOTICE THAT**, on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

### A.    The Voting Record Date for Class 4 (Second Lien Convertible Notes) and Class 5 (General Unsecured Claims)

1.      The record date to determine which Claims in Class 4 and Class 5 was January 18, 2024 (the "Voting Record Date").

### B.    The Voting Deadline

2.      The Court has approved February 27, 2024 at 4:00 PM (ET) as the deadline to submit Ballots and/or Opt-Out forms (the "Voting Deadline") for the Plan.  The Debtors may extend the Voting Deadline, in their discretion, in consultation with the Committee, without further order of the Court.

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

3.      To be counted as votes to accept or reject the Plan, all ballots sent to registered holders of Claims (each, a "Ballot") must be properly executed, completed, and returned in the pre-paid, pre-addressed return envelope included in the Solicitation Package or delivered by: (a) first-class U.S. mail; (b) overnight courier; (c) personal delivery; or (d) "E-Ballot", so that they are *actually received*, in any case, no later than the Voting Deadline by Kurtzman Carson Consultants LLC ("KCC" or the "Solicitation Agent").

4.      All Ballots should be submitted as follows:  (a) if by first class mail, overnight, or personal delivery, to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (b) if via "E-Ballot" submission, by visiting https://kccllc.net/proterra.   Delivery of a Ballot to the Solicitation Agent by facsimile or electronic mail shall not be valid and shall not be counted by the Solicitation Agent.

5.      Any holder of a Claim that ~~affirmatively opts-out of the release under Article IX of~~(i) (a) votes to "Reject" or does not vote on the Plan ~~by returning~~and (b) checks the Release Opt-Out box under Item 2 of the Ballot, (ii) returns a properly completed Opt-Out Form~~, or~~ indicating that such holder has elected to opt-out of the releases set forth in Article IX of the Plan, or (iii) timely files an objection to the ~~release under Article IX~~Plan that is not consensually resolved before Confirmation or files on the docket any pleading evidencing support for any such objection or objector, shall *not* be a Releasing Party.  To be counted as a holder of a Claim deemed to have opted out of the release, such holder must (i) properly execute, complete, and deliver an~~its Ballot or~~ Opt-Out Form, as applicable, so that it is *actually received*, in any case, no later than the Voting Deadline by the Solicitation Agent, or (ii) timely file an objection to the Plan that is not resolved prior to confirmation, or file on the docket any pleading evidencing support for any such objection or objector.

6.      All Opt-Out Forms should be submitted as follows:  (a) if by first class mail, overnight, or personal delivery, to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (b) if via "E-Ballot" submission, by visiting https://kccllc.net/proterra.  With regard to Opt-Out Forms by holders of Class 8 TopCo Interests, Beneficial Holders should follow the instructions provided by their Nominees to submit their elections.  Nominees may submit their Master Opt-Out Forms via electronic mail at ProterraInfo@kccllc.com.  Delivery of an Opt-Out Form to the Solicitation Agent by facsimile or electronic mail, other than by Nominees of their Master Opt-Out Forms, shall not be valid and shall not be counted by the Solicitation Agent.

**C.      Form, Content, and Manner of Notices**

**The Solicitation Package**

7.      The following materials shall constitute the solicitation package (the "Solicitation Package"):

    a.      A copy of these Solicitation and Voting Procedures attached as **Exhibit 2** to the Proposed Order;

b.      A Ballot, together with detailed voting instructions and a pre-addressed, postage pre-paid return envelope attached hereto as **Exhibits 3-A** and **3-B** to the Proposed Order, respectively;[3]

c.      The Solicitation Package Cover Letter and UCC Letter attached hereto as **Exhibit 7** to the Proposed Order;

d.      The Disclosure Statement (and exhibits thereto, including the Plan);

e.      This Disclosure Statement Order;

f.      the Confirmation Hearing Notice attached hereto as **Exhibit 1** to the Proposed Order; and

g.      such other materials as the Court may direct.

**Distribution of the Solicitation Package**

8.      The Solicitation Package shall provide the Plan, the Disclosure Statement, and the Disclosure Statement Order (without exhibits), and the Solicitation and Voting Procedures in electronic format (i.e., flash drive), and all other contents of the Solicitation Package, including Ballots, shall be provided in paper format.  Any party that receives the materials in electronic format but would prefer paper format may contact the Solicitation Agent by:  (a) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International); (b) visiting the Debtors' restructuring website at: https://www.kccllc.net/proterra; (c) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300 El Segundo, CA 90245; and/or (d) email via www.kccllc.net/proterra/inquiry (with "Proterra Solicitation" in the inquiry) and requesting paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).

9.      The Debtors shall serve, or cause to be served, all of the materials in the Solicitation Package (excluding the Ballots) on the U.S. Trustee and all parties who have requested service of papers in this case pursuant to Bankruptcy Rule 2002 as of the Voting Record Date.  In addition, the Debtors shall mail, or cause to be mailed, the Solicitation Package to all holders of Claims in the Voting Classes who are entitled to vote by the date that is four (4) business days after the Court enters the Disclosure Statement Order, as described below in Section D.

10.      To avoid duplication and reduce expenses, the Debtors will use commercially reasonable efforts to ensure that any holder of a Claim who has filed duplicative Claims against a Debtor (whether against the same or both Debtors) that are classified under the Plan in the same

---

[3]   The Debtors will use commercially reasonable efforts to ensure that any holder of a Claim who has filed duplicate Claims against the Debtors (whether against the same or both Debtors) that are classified under the Plan in the same Voting Class, receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class.

Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class as against that Debtor.

**Resolution of Disputed Claims for Voting Purposes; Resolution Event**

a. Absent a further order of the Court, the holder of a Claim in a Voting Class that is the subject of a pending objection filed with the Court by the Debtors on a "reduce and allow" basis shall be entitled to vote such Claim in the reduced amount contained in such objection.

b. If a Claim in a Voting Class is subject to an objection other than a "reduce and allow" objection that is filed with the Court before the Voting Record Date: (i) the Debtors shall cause the applicable holder to be served with a Disputed Claim Notice substantially in the form annexed as **<u>Exhibit 4-C</u>** to the Disclosure Statement Order; and (ii) the applicable holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event (as defined herein) occurs as provided herein.

c. A "<u>Resolution Event</u>" means the occurrence of one or more of the following events no later than three (3) business days prior to the Voting Deadline:

   i. an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

   ii. an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

   iii. a stipulation or other agreement is executed between the holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed-upon amount; or

   iv. the pending objection is voluntarily withdrawn by the Debtors.

d. No later than two (2) business days following the occurrence of a Resolution Event, the Debtors shall cause the Solicitation Agent to distribute via electronic mail, hand delivery, or overnight-courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant holder. Such claimant must then return a duly completed, properly executed Ballot to the Solicitation Agent so that it is received no later than the Voting Deadline (unless the Debtors extend the deadline in their sole

discretion, in consultation with the Committee to facilitate a reasonable opportunity for such creditor to vote on the Plan).

**Non-Voting Status Notices for Unimpaired Classes and Classes Deemed to Reject the Plan**

11.     Certain Holders of Claims and Interests that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code or who are not entitled to vote because they are Unimpaired or otherwise conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code will receive only the Notice of Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan, substantially in the form annexed as **Exhibit 4-A** to the Disclosure Statement Order.  Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).  Certain holders of Claims and Interests who are not entitled to vote because they are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code will receive the Notice of Non-Voting Status to Holders of Impaired Interests Deemed to Reject the Plan, substantially in the form annexed as **Exhibit 4-B** to the Disclosure Statement Order.  Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

**D.     Voting and Tabulation Procedures**

**Holders of Claims Entitled to Vote**

12.     Only the following holders of Claims in the Voting Classes shall be entitled to vote with regard to such Claims:

    a.     holders of Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim (or an untimely Proof of Claim that has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) that:  (i) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date and (ii) is not the subject of a pending objection filed with the Court by the Voting Record Date; *provided*, that a holder of a Claim that is the subject of a pending objection on a "reduce and allow" basis shall receive a Solicitation Package and be entitled to vote such Claim in the reduced amount contained in such objection absent a further order of the Court; *provided, further*, that if a Claim is subject to an objection other than a "reduce and allow" objection that is filed with the Court prior to the Voting Record Date, the applicable holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event (as defined herein) occurs as provided herein;

    b.     holders of Claims that are listed in the Schedules (as defined in the plan) (to the extent a superseding Proof of Claim has not yet been

timely filed as of the Voting Record Date) in an amount greater than \$0; *provided* that if the applicable Bar Date has not expired prior to the Voting Record Date, a Claim listed in the Schedules as contingent, disputed, or unliquidated that has not been paid in full or superseded by a filed Proof of Claim shall be allowed to vote only in the amount of \$1.00, solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code;

d.   holders whose Claims arise:  (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court; (ii) in an order entered by the Court; or (iii) in a document executed by the Debtors pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed;

e.   holders of any Disputed Claim that has been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018(a);

f.   with respect to any entity described in subparagraphs (a) through (e) above, who, on or before the Voting Record Date, has transferred such entity's Claim to another entity, the assignee of such Claim; provided that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register (as defined in the Plan) as of the Voting Record Date.

### Establishing Claim Amounts for Voting Purposes

13.   **Class 4 Claims**.  Notwithstanding anything to the contrary set forth herein, the Claims amount of Class 4 Second Lien Convertible Notes, for voting purposes only, will be established by reference to (a) the Debtors' applicable books and records and (b) the list of record holders maintained by the Second Lien Agent (as defined in the Plan), dated as of the Voting Record Date, as evidenced by the applicable records provided by the Second Lien Agent to the Debtors or the Solicitation Agent, which records shall be provided no later than one (1) Business Day following the Voting Record Date.  Proofs of Claim for \$0.00 are not entitled to vote.

If a Proof of Claim is amended, the last filed claim shall be subject to these rules and will supersede any earlier filed claim, and any earlier filed claim will be disallowed for voting purposes.

14.   **Class 5 Claims**.  Notwithstanding anything to the contrary set forth herein, the Claims amount of Class 5 General Unsecured Claims, for voting purposes only, will be established based on the amount of the applicable positions held by such Class 5 Claim holder, as of the Voting Record Date, as evidenced by (a) the Schedules and (b) the official register of Claims in the Chapter 11 Cases.  Proofs of Claim filed for \$0.00 are not entitled to vote.

If a Proof of Claim is amended, the last filed claim shall be subject to these rules and will supersede any earlier filed claim, and any earlier filed claim will be disallowed for voting purposes.

15.    **Filed/Scheduled Claims**.  The Claim amount established herein shall control for voting purposes only and shall not constitute the Allowed (as defined in the Plan) amount of any Claim.  Moreover, any amounts filled in on Ballots by the Debtors through the Solicitation Agent, as applicable, are not binding for purposes of allowance and distribution.  In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

a.    the Claim amount:  (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court; (ii) set forth in an order of the Court; or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court;

b.    the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event under the procedures set forth in these Solicitation and Voting Procedures;

c.    the Claim amount contained in a Proof of Claim that has been timely filed (or deemed timely filed by the Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; if such Claim is not subject to an objection filed in the Court on or before the Voting Record Date; *provided, however*, that Ballots cast by holders of Claims who timely file a Proof of Claim in respect of a contingent Claim or in a wholly-unliquidated or unknown amount (based on a reasonable review by the Debtors and/or the Solicitation Agent) that is not the subject of an objection will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count as Ballots for Claims in the amount of $1.00, solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and, if a Proof of Claim is filed as partially liquidated and partially unliquidated, such Claim will be Allowed for voting purposes only in the liquidated amount; *provided further*, that to the extent the Claim amount contained in the Proof of Claim is different from the Claim amount (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court; (ii) set forth in an order of the Court; or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court, such Claim amount shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes;

d.    the Claim amount listed in the Schedules, *provided* that such Claim is not scheduled as contingent, disputed, or unliquidated (for

7

the avoidance of doubt, to the extent a Claim is scheduled as contingent, disputed, or unliquidated and no Proof of Claim is timely filed, the holder of such Claim shall not be entitled to vote on the Plan); *provided further* that if the Bar Date applicable to governmental units has not expired prior to the Voting Record Date with respect to a Claim of a governmental unit that is listed in the Schedules as contingent, disputed or unliquidated, such Claim shall be allowed to vote only in the amount of $1.00, solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code; and

e.    in the absence of any of the foregoing, such Claim shall be disallowed for voting purposes unless otherwise ordered by the Court.

**Voting and Ballot Tabulation Procedures**

16.    The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right, in consultation with the Committee, to waive any of the below specified requirements for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules:

a.    Except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline (as the same may be extended by the Debtors, in consultation with the Committee, or by order of the Court), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with Confirmation of the Plan.

b.    The Debtors will file with the Court, not later than March 1, 2024 at 4:00 PM (ET), a certification of votes (the "Voting Declaration"). The Voting Declaration shall, among other things, certify to the Court in writing the amount and number of Allowed Claims of each Class accepting or rejecting the Plan, and delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or necessary information, received via facsimile or e-mail, or damaged (all such Ballots, "Irregular Ballots"). The Voting Report shall indicate the Debtors' intentions with regard to each such Irregular Ballot.

c.    The method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder, and except as

otherwise provided, a Ballot will be deemed delivered only when the Solicitation Agent actually receives the executed Ballot.

d. An executed Ballot is required to be submitted by the entity submitting such Ballot. Subject to the other procedures and requirements herein, completed, executed Ballots may be submitted to the Solicitation Agent via the Solicitation Agent's E-Ballot system at https://kccllc.net/proterra. However, Ballots submitted by electronic mail or facsimile will not be valid and will not be counted by the Solicitation Agent.

e. No Ballot should be sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), the Debtors' financial or legal advisors, and any Ballot so sent will not be counted.

f. If multiple Ballots are received from the same holder with respect to the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior Ballot.

g. Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted. Further, to the extent there are multiple Claims within the same Class filed by the same holder, the Debtors may, in their discretion, aggregate the Claims of any particular holder within a Class for the purpose of counting votes.

h. A person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a holder of Claims must indicate such capacity when signing and, if required, or requested by KCC, the Debtors, or the Court, must submit evidence satisfactory to the requesting party to act on behalf of the holder of the Claim.

i. Subject to any contrary order of the Court, the Debtors, in consultation with the Committee, further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. KCC, in its discretion, may contact entities entitled to vote to cure any defects in the Ballot; provided, however, that KCC is not obligated to do so.

j.      Unless waived or otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted.

k.      In the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected.

l.      If a Claim has been estimated or otherwise Allowed for voting purposes only by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution.

m.      If an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein.

n.      After the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors, in consultation with the Committee.

o.      The Debtors, in consultation with the Committee, are authorized to enter into stipulations with the holder of any Claim agreeing to the amount of a Claim for voting purposes.

p.      Where any portion of a single Claim has been transferred to a transferee, the holders of any portion of such single Claim will be: (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other voting and solicitation procedures set forth herein); and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan.  In the event that:  (i) a Ballot; (ii) a group of Ballots within a Voting Class received from a single creditor; or (iii) a group of Ballots received from the various holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots shall not be counted.

q.      Claims filed for $0.00 are not entitled to vote.

r.      Creditors with claims that have been indefeasibly paid, in full or in part, shall only be permitted to vote the unpaid amount of that Claim, if any, to accept or reject the Plan.

s.      Duplicate Claims within the Voting Classes will be deemed temporarily allowed for voting purposes only in an amount equal

to one of those Claims and not in an amount equal to the aggregate of those Claims.

t.    Creditors will not be entitled to vote Claims to the extent their Claims have been superseded and/or amended by other Claims filed by or on behalf of such creditors, regardless of whether the Debtor has objected to the earlier filed Claim.

u.    If a proof of claim is filed that is based solely on a Holder's equity Interests or the losses thereto, such Holder will be classified as a Class 8  or Class 9 claimant and such Claim will be treated in accordance with Class 8 or Class 9 and not entitled to vote.

v.    For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in one of the Voting Classes will be aggregated as if that creditor held one claim in such Voting Class, and the votes related to those Claims will be treated as a single vote to accept or reject the Plan.

w.    The holder of a Claim must complete each section of the Ballot, including, without limitation, certifying the amount of its Claim, voting to accept or reject the Plan, completing the requested identification information, and signing and dating the Ballot.

x.    The following Ballots shall not be counted in determining the acceptance or rejection of the Plan:

i.    any Ballot that is illegible or contains insufficient information to permit the identification of the holder of such Claim;

ii.    any Ballot that (a) does not indicate an acceptance or rejection of the Plan, (b) indicates both an acceptance and rejection of the Plan, and/or (c) partially accepts and partially rejects the Plan;

iii.    any Ballot cast by a person who does not hold, or represent a person that holds, a Claim in a Voting Class as of the Voting Record Date, or who otherwise is not entitled to vote pursuant to the procedures described herein;

iv.    any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed;

v.    any Ballot received after the Voting Deadline unless the Debtors, in consultation with the Committee, have granted an extension in writing (including e-mail) with respect to

such Ballot. The Holder of a Claim may choose the method of delivery of its Ballot to the Solicitation Agent at its own risk. Delivery of the Ballot will be deemed made only when the original properly executed Ballot is actually received by the Solicitation Agent;

vi.   any Ballot delivered by facsimile transmission, electronic mail, or any other means not specifically approved herein, provided that Ballots submitted through the E-Ballot will be counted;

vii.  any Ballot submitted to the Debtors or any person, entity, or agent of the Debtors other than the Solicitation Agent; and

viii. any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot cast via the Debtors' online "E-Ballot" submission portal will be deemed to have an original signature).

**Amendments to the Plan and Solicitation and Voting Procedures**

17.   The Debtors, in consultation with the Committee, reserve the right to make changes to the Disclosure Statement, Plan, Confirmation Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Cover Letter, Solicitation and Voting Procedures, Plan Cure Notice, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

**<u>Exhibit 3-A</u>**

**Form of Class 4 Ballot**

(Second Lien Convertible Notes)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11
PLAN OF REORGANIZATION FOR PROTERRA INC AND ITS DEBTOR AFFILIATE**

---

**THIRD-PARTY RELEASE**

**PLEASE BE ADVISED THAT <u>ARTICLE IX</u> OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING THOSE SET FORTH BELOW.**

**<u>ARTICLE IX</u> CONTAINS A THIRD-PARTY RELEASE. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN <u>ARTICLE IX</u> OF THE PLAN AS YOUR RIGHTS MAY BE AFFECTED.**

---

**HOLDERS OF CLASS 4 SECOND LIEN CONVERTIBLE NOTES CLAIMS SHOULD READ THIS ENTIRE BALLOT BEFORE COMPLETING.**

**PLEASE COMPLETE, DATE, AND SIGN THE BALLOT AND RETURN IT TO THE SOLICITATION AGENT IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE, BY FIRST CLASS MAIL, OVERNIGHT COURIER, HAND DELIVERY, OR VIA ELECTRONIC BALLOT.**

**YOUR VOTE MUST BE ACTUALLY RECEIVED BY THE SOLICITATION**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

> **AGENT ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE "VOTING DEADLINE").**
>
> **The boxes to accept or reject the Plan and to exercise your right with respect to the third-party releases are contained on page 3 of this Ballot.**

Proterra Inc and Proterra Operating Company, Inc. (together, the "Debtors") in the above-captioned Chapter 11 Cases, are soliciting votes with respect to the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan"). The Bankruptcy Court for the District of Delaware (the "Court") has approved that certain *First Amended Disclosure Statement for Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [●] (the "Disclosure Statement Order"). Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court. Capitalized terms used but not otherwise defined herein shall have the same meanings set forth in the Plan.

You are receiving this Class 4 Ballot because you were a Holder of a Class 4 Claim as of January 18, 2024 (the "Voting Record Date"). Under the terms of the Plan, Holders of Class 4 Claims are entitled to vote to accept or reject the Plan. The boxes to accept or reject the Plan and to exercise rights on third party releases are contained on page 3 of this Ballot.

> **Included in Item 2 of this Class 4 Ballot is an Opt-Out Form related to the releases by Holders of Claims set forth in Article IX of the Plan. You are deemed to have consented to the releases by Holders of Claims unless you (a) either vote to "REJECT" or do not vote on the Plan; and (b) check the Release Opt-Out box under Item 2 of this Ballot, and complete the Certification in Item 4 of this Ballot, and return this Ballot so that it is actually received no later than the Voting Deadline, or timely File an objection to the releases by Holders of Claims. If you vote to "ACCEPT" the Plan, you are deemed to consent to the releases by Holders of Claims unless you timely file an objection to the Plan that is not resolved prior to confirmation, or file on the docket any pleading evidencing support for any such objection or objector.**

Your rights are further described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 4 Ballot. If you need to obtain additional Solicitation Packages, you may obtain them (at the Debtors' expense) by (a) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International); (b) visiting the Debtors' restructuring website at: https://www.kccllc.net/proterra; (c) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300 El Segundo, CA 90245; and/or (d) emailing via www.kccllc.net/proterra/inquiry (with "Proterra Solicitation" in the inquiry) and requesting paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense). You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, opting out of the Releases by Holders of Claims, and making certain

certifications with respect to the Plan.  If you believe you have received this Class 4 Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately at the address, or telephone number set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class 4 under the Plan.  If you hold Claims in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.  If the Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

**Item 1. Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of a Class 4 Claim in the following aggregate unpaid principal amount (insert amount in box below):

| |
|---|
| Amount of Claim: $ _____ |

**Item 2. Vote on Plan.**

The Holder of the Class 4 Claim set forth in Item 1 votes to (please check only <u>one</u> box):

| |
|---|
| ☐ **ACCEPT** (vote FOR) the Plan          ☐ **REJECT** (vote AGAINST) the Plan |

**IMPORTANT INFORMATION REGARDING THE THIRD PARTY RELEASE IN ARTICLE IX OF THE PLAN:**

**IF YOU ARE A "RELEASED PARTY" OR YOU VOTE TO ACCEPT THE PLAN OR DO NOT OTHERWISE OPT-OUT, YOU SHALL BE A "RELEASING PARTY" UNDER THE PLAN, AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE PROVISIONS CONTAINED IN THE PLAN.  YOUR DECISION ON THIS ELECTION DOES NOT AFFECT THE AMOUNT OF DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

| |
|---|
| The Holder of the Class 4 Claim against the Debtors set forth in Item 1 elects to: <br><br> ☐ **OPT OUT** of the Third Party Release set forth in Article IX.C of the Plan |

~~(If you do not check the Opt-Out Box above, you will be deemed to consent to giving the Third Party Release provided in Article IX.C of the Plan)~~

## Item 3. The Plan Includes Certain Release Provisions.

To provide additional information regarding the Third Party Release, the following sections of the Plan have been copied immediately below: Article I.A. (definition of Related Party), Article I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), **Article IX.C (Releases by the Releasing Parties)**, Article IX.D (Exculpation), and Article IX.E (Non-Discharge of the Debtors; Injunction).[2]   To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following:

(a)    Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it:  (a) elects to opt out of the releases contained in the Plan, (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector, or (c) is an LG Party.

(b)    Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims and Interests who are Unimpaired under the Plan, (i) with respect to each of the foregoing Persons, in clauses (a) through (h), each of their Affiliates, and (j) with respect to each of the foregoing Persons in clauses (a) through (i), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such; provided that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector**.**

---

[2]    Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

      (c)     Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement**

of fees and expenses in accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; or (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.**

## Item 4. Certifications

By Signing this Ballot, the undersigned certifies to the Court and the Debtors:

1.      that as of the Voting Record Date, the undersigned is either: (a) the Holder of the Class 4 Claim(s) (Second Lien Convertible Notes) being voted or (b) an authorized signatory for the Holder of the Class 4 Claim(s) (Second Lien Convertible Notes) being voted;

2.      that it has received the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

3.      that it has cast the same vote with respect to all Class 4 Claims (Second Lien Convertible Notes) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

4.      that no other Ballots with respect to the amount of the Class 4 (Second Lien Convertible Notes) Claim(s) identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim(s), then any such Ballots dated earlier are hereby revoked;

5.      it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 4 Claim(s) (Second Lien Convertible Notes) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

6.      that it understands and, if accepting the Plan, agrees with the treatment provided under the Plan for the Claim(s) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

7.      that it understands that, if it casts a vote to accept the Plan~~, or votes "no" on~~ and does not timely file an objection to the Plan or file on the docket a pleading evidencing support for any such objection or objector; or votes to reject the Plan or does not vote either to accept or reject the Plan, and does not complete the Opt-Out Form in Item 2 or timely file an objection to the releases by Holders of Claims, it or the Holder on whose behalf it is submitting this Ballot, as applicable, shall be a "Releasing Party" under the Plan (unless such Holder is already a "Releasing Party" by virtue of being a "Released Party");

8.      that it acknowledges and understands that (a) if no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class and (b) any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily allowed by the Court as of the date of the Confirmation Hearing may be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code; and

9.      that it acknowledges and agrees that the Debtors, in consultation with the Committee, may make conforming changes to the Plan to the extent provided by Bankruptcy Rule 3019 as may be reasonably necessary and that the Debtors will not re-solicit acceptances or rejections      of      the      Plan      in      the      event      of      such      conforming      changes.

Name of Holder: _____

Signature: _____

Name of Signatory (If other than Holder)[3]: _____

Title: _____

Address: _____

_____

_____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT
AND RETURN IT PROMPTLY IN ACCORDANCE WITH
ONE OF THE APPROVED SUBMISSION METHODS
DESCRIBED ABOVE. YOUR BALLOT MUST BE
ACTUALLY RECEIVED BY THE VOTING DEADLINE,
WHICH IS FEBRUARY 27, 2024 AT 4:00 PM (ET)**

---

[3]    If you are completing this Ballot on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing.  You may be required to provide additional information or documentation with respect to such relationship.

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT IN THE PROVIDED RETURN ENVELOPE *PROMPTLY* VIA FIRST CLASS
MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

| <u>If by First Class Mail:</u> | <u>If by Overnight Courier or Hand Delivery:</u> |
|---|---|
| Proterra Ballot Processing Center<br>c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 | Proterra Ballot Processing Center<br>c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 |

**PLEASE SELECT JUST ONE OPTION TO VOTE.
EITHER RETURN A PROPERLY EXECUTED PAPER BALLOT WITH YOUR VOTE**

<u>**OR**</u>

**IF COMPLETING AND SUBMITTING THIS BALLOT BY USING THE eBALLOT
PLATFORM**, You will need the following information to retrieve and submit your customized eBallot:

https://www.kccllc.net/proterra

Unique eBallot ID#: _____

      PIN#: _____

    Holders of Claims who cast an eBallot should NOT also submit a paper ballot.

IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT BY
FEBRUARY 27, 2024 AT 4:00 PM (ET) (AND IF THE VOTING DEADLINE IS NOT
EXTENDED), YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED
TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE
DEBTORS, IN CONSULTATION WITH THE COMMITTEE.

**Instructions for Completing Ballots**

1.      The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan or the Disclosure Statement Order, as applicable.

**2.      The Court may confirm the Plan and thereby bind you by the terms of the Plan.  Please review the Disclosure Statement for more information.**

3.      KCC's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.  To have your vote counted, you must electronically complete, sign, and return a customized electronic Ballot by utilizing the E-Ballot on KCC's website, http://www.kccllc.net/proterra.  Your Ballot must be received by KCC no later than the Voting Deadline, unless such time is extended by the Debtors.

**HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT.**

4.      If you prefer to return a hard copy of your Ballot, you may return it in the enclosed preaddressed, postage prepaid envelope or via first class mail, overnight courier, or hand delivery to:

<div align="center">

Proterra Ballot Processing Center
c/o Kurtzman Carson Consultants LLC
222 N. Pacific Coast Highway
Suite 300
El Segundo, CA 90245

</div>

5.      To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) sign and return the Ballot to the address set forth on the enclosed pre-addressed envelope or by a method provided herein.  The Voting Deadline for the receipt of Ballots by KCC is February 27, 2024 at 4:00 PM (ET).  Your completed Ballot must be actually received by KCC on or before the Voting Deadline.

6.      Except as otherwise provided herein or unless waived by the Debtors or permitted by order of the Court, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtors shall reject such Ballot as invalid and, therefore, decline to count it in connection with confirmation of the Plan.

7.      If you cast more than one Ballot voting the same Claim(s) before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect your intent and, thus, shall be deemed supersede any prior Ballot. If you simultaneously cast inconsistent Ballots, such Ballots will not be counted.

8.      If you cast a Ballot that is properly completed, executed and timely returned to KCC but that does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

9.      If you cast a Ballot that is properly completed, executed, and timely returned to KCC but that indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

10.     You shall be deemed to have voted the full amount of your Claim and shall not be entitled to split your vote within a particular Class.  Any Ballot that partially accepts and partially rejects the Plan will not be counted.

11. The following Ballots shall not be counted:

   a.   any Ballot that is illegible or contains insufficient information to permit the identification of the Holder;

   b.   any Ballot that (i) does not indicate an acceptance or rejection of the Plan, (ii) indicates both an acceptance and rejection of the Plan, and/or (iii) partially accepts and partially rejects the Plan;

   c.   any Ballot cast by a person who does not hold, or represent a person that holds, a Claim in a Voting Class as of the Voting Record Date, or who otherwise is not entitled to vote pursuant to the procedures described herein;

   d.   any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed;

   e.   any Ballot received after the Voting Deadline unless the Debtors, in consultation with the Committee, have granted an extension in writing (including e-mail) with respect to such Ballot.  The Holder of a Claim may choose the method of delivery of its Ballot to KCC at its own risk. Delivery of the Ballot will be deemed made only when the original properly executed Ballot is actually received by KCC;

   f.   any Ballot delivered by facsimile transmission, electronic mail, or any other means not specifically approved herein, provided that Ballots submitted through the E-Ballot will be counted;

   g.   any Ballot submitted to the Debtors or any person, entity, or agent of the Debtors other than KCC; and

   h.   any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot cast via the Debtors' online "E-Ballot" submission portal will be deemed to have an original signature).

12.     If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by

KCC, the Debtors, or the Court, you must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, you should provide their name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

13.    The Debtors, subject to contrary order of the Court, may waive any defect or irregularity as to any particular Ballot at any time, either before or after the close of voting, and any such waiver shall be documented in the Voting Declaration.

14.    Neither the Debtors, KCC, nor any other entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Declaration, nor will any of them incur any liability for failure to provide such notification.

15.    Unless waived by the Debtors, in consultation with the Committee, subject to contrary order of the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted.

16.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claim, and neither the Debtors nor KCC will accept delivery of any such certificates or instruments surrendered together with a Ballot.

17.    This Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim or (b) an assertion or admission of a Claim.

18.    If you believe you have received the wrong Ballot, you should contact KCC immediately by calling or emailing at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or ProterraInfo@kccllc.com (with "Proterra Inc Ballots" in the subject line).

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT KCC BY CALLING OR EMAILING AT (888) 251-3076 (USA OR CANADA, TOLL-FREE) OR +1 (310) 751-2617 (INTERNATIONAL) OR PROTERRAINFO@KCCLLC.COM**

**<u>Exhibit 3-B</u>**

**Form of Class 5 Ballot**

(General Unsecured Claims)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE CHAPTER 11 PLAN**
**OF REORGANIZATION FOR PROTERRA INC AND ITS DEBTOR AFFILIATE**

---

**THIRD-PARTY RELEASE**

**PLEASE BE ADVISED THAT <u>ARTICLE IX</u> OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING THOSE SET FORTH BELOW.**

**<u>ARTICLE IX</u> CONTAINS A THIRD-PARTY RELEASE.  YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN <u>ARTICLE IX</u> OF THE PLAN AS YOUR RIGHTS MAY BE AFFECTED.**

---

**HOLDERS OF CLASS 5 GENERAL UNSECURED CLAIMS SHOULD READ THIS ENTIRE BALLOT BEFORE COMPLETING.**

**PLEASE COMPLETE, DATE, AND SIGN THE BALLOT AND RETURN IT TO THE SOLICITATION AGENT IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE, BY FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY, OR VIA ELECTRONIC BALLOT.**

**YOUR VOTE MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

---

**"VOTING DEADLINE").**

**The boxes to accept or reject the Plan and to exercise your right with respect to the third-party releases are contained on page 3 of this Ballot.**

---

Proterra Inc, as debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case, is soliciting votes with respect to the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan"). The Bankruptcy Court for the District of Delaware (the "Court") has approved that certain *First Amended Disclosure Statement for Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [●] (the "Disclosure Statement Order"). Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court. Capitalized terms used but not otherwise defined herein shall have the same meanings set forth in the Plan.

You are receiving this Class 5 Ballot because you were a Holder of a Class 5 Claim as of January 18, 2024 (the "Voting Record Date"). Under the terms of the Plan, Holders of Class 5 Claims are entitled to vote to accept or reject the Plan. The boxes to accept or reject the Plan and to exercise rights on third party releases are contained on page 3 of this Ballot.

---

**Included in Item 2 of this Class 5 Ballot is an Opt-Out Form related to the releases by Holders of Claims set forth in Article IX of the Plan. You are deemed to have consented to the releases by Holders of Claims unless you (a) either vote to "REJECT" or do not vote on the Plan; and (b) check the Release Opt-Out box under Item 2 of this Ballot, and complete the Certification in Item 4 of this Ballot, and return this Ballot so that it is actually received no later than the Voting Deadline, or timely File an objection to the releases by Holders of Claims. If you vote to "ACCEPT" the Plan, you are deemed to consent to the releases by Holders of Claims unless you timely file an objection to the Plan that is not resolved prior to confirmation, or file on the docket any pleading evidencing support for any such objection or objector.**

---

Your rights are further described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Class 5 Ballot. If you need to obtain additional Solicitation Packages, you may obtain them (at the Debtors' expense) by (a) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International); (b) visiting the Debtors' restructuring website at: https://www.kccllc.net/proterra; (c) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300 El Segundo, CA 90245; and/or (d) emailing via www.kccllc.net/proterra/inquiry (with "Proterra Solicitation" in the inquiry) and requesting paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense). You may also obtain copies of any pleadings filed in this Chapter 11 Case for a fee via PACER at: http://www.deb.uscourts.gov.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, opting out of the Releases by Holders of Claims, and making certain

2

certifications with respect to the Plan.  If you believe you have received this Class 5 Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately at the address, or telephone number set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class 5 under the Plan. If you hold Claims in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.  If the Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

**Item 1. Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of a Class 5 Claim(s) in the following aggregate unpaid principal amount (insert amount in box below):

| |
|---|
| Amount of Claim: $ _____ |

**Item 2. Vote on Plan.**

The Holder of the Class 5 Claim set forth in Item 1 votes to (please check only <u>one</u> box):

| |
|---|
| ☐ **ACCEPT** (vote FOR) the Plan          ☐ **REJECT** (vote AGAINST) the Plan |

**IMPORTANT INFORMATION REGARDING THE THIRD PARTY RELEASE IN ARTICLE IX OF THE PLAN:**

IF YOU ARE A "RELEASED PARTY" OR YOU VOTE TO ACCEPT THE PLAN OR DO NOT OTHERWISE OPT-OUT, YOU SHALL BE A "RELEASING PARTY" UNDER THE PLAN, AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE PROVISIONS CONTAINED IN THE PLAN. YOUR DECISION ON THIS ELECTION DOES NOT AFFECT THE AMOUNT OF DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.

| |
|---|
| The Holder of the Class 5 Claim against the Debtors set forth in Item 1 elects to: |
| ☐ **OPT OUT** of the Third Party Release set forth in Article IX.C of the Plan |

<div style="border: 1px solid black; padding: 10px;">

~~(If you do not check the Opt-Out Box above, you will be deemed to consent to giving the Third Party Release provided in Article IX.C of the Plan)~~

</div>

## Item 3. The Plan Includes Certain Release Provisions.

To provide additional information regarding the Third Party Release, the following sections of the Plan have been copied immediately below: Article I.A. (definition of Related Party), Article I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), **Article IX.C (Releases by the Releasing Parties)**, Article IX.D (Exculpation), and Article IX.E (Non-Discharge of the Debtors; Injunction).[2]  To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following:

(a)    Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it:  (a) elects to opt out of the releases contained in the Plan, (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector, or (c) is an LG Party.

(b)    Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims and Interests who are Unimpaired under the Plan, (i) with respect to each of the foregoing Persons, in clauses (a) through (h), each of their Affiliates, and (j) with respect to each of the foregoing Persons in clauses (a) through (i), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such; provided that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector**.**

---

[2]    Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

(c)    Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement**

of fees and expenses in accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; or (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.**

## Item 4. Certifications

By Signing this Ballot, the undersigned certifies to the Court and the Debtor:

1.     that as of the Voting Record Date, the undersigned is either: (a) the Holder of the Class 5 Claim(s) (General Unsecured Claims) being voted or (b) an authorized signatory for the Holder of the Class 5 Claim(s) (General Unsecured Claims) being voted;

2.     that it has received the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

3.     that it has cast the same vote with respect to all Class 5 Claims (General Unsecured Claims) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

4.     that no other Ballots with respect to the amount of the Class 5 (General Unsecured Claims) Claim(s) identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim(s), then any such Ballots dated earlier are hereby revoked;

5.     it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 5 Claim(s) (General Unsecured Claims) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

6.     that it understands and, if accepting the Plan, agrees with the treatment provided under the Plan for the Claim(s) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

7.     that it understands that, if it casts a vote to accept the Plan and does not timely file an objection to the Plan, or file on the docket any pleading evidencing support for any such objection or objector; or votes no onto reject the Plan or does not vote either to accept or reject the Plan, and does not complete the Opt-Out Form in Item 2 or timely file an objection to the releases by Holders of Claims, it or the Holder on whose behalf it is submitting this Ballot, as applicable, shall be a "Releasing Party" under the Plan (unless such Holder is already a "Releasing Party" by virtue of being a "Released Party");

8.     that it acknowledges and understands that (a) if no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class and (b) any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily allowed by the Court as of the date of the Confirmation Hearing may be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code; and

9.    that it acknowledges and agrees that the Debtors, in consultation with the Committee, may make conforming changes to the Plan to the extent provided by Bankruptcy Rule 3019 as may be reasonably necessary and that the Debtors will not re-solicit acceptances or rejections of the Plan in the event of such conforming changes.

Name of Holder: _____

Signature: _____

Name of Signatory (If other than Holder)[3]: _____

Title: _____

Address: _____

_____

_____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT
AND RETURN IT PROMPTLY IN ACCORDANCE WITH
ONE OF THE APPROVED SUBMISSION METHODS
DESCRIBED ABOVE. YOUR BALLOT MUST BE
ACTUALLY RECEIVED BY THE VOTING DEADLINE,
WHICH IS FEBRUARY 27, 2024 AT 4:00 PM (ET)**

---

[3]    If you are completing this Ballot on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing.  You may be required to provide additional information or documentation with respect to such relationship.

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT IN THE PROVIDED RETURN ENVELOPE *PROMPTLY* VIA FIRST CLASS
MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

| <u>If by First Class Mail:</u> | <u>If by Overnight Courier or Hand Delivery:</u> |
|---|---|
| Proterra Ballot Processing Center<br>c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 | Proterra Ballot Processing Center<br>c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 |

**PLEASE SELECT JUST ONE OPTION TO VOTE.
EITHER RETURN A PROPERLY EXECUTED PAPER BALLOT WITH YOUR VOTE**

**<u>OR</u>**

**IF COMPLETING AND SUBMITTING THIS BALLOT BY USING THE eBALLOT
PLATFORM**, You will need the following information to retrieve and submit your customized eBallot:

https://www.kccllc.net/proterra

Unique eBallot ID#: _____

      PIN#: _____

    Holders of Claims who cast an eBallot should NOT also submit a paper ballot.

> IF THE SOLICITATION AGENT DOES NOT ***ACTUALLY RECEIVE*** THIS BALLOT BY
> FEBRUARY 27, 2024 AT 4:00 PM (ET) (AND IF THE VOTING DEADLINE IS NOT
> EXTENDED), YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED
> TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE
> DEBTOR.

**<u>Instructions for Completing Ballots</u>**

1.      The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as **<u>Exhibit A</u>** to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions (the "<u>Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meaning set forth in the Plan or the Disclosure Statement Order, as applicable.

**2.      The Court may confirm the Plan and thereby bind you by the terms of the Plan.  Please review the Disclosure Statement for more information.**

3.      KCC's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted. To have your vote counted, you must electronically complete, sign, and return a customized electronic Ballot by utilizing the E-Ballot on KCC's website, http://www.kccllc.net/proterra.  Your Ballot must be received by KCC no later than the Voting Deadline, unless such time is extended by the Debtor.

**HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT.**

4.      If you prefer to return a hard copy of your Ballot, you may return it in the enclosed preaddressed, postage prepaid envelope or via first class mail, overnight courier, or hand delivery to:

<div align="center">

Proterra Ballot Processing Center
c/o Kurtzman Carson Consultants LLC
222 N. Pacific Coast Highway
Suite 300
El Segundo, CA 90245

</div>

5.      To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) sign and return the Ballot to the address set forth on the enclosed pre-addressed envelope or by a method provided herein.  The Voting Deadline for the receipt of Ballots by KCC is February 27, 2024 at 4:00 PM (ET).  Your completed Ballot must be actually received by KCC on or before the Voting Deadline.

6.      Except as otherwise provided herein or unless waived by the Debtors or permitted by order of the Court, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtors shall reject such Ballot as invalid and, therefore, decline to count it in connection with confirmation of the Plan.

7.      If you cast more than one Ballot voting the same Claim(s) before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect your intent and, thus, shall be deemed supersede any prior Ballot.  If you simultaneously cast inconsistent Ballots, such Ballots will not be counted.

8.      If you cast a Ballot that is properly completed, executed and timely returned to KCC but that does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

9.      If you cast a Ballot that is properly completed, executed, and timely returned to KCC but that indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

10.     You shall be deemed to have voted the full amount of your Claim and shall not be entitled to split your vote within a particular Class.  Any Ballot that partially accepts and partially rejects the Plan will not be counted.

11. The following Ballots shall not be counted:

   a.   any Ballot that is illegible or contains insufficient information to permit the identification of the Holder;

   b.   any Ballot that (i) does not indicate an acceptance or rejection of the Plan, (ii) indicates both an acceptance and rejection of the Plan, and/or (iii) partially accepts and partially rejects the Plan;

   c.   any Ballot cast by a person who does not hold, or represent a person that holds, a Claim in a Voting Class as of the Voting Record Date, or who otherwise is not entitled to vote pursuant to the procedures described herein

   d.   any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed;

   e.   any Ballot received after the Voting Deadline unless the Debtors have granted an extension in writing (including e-mail) with respect to such Ballot.  The Holder of a Claim may choose the method of delivery of its Ballot to KCC at its own risk.  Delivery of the Ballot will be deemed made only when the original properly executed Ballot is actually received by KCC;

   f.   any Ballot delivered by facsimile transmission, electronic mail, or any other means not specifically approved herein, provided that Ballots submitted through the E-Ballot will be counted;

   g.   any Ballot submitted to the Debtors or any person, entity, or agent of the Debtors other than KCC; and

   h.   any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot cast via the Debtors' online "E-Ballot" submission portal will be deemed to have an original signature).

12.     If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by

KCC, the Debtors, or the Court, you must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, you should provide their name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

13.     The Debtors, in consultation with the Committee, subject to contrary order of the Court, may waive any defect or irregularity as to any particular Ballot at any time, either before or after the close of voting, and any such waiver shall be documented in the Voting Declaration.

14.     Neither the Debtors, KCC, nor any other entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Declaration, nor will any of them incur any liability for failure to provide such notification.

15.     Unless waived by the Debtors, subject to contrary order of the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted.

16.     The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claim, and neither the Debtors nor KCC will accept delivery of any such certificates or instruments surrendered together with a Ballot.

17.     This Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim or (b) an assertion or admission of a Claim.

18.     If you believe you have received the wrong Ballot, you should contact KCC immediately by calling or emailing at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or ProterraInfo@kccllc.com (with "Proterra Inc Ballots" in the subject line).

**PLEASE SUBMIT YOUR BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT KCC BY CALLING OR EMAILING AT (888) 251-3076 (USA OR CANADA, TOLL-FREE) OR +1 (310) 751-2617 (INTERNATIONAL) OR PROTERRAINFO@KCCLLC.COM**

## **Exhibit 4-A**

**Form of Notice of Non-Voting Status for Unimpaired Classes**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
|  | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |

**NOTICE OF NON-VOTING STATUS OF HOLDERS OF**
**UNIMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN**

      **PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

      **PLEASE TAKE FURTHER NOTICE** that, because of the nature and treatment of your Claim under the Plan, **you are not entitled to vote on the Plan**. Specifically, under the terms of the Plan, as a holder of a Claim (as currently asserted against the Debtors) that is not Impaired and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are **not** entitled to vote on the Plan.

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024** at **10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing objections to the Plan is **February 27, 2024 at 4:00 PM (ET)** (the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually** **received** on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind, Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>- and -<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** | |

2

| |
|---|
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br><br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com |
| **U.S. Trustee** |
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey |

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.


*[Remainder of Page Intentionally Left Blank]*

3

Dated:     [Month DD, YYYY]        Respectfully submitted,
         Wilmington, Delaware       **YOUNG CONAWAY STARGATT &**
                              **TAYLOR, LLP**

[  ]_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
        amagaziner@ycst.com
        sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:   (212) 757-3990
Email: pbasta@paulweiss.com
       rbritton@paulweiss.com
       mcolarossi@paulweiss.com

*Counsel to the Debtors and*
*Debtors in Possession*

4

**<u>Exhibit 4-B</u>**

**Form of Notice of Non-Voting Status for Impaired Classes**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|                                        |     |                              |
| -------------------------------------- | --- | ---------------------------- |
| In re:                                 | )   | Chapter 11                   |
|                                        | )   |                              |
| PROTERRA INC, *et al.*,[1]             | )   | Case No. 23-11120 (BLS)      |
|                                        | )   |                              |
| Debtors.                               | )   | (Jointly Administered)       |
|                                        | )   |                              |
|                                        | )   |                              |
|                                        | )   |                              |
|                                        | )   |                              |
|                                        | )   |                              |

**NOTICE OF NON-VOTING STATUS OF HOLDERS OF**
**IMPAIRED CLAIMS OR INTERESTS DEEMED TO REJECT THE PLAN**

**PLEASE TAKE NOTICE THAT THE PLAN CONTAINS A SERIES OF RELEASES.  NON-VOTING HOLDERS OF IMPAIRED CLAIMS OR INTERESTS SHOULD BE AWARE THAT, IF THE PLAN IS CONFIRMED and if the Effective Date occurs, the Released Parties, as defined in Article I.A. of the Plan and as reproduced in paragraph (b) of the attached optional opt-out release form, will be receiving releases from the Debtors, their estates, and other "Releasing Parties" (as defined in Article I.A. of the Plan and reproduced in paragraph (c) of the attached opt-out release form), and will benefit from an injunction as set forth in Article IX.E or IX.F of the Plan and as further described in Article V of the Disclosure Statement.  Pursuant to Article I.A. of the Plan, and as reproduced in paragraph (c) of the attached optional opt-out election form, the definition of "Releasing Parties" granting the third party release described in Article IX.C of the Plan provides that a Holder of Claims or Interests may not be a Releasing Party if it either (a) elects to opt out of the releases contained in Article IX.C of the Plan, or (b) timely files with the Court on the docket of the Chapter 11 Case an objection to the releases contained in Article IX.C of the Plan that is not resolved before Confirmation.**

**PLEASE TAKE FURTHER NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b)

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE** that, because of the nature and treatment of your Claim under the Plan, **you are not entitled to vote on the Plan**. Specifically, under the terms of the Plan, as a holder of a Claim (as currently asserted against the Debtors) that is not Impaired and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are **not** entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing objections to the Plan is **February 27, 2024 at 4:00 PM (ET)** (the "Plan Objection Deadline"). All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
|  |  |

| | |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,**<br>**Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and<br>Michael J. Colarossi<br>Email: pbasta@paulweiss.com,<br>rbritton@paulweiss.com,<br>mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L.<br>Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com,<br>amagaziner@ycst.com,<br>sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** ||
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br><br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com ||
| **U.S. Trustee** ||
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey ||

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors'

restructuring website at https://www.kccllc.net/proterra.   You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

[*Remainder of Page Intentionally Left Blank*]

Dated:   [Month DD, YYYY]
        Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

[   ]_____

Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
       amagaziner@ycst.com
       sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
       rbritton@paulweiss.com
       mcolarossi@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## OPT-OUT ELECTION FORM

### IMPAIRED NON-VOTING STATUS CLAIMS OR INTERESTS

**Important Information Regarding the Release by Certain Holders of Claims**

To provide additional information regarding the third party releases, the following sections of the Plan have been copied immediately below: I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), **Article IX.C (Releases by the Releasing Parties)**.[2] To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control. Please carefully review the following.

(a) Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it: (a) elects to opt out of the releases contained in the Plan, (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector, or (c) is an LG Party.

(b) Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f)

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims and Interests who are Unimpaired under the Plan, (i) with respect to each of the foregoing Persons, in clauses (a) through (h), each of their Affiliates, and (j) with respect to each of the foregoing Persons in clauses (a) through (i), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such; provided that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector.

(c)    Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of**

property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair: (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in  accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; or (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not

know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.

If you wish to opt-out of being a "Releasing Party" under Article IX.C of the Plan, please check the following box and complete this form. Your decision on this election does not affect the amount of distribution you will receive under the Plan.

| |
|---|
| The undersigned elects to: |
| ☐ **OPT OUT** of the Third Party Release set forth in Article IX.C of the Plan |
| ~~(If you do not check the Opt-Out Box above, you will be deemed to consent to giving the Third Party Release provided in Article IX.C of the Plan)~~ |

| | |
|---|---|
| Name of Holder: | Address: |
| Signature: | Telephone Number: |
| Name of Signatory: | Email: |
| Title: | Date Completed: |

**IF YOU WISH TO OPT OUT OF THE THIRD PARTY RELEASES, THE OPT-OUT FORM MUST BE COMPLETED AND SUBMITTED, ON OR BEFORE THE OPT-OUT DEADLINE OF FEBRUARY 27, 2024 AT 4:00 PM (ET), BY <u>ONLY ONE</u> OF THE FOLLOWING APPROVED SUBMISSION METHODS:**

| **First Class Mail, Overnight Courier or Hand-Delivery To:** | **Electronic, online submission:** |
| --- | --- |
| Proterra Ballot Processing Center<br>c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 | To submit your Opt-Out Form via KCC's online portal, please visit: https://kccllc.net/Proterra and click on "Submit E-Ballot" and follow the instructions to submit your Opt-Out Form.<br><br>IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Opt-Out Form:<br><br>Unique                   Opt-Out ID#:_____<br><br>Pin                   #:<br>_____<br><br>KCC's online portal is the sole manner in which Opt-Out Forms will be accepted via electronic or online transmission. Opt-Out Forms submitted by facsimile, email, or other means of electronic transmission will **not** be counted.<br><br>Creditors who submit an Opt-Out Form using KCC's online portal should **NOT** also submit a paper Opt-Out Form.<br><br>If you have any questions, please contact KCC at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or ProterraInfo@kccllc.com. |

**Exhibit 4-C**

**Form of Notice to Disputed Claim Holders**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**NOTICE OF NON-VOTING STATUS WITH RESPECT TO DISPUTED CLAIM
OR INTEREST**

 **PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

 **PLEASE TAKE FURTHER NOTICE** that you are receiving this notice because your Claim(s) against the Debtors is/are subject to a pending objection by the Debtors and therefore, pursuant to the Solicitation Procedures Order and sections 502(a) and 1126(a) of the Bankruptcy Code, **you are not entitled to vote to accept or reject the Plan on account of your Disputed Claim(s) unless one of the following Resolution Events occurs, in any event no later than February 22, 2024, the Resolution Event Deadline (as defined in the Solicitation and Voting Procedures):**

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

(i)     an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

(ii)    an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

(iii)   a stipulation or other agreement is executed between the holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed-upon amount; or

(iv)    the pending objection is voluntarily withdrawn by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that if a Resolution Event occurs, then no later than two (2) business days thereafter, the Solicitation Agent shall distribute a ballot, and a pre-addressed, postage pre-paid envelope to you, which must be returned to the Solicitation Agent no later than the Voting Deadline, which is on F**ebruary 27, 2024** at **4:00 PM (ET)**.

**PLEASE TAKE FURTHER NOTICE** that if you seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), to temporarily allow such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion").  Any party wishing to file a Rule 3018(a) Motion shall have until ten (10) days from the Solicitation Date to file and serve such a motion with respect to any claim as to which there is an objection pending as of the date of the entry of this Order (the "Rule 3018(a) Motion Deadline").  The Debtors and other parties in interest shall have until the date that is ten (10) days prior to the Voting Deadline as the deadline by which the Debtors or parties in interest must file objections to any Rule 3018(a) Motion (the "3018(a) Motion Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if a Holder of a Disputed Claim files a Rule 3018(a) Motion by the Rule 3018(a) Motion Deadline, the Solicitation Agent, at the direction of the Debtors or their counsel, shall send such holder a Solicitation Package, including an applicable Ballot as soon as practicable after such Rule 3018(a) Motion is filed.  A Ballot returned by a Holder of a Disputed Claim to the Solicitation Agent in compliance with the Solicitation Procedures shall only be counted to the extent that a Resolution Event has occurred with respect to the holder's Disputed Claim by the Resolution Event Deadline.

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing objections to the Plan is **February 27, 2024 at 4:00 PM (ET)** (the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously

with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind, Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** | |
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br><br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com | |
| **U.S. Trustee** | |
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey | |

**IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE**

**BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

        **PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT ACCORDING TO THE INSTRUCTIONS ABOVE.**

*[Remainder of Page Intentionally Left Blank]*

Dated:  [Month DD, YYYY]
       Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

[ ]_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
       amagaziner@ycst.com
       sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:  (212) 373-3000
Fax:  (212) 757-3990
Email: pbasta@paulweiss.com
      rbritton@paulweiss.com
      mcolarossi@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

## **Exhibit 5-A**

**Form of Notice & Opt-Out Form:  Beneficial Holders**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PROTERRA INC, *et al.*,[1] | ) | Case No. 23-11120 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**NOTICE TO SHAREHOLDERS
OF RIGHT TO OPT-OUT OF THIRD PARTY RELEASE**

> **You are receiving this notice because you are a shareholder of Proterra Inc (with Proterra Operating Company, Inc., the "<u>Company</u>" or "<u>Debtors</u>").**
>
> **You will not receive any payment on account of your shares in the bankruptcy case, and your shares will be cancelled.**
>
> **The Debtors are seeking court approval for a plan of reorganization and disclosure statement filed as part of their bankruptcy proceeding.**
>
> **Under the plan of reorganization, shareholders will not be entitled to any payment from the Debtors on account of their shares and do not get to vote on the plan of reorganization because shareholders are deemed to reject the plan of reorganization.**
>
> **However, as part of the plan of reorganization, unless shareholders take additional action as described herein, and affirmatively opt-out, shareholders will be deemed to release any and all claims they may have against the Debtors, their officers and directors, certain creditors, and other third parties, all as further described in the Plan.**
>
> **<u>You have the right to opt-out, to avoid releasing claims against these third-parties, the Debtors, and their officers and directors by completing the opt-out form on pages 5–6 of this Notice and returning this form to your nominee. The</u>**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

**applicable definitions of released and releasing parties are also attached to this Notice for your convenience of review.  These Defined Terms control the scope of the Release provisions.**

## I.      Notice of Disclosure Statement, Plan, and Confirmation Hearing

On [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing the Debtors to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

You are receiving this Notice because you are a shareholder of the Company and **do not have the right to vote on the Plan in your capacity as a shareholder** because you are not receiving anything under the Plan.  Any and all your claims against "Released Parties," including the directors and officers of the Debtors, and other creditors and third parties covered by the Defined Terms, will be released **unless** you complete the opt-out form on pages 5–6 of this notice.

The hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

The deadline for filing objections to the Plan is **February 27, 2024 at  4:00 PM (ET)** (the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| **Debtors** | **Counsel to the Debtors** |
| --- | --- |

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

| | |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,**<br>**Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and<br>Michael J. Colarossi<br>Email: pbasta@paulweiss.com,<br>rbritton@paulweiss.com,<br>mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L.<br>Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com,<br>amagaziner@ycst.com,<br>sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** ||
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br><br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com ||
| **U.S. Trustee** ||
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey ||

If you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at

https://www.kccllc.net/proterra.  You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

## II.    Right to Opt-Out of Third Party Release

On the Effective Date of the Plan, the release, injunction, and discharge provisions contained in Article IX of the Plan will become effective.  These provisions are reproduced on pages 9-11 of this notice for ease of reference.  **You may choose to opt-out of the third party release set forth in Article IX.C of the Plan** by completing and returning the two page document that follows (the "Opt-Out Release Form") according to the instructions in this notice. If you do not complete the Opt-Out Release Form, **any and all your claims against "Released Parties," including the directors and officers of the Debtor, will be released**.

**IF YOU WISH TO OPT-OUT OF THE THIRD PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN YOU MUST (1) COMPLETE THE TABLE BELOW FOR YOUR NOMINEE; AND (2) COMPLETE AND RETURN THE OPT-OUT RELEASE FORM TO YOUR NOMINEE BY THE DEADLINE GIVEN BY YOUR NOMINEE.**

| | |
|---|---|
| **Name of Holder:** | _____ |
| | **(Print or Type)** |
| **Social Security or Federal Tax Identification Number:** | _____ |
| **Signature:** | _____ |
| **Name of Signatory:** | _____ |
| | **(If other than Holder)** |
| **Title:** | _____ |
| **Address:** | _____ |
| | _____ |
| | _____ |
| | _____ |
| **Date Completed:** | _____ |

**IF YOU WISH TO OPT OUT OF THE THIRD PARTY RELEASES, THIS OPT-OUT RELEASE FORM MUST BE RETURNED TO YOUR NOMINEES WITH SUFFICIENT TIME TO ALLOW YOUR NOMINEE TO SEND IT TO THE DEBTORS' SOLICITATION AGENT SO THAT IT IS ACTUALLY RECEIVED ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE "RELEASE OPT-OUT DEADLINE").  IF THE FORM FROM YOUR NOMINEE IS RECEIVED AFTER THE RELEASE**

**OPT-OUT DEADLINE, IT WILL NOT BE COUNTED BY THE SOLICITATION AGENT AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN.**

[*Remainder of Page Intentionally Left Blank*]

<u>**OPT-OUT RELEASE FORM**</u>

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Opt-Out for Third Party Release**

By checking this box, the undersigned Holder:

☐ Elects **<u>not</u>** to grant the third party release contained in Article IX.C of the Plan.

(if the Holder does not check this box, any and all claims of the Holder against "Released Parties," including the directors and officers of the Debtor, will be released)

**If you do not wish to give the third party release provided in Article IX.C of the Plan, you must check the Opt-Out box above, and submit this ballot to your nominee by the deadline set forth by your nominee. Your nominee must then return the form so that it is received by the Release Opt-Out Deadline.**

**If you do not check the Opt-Out box above, you will be deemed to consent to giving the third party release provided in Article IX.C of the Plan.**

**Opting out of giving the third party release provided in Article IX.C of the Plan shall not affect whether you receive any payment under the Plan. Holders of Claims and Interests in Class 8 will not receive any payment under the Plan.**

**PLEASE BE ADVISED THAT BY CHECKING THE BOX ABOVE YOU ELECT NOT TO GRANT THE THIRD PARTY RELEASE AGAINST THE "RELEASED PARTIES" AS THAT TERM IS DEFINED IN THE PLAN. <u>YOU MUST AFFIRMATIVELY CHECK THE BOX ABOVE IN ORDER TO OPT-OUT OF THE THIRD PARTY RELEASE.</u>**

PLEASE ALSO BE ADVISED THAT THE DEBTORS RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN IS SEPARATE FROM AND INDEPENDENT OF THE THIRD PARTY RELEASE. IF YOU OBJECT TO THE DEBTORS RELEASE, YOU MUST FILE A SEPARATE OBJECTION WITH THE COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER BY FEBRUARY 27, 2024 AT 4:00 PM (ET).

**Item 2. Certifications**

By signing this Opt-Out Release Form, the undersigned certifies to the Court and the Debtors that:

    i.    the undersigned is a Holder of Claims or Interests;

    ii.    the undersigned has received the Notice to Shareholders Deemed to Reject the Plan of Right to Opt-Out of Third Party Release, and that this Opt-Out Release Form is submitted pursuant to the terms and conditions set forth therein;

iii.   the undersigned has submitted the same election with respect to all of its Claims or Interests; and

iv.   the undersigned has not submitted any other Opt-Out Release Form for its Claims or Interests, or if another form has been previously submitted, such form is revoked.

*[Remainder of page intentionally left blank.]*

_____
Name of Holder

_____
Signature

_____
Name of Signatory and Title

_____
Name of Institution (if different than Holder)

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

### III.    Definitions Applicable to the Release ("Defined Terms")

To provide additional information regarding the third party releases, the following sections of the Plan have been copied immediately below:  I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), **Article IX.C (Releases by the Releasing Parties)**.[1]  To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following.

(a)    Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it:  (a) elects to opt out of the releases contained in the Plan, (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector, or (c) is an LG Party.

(b)    Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims and Interests who are Unimpaired under the Plan, (i) with respect to each of the foregoing Persons, in clauses (a) through (h), each of their Affiliates, and (j) with respect to each of the foregoing Persons in clauses (a) through (i), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such; provided that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector**.**

(c)    Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized**

---

[1]    Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:   (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in  accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; or (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of

**Action**

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.

*[Remainder of Page Intentionally Left Blank]*

17

Dated: [Month DD, YYYY]  Respectfully submitted,
Wilmington, Delaware  **YOUNG CONAWAY STARGATT & TAYLOR, LLP**

[   ]
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
          amagaziner@ycst.com
          sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
          rbritton@paulweiss.com
          mcolarossi@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit 5-B</u>**

**Form of Notice & Opt-Out Form: Master Form**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**NOTICE AND MASTER OPT-OUT FORM FOR
CLASS 8 – DEBTORS' INTERESTS**

**PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

The hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

You are receiving this notice and opt-out form (the "Master Opt-Out Form") because you are a bank, broker, or other financial institution (each, a "Nominee") that holds equity securities in Proterra Inc (the "Debtors' Interests") in "street name" on behalf of a Beneficial Holder[3] of

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

[3]   A "Beneficial Holder" means an entity that beneficially owns Class 7 Debtors' Interests whose claims have not been satisfied prior to the Voting Record Date pursuant to Court order or otherwise, as reflected in the records

such Debtors' Interests as of January 18, 2024 (the "<u>Voting Record Date</u>"), or you are a Nominee's agent.

Pursuant to the terms of the Plan, shareholders in Class 8 are not entitled to receive or retain any recovery under the Plan and, therefore, pursuant to section 1126(g) of the Bankruptcy Code, Beneficial Holders of Class 8 Debtors' Interests are deemed to reject the Plan. Beneficial Holders of Class 8 Debtors' Interests, however, have the right to, subject to the limitations set forth herein, affirmatively opt out of the third party release contained in Article IX.C of the Plan (the "<u>Third-Party Release</u>"), if they so choose. Nominees or their agents should use this Master Opt-Out Form to convey the election of such Beneficial Holders to opt-out of the Third-Party Release.

This Master Opt-Out Form may not be used for any purpose other than conveying their Beneficial Holder clients' elections to opt out of the Third-Party Release. If you believe you have received this Master Opt-Out Form in error, or if you believe that you have received the wrong Master Opt-Out Form, please contact the Solicitation Agent <u>immediately</u> at the address, email address, or telephone number set forth below. Nothing contained herein or in the enclosed documents shall render you or any other entity an agent of the Debtors or the Solicitation Agent or authorize you or any other entity to use any document or make any statements on behalf of any of  with respect to the Plan, except for the statement contained in the documents enclosed herewith.

You are required to distribute the Beneficial Holder Notice and Opt-Out Form contained herewith to your Beneficial Holder clients holding equity Interests in Class 8 Debtors' Interests as of the Voting Record Date within five (5) business days of your receipt of the Solicitation Packages in which this Master Opt-Out Form was included. With respect to the Beneficial Holder Opt-Out Forms returned to you, you must (a) execute this Master Opt-Out Form so as to reflect the Third-Party Release elections set forth in such Beneficial Holder Opt-Out Forms and (b) forward this Master Opt-Out Form to Kurtzman Carson Consultants LLC (the "<u>Solicitation Agent</u>") in accordance with the Master Opt-Out Form Instructions accompanying this Master Opt-Out Form. **Any election delivered to you by a Beneficial Holder shall not be counted unless you complete, sign, and return this Master Opt-Out Form to the Solicitation Agent so that it is actually received by the Opt-Out Deadline.**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS MASTER OPT-OUT FORM CAREFULLY <u>BEFORE</u> COMPLETING THIS MASTER OPT-OUT FORM.

**IF YOU WISH TO OPT OUT OF THE THIRD PARTY RELEASES, THIS MASTER OPT-OUT FORM MUST BE COMPLETED, EXECUTED AND RETURNED SO AS TO BE <u>ACTUALLY RECEIVED</u> BY THE <u>SOLICITATION AGENT</u> ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE "<u>OPT-OUT DEADLINE</u>").**

---

been satisfied prior to the Voting Record Date pursuant to Court order or otherwise, as reflected in the records maintained by the Nominee.

**Item 1**. **Certification of Authority to Make Elections.**

The undersigned certifies that as of the Voting Record Date, the undersigned:

☐ Is a Nominee for the Beneficial Holders in the principal number of Class 8 Debtors' Interests listed in Item 2 below, or

☐ Is acting under a power of attorney or agency (a copy of which will be provided upon request) granted by a Nominee for the Beneficial Holders in the principal number of Class 8 Debtors' Interests listed in Item 2 below, or

☐ Has been granted a proxy (an original of which is attached hereto) from a Nominee for the Beneficial Holders (or the Beneficial Holders itself/themselves) in the principal number of Class 8 Debtors' Interests listed in Item 2 below;

and accordingly, has full power and authority to convey decisions to opt-out of the Third-Party Release, on behalf of the Beneficial Holders of the Class 8 Debtors' Interests described in Item 2.

**Item 2**. **Optional Third-Party Release Election.**

The undersigned certifies that that the information provided below (including any information provided on additional sheets attached hereto) is a true and accurate schedule of the Beneficial Holders of Class 8 Debtors' Interests, as identified by their respective account numbers, that made a decision to opt-out of the Third-Party Release via e-mail, telephone, internet application, facsimile, voting instruction form, or other customary means of conveying such information.

Indicate in the appropriate column below the Beneficial Holder/Account Number of each Beneficial Holder that completed and returned the Beneficial Holder Opt-Out Form and the aggregate number of Class 8 Debtors' Interests held by such Beneficial Holder/Account Number electing to opt-out of the Third-Party Release or attach such information to this Master Opt-Out Form in the form of the following table.

Please complete the information requested below (add additional sheets if necessary):

| Beneficial Holder/Account Number | Amount of Class 8 – Debtors' Interest Holders Electing to Opt-Out of Third-Party Release |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| **TOTAL** | |

**Item 3**. **Additional Certifications.**

By signing this Master Opt-Out Form, the undersigned certifies to the Court and the Debtor:

    a.    that either: (i) the undersigned has received a completed Opt-Out Form from each Beneficial Holder of Class 8 Debtors' Interests listed in Item 2 of this Master Opt-Out Form, or (ii) an e-mail, recorded telephone call, internet transmission, facsimile, voting instruction form, or other customary means of communication conveying a decision to opt-out of the releases from each Holder of Class 8 Debtors' Interests;

    b.    that the undersigned is a Nominee (or agent of the Nominee) of the Class 8 Debtors' Interests; and

    c.    that the undersigned has properly disclosed for each Beneficial Holder who submitted a Beneficial Holder Opt-Out Form or opt-out decisions via other customary means: (i) the respective number of the Class 8 Debtors' Interests owned by each Beneficial Holder and (ii) the customer account or other identification number for each such Beneficial Holder.

| | |
|---|---|
| **Institution:** | _____ |
| | **(Print or Type)** |
| **DTC Participant Number:** | _____ |
| **Signature:** | _____ |
| **Name of Signatory:** | _____ |
| **Title:** | _____ |
| **Address:** | _____ |
| | _____ |
| | _____ |
| **Date Completed:** | _____ |

If your address or contact information has changed, please note the new information here.

**PLEASE COMPLETE, SIGN AND DATE THIS MASTER OPT-OUT FORM AND RETURN IT PROMPTLY VIA FIRST CLASS MAIL, OVERNIGHT COURIER, EMAIL OR HAND DELIVERY TO:**

Proterra Ballot Processing Center
c/o Kurtzman Carson Consultants LLC
222 N. Pacific Coast Highway, Suite 300,
El Segundo, CA 90245

Email: ProterraInfo@kccllc.com

If you have any questions on the procedures for voting on the Plan, please call the Solicitation Agent at (877) 499-4509 (USA or Canada, toll-free) or +1 (917) 281-4800 (International).

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS MASTER OPT-OUT FORM ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET), THE ELECTIONS TRANSMITTED HEREBY WILL <u>NOT</u> BE EFFECTIVE.**

**OPT-OUT FORMS SENT BY FACSIMILE OR TELECOPY WILL <u>NOT</u> BE ACCEPTED.  MASTER OPT-OUT FORMS MAY BE SUBMITTED BY EMAIL TO: ProterraInfo@kccllc.com**

| Class 8 Debtors' Interests |
| --- |

### <u>INSTRUCTIONS FOR COMPLETING THIS MASTER OPT-OUT FORM</u>

1.  Capitalized terms used in the Master Opt-Out Form or in these instructions (the "<u>Master Opt-Out Form Instructions</u>") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.

2.  **<u>Distribution of the Opt-Out Forms</u>:**

    ☐  You should immediately distribute the Beneficial Holder Notice and Opt-Out Forms accompanied by pre-addressed, postage-paid return envelopes to all Beneficial Holders of **Class 8** Debtors' Interests as of the Voting Record Date and take any action required to enable each such Beneficial Holders to make an opt-out election timely.  You must include a pre-addressed, postage-paid return envelope or must certify that your Beneficial Holder clients that did not receive return envelopes were provided with electronic or other means (consented to by such Beneficial Holder clients) of returning their Beneficial Holder Opt-Out Forms in a timely manner.

☐  Any election delivered to you by a Beneficial Holder shall not be counted until you complete, sign, and return this Master Opt-Out Form to the Solicitation Agent, so that it is actually received by the Opt-Out Deadline.

3.  You should solicit elections from your Beneficial Holder clients via the (a) delivery of duly completed Beneficial Holder Opt-Out Forms or (b) conveyance of their decision to opt-out of the releases via e-mail, telephone, internet application, facsimile, voting instruction form, or other customary and approved means of conveying such information.

4.  With regard to any Beneficial Holder Opt-Out Forms returned to you by a Beneficial Holder, you must: (a) compile and validate the elections and other relevant information of each such Beneficial Holder on the Master Opt-Out Form using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Opt-Out Form; and (c) transmit the Master Opt-Out form to the Solicitation Agent.

5.  **Return of Master Opt-Out Form**: The Master Opt-Out Form must be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Opt-Out Deadline, which is February 27, 2024 at 4:00 PM (ET).

6.  If a Master Opt-Out Form is received by the Solicitation Agent <u>after</u> the Opt-Out Deadline, it will not be effective, unless the Debtors have granted an extension of the Opt-Out Deadline in writing with respect to such Master Opt-Out Form. Additionally, the following Opt-Out Forms will <u>NOT</u> be counted:

☐  ANY MASTER OPT-OUT FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE EQUITY INTEREST;

☐  ANY MASTER OPT-OUT FORM CAST BY OR ON BEHALF OF AN ENTITY THAT IS NOT ENTITLED TO OPT-OUT OF THE THIRD-PARTY RELEASE;

☐  ANY MASTER OPT-OUT FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE SOLICITATION AGENT), ANY INDENTURE TRUSTEE OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;

☐  ANY UNSIGNED MASTER OPT-OUT FORM; OR

☐  ANY MASTER OPT-OUT FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED BY THE COURT.

7.  The method of delivery of Master Opt-Out Forms to the Solicitation Agent is at the election and risk of Nominee. Except as otherwise provided herein, such delivery will be

deemed made to the Solicitation Agent only when the Solicitation Agent **actually receives** the originally executed Master Opt-Out Form.  Instead of effecting delivery by first-class mail, it is recommended, though not required, that Nominees use an overnight or hand delivery service.  In all cases, Nominees should allow sufficient time to assure timely delivery.

8.      Multiple Master Opt-Out Forms may be completed and delivered to the Solicitation Agent.  Elections reflected by multiple Master Opt-Out Forms will be deemed valid.  If two or more Master Opt-Out Forms are submitted, please mark the subsequent Master Opt-Out Form(s) with the words "Additional Election" or such other language as you customarily use to indicate an additional election that is not meant to revoke an earlier election.

9.      The Master Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to transmit elections to opt-out of the Third-Party Release.  Holders of Class 8 Debtors' Interests should not surrender certificates (if any) representing their Class 8 Debtors' Interests at this time, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates transmitted together with a Master Opt-Out Form

10.     This Master Opt-Out Form does <u>not</u> constitute, and shall not be deemed to be, (a) a proof of claim or interest or (b) an assertion or admission of an equity Interest.

11.     <u>Please be sure to sign and date your Master Opt-Out Form</u>.  If you are signing a Master Opt-Out Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors or the Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Opt-Out Form.

12.     No fees or commissions or other remuneration will be payable to any broker, bank, dealer or other person in connection with this solicitation.  Upon written request, however, the Debtors will reimburse you for customary mailing and handling expenses incurred by you in forwarding the Opt-Out Forms to your client(s).

**<u>IF YOU WISH TO OPT OUT OF THE THIRD PARTY RELEASES, PLEASE RETURN YOUR MASTER OPT-OUT FORM PROMPTLY!</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER OPT-OUT FORM OR THE VOTING INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT AT:**

**(877) 499-4509 (USA or Canada) or +1 (917) 281-4800 (international)**
**Or via email: ProterraInfo@kccllc.com**

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS MASTER OPT-OUT FORM FROM YOU BEFORE THE OPT-OUT DEADLINE, WHICH IS FEBRUARY 27, 2024 AT 4:00 PM (ET) THEN YOUR VOTE TRANSMITTED HEREBY WILL NOT BE COUNTED.**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION PACKAGE MAILED HEREWITH.

<u>NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN</u>

**PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS:**

To provide additional information regarding the third party releases, the following sections of the Plan have been copied immediately below:  I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), **Article IX.C (Releases by the Releasing Parties)**.[4]  To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following.

(a)  Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it:  (a) elects to opt out of the releases contained in the Plan, (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector, or (c) is an LG Party.

(b)  Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims and Interests who are Unimpaired under the Plan, (i) with respect to each of the foregoing Persons, in clauses (a) through (h), each of their Affiliates, and (j) with respect to each of the foregoing Persons in clauses (a) through (i), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members,

---

[4]   Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such; provided that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector.

      (c)     Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair: (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims,**

crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to any such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in  accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; or (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:   (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT

**TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

**Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.**

[*Remainder of Page Intentionally Left Blank*]

Dated:    [Month DD, YYYY]
          Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

[   ]
_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
        amagaziner@ycst.com
        sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email:  pbasta@paulweiss.com
        rbritton@paulweiss.com
        mcolarossi@paulweiss.com

*Counsel to the Debtors and
Debtors in Possession*

**<u>Exhibit 5-C</u>**

**Form of Notice & Opt-Out Form:  Registered Shareholders**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PROTERRA INC, *et al.*,[1] | Case No. 23-11120 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: January 23, 2024 at 11:00 AM (ET)** |
| | **Obj. Deadline: January 16, 2024 at 4:00 PM (ET)** |

**NOTICE TO SHAREHOLDERS**
**OF RIGHT TO OPT-OUT OF THIRD PARTY RELEASE**

> **You are receiving this notice because you are a shareholder of Proterra Inc (the "__Company__" or "__Debtors__").**
>
> **You will not receive any payment on account of your shares in the bankruptcy case, and your shares will be cancelled.**
>
> **The Debtors are seeking court approval for a plan of reorganization and disclosure statement filed as part of its bankruptcy proceeding.**
>
> **Under the plan of reorganization, shareholders will not be entitled to any payment from the Debtors on account of their Proterra shares and do not get to vote on the plan of reorganization because shareholders are deemed to reject the plan of reorganization.**
>
> **However, as part of the plan of reorganization, unless shareholders take additional action as described here, and affirmatively opt-out, shareholders will be deemed to release claims they may have against the Debtors, their officers and directors, and certain creditors and other third parties.**
>
> **__You have the right to opt-out, to avoid releasing any claims, against these third-parties, the Debtor, and its officers and directors by completing the opt-out form__**

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

> **on pages 5–6 of this notice.  The applicable definitions of released and releasing parties are also attached to this notice for your convenience of review.  These Defined Terms control the scope of the Release provisions.**

## I.    Notice of Disclosure Statement, Plan, and Confirmation Hearing

**PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

You are receiving this notice because you are a shareholder of the Debtors and therefore **do not have the right to vote on the Plan** because you are not receiving anything under the Plan.  Any and all your claims against "Released Parties," including the directors and officers of the Debtors, and other creditors and third parties covered by the Defined Terms, will be released **unless** you complete the opt-out form on pages 5–6 of this notice.

The hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

The deadline for filing objections to the Plan is **February 27, 2024 at 4:00 PM (ET)** (the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| **Debtors** | **Counsel to the Debtors** |
| --- | --- |
|  |  |

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

| | |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,**<br>**Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com,<br>rbritton@paulweiss.com,<br>mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com,<br>amagaziner@ycst.com,<br>sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** | |
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br><br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com | |
| **U.S. Trustee** | |
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey | |

If you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra.  You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

## II.    Right to Opt-Out of Third Party Release

On the Effective Date of the Plan, the release, injunction, and discharge provisions contained in Article IX of the Plan will become effective.  These provisions are reproduced on pages 9-11 of this notice for ease of reference.  **You may choose to opt-out of the third party release set forth in Article IX.C of the Plan** by completing and returning the two page document that follows (the "Opt-Out Release Form") according to the instructions in this notice.  If you do not complete the Opt-Out Release Form, **any and all your claims against "Released Parties," including the directors and officers of the Debtors, will be released**.

**IF YOU WISH TO OPT-OUT OF THE THIRD PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN COMPLETE AND RETURN THE OPT-OUT RELEASE FORM ACCORDING TO EITHER SECTION (1) OR (2) BELOW:**

(1)    Please complete, sign, and date this Opt-Out Release Form and return it to KCC by first class mail, overnight or hand delivery to:

| If by First Class Mail: | If by Overnight Courier or Hand Delivery: |
|---|---|
| Proterra Ballot Processing Center<br>  c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 | Proterra Ballot Processing Center<br>c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 |

-   OR   -

(2)    Submit your opt-out release form via KCC's online portal at https://kccllc.net/proterra. Click on the "submit e-ballot" section of the website and follow the instructions to submit your opt-out release form.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit our customized electronic Opt-Out Release Form:

Unique e-Ballot ID#:         _____

        PIN#:         _____

**The Solicitation Agent's online portal is the only manner in which Opt-Out Release Forms will be accepted via electronic or online transmission.  Opt-Out Release Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

Each E-Ballot ID# and pin is to be used solely for opting out of the Third Party Release on account of the your equity interests.  Please complete and submit an electronic Opt-Out Release Form for each E-Ballot ID# you receive, as applicable.

Holders of Claims who cast an Opt-Out Release Form using the Balloting Agent's online portal should NOT also submit a paper Opt-Out Release Form.

**IF YOU WISH TO OPT OUT OF THE THIRD PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN, THIS OPT-OUT RELEASE FORM MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE "RELEASE OPT-OUT DEADLINE"). IF THIS OPT-OUT RELEASE FORM IS RECEIVED AFTER THE RELEASE OPT-OUT DEADLINE, IT WILL NOT BE COUNTED BY THE SOLICITATION AGENT AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN.**

*[Remainder of Page Intentionally Left Blank]*

## OPT-OUT RELEASE FORM

**PLEASE COMPLETE THE FOLLOWING:**

### Item 1. Opt-Out for Third Party Release

By checking this box, the undersigned Holder:

> ☐ Elects **not** to grant the third party release contained in Article IX.C of the Plan.

> (if the Holder does not check this box, any and all claims of the Holder against "Released Parties," including the directors and officers of the Debtor, will be released)

☐ **If you do not wish to give the third party release provided in Article IX.C of the Plan, you must check the Opt-Out box above, and submit this ballot to KCC so it is received by the Release Opt-Out Deadline.**

☐ **If you do not check the Opt-Out box above, you will be deemed to consent to giving the third party release provided in Article IX.C of the Plan.**

☐ **Opting out of giving the third party release provided in Article IX.C of the Plan shall not affect whether you receive any payment under the Plan. Holders of Claims and Interests in Class 8 will not receive any payment under the Plan.**

**PLEASE BE ADVISED THAT BY CHECKING THE BOX ABOVE YOU ELECT NOT TO GRANT THE THIRD PARTY RELEASE AGAINST THE "RELEASED PARTIES" AS THAT TERM IS DEFINED IN THE PLAN.  <u>YOU MUST AFFIRMATIVELY CHECK THE BOX ABOVE IN ORDER TO OPT-OUT OF THE THIRD PARTY RELEASE.</u>**

PLEASE ALSO BE ADVISED THAT THE DEBTORS RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN IS SEPARATE FROM AND INDEPENDENT OF THE THIRD PARTY RELEASE.  IF YOU OBJECT TO THE DEBTORS RELEASE, YOU MUST FILE A SEPARATE OBJECTION WITH THE COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER BY FEBRUARY 27, 2024 AT 4:00 PM (ET).

### Item 2. Certifications

By signing this Opt-Out Release Form, the undersigned certifies to the Court and the Debtors that:

> a.  the undersigned is a Holder of Claims or Interests as set forth in Item 1;

b. the undersigned has received the Notice to Shareholders Deemed to Reject the Plan of Right to Opt-Out of Third Party Release, and that this Opt-Out Release Form is submitted pursuant to the terms and conditions set forth therein;

c. the undersigned has submitted the same election with respect to all of its Claims or Interests; and

d. the undersigned has not submitted any other Opt-Out Release Form for its Claims or Interests, or if another form has been previously submitted, such form is revoked.

*[Remainder of page intentionally left blank.]*

_____
Name of Holder

_____
Signature

_____
Name of Signatory and Title

_____
Name of Institution (if different than Holder)

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

## II.    Definitions Applicable to the Release ("Defined Terms")

To provide additional information regarding the third party releases, the following sections of the Plan have been copied immediately below:  I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), **Article IX.C (Releases by the Releasing Parties)**.[1]  To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following.

(a)    Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it:  (a) elects to opt out of the releases contained in the Plan, (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector, or (c) is an LG Party.

(b)    Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims and Interests who are Unimpaired under the Plan, (i) with respect to each of the foregoing Persons, in clauses (a) through (h), each of their Affiliates, and (j) with respect to each of the foregoing Persons in clauses (a) through (i), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such; provided that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector.

(c)    Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized**

---

[1]    Article IX.B of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates.

Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in  accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; or (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of

**Action**

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.

*[Remainder of Page Intentionally Left Blank]*

Dated:    [Month DD, YYYY]          Respectfully submitted,
          Wilmington, Delaware

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

[   ]
_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
           amagaziner@ycst.com
           sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Paul M. Basta (admitted _pro hac vice_)
Robert A. Britton (admitted _pro hac vice_)
Michael J. Colarossi (admitted _pro hac vice_)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
          rbritton@paulweiss.com
          mcolarossi@paulweiss.com

_Counsel to the Debtors and
Debtors in Possession_

**Exhibit 6**

**Form of Notice of Assumption of Executory Contracts and Unexpired Leases**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

### NOTICE OF (A) EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED BY THE DEBTORS PURSUANT TO THE PLAN, (B) CURE AMOUNTS, IF ANY, AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH

**PLEASE TAKE NOTICE THAT**, on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article V.A of the Plan, as of the Effective Date, except as provided in the Plan (including, with respect to D&O Policies, Article IV.P thereof), the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases, unless such Executory Contract is a D&O Policy or an Insurance Contract, that (a) have not been identified on the Assumption Schedule (as defined herein), (b) have not been otherwise rejected, assumed, or assumed and assigned, including in connection with any Sale, or which have not been designated for assumption or assumption and assignment pursuant to the terms of any Sale Order, or (c) are not otherwise rejected, assumed, assumed and assigned, or the subject of a motion filed by the Debtors prior to the Effective Date to assume, assume and assign, or reject such Executory Contracts and Unexpired Leases on which the Bankruptcy Court has not ruled and is still pending.

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

PLEASE TAKE FURTHER NOTICE THAT pursuant to Article V.D of the Plan, at least fourteen (14) calendar days before the Confirmation Hearing and solely to the extent the applicable Executory Contract or Unexpired Lease was not included in the Cure Notice (or if the proposed Cure Claim for such Executory Contract or Unexpired Lease is different than the proposed Cure Claim listed in the Cure Notice), the Debtors shall distribute, or cause to be distributed, Plan Cure Notices and proposed amounts of Cure Claims to the applicable Executory Contract or Unexpired Lease counterparties.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Debtors at least seven (7) calendar days before the Confirmation Hearing.  Any such objection to the assumption of an Executory Contract or Unexpired Lease shall be heard by the Bankruptcy Court on or before the Effective Date, unless a later date is agreed to between the Debtors or the Reorganized Debtors, on the one hand, and the counterparty to the Executory Contract or Unexpired Lease, on the other hand, or by order of the Bankruptcy Court.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount shall be deemed to have assented to such assumption and/or cure amount.

PLEASE TAKE FURTHER NOTICE THAT the Debtors filed the Schedule of Assumed Executory Contracts and Unexpired Leases (the "Assumption Schedule") with the Court as part of the Plan Supplement on [●], 2024, as contemplated under the Plan.  The determination to assume (or assume and assign) the agreements identified on the Assumption Schedule was made as of [●] and is subject to revision.

PLEASE TAKE FURTHER NOTICE THAT the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

PLEASE TAKE FURTHER NOTICE THAT you are receiving this notice because the Debtors' records reflect that you are a party to a contract that is listed on the Assumption Schedule and that such contract has not previously been listed on a Cure Notice, or that the amount required to cure defaults, if any, under such contract (the "Cure Amount") has changed following its inclusion on a Cure Notice.  Therefore, you are advised to review carefully the information contained in this notice and the related provisions of the Plan, including the Assumption Schedule.

PLEASE TAKE FURTHER NOTICE that the Debtors are proposing to assume (or assume and assign) the Executory Contract(s) and Unexpired Lease(s) listed on Exhibit A, attached hereto, to which you are a party.[3]

---

[3]    Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumption Schedule, nor anything contained in the Plan or each Debtor's schedule of assets and liabilities, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of assumption, that any Reorganized Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement.  Further, the Debtors

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the Cure Amounts, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed on Exhibit A attached hereto. Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no Cure Amount outstanding for such contract or lease.

**PLEASE TAKE FURTHER NOTICE THAT** absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contract(s) and Unexpired Lease(s) identified above will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtors in Cash on the Effective Date. In the event of a dispute regarding (a) the amount of the Cure Claim, (b) the ability of the Reorganized Debtors or any assignee to provide 'adequate assurance of future performance' (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall only be made following the entry of a Final Order or orders resolving the dispute and approving the assumption by mutual agreement between the Debtors or the Reorganized Debtors, as applicable, and the applicable counterparty, with the consent of the Second Lien Agent, such consent not to be unreasonably withheld.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Plan Objection Deadline (as defined herein). Any such objection to the assumption of an Executory Contract or Unexpired Lease shall be heard by the Bankruptcy Court on or before the Effective Date, unless a later date is agreed to between the Debtors or the Reorganized Debtors, on the one hand, and the counterparty to the Executory Contract or Unexpired Lease, on the other hand, or by order of the Bankruptcy Court.

The Debtors or Reorganized Debtors, as applicable, reserve the right to reject any Executory Contract or Unexpired Lease in their discretion, subject to the consent rights set forth in the Plan Support Agreement, including in connection with the resolution of any cure disputes. Notwithstanding anything to the contrary herein, if at any time the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice or the Assumption Schedule, the Debtors or Reorganized Debtors, as applicable, will have the right, at such time, to remove such Executory Contract or Unexpired Lease from the Assumption Schedule, in which case such Executory Contract or Unexpired Lease shall be deemed rejected as of the Effective Date.

---

expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Assumption Schedule and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date and (b) contest any Cure Claim (or Cure Amount) asserted in connection with assumption of any Executory Contract or Unexpired Lease.

PLEASE TAKE FURTHER NOTICE THAT any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment or related Cure Amount must be Filed, served, and actually received by the Debtors by the Plan Objection Deadline.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, or proposed assumption and assignment, or Cure Amount will be deemed to have consented to such matters and will be deemed to have forever released and waived any objection to such proposed assumption, proposed assumption and assignment, and Cure Amount.

PLEASE TAKE FURTHER NOTICE THAT the deadline for filing objections to the Plan, including, as set forth in Article IV.D.2 of the Plan, to the assumption (or assumption and assignment) of an Executory Contract or Unexpired Lease, is **February 27, 2024** at **4:00 PM (ET)** (the "Plan Objection Deadline").  Any objection **must** (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (d) be filed with this Court (contemporaneously with a proof of service) and served upon the notice parties identified in the Confirmation Hearing Notice so as to be **actually received** on or before **February 27, 2024** at **4:00 PM (ET)**.

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,**<br>**Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** ||

| |
|---|
| **Lowenstein Sandler LLP** |
| 1251 Avenue of the Americas |
| New York, New York 10019 |
| Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert |
| Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com |
| |
| *- and -* |
| |
| **Morris James LLP** |
| 500 Delaware Avenue, Suite 1500 |
| Wilmington, DE 19801 |
| Attn: Eric J. Monzo and Brya M. Keilson |
| |
| Email: emonzo@morrisjames.com, bkeilson@morrisjames.com |
| **U.S. Trustee** |
| **Office of The United States Trustee** |
| 844 King Street, Suite 2207 |
| Wilmington, Delaware 19801 |
| Attn: Linda J. Casey |

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the assumption of the Executory Contract(s) and Unexpired Lease(s) identified above and/or related cure or adequate assurances proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the Confirmation Hearing (or such other date as fixed by the Court).

**PLEASE TAKE FURTHER NOTICE THAT assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date of the Debtors or Reorganized Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Court.**

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

Dated:   [Month DD, YYYY]   Respectfully submitted,
         Wilmington, Delaware

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

[   ]_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:   pmorgan@ycst.com
         amagaziner@ycst.com
         sborovinskaya@ycst.com

         - and -

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:     (212) 373-3000
Fax:     (212) 757-3990
Email:  pbasta@paulweiss.com
        rbritton@paulweiss.com
        mcolarossi@paulweiss.com

*Counsel to the Debtors and
 Debtors in Possession*

**<u>Exhibit A</u>**

**Assumption Schedule**



**Exhibit A**

| Counterparty Name | Description of Contract | Debtor Counterparties | Entity to be Assigned Contract (if applicable) | Amount Required to Cure Default Thereunder, If Any |
|---|---|---|---|---|
| | | | | |

**Exhibit 7**

**Solicitation Package Cover Letter**



<div align="center">[●], 2024</div>

Via First Class Mail

**RE**:   **In re Proterra Inc**
   **Chapter 11 Case No. 23-11120 (BLS)**

TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN:

Proterra Inc and its affiliated debtor (together, the "Debtors")[1] filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court") on August 7, 2023.

You have received this letter and the enclosed materials because you are entitled to vote on the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan").[2] On [●], 2024, the Court entered an order [Docket No. ●] (the "Disclosure Statement Order"): (a) authorizing the Debtors to solicit acceptances for the Plan; (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan

> **YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE PLAN.  THEREFORE, YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

In addition to this cover letter, the enclosed materials comprise your Solicitation Package, and were approved by the Court for distribution to Holders of Claims in connection with the solicitation of votes to accept the Plan.  The Solicitation Package consists of the following:

a.   a copy of the Solicitation and Voting Procedures;

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.



b.      a Ballot, together with detailed voting instructions and a pre-addressed, postage pre-paid return envelope;

c.      this Solicitation Package Cover Letter and the UCC Letter;

d.      the Disclosure Statement (and exhibits thereto, including the Plan);

e.      the Disclosure Statement Order (without exhibits, except the Solicitation and Voting Procedures);

f.      the Confirmation Hearing Notice; and

g.      such other materials as the Court may direct.

The Debtors have filed the Plan and are soliciting votes to accept the Plan. **The Debtors believe that the acceptance of the Plan is in the best interests of their estates, Holders of Claims, and all other parties in interest. The Plan is the culmination of the Debtors' extensive efforts to achieve the best possible outcome for all creditors. Moreover, the Debtors believe that any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller distributions (or no distributions) on account of Claims asserted in the chapter 11 cases.** IF THE PLAN IS NOT CONFIRMED, THE DEBTORS CURRENTLY HAVE NO ALTERNATIVES FOR PRESERVING THE ESTATES.

---

**THE DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN, IN ACCORDANCE WITH THE INSTRUCTIONS INDICATED ON YOUR BALLOT.**

**THE VOTING DEADLINE IS FEBRUARY 27, 2024 AT 4:00 PM (ET).**

---



The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials if you received electronic access to the solicitation materials), contact KCC, the Debtors' Solicitation Agent, by: (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 North Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: https://www.deb.uscourts.gov/. Please be advised that the Solicitation Agent is authorized to answer any questions about, and provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

Sincerely,

[ ]
Gareth T. Joyce
Chief Executive Officer
Proterra Inc, on behalf of itself

**<u>Exhibit 8</u>**

**Form of Plan Supplement Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PROTERRA INC, *et al.*,[1] | ) | Case No. 23-11120 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF FILING OF PLAN SUPPLEMENT FOR THE JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR PROTERRA INC AND ITS DEBTOR AFFILIATE

**PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (collectively, the "Debtors"), to solicit acceptances for the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto, and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors hereby file certain exhibits to the Plan consisting of the following:

| Exhibit | Document[3] |
|---|---|
| A | [TBD] |
| B | [TBD] |
| C | [TBD] |
| D | [TBD] |

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

[3]  The exhibits set forth in the Plan Supplement remain subject to ongoing review and material revision in all respects.

PLEASE TAKE FURTHER NOTICE that the documents, schedules, and other information contained in this Plan Supplement are integral to and part of the Plan.  These documents have not yet been approved by the Court.  If the Plan is approved, the documents contained in the Plan Supplement will be approved by the Court pursuant to the Confirmation Order.

PLEASE TAKE FURTHER NOTICE that the Debtors reserve all rights to amend, modify, or supplement the Plan Supplement, and any of the documents contained therein, in accordance with the terms of the Plan.  If material amendments or modifications are made to any of these documents, the Debtors will file a blackline with the Court prior to the Confirmation Hearing marked to reflect the same.

PLEASE TAKE FURTHER NOTICE THAT all votes to accept or reject the Plan must be **actually received** by the Debtors' Solicitation Agent at the Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA, 90245 by no later than **FEBRUARY 27, 2024 AT 4:00 PM (ET)**.

PLEASE TAKE FURTHER NOTICE that the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.  **The Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court.**

PLEASE TAKE FURTHER NOTICE that the deadline for filing objections to the Plan is **February 27, 2024 at  4:00 PM (ET)** (the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| | |

| | |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,<br>Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** ||
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br><br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com ||
| **U.S. Trustee** ||
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey ||

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors'

restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS CONTAINED IN <u>ARTICLE IX</u> OF THE PLAN.  <u>ARTICLE IX.C</u> OF THE PLAN CONTAINS THIRD-PARTY RELEASES.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT AS SPECIFIED ABOVE.  PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE.  IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.**

*[Remainder of Page Intentionally Left Blank]*

Dated:    [Month DD, YYYY]
          Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

[   ]_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
        amagaziner@ycst.com
        sborovinskaya@ycst.com

      - and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email:  pbasta@paulweiss.com
        rbritton@paulweiss.com
        mcolarossi@paulweiss.com

*Counsel to the Debtors and*
*Debtors in Possession*