## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PROTERRA INC., *et al.*,[1] | Case No. 23-11120 (BLS) |
| Debtors. | Jointly Administered |
| | **Related Dkt. No. 793 and 796** |

**OBJECTION AND RESERVATION OF RIGHTS OF LEXON INSURANCE COMPANY TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT; (B) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION; (C) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH; (D) SCHEDULING CERTAIN DATES WITH RESPECT THERETO; AND (E) GRANTING RELATED RELIEF**

Lexon Insurance Company ("Lexon"), by and through its undersigned counsel, Harris Beach PLLC, and its local counsel, The Powell Firm, LLC, submit this objection and reservation of rights ("Objection") to the *Debtors' Motion for Entry of an Order (A) Approving the Adequacy of Disclosure Statement; (B) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan of Reorganization; (C) Approving the Forms and Ballots and Notices in Connection Therewith; (D) Scheduling Certain Dates with Respect Thereto; and (E) Granting Related Relief* (the "Disclosure Statement Motion") [Dkt. No. 793], and in support thereof respectfully states as follows:

## PRELIMINARY STATEMENT

1.     Lexon submits this Objection: (a) to seek clarity as to how the transaction contemplated in the Plan Support Agreement[2] with the Plan Sponsor [Dkt. No. 525] relates to and affects the Lexon

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc. (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

Bond, Indemnity Agreement and Lexon Collateral (all defined below), (b) to put parties in interest, and specifically the Debtors and Plan Sponsor, on notice that the Lexon Bond cannot be assumed and assigned because it is a financial accommodation, and (c) to reserve all of Lexon's rights, remedies and defenses with respect to the Lexon Bond, Indemnity Agreement and Lexon Collateral.

### BACKGROUND

1. On August 7, 2023, (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

4. On August 25, 2023, the United States Trustee for the District of Delaware ("U.S. Trustee") appointed the Official Committee of Unsecured Creditors ("Committee") in these chapter 11 cases [Dkt. No. 133]. On September 21, 2023, the U.S. Trustee appointed an additional member to the Committee [Dkt. No. 268].

5. The Debtors have three (3) commercial units that each address a critical component of commercial vehicle electrification. First, the Debtors' powered products unit, Proterra Powered, produced proprietary battery systems and electrification solutions for OEM customers. Second, the Debtors' energy unit, Proterra Energy, produces and services turnkey fleet-scale, high-power charging solutions and software services. Proterra Energy also includes Proterra Valence, a connected vehicle intelligence system, which can provide customers performance information about their fleets. Third,

---

[2] Capitalized terms not defined herein are defined in the *First Amended Disclosure Statement for Joint Chapter 11 Plan of Reorganization for Proterra Inc. and Its Debtor Affiliate* ("Disclosure Statement").

Proterra Transit designs, develops, manufactures, and sells electric transit buses as OEM for North America public transit agencies, airports, universities, and other commercial transit fleets.

6.      As part of its business, the Debtors acknowledge that it is required to maintain certain surety bonds that are required by federal, state, or municipal statute or regulation [Dkt. No. 12 ("Surety Bond Motion"), ¶ 8, 20, 21].   The surety bonds are essential to the Debtors' business operations and, specifically, customs bonds ensure the Debtors' compliance with import duties, taxes and fees [Dkt. No. 12, ¶ 22].  Failure to provide, maintain, or timely replace the surety bonds, including customs bonds, will prevent the Debtors from undertaking functions essential to their operations [Dkt. No. 12, at ¶ 22].

7.      Additionally, the Debtors acknowledge that, unlike an insurance policy, if a surety provider incurs a loss on a surety bond, the surety provider is entitled to recover the full amount of that loss from the principal [Dkt. No. 12, ¶ 23].   Accordingly, the Debtors have entered into certain indemnity agreements with sureties and the Debtors have agreed to indemnify the sureties from any loss, cost, or expense that the sureties may incur on account of the issuance of any bonds on behalf of the Debtors. *Id*.

8.      In consideration of the sureties issuing the bonds, the Debtors pay premiums and post collateral to secure their obligations to the sureties [Dkt. No. 12, ¶ 23].

9.      As referenced above and set forth in the Debtors' Surety Bond Motion, the surety relationship involves three (3) parties: (a) the principal, who is the primary obligor – Debtors; (b) the obligee – the party to whom the principal and surety owe the duty – the regulatory or governmental authority; and (c) the surety – who is the secondary obligator – Lexon.

10.      Notably, the principal retains the primary duty to perform its obligations under the bonds. The principal cannot simply hand over its obligations for the surety to perform.

11.     Lexon has issued one (1) customs surety bond with a total penal sum of $600,000.00 (the "Lexon Bond") to the Debtors listing the Department of Homeland Security U.S. Customs and Border Protection as obligee ("Obligee").

12.     Additionally, as partial consideration for the execution of the Lexon Bond, Lexon and Debtor Proterra Operating Company, Inc. are parties to a General Agreement of Indemnity (the "Indemnity Agreement"), under which Proterra Operating Company, Inc. and all of Proterra Operating Company, Inc.'s "present and future subsidiaries, affiliates, successors, executors, trustees, personal representatives and assigns, and any co-principals, partners or joint ventures of any Indemnitor or other form of common enterprise of any Indemnitor (collectively, the "Indemnitors"), agreed to, *inter alia*, indemnify and hold Lexon harmless from every claim that Lexon may pay as a result of issuing the Bonds.

13.     Along with the contractual indemnity as set forth in the Indemnity Agreement, Lexon has certain rights and remedies against the Debtors as named principal under the Lexon Bond – in particular, indemnity, exoneration and the right of equitable subrogation under common law.

14.     As further consideration for issuing the Lexon Bond, Lexon is the beneficiary to one (1) Irrevocable Standby Letter of Credit with identification number 68180859, which serve as collateral for the Lexon Bond in the total sum of $900,000.00 (the "Lexon Collateral").  The issuing bank of the Lexon Collateral is Bank of America.

15.     Based on the above, Lexon timely submitted a proof of claim in this case in the amount of $600,000.00 (the "Proof of Claim") [Claim #657] representing the penal sum of the Lexon Bond. Lexon expressly reserved its right to file amended Proofs of Claim while it reviews its books and

records to determine if it paid any claims under the Lexon Bond, incurred any loss adjustment expenses, and if there were any unpaid premiums due under the Lexon Bond.

16.     Through the bankruptcy process, the Debtors have been able to obtain signed transaction agreements with respect to all three (3) of their Business Lines as set forth in the Powered Successful Bid Notice and Energy and Transit Successful Bidder Notice.  The Bankruptcy Court authorized the sale of the Proterra Powered Business Line to Volvo on November 29, 2023 and entered the sale of certain battery lease asses and Proterra Transit to Phoenix on January 9, 2024.  The Debtors are now seeking to effectuate the sale of Proterra Energy to the Plan Sponsor and reorganize through the *First Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc. and Its Debtor Affiliate* (the "Plan") [Dkt. No. 795].

17.     The Lexon Bond is listed as a contract to be potentially assumed in the *Second Amended Notice of (I) Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (II) Proposed Cure Amounts* ("Second Amended Assumption Notice") [Dkt. No. 528] with an unknown cure amount at #1624.  Lexon filed an objection to the Second Amended Assumption Notice on November 21, 2023 [Dkt. No. 585] "(a) to put parties in interest, and specifically the Debtors and Phoenix, on notice that the Lexon Bond cannot be assumed and assigned because it is a financial accommodation, (b) reserve all of Lexon's rights, remedies and defenses with respect to the Lexon Bond, Indemnity Agreement and Lexon Collateral" among other things.

18.     Certain language was then included in the Volvo Sale Order and Phoenix Sale Order to resolve Lexon's objection.

## ARGUMENT

## THE DISCLOSURE STATEMENT LACKS ADEQUATE INFORMATION

19.     Lexon opposes the approval of the Disclosure Statement because it lacks adequate

information.

20.     The Bankruptcy Code provides that adequate information is:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in
> light of the nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the debtor, and a
> hypothetical investor typical of the holders of claims or interests in the case, that
> would enable such a hypothetical investor of the relevant class to make an
> informed judgment about the plan, but adequate information need not include
> such information about any other possible or proposed plan and in determining
> whether a disclosure statement provides adequate information, the court shall
> consider the complexity of the case, the benefit of additional information to
> creditors and other parties in interest, and the cost of providing addition
> information.

11  U.S.C. § 1125(a)(1).

21.     Information that should be contained in a disclosure statement includes: "[a] complete

description of the available assets and their value; . . . [a] liquidation analysis setting forth the estimated

return that creditors would receive under Chapter 7; [t]he accounting and valuation methods used to

produce the financial information in the disclosure statement; [i]nformation regarding the future

management of the debtor, including the amount of compensation to be paid any insiders, directors,

and/or officers of the debtor; . . . [and] [i]nformation relevant to the risks being taken by creditors and

interest holders . . . ."  *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988).

The disclosure statement must also contain facts to support the assertions contained therein.  *In re Egan*,

33 B.R. 672, 676 (Bankr. N.D. Ill. 1983).

6

22.     In this case, neither the Disclosure Statement nor Plan reference how the Lexon Bond is to be treated.  Neither the Disclosure Statement nor Plan reference whether the Lexon Bond will be replaced or reaffirmed and ratified by the Plan Sponsor, Reorganized Debtor, Reorganized Proterra or any other reorganized company.  To the extent the Lexon Bond is not needed going forward, there is no reference in the Disclosure Statement to, nor does Lexon have, releases from the obligee relating to the Lexon Bond.

23.     The Debtors do not appear to be attempting to treat the Lexon Bond as an executory contract to be assumed based on the previous language agreed upon and included in the Volvo Sale Order [Dkt. No. 664] and Phoenix Sale Order [Dkt. No. 833]; however, to the extent the Debtors are attempting to treat the Lexon Bond and Indemnity Agreement as executory contracts that can be assumed and/or assigned, the Debtors cannot do so. The Lexon Bond and Indemnity Agreement cannot be transferred, sold, assumed, and/or assigned because they are financial accommodations.  *See In re James River Coal Co*., 2006 WL 2548456 (Bankr. M.D. Tenn. 2006); *In re All Phase Electrical Contracting, Inc.*, 409 B.R. 272, 275 (Bankr. D. Conn. 2009); *see also* 11 U.S.C. §§ 365(c)(2) and 365(e)(2)(B).  As the Lexon Bond is specific to the individual Debtor named as principal on each bond and is a financial accommodations, it cannot be transferred to the extent any such transfer may be contemplated under the Disclosure Statement, Plan and/or Plan Support Agreement.

24.     Although the Bankruptcy Code does not define "financial accommodation," courts have held that the obligation to pay money on the obligation of another, such as the surety bonds in this case, *is a financial accommodation*.  *See, e.g., In re Adana Mortg. Bankers, Inc.*, 12 B.R. 977, 987 (Bankr. N.D. Ga. 1980).   As to matters of financial accommodation, prior to issuing bonds, a surety's underwriters go through a careful and thorough investigation of the financial status of the entities

7

seeking the bonds. *See generally, In re Wegner Farms Co.*, 49 B.R. 440, 444 (Bankr. N.D. Iowa 1985) ("[T]he issuance of a bond is intimately connected to debtor's financial integrity…").

25.     Section 365(c)(2) and Section 365(e)(2)(B) of the Bankruptcy Code prohibit the assumption of financial accommodations, such as the Bonds, by a debtor in bankruptcy because they represent obligations to pay money based on the obligations of another. *See In re Thomas B. Hamilton Corp.*, 969 F.2d 1013, 1019 (11th Cir. 1992); *In re Wegner Farms*, 49 B.R. 440, 444 (Bankr. N.D. Iowa 1985) (in relation to surety bonds as financial accommodations only); *In re Edwards Mobile Home Sales, Inc.*, 119 B.R. 857, 859 (Bankr. M.D. Fla. 1990).

26.     As a result, the Lexon Bond cannot simply be transferred without the express consent of Lexon. A transfer to any entity, even the Plan Sponsor, Reorganized Debtors and/or Reorganized Proterra, does not create any rights to acquire or assume any of the Lexon Bond without the consent of Lexon.  To the extent the Debtors are proposing or considering assuming and/or assigning the Lexon Bond, it would violate 11 U.S.C. § 365(c)(2).

27.     Furthermore, to the extent the Debtors are attempting to transfer or assign the Lexon Collateral to the Plan Sponsor, Reorganized Debtor and/or Reorganized Proterra, or any other entity, the Debtors also cannot do so because the Lexon Collateral is not property of the Debtors' bankruptcy estate. "It is well established that a letter of credit and the proceeds therefrom are not property of the debtor's estate under 11 U.S.C. § 541.*" S-Tran Holdings, Inc. v. Protective Ins. Co. (In re S-Tran Holdings, Inc.)*, 414 B.R. 28, 33-34 (Bankr. D. 2009) (quoting *Kellog v. Blue Quail Energy, Inc. (Matter of Compton Corp.)*, 831 F.2d 586, 589 (5th Cir. 1987) ("When the issuer honors a proper draft under a letter of credit, it does so from its own assets and not from the assets of its customer who caused the letter of credit to be issued.  As a result, the bankruptcy trustee is not entitled to enjoin a post petition

payment of funds under a letter of credit from the issuer to the beneficiary, because such a payment is not a transfer of debtor's property.")).

28.     Accordingly, the Disclosure Statement fails to provide adequate information to a creditor as to whether or not it should vote to accept or reject the Plan.

## JOINDER

29.     In the event any other surety, including but not limited to, Philadelphia Indemnity Insurance Company and Atlantic Specialty Insurance Company, files an objection to the Disclosure Statement, Lexon hereby joins, adopts and relies upon the arguments and the objections made in those objections to the extent they do not conflict with the factual assertions arguments set forth in the instant Objection.

## RESERVATION OF RIGHTS

30.     Nothing herein shall be considered a waiver of any rights or claims that Lexon might have against the Debtors, its subsidiaries and affiliates.   Lexon reserves the right to amend and supplement this Objection and/or join in any other statements and/or objections related to the relief requested by the Debtors.  The submission of this Objection by Lexon is not intended as, and shall not be construed as:

a.     Lexon's admission of any liability or waiver of any defenses or limitations of any rights of Lexon with respect to any claims against the Lexon Bond or under the Indemnity Agreement;

b.     Lexon's waiver or release of any rights to exoneration it may have against any one with respect to its obligations pursuant to the Lexon Bond;

9

c.      Lexon's waiver or release of its right to be subrogated to the rights of one or more parties paid pursuant to the Lexon Bond;

d.      An election of remedies; or

e.      Consent to the determination of Debtors' liability to Lexon by a particular Court, including, without limitations, the Bankruptcy Court.

<u>**CONCLUSION**</u>

Wherefore, Lexon respectfully requests that this Court deny approval of the Disclosure Statement, and grant such other and further relief as the Court deems just and proper.

Dated: January 16, 2024                Respectfully submitted,


*/s/ Jason C. Powell*
Jason C. Powell, Esq. (No. 3768)
THE POWELL FIRM, LLC
1813 N. Franklin Street
P.O. Box 289
Wilmington, DE 19899
(302) 650-1572
jpowell@delawarefirm.com

      -and-
*/s/ Brian D. Roy*
Lee E. Woodard, Esq.
Brian D. Roy, Esq.
HARRIS BEACH PLLC
333 W. Washington Street, Suite 200
Syracuse, New York 13202
Telephone: (315) 423-7100
Email:  bkemail@harrisbeach.com
         broy@harrisbeach.com