**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PROTERRA INC., *et al.*,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 23-11120 (BLS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: January 16, 2024 at 4:00 p.m. (ET)**<br>**Hearing Date: January 23, 2024 at 11:00 a.m. (ET)**<br><br>Re: Docket No. 796 |

**LIMITED OBJECTION OF THE SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY TO THE SECOND AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR PROTERRA INC. AND ITS DEBTOR AFFILIATE**

      The Southeastern Pennsylvania Transportation Authority ("SEPTA"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Second Amended Disclosure Statement for Joint Chapter 11 Plan Of Reorganization for Proterra Inc. and its Debtor Affiliate* [Docket No. 889] (the "Disclosure Statement")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), and, in support thereof, respectfully states as follows:

---

[1] Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc. (1379); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Disclosure Statement.

## PRELIMINARY STATEMENT[3]

1. The Court should deny approval of the Disclosure Statement because the Debtors are seeking to proceed with a plan confirmation process while the Sale (as defined herein) and its impact on the certain contracts remains outstanding and undetermined[4].

2. Consequently, SEPTA is placed in the inequitable position of being unable to determine whether its Contract (as defined herein) will be subject to the treatment set forth in the Disclosure Statement or potentially assumed and assigned as part of the Sale. Moreover, SEPTA has no definitive clarity on what, if any, its distribution will be if it (a) has an unsecured claim assuming the Contract (as defined herein) is rejected and (b) the Debtors' plan is confirmed. In short, the Disclosure Statement fails to provide information necessary for SEPTA—or any reasonable hypothetical investor—to make an informed decision about the Plan.

## BACKGROUND

**A.    The Contract**

---

[3] SEPTA was prepared to object to the Disclosure Statement on the additional basis that it lacked any disclosure whatsoever with respect to the proposed treatment of general unsecured claims as the first two versions of the Disclosure Statement provided that the projected distributions were on such claims were unknown. However, the night before the deadline to object to the Disclosure Statement, the Debtors filed the Second Amended version thereof, and for the first time included a projected recovery for such claims of between 15.7%-24.8%. *See* Disclosure Statement at Art. I. Notwithstanding this new information, it is still unclear as to whether these projections account for or otherwise take into consideration SEPTA's Proof of Claim (defined herein), which was field in the amount of $23,145,884.62, especially considering the Debtors' statement that there are approximately $63,917,000 in allowed Class 5 General Unsecured Claims. *See* Disclosure Statement at Art. IX.C.3.

[4] On January 11, 2024, the Debtors filed the *Debtors' Twenty-Second Motion for Entry of an Order (I) Authorizing the Debtors to Reject Certain Executory Contracts, [and] (II) Granting Related Relief* [Docket No. 873] (the "Rejection Motion"). Therein, the Debtors seek to reject a "Purchase Order No. S887603" and a "Contract Change Order" (collectively, the "Ancillary Agreements") with SEPTA. Despite the filing of an additional twenty seven (27) motions to reject, the Debtors, at this point in time, are not rejecting the Contract (as defined herein) and, as the Ancillary Agreements are part and parcel of the Contract and are integrated agreements with each other, SEPTA asserts that the Ancillary Agreements cannot be rejected (or assumed) separately. Therefore, SEPTA reserves and preserves all rights to assert objections and other arguments in opposition to the Rejection Motion and the Debtors' improper attempts to bifurcate the Ancillary Agreements from the Contract.

3.   Prior to the Petition Date (defined herein), in or about August of 2016, SEPTA issued a Request for Proposal (an "RFP") to solicit proposals from contractors to supply SEPTA with a fleet of electric transit buses.

4.   In accordance with the RFP, Proterra Operating Company, Inc. f/k/a Proterra, Inc. ("Proterra") submitted a bid proposal to manufacture and deliver the desired electric buses that SEPTA ultimately accepted.

5.   In connection therewith, SEPTA entered into a Contract with Proterra on February 2, 2017 (the "Contract") pursuant to which Proterra agreed to supply SEPTA with 25 heavy duty, forty (40') foot battery-electric transit buses equipped for use by SEPTA's transit passengers.

6.   Per the Contract, the buses were to have a twelve (12) year or 500,000 mile design life and a maintenance-free exterior.

7.   In consideration for this fleet of electric buses, SEPTA agreed to pay Proterra the sum of $23,756,815.54 (the "Purchase Price").

8.   Between the years 2018 and 2019, Proterra delivered the electric buses to SEPTA, and SEPTA paid the Purchase Price to Proterra.

9.   Unfortunately, since receiving the electric buses from Proterra, SEPTA has found them to be plagued with problems that have kept them out of service, thus, rendering them useless to SEPTA and its riders.

10.  In short[5], SEPTA paid Proterra approximately $24 million for twenty five buses that are a total loss. Proterra's failure to deliver such a fleet of buses to SEPTA deprived SEPTA of the benefit of the bargain it struck and SEPTA should be reimbursed for the entire Purchase

---

[5] SEPTA hereby incorporates by reference the discussion of the material defects and defaults under the Contract, as well as the numerous steps taken to address and/or remediate the same, set forth in the Addendum to SEPTA's proof of claim, filed on October 16, 2023 against Proterra (as amended on December 1, 2023, the "SEPTA Proof of Claim").

Price together with all other expenses and losses incurred by SEPTA in connection therewith, including the cost to investigate and address the cracks in its newly purchased fleet of electric buses.

**B.    The Bankruptcy Case**

11.    On August 7, 2023, the above-captioned debtors (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

*i.    The Sale.*

12.    On September 7, 2023, the Court entered the *Order (A) Approving Bidding Procedures to Govern the Sale of All or Substantially All of the Debtors' Assets Pursuant to Section 363 of the Bankruptcy Code, (B) Approving Procedures Regarding Entry Into One or More Stalking Horse Agreements, (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of the Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) Scheduling Auctions for the Sales of the Company Assets and Hearings to Consider Approval of the Sales and Approving the Form and Manner of the Notice Thereof, and (F) Granting Related Relief* [Docket No. 218] (the "Bidding Procedures Order"), approving, among other things, procedures in connection with the assumption and assignment of any executory contracts or unexpired leases the Debtors seek to have assumed and assigned in connection with a sale of certain of the Debtors' assets (the "Sale").

13.    On October 16, 2023, SEPTA filed the *Objection Of The Southeastern Pennsylvania Transportation Authority To Notice Of (I) Potential Assumption And Assignment*

4

*Of Certain Executory Contracts And Unexpired Leases And (II) Proposed Cure Amounts* [Docket No. 392] objecting to the proposed assumption and assignment of the Contract pursuant to any Sale on certain grounds as more fully set forth therein.

14. On January 9, 2024, the Court entered the *Order (A) Authorizing and Approving the Debtors' Entry into the Asset Purchase Agreements, (B) Authorizing the Sale of the Debtors' Transit and Battery Lease Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Executory Contracts and Unexpired Leases, and (D) Granting Related Relief* [Docket No. 833] (the "Sale Order").

15. Paragraph 39 of the Sale Order expressly preserved, *inter alia*, all of SEPTA's and the Debtors' rights with respect to the assumption and assignment of the Contract and provided that the Contract shall not be assumed and assigned absent either (i) the consent of SEPTA or (ii) further order of the Court; provided that SEPTA be provided at least (14) fourteen days' notice of any hearing at which the Debtors may seek to assume and assign the Contract.

16. Accordingly, the issue of whether the Contract is going to be assumed and assigned is still unknown.

    *ii.* **The Disclosure Statement.**

17. On December 17, 2023, the Debtors filed an initial version of the Disclosure Statement [Docket No. 738], later revising certain portions thereof on January 2, 2024 [Docket No. 796 and January 15, 2024 [Docket No. 889].

18. Pursuant to the Disclosure Statement, the Debtors acknowledge that it is "not possible to predict with certainty the amount of distributions to Distribution Trust Beneficiaries," although they acknowledge that there are approximately $63,917,000 in allowed Class 5 General

Unsecured Claims – which total does not seem to factor in the SEPTA Proof of Claim. *See* Disclosure Statement at Art. IX.C.2-3.

## OBJECTION

### I. The Court Should Not Approve The Disclosure Statement While the Treatment of the Contract Remains Undetermined.

19. The Debtors are proceeding with a plan confirmation process while simultaneously seeking to close the Sale under which certain contracts may still be assumed and assigned. This parallel track leaves certain contract counterparties, including SEPTA, to question how their contracts and claims thereunder will be addressed.

20. SEPTA is, as a result, being placed in an inequitable position where it may not know whether its Contract will either be assumed and assigned to the Successful Bidder or be rejected and therefore subject to the treatment described in the Disclosure Statement.

21. SEPTA and other similarly situated creditors are therefore being forced to assert defenses on two fronts: needing to question their potential treatment under a Disclosure Statement and Plan while simultaneously being potentially subject to assumption and assignment to the Successful Bidder. This inequitable result that should not be countenanced by this Court.

22. Further, in the event the Contract is rejected and the Debtors' plan is confirmed, SEPTA is left with uncertainty as to what, if any, distribution it can expect on its claim. While the Debtors include projections for recoveries on general unsecured claims, SEPTA is unclear as to whether those projections account for the SEPTA Proof of Claim.

23. Therefore, the Debtors should resolve the outstanding issues surrounding the Sale and potential assumption and assignment of the Contract before proceeding with approval of their Disclosure Statement.

## RESERVATION OF RIGHTS

24. SEPTA expressly reserves all rights with respect to the Contract and its right to make such other and further objections as may be appropriate or necessary with respect to the Disclosure Statement.

**WHEREFORE**, SEPTA respectfully requests that this Court (a) either (i) condition any approval of the Disclosure Statement to inclusion of the modifications requested herein, or (ii) deny the request for approval of the Disclosure Statement as it does not contain the adequate information required by 11 U.S.C. § 1125; and (b) grant such other relief as the Court deems appropriate.

Dated: January 16, 2024        **DUANE MORRIS LLP**

*/s/ Lawrence J. Kotler*
Lawrence J. Kotler (DE 4181)
Drew S. McGehrin (DE 6508)
1201 N. Market Street, Suite 501
Wilmington, Delaware 19801
Tel: 302-657-4900
Fax: 302-657-4901
Email: ljkotler@duanemorris.com
          dsmcgehrin@duanemorris.com

*Counsel to SEPTA*