### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PROTERRA, INC., *et al.*,[1] | Case No. 23-11120 (BLS) |
| Debtors. | Jointly Administered |
| | **Hearing Date: January 23, 2024 at 11:00 a.m. (ET)**<br>**Obj. Deadline: January 16, 2024 at 4:00 p.m. (ET)** |

### OBJECTION OF CYRESS JAM, COURT-APPOINTED SECURITIES CLASS ACTION LEAD PLAINTIFF, TO (A) ADEQUACY OF THE DISCLOSURE STATEMENT; (B) SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS' SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION; (C) THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH; (D) SCHEDULE OF CERTAIN DATES WITH RESPECT THERETO; AND (E) GRANTING RELATED RELIEF

Cyress Jam (the "Lead Plaintiff"), in his capacity as Court-appointed lead plaintiff in the consolidated securities class action proceedings pending in the United States District Court for the Northern District of California under the caption, *Jeremy Villanueva, individually and on behalf of all others similarly situated v. Proterra, Inc., et al.,* Case No. 5:23-cv-03519-RFL (the "Securities Class Action"), by and through his undersigned counsel, hereby submits this limited objection (the "Objection") to the *Second Amended Joint Chapter 11 Plan of Reorganization for Proterra, Inc. and its Debtor Affiliate* [Docket No. 888] (as may be amended, the "Plan")[2] proposed by the debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") and the approval of the *Second Amended Disclosure*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2] Capitalized terms used but not defined herein shall have the same meanings as ascribed to them in the Plan.

*Statement for Joint Chapter 11 Plan of Reorganization for Proterra Inc. and its Debtor Affiliate* [Docket No. 889] (the "Disclosure Statement") on the grounds that the Plan's "Releases by the Releasing Parties" and "Discharge; Injunction" (the "Release and Injunction Provisions") described in the Disclosure Statement (Article V.H., Docket No. 889 at 93-97 of 390) are, as to the claims asserted by Lead Plaintiff in the Securities Class Action, impermissible non-consensual releases, violative of due process, and contrary to established Third Circuit law.  In support of this Objection, the Lead Plaintiff respectfully states as follows:

Lead Plaintiff objects to the Disclosure Statement[3] to the extent that the Release and Injunction Provisions described therein unlawfully release and eviscerate the securities fraud claims asserted against Proterra Inc. (after reorganization) ("Proterra") and Proterra's former directors and officers (the "Third-Party D&O Defendants") in the Securities Class Action. These sweeping and virtually unlimited releases and injunction provisions prey on unwitting Class members who are likely entirely unaware of their securities fraud claims or the pending Securities Class Action Proceedings in which they are asserted. Class members will forfeit hundreds of millions of dollars in securities law-based claims, which include damages incurred as a result of an alleged fraud by the Third-Party D&O Defendants and are not dischargeable under the Bankruptcy Code. 11 U.S.C. § 523(a)(19); *see also Dastinot v. Kamara (In re Kamara)*, No. 10-12766 (BLS), 2012 Bankr. LEXIS 5403, at *24 (Bankr. D. Del. Nov. 20, 2012) ("The purpose of this exception is to help defrauded investors recoup their losses 'and to hold accountable those who violate securities laws after a government unit or private suit results in a judgment or settlement against the wrongdoer.'" (quoting *Smith v. Gibbons (In re Gibbons)*, 289 B.R. 588, 592 (Bankr. S.D.N.Y. 2003)). The Plan provides no consideration to Class members to recoup those

---

[3] Lead Plaintiff reserves his right to object to the Plan and, if necessary, will file an objection timely under the schedule set forth by the Court.

damages in connection with these securities claims against Proterra or the Third-Party D&O Defendants.

The Disclosure Statement, as written, contains the Plan's proposed Release and Injunction Provisions which should not be approved in light of the Securities Class Action's claims. The Plan, Disclosure Statement, and solicitation materials – particularly, the Opt-Out Election Form for Impaired Non-Voting Status Claims and Interests – fail to adequately notify Proterra's shareholders of their claims in the Securities Class Action against Proterra and the Third-Party D&O Defendants or the facts that (i) the Release and Injunction Provisions attempt to release their claims in the Securities Class Action, (ii) Lead Plaintiff will Opt-Out of the Release and Injunction Provisions on their behalf, (iii) the Debtors revised the Plan to subrogate shareholder claims under Section 510(b) of the Bankruptcy Code only *after* receiving a draft of Lead Plaintiff's forthcoming consolidated complaint in the course of settlement negotiations, and (iv) shareholders may take further action to preserve their claims by opting out of such release, individually.  In short, the opt-out process deprives shareholders with claims in the Securities Class Action (*i.e.*, Class 9 under the Plan) of due process and does not create actual and informed consent, and the circumstances fall far short of meeting the standards necessary to approve the nonconsensual Release and Injunction Provisions.  As the Lead Plaintiff in the Securities Class Action (*see* ¶¶ 11 and 18 *infra*), and despite the Debtors' engineering with respect to the Release and Injunction Provisions, Lead Plaintiff is compelled to stand up on behalf of Class members whose rights are being stripped away for no consideration.

## RELEVANT BACKGROUND

### A.  Securities Class Action

The Securities Class Action was filed in the United States District Court for the Northern District of California ("District Court") before these bankruptcy proceedings began.  The initial complaint in the Securities Class Action alleged claims for violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against Proterra, Inc. ("Proterra"), Gareth Joyce, and Karina Franco Padilla.  Mr. Jam has been appointed by the District Court as the Lead Plaintiff, and is responsible for overseeing the prosecution of the Securities Class Action.

As required by a scheduling order entered in the District Court, Lead Plaintiff will file a consolidated complaint against non-Debtors by January 31, 2024.[4] On December 22, 2023, in the context of settlement negotiations, Lead Plaintiff provided counsel for Proterra Inc. and the Third-Party D&O Defendants in the Securities Class Action with an early draft of the forthcoming consolidated complaint. On January 2, 2024, Debtors amended the Plan to include the "Class 9" classification of Claims and Interests pursuant to the Plan, stating that Class 9 Claims are Section 510(b) Claims that are impaired and not entitled to vote under the plan (*i.e.*, deemed to reject).

### B.  The "Opt-Out" Notice and Procedures

The Plan places claims held by Proterra's shareholders in the Securities Class Action in Class 9, "Section 510(b) Claims".  The Plan defines Class 9 to "mean[] Claims against any Debtor arising under section 510(b) of the Bankruptcy Code," Docket No. 888 at 23 of 182, which Bankruptcy Code provision defines as any claim "arising from recission or a purchase or sale of a security of the debtor…for damages arising from the purchase or sale of such a security…."  The Plan states that Section 510(b) Claims are "Impaired," and "Not Entitled to Vote." *Id.* at 36 of

---

[4] Lead Plaintiff has advised the District Court that claims against Proterra (the only Debtor-defendant) are stayed.  In respect of the stay, Proterra will not be named as a defendant in the forthcoming consolidated complaint.

182.   The Plan further states that "On the Effective Date, Allowed Section 510(b) Claims, if any, shall be canceled and released without any distribution on account of such Section 510(b) Claims" and that "Holders of Allowed Section 510(b) Claims in Class 9 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan." *Id.*

On January 2, 2024, Debtors filed a motion seeking to approve the Disclosure Statement, along with solicitation and notice procedures and ballots.   Docket No. 793 (the "Approval Motion").   Defendants' Approval Motion will be heard on January 23, 2024 at 11:00 a.m. According to the Approval Motion, "Holders of … Claims in Class 9 (Section 510(b) Claims) are receiving no distribution under the Plan and therefore are deemed to reject the Plan and will receive a notice, substantially in the form attached to the Proposed Order as **Exhibit 4-B**, in lieu of a Solicitation Package." *Id.* at 23.

Exhibit 4-B that Debtors propose to send to Class 9 claimants is entitled "Opt-Out Election Form" (the "Opt-Out Form"). Debtors filed an updated version of Exhibit 4-B on January 15, 2024. Dkt. No. 890 at 74 of 298.  It purports to place an affirmative burden on holders of claims in Class 9 requiring them, in order that they not forfeit any claims that they have against vaguely defined "Released Parties," to complete and return the form notwithstanding that they would receive no consideration under the Plan. The Opt-Out Form does not reference the Securities Class Action, that Lead Plaintiff is opting out on behalf of shareholders with claims in the Securities Class Action, or that Class 9 claim holders are at risk of losing individual rights in the Securities Class Action unless they opt out. Additionally, the Opt-Out Form does not purport to accurately inform recipients; instead it acknowledges there may be "discrepancies" between that form and the Plan,

which recipients are left to their own to attempt to figure out – an impossible task for a lay investor given the exceptionally unclear wording of the provisions in question.

According to the Opt-Out Form, "the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein" "will be deemed to consent to giving the Third Party Release provided in Article IX.C of the Plan," even though they have received no consideration.  The form and its instructions cover five pages, with an abundance of complicated rules and restrictions, which are traps for all but the most sophisticated and diligent; and indeed, even those holders of Class 9 claims who submitted an Opt-Out Form might end up with the Debtors rejecting it for technical and arbitrary reasons. For example, if a recipient returns the Opt-Out Form – itself a clear indication that it did not intend to grant Releases – but inadvertently fails to check a box on the form, the recipient would be "deemed" nonetheless to have granted the Releases. The risks a recipient would run in submitting an insufficient Opt-Out Form – and thereby granting releases he, she, or it did not intend to provide – are exacerbated by intentionally restrictive procedures, including that an Opt-Out Form would be deemed invalid if transmitted by facsimile or email even though actually received.

If these hoops were not enough to discourage someone who was not receiving any distributions under the Plan to forgo the effort to slog its way through the Opt-Out Form and Plan (to attempt to locate discrepancies, in which case the Plan controls), the Debtors added the warning that it was up to the recipient to choose the delivery method – but with the Debtors prohibiting the use of email or facsimile, the two methods providing the greatest assurance of actual receipt; and

if for any reason the Opt-Out Form was not actually received by the Notice and Claims Agent, the sender would nonetheless be deemed to have granted the Releases.[5]

### C.  The Release and Injunction Provisions

The Debtors' proposed Opt-Out Form purportedly contains the "Releases by the Releasing Parties" that appears in the Disclosure Statement and Plan; the "Discharge; Injunction" provision is not included. The Debtors then include the relevant defined terms and rules of interpretation set out in the Plan (again, with the caveat that recipients had to find out for themselves at their own peril whether there were any discrepancies in replication).  The Debtors defined the entities who were to grant third-party releases as the "Releasing Parties."  Opt-Out Form at 1-2.  The definition contains no specific reference to those classes of holders of claims who are to give Releases, actual or "deemed," and does not mention the Securities Class Action and the claims shareholders have in the Securities Class Action. *Id*. These claims, which belong to certain Class 9 holders, appear to be swept in through definition (g), which states that Releasing Parties include "the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein."  *Id.* There is no direct or conspicuous statement explaining either that the Lead Plaintiff is opting out of the Release and Injunction Provisions on behalf of Class 9 holders in the Securities Class Action or that shareholders need to opt-out in order to preserve individual claims.

And, not only does the Plan attempt to manipulate Class 9 holders into "deeming" to release parties which they have no economic reason to release, but also claims that tens of

---

[5] This provision contravenes the well-established "mail-box" rule which presumes that a letter "'reached its destination at the regular time and was received by the person to whom it was addressed'" if "'proved to have been either put into the post-office or delivered to the postman…'' *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 319 (3rd Cir. 2014) quoting *Rosenthal v. Walker*, 111 U.S. 185, 193, 4 S. Ct. 382 (1884). Under this rule, once a party proves it mailed the relevant document, the addressee is presumed to have received it. *Id.*

thousands of undefined persons who have even a slight relationship with Class 9 holders are somehow "deemed" to make a similar release.  This includes their "each of their Affiliates," a term the Opt-Out Form capitalizes but doesn't bother to define, and "each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such."  Neither the Plan, Disclosure Statement, nor the Opt-Out Form specify who such persons are or how they will be identified or provided notice of the purported Third-Party Release to which Debtors seek to bind them.

Debtors' definition of "Released Parties" is equally as sweeping.  According to the Opt-Out Form, "Released Parties" "means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it: (a) elects to opt out of the releases contained in the Plan, (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector, or (c) is an LG Party."  Debtors' decision to deprive recipients of the Opt-Out Form with a concrete definition of Released Persons deprives them of the opportunity to make an informed and meaningful determination of whether to opt out of the Third-Party Releases.  Inexplicably, the Opt-Out Form does not even mention the Securities Class Action – the most substantial proceeding against non-Debtors that it might impact – or plainly state whether it releases those claims.

Nor do the Debtors provide an explanation as to what the Third-Party D&O Defendants in the Securities Class Action, among others, did to warrant any release.  Debtors assert in the Plan

that the Release and Injunction Provisions are "essential to the Confirmation of the Plan," Docket No. 888 at 78 of 182, but provide no reason why. On its face that statement is untrue, as the Plan does not suggest that allowing persons to opt out of the release would compromise the Plan in any respect. The Release and Injunction Provisions have nothing whatsoever to do with the viability of the Plan, but rather to immunize unlawful conduct by non-Debtors in violation of the Bankruptcy Code and settled law. *See* 11 U.S.C. § 523(a)(19); *see also Dastinot*, 2012 Bankr. LEXIS 5403, at *24.

Debtors' naked assertion that the Release and Injunction Provisions are "given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties," *id.,* is equally untrue. Neither the Opt-Out Form, Plan, nor Disclosure Statement identify ***any*** consideration given by Released Parties, and they certainly do not identify sufficient consideration to immunize the perpetrators of the fraud alleged in the Securities Class Action from the liability compelled by federal securities law.

Debtors have no basis for representing that the Release and Injunction Provisions are "fair, equitable, and reasonable"; "given and made after due notice and opportunity for hearing"; "a good faith settlement and compromise of the Causes of Action released by the Third-Party Release"; or are "consensual". Debtors provide no mechanism for notifying the many thousands of putative class members in the Securities Class Action of the springing release. They do not show how the release of the Securities Class Action satisfies the applicable and controlling standards for releasing a class action. And, Debtors simply attempt to gin up "consent" when none has been given.

## ARGUMENT

I.  **THE THIRD-PARTY RELEASES AS APPLIED TO INVESTORS COVERED BY THE SECURITIES CLASS ACTION ARE NON-CONSENSUAL AND VIOLATE THIRD CIRCUIT LAW.**

### A. The Third-Party Releases Are Contrary to Established Law in the Third Circuit

Whether a plan of reorganization can include third party releases forcing creditors (and even non-creditors) of a debtor to grant releases to non-debtors was first addressed by the Third Circuit in *Gillman v. Continental Airlines Holdings, Inc. (In re Continental Airlines Holdings, Inc.)*, 203 F.3d 203 (3rd Cir 2000) [hereafter "*Continental*"] ["We have not ruled previously on the validity of provisions in chapter 11 plans of reorganization releasing and permanently enjoining third party actions against nondebtors." *Id.* at 211]. After reviewing decisions from other Circuits, the Third Circuit came to the "inescapable conclusion that…the release and permanent injunction [in the debtors' plan] of Plaintiffs' lawsuits are legally and factually insupportable." *Id.* at 211-12. The Third Circuit noted that the appellants had not asked the Court to adopt a rule banning all third-party non-consensual releases, and so the Court declined to address this broader issue. *Id.* "Given the manner which the issue has been presented to us, we need not establish our own rule regarding the conditions under which non-debtor releases and permanent injunctions are appropriate or permissible." *Id.* As to the third-party releases before it, the Third Circuit found that they did "not pass muster under the most flexible tests for the validity of non-debtor releases." *Id.* at 214. But while not adopting a specific rule, the Court identified three requirements for a non-consensual third-party release: (i) it must be fair; (ii) it must be essential to the reorganization; and (iii) it must be accompanied by specific factual findings supporting its fairness and essential nature. *Id.* at 214.

The Third Circuit reversed the District Court's affirmance of the Bankruptcy Court confirmation order to the extent that it approved the third-party releases in the *Continental* plan. It did so because, as here, the releases were unfair, no factual record existed to support the releases, and because the entities upon whom the releases were imposed received no consideration. Further, as is the case here, the Third Circuit noted that there was no evidence in the record that the releasees "provided a critical financial contribution in exchange…" for the releases. *Id.*

Following *Continental*, bankruptcy courts in the Third Circuit have viewed requests by debtors to approve third-party releases with considerable skepticism. *See infra*. Lead Plaintiff is unaware of any opinion in the Third Circuit that has upheld a third-party release, either non-consensual or "deemed consensual," from disenfranchised creditors who have already notified Debtors of their objection to any third-party releases[6], and were deemed to have rejected the plan. In this case, the Debtors have not provided and cannot provide the factual bases, as dictated by *Continental*, necessary for the Court to approve the Release and Injunction Provisions over the objection of Lead Plaintiff or other Class 9 holders. The Release and Injunction Provisions are without doubt severely prejudicial to the Securities Class Action because they stand to release their claims without any consideration in exchange and in violation of the Bankruptcy Code's rules against the non-dischargeability of fraud claims. Moreover, the Debtors cannot in good faith argue, let alone prove, that if Lead Plaintiff opts out of the Release and Injunction Provisions on behalf of plaintiffs in the Securities Class Action or if Class 9 holders opt out to protect their individual claims, the Plan will fail. Violating *Continental*, the Debtors have not provided the Court with any evidence that could possibly justify releasing any non-Debtor in the Securities Class Action.

---

[6] On December 12, 2023, Lead Plaintiff notified counsel for Proterra and the Third-Party D&O Defendants of his objection to the releases, as initially provided in various Plan Support Agreements (Doc. No. 565). Attorneys from both Paul Weiss Rifkind Wharton & Garrison LLP (bankruptcy counsel) and Cleary Gottlieb Steen & Hamilton LLP (Securities Class Action counsel) were present.

Cases decided by the United States Bankruptcy Court for this District have declined to approve third-party releases under facts far less egregious than here. Likewise, these decisions have characterized the releases in the respective cases to be non-consensual even as to creditors who were receiving distributions under the plan. For example, in *In re Zenith Electronics Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999), the Court refused to approve a plan provision that deemed any creditor who accepted the plan or received a distribution under the plan to have provided a release. *Id.* at 111. The Court viewed these releases as non-consensual, holding that third-party releases could not "be accomplished without the affirmative agreement of the creditor affected." *Id.*

In *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001), the Court rejected a plan provision which sought to grant certain of the debtors' lenders a non-consensual release of claims held by the debtors' creditors and equity security holders; and it did so after acknowledging that perhaps these releases might have "marginally satisfied" the *Continental* tests of fairness to the releasors and of being essential to the reorganization. *Id.* at 608. But because *Continental* cautioned against using "unfettered discretion" to grant third-party releases in the absence of "exceptional circumstances," and even though the creditors were receiving consideration under the plan, the releases were rejected. *Id.* The Court disallowed these releases even though, unlike here, "[t]here is nothing in this record to suggest that any causes of action actually exist against the Senior lenders, or that any non-consenting creditors or equity security holders would pursue such causes." *Id.* Here, the existence of the Securities Class Action and the Lead Plaintiff's active prosecution of it demonstrates the existence of tangible claims that would be released. Further, as explained above, no aspect of the Release satisfies any part of the *Continental* test and the Debtors do not even attempt to demonstrate fairness. Thus, as in *Genesis*, the third-party releases should be rejected.

In *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011), the debtors submitted several third party release iterations for Court approval, all of which were rejected. First, they filed a plan that had all of the debtors' creditors and shareholders providing releases, but which included an opt-out provision on the ballots to be delivered to impaired creditors. *Id*. at 351. The first plan did not appear to address whether entities deemed to have rejected the plan would also be providing non-consensual releases, however the plan proponents apparently recognized that such a provision would not be approved and in a subsequent version limited the release. *Id.* at 353 ("The Plan Supporters modified the release language and now contend that there is no release of direct claims against any third party that maybe held by shareholders or anyone who is not getting a distribution under the Plan.").

*Washington Mutual* contains several holdings relevant to the third-party releases in the Plan. First, the Court ruled that the opt-out procedure did cure the illegality of the proposed third-party releases. "However, the Court concludes that the opt out mechanism is not sufficient to support the third party releases anyway, particularly with respect to parties who did not return a ballot (or are not entitled to vote in the first place). Failing to return a ballot is not a sufficient manifestation of consent to a third party release[.]" *Id.* at 355. Second, the Court reiterated that it "previously held that is does not have the power to grant a third-party release of a non-debtor." *Id.* at 352.

Third, in further explaining why it was not sanctioning the third-party releases, the Court held:

> [T]he third party releases are too broad and should not extend to any affiliates of the Debtors. There is no evidence of who the affiliates are or why they should be getting a discharge without filing their own bankruptcy cases. Further, there is no basis for granting third-party releases of the Debtor's officers and directors, even if it is limited to their post-petition activity. The only "contribution" made by them was in the negotiation of the Global Settlement and the Plan. Those

activities are nothing more than what is required of directors and officers of debtors in possession (for which they have received compensation and will be exculpated); they are insufficient to warrant such broad releases of any claims third parties may have against them.

*Id.* at 354; *see also In re Spansion, Inc.*, 426 B.R. 114 (Bankr. D. Del 2010) [refusing to approve third-party releases required of parties "not receiving anything under the Plan"]; *In re Corum Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004) [third-party releases rejected.].

The Debtors can make no credible argument that the Release and Injunction Provisions are permitted by applicable law, and it is not a close call. The Debtors' Plan treats Class 9 holders, which include Lead Plaintiff and the other shareholders with claims in the Securities Class Action, as out-of-the-money creditors deemed to have rejected the Plan. They did not have the right to vote on the Plan, and they will receive no consideration under the Plan. Forcing these creditors to release valuable claims would be profoundly unfair and characterizing the releases as equitable would be a mockery. No case has imposed a non-consensual release on a class of creditors who have been deemed to reject a plan. These releases fail to meet the first test of *Continental,* that they be fair and equitable, a conclusion moreover which must be supported by specific factual findings (the third *Continental* test).

The Debtors over-reach by proposing a Plan that purports to have out-of-the-money creditors grant non-consensual releases; and for the reasons stated in *Washington Mutual*, the Release and Injunction Provisions should be stricken from the Plan as they relate to the Securities Class Action. As explained above, the Debtors have not and will not be able to provide credible evidence showing that the thousands of unidentified Releasees have made material financial contributions in connection with the confirmation of the Plan or that releases to each of these entities are essential to confirmation. To the extent that any of the Third-Party D&O Defendants in the Securities Class Action made any post-petition "contributions" they did no more than what

they were compensated to do in their capacities as officers or directors. The Debtors have done nothing to establish that those routine activities support a broad third-party release for any or all of these individuals; the Third-Party Release is simply a windfall to provide an unearned personal benefit to these Defendants.

Moreover, the Plan's treatment of the plaintiffs in the Securities Class Action as out-of-the-money creditors deemed to have rejected the Plan means that no benefit is being conferred on them. That makes the Release and Injunction Provisions patently unfair and in violation of the first test in *Continental*. *See, e.g., In re Exide Holdings, Inc.*, 2021 U.S. Dist. LEXIS 138478, at *45-*47 (D. Del. July 26, 2021) [finding a third-party release to satisfy *Continental* because the non-parties made substantial financial contributions to the estate that resulted in the creditor objecting to the third-party release being entitled to $2.6 million under the plan].

Likewise, providing a blanket release to thousands of unnamed and unidentified individuals and entities who have played no role in these cases would violate the holding of *Continental*, which requires that with respect to each Releasee, the Court make factual findings that the releasee made a material financial contribution to the Debtors' reorganizations. Under the best of circumstances this would be a tall order, but where as here the Releasees number in the thousands, are largely anonymous, and include individuals and entities who were effectively strangers to the Debtors' reorganization, it is impossible. And, as to the Third-Party D&O Defendants in the Securities Class Action that may have performed some services as part of their compensated positions, they are not entitled to releases for just doing the job they were paid to do. *Washington Mutual, Inc.*, 442 B.R. at 354. Performing your post-petition fiduciary duty does not entitle you to a release of pre-petition wrongs you have committed, particularly from creditors who do not benefit from these purported "good and valuable" post-petition services, and especially

when those pre-petition wrongs constitute violations of the federal securities laws and are non-dischargeable.  It is simply double-paying wrongdoers who have already perpetrated fraud on investors.

### B.  The Release and Injunction Provisions Are Not Consensual

Lead Plaintiff expects that the Debtors will try to distinguish *Continental* and the other cases cited *supra* by arguing that they involved non-consensual releases. By allowing Class 9 out-of-the-money creditors the right to "opt-out" of giving a release to the thousands of Releasees who provided no consideration for a release in the first instance, the Debtors will no doubt claim that these releases are consensual.

Such argument is wrong in general, and as applied to the Securities Class Action it is frivolous.  When filing the claim on behalf of Proterra's shareholder class in the Securities Class Action, Lead Plaintiff explicitly stated: "By filing this claim, Mr. Jam and the Class do not consent to any third-party release that may ultimately be proposed in this bankruptcy. Mr. Jam and the Class hereby object to the inclusion in any plan or confirmation order any release of any non-debtor third-parties who are defendants in *Villanueva v. Proterra Inc.*, No. 23-3519 (N.D. Cal.), or *Tirado v. Proterra Inc.*, No. 23-4528 (N.D. Cal.), on the grounds that such release is without consent, that such release is not consistent with the bankruptcy code, and that the underlying conduct of which such individuals are charged is not dischargeable under the bankruptcy code." Lead Plaintiff Proof of Claim dated November 10, 2023, Attachment, p. 3.[7] Counsel for Lead Plaintiff repeated the objection directly to the Debtors' counsel during a conference call on December 12, 2023. *See supra* 11 n.7. There is no good faith basis for Debtors to argue that Lead Plaintiff or the shareholders he represents in the Securities Class Action consent to the Release and

---

[7] A true and correct copy of Lead Plaintiff's Proof of Claim filing is attached hereto as Exhibit A.

Injunction Provisions, whether or not they jump through additional hurdles designed to manufacture consent without any manifestation thereof.

Even without the clear opposition already communicated by Lead Plaintiff on behalf of shareholders with claims in the Securities Class Action and already received by Debtors, such attempts to manufacture consent fail. *See, e.g., In re Emerge Energy Services LP*, 2019 WL 7634308 (Bankr. D. Del. Dec. 5, 2019). *Emerge Energy* provided that creditors and out-of-the-money equity holders would be deemed to have provided releases to a large number of third parties unless they completed an opt-out form and returned it to the debtors or their claims agent. *Id.* at *17-18. The debtors' rejoinder in *Emerge Energy* to the objections of the United States Trustee, the Securities and Exchange Commission, and the creditors committee, that these releases were contrary to established law, was that the releases were consensual. *Id.* at *18.

The *Emerge Energy* court rejected this argument and held that, notwithstanding the opt-out provision, the releases were non-consensual. *Id.* at *18 ("[I]t cannot be said with certainty that those failing to return a ballot or Opt-Out Form did so intentionally to give the third-party release, and that is what the Court must find under the law to approve a third-party release absent the satisfaction of the Continental standard."). Moreover:

> For the Court to infer consent from the nonresponsive creditors and equity holders, the Debtors must show under basic contract principles that the Court may construe silence as an acceptance because (1) the creditors and equity holders accepted a benefit knowing that the Debtors, as offerors, expected compensation; (2) the Debtors gave the creditors and equity holders reason to understand that assent may be manifested by silence or inaction, and the creditors and equity holders remained silent and inactive intending to accept the offer; or (3) acceptance by the creditors and equity holders can be presumed due to previous dealings between the parties. The Debtors cannot do so. The Class 6 creditors and the Class 9 equity holders are receiving no distribution under the Plan and no previous dealings between the parties are in evidence….the Court cannot on the record before it find that the failure of a creditor or equity holder to return a ballot or Opt-Out Form manifested their intent to provide a release.

Carelessness, inattentiveness, or mistake are three reasonable alternative explanations. *Id.*[8]

*Emerge Energy* cites three cases in support of its holding that the releases were non-consensual: *In re Washington Mutual, Inc.*, *supra*; *In re Sun Edison, Inc*., 576 B.R. 453 (Bankr. S.D.N.Y. 2017);[9] and *In re Chassix Holdings, Inc.*, 533 B.R. 64 (Bankr. S.D.N.Y. 2015).

In *Sun Edison*, the issue before the Court was whether it should approve a plan provision which provided that any entity entitled to vote on the plan, but who did not vote to reject the plan, was deemed to have given a third-party release. *Id.* at 455, 458. Chief Judge Bernstein *sua sponte* raised the issue of whether the plan's prolix and broad releases in favor of innumerable third parties, and which the plan proponents claimed were consensual, should be approved.[10] He refused, holding that the releases were not permissible as to "Non-Voting Releasors" who did not affirmatively agree to grant them. *Id.* at 461.[11] The debtors in Sun Edison argued that the warnings they provided to parties entitled to vote on the plan were sufficient to find that "Non-Voting Releasors should be deemed to have consented" to have granted the releases. *Id*. at 468. The Court, citing abundant authority, applied general contract principles, and held that deemed consent cannot be construed from the failure to complete and return an opt-out form. *Id*. at 458 ["Absent a duty to speak, silence does not constitute consent"]. "'An offeror has no power to transform an offeree's

---

[8] Although Judge Owen noted that her decision is a "minority amongst judges in this District," the opinion did not reference any case in which any court in the District of Delaware found that out-of-the-money creditors or equity holders, whose acceptances were not solicited, could be deemed to have provided a third-party release because of a failure to return an opt-out form, and in that respect, the opinion is fully in line with other cases in this District.

[9] As explained above, *Washington Mutual* in fact supports Lead Plaintiff's position that Class 9 creditors cannot be deemed to grant releases.

[10] Much like this case, Judge Bernstein characterized the release provisions as "hard to digest in one sitting." *Id*. at 457.

[11] The third-party releases in *Sun Edison* were in at least one material respect more limited than what the Debtors are asking the Court to approve in this case, covering only holders of claims entitled to vote on the plan, and those who were to receive a distribution under the plan. 576 B.R. at 457. In other words, the debtors in *Sun Edison* implicitly understood that creditors who receive nothing like Lead Plaintiff or the plaintiffs in the Securities Class Action should not be subject to third-party releases.

silence into acceptance when the offeree does not intend to accept the offer.'" *Id*. at 458 (quoting *Karlin v. Avis*, 457 F.2d 57, 62 (2d Cir. 1972)).

*Sun Edison* discusses two cases decided by the bankruptcy court for the District of Delaware which appear to sanction third-party releases through an opt-out procedure. *See In re Indianapolis Downs, LLC*, 486 B.R. 286 (Bankr. D. Del 2013); *In re Spansion*, *supra*. A fair reading of both cases reveals that neither decision supports the Releases in the Plan. In Spansion, the Court approved the opt-out mechanism only as to unimpaired creditors whose claims were fully satisfied. That makes sense, because requiring an entity whose claim has been fully paid to provide a release could be fair depending on the circumstances. As to disenfranchised creditors, such as Lead Plaintiff and the putative class he represents in the Securities Class Action, *Spansion* held the opposite: "The objecting parties, however, are not receiving anything under the Plan. For these reasons the proposed non-consensual Third Party Release does not pass muster under *Continental*." *Id.* at 145.

Similarly, *Indianapolis Downs*, *supra*, does not support a plan provision which would have out-of-the-money creditors providing "deemed consent" for third-party releases; in fact, it stands for the opposite proposition. In its opinion, the Court refused to consider one party's objection to the third-party releases on standing grounds, finding it could not provide a release because it was deemed to have rejected the plan. "[T]he Oliver Parties [have] been deemed to reject the Plan by virtue of [their] status as an out-of-the-money creditor not receiving a distribution….and [are] therefore not subject to the release provisions…." *Id*. at 304. The parties who were subject to the deemed consent fiction were limited to those who voted for the plan, unimpaired creditors who were deemed to accept the plan, and those creditors eligible to vote but who abstained. *Id*. at 304.

None of those exceptions apply to the plaintiffs in the Securities Class Action or any other Class 9 holder.

Finally, in *In re Chassix Holdings, Inc.*, 533 B.R. 64 (Bankr. S.D.N.Y. 2015), the Court limited the third-party release to creditors who voted for the plan. *Id*. at 80-81. As to creditors who were deemed to reject the plan, the Court held as follows: "If (as the Court of Appeals held in Metromedia) a Bankruptcy Court should be wary of imposing third party releases on creditors, then a Bankruptcy Court should be equally wary of approving voting procedures that effectively would impose those same releases on creditors who have not affirmatively manifested their consent to them." *Id*. at 79. The Court went on to make the following observations:

> As to creditors who might vote to reject the Plan … it was difficult to understand why any other action should be required to show that the creditor also objected to the proposed third party releases. …The additional "opt-out" requirement …would have been little more than a Court-endorsed trap for the careless or inattentive creditor. . . . . As to creditors and interest holders who were deemed to reject the Plan…it would defy common sense to conclude that those parties had "consented" to releases.

*Id*. at 80-81.

Lead Plaintiff and the class members in the Securities Class Action that he represents are not receiving any consideration under the Plan. They have not been provided with a solicitation package or, for many, even the Opt-Out Form.  Nor have they been provided with any information about the basis for the releases, the facts that Debtors contends satisfy *Continental*, or important details such as who and what they will release and the consequences of granting releases. Yet the Debtors' Plan construes any disenfranchised creditor who fails to navigate the opt-out process as intending to grant a release for no consideration. To do so would be contrary to *Continental*. It would be unprecedented, it would be error, and it would "defy common sense."

## II.    THE BANKRUPTCY COURT LACKS SUBJECT MATTER JURISDICTION TO RESOLVE THE CLAIMS OF SECURITIES CLASS ACTION PLAINTIFFS

The Debtors' Disclosure Statement and Plan also misinform Class 9 holders, including Lead Plaintiff and the Securities Class Action claimants he represents, about their ability to have their claims adjudicated in an Article III court. Federal courts are courts of limited jurisdiction.  A federal court may adjudicate a case or controversy "only if there is both Constitutional authority and statutory authority for federal jurisdiction." *In re Midway Gold US, Inc.*, 575 B.R. 475, 517 (Bankr. D. Colo. 2017) (citation omitted).  With respect to Article XI, section F, which purports to confer broad jurisdiction upon this Court to adjudicate disputes among non-Debtors involving the Third-Party Release, the Bankruptcy Court has neither.[12]

Section 1334(b) of title 28 of the U.S. Code provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The terms "arising under," "arising in," and "related to" are terms of art.  *In re Excel Storage Products, L.P.*, 175, 181 (Bankr. M.D. Pa. 2011).  A proceeding "arises under" the Bankruptcy Code "if it asserts a cause of action created by the Code," such as the various causes of action created by chapter 5. *In re Sunbridge Capital, Inc.*, 454 B.R. 166, 169 (Bankr. D. Kan. 2011) (citation omitted).  Proceedings "arising in" a bankruptcy case are those that could not exist outside of the bankruptcy case but are not causes of action created by the Bankruptcy Code itself.  *Midway Gold US*, 575 B.R. at 517 (citation omitted).  The Securities Class Action claims against the Third-Party D&O Defendants arise neither under nor in the Chapter 11 Cases.

---

[12] Article XI, Section F of the Plan purports to provide jurisdiction to this Court to: "adjudicate, decide, or resolve any and all matters related to Causes of Action, including any claims that may be brought against, or on behalf of, any Debtor, any director, officer, employee, creditor, member, interest holder, or other Released Party or Exculpated Party of a Debtor in their capacity as such (including to enforce the release and exculpation provisions of this Plan).

The third category of proceedings over which bankruptcy courts may have jurisdiction –
proceedings "related to" the bankruptcy case – are proceedings whose outcome "could conceivably
have any effect on the estate being administered in bankruptcy." *Power Plant Entm't Casino
Resort Ind., LLC v. Mangano*, 484 B.R. 290, 295 (Bankr. D. Md. 2012) (citation omitted). The
party asserting that a bankruptcy court has subject matter jurisdiction over a matter bears the
burden of proving by a preponderance of the evidence that jurisdiction exists. *In re SunEdison,
Inc.*, 576 B.R. 453, 461 (Bankr. S.D.N.Y. 2017).

Further, not only must the Court have subject matter jurisdiction over the Securities Class
Action, but it must also have constitutional authority to determine any aspect of the merits of such
claims and any defenses that the Third-Party D&O Defendants may have, including whether the
claims have been released. As Article I courts, bankruptcy courts do not have the authority to
enter final orders on matters "that are not integral to the restructuring of the debtor-creditor
relationship." *In re Kirwan Offices S.a.r.l.*, 592 B.R. 489, 510 (Bankr. S.D.N.Y. 2019) (internal
quotations omitted). Practically speaking, "resolving claims *against a debtor* will nearly always
be integral to resolving a bankruptcy process, while claims *against third parties* will be integral
only in 'rare cases.'" *Id.* at 511 (quoting *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141
(2d Cir. 2005)) (emphasis added). Non-debtor claims against non-Debtor defendants are
proceeding and belong in Article III courts, not here. The Debtors' Disclosure Statement and Plan
make no mention of this or otherwise alert Class 9 holders that their claims are at risk of being
extinguished through unconstitutional measures.

### III.   DEBTORS' PROPOSED PROCEDURES DEPRIVE SECURITIES CLASS ACTION PLAINTIFFS OF DUE PROCESS

Debtors' procedures ensure that Class 9 holders, *i.e.*, shareholders who possess claims in
the Securities Class Action, will not receive the Opt-Out Form in sufficient time to digest and

respond pursuant to its instructions, thereby depriving attempting to release their viable Third-Party claims without due process of law.   Debtors indicate that they will seek approval of the Opt-Out Form on January 23, 2024, at 11:00 a.m.  *See* Docket No. 793; *see also* Docket No. 890.  The Opt-Out Form indicates that Debtors will assume consent if it is not filled out properly and returned by February 27, 2024 at 4:00 p.m., consent will be "deemed."  This is not sufficient time to print the form if approved, mail to Class 9 holders, correct any wrong addresses, or allow the recipients sufficient time to review, ingest, or respond to the Opt-Out Form.

As an initial matter, Debtors do not yet have a list of shareholders who have claims under the Securities Class Action to which the Opt-Out Forms could be mailed, because no such list currently exists.   While Lead Plaintiff will opt out on their behalf and protect their right to participate in the Securities Class Action, these Class 9 holders deserve the right to opt out on their own and protect their individual rights against the Debtor and Third-Party D&O Defendants. While these Class 9 holders (*i.e.*, Proterra shareholders) are reasonably ascertainable, the steps to do so take time.  In securities class actions, class members are identified through a lengthy claims process in which Class Period transfer records are obtained, nominees are requested to provide address information for the majority of investors who hold securities in street name, and upon receipt the mailing is provided to the names received from the nominees, with robust address correction procedures at each step of the way.  The process generally takes 90 days or more, and it is unheard of to accomplish in less than five weeks as Debtors claim they will do.

Debtors cannot skip the steps necessary to provide reasonable notice to Securities Class Action class members.   Under both class action law and bankruptcy precedent, due process requires that such reasonably ascertainable members be provided notice even if it would take a few months. *See Chemetron v. Jones,* 72 F.3d 341, 346 (3rd Cir. 1995) (citing *Tulsa Professional*

*Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490, 108 S. Ct. 1340, 1347 (1988); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). "A creditors identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably due diligent efforts.'" *Mennonite Bd. Of Missions v. Adams*, 462 U.S. 791, 798 n.4, 103 S. Ct. 2706, 2711 n.4 (1983).

Moreover, even robust notice procedures may not provide sufficient due process to release third-party claims. *See In re Aegean Marine Petroleum Network, Inc.*, 599 B.R. 717, 724 (Bankr. S.D.N.Y. 2019) (raising numerous concerns, including jurisdictional ones, with third-party releases and noting third-party releases in bankruptcy lack the procedural protections of class actions); *see also In re FirstEnergy Sols. Corp.*, 606 B.R. 720, 738 (Bankr. N.D. Ohio 2019) (agreeing with *Aegean Marine's* concerns "that such [third-party] releases often lack legal justification or procedural safeguards"). The *Aegean Marine* court explained:

> it is worth pausing for a minute to note just what an extraordinary thing it is for a court to impose an involuntary third-party release and how different that is from what courts ordinarily do.
>
> ***
>
> In other contexts, the Supreme Court has made clear that as a matter of due process, notice is not enough to confer personal jurisdiction over a party, or over its claims, or to give the court power over those claims. Instead, a formal service of process is required. *See, e.g. , Martin v. Wilks*, 490 U.S. 755, 763-64, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) ("a party seeking a judgment binding on another cannot obligate that person to intervene; ... Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree") (citations omitted); *see also Chase Nat'l. Bank v. City of Norwalk, Ohio*, 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894 (1934) ("[t]he law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger").

599 B.R. at 723-24. The claims of the Securities Class Action class members against the Third-Party D&O Defendants have nothing to do with bankruptcy, and due process neither allows this Court to exercise judgment over them nor extinguish them.

### IV.    THE RELEASES SOUGHT ALSO VIOLATE THE LETTER AND SPIRIT OF THE BANKRUPTCY CODE

The Debtors' proposed Release and Injunction Provisions are not sanctioned by any provision of the Bankruptcy Code to the extent they seek to discharge violations under the federal securities laws.  Congress made clear that the Bankruptcy Code was not intended to shield individuals from liability under federal securities laws, prohibiting such claims from discharge. *See* 11 U.S.C. § 523(a)(19)(A)(i).  As this Court stated in reference to the discharge exceptions in Section 523(a), "[t]he purpose of this exception [Subsection 19] is to help defrauded investors recoup their losses and to hold accountable those who violate securities laws after a government unit or private suit results in a judgment or settlement against the wrongdoer." *Dastinot*, 2012 Bankr. LEXIS 5403, at *24 (internal quotations omitted). No provision states otherwise.  And it is even more egregious here given the Release and Injunction Provisions do not even provide for a carve out for fraud, willful or malicious misconduct, or gross negligence (a carve-out the Debtors are providing for the Wind-Down Debtors with respect to indemnification claims).  *See* Plan, Arts. V.E. and VIII.B.

Excepting fraud claims from discharge is commonplace. *See In re Modell's Sporting Goods, Inc., et al.*, Case No. 20-14179-VFP (Bankr. D.N.J. Nov. 13, 2020) [Docket No. 827, Ex. A., Art. VIII.D.2.] [confirmed plan including a third-party release provision that states "the foregoing releases shall have no effect on the liability of any person or [e]ntity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct"]; *In Tri Harbor Holdings Corp. (f/k/a Aceto Corp.), et al.*, Case No. 19-13448-VFP (Bankr. D.N.J. Sept. 18, 2019) [Docket No. 996, Ex. A., § 9.05] [confirmed plan including a third-party release provision with a carve out for gross negligence, willful misconduct, or fraud]; *see also* In re: SunEdison, Inc., No. 16-10992 (SMB) (Bankr. S.D.N.Y.), Doc. No. 3735, p. 138 of 342 [carving

out "Securities Litigation Actions" from releases]; *In re: AppHarvest Products, LLC*, No. 23-90745 (Bankr. S.D. Tex.), Doc. No. 471, p. 60 of 66 [confirming opt-out for "Proposed Class" in connection with "Securities Litigation"]; *In re: Lordstown Motors Corp.*, No. 23-10831 (MFW) (D. Del.), Doc. No. 657, p. 54 of 69 [excluding from releases "Putative Class Action Representatives" and "any other party in connection with the potential certification of any putative class"]; *In re: CHC Group Ltd.*, No. 16-31854 (BJH) (N.D. Tex.), Doc. No. 1701, p. 63 of 74 ["the releases provided for herein shall not release (i) any claim against any non-Debtor that has been asserted by the named plaintiff or any member of the class . . . ."]. Thus, the Debtors' and Third-Party D&O Defendants' refusal to do so here smacks of foul play, especially in light of the timing of their decision to create and subrogate Class 9 claims in the midst of ongoing settlement negotiations.

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that the Court not approve the Debtors' Disclosure Statement, Solicitation and Notice Procedures, Opt-Out Forms, or Schedule unless: (i) the Securities Class Action is excepted from the Release and Injunction Provisions; (ii) the Disclosure Statement and Opt-Out Form explicitly disclose that the Securities Class Action is excepted from the Release and Injunction Provisions and Lead Plaintiff will opt-out of the Release and Injunction Provisions on behalf of all class members in the Securities Class Action; and (iii) Class 9 holders are properly solicited to provide them with appropriate time and opportunity to opt out of the Release and Injunction Provisions to protect their individual rights, if desired.[13]

*[Signature Page to Follow]*

---

[13] Lead Plaintiff respectfully requests permission to file a reply brief to respond to any opposition to this objection. Lead Plaintiff also reserves the right to object to the Plan in accordance with the Court's schedule.

Dated: January 16, 2024                          Respectfully submitted,


                                                 */s/ Michael J. Joyce*
                                                 Michael J. Joyce (No. 4563)
                                                 **JOYCE, LLC**
                                                 1225 King Street
                                                 Suite 800
                                                 Wilmington, DE 19801
                                                 Telephone: 302-388-1944
                                                 mjoyce@mjlawoffices.com

                                                       -and-

                                                 Adam M. Apton
                                                 Devyn R. Glass
                                                 LEVI & KORSINSKY, LLP
                                                 33 Whitehall Street, 17th Floor
                                                 New York, New York 10004
                                                 Telephone: (212) 363-7500
                                                 Email: aapton@zlk.com

                                                       -and-

                                                 Joshua B. Silverman
                                                 Christopher P.T. Tourek
                                                 POMERANTZ LLP
                                                 10 S. LaSalle St., Ste. 3505
                                                 Chicago, Illinois 60603
                                                 Telephone: (312) 377-1181
                                                 Email: jsilverman@pomlaw.com
                                                        ctourek@pomlaw.com

                                                 *Counsel for Lead Plaintiff*
                                                 *and Lead Counsel for the Class*
                                                 *in the Securities Class Action*