## **Exhibit 1**

**Confirmation Hearing Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**NOTICE OF (A) HEARING TO CONSIDER CONFIRMATION OF THE
CHAPTER 11 PLAN OF REORGANIZATION FOR PROTERRA INC AND ITS
DEBTOR AFFILIATE AND (B) RELATED VOTING AND OBJECTION DEADLINES**

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

---

**PLEASE BE ADVISED THAT UNDER THE PLAN HOLDERS OF A CLAIM ENTITLED TO VOTE ARE DEEMED TO GIVE CERTAIN RELEASES UNLESS YOU OPT OUT OR OBJECT TO THE PLAN.  PLEASE READ THIS NOTICE IN ITS ENTIRETY AND PLEASE SEE PAGE 5 BELOW FOR MORE DETAILS ON THE RELEASES.**

**ARTICLE IX** OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER. FAILURE TO FILE A TIMELY OBJECTION TO THE PLAN OR, WITH RESPECT TO THE RELEASES SET FORTH IN ARTICLE IX OF THE PLAN, TO TIMELY OPT OUT OR FILE A TIMELY OBJECTION TO THE PLAN THAT REMAINS UNRESOLVED AS OF CONFIRMATION, AS APPLICABLE, WILL RESULT, IF THE PLAN IS CONFIRMED, IN THE APPLICATION OF THE PROVISIONS SET FORTH BELOW, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS CONTAINED THEREIN; PROVIDED THAT HOLDERS OF CLAIMS OR INTERESTS IN CLASS 8 (EXISTING EQUITY INTERESTS IN TOPCO) OR CLASS 9 (SECTION 510(B) CLAIMS) WILL NOT BE DEEMED TO GIVE OR RECEIVE THE RELEASES UNLESS THEY SUBMIT AN OPT-IN FORM.

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

**PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors") to solicit acceptances for the *Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *Third Amended Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on March 5, 2024 at 10:00 AM (ET), before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

---

**PLEASE BE ADVISED**: THE CONFIRMATION HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE COURT OR THE DEBTORS IN CONSULTATION WITH THE COMMITTEE **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

---

## CRITICAL INFORMATION REGARDING VOTING ON THE PLAN

**Voting Record Date**.  The voting record date was January 18, 2024 (the "Voting Record Date"), which is the date for determining which Holders of Claims in Classes 4 and 5 are entitled to vote on the Plan.

**Voting Deadline**.  Within four (4) business days after entry of the Disclosure Statement Order, the Debtors will complete the mailing of Solicitation Packages to solicit votes to accept or reject the Plan from the Holders of Claims in Class 4 and holders of Claims in Class 5 each as of the Voting Record Date.  The deadline for voting on the Plan is on February 27, 2024 at 4:00 PM (ET) (the "Voting Deadline").  If you received a Solicitation Package, including a Ballot, and intend to vote on the Plan, you **must**: (a) follow the instructions carefully; (b) complete **all** of the required information on the Ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is **actually received** by the Debtors' voting and solicitation agent, Kurtzman Carson Consultants LLC ("KCC" or the "Solicitation Agent"), on or before the Voting Deadline.  **A failure to follow such instructions may disqualify your vote**.

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

**Voting Classes**.  Only Holders of Second Lien Convertible Notes Claims (Class 4) and General Unsecured Claims (Class 5) are entitled to vote to accept or reject the Plan.  All other classes of Claims and Interests are deemed either to accept or reject the Plan.

**Non-Voting Status of Holders of Certain Claims and Interests**.  Certain Holders of Claims and Interests are **not** entitled to vote on the Plan.  As a result, such parties will not receive any ballots or other related solicitation materials to vote on the Plan.  The Holders of Claims and Interests in Class 1 (Other Secured Claims); Class 2 (Other Priority Claims); Class 3 (First Lien Claims); Class 6 (Intercompany Claims); Class 7 (Existing Equity Interests in OpCo); Class 8 (Existing Equity Interests in TopCo); and Class 9 (Section 510(b) Claims) are not entitled to vote on the Plan and will not receive a solicitation materials to vote on the Plan.

**Plan Objection Deadline**.  The deadline for filing objections to the Plan is **February 27, 2024 at 4:00 PM (ET)** (the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,**<br>**Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>- *and* -<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |

| U.S. Trustee |
|---|
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey |

## ADDITIONAL INFORMATION

**Obtaining Solicitation Materials**. The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials if you received electronic access to the solicitation materials), contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov. Please be advised that the Solicitation Agent is authorized to answer any questions about, and provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

**Notice of the Assumption of Executory Contracts**. Under the terms of Article V of the Plan, on the Effective Date, except as provided in the Plan (including, with respect to D&O Policies, under Article IV.P of the Plan), the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases, unless such Executory Contract is a D&O Policy or an Insurance Contract, that (a) have not been identified on the Schedule of Assumed Executory Contracts and Unexpired Leases, if any (which shall be included in the Plan Supplement), (b) have not been otherwise rejected, assumed, or assumed and assigned, including in connection with any Sale, or which have not been designated for assumption or assumption and assignment pursuant to the terms of any Sale Order, or (c) are not otherwise rejected, assumed, assumed and assigned, or the subject of a motion filed by the Debtors prior to the Effective Date to assume, assume and assign, or reject such Executory Contracts and Unexpired Leases on which the Bankruptcy Court has not ruled and is still pending.

---

**BINDING NATURE OF THE PLAN:**

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASES OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, OR (III) VOTED TO REJECT THE PLAN.**

---

31183142.3

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN THE PLAN

**Releases, Exculpation, and Injunction under Articles I and IX.**

**Please be advised that under Article I of the Plan:**

(a)    Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it: (a) is a holder of a Claim or Interest who is deemed to reject the Plan and does not opt into the releases set forth herein; (b) is a holder of a Claim or Interest who elects to opt out of the releases contained in the Plan, *provided*, *however*, that Avoidance Actions shall not be pursued and shall be released against any vendor or trade creditor notwithstanding whether any such vendor or trade creditor elects to opt out of the releases; (c) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector; (d) is an LG Party; or (e) is Cyress Jam, in his individual capacity (including as an individual holder of any Claims against, or Interests in, the Debtors).

(b)    Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims or Interests who are deemed to reject the Plan and opt in to granting the releases set forth herein, (i) the holders of all Claims and Interests who are Unimpaired under the Plan, (j) with respect to each of the foregoing Persons, in clauses (a) through (i), each of their Affiliates, solely in their capacities as such and solely to the extent a Person in clauses (a) through (i) has the authority to bind such Affiliate in such capacity, and (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case, solely in their respective capacities as such and solely to the extent a Person in clauses (a) through (j) has the authority to bind them in such capacity; *provided* that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector; *provided*, *further*, that Cyress Jam, in his individual capacity (including as an individual holder of Claims against, or Interests in, the Debtors) shall not be a Releasing Party.

**Please be advised that under Article IX of the Plan:**

**Releases by the Debtors**

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, as of the Effective Date, each of the Released Parties is unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged by the Debtors, the Reorganized Debtors, any Wind Down Debtor, and each of their Estates, including any successors to the Debtors or any Estate's representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, any Causes of Action that any Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Debtors, the Reorganized Debtors, any Wind Down Debtor, or their Estates (whether individually or collectively) ever had, now has, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Released Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release:  (a) to the extent that any Claims or other Causes of Action against the Debtors are not released pursuant to the Plan, are not discharged pursuant to the Plan, or are Disputed, any rights of the Debtors, the Reorganized Debtors, and the Wind Down Debtors to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims or other Causes of Action in response to such

Causes of Action; (b) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (c) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any other document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (e) any obligations of any party or Entity under the Sale Documents; (f) any Retained Causes of Action; (g) any Causes of Action asserted or assertable by any Debtor against any non-Debtor party to any Retained Cause of Action; (h) any Cause of Action against a Released Party determined in a Final Order to be arising out of actual fraud, gross negligence, or willful misconduct of such Released Party; or (i) any Intercompany Claim or Intercompany Interest.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) essential to the Confirmation of the Plan; (b) an exercise of the Debtors' business judgment; (c) in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (d) a good faith settlement and compromise of the Causes of Action released by the Debtor Release; (e) in the best interests of the Debtors and all Holders of Claims and Interests; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Debtors, the Reorganized Debtors, the Wind Down Debtors, and the Estates, including any successors to the Debtors or any Estate's representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, asserting any Cause of Action released pursuant to the Debtor Release.

Each of the Debtors expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that each Debtor does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Debtor expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE

**MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

**Each of the Debtors expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.**

<u>**Releases by the Releasing Parties**</u>

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims,**

offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action; or (h) any Cause of Action against a Released Party determined in a Final Order to be arising out of actual fraud, gross negligence, or willful misconduct of such Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT**

**TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

**Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.**

<u>**Exculpation**</u>

**To the fullest extent permitted by applicable law, no Exculpated Party will have or incur any liability to any person or Entity for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Debtors' restructuring efforts, the Chapter 11 Cases, preparation for the Chapter 11 Cases, the filing of the Chapter 11 Cases, formulation, preparation, dissemination, negotiation, filing, or termination of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with any of the foregoing, the Sales, the funding of the Plan, the occurrence of the Effective Date, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, the issuance of securities pursuant to the Plan, the issuance of the New Common Stock, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, gross negligence, or willful misconduct, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The foregoing shall not be deemed to release, affect, or limit any post-Effective Date rights or obligations of the Exculpated Parties under the Plan, any Restructuring Transaction, or any other document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement).**

**The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

**The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

31183142.3

**Discharge; Injunction**

This Discharge and Injunction shall become effective only in the event that a Reorganization, as defined in the Plan, occurs.

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall discharge, effective as of the Effective Date, Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Interest on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing). The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.**

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released pursuant to the Plan provisions setting forth the releases granted by the Debtors or the Releasing Parties, or discharged pursuant to the Plan, or are subject to exculpation pursuant to the article of the Plan which provides for the exculpation of the Exculpated Parties, shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Wind Down Debtors, the Exculpated Parties, or the Released Parties or the Distribution Trust: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect**

to any such Claims or Interests unless such Entity has, on or before the Effective Date, asserted such setoff right in a document filed with the Bankruptcy Court (i.e., a timely filed motion or proof of claim) explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

**<u>Non-Discharge of the Debtors; Injunction</u>**

This Non-Discharge and Injunction shall become effective only in the event that a Plan Support Agreement Termination, as defined in the Plan, occurs.

**In accordance with section 1141(d)(3) of the Bankruptcy Code, the Plan does not discharge the Debtors. Section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. As such, no Entity holding a Claim or Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan. All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.**

**Except as otherwise expressly provided for in the Plan or Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities are permanently enjoined, on and after the Effective Date, on account of or in connection with any Claim or Interest or Cause of Action, from:**

    a.    **commencing or continuing in any manner any action or other proceeding of any kind against any of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee;**

    b.    **enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee;**

    c.    **creating, perfecting or enforcing any encumbrance of any kind against any of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee;**

    d.    **asserting any right of setoff or subrogation of any kind against any obligation due from any of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee, except to the extent a right to setoff or subrogation is asserted with respect to**

**a timely filed proof of Claim or motion filed before the Effective Date; or**

e. **commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Interest or Cause of Action released under this Article IX.**

**Such injunction shall extend to any successors and assigns of the Debtors, the Wind Down Debtors, their Estates, or the Distribution Trustee and their respective assets and properties. Any Entity injured by any willful violation of such injunction may seek actual damages and, in appropriate circumstances, may seek punitive damages from the willful violator.**

**Unless otherwise provided herein, any injunction or stay arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code or otherwise that is in existence on the Confirmation Date shall remain in full force and effect until the Chapter 11 Cases are closed.**

<u>**Setoffs**</u>

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim or an Interest, each Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee (as applicable) may set off against any Allowed Claim or Allowed Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Allowed Interest (before any distribution is made on account of such Allowed Claim or Allowed Interest), any claims, rights and Causes of Action of any nature that such Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee, as applicable, may hold against the Holder of such Allowed Claim or Allowed Interest, to the extent such claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee of any such claims, rights and Causes of Action that such Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee may possess against such Holder. In no event shall any Holder of Claims or Interests be entitled to set off any Claim or Interest against any claim, right or Cause of Action of the applicable Debtor, the Reorganized Debtors, each Wind Down Debtor, or the Distribution Trustee unless such Holder has timely Filed a motion or proof of claim with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date.

The Plan also contains other related provisions that may affect your rights against the Debtors.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

31183142.3

[*Remainder of Page Intentionally Left Blank*]

Dated:    [Month DD, YYYY]            Respectfully submitted,
          Wilmington, Delaware         **YOUNG CONAWAY STARGATT &**
                                       **TAYLOR, LLP**

                                       []_____
                                       Pauline K. Morgan (No. 3650)
                                       Andrew L. Magaziner (No. 5426)
                                       Shella Borovinskaya (No. 6758)
                                       Rodney Square
                                       1000 North King Street
                                       Wilmington, Delaware 19801
                                       Telephone: (302) 571-6600
                                       Facsimile: (302) 571-1253
                                       Email:  pmorgan@ycst.com
                                               amagaziner@ycst.com
                                               sborovinskaya@ycst.com

                                            - and -

                                       **PAUL, WEISS, RIFKIND,**
                                       **WHARTON & GARRISON LLP**
                                       Paul M. Basta (admitted *pro hac vice*)
                                       Robert A. Britton (admitted *pro hac vice*)
                                       Michael J. Colarossi (admitted *pro hac vice*)
                                       1285 Avenue of the Americas
                                       New York, New York 10019
                                       Tel:    (212) 373-3000
                                       Fax:    (212) 757-3990
                                       Email:  pbasta@paulweiss.com
                                               rbritton@paulweiss.com
                                               mcolarossi@paulweiss.com

                                       *Counsel to the Debtors and*
                                       *Debtors in Possession*

---

If you have questions about this Notice, please contact:
KCC
**Telephone:** (888) 251-3076 (Toll Free U.S. & Canada) or +1 (310) 751-2617 (Non-U.S. &
Canada Parties)
**Website:** https://www.kccllc.net/proterra

---

**<u>Exhibit 2</u>**

**Solicitation and Voting Procedures**

31183142.3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

## SOLICITATION AND VOTING PROCEDURES

**PLEASE TAKE NOTICE THAT**, on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *Third Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

### A.    The Voting Record Date for Class 4 (Second Lien Convertible Notes) and Class 5 (General Unsecured Claims)

1.    The record date to determine which Claims in Class 4 and Class 5 was January 18, 2024 (the "Voting Record Date").

### B.    The Voting Deadline

2.    The Court has approved February 27, 2024 at 4:00 PM (ET) as the deadline to submit Ballots and/or Opt-In Forms (the "Voting Deadline") for the Plan.  The Debtors may extend the Voting Deadline, in their discretion, in consultation with the Committee, without further order of the Court.

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

3.      To be counted as votes to accept or reject the Plan, and make opt-out elections, all ballots sent to registered holders of Claims (each, a "<u>Ballot</u>") must be properly executed, completed, and returned in the pre-paid, pre-addressed return envelope included in the Solicitation Package or delivered by: (a) first-class U.S. mail; (b) overnight courier; (c) personal delivery; or (d) "E-Ballot", so that they are *actually received*, in any case, no later than the Voting Deadline by Kurtzman Carson Consultants LLC ("<u>KCC</u>" or the "<u>Solicitation Agent</u>").

4.      All Ballots should be submitted as follows: (a) if by first class mail, overnight, or personal delivery, to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (b) if via "E-Ballot" submission, by visiting https://kccllc.net/proterra. Delivery of a Ballot to the Solicitation Agent by facsimile or electronic mail shall not be valid and shall not be counted by the Solicitation Agent.

5.      Any holder of a Claim (other than a Claim in Class 9) that (i) (a) votes to "Reject" or does not vote on the Plan and (b) checks the Release Opt-Out box under Item 2 of the Ballot, (ii) returns a properly completed Opt-Out Form indicating that such holder has elected to opt out of the releases set forth in Article IX of the Plan, or (iii) timely files an objection to the Plan that is not consensually resolved before Confirmation or files on the docket any pleading evidencing support for any such objection or objector, shall *not* be a Releasing Party. To be counted as a holder of a Claim deemed to have opted out of the release, such holder must (i) properly execute, complete, and deliver its Ballot or Opt-Out Form, as applicable, so that it is *actually received*, in any case, no later than the Voting Deadline by the Solicitation Agent, or (ii) timely file an objection to the Plan that is not resolved prior to confirmation, or file on the docket any pleading evidencing support for any such objection or objector; *provided*, *that* holders of Claims or Interests in Class 8 or Class 9, shall not be deemed to have provided the releases set forth in the Plan unless they return an Opt-In Form.

6.      All Opt-In Forms should be submitted as follows: (a) if by first class mail, overnight, or personal delivery, to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (b) if via "E-Ballot" submission, by visiting https://kccllc.net/proterra. With regard to Opt-In Forms by holders of Class 8 TopCo Interests, Beneficial Holders should follow the instructions provided by their Nominees to submit their elections. Nominees may submit their Master Opt-In Forms via electronic mail at ProterraInfo@kccllc.com. Delivery of an Opt-In Form to the Solicitation Agent by facsimile or electronic mail, other than by Nominees of their Master Opt-In Forms, shall not be valid and shall not be counted by the Solicitation Agent.

### C.      Form, Content, and Manner of Notices

### The Solicitation Package

7.      The following materials shall constitute the solicitation package (the "<u>Solicitation Package</u>"):

   a.      A copy of these Solicitation and Voting Procedures attached as **<u>Exhibit 2</u>** to the Proposed Order;

b.    A Ballot, together with detailed voting instructions and a pre-addressed, postage pre-paid return envelope attached hereto as **Exhibits 3-A** and **3-B** to the Proposed Order, respectively;[3]

c.    The Solicitation Package Cover Letter and UCC Letter attached hereto as **Exhibit 7** to the Proposed Order;

d.    The Disclosure Statement (and exhibits thereto, including the Plan);

e.    This Disclosure Statement Order;

f.    the Confirmation Hearing Notice attached hereto as **Exhibit 1** to the Proposed Order; and

g.    such other materials as the Court may direct.

**Distribution of the Solicitation Package**

8.    The Solicitation Package shall provide the Plan, the Disclosure Statement, and the Disclosure Statement Order (without exhibits), and the Solicitation and Voting Procedures in electronic format (i.e., flash drive), and all other contents of the Solicitation Package, including Ballots, shall be provided in paper format.  Any party that receives the materials in electronic format but would prefer paper format may contact the Solicitation Agent by:  (a) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International); (b) visiting the Debtors' restructuring website at:  https://www.kccllc.net/proterra; (c) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300 El Segundo, CA 90245; and/or (d) email via www.kccllc.net/proterra/inquiry (with "Proterra Solicitation" in the inquiry) and requesting paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).

9.    The Debtors shall serve, or cause to be served, all of the materials in the Solicitation Package (excluding the Ballots) on the U.S. Trustee and all parties who have requested service of papers in this case pursuant to Bankruptcy Rule 2002 as of the Voting Record Date.  In addition, the Debtors shall mail, or cause to be mailed, the Solicitation Package to all holders of Claims in the Voting Classes who are entitled to vote by the date that is four (4) business days after the Court enters the Disclosure Statement Order, as described below in Section D.

10.    To avoid duplication and reduce expenses, the Debtors will use commercially reasonable efforts to ensure that any holder of a Claim who has filed duplicative Claims against a Debtor (whether against the same or both Debtors) that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class as against that Debtor.

---

[3]    The Debtors will use commercially reasonable efforts to ensure that any holder of a Claim who has filed duplicate Claims against the Debtors (whether against the same or both Debtors) that are classified under the Plan in the same Voting Class, receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class.

**Resolution of Disputed Claims for Voting Purposes; Resolution Event**

a.      Absent a further order of the Court, the holder of a Claim in a Voting Class that is the subject of a pending objection filed with the Court by the Debtors on a "reduce and allow" basis shall be entitled to vote such Claim in the reduced amount contained in such objection.

b.      If a Claim in a Voting Class is subject to an objection other than a "reduce and allow" objection that is filed with the Court before the Voting Record Date:   (i) the Debtors shall cause the applicable holder to be served with a Disputed Claim Notice substantially in the form annexed as **Exhibit 4-C** to the Disclosure Statement Order; and (ii) the applicable holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless  a Resolution Event (as defined herein) occurs as provided herein.

c.      A "Resolution Event" means the occurrence of one or more of the following events no later than three (3) business days prior to the Voting Deadline:

i.      an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

ii.      an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

iii.      a stipulation or other agreement is executed between the holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed-upon amount; or

iv.      the pending objection is voluntarily withdrawn by the Debtors.

d.      No later than two (2) business days following the occurrence of a Resolution Event, the Debtors shall cause the Solicitation Agent to distribute via electronic mail, hand delivery, or overnight-courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant holder.  Such claimant must then return a duly completed, properly executed Ballot to the Solicitation Agent so that it is received no later than the Voting Deadline (unless the Debtors extend the deadline in their sole discretion, in consultation with the Committee to facilitate a reasonable opportunity for such creditor to vote on the Plan).

**Non-Voting Status Notices for Unimpaired Classes and Classes Deemed to Reject the Plan**

11.     Certain Holders of Claims and Interests that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code or who are not entitled to vote because they are Unimpaired or otherwise conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code will receive only the Notice of Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan, substantially in the form annexed as **Exhibit 4-A** to the Disclosure Statement Order.  Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots). Certain holders of Claims and Interests who are not entitled to vote because they are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code will receive the Notice of Non-Voting Status to Holders of Impaired Interests Deemed to Reject the Plan, substantially in the form annexed as **Exhibit 4-B** to the Disclosure Statement Order.  Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

D.     **Voting and Tabulation Procedures**

**Holders of Claims Entitled to Vote**

12.     Only the following holders of Claims in the Voting Classes shall be entitled to vote with regard to such Claims:

a.     holders of Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim (or an untimely Proof of Claim that has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) that:  (i) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date and (ii) is not the subject of a pending objection filed with the Court by the Voting Record Date; *provided*, that a holder of a Claim that is the subject of a pending objection on a "reduce and allow" basis shall receive a Solicitation Package and be entitled to vote such Claim in the reduced amount contained in such objection absent a further order of the Court; *provided, further*, that if a Claim is subject to an objection other than a "reduce and allow" objection that is filed with the Court prior to the Voting Record Date, the applicable holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event (as defined herein) occurs as provided herein;

b.     holders of Claims that are listed in the Schedules (as defined in the plan) (to the extent a superseding Proof of Claim has not yet been timely filed as of the Voting Record Date) in an amount greater than $0; *provided* that if the applicable Bar Date has not expired prior to the Voting Record Date, a Claim listed in the Schedules as contingent, disputed, or unliquidated that has not been paid in full

or superseded by a filed Proof of Claim shall be allowed to vote only in the amount of $1.00, solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code;

d.      holders whose Claims arise:  (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court; (ii) in an order entered by the Court; or (iii) in a document executed by the Debtors pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed;

e.      holders of any Disputed Claim that has been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018(a);

f.      with respect to any entity described in subparagraphs (a) through (e) above, who, on or before the Voting Record Date, has transferred such entity's Claim to another entity, the assignee of such Claim; provided that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register (as defined in the Plan) as of the Voting Record Date.

### Establishing Claim Amounts for Voting Purposes

13.      **Class 4 Claims**.  Notwithstanding anything to the contrary set forth herein, the Claims amount of Class 4 Second Lien Convertible Notes, for voting purposes only, will be established by reference to (a) the Debtors' applicable books and records and (b) the list of record holders maintained by the Second Lien Agent (as defined in the Plan), dated as of the Voting Record Date, as evidenced by the applicable records provided by the Second Lien Agent to the Debtors or the Solicitation Agent, which records shall be provided no later than one (1) Business Day following the Voting Record Date.  Proofs of Claim for $0.00 are not entitled to vote.

If a Proof of Claim is amended, the last filed claim shall be subject to these rules and will supersede any earlier filed claim, and any earlier filed claim will be disallowed for voting purposes.

14.      **Class 5 Claims**.  Notwithstanding anything to the contrary set forth herein, the Claims amount of Class 5 General Unsecured Claims, for voting purposes only, will be established based on the amount of the applicable positions held by such Class 5 Claim holder, as of the Voting Record Date, as evidenced by (a) the Schedules and (b) the official register of Claims in the Chapter 11 Cases.  Proofs of Claim filed for $0.00 are not entitled to vote.

If a Proof of Claim is amended, the last filed claim shall be subject to these rules and will supersede any earlier filed claim, and any earlier filed claim will be disallowed for voting purposes.

15.      **Filed/Scheduled Claims**.  The Claim amount established herein shall control for voting purposes only and shall not constitute the Allowed (as defined in the Plan) amount of any Claim.  Moreover, any amounts filled in on Ballots by the Debtors through the Solicitation Agent, as applicable, are not binding for purposes of allowance and distribution.  In tabulating votes, the

following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

a.     the Claim amount:  (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court; (ii) set forth in an order of the Court; or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court;

b.     the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event under the procedures set forth in these Solicitation and Voting Procedures;

c.     the Claim amount contained in a Proof of Claim that has been timely filed (or deemed timely filed by the Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; if such Claim is not subject to an objection filed in the Court on or before the Voting Record Date; *provided, however*, that Ballots cast by holders of Claims who timely file a Proof of Claim in respect of a contingent Claim or in a wholly-unliquidated or unknown amount (based on a reasonable review by the Debtors and/or the Solicitation Agent) that is not the subject of an objection will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count as Ballots for Claims in the amount of $1.00, solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and, if a Proof of Claim is filed as partially liquidated and partially unliquidated, such Claim will be Allowed for voting purposes only in the liquidated amount; *provided further*, that to the extent the Claim amount contained in the Proof of Claim is different from the Claim amount (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court; (ii) set forth in an order of the Court; or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court, such Claim amount shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes;

d.     the Claim amount listed in the Schedules, *provided* that such Claim is not scheduled as contingent, disputed, or unliquidated (for the avoidance of doubt, to the extent a Claim is scheduled as contingent, disputed, or unliquidated and no Proof of Claim is timely filed, the holder of such Claim shall not be entitled to vote on the Plan); *provided further* that if the Bar Date applicable to governmental units has not expired prior to the Voting Record Date with respect to a Claim of a governmental unit that is listed in the Schedules as contingent, disputed or unliquidated, such Claim shall be allowed to vote only in the amount of $1.00, solely for the purposes of

satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code; and

e.  in the absence of any of the foregoing, such Claim shall be disallowed for voting purposes unless otherwise ordered by the Court.

### Voting and Ballot Tabulation Procedures

16.  The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right, in consultation with the Committee, to waive any of the below specified requirements for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules:

a.  Except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline (as the same may be extended by the Debtors, in consultation with the Committee, or by order of the Court), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with Confirmation of the Plan.

b.  The Debtors will file with the Court, not later than March 1, 2024 at 4:00 PM (ET), a certification of votes (the "Voting Declaration"). The Voting Declaration shall, among other things, certify to the Court in writing the amount and number of Allowed Claims of each Class accepting or rejecting the Plan, to the extent reasonably practicable, the amount and number of Allowed Claims of each class returning a completed Opt-In Form (including the identities of those that opted in; provided, however, holders of Interests may be reported using account or unique identifier information as provided by the nominees), and delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or necessary information, received via facsimile or e-mail, or damaged (all such Ballots, "Irregular Ballots"). The Voting Report shall indicate the Debtors' intentions with regard to each such Irregular Ballot.

c.  The method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Solicitation Agent actually receives the executed Ballot.

d.  An executed Ballot is required to be submitted by the entity submitting such Ballot. Subject to the other procedures and requirements herein, completed, executed Ballots may be submitted

to the Solicitation Agent via the Solicitation Agent's E-Ballot system at https://kccllc.net/proterra. However, Ballots submitted by electronic mail or facsimile will not be valid and will not be counted by the Solicitation Agent.

e.  No Ballot should be sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), the Debtors' financial or legal advisors, and any Ballot so sent will not be counted.

f.  If multiple Ballots are received from the same holder with respect to the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior Ballot.

g.  Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted. Further, to the extent there are multiple Claims within the same Class filed by the same holder, the Debtors may, in their discretion, aggregate the Claims of any particular holder within a Class for the purpose of counting votes.

h.  A person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a holder of Claims must indicate such capacity when signing and, if required, or requested by KCC, the Debtors, or the Court, must submit evidence satisfactory to the requesting party to act on behalf of the holder of the Claim.

i.  Subject to any contrary order of the Court, the Debtors, in consultation with the Committee, further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. KCC, in its discretion, may contact entities entitled to vote to cure any defects in the Ballot; provided, however, that KCC is not obligated to do so.

j.  Unless waived or otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted.

k.  In the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the

Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected.

l.      If a Claim has been estimated or otherwise Allowed for voting purposes only by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution.

m.      If an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein.

n.      After the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors, in consultation with the Committee.

o.      The Debtors, in consultation with the Committee, are authorized to enter into stipulations with the holder of any Claim agreeing to the amount of a Claim for voting purposes.

p.      Where any portion of a single Claim has been transferred to a transferee, the holders of any portion of such single Claim will be: (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other voting and solicitation procedures set forth herein); and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan.  In the event that:  (i) a Ballot; (ii) a group of Ballots within a Voting Class received from a single creditor; or (iii) a group of Ballots received from the various holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots shall not be counted.

q.      Claims filed for $0.00 are not entitled to vote.

r.      Creditors with claims that have been indefeasibly paid, in full or in part, shall only be permitted to vote the unpaid amount of that Claim, if any, to accept or reject the Plan.

s.      Duplicate Claims within the Voting Classes will be deemed temporarily allowed for voting purposes only in an amount equal to one of those Claims and not in an amount equal to the aggregate of those Claims.

t.      Creditors will not be entitled to vote Claims to the extent their Claims have been superseded and/or amended by other Claims filed by or on behalf of such creditors, regardless of whether the Debtor has objected to the earlier filed Claim.

31183142.3

u.    If a proof of claim is filed that is based solely on a Holder's equity Interests or the losses thereto, such Holder will be classified as a Class 8 claimant and such Claim will be treated in accordance with Class 8 and not entitled to vote.

v.    For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in one of the Voting Classes will be aggregated as if that creditor held one claim in such Voting Class, and the votes related to those Claims will be treated as a single vote to accept or reject the Plan.

w.    The holder of a Claim must complete each section of the Ballot, including, without limitation, certifying the amount of its Claim, voting to accept or reject the Plan, completing the requested identification information, and signing and dating the Ballot.

x.    The following Ballots shall not be counted in determining the acceptance or rejection of the Plan:

    i.    any Ballot that is illegible or contains insufficient information to permit the identification of the holder of such Claim;

    ii.    any Ballot that (a) does not indicate an acceptance or rejection of the Plan, (b) indicates both an acceptance and rejection of the Plan, and/or (c) partially accepts and partially rejects the Plan;

    iii.    any Ballot cast by a person who does not hold, or represent a person that holds, a Claim in a Voting Class as of the Voting Record Date, or who otherwise is not entitled to vote pursuant to the procedures described herein;

    iv.    any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed;

    v.    any Ballot received after the Voting Deadline unless the Debtors, in consultation with the Committee, have granted an extension in writing (including e-mail) with respect to such Ballot. The Holder of a Claim may choose the method of delivery of its Ballot to the Solicitation Agent at its own risk. Delivery of the Ballot will be deemed made only when the original properly executed Ballot is actually received by the Solicitation Agent;

    vi.    any Ballot delivered by facsimile transmission, electronic mail, or any other means not specifically approved herein,

provided that Ballots submitted through the E-Ballot will be counted;

vii.  any Ballot submitted to the Debtors or any person, entity, or agent of the Debtors other than the Solicitation Agent; and

viii.  any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot cast via the Debtors' online "E-Ballot" submission portal will be deemed to have an original signature).

**Amendments to the Plan and Solicitation and Voting Procedures**

17.    The Debtors, in consultation with the Committee, reserve the right to make changes to the Disclosure Statement, Plan, Confirmation Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Cover Letter, Solicitation and Voting Procedures, Plan Cure Notice, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

**<u>Exhibit 3-A</u>**

**Form of Class 4 Ballot**

(Second Lien Convertible Notes)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PROTERRA INC, *et al.*,[1] | ) | Case No. 23-11120 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11
## PLAN OF REORGANIZATION FOR PROTERRA INC AND ITS DEBTOR AFFILIATE

---

**THIRD-PARTY RELEASE**

**PLEASE BE ADVISED THAT <u>ARTICLE IX</u> OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING THOSE SET FORTH BELOW.**

**<u>ARTICLE IX</u> CONTAINS A THIRD-PARTY RELEASE.  YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN <u>ARTICLE IX</u> OF THE PLAN AS YOUR RIGHTS MAY BE AFFECTED.**

---

**HOLDERS OF CLASS 4 SECOND LIEN CONVERTIBLE NOTES CLAIMS SHOULD READ THIS ENTIRE BALLOT BEFORE COMPLETING.**

**PLEASE COMPLETE, DATE, AND SIGN THE BALLOT AND RETURN IT TO THE SOLICITATION AGENT IN THE ENCLOSED PREADDRESSED, POSTAGE PREPAID ENVELOPE, BY FIRST CLASS MAIL, OVERNIGHT COURIER, HAND DELIVERY, OR VIA ELECTRONIC BALLOT.**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

> **YOUR VOTE MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE "<u>VOTING DEADLINE</u>").**
>
> **The boxes to accept or reject the Plan and to exercise your right with respect to the third-party releases are contained on page 3 of this Ballot.**

Proterra Inc and Proterra Operating Company, Inc. (together, the "<u>Debtors</u>") in the above-captioned Chapter 11 Cases, are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "<u>Plan</u>"). The Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has approved that certain *Third Amended Disclosure Statement for Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [●] (the "<u>Disclosure Statement Order</u>"). Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court. Capitalized terms used but not otherwise defined herein shall have the same meanings set forth in the Plan.

You are receiving this Class 4 Ballot because you were a Holder of a Class 4 Claim as of January 18, 2024 (the "<u>Voting Record Date</u>"). Under the terms of the Plan, Holders of Class 4 Claims are entitled to vote to accept or reject the Plan. The boxes to accept or reject the Plan and to exercise rights on Third-Party Releases are contained on page 3 of this Ballot.

> **Included in Item 2 of this Class 4 Ballot is an Opt-Out Form related to the releases by Holders of Claims set forth in Article IX of the Plan. You are deemed to have consented to the releases by Holders of Claims unless you (a) either vote to "REJECT" or do not vote on the Plan; and (b) check the Release Opt-Out box under Item 2 of this Ballot, and complete the Certification in Item 4 of this Ballot, and return this Ballot so that it is actually received no later than the Voting Deadline, or timely File an objection to the releases by Holders of Claims. If you vote to "ACCEPT" the Plan, you are deemed to consent to the releases by Holders of Claims unless you timely file an objection to the Plan that is not resolved prior to confirmation, or file on the docket any pleading evidencing support for any such objection or objector.**

Your rights are further described in the Disclosure Statement, which was included in the package (the "<u>Solicitation Package</u>") you are receiving with this Class 4 Ballot. If you need to obtain additional Solicitation Packages, you may obtain them (at the Debtors' expense) by (a) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International); (b) visiting the Debtors' restructuring website at: https://www.kcccllc.net/proterra; (c) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300 El Segundo, CA 90245; and/or (d) emailing via www.kcccllc.net/proterra/inquiry (with "Proterra Solicitation" in the inquiry) and requesting paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense). You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov.

31183142.3

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, opting out of the Releases by Holders of Claims, and making certain certifications with respect to the Plan. If you believe you have received this Class 4 Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately at the address, or telephone number set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 4 under the Plan. If you hold Claims in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

### Item 1. Amount of Claim.

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of a Class 4 Claim in the following aggregate unpaid principal amount (insert amount in box below):

> Amount of Claim: $ _____

### Item 2. Vote on Plan.

The Holder of the Class 4 Claim set forth in Item 1 votes to (please check only <u>one</u> box):

> **ACCEPT** (vote FOR) the Plan          **REJECT** (vote AGAINST) the Plan

### IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE IN ARTICLE IX OF THE PLAN:

**IF YOU ARE A "RELEASED PARTY" OR YOU VOTE TO ACCEPT THE PLAN OR DO NOT OTHERWISE OPT OUT, YOU SHALL BE A "RELEASING PARTY" UNDER THE PLAN, AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE PROVISIONS CONTAINED IN THE PLAN. YOUR DECISION ON THIS ELECTION DOES NOT AFFECT THE AMOUNT OF DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

31183142.3

> The Holder of the Class 4 Claim against the Debtors set forth in Item 1 elects to:

## Item 3. The Plan Includes Certain Release Provisions.

To provide additional information regarding the Third-Party Release, the following sections of the Plan have been copied immediately below: Article I.A. (definition of Related Party), Article I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), and **Article IX.C (Releases by the Releasing Parties)**, Article IX.D (Exculpation), and Article IX.E (Non-Discharge of the Debtors; Injunction).[2]  To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following:

(a)     Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it: (a) is a holder of a Claim or Interest who is deemed to reject the Plan and does not opt into the releases set forth herein; (b) is a holder of a Claim or Interest who elects to opt out of the releases contained in the Plan, *provided*, *however*, that Avoidance Actions shall not be pursued and shall be released against any vendor or trade creditor notwithstanding whether any such vendor or trade creditor elects to opt out of the releases; (c) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector; (d) is an LG Party; or (e) is Cyress Jam, in his individual capacity (including as an individual holder of any Claims against, or Interests in, the Debtors).

(b)     Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims or Interests who are deemed to reject the Plan and opt in to granting the releases set forth herein, (i) the holders of all Claims and Interests who are Unimpaired under the Plan, (j) with respect to each of the foregoing Persons, in clauses (a) through (i), each of their Affiliates, solely in their capacities as such and solely to the extent a Person in clauses (a) through (i) has the authority to bind such Affiliate in such capacity, and (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers,

---

[2]     Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case, solely in their respective capacities as such and solely to the extent a Person in clauses (a) through (j) has the authority to bind them in such capacity; *provided* that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector; *provided*, *further*, that Cyress Jam, in his individual capacity (including as an individual holder of Claims against, or Interests in, the Debtors) shall not be a Releasing Party.

(c)    Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any**

Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action; or (h) any Cause of Action against a Released Party determined in a Final Order to be arising out of actual fraud, gross negligence, or willful misconduct of such Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

**Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.**

## Item 4. Certifications

By Signing this Ballot, the undersigned certifies to the Court and the Debtors:

1. that as of the Voting Record Date, the undersigned is either: (a) the Holder of the Class 4 Claim(s) (Second Lien Convertible Notes) being voted or (b) an authorized signatory for the Holder of the Class 4 Claim(s) (Second Lien Convertible Notes) being voted;

2. that it has received the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

3. that it has cast the same vote with respect to all Class 4 Claims (Second Lien Convertible Notes) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

4. that no other Ballots with respect to the amount of the Class 4 (Second Lien Convertible Notes) Claim(s) identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim(s), then any such Ballots dated earlier are hereby revoked;

5. it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 4 Claim(s) (Second Lien Convertible Notes) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

6. that it understands and, if accepting the Plan, agrees with the treatment provided under the Plan for the Claim(s) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

7. that it understands that, if it casts a vote to accept the Plan and does not timely file an objection to the Plan or file on the docket a pleading evidencing support for any such objection or objector; or votes to reject the Plan or does not vote either to accept or reject the Plan, and does not complete the Opt-Out Form in Item 2 or timely file an objection to the releases by Holders of Claims, it or the Holder on whose behalf it is submitting this Ballot, as applicable, shall be a "Releasing Party" under the Plan (unless such Holder is already a "Releasing Party" by virtue of being a "Released Party");

8.     that it acknowledges and understands that (a) if no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class and (b) any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily allowed by the Court as of the date of the Confirmation Hearing may be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code; and

9.     that it acknowledges and agrees that the Debtors, in consultation with the Committee, may make conforming changes to the Plan to the extent provided by Bankruptcy Rule 3019 as may be reasonably necessary and that the Debtors will not re-solicit acceptances or rejections of the Plan in the event of such conforming changes.

31183142.3

Name of Holder: _____

Signature: _____

Name of Signatory (If other than Holder)[3]: _____

Title: _____

Address: _____

_____

_____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN ACCORDANCE WITH ONE OF THE APPROVED SUBMISSION METHODS DESCRIBED ABOVE. YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS FEBRUARY 27, 2024 AT 4:00 PM (ET)**

---

[3]    If you are completing this Ballot on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing.  You may be required to provide additional information or documentation with respect to such relationship.

31183142.3

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT IN THE PROVIDED RETURN ENVELOPE *PROMPTLY* VIA FIRST CLASS
MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

| If by First Class Mail: | If by Overnight Courier or Hand Delivery: |
|---|---|
| Proterra Ballot Processing Center<br> c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 | Proterra Ballot Processing Center<br> c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 |

**PLEASE SELECT JUST ONE OPTION TO VOTE.
EITHER RETURN A PROPERLY EXECUTED PAPER BALLOT WITH YOUR VOTE**

**OR**

**IF COMPLETING AND SUBMITTING THIS BALLOT BY USING THE eBALLOT
PLATFORM,** You will need the following information to retrieve and submit your customized
eBallot:

https://www.kccllc.net/proterra

Unique eBallot ID#:  _____

PIN#:  _____

Holders of Claims who cast an eBallot should NOT also submit a paper ballot.

---

IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT BY
FEBRUARY 27, 2024 AT 4:00 PM (ET) (AND IF THE VOTING DEADLINE IS NOT
EXTENDED), YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED
TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE
DEBTORS, IN CONSULTATION WITH THE COMMITTEE.

---

31183142.3

## Instructions for Completing Ballots

1.     The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan or the Disclosure Statement Order, as applicable.

**2.     The Court may confirm the Plan and thereby bind you by the terms of the Plan.  Please review the Disclosure Statement for more information.**

3.     KCC's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.  To have your vote counted, you must electronically complete, sign, and return a customized electronic Ballot by utilizing the E-Ballot on KCC's website, http://www.kccllc.net/proterra.  Your Ballot must be received by KCC no later than the Voting Deadline, unless such time is extended by the Debtors.

**HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT.**

4.     If you prefer to return a hard copy of your Ballot, you may return it in the enclosed preaddressed, postage prepaid envelope or via first class mail, overnight courier, or hand delivery to:

Proterra Ballot Processing Center
c/o Kurtzman Carson Consultants LLC
222 N. Pacific Coast Highway
Suite 300
El Segundo, CA 90245

5.     To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) sign and return the Ballot to the address set forth on the enclosed pre-addressed envelope or by a method provided herein.  The Voting Deadline for the receipt of Ballots by KCC is February 27, 2024 at 4:00 PM (ET).  Your completed Ballot must be actually received by KCC on or before the Voting Deadline.

6.     Except as otherwise provided herein or unless waived by the Debtors or permitted by order of the Court, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtors shall reject such Ballot as invalid and, therefore, decline to count it in connection with confirmation of the Plan.

7.     If you cast more than one Ballot voting the same Claim(s) before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect your intent and, thus, shall be deemed supersede any prior Ballot. If you simultaneously cast inconsistent Ballots, such Ballots will not be counted.

31183142.3

8. If you cast a Ballot that is properly completed, executed and timely returned to KCC but that does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

9. If you cast a Ballot that is properly completed, executed, and timely returned to KCC but that indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

10. You shall be deemed to have voted the full amount of your Claim and shall not be entitled to split your vote within a particular Class. Any Ballot that partially accepts and partially rejects the Plan will not be counted.

11. The following Ballots shall not be counted:

   a. any Ballot that is illegible or contains insufficient information to permit the identification of the Holder;

   b. any Ballot that (i) does not indicate an acceptance or rejection of the Plan, (ii) indicates both an acceptance and rejection of the Plan, and/or (iii) partially accepts and partially rejects the Plan;

   c. any Ballot cast by a person who does not hold, or represent a person that holds, a Claim in a Voting Class as of the Voting Record Date, or who otherwise is not entitled to vote pursuant to the procedures described herein;

   d. any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed;

   e. any Ballot received after the Voting Deadline unless the Debtors, in consultation with the Committee, have granted an extension in writing (including e-mail) with respect to such Ballot. The Holder of a Claim may choose the method of delivery of its Ballot to KCC at its own risk. Delivery of the Ballot will be deemed made only when the original properly executed Ballot is actually received by KCC;

   f. any Ballot delivered by facsimile transmission, electronic mail, or any other means not specifically approved herein, provided that Ballots submitted through the E-Ballot will be counted;

   g. any Ballot submitted to the Debtors or any person, entity, or agent of the Debtors other than KCC; and

   h. any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot cast via the Debtors' online "E-Ballot" submission portal will be deemed to have an original signature).

12. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by KCC,

31183142.3

the Debtors, or the Court, you must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, you should provide their name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

13.     The Debtors, subject to contrary order of the Court, may waive any defect or irregularity as to any particular Ballot at any time, either before or after the close of voting, and any such waiver shall be documented in the Voting Declaration.

14.     Neither the Debtors, KCC, nor any other entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Declaration, nor will any of them incur any liability for failure to provide such notification.

15.     Unless waived by the Debtors, in consultation with the Committee, subject to contrary order of the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted.

16.     The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claim, and neither the Debtors nor KCC will accept delivery of any such certificates or instruments surrendered together with a Ballot.

17.     This Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim or (b) an assertion or admission of a Claim.

18.     If you believe you have received the wrong Ballot, you should contact KCC immediately by calling or emailing at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or ProterraInfo@kccllc.com (with "Proterra Inc Ballots" in the subject line).

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT KCC BY CALLING OR EMAILING AT (888) 251-3076 (USA OR CANADA, TOLL-FREE) OR +1 (310) 751-2617 (INTERNATIONAL) OR PROTERRAINFO@KCCLLC.COM**

31183142.3

**<u>Exhibit 3-B</u>**

**Form of Class 5 Ballot**

(General Unsecured Claims)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PROTERRA INC, *et al.*,[1] | ) | Case No. 23-11120 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE CHAPTER 11 PLAN OF REORGANIZATION FOR PROTERRA INC AND ITS DEBTOR AFFILIATE

> ### THIRD-PARTY RELEASE
>
> **PLEASE BE ADVISED THAT <u>ARTICLE IX</u> OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING THOSE SET FORTH BELOW.**
>
> **PLEASE BE ADVISED THAT UNDER THE PLAN YOU ARE DEEMED TO GIVE RELEASES UNLESS YOU OPT OUT OR OBJECT TO THE PLAN. PLEASE READ THIS NOTICE IN ITS ENTIRETY AND PLEASE SEE PAGE 4 BELOW FOR MORE DETAILS ON THE RELEASES.**
>
> **<u>ARTICLE IX</u> CONTAINS A THIRD-PARTY RELEASE. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN <u>ARTICLE IX</u> OF THE PLAN AS YOUR RIGHTS MAY BE AFFECTED.**

> **HOLDERS OF CLASS 5 GENERAL UNSECURED CLAIMS SHOULD READ THIS ENTIRE BALLOT BEFORE COMPLETING.**
>
> **PLEASE COMPLETE, DATE, AND SIGN THE BALLOT AND RETURN IT TO THE SOLICITATION AGENT IN THE ENCLOSED PREADDRESSED,**

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

> **POSTAGE PREPAID ENVELOPE, BY FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY, OR VIA ELECTRONIC BALLOT.**
>
> **YOUR VOTE MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE "<u>VOTING DEADLINE</u>").**
>
> **The boxes to accept or reject the Plan and to exercise your right with respect to the third-party releases are contained on page 3 of this Ballot.**

Proterra Inc, as debtor and debtor in possession (the "<u>Debtor</u>") in the above-captioned chapter 11 case, is soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Reorganization for Proterra and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "<u>Plan</u>"). The Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has approved that certain *Third Amended Disclosure Statement for Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [●] (the "<u>Disclosure Statement Order</u>"). Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court. Capitalized terms used but not otherwise defined herein shall have the same meanings set forth in the Plan.

You are receiving this Class 5 Ballot because you were a Holder of a Class 5 Claim as of January 18, 2024 (the "<u>Voting Record Date</u>"). Under the terms of the Plan, Holders of Class 5 Claims are entitled to vote to accept or reject the Plan. The boxes to accept or reject the Plan and to exercise rights on Third-Party Releases are contained on page 3 of this Ballot.

> **Included in Item 2 of this Class 5 Ballot is an Opt-Out Form related to the releases by Holders of Claims set forth in Article IX of the Plan. You are deemed to have consented to the releases by Holders of Claims unless you (a) either vote to "REJECT" or do not vote on the Plan; and (b) check the Release Opt-Out box under Item 2 of this Ballot, and complete the Certification in Item 4 of this Ballot, and return this Ballot so that it is actually received no later than the Voting Deadline, or timely File an objection to the releases by Holders of Claims. If you vote to "ACCEPT" the Plan, you are deemed to consent to the releases by Holders of Claims unless you timely file an objection to the Plan that is not resolved prior to confirmation, or file on the docket any pleading evidencing support for any such objection or objector.**

Your rights are further described in the Disclosure Statement, which was included in the package (the "<u>Solicitation Package</u>") you are receiving with this Class 5 Ballot. If you need to obtain additional Solicitation Packages, you may obtain them (at the Debtors' expense) by (a) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International); (b) visiting the Debtors' restructuring website at: https://www.kccllc.net/proterra; (c) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300 El Segundo, CA 90245; and/or (d) emailing via www.kccllc.net/proterra/inquiry (with "Proterra Solicitation" in the inquiry) and requesting paper copies of the corresponding materials previously received in electronic format (to be provided at

the Debtors' expense). You may also obtain copies of any pleadings filed in this Chapter 11 Case for a fee via PACER at: http://www.deb.uscourts.gov.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, opting out of the Releases by Holders of Claims, and making certain certifications with respect to the Plan. If you believe you have received this Class 5 Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately at the address, or telephone number set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 5 under the Plan. If you hold Claims in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

## Item 1. Amount of Claim.

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of a Class 5 Claim(s) in the following aggregate unpaid principal amount (insert amount in box below):

---

Amount of Claim: $ _____

---

## Item 2. Vote on Plan.

The Holder of the Class 5 Claim set forth in Item 1 votes to (please check only <u>one</u> box):

---

**ACCEPT** (vote FOR) the Plan          **REJECT** (vote AGAINST) the Plan

---

## IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE IN ARTICLE IX OF THE PLAN:

IF YOU ARE A "RELEASED PARTY" OR YOU VOTE TO ACCEPT THE PLAN OR DO NOT OTHERWISE OPT OUT, YOU SHALL BE A "RELEASING PARTY" UNDER THE PLAN, AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE PROVISIONS CONTAINED IN THE PLAN. YOUR DECISION ON THIS

ELECTION DOES NOT AFFECT THE AMOUNT OF DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.

> The Holder of the Class 5 Claim against the Debtors set forth in Item 1 elects to:

## Item 3. The Plan Includes Certain Release Provisions.

To provide additional information regarding the Third-Party Release, the following sections of the Plan have been copied immediately below: Article I.A. (definition of Related Party), Article I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), **Article IX.C (Releases by the Releasing Parties)**, Article IX.D (Exculpation), and Article IX.E (Non-Discharge of the Debtors; Injunction).[2]  To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following:

(a)     Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it: (a) is a holder of a Claim or Interest who is deemed to reject the Plan and does not opt into the releases set forth herein; (b) is a holder of a Claim or Interest who elects to opt out of the releases contained in the Plan, *provided*, *however*, that Avoidance Actions shall not be pursued and shall be released against any vendor or trade creditor notwithstanding whether any such vendor or trade creditor elects to opt out of the releases; (c) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector; (d) is an LG Party; or (e) is Cyress Jam, in his individual capacity (including as an individual holder of any Claims against, or Interests in, the Debtors).

(b)     Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims or Interests who are deemed to reject the Plan and opt in to granting the releases set forth herein, (i) the holders of all Claims and Interests who are Unimpaired under the Plan, (j) with respect to each of the foregoing Persons, in clauses (a) through (i), each of their Affiliates, solely in their capacities as such and solely to the extent a Person in clauses (a) through (i) has the authority to bind such Affiliate in such capacity, and (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their and

---

[2]     Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case, solely in their respective capacities as such and solely to the extent a Person in clauses (a) through (j) has the authority to bind them in such capacity; *provided* that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector; *provided*, *further*, that Cyress Jam, in his individual capacity (including as an individual holder of Claims against, or Interests in, the Debtors) shall not be a Releasing Party.

(c)     Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.**

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action; or (h) any Cause of Action against a Released Party determined in a Final Order to be arising out of actual fraud, gross negligence, or willful misconduct of such Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in

each case if known by it may have materially affected its settlement with any **Released Party**, including, without limitation, California Civil Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the **Releasing Parties** expressly acknowledges that the releases and covenants not to sue contained in the **Plan** are effective regardless of whether those released matters or released **Claims** or **Causes of Action** are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.

## Item 4. Certifications

By Signing this **Ballot**, the undersigned certifies to the Court and the Debtor:

1.      that as of the Voting Record Date, the undersigned is either: (a) the Holder of the Class 5 Claim(s) (General Unsecured Claims) being voted or (b) an authorized signatory for the Holder of the Class 5 Claim(s) (General Unsecured Claims) being voted;

2.      that it has received the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

3.      that it has cast the same vote with respect to all Class 5 Claims (General Unsecured Claims) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

4.      that no other Ballots with respect to the amount of the Class 5 (General Unsecured Claims) Claim(s) identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim(s), then any such Ballots dated earlier are hereby revoked;

5.      it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 5 Claim(s) (General Unsecured Claims) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

6.      that it understands and, if accepting the Plan, agrees with the treatment provided under the Plan for the Claim(s) held by it or the Holder on whose behalf it is submitting this Ballot, as applicable;

7.      that it understands that, if it casts a vote to accept the Plan and does not timely file an objection to the Plan, or file on the docket any pleading evidencing support for any such objection or objector; or votes to reject the Plan or does not vote either to accept or reject the Plan, and does not complete the Opt-Out Form in Item 2 or timely file an objection to the releases by Holders of Claims, it or the Holder on whose behalf it is submitting this Ballot, as applicable, shall

be a "Releasing Party" under the Plan (unless such Holder is already a "Releasing Party" by virtue of being a "Released Party");

8.      that it acknowledges and understands that (a) if no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class and (b) any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily allowed by the Court as of the date of the Confirmation Hearing may be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code; and

9.      that it acknowledges and agrees that the Debtors, in consultation with the Committee, may make conforming changes to the Plan to the extent provided by Bankruptcy Rule 3019 as may be reasonably necessary and that the Debtors will not re-solicit acceptances or rejections of the Plan in the event of such conforming changes.

Name of Holder: _____

Signature:

_____

Name of Signatory (If other than Holder)[3]: _____

Title: _____

Address: _____

_____

_____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN ACCORDANCE WITH ONE OF THE APPROVED SUBMISSION METHODS DESCRIBED ABOVE. YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS FEBRUARY 27, 2024 AT 4:00 PM (ET)**

---

[3]    If you are completing this Ballot on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing.  You may be required to provide additional information or documentation with respect to such relationship.

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT IN THE PROVIDED RETURN ENVELOPE *PROMPTLY* VIA FIRST CLASS
MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

| <u>If by First Class Mail:</u> | <u>If by Overnight Courier or Hand Delivery:</u> |
|---|---|
| Proterra Ballot Processing Center<br> c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 | Proterra Ballot Processing Center<br> c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 |

**PLEASE SELECT JUST ONE OPTION TO VOTE.
EITHER RETURN A PROPERLY EXECUTED PAPER BALLOT WITH YOUR VOTE**

**<u>OR</u>**

**IF COMPLETING AND SUBMITTING THIS BALLOT BY USING THE eBALLOT
PLATFORM,** You will need the following information to retrieve and submit your customized
eBallot:

https://www.kccllc.net/proterra

Unique eBallot ID#:           _____

        PIN#:           _____

Holders of Claims who cast an eBallot should NOT also submit a paper ballot.

| |
|---|
| IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT BY FEBRUARY 27, 2024 AT 4:00 PM (ET) (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTOR. |

31183142.3

**Instructions for Completing Ballots**

1.      The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan or the Disclosure Statement Order, as applicable.

**2.      The Court may confirm the Plan and thereby bind you by the terms of the Plan.  Please review the Disclosure Statement for more information.**

3.      KCC's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted. To have your vote counted, you must electronically complete, sign, and return a customized electronic Ballot by utilizing the E-Ballot on KCC's website, http://www.kccllc.net/proterra.  Your Ballot must be received by KCC no later than the Voting Deadline, unless such time is extended by the Debtor.

**HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT.**

4.      If you prefer to return a hard copy of your Ballot, you may return it in the enclosed preaddressed, postage prepaid envelope or via first class mail, overnight courier, or hand delivery to:

Proterra Ballot Processing Center
c/o Kurtzman Carson Consultants LLC
222 N. Pacific Coast Highway
Suite 300
El Segundo, CA 90245

5.      To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) sign and return the Ballot to the address set forth on the enclosed pre-addressed envelope or by a method provided herein.  The Voting Deadline for the receipt of Ballots by KCC is February 27, 2024 at 4:00 PM (ET).  Your completed Ballot must be actually received by KCC on or before the Voting Deadline.

6.      Except as otherwise provided herein or unless waived by the Debtors or permitted by order of the Court, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtors shall reject such Ballot as invalid and, therefore, decline to count it in connection with confirmation of the Plan.

7.      If you cast more than one Ballot voting the same Claim(s) before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect your intent and, thus, shall be deemed supersede any prior Ballot.  If you simultaneously cast inconsistent Ballots, such Ballots will not be counted.

8.      If you cast a Ballot that is properly completed, executed and timely returned to KCC but that does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

9.      If you cast a Ballot that is properly completed, executed, and timely returned to KCC but that indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

10.     You shall be deemed to have voted the full amount of your Claim and shall not be entitled to split your vote within a particular Class.  Any Ballot that partially accepts and partially rejects the Plan will not be counted.

11. The following Ballots shall not be counted:

   a.  any Ballot that is illegible or contains insufficient information to permit the identification of the Holder;

   b.  any Ballot that (i) does not indicate an acceptance or rejection of the Plan, (ii) indicates both an acceptance and rejection of the Plan, and/or (iii) partially accepts and partially rejects the Plan;

   c.  any Ballot cast by a person who does not hold, or represent a person that holds, a Claim in a Voting Class as of the Voting Record Date, or who otherwise is not entitled to vote pursuant to the procedures described herein

   d.  any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed;

   e.  any Ballot received after the Voting Deadline unless the Debtors have granted an extension in writing (including e-mail) with respect to such Ballot.  The Holder of a Claim may choose the method of delivery of its Ballot to KCC at its own risk.  Delivery of the Ballot will be deemed made only when the original properly executed Ballot is actually received by KCC;

   f.  any Ballot delivered by facsimile transmission, electronic mail, or any other means not specifically approved herein, provided that Ballots submitted through the E-Ballot will be counted;

   g.  any Ballot submitted to the Debtors or any person, entity, or agent of the Debtors other than KCC; and

   h.  any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot cast via the Debtors' online "E-Ballot" submission portal will be deemed to have an original signature).

12.     If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by KCC,

31183142.3

the Debtors, or the Court, you must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, you should provide their name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

13. The Debtors, in consultation with the Committee, subject to contrary order of the Court, may waive any defect or irregularity as to any particular Ballot at any time, either before or after the close of voting, and any such waiver shall be documented in the Voting Declaration.

14. Neither the Debtors, KCC, nor any other entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Declaration, nor will any of them incur any liability for failure to provide such notification.

15. Unless waived by the Debtors, subject to contrary order of the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted.

16. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claim, and neither the Debtors nor KCC will accept delivery of any such certificates or instruments surrendered together with a Ballot.

17. This Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim or (b) an assertion or admission of a Claim.

18. If you believe you have received the wrong Ballot, you should contact KCC immediately by calling or emailing at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or ProterraInfo@kccllc.com (with "Proterra Inc Ballots" in the subject line).

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT KCC BY CALLING OR EMAILING AT (888) 251-3076 (USA OR CANADA, TOLL-FREE) OR +1 (310) 751-2617 (INTERNATIONAL) OR PROTERRAINFO@KCCLLC.COM**

31183142.3

## Exhibit 4-A

**Form of Notice of Non-Voting Status for Unimpaired Classes**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**NOTICE OF NON-VOTING STATUS OF HOLDERS OF**
**UNIMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN**

> **PLEASE BE ADVISED THAT UNDER THE PLAN YOU ARE DEEMED TO GIVE CERTAIN RELEASES UNLESS YOU OBJECT TO THE PLAN.  PLEASE READ THIS NOTICE IN ITS ENTIRETY.**

**PLEASE TAKE NOTICE THAT THE PLAN CONTAINS CERTAIN RELEASES. NON-VOTING HOLDERS OF UNIMPAIRED CLAIMS OR INTERESTS SHOULD BE AWARE THAT,** if the Plan is confirmed and if the Effective Date occurs, the Released Parties, as defined in Article I.A. of the Plan, will be receiving releases from the Debtors, their estates, and other "Releasing Parties" (as defined in Article I.A. of the Plan) and will benefit from an injunction as set forth in Article IX.E or IX.F of the Plan and as further described in Article V of the Disclosure Statement.  Pursuant to Article I.A. of the Plan, the definition of "Releasing Parties" granting the Third-Party Release described in Article IX.C of the Plan provides that a non-voting Holder of unimpaired Claims or Interests may not be a Releasing Party if it files with the Court on the docket of the Chapter 11 Case an objection to the Plan that is not consensually resolved before Confirmation or any pleading evidencing support for any such objection or objector.

**PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

*Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *Third Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

PLEASE TAKE FURTHER NOTICE that, because of the nature and treatment of your Claim under the Plan, **you are not entitled to vote on the Plan**. Specifically, under the terms of the Plan, as a holder of a Claim (as currently asserted against the Debtors) that is not Impaired and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are **not** entitled to vote on the Plan.

PLEASE TAKE FURTHER NOTICE that the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024** at **10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

PLEASE TAKE FURTHER NOTICE that the deadline for filing objections to the Plan is **February 27, 2024 at 4:00 PM (ET)** (the "Plan Objection Deadline"). All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,<br>Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and<br>Michael J. Colarossi<br>Email: pbasta@paulweiss.com,<br>rbritton@paulweiss.com,<br>mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L.<br>Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com,<br>amagaziner@ycst.com,<br>sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** ||
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com ||
| **U.S. Trustee** ||
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey ||

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or

31183142.3

emailing via www.kccllc.net/protera/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

[*Remainder of Page Intentionally Left Blank*]

| | |
|---|---|
| Dated:    [Month DD, YYYY]<br>            Wilmington, Delaware | Respectfully submitted,<br>**YOUNG CONAWAY STARGATT &**<br>**TAYLOR, LLP**<br><br>[__]_____<br>Pauline K. Morgan (No. 3650)<br>Andrew L. Magaziner (No. 5426)<br>Shella Borovinskaya (No. 6758)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email:  pmorgan@ycst.com<br>            amagaziner@ycst.com<br>            sborovinskaya@ycst.com<br><br>- and -<br><br>**PAUL, WEISS, RIFKIND,**<br>**WHARTON & GARRISON LLP**<br>Paul M. Basta (admitted *pro hac vice*)<br>Robert A. Britton (admitted *pro hac vice*)<br>Michael J. Colarossi (admitted *pro hac vice*)<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Tel:    (212) 373-3000<br>Fax:    (212) 757-3990<br>Email: pbasta@paulweiss.com<br>            rbritton@paulweiss.com<br>            mcolarossi@paulweiss.com<br><br>*Counsel to the Debtors and*<br>*Debtors in Possession* |

**Exhibit 4-B**

**Form of Notice of Non-Voting Status for Impaired Classes**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**NOTICE OF NON-VOTING STATUS OF HOLDERS OF**
**IMPAIRED CLAIMS OR INTERESTS DEEMED TO REJECT THE PLAN**

> **PLEASE BE ADVISED THAT UNDER THE PLAN YOU ARE PERMITTED TO GIVE AND RECEIVE CERTAIN MUTUAL RELEASES ONLY IF YOU OPT IN TO DOING SO.  PLEASE READ THIS NOTICE IN ITS ENTIRETY AND PLEASE SEE OPT-IN ELECTION FORM FOR MORE DETAILS ON THE RELEASES.**

**PLEASE TAKE NOTICE THAT THE PLAN CONTAINS CERTAIN RELEASES. NON-VOTING HOLDERS OF IMPAIRED CLAIMS OR INTERESTS SHOULD BE AWARE THAT,** if the Plan is confirmed and if the Effective Date occurs, the Released Parties, as defined in Article I.A. of the Plan and as reproduced in paragraph (b) of the attached optional opt-in release form, will be receiving releases from the Debtors, their estates, and other "Releasing Parties" (as defined in Article I.A. of the Plan and reproduced in paragraph (c) of the attached opt-in release form), and will benefit from an injunction as set forth in Article IX.E or IX.F of the Plan and as further described in Article V of the Disclosure Statement.  Pursuant to Article I.A. of the Plan, and as reproduced in paragraph (c) of the attached optional opt-in election form, the definition of "Releasing Parties" granting the Third-Party Release described in Article IX.C of the Plan provides that a Holder of Claims or Interests deemed to reject the Plan may not be a Releasing Party or Released Party unless it elects to opt in to the releases contained in Article IX.C of the Plan.

**PLEASE TAKE FURTHER NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

*its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "<u>Plan</u>");[2] (b) approving the *Third Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "<u>Solicitation Packages</u>"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

      **PLEASE TAKE FURTHER NOTICE** that, because of the nature and treatment of your Claim under the Plan, **<u>you are not entitled to vote on the Plan</u>**.  Specifically, under the terms of the Plan, as a holder of a Claim (as currently asserted against the Debtors) that is Impaired and conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, you are **<u>not</u>** entitled to vote on the Plan.

      **PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider Confirmation of the Plan (the "<u>Confirmation Hearing</u>") will commence on **<u>March 5, 2024</u> at <u>10:00 AM (ET)</u>**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

      **PLEASE TAKE FURTHER NOTICE** that the deadline for filing objections to the Plan is **February 27, 2024 at 4:00 PM (ET)** (the "<u>Plan Objection Deadline</u>").  All objections to the relief sought at the Confirmation Hearing **<u>must</u>**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **<u>and</u>** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **<u>actually</u> <u>received</u>** on or before the Plan Objection Deadline:

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,<br>Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com,<br>rbritton@paulweiss.com,<br>mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com,<br>amagaziner@ycst.com,<br>sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** ||
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com ||
| **U.S. Trustee** ||
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey ||

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring

hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra.  You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

*[Remainder of Page Intentionally Left Blank]*

Dated:   [Month DD, YYYY]  
        Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

[  ]_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
       amagaziner@ycst.com
       sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:   (212) 373-3000
Fax:   (212) 757-3990
Email: pbasta@paulweiss.com
      rbritton@paulweiss.com
      mcolarossi@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

31183142.3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## OPT-IN ELECTION FORM

### IMPAIRED NON-VOTING STATUS CLAIMS OR INTERESTS

**Important Information Regarding the Release by Certain Holders of Claims**

      To provide additional information regarding the third party releases, the following sections of the Plan have been copied immediately below:  I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), and **Article IX.C (Releases by the Releasing Parties)**.[2]  To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following.

      Cyress Jam, the Court-appointed lead plaintiff in the securities fraud class action pending in the United States District Court for the Northern District of California under the caption, *Jeremy Villanueva, individually and on behalf of all others similarly situated* v. *Proterra, Inc., et al.,* Case No. 5:23-cv-03519-RFL (the "Securities Class Action"), by his counsel, Court-appointed lead counsel, Adam M. Apton, Esq., of Levi & Korsinsky, LLP, states as follows regarding the Opt-In Release Form: "We strongly urge those who may have claims in the Securities Class Action, either because they received Proterra shares as a result of the merger transaction or purchased or otherwise acquired Proterra shares between August 11, 2021 and August 7, 2023 **NOT** to sign the Opt-In Release Forms.  If you sign the Opt-In Release Form below, you may be releasing valuable claims against non-Debtor D&O defendants in the Securities Class Action for no compensation."

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

(a)     Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it: (a) is a holder of a Claim or Interest who is deemed to reject the Plan and does not opt into the releases set forth herein; (b) is a holder of a Claim or Interest who elects to opt out of the releases contained in the Plan, *provided*, *however*, that Avoidance Actions shall not be pursued and shall be released against any vendor or trade creditor notwithstanding whether any such vendor or trade creditor elects to opt out of the releases; (c) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector; (d) is an LG Party; or (e) is Cyress Jam, in his individual capacity (including as an individual holder of any Claims against, or Interests in, the Debtors).

(b)     Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims or Interests who are deemed to reject the Plan and opt in to granting the releases set forth herein, (i) the holders of all Claims and Interests who are Unimpaired under the Plan, (j) with respect to each of the foregoing Persons, in clauses (a) through (i), each of their Affiliates, solely in their capacities as such and solely to the extent a Person in clauses (a) through (i) has the authority to bind such Affiliate in such capacity, and (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case, solely in their respective capacities as such and solely to the extent a Person in clauses (a) through (j) has the authority to bind them in such capacity; *provided* that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector; *provided*, *further*, that Cyress Jam, in his individual capacity (including as an individual holder of Claims against, or Interests in, the Debtors) shall not be a Releasing Party.

(c)     Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors,**

any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: **(a)** the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; **(b)** any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; **(c)** the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; **(d)** the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; **(e)** the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or **(f)** any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair: **(a)** to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; **(b)** any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in accordance with the terms of the Plan and Confirmation Order, as applicable; **(c)** any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; **(d)** any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); **(f)** any obligations of any party or Entity under the Sale Documents; **(g)** any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action; or **(h)** any Cause of Action against a Released Party determined in a Final Order to be arising out of actual fraud,

gross negligence, or willful misconduct of such Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.

If you wish to opt in to being a "Releasing Party" under Article IX.C of the Plan, please check the following box and complete this form.  Your decision on this election does not affect the amount of distribution you will receive under the Plan.

| The undersigned elects to: |
| --- |

31183142.3

| **OPT IN** of the Third-Party Release set forth in Article IX.C of the Plan | |

| Name of Holder: | Address: |
|---|---|
| Signature: | Telephone Number: |
| Name of Signatory: | Email: |
| Title: | Date Completed: |

**IF YOU WISH TO OPT IN TO THE THIRD-PARTY RELEASES, THE OPT-IN FORM MUST BE COMPLETED AND SUBMITTED, ON OR BEFORE THE OPT-IN DEADLINE OF FEBRUARY 27, 2024 AT 4:00 PM (ET), BY <u>ONLY ONE</u> OF THE FOLLOWING APPROVED SUBMISSION METHODS:**

| **First Class Mail, Overnight Courier or Hand-Delivery To:** | **Electronic, online submission:** |
|---|---|
| Proterra Ballot Processing Center<br>c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 | To submit your Opt-In Form via KCC's online portal, please visit: https://kccllc.net/Proterra and click on "Submit E-Ballot" and follow the instructions to submit your Opt-In Form.<br><br>IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Opt-In Form:<br><br>Unique Opt-In ID#:_____<br><br>Pin#: _____<br><br>KCC's online portal is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission. Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will **not** be counted.<br><br>Creditors who submit an Opt-In Form using KCC's online portal should **NOT** also submit a paper Opt-In Form.<br><br>If you have any questions, please contact KCC at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or ProterraInfo@kccllc.com. |

## Exhibit 4-C

**Form of Notice to Disputed Claim Holders**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| PROTERRA INC, *et al.*,[1] | ) |
| | ) Case No. 23-11120 (BLS) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**NOTICE OF NON-VOTING STATUS WITH RESPECT TO DISPUTED CLAIM
OR INTEREST**

      **PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *Third Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

      **PLEASE TAKE FURTHER NOTICE** that you are receiving this notice because your Claim(s) against the Debtors is/are subject to a pending objection by the Debtors and therefore, pursuant to the Solicitation Procedures Order and sections 502(a) and 1126(a) of the Bankruptcy Code, **you are not entitled to vote to accept or reject the Plan on account of your Disputed Claim(s) unless one of the following Resolution Events occurs, in any event no later than February 22, 2024, the Resolution Event Deadline (as defined in the Solicitation and Voting Procedures):**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

(i)     an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

(ii)    an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

(iii)   a stipulation or other agreement is executed between the holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed-upon amount; or

(iv)    the pending objection is voluntarily withdrawn by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that if a Resolution Event occurs, then no later than two (2) business days thereafter, the Solicitation Agent shall distribute a ballot, and a pre-addressed, postage pre-paid envelope to you, which must be returned to the Solicitation Agent no later than the Voting Deadline, which is on **February 27, 2024** at **4:00 PM (ET)**.

**PLEASE TAKE FURTHER NOTICE** that if you seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), to temporarily allow such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion"). Any party wishing to file a Rule 3018(a) Motion shall have until ten (10) days from the Solicitation Date to file and serve such a motion with respect to any claim as to which there is an objection pending as of the date of the entry of this Order (the "Rule 3018(a) Motion Deadline"). The Debtors and other parties in interest shall have until the date that is ten (10) days prior to the Voting Deadline as the deadline by which the Debtors or parties in interest must file objections to any Rule 3018(a) Motion (the "3018(a) Motion Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if a Holder of a Disputed Claim files a Rule 3018(a) Motion by the Rule 3018(a) Motion Deadline, the Solicitation Agent, at the direction of the Debtors or their counsel, shall send such holder a Solicitation Package, including an applicable Ballot as soon as practicable after such Rule 3018(a) Motion is filed. A Ballot returned by a Holder of a Disputed Claim to the Solicitation Agent in compliance with the Solicitation Procedures shall only be counted to the extent that a Resolution Event has occurred with respect to the holder's Disputed Claim by the Resolution Event Deadline.

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing objections to the Plan is **February 27, 2024 at  4:00 PM (ET)** (the "Plan Objection Deadline"). All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a

proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,**<br>**Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** ||
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com ||
| **U.S. Trustee** ||
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey ||

**IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT ACCORDING TO THE INSTRUCTIONS ABOVE.**

*[Remainder of Page Intentionally Left Blank]*

Dated:    [Month DD, YYYY]
        Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

[__]_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
      amagaziner@ycst.com
      sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email:  pbasta@paulweiss.com
      rbritton@paulweiss.com
      mcolarossi@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

## **Exhibit 5-A**

**Form of Notice & Opt-In Form:  Beneficial Holders**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**NOTICE TO SHAREHOLDERS OF (A) RIGHT TO OPT IN TO
THIRD-PARTY RELEASE, (B) HEARING TO CONSIDER CONFIRMATION
OF THE CHAPTER 11 PLAN OF REORGANIZATION FOR PROTERRA INC
AND ITS DEBTOR AFFILIATE AND (C) RELATED OBJECTION DEADLINES**

---

**PLEASE BE ADVISED THAT UNDER THE PLAN YOU MAY GIVE AND RECEIVE CERTAIN MUTUAL RELEASES ONLY IF YOU OPT IN TO GRANTING A RELEASE. PLEASE READ THIS NOTICE IN ITS ENTIRETY AND PLEASE SEE PAGE 4 BELOW FOR MORE DETAILS ON THE RELEASES.**

---

**You are receiving this notice because you are a Class 8 Debtors' Interest shareholder of Proterra Inc (with Proterra Operating Company, Inc., the "Company" or "Debtors") as of January 18, 2024 (the "Record Date").**

**Pursuant to the terms of the Plan, shareholders in Class 8 are not entitled to receive or retain any recovery. You will not receive any payment on account of your shares in the bankruptcy case, and your shares will be cancelled.**

**The Debtors are seeking court approval for a plan of reorganization and disclosure statement filed as part of their bankruptcy proceeding.**

**Under the plan of reorganization, shareholders will not be entitled to any payment from the Debtors on account of their shares and do not get to vote on the plan of reorganization because shareholders are deemed to reject the plan of reorganization.**

**However, shareholders may grant releases to various third parties, including, but**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

**not limited to the Debtors and officers and directors of the Debtors if they return an Opt-In Form by the deadline to do so.  If you do not follow the instructions and timely opt in to granting a release, you will be deemed to have not granted these releases.**

<u>**You have the right to opt in to granting and receiving certain mutual releases by completing the Opt-In Form on pages 5–6 of this Notice and returning this form to your nominee**</u>**.  The applicable definitions of Released Parties and Releasing Parties are also attached to this Notice for your convenience of review.  These Defined Terms control the scope of the Release provisions.**

**Cyress Jam, the Court-appointed lead plaintiff in the securities fraud class action pending in the United States District Court for the Northern District of California under the caption, *Jeremy Villanueva, individually and on behalf of all others similarly situated* v. *Proterra, Inc., et al.,* Case No. 5:23-cv-03519-RFL (the "<u>Securities Class Action</u>"), by his counsel, Court-appointed lead counsel, Adam M. Apton, Esq., of Levi & Korsinsky, LLP, states as follows regarding the Opt-In  Release Form: "We strongly urge those who may have claims in the Securities Class Action, either because they received Proterra shares as a result of the merger transaction or purchased or otherwise acquired Proterra shares between August 11, 2021 and August 7, 2023 <u>NOT</u> to sign the Opt-In Release Forms.  If you sign the Opt-In Release Form below, you may be releasing valuable claims against non-Debtor D&O defendants in the Securities Class Action for no compensation."**

## I.  Notice of Disclosure Statement, Plan, and Confirmation Hearing

On [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") entered an order (the "<u>Disclosure Statement Order</u>"), (a) authorizing the Debtors to solicit acceptances for the *Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "<u>Plan</u>");[2] (b) approving the *Third Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended or supplemented from time to time, the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "<u>Solicitation Packages</u>"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

You are receiving this Notice because you are a Class 8 beneficial holder as of the Record Date and **do not have the right to vote on the Plan in your capacity as a shareholder** because you are not receiving anything under the Plan.

The hearing at which the Court will consider Confirmation of the Plan (the "<u>Confirmation Hearing</u>") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

---

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

31183142.3

The deadline for filing objections to the Plan is **February 27, 2024 at  4:00 PM (ET)** (the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,**<br>**Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** ||
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com ||

| **U.S. Trustee** |
| --- |
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey |

If you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra.  You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

**II.      Right to Opt In to the Third-Party Release**

On the Effective Date of the Plan, the release, injunction, and discharge provisions contained in Article IX of the Plan will become effective.  These provisions are reproduced on pages 9–11 of this notice for ease of reference.  **You may choose to opt in to the Third-Party Release set forth in Article IX.C of the Plan** by completing and returning the two page document that follows (the "Opt-In Release Form") according to the instructions in this notice.  If you do not complete the Opt-In Release Form, you will not be a Released Party, you will not receive the Releases, and **your claims against the other "Released Parties," including the directors and officers of the Debtor, will not be released pursuant to the Third-Party Release**.

**IF YOU WISH TO OPT IN TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN YOU MUST (1) COMPLETE THE TABLE BELOW FOR YOUR NOMINEE; AND (2) COMPLETE AND RETURN THE OPT-IN RELEASE FORM TO YOUR NOMINEE BY THE DEADLINE GIVEN BY YOUR NOMINEE.**

31183142.3

| | |
|---|---|
| **Name of Holder:** | _____ |
| | (Print or Type) |
| **Number of Shares:** | _____ |
| **Account Number:** | _____ |
| **Social Security or Federal Tax Identification Number:** | _____ |
| **Signature:** | _____ |
| **Name of Signatory:** | _____ |
| | (If other than Holder) |
| | _____ |
| **Title:** | _____ |
| **Address:** | _____ |
| | _____ |

**IF YOU WISH TO OPT IN TO THE THIRD-PARTY RELEASES, THIS OPT-IN RELEASE FORM MUST BE RETURNED TO YOUR NOMINEES WITH SUFFICIENT TIME TO ALLOW YOUR NOMINEE TO SEND YOUR OPT-IN RELEASE FORM, ALONG WITH THE NOMINEE'S MASTER OPT-IN FORM RECORDING YOUR OPT-IN INSTRUCTION, TO THE DEBTORS' SOLICITATION AGENT SO THAT THEY ARE ACTUALLY RECEIVED ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE "RELEASE OPT-IN DEADLINE").  IF THE FORM FROM YOUR NOMINEE IS RECEIVED AFTER THE RELEASE OPT-IN DEADLINE, YOUR OPT–IN ELECTION WILL NOT BE COUNTED BY THE SOLICITATION AGENT AND YOU WILL BE DEEMED TO HAVE NOT CONSENTED TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN.**

*[Remainder of Page Intentionally Left Blank]*

## OPT-IN RELEASE FORM

**PLEASE COMPLETE THE FOLLOWING:**

### Item A. Opt-In for Third-Party Release

By checking this box, the undersigned Holder:

☐ Elects to grant and receive the Third-Party Release contained in Article IX.C of the Plan.

(if the Holder does not check this box, any and all claims of the Holder against "Released Parties," including the directors and officers of the Debtor, will not be released)

**If you wish to give the Third-Party Release provided in Article IX.C of the Plan, you must check the Opt-In box above, and submit this form to your nominee by the deadline set forth by your nominee.  Your nominee must then return the form so that it is received by the Release Opt-In Deadline.**

**If you do not check the Opt-In box above, you will not be deemed to consent to giving and receiving the Third-Party Release provided in Article IX.C of the Plan.**

**Opting into giving and receiving the Third-Party Release provided in Article IX.C of the Plan shall not affect whether you receive any payment under the Plan.  Holders of Claims and Interests in Class 8 will not receive any payment under the Plan.**

**PLEASE BE ADVISED THAT BY CHECKING THE BOX ABOVE YOU ELECT TO GRANT AND RECEIVE THE THIRD-PARTY RELEASE AGAINST AND FROM THE OTHER "RELEASED PARTIES" AND "RELEASING PARTIES" AS THESE TERMS ARE DEFINED IN THE PLAN.  <u>YOU MUST AFFIRMATIVELY CHECK THE BOX ABOVE IN ORDER TO OPT IN TO THE THIRD-PARTY RELEASE.</u>**

PLEASE ALSO BE ADVISED THAT THE DEBTORS RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASE; PROVIDED THAT YOU WILL NOT BE A RELEASED PARTY RECEIVING THE DEBTOR RELEASE UNLESS YOU OPT INTO THE THIRD-PARTY RELEASE. IF YOU OBJECT TO THE DEBTORS RELEASE, YOU MUST FILE A SEPARATE OBJECTION WITH THE COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER BY FEBRUARY 27, 2024 AT 4:00 PM (ET).

### Item B. Certifications

By signing this Opt-In Release Form, the undersigned certifies to the Court and the Debtors that:

  i.   the undersigned is a Holder of Claims or Interests;
  ii.  the undersigned has received the Notice to Shareholders of (A) Right to Opt in to Third-Party Releases, (B) Hearing to Consider Confirmation of the Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate and (C) Related

Objection Deadlines, and that this Opt-In Release Form is submitted pursuant to the terms and conditions set forth therein;

iii.      the undersigned has submitted the same election with respect to all of its Claims or Interests; and

iv.      the undersigned has not submitted any other Opt-In Release Form for its Interests, or if another form has been previously submitted, such form is revoked.

[*Remainder of page intentionally left blank.*]

31183142.3

_____

Name of Holder

_____

Signature

_____

Name of Signatory and Title

_____

Name of Institution (if different than Holder)

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

31183142.3

### III.    Definitions Applicable to the Release ("Defined Terms")

To provide additional information regarding the third party releases, the following sections of the Plan have been copied immediately below:  I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), and **Article IX.C (Releases by the Releasing Parties)**.[26]  To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following.

(a)    Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it: (a) is a holder of a Claim or Interest who is deemed to reject the Plan and does not opt into the releases set forth herein; (b) is a holder of a Claim or Interest who elects to opt out of the releases contained in the Plan, *provided*, *however*, that Avoidance Actions shall not be pursued and shall be released against any vendor or trade creditor notwithstanding whether any such vendor or trade creditor elects to opt out of the releases; (c) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector; (d) is an LG Party; or (e) is Cyress Jam, in his individual capacity (including as an individual holder of any Claims against, or Interests in, the Debtors).

(b)    Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims or Interests who are deemed to reject the Plan and opt in to granting the releases set forth herein, (i) the holders of all Claims and Interests who are Unimpaired under the Plan, (j) with respect to each of the foregoing Persons, in clauses (a) through (i), each of their Affiliates, solely in their capacities as such and solely to the extent a Person in clauses (a) through (i) has the authority to bind such Affiliate in such capacity, and (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case, solely in their respective capacities as such and solely to the extent a Person in clauses (a) through (j) has the authority to bind them in such capacity; *provided* that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before

---

[26]    Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

Confirmation or supports any such objection or objector; *provided*, *further*, that Cyress Jam, in his individual capacity (including as an individual holder of Claims against, or Interests in, the Debtors) shall not be a Releasing Party.

        (c)        Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property**

distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action; or (h) any Cause of Action against a Released Party determined in a Final Order to be arising out of actual fraud, gross negligence, or willful misconduct of such Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE

**MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

**Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.**

## IV.    Brief Overview of the Restructuring and Settlement

**Postpetition Marketing Process**:

As more fully detailed in the Disclosure Statement,[27] at the outset of these Chapter 11 Cases, the Debtors sought and obtained Bankruptcy Court approval of the bidding procedures to govern their postpetition marketing and sale process (the "Marketing Process"). The Debtors filed a motion for approval of Bidding Procedures (as defined in the Bidding Procedures Order) for the sale or reorganization of all or any portion of their assets pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan. The Bidding Procedures were designed to facilitate potential auctions for the assets, thereby maximizing recoveries for all stakeholders.

On November 9, 2023 and November 13, 2023, the Debtors conducted the Auctions for the Debtors' Business Lines. At the conclusion of the Track B Auction, the Debtors selected Volvo as the Successful Bidder. [Docket No. 525]. On November 29, 2023, the Bankruptcy Court authorized the Debtors to close the transaction contemplated by the Purchase Agreement in the Powered Sale Order and sell the Proterra Powered Business Line to Volvo. [Docket No. 664]. At the conclusion of the Track A Auction, the Debtors selected (a) Phoenix as the Successful Bidder with respect to (i) the Battery Leases and (ii) Proterra Transit and (b) the Plan Sponsor as the Successful Bidder with respect to Proterra Energy. [Docket No. 529]. On January 9, 2024, the Bankruptcy Court authorized the Debtors to close the transactions contemplated by the Purchase Agreements in the Transit Sale Order and sell Proterra Transit and the Battery Leases to Phoenix. [Docket No. 833]. On January 11, 2024, the Debtors closed the sale of Proterra Transit to Phoenix and amended the Purchase Agreement regarding the Battery Leases. [Docket No. 879]. The Debtors seek to close the sale of the Battery Leases to Phoenix as soon as possible and to consummate the transactions contemplated by the Plan Support Agreement and reorganize Proterra Energy through the confirmation and consummation of the Plan.

**Anthelion Liquidation Payment Claim**:

On November 15, 2023, the Second Lien Agent filed a proof of claim asserting a secured claim under the Prepetition Second Lien Loan Documents in the aggregate principal and accrued interest amount of not less than $266,670,640.37 (the "Asserted Principal and Prepetition Interest Amount") [Proof of Claim No. 1177]. In addition to the Asserted Principal and Prepetition Interest Amount, the Second Lien Agent asserted claims arising out of, if any, the Second Lien Agent's adequate protection claims under the Cash Collateral Order, claims arising out of the alleged

---

[27]   To the extent of any difference between this Brief Overview of the Restructuring and Settlement and the information provided in the Disclosure Statement, the Disclosure Statement shall prevail.

Debtors' obligations to reimburse the Second Lien Agent's fees and expenses with respect to their advisors, and alleged indemnification agreements.  The Second Lien Agent included an alleged Liquidation Payment Claim of $88,585,019.28 in the Second Lien Agent Proof of Claim.

On November 29, 2023, the Bankruptcy Court entered the *Order Approving Stipulation Regarding Scheduling with Respect to Litigating the Premium Claim* [Docket No. 665] (the "Stipulation").  In accordance with the schedule set forth in the Stipulation, the Debtors and the Committee filed objections and motions for judgment on the pleadings with respect to the Second Lien Agent's Proof of Claim asserting a Liquidation Payment Claim on December 6, 2023 [Docket Nos. 689, 690].

On January 2, 2024, the Debtors filed the *Notice of Filing of Amended and Restated Plan Support Agreement* [Docket No. 794] pursuant to which the Second Lien Agent, Committee, and Debtors agreed to support the Plan, which incorporates a comprehensive settlement to the Liquidation Payment Claim and the Committee's challenges to the Second Lien Agent's liens (the "Liquidation Payment Settlement").  The Liquidation Payment Settlement, as embodied in the Plan, includes that the Allowed amount of the Second Lien Convertible Notes Claims shall include the Settled Amounts—*i.e.*, (a) $3.0 million; *plus* (b) postpetition interest on the Agreed Second Lien Obligations at the default rate set forth in the Second Lien Convertible Notes Purchase Agreement; *less* (c) postpetition interest on the Agreed Second Lien Obligations at the non-default rate set forth in the Second Lien Convertible Notes Purchase Agreement.  Furthermore, the Debtors' estates will fund $10.0 million or such other amount as is agreed by the Debtors, Second Lien Agent, and the Committee into the Distribution Trust Expense Reserve.  The Liquidation Payment Settlement resolves any potential objection to the Plan by the Committee, and the Committee has executed the Plan Support Agreement and agreed to support the Plan in accordance therewith.

*[Remainder of Page Intentionally Left Blank]*

Dated:   [Month DD, YYYY]            Respectfully submitted,
         Wilmington, Delaware        **YOUNG CONAWAY STARGATT &**
                                     **TAYLOR, LLP**

                                     [   ]
                                     ———————————————————————
                                     Pauline K. Morgan (No. 3650)
                                     Andrew L. Magaziner (No. 5426)
                                     Shella Borovinskaya (No. 6758)
                                     Rodney Square
                                     1000 North King Street
                                     Wilmington, Delaware 19801
                                     Telephone: (302) 571-6600
                                     Facsimile: (302) 571-1253
                                     Email:  pmorgan@ycst.com
                                             amagaziner@ycst.com
                                             sborovinskaya@ycst.com

                                           - and -

                                     **PAUL, WEISS, RIFKIND,**
                                     **WHARTON & GARRISON LLP**
                                     Paul M. Basta (admitted *pro hac vice*)
                                     Robert A. Britton (admitted *pro hac vice*)
                                     Michael J. Colarossi (admitted *pro hac vice*)
                                     1285 Avenue of the Americas
                                     New York, New York 10019
                                     Tel:    (212) 373-3000
                                     Fax:    (212) 757-3990
                                     Email:  pbasta@paulweiss.com
                                             rbritton@paulweiss.com
                                             mcolarossi@paulweiss.com

                                     *Counsel to the Debtors and*
                                     *Debtors in Possession*

## **Exhibit 5-B**

**Form of Notice & Opt-In Form: Master Form**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## NOTICE AND MASTER OPT-IN FORM FOR
## CLASS 8 – DEBTORS' INTERESTS

---

**PLEASE BE ADVISED THAT UNDER THE PLAN YOU MAY GIVE AND RECEIVE CERTAIN MUTUAL RELEASES ONLY IF YOU OPT IN TO GRANTING A RELEASE. PLEASE READ THIS NOTICE IN ITS ENTIRETY AND PLEASE SEE PAGE 8 BELOW FOR MORE DETAILS ON THE RELEASES.**

---

**PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *Third Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

The hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

You are receiving this notice and opt-in form (the "Master Opt-In Form") because you are a bank, broker, or other financial institution (each, a "Nominee") that holds equity securities in Proterra Inc (the "Debtors' Interests") in "street name" on behalf of a Beneficial Holder[3] of such Debtors' Interests as of January 18, 2024 (the "Voting Record Date"), or you are a Nominee's agent.

Pursuant to the terms of the Plan, shareholders in Class 8 are not entitled to receive or retain any recovery under the Plan and, therefore, pursuant to section 1126(g) of the Bankruptcy Code, Beneficial Holders of Class 8 Debtors' Interests are deemed to reject the Plan. Beneficial Holders of Class 8 Debtors' Interests, however, have the right to, subject to the limitations set forth herein, affirmatively opt in to the Third-Party Release contained in Article IX.C of the Plan (the "Third-Party Release"), if they so choose. Nominees or their agents should use this Master Opt-In Form to convey the election of such Beneficial Holders to opt in to the Third-Party Release.

Cyress Jam, the Court-appointed lead plaintiff in the securities fraud class action pending in the United States District Court for the Northern District of California under the caption, *Jeremy Villanueva, individually and on behalf of all others similarly situated* v. *Proterra, Inc., et al.,* Case No. 5:23-cv-03519-RFL (the "Securities Class Action"), by his counsel, Court-appointed lead counsel, Adam M. Apton, Esq., of Levi & Korsinsky, LLP, states as follows regarding the Opt-In Release Form: "We strongly urge those who may have claims in the Securities Class Action, either because they received Proterra shares as a result of the merger transaction or purchased or otherwise acquired Proterra shares between August 11, 2021 and August 7, 2023 **NOT** to sign the Opt-In Release Forms. If you sign the Opt-In Release Form below, you may be releasing valuable claims against non-Debtor D&O defendants in the Securities Class Action for no compensation."

This Master Opt-In Form may not be used for any purpose other than conveying their Beneficial Holder clients' elections to opt in to the Third-Party Release. If you believe you have received this Master Opt-In Form in error, or if you believe that you have received the wrong Master Opt-In Form, please contact the Solicitation Agent immediately at the address, email address, or telephone number set forth below. Nothing contained herein or in the enclosed documents shall render you or any other entity an agent of the Debtors or the Solicitation Agent or authorize you or any other entity to use any document or make any statements on behalf of any of with respect to the Plan, except for the statement contained in the documents enclosed herewith.

You are required to distribute the Beneficial Holder Notice and Opt-In Form contained herewith to your Beneficial Holder clients holding equity Interests in Class 8 Debtors' Interests as of the Voting Record Date within five (5) business days of your receipt of the Solicitation Packages in which this Master Opt-In Form was included. With respect to the Beneficial Holder Opt-In Forms returned to you, you must (a) execute this Master Opt-In Form so as to reflect the Third-Party Release elections set forth in such Beneficial Holder Opt-In Forms and (b) forward this Master Opt-In Form along with each Beneficial Holder Opt-In Form electing to opt in to the

---

[3]  A "Beneficial Holder" means an entity that beneficially owns Class 8 Interests in TopCo as of the Voting Record Date, as reflected in the records maintained by the Nominee.

Third Party Release to Kurtzman Carson Consultants LLC (the "Solicitation Agent") in accordance with the Master Opt-In Form Instructions accompanying this Master Opt-In Form. **Any election delivered to you by a Beneficial Holder shall not be counted unless you complete, sign, and return this Master Opt-In Form along with the Beneficial Holder Opt-In Forms making the opt in election to the Solicitation Agent so that it is actually received by the Opt-In Deadline.**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS MASTER OPT-IN FORM CAREFULLY BEFORE COMPLETING THIS MASTER OPT-IN FORM.

**IF YOU WISH TO OPT IN TO THE THIRD-PARTY RELEASES, THIS MASTER OPT-IN FORM MUST BE COMPLETED, EXECUTED AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE "OPT-IN DEADLINE").**

**Item 1. Certification of Authority to Make Elections.**

The undersigned certifies that as of the Voting Record Date, the undersigned:

- Is a Nominee for the Beneficial Holders in the number of shares of Class 8 Debtors' Interests listed in Item 2 below, or

- Is acting under a power of attorney or agency (a copy of which will be provided upon request) granted by a Nominee for the Beneficial Holders in the number of shares of Class 8 Debtors' Interests listed in Item 2 below, or

- Has been granted a proxy (an original of which is attached hereto) from a Nominee for the Beneficial Holders (or the Beneficial Holders itself/themselves) in the principal number of shares of Class 8 Debtors' Interests listed in Item 2 below;

and accordingly, has full power and authority to convey decisions to opt in to the Third-Party Release, on behalf of the Beneficial Holders of the Class 8 Debtors' Interests described in Item 2.

**Item 2. Optional Third-Party Release Election.**

The undersigned certifies that that the information provided below (including any information provided on additional sheets attached hereto) is a true and accurate schedule of the Beneficial Holders of Class 8 Debtors' Interests, as identified by their respective account numbers, that made a decision to opt in to the Third-Party Release via e-mail, telephone, internet application, facsimile, voting instruction form, or other customary means of conveying such information.

Indicate in the appropriate column below the Beneficial Holder/Account Number of each Beneficial Holder that completed and returned the Beneficial Holder Opt-In Form and the aggregate number of Class 8 Debtors' Interests held by such Beneficial Holder/Account Number electing to opt in to the Third-Party Release or attach such information to this Master Opt-In Form in the form of the following table.

Please complete the information requested below (add additional sheets if necessary):

| Beneficial Holder/Account Number | Amount of Class 8 – Debtors' Interest Holders Electing to Opt In to Third-Party Release |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| **TOTAL** | |

**Item 3**. **Additional Certifications.**

By signing this Master Opt-In Form, the undersigned certifies to the Court and the Debtor:

a.      that either: (i) the undersigned has received a completed Opt-In Form from each Beneficial Holder of Class 8 Debtors' Interests listed in Item 2 of this Master Opt-In Form, or (ii) an e-mail, recorded telephone call, internet transmission, facsimile, voting instruction form, or other customary means of communication conveying a decision to opt in to the releases from each Holder of Class 8 Debtors' Interests;

b.      that the undersigned is a Nominee (or agent of the Nominee) of the Class 8 Debtors' Interests; and

c.      that the undersigned has properly disclosed for each Beneficial Holder who submitted a Beneficial Holder Opt-In Form or opt-in decisions via other customary means: (i) the respective number of the Class 8 Debtors' Interests owned by each Beneficial Holder and (ii) the customer account or other identification number for each such Beneficial Holder.

| | |
|---|---|
| **Institution:** | _____ |
| | **(Print or Type)** |
| **DTC Participant Number:** | _____ |
| **Signature:** | _____ |
| **Name of Signatory:** | _____ |
| **Title:** | _____ |
| **Address:** | _____ |
| | _____ |
| | _____ |
| **Date Completed:** | _____ |

If your address or contact information has changed, please note the new information here.

**PLEASE COMPLETE, SIGN AND DATE THIS MASTER OPT-IN FORM ALONG WITH EACH BENENFICIAL HOLDER OPT-IN FORM ELECTING TO OPT IN AND RETURN IT PROMPTLY VIA FIRST CLASS MAIL, OVERNIGHT COURIER, EMAIL OR HAND DELIVERY TO:**

> Proterra Ballot Processing Center
> c/o Kurtzman Carson Consultants LLC
> 222 N. Pacific Coast Highway, Suite 300,
> El Segundo, CA 90245
>
> Email: ProterraInfo@kccllc.com
>
> If you have any questions on the procedures for voting on the Plan, please call the Solicitation Agent at (877) 499-4509 (USA or Canada, toll-free) or +1 (917) 281-4800 (International).

31183142.3

---

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS MASTER OPT-IN FORM AND THE BENENFICIAL HOLDER OPT-IN FORMS ELECTING TO OPT IN ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET), THE ELECTIONS TRANSMITTED HEREBY WILL <u>NOT</u> BE EFFECTIVE.**

**OPT-IN FORMS SENT BY FACSIMILE OR TELECOPY WILL <u>NOT</u> BE ACCEPTED. MASTER OPT-IN FORMS MAY BE SUBMITTED BY EMAIL TO: ProterraInfo@kccllc.com**

---

| Class 8 Debtors' Interests |
| --- |

**<u>INSTRUCTIONS FOR COMPLETING THIS MASTER OPT-IN FORM</u>**

1.    Capitalized terms used in the Master Opt-In Form or in these instructions (the "<u>Master Opt-In Form Instructions</u>") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.

2.    **<u>Distribution of the Opt-In Forms</u>:**

- You should immediately distribute the Beneficial Holder Notice and Opt-In Forms accompanied by pre-addressed, postage-paid return envelopes to all Beneficial Holders of **Class 8** Debtors' Interests as of the Voting Record Date and take any action required to enable each such Beneficial Holders to make an opt-in election timely.  You must include a pre-addressed, postage-paid return envelope or must certify that your Beneficial Holder clients that did not receive return envelopes were provided with electronic or other means (consented to by such Beneficial Holder clients) of returning their Beneficial Holder Opt-In Forms in a timely manner.

- Any election delivered to you by a Beneficial Holder shall not be counted until you complete, sign, and return this Master Opt-In Form together with the Beneficial Holder Opt-In Forms electing to opt in to the Solicitation Agent, so that they are actually received by the Opt-In Deadline.

3.    You should solicit elections from your Beneficial Holder clients via the (a) delivery of duly completed Beneficial Holder Opt-In Forms or (b) conveyance of their decision to opt in to the releases via e-mail, telephone, internet application, facsimile, voting instruction form, or other customary and approved means of conveying such information.

4.    With regard to any Beneficial Holder Opt-In Forms returned to you by a Beneficial Holder, you must: (a) compile and validate the elections and other relevant information of each such Beneficial Holder on the Master Opt-In Form using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Opt-In

Form; and (c) transmit the Master Opt-In Form together with the Beneficial Holder Opt-In Forms electing to opt in to the Solicitation Agent.

5.  **Return of Master Opt-In Form**: The Master Opt-In Form and Beneficial Holder Opt-In Forms must be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Opt-In Deadline, which is February 27, 2024 at 4:00 PM (ET).

6.  If a Master Opt-In Form and/or Beneficial Holder Opt-In Form are received by the Solicitation Agent <u>after</u> the Opt-In Deadline, they will not be effective, unless the Debtors have granted an extension of the Opt-In Deadline in writing with respect to such Master Opt-In Form. Additionally**,** the following Opt-In Forms will <u>NOT</u> be counted:

    - ANY MASTER OPT-IN FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE EQUITY INTEREST;

    - ANY MASTER OPT-IN FORM CAST BY OR ON BEHALF OF AN ENTITY THAT IS NOT ENTITLED TO OPT IN TO THE THIRD-PARTY RELEASE;

    - ANY MASTER OPT-IN FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE SOLICITATION AGENT), ANY INDENTURE TRUSTEE OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;

    - ANY UNSIGNED MASTER OPT-IN FORM**;**

    - ANY MASTER OPT-IN FORM SUBMITTED WITHOUT THE CORRESPONDING BENEFICIAL HOLDER OPT-IN FORMS ELECTING THE OPT IN; OR

    - ANY MASTER OPT-IN FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED BY THE COURT.

7.  The method of delivery of Master Opt-In Forms and Beneficial Holder Opt-In Forms to the Solicitation Agent is at the election and risk of Nominee. Except as otherwise provided herein, such delivery will be deemed made to the Solicitation Agent only when the Solicitation Agent **actually** **receives** the originally executed Master Opt-In Form and Beneficial Holder Opt-In Forms (PDFs via electronic mail are acceptable). Instead of effecting delivery by first-class mail, it is recommended, though not required, that Nominees use an overnight or hand delivery service. In all cases, Nominees should allow sufficient time to assure timely delivery.

8.  Multiple Master Opt-In Forms may be completed and delivered to the Solicitation Agent. Elections reflected by multiple Master Opt-In Forms will be deemed valid. If two or more Master Opt-In Forms are submitted, please mark the subsequent Master Opt-In Form(s)

with the words "Additional Election" or such other language as you customarily use to indicate an additional election that is not meant to revoke an earlier election.

9.  The Master Opt-In Form is not a letter of transmittal and may not be used for any purpose other than to transmit elections to opt in to the Third-Party Release.  Holders of Class 8 Debtors' Interests should not surrender certificates (if any) representing their Class 8 Debtors' Interests at this time, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates transmitted together with a Master Opt-In Form

10. This Master Opt-In Form does <u>not</u> constitute, and shall not be deemed to be, (a) a proof of claim or interest or (b) an assertion or admission of an equity Interest.

11. <u>Please be sure to sign and date your Master Opt-In Form</u>.  If you are signing a Master Opt-In Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors or the Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Opt-In Form.

12. <u>Please be sure to include copies of the Beneficial Holder Opt-In Forms</u> to the Solicitation Agent.

13. No fees or commissions or other remuneration will be payable to any broker, bank, dealer or other person in connection with this solicitation.  Upon written request, however, the Debtors will reimburse you for customary mailing and handling expenses incurred by you in forwarding the Opt-In Forms to your client(s).

**<u>IF YOU WISH TO OPT IN TO THE THIRD-PARTY RELEASES, PLEASE RETURN YOUR MASTER OPT-IN FORM AND BENENFICIAL HOLDER OPT-IN FORMS PROMPTLY!</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER OPT-IN FORM OR THE VOTING INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT AT:**

**(877) 499-4509 (USA or Canada) or +1 (917) 281-4800 (international) Or via email: ProterraInfo@kccllc.com**

---

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS MASTER OPT-IN FORM AND EACH BENEFICIAL HOLDER OPT-IN FORM ELECTING THE OPT IN FROM YOU BEFORE THE OPT-IN DEADLINE, WHICH IS FEBRUARY 27, 2024 AT 4:00 PM (ET) THEN YOUR ELECTION TRANSMITTED HEREBY WILL NOT BE COUNTED.**

---

31183142.3

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION PACKAGE MAILED HEREWITH.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN

**PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS:**

To provide additional information regarding the third party releases, the following sections of the Plan have been copied immediately below:  I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), and **Article IX.C (Releases by the Releasing Parties)**.[4]  To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following.

(a)    Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it: (a) is a holder of a Claim or Interest who is deemed to reject the Plan and does not opt into the releases set forth herein; (b) is a holder of a Claim or Interest who elects to opt out of the releases contained in the Plan, *provided*, *however*, that Avoidance Actions shall not be pursued and shall be released against any vendor or trade creditor notwithstanding whether any such vendor or trade creditor elects to opt out of the releases; (c) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector; (d) is an LG Party; or (e) is Cyress Jam, in his individual capacity (including as an individual holder of any Claims against, or Interests in, the Debtors).

(b)    Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims or Interests who are deemed to reject the Plan and opt in to granting the releases set forth herein, (i) the holders of all Claims and Interests who are Unimpaired under the Plan, (j) with respect to each of the foregoing Persons, in clauses (a) through (i), each of their Affiliates, solely in their capacities as such and solely to the extent a Person in clauses (a) through (i) has the authority to bind such Affiliate in such capacity, and (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their and

---

[4]    Article IX.A of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates (as set forth in Article IX.A of the Plan).

their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case, solely in their respective capacities as such and solely to the extent a Person in clauses (a) through (j) has the authority to bind them in such capacity; *provided* that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector; *provided*, *further*, that Cyress Jam, in his individual capacity (including as an individual holder of Claims against, or Interests in, the Debtors) shall not be a Releasing Party.

        (c)        Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part:  (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.**

31183142.3

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair:  (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action; or (h) any Cause of Action against a Released Party determined in a Final Order to be arising out of actual fraud, gross negligence, or willful misconduct of such Released Party.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.**

**Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in**

each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

**Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.**

*[Remainder of Page Intentionally Left Blank]*

31183142.3

Dated:    [Month DD, YYYY]              Respectfully submitted,
          Wilmington, Delaware

                                        **YOUNG CONAWAY STARGATT &
                                        TAYLOR, LLP**

                                        [    ]_____
                                        Pauline K. Morgan (No. 3650)
                                        Andrew L. Magaziner (No. 5426)
                                        Shella Borovinskaya (No. 6758)
                                        Rodney Square
                                        1000 North King Street
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 571-6600
                                        Facsimile: (302) 571-1253
                                        Email:  pmorgan@ycst.com
                                                amagaziner@ycst.com
                                                sborovinskaya@ycst.com

                                                - and -

                                        **PAUL, WEISS, RIFKIND,
                                        WHARTON & GARRISON LLP**
                                        Paul M. Basta (admitted *pro hac vice*)
                                        Robert A. Britton (admitted *pro hac vice*)
                                        Michael J. Colarossi (admitted *pro hac vice*)
                                        1285 Avenue of the Americas
                                        New York, New York 10019
                                        Tel:    (212) 373-3000
                                        Fax:    (212) 757-3990
                                        Email: pbasta@paulweiss.com
                                                rbritton@paulweiss.com
                                                mcolarossi@paulweiss.com

                                        *Counsel to the Debtors and
                                        Debtors in Possession*

31183142.3

13

**Exhibit 5-C**

**Form of Notice & Opt-In Form:  Registered Shareholders**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE TO SHAREHOLDERS OF (A) RIGHT TO OPT IN TO
THIRD-PARTY RELEASE, (B) HEARING TO CONSIDER CONFIRMATION
OF THE CHAPTER 11 PLAN OF REORGANIZATION FOR PROTERRA INC
AND ITS DEBTOR AFFILIATE AND (C) RELATED OBJECTION DEADLINES**

> **PLEASE BE ADVISED THAT UNDER THE PLAN YOU MAY GIVE AND RECEIVE CERTAIN MUTUAL RELEASES ONLY IF YOU OPT IN TO GRANTING A RELEASE. PLEASE READ THIS NOTICE IN ITS ENTIRETY AND PLEASE SEE PAGE 4 BELOW FOR MORE DETAILS ON THE RELEASES.**

> You are receiving this notice because you are a shareholder of Proterra Inc (the "<u>Company</u>" or "<u>Debtors</u>").
>
> You will not receive any payment on account of your shares in the bankruptcy case, and your shares will be cancelled.
>
> The Debtors are seeking court approval for a plan of reorganization and disclosure statement filed as part of its bankruptcy proceeding.
>
> Under the plan of reorganization, shareholders will not be entitled to any payment from the Debtors on account of their Proterra shares and do not get to vote on the plan of reorganization because shareholders are deemed to reject the plan of reorganization.
>
> However, shareholders may grant releases to various third parties, including, but not limited to the Debtors and officers and directors of the Debtors, if they return an Opt-In Form by the deadline to do so.
>
> <u>You have the right to opt in to granting and receiving certain mutual releases by completing the Opt-In Form on pages 5–6 of this notice.  The applicable definitions of</u>

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

**Released Parties and Releasing Parties are also attached to this notice for your convenience of review.  These Defined Terms control the scope of the Release provisions.**

> **Cyress Jam, the Court-appointed lead plaintiff in the securities fraud class action pending in the United States District Court for the Northern District of California under the caption, *Jeremy Villanueva, individually and on behalf of all others similarly situated* v. *Proterra, Inc., et al.,* Case No. 5:23-cv-03519-RFL (the "Securities Class Action"), by his counsel, Court-appointed lead counsel, Adam M. Apton, Esq., of Levi & Korsinsky, LLP, states as follows regarding the Opt-In  Release Form: "We strongly urge those who may have claims in the Securities Class Action, either because they received Proterra shares as a result of the merger transaction or purchased or otherwise acquired Proterra shares between August 11, 2021 and August 7, 2023 <u>NOT</u> to sign the Opt-In Release Forms.  If you sign the Opt-In Release Form below, you may be releasing valuable claims against non-Debtor D&O defendants in the Securities Class Action for no compensation."**

## I.    Notice of Disclosure Statement, Plan, and Confirmation Hearing

**PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *Third Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

You are receiving this notice because you are a shareholder of the Debtors and therefore **do not have the right to vote on the Plan** because you are not receiving anything under the Plan.

The hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

The deadline for filing objections to the Plan is **February 27, 2024 at 4:00 PM (ET)** (the "Plan Objection Deadline").  All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and**

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

(d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,<br>Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** | |
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>*- and -*<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com | |
| **U.S. Trustee** | |
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey | |

If you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by writing

to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

## II.       Right to Opt In to Third-Party Release

On the Effective Date of the Plan, the release, injunction, and discharge provisions contained in Article IX of the Plan will become effective. These provisions are reproduced on pages 9–11 of this notice for ease of reference. **You may choose to opt in to the Third-Party Release set forth in Article IX.C of the Plan** by completing and returning the two page document that follows (the "Opt-In Release Form") according to the instructions in this notice. If you do not complete the Opt-In Release Form, you will not be a Released Party, you will not receive the Releases, and **your claims against the other "Released Parties," including the directors and officers of the Debtors, will not be released pursuant to the Third-Party Release**.

**IF YOU WISH TO OPT IN TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN COMPLETE AND RETURN THE OPT-IN RELEASE FORM ACCORDING TO EITHER SECTION (1) OR (2) BELOW:**

(1)      Please complete, sign, and date this Opt-In Release Form and return it to KCC by first class mail, overnight or hand delivery to:

| **If by First Class Mail:** | **If by Overnight Courier or Hand Delivery:** |
|---|---|
| Proterra Ballot Processing Center<br>c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 | Proterra Ballot Processing Center<br>c/o KCC<br>222 N. Pacific Coast Highway, Suite 300<br>El Segundo, CA 90245 |

-  OR  -

(2)      Submit your Opt-In Release Form via KCC's online portal at https://kccllc.net/proterra. Click on the "submit e-ballot" section of the website and follow the instructions to submit your Opt-In Release Form.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit our customized electronic Opt-In Release Form:

Unique e-Ballot ID#:        _____

        PIN#:        _____

**The Solicitation Agent's online portal is the only manner in which Opt-In Release Forms will be accepted via electronic or online transmission. Opt-In Release Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

Each E-Ballot ID# and pin is to be used solely for opting into the Third-Party Release on account of the your equity interests.  Please complete and submit an electronic Opt-In Release Form for each E-Ballot ID# you receive, as applicable.

Holders of Claims who cast an Opt-In Release Form using the Balloting Agent's online portal should NOT also submit a paper Opt-In Release Form.

**IF YOU WISH TO OPT IN TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN, THIS OPT-IN RELEASE FORM MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE FEBRUARY 27, 2024 AT 4:00 PM (ET) (THE "<u>RELEASE OPT-IN DEADLINE</u>").  IF THIS OPT-IN RELEASE FORM IS RECEIVED AFTER THE RELEASE OPT-IN DEADLINE, IT WILL NOT BE COUNTED BY THE SOLICITATION AGENT AND YOU WILL NOT BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE IX.C OF THE PLAN.**

*[Remainder of Page Intentionally Left Blank]*

## OPT-IN RELEASE FORM

**PLEASE COMPLETE THE FOLLOWING:**

### Item 1. Opt-In for Third-Party Release

By checking this box, the undersigned Holder:

□ Elects to grant and receive the Third-Party Release contained in Article IX.C of the Plan.

(if the Holder checks this box, any and all claims of the Holder against "Released Parties," including the directors and officers of the Debtor, will be released)

- **If you do wish to give the Third-Party Release provided in Article IX.C of the Plan, you must check the Opt-In box above, and submit this ballot to KCC so it is received by the Release Opt-In Deadline.**

- **If you do not check the Opt-In box above, you will not be deemed to consent to giving and receiving the Third-Party Release provided in Article IX.C of the Plan.**

- **Opting into giving and receiving the Third-Party Release provided in Article IX.C of the Plan shall not affect whether you receive any payment under the Plan. Holders of Claims and Interests in Class 8 will not receive any payment under the Plan.**

**PLEASE BE ADVISED THAT BY CHECKING THE BOX ABOVE YOU ELECT TO GRANT AND RECEIVE THE THIRD-PARTY RELEASE AGAINST AND FROM THE OTHER "RELEASED PARTIES" AND "RELEASING PARTIES" AS THESE TERMS ARE DEFINED IN THE PLAN.  <u>YOU MUST AFFIRMATIVELY CHECK THE BOX ABOVE IN ORDER TO OPT IN TO THE THIRD-PARTY RELEASE.</u>**

PLEASE ALSO BE ADVISED THAT THE DEBTORS RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN IS SEPARATE FROM AND INDEPENDENT OF THE THIRD-PARTY RELEASE; PROVIDED THAT YOU WILL NOT BE A RELEASED PARTY RECEIVING THE DEBTOR RELEASE UNLESS YOU OPT IN TO THE THIRD PARTY RELEASE.  IF YOU OBJECT TO THE DEBTORS RELEASE, YOU MUST FILE A SEPARATE OBJECTION WITH THE COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER BY FEBRUARY 27, 2024 AT 4:00 PM (ET).

### Item 2. Certifications

By signing this Opt-In Release Form, the undersigned certifies to the Court and the Debtors that:

a. the undersigned is a Holder of Claims or Interests as set forth in Item 1;

b. the undersigned has received the Notice to Shareholders of (A) Right to Opt in to Third-Party Release, (B) Hearing to Consider Confirmation of the Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate and (C) Related Objection

31183142.3

Deadlines, and that this Opt-In Release Form is submitted pursuant to the terms and conditions set forth therein;

c. the undersigned has submitted the same election with respect to all of its Claims or Interests; and

d. the undersigned has not submitted any other Opt-In Release Form for its Interests, or if another form has been previously submitted, such form is revoked.

*[Remainder of page intentionally left blank.]*

_____
Name of Holder

_____
Signature

_____
Name of Signatory and Title

_____
Name of Institution (if different than Holder)

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

31183142.3

## II.    Definitions Applicable to the Release ("Defined Terms")

To provide additional information regarding the third party releases, the following sections of the Plan have been copied immediately below:  I.A (definition of Released Party), Article I.A. (definition of Releasing Parties), and **Article IX.C (Releases by the Releasing Parties)**.[1]  To the extent of any discrepancy between the following and the corresponding sections in the Plan, including any modifications or amendments thereto, the sections in the Plan control.  Please carefully review the following.

(a)    Article I.A. of the Plan defines "Released Party" as:

"**Released Parties**" means, collectively, the Releasing Parties; provided that, in each case, an Entity shall not be a Released Party if it: (a) is a holder of a Claim or Interest who is deemed to reject the Plan and does not opt into the releases set forth herein; (b) is a holder of a Claim or Interest who elects to opt out of the releases contained in the Plan, *provided*, *however*, that Avoidance Actions shall not be pursued and shall be released against any vendor or trade creditor notwithstanding whether any such vendor or trade creditor elects to opt out of the releases; (c) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector; (d) is an LG Party; or (e) is Cyress Jam, in his individual capacity (including as an individual holder of any Claims against, or Interests in, the Debtors).

(b)    Article I.A. of the Plan defines "Releasing Parties" as:

"**Releasing Parties**" means, collectively, and in each case solely in its capacity as such: (a) the Debtors, (b) the First Lien Agent, (c) the Second Lien Agent, (d) any Statutory Committee and each of its members, (e) the holders of all Claims or Interests who vote to accept the Plan, (f) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (g) the holders of all Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein, (h) the holders of all Claims or Interests who are deemed to reject the Plan and opt in to granting the releases set forth herein, (i) the holders of all Claims and Interests who are Unimpaired under the Plan, (j) with respect to each of the foregoing Persons, in clauses (a) through (i), each of their Affiliates, solely in their capacities as such and solely to the extent a Person in clauses (a) through (i) has the authority to bind such Affiliate in such capacity, and (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their and their Affiliates' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case, solely in their respective capacities as such and solely to the extent a Person in clauses (a) through (j) has the authority to bind them in such capacity; *provided* that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before

---

[1]    Article IX.B of the Plan sets forth the "Releases by the Debtors," which provides for a release of each Released Party by the Debtors and their Estates.

31183142.3

Confirmation or supports any such objection or objector; *provided*, *further*, that Cyress Jam, in his individual capacity (including as an individual holder of Claims against, or Interests in, the Debtors) shall not be a Releasing Party.

        (c)      Article IX.C of the Plan provides the following in regard to "Releases by the Releasing Parties":

**As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, the Reorganized Debtors, any Wind Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, any Sale, the formulation, preparation, dissemination, negotiation, or filing of the Sale Documents, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sales, the Plan Support Agreement, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, any Interests, and all matters relating thereto.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair: (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the First Lien Agent or Second Lien Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property**

31183142.3

distributable to holders of Claims under the First Lien Credit Facility or the Second Lien Convertible Notes, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (d) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); (f) any obligations of any party or Entity under the Sale Documents; (g) any Cause of Action asserted or assertable by any Releasing Party against any non-Debtor party to any Retained Cause of Action; or (h) any Cause of Action against a Released Party determined in a Final Order to be arising out of actual fraud, gross negligence, or willful misconduct of such Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in this Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE

**MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

**Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.**

## IV.    Brief Overview of the Restructuring and Settlement

**Postpetition Marketing Process**:

As more fully detailed in the Disclosure Statement,[2] at the outset of these Chapter 11 Cases, the Debtors sought and obtained Bankruptcy Court approval of the bidding procedures to govern their postpetition marketing and sale process (the "Marketing Process"). The Debtors filed a motion for approval of Bidding Procedures (as defined in the Bidding Procedures Order) for the sale or reorganization of all or any portion of their assets pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan. The Bidding Procedures were designed to facilitate potential auctions for the assets, thereby maximizing recoveries for all stakeholders.

On November 9, 2023 and November 13, 2023, the Debtors conducted the Auctions for the Debtors' Business Lines. At the conclusion of the Track B Auction, the Debtors selected Volvo as the Successful Bidder. [Docket No. 525]. On November 29, 2023, the Bankruptcy Court authorized the Debtors to close the transaction contemplated by the Purchase Agreement in the Powered Sale Order and sell the Proterra Powered Business Line to Volvo. [Docket No. 664]. At the conclusion of the Track A Auction, the Debtors selected (a) Phoenix as the Successful Bidder with respect to (i) the Battery Leases and (ii) Proterra Transit and (b) the Plan Sponsor as the Successful Bidder with respect to Proterra Energy. [Docket No. 529]. On January 9, 2024, the Bankruptcy Court authorized the Debtors to close the transactions contemplated by the Purchase Agreements in the Transit Sale Order and sell Proterra Transit and the Battery Leases to Phoenix. [Docket No. 833]. On January 11, 2024, the Debtors closed the sale of Proterra Transit to Phoenix and amended the Purchase Agreement regarding the Battery Leases. [Docket No. 879]. The Debtors seek to close the sale of the Battery Leases to Phoenix as soon as possible and to consummate the transactions contemplated by the Plan Support Agreement and reorganize Proterra Energy through the confirmation and consummation of the Plan.

**Anthelion Liquidation Payment Claim**:

On November 15, 2023, the Second Lien Agent filed a proof of claim asserting a secured claim under the Prepetition Second Lien Loan Documents in the aggregate principal and accrued interest amount of not less than $266,670,640.37 (the "Asserted Principal and Prepetition Interest Amount") [Proof of Claim No. 1177]. In addition to the Asserted Principal and Prepetition Interest Amount, the Second Lien Agent asserted claims arising out of, if any, the Second Lien Agent's adequate protection claims under the Cash Collateral Order, claims arising out of the alleged

---

[2]    To the extent of any difference between this Brief Overview of the Restructuring and Settlement and the information provided in the Disclosure Statement, the Disclosure Statement shall prevail.

Debtors' obligations to reimburse the Second Lien Agent's fees and expenses with respect to their advisors, and alleged indemnification agreements. The Second Lien Agent included an alleged Liquidation Payment Claim of $88,585,019.28 in the Second Lien Agent Proof of Claim.

On November 29, 2023, the Bankruptcy Court entered the *Order Approving Stipulation Regarding Scheduling with Respect to Litigating the Premium Claim* [Docket No. 665] (the "Stipulation"). In accordance with the schedule set forth in the Stipulation, the Debtors and the Committee filed objections and motions for judgment on the pleadings with respect to the Second Lien Agent's Proof of Claim asserting a Liquidation Payment Claim on December 6, 2023 [Docket Nos. 689, 690].

On January 2, 2024, the Debtors filed the *Notice of Filing of Amended and Restated Plan Support Agreement* [Docket No. 794] pursuant to which the Second Lien Agent, Committee, and Debtors agreed to support the Plan, which incorporates a comprehensive settlement to the Liquidation Payment Claim and the Committee's challenges to the Second Lien Agent's liens (the "Liquidation Payment Settlement"). The Liquidation Payment Settlement, as embodied in the Plan, includes that the Allowed amount of the Second Lien Convertible Notes Claims shall include the Settled Amounts—*i.e.*, (a) $3.0 million; *plus* (b) postpetition interest on the Agreed Second Lien Obligations at the default rate set forth in the Second Lien Convertible Notes Purchase Agreement; *less* (c) postpetition interest on the Agreed Second Lien Obligations at the non-default rate set forth in the Second Lien Convertible Notes Purchase Agreement. Furthermore, the Debtors' estates will fund $10.0 million or such other amount as is agreed by the Debtors, Second Lien Agent, and the Committee into the Distribution Trust Expense Reserve. The Liquidation Payment Settlement resolves any potential objection to the Plan by the Committee, and the Committee has executed the Plan Support Agreement and agreed to support the Plan in accordance therewith.

[*Remainder of Page Intentionally Left Blank*]

Dated:    [Month DD, YYYY]          Respectfully submitted,
          Wilmington, Delaware

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

[   ]_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
        amagaziner@ycst.com
        sborovinskaya@ycst.com

            - and -

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
        rbritton@paulweiss.com
        mcolarossi@paulweiss.com

*Counsel to the Debtors and
Debtors in Possession*

31183142.3

## **Exhibit 6**

**Form of Notice of Assumption of Executory Contracts and Unexpired Leases**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF (A) EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED BY THE DEBTORS PURSUANT TO THE PLAN, (B) CURE AMOUNTS, IF ANY, AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH**

**PLEASE TAKE NOTICE THAT**, on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (together, the "Debtors"), to solicit acceptances for the *Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *Third Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article V.A of the Plan, as of the Effective Date, except as provided in the Plan (including, with respect to D&O Policies, Article IV.P thereof), the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases, unless such Executory Contract is a D&O Policy or an Insurance Contract, that (a) have not been identified on the Assumption Schedule (as defined herein), (b) have not been otherwise rejected, assumed, or assumed and assigned, including in connection with any Sale, or which have not been designated for assumption or assumption and assignment pursuant to the terms of any Sale Order, or (c) are not otherwise rejected, assumed, assumed and assigned, or the subject of a motion filed by the Debtors prior to the Effective Date to assume, assume and assign, or reject such Executory Contracts and Unexpired Leases on which the Bankruptcy Court has not ruled and is still pending.

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article V.D of the Plan, at least fourteen (14) calendar days before the Confirmation Hearing and solely to the extent the applicable Executory Contract or Unexpired Lease was not included in the Cure Notice (or if the proposed Cure Claim for such Executory Contract or Unexpired Lease is different than the proposed Cure Claim listed in the Cure Notice), the Debtors shall distribute, or cause to be distributed, Plan Cure Notices and proposed amounts of Cure Claims to the applicable Executory Contract or Unexpired Lease counterparties. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Debtors at least seven (7) calendar days before the Confirmation Hearing. Any such objection to the assumption of an Executory Contract or Unexpired Lease shall be heard by the Bankruptcy Court on or before the Effective Date, unless a later date is agreed to between the Debtors or the Reorganized Debtors, on the one hand, and the counterparty to the Executory Contract or Unexpired Lease, on the other hand, or by order of the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount shall be deemed to have assented to such assumption and/or cure amount.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the Schedule of Assumed Executory Contracts and Unexpired Leases (the "Assumption Schedule") with the Court as part of the Plan Supplement on [●], 2024, as contemplated under the Plan. The determination to assume (or assume and assign) the agreements identified on the Assumption Schedule was made as of [●] and is subject to revision.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtors' records reflect that you are a party to a contract that is listed on the Assumption Schedule and that such contract has not previously been listed on a Cure Notice, or that the amount required to cure defaults, if any, under such contract (the "Cure Amount") has changed following its inclusion on a Cure Notice. Therefore, you are advised to review carefully the information contained in this notice and the related provisions of the Plan, including the Assumption Schedule.

**PLEASE TAKE FURTHER NOTICE** that the Debtors are proposing to assume (or assume and assign) the Executory Contract(s) and Unexpired Lease(s) listed on Exhibit A, attached hereto, to which you are a party.[3]

---

[3]  Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumption Schedule, nor anything contained in the Plan or each Debtor's schedule of assets and liabilities, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of assumption, that any Reorganized Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement. Further, the Debtors expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Assumption Schedule and reject such

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the Cure Amounts, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed on <u>Exhibit A</u> attached hereto. Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no Cure Amount outstanding for such contract or lease.

**PLEASE TAKE FURTHER NOTICE THAT** absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contract(s) and Unexpired Lease(s) identified above will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtors in Cash on the Effective Date. In the event of a dispute regarding (a) the amount of the Cure Claim, (b) the ability of the Reorganized Debtors or any assignee to provide 'adequate assurance of future performance' (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall only be made following the entry of a Final Order or orders resolving the dispute and approving the assumption by mutual agreement between the Debtors or the Reorganized Debtors, as applicable, and the applicable counterparty, with the consent of the Second Lien Agent, such consent not to be unreasonably withheld.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Plan Objection Deadline (as defined herein). Any such objection to the assumption of an Executory Contract or Unexpired Lease shall be heard by the Bankruptcy Court on or before the Effective Date, unless a later date is agreed to between the Debtors or the Reorganized Debtors, on the one hand, and the counterparty to the Executory Contract or Unexpired Lease, on the other hand, or by order of the Bankruptcy Court.

The Debtors or Reorganized Debtors, as applicable, reserve the right to reject any Executory Contract or Unexpired Lease in their discretion, subject to the consent rights set forth in the Plan Support Agreement, including in connection with the resolution of any cure disputes. Notwithstanding anything to the contrary herein, if at any time the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice or the Assumption Schedule, the Debtors or Reorganized Debtors, as applicable, will have the right, at such time, to remove such Executory Contract or Unexpired Lease from the Assumption Schedule, in which case such Executory Contract or Unexpired Lease shall be deemed rejected as of the Effective Date.

**PLEASE TAKE FURTHER NOTICE THAT any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment or related Cure Amount must be Filed, served, and actually received by the**

---

Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date and (b) contest any Cure Claim (or Cure Amount) asserted in connection with assumption of any Executory Contract or Unexpired Lease.

**Debtors by the Plan Objection Deadline. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, or proposed assumption and assignment, or Cure Amount will be deemed to have consented to such matters and will be deemed to have forever released and waived any objection to such proposed assumption, proposed assumption and assignment, and Cure Amount.**

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan, including, as set forth in Article IV.D.2 of the Plan, to the assumption (or assumption and assignment) of an Executory Contract or Unexpired Lease, is **February 27, 2024** at **4:00 PM (ET)** (the "Plan Objection Deadline"). Any objection **must** (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (d) be filed with this Court (contemporaneously with a proof of service) and served upon the notice parties identified in the Confirmation Hearing Notice so as to be **actually received** on or before **February 27, 2024** at **4:00 PM (ET)**.

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind, Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com, rbritton@paulweiss.com, mcolarossi@paulweiss.com<br><br>*- and -*<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com, amagaziner@ycst.com, sborovinskaya@ycst.com |

| The Official Committee of Unsecured Creditors |
|---|
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>- *and* -<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com |
| **U.S. Trustee** |
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey |

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the assumption of the Executory Contract(s) and Unexpired Lease(s) identified above and/or related cure or adequate assurances proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the Confirmation Hearing (or such other date as fixed by the Court).

**PLEASE TAKE FURTHER NOTICE THAT assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date of the Debtors or Reorganized Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Court.**

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

31183142.3

Dated:    [Month DD, YYYY]          Respectfully submitted,
          Wilmington, Delaware

                                     **YOUNG CONAWAY STARGATT &
                                     TAYLOR, LLP**

                                     [    ]_____
                                     Pauline K. Morgan (No. 3650)
                                     Andrew L. Magaziner (No. 5426)
                                     Shella Borovinskaya (No. 6758)
                                     Rodney Square
                                     1000 North King Street
                                     Wilmington, Delaware 19801
                                     Telephone: (302) 571-6600
                                     Facsimile: (302) 571-1253
                                     Email:  pmorgan@ycst.com
                                             amagaziner@ycst.com
                                             sborovinskaya@ycst.com

                                              - and -

                                     **PAUL, WEISS, RIFKIND,
                                     WHARTON & GARRISON LLP**
                                     Paul M. Basta (admitted *pro hac vice*)
                                     Robert A. Britton (admitted *pro hac vice*)
                                     Michael J. Colarossi (admitted *pro hac vice*)
                                     1285 Avenue of the Americas
                                     New York, New York 10019
                                     Tel:    (212) 373-3000
                                     Fax:    (212) 757-3990
                                     Email:  pbasta@paulweiss.com
                                             rbritton@paulweiss.com
                                             mcolarossi@paulweiss.com

                                     *Counsel to the Debtors and
                                      Debtors in Possession*

31183142.3

## **Exhibit A**

**Assumption Schedule**



**Exhibit A**

| Counterparty Name | Description of Contract | Debtor Counterparties | Entity to be Assigned Contract (if applicable) | Amount Required to Cure Default Thereunder, If Any |
|---|---|---|---|---|
|  |  |  |  |  |

**Exhibit 7**

**Solicitation Package Cover Letter**



**[●], 2024**

Via First Class Mail

<u>RE</u>:    <u>In re Proterra Inc</u>
         <u>Chapter 11 Case No. 23-11120 (BLS)</u>

TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN:

      Proterra Inc and its affiliated debtor (together, the "<u>Debtors</u>")[1] filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") on August 7, 2023.

      You have received this letter and the enclosed materials because you are entitled to vote on the *Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "<u>Plan</u>").[2] On [●], 2024, the Court entered an order [Docket No. ●] (the "<u>Disclosure Statement Order</u>"):  (a) authorizing the Debtors to solicit acceptances for the Plan; (b) approving the *Third Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "<u>Solicitation Packages</u>"); (d) scheduling certain dates with respect thereto; and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan

> **YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE PLAN.  THEREFORE, YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.



In addition to this cover letter, the enclosed materials comprise your Solicitation Package, and were approved by the Court for distribution to Holders of Claims in connection with the solicitation of votes to accept the Plan.  The Solicitation Package consists of the following:

    a.     a copy of the Solicitation and Voting Procedures;

    b.     a Ballot, together with detailed voting instructions and a pre-addressed, postage pre-paid return envelope;

    c.     this Solicitation Package Cover Letter and the UCC Letter;

    d.     the Disclosure Statement (and exhibits thereto, including the Plan);

    e.     the Disclosure Statement Order (without exhibits, except the Solicitation and Voting Procedures);

    f.     the Confirmation Hearing Notice; and

    g.     such other materials as the Court may direct.

The Debtors have filed the Plan and are soliciting votes to accept the Plan.  **The Debtors believe that the acceptance of the Plan is in the best interests of their estates, Holders of Claims, and all other parties in interest.  The Plan is the culmination of the Debtors' extensive efforts to achieve the best possible outcome for all creditors.  Moreover, the Debtors believe that any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller distributions (or no distributions) on account of Claims asserted in the chapter 11 cases.  IF THE PLAN IS NOT CONFIRMED, THE DEBTORS CURRENTLY HAVE NO ALTERNATIVES FOR PRESERVING THE ESTATES.**

---

**THE DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN, IN ACCORDANCE WITH THE INSTRUCTIONS INDICATED ON YOUR BALLOT.**

**THE VOTING DEADLINE IS FEBRUARY 27, 2024 AT 4:00 PM (ET).**

---

The materials in the Solicitation Package are intended to be self-explanatory.  If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials if you received electronic access to the solicitation materials), contact KCC, the Debtors' Solicitation Agent, by: (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 North Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the



Debtors' restructuring hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra.  You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: https://www.deb.uscourts.gov/. Please be advised that the Solicitation Agent is authorized to answer any questions about, and provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

Sincerely,

[ ]
Gareth T. Joyce
Chief Executive Officer
Proterra Inc, on behalf of itself

31183142.3

The Official Committee of Unsecured Creditors
of Proterra Inc, *et al.*
Debtors and Debtors-in-Possession in the
United States Bankruptcy Court for the District of Delaware
Case No. 23-11120 (BLS)
c/o Lowenstein Sandler LLP

January [●], 2024

**To: Holders of General Unsecured Claims Against Proterra Inc *et al.*:[1]**

We write on behalf of the Official Committee of Unsecured Creditors (the "Committee") of Proterra Inc (together with its affiliated debtor, the "Debtors"), the debtors in the above-referenced bankruptcy cases, to recommend that Holders of General Unsecured Claims vote to accept the *Debtors' Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and Its Debtor Affiliate* (as may be modified and/or amended from time to time, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan and Disclosure Statement.

The Plan represents the culmination of extensive and good faith negotiations among the Debtors' key stakeholders, including the Committee, following the Debtors' agreement to sell substantially all of their assets.

**The Committee is supportive of the Plan based on the current and known facts and circumstances and the information provided thus far by the Debtors and their professionals. The Committee urges all Holders of General Unsecured Claims to VOTE TO ACCEPT THE PLAN and return your Ballot indicating your acceptance of the Plan in accordance with the voting instructions set forth on the Ballot.**

In addition to this letter, the Solicitation Package contains a copy of the Disclosure Statement (including all exhibits and appendices) and related materials and a Ballot where you may indicate your vote to either accept or reject the Plan.

### A. Background

On August 7, 2023, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") initiating these chapter 11 cases (the "Chapter 11 Cases").

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

31183142.3

On August 24, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed the Committee, and on September 21, 2023, the U.S. Trustee reconstituted the Committee.[2] The Committee is statutorily charged with representing the interests of all unsecured creditors. Among the duties and powers of an official committee of unsecured creditors is the participation in the formulation of a debtor's plan and the responsibility for advising the debtor's creditors of the committee's determinations regarding the plan. The members of the Committee in these Chapter 11 Cases have devoted substantial time and attention in carrying out their statutory duties to all unsecured creditors.

To represent their interests, the Committee retained: Lowenstein Sandler LLP and Morris James LLP, as its counsel; Berkeley Research Group, LLC, as its financial advisor; and Miller Buckfire & Co., LLC and Stifel Nicolaus & Co., Inc. as its investment banker.

**B.  The Sales and Plan Support Agreement**

At the start of the Chapter 11 Cases, the Debtors filed a motion for approval of Bidding Procedures for the sale or reorganization of all or any portion of their assets, including the Proterra Powered, Proterra Transit, and Proterra Energy Business Lines. Upon completion of the marketing process, the Debtors conducted Auctions for each of their Business Lines and agreed to the following sale transactions:

- The sale of the Powered Business to Volvo Battery Acquisitions LLC ("Volvo") for cash consideration in the amount of approximately $265,000,000 plus the assumption of certain liabilities. The Bankruptcy Court approved the sale to Volvo on November 29, 2023, and the Debtors expect to close the transaction in advance of confirmation of the Plan.

- The sales to Phoenix Motor, Inc. ("Phoenix") of (i) Proterra Transit for cash consideration in the amount of $3,500,000 plus the assumption of certain liabilities, and (ii) the Debtors' battery leases for cash consideration in the amount of $6,500,000. The Bankruptcy Court approved the sale to Phoenix on January 8, 2024. The sale of Proterra Transit closed on January 11, 2024 and the Debtors expect the sale of the batter leases to close in advance of confirmation of the Plan.

- The sale of Proterra Energy to Anthelion I Prodigy Holdco LP (f/k/a CSI I Prodigy Holdco LP), Anthelion Prodigy Co-Investment LP (f/k/a CSI Prodigy Co-Investment LP), and Anthelion PRTA Co-Investment LP (f/k/a CSI PRTA Co-Investment LP) (collectively, the "Plan Sponsor") for consideration in the amount of (i) a $10,00,000 credit bid plus (ii) payment of Cure Claims in excess of $6,500,000. The Debtors intend to complete the Proterra Energy transaction through the confirmation and consummation of the Plan (the "Reorganization").

---

[2]    The Committee consists of the following members: Power Electronics USA, Inc.; Ms. Michele Thorne; TPI, Inc.; Sensata Technologies, Inc; and DWFritz Automation LLC.

### C.  **The Committee's Investigation**

Since its appointment, the Committee and its professionals have been actively involved in nearly every aspect of these Chapter 11 Cases in an effort to maximize recoveries for unsecured creditors. The Committee, through its professionals, investigated potential third-party claims and causes of action, including the validity of the Second Lien Agent's liens and claims and the conduct of the Debtors' current and former directors and officers.  The investigation included extensive discovery consisting of the review of documents and interviews conducted by the Committee's professionals of certain of the Debtors' current and former directors, officers, and employees.

After completion of its investigation, the Committee was unable to identify any viable estate claims or causes of action that would result in an increase of recovery for Holders of General Unsecured Claims.  Furthermore, the investigation did not uncover any improper payments made to insiders or other potentially fraudulent transfer payments.

As discussed in further detail in the next section, the Committee's investigation did identify certain challenges to the Second Lien Agent's liens and the Liquidation Payment Claim asserted by the Second Lien Agent which are being resolved through entry of the Liquidation Payment Settlement.

### D.  **The Liquidation Payment Settlement**

The Second Lien Agent asserted a liquidation premium claim in the amount of $88,585,019.23 (the "Liquidation Premium Claim").  The Committee and Debtors filed objections to the Liquidation Premium Claim on December 6, 2023.  As part of a global settlement, resolving the Committee's challenges to the Second Lien Agent's liens and claims, including the Liquidation Premium Claim, the Second Lien Agent, Committee, and Debtors have agreed to the following settlement terms which will be implemented through the Plan (the "Liquidation Payment Settlement"):

- the allowance of the Liquidation Premium Claim in the limited amount of $3,000,000;
- the payment of postpetition interest on the Agreed Second Lien Obligations at the default rate set forth in the Second Lien Convertible Notes Purchase Agreement; and
- the funding by the Debtors' estates of $10 million, or such other amount agreed to by the Debtors, Committee, and Plan Sponsor, into the Distribution Trust Expense Reserve to ensure administrative solvency and to provide funding for the Distribution Trust.

The Debtors filed the *Notice of Amended & Restated Chapter 11 Plan Support Agreement* [Docket No. 794] on January 2, 2024, which is further amended by the *Notice of Filing of (I) Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and Its Debtor Affiliate and (II) Blackline Thereto* that was filed on January 15, 2024 [Docket No. 888], pursuant to which the Second Lien Agent, Committee, and Debtors agreed to support the Plan and incorporates the terms of the Liquidation Premium Settlement.  The Liquidation Payment Settlement resolves any potential objection to the Plan by the Committee, and the Committee has executed the Plan Support Agreement and agreed to support the Plan in accordance therewith.

31183142.3

### E.  The Plan and Disclosure Statement

On January 15, 2024, the Debtors filed the Third Amended Plan and Third Amended Disclosure Statement.  The Plan is a chapter 11 plan of reorganization.

Under the Plan, Holders of Allowed General Unsecured Claims are placed in Class 5 and treated in accordance with the terms set forth in Article III of the Plan, which provides that each Holder of an Allowed General Unsecured Claim will receive its pro rata share of the Second Priority Distribution Trust Beneficiaries interests in the Distribution Trust.  Class 5 is considered Impaired and entitled to vote to accept or reject the Plan.

Please note that Article IX of the Plan contains certain release, exculpation, and injunction provisions, including third-party releases, which third-party releases are set forth in Article IX.C. Holders of General Unsecured Claims may elect to withhold consent to the third-party releases by (i)(a) either voting to "REJECT" or not voting on the Plan; and (b) checking the Release Opt-Out box under Item 2 of the Ballot, or (ii) timely filing an objection to the releases by Holders of Claims.  If you vote to "ACCEPT" the Plan, you are deemed to consent to the third-party releases unless you timely file an objection to the Plan that is not resolved prior to confirmation, or file on the docket any pleading evidencing support for any such objection or objector.

**Subject to the Bankruptcy Court's approval of the opt-out mechanism, the failure to withhold consent to the third-party releases, or file an objection, as set forth above will be deemed your consent to the third-party releases if the Plan is confirmed and goes effective.**

### F.  The Committee's Recommendation

The Committee believes that the Plan is in the best interest of creditors and other stakeholders and is the fairest means of moving these Chapter 11 Cases towards resolution.  The Committee, as the statutory fiduciary representative of unsecured creditors of the Debtors, strongly urges all unsecured creditors to vote in favor of the Plan.

Accordingly, the Committee recommends that **all Holders of General Unsecured Claims vote in favor** of accepting the Plan by indicating your acceptance of the Plan on the Ballot included with your Solicitation Package.  Instructions for submitting your vote are included in the Ballot.

Of course, before you cast your Ballot, you should review the Plan and Disclosure Statement in their entirety and you may want to consult your own legal and financial professionals.

**Your vote to accept the Plan is crucial, no matter how large or small your claim may be.**

Although the Committee, by this letter, expresses its support for the Plan, this letter does not necessarily reflect the views of any of the individual Committee members, each of which reserves any and all of its rights.

31183142.3

If you have any questions regarding voting procedures or otherwise, please contact any one of the Committee's professionals including: Jeffrey Cohen at jcohen@lowenstein.com; Eric Chafetz at echafetz@lowenstein.com; Jordana Renert at jrenert@lowenstein.com; Lindsay Sklar at lsklar@lowenstein.com; and Erica Mannix at emannix@lowenstein.com.

Very truly yours,

By: */s/ Jeffrey L. Cohen*

Jeffrey L. Cohen, Esq.
Eric Chafetz, Esq.
Jordana Renert, Esq.
Lindsay H. Sklar, Esq.
Erica G. Mannix, Esq.
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: jrenert@lowenstein.com
Email: lsklar@lowenstein.com
Email: emannix@lowenstein.com

*Counsel to the Official Committee of Unsecured Creditors*

**YOU ARE URGED TO CAREFULLY READ THE PLAN AND DISCLOSURE STATEMENT. THE DESCRIPTION OF THE PLAN IN THIS LETTER IS INTENDED TO BE A SUMMARY ONLY.**

**THIS COMMUNICATION DOES NOT CONSTITUTE, AND SHALL NOT BE CONSTRUED AS, A SOLICITATION BY ANY INDIVIDUAL MEMBER OF THE COMMITTEE.**

**THIS LETTER MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN HOW TO VOTE ON THE PLAN AND THE INFORMATION CANNOT BE RELIED UPON FOR ANY OTHER PURPOSE.**

**THE BANKRUPTCY COURT'S APPROVAL OF THIS SUPPORT LETTER TO BE INCLUDED AS PART OF THE SOLICITATION PACKAGE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE MERITS OF THE**

31183142.3

**PLAN OR THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE COMMITTEE DOES NOT REPRESENT INDIVIDUAL HOLDERS OF ANY PARTICULAR CLAIMS AND CANNOT ADVISE UNSECURED CREDITORS REGARDING THE IMPACT OF THE PLAN ON DIRECT CLAIM(S) OR CAUSES OF ACTION, IF ANY, AN INDIVIDUAL UNSECURED CREDITOR MAY HAVE AGAINST ANY OF THE DEBTORS' OFFICERS OR DIRECTORS OR OTHER THIRD PARTIES PROVIDED RELEASES (THIRD-PARTY OR OTHERWISE) UNDER THE PLAN.  TO THE EXTENT YOU BELIEVE YOU MAY OWN ANY SUCH POTENTIAL CLAIMS, PLEASE CONTACT YOUR OWN INDIVIDUAL COUNSEL TO ASSESS WHETHER ACCEPTANCE OF THE PLAN IS IN YOUR BEST INTERESTS.**

**<u>Exhibit 8</u>**

**Form of Plan Supplement Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**NOTICE OF FILING OF PLAN SUPPLEMENT FOR THE JOINT
CHAPTER 11 PLAN OF REORGANIZATION
FOR PROTERRA INC AND ITS DEBTOR AFFILIATE**

       **PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), (a) authorizing Proterra Inc and its affiliated debtor (collectively, the "Debtors"), to solicit acceptances for the *Third Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *Third Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization for Proterra Inc and its Debtor Affiliate* (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); (d) scheduling certain dates with respect thereto, and (e) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

       **PLEASE TAKE FURTHER NOTICE** that, the Debtors hereby file certain exhibits to the Plan consisting of the following:

| Exhibit | Document[3] |
|:---:|---|
| A | [TBD] |
| B | [TBD] |
| C | [TBD] |
| D | [TBD] |

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459). The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement and the Plan, as applicable.

[3]    The exhibits set forth in the Plan Supplement remain subject to ongoing review and material revision in all respects.

PLEASE TAKE FURTHER NOTICE that the documents, schedules, and other information contained in this Plan Supplement are integral to and part of the Plan. These documents have not yet been approved by the Court. If the Plan is approved, the documents contained in the Plan Supplement will be approved by the Court pursuant to the Confirmation Order.

PLEASE TAKE FURTHER NOTICE that the Debtors reserve all rights to amend, modify, or supplement the Plan Supplement, and any of the documents contained therein, in accordance with the terms of the Plan. If material amendments or modifications are made to any of these documents, the Debtors will file a blackline with the Court prior to the Confirmation Hearing marked to reflect the same.

PLEASE TAKE FURTHER NOTICE THAT all votes to accept or reject the Plan must be **actually received** by the Debtors' Solicitation Agent at the Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA, 90245 by no later than **FEBRUARY 27, 2024 AT 4:00 PM (ET)**.

PLEASE TAKE FURTHER NOTICE that the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **March 5, 2024 at 10:00 AM (ET)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801. **The Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court.**

PLEASE TAKE FURTHER NOTICE that the deadline for filing objections to the Plan is **February 27, 2024 at  4:00 PM (ET)** (the "Plan Objection Deadline"). All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Proterra Inc & Proterra Operating Company, Inc.**<br>1815 Rollins Road<br>Burlingame, CA 94010<br>Attn: Jeff Mitchell, General Counsel<br>Email: jmitchell@proterra.com | **Paul, Weiss, Rifkind,**<br>**Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attn: Paul M. Basta, Robert A. Britton, and Michael J. Colarossi<br>Email: pbasta@paulweiss.com,<br>rbritton@paulweiss.com,<br>mcolarossi@paulweiss.com<br><br>- and -<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Pauline K. Morgan, Andrew L. Magaziner, and Shella Borovinskaya<br>Email: pmorgan@ycst.com,<br>amagaziner@ycst.com,<br>sborovinskaya@ycst.com |
| **The Official Committee of Unsecured Creditors** ||
| **Lowenstein Sandler LLP**<br>1251 Avenue of the Americas<br>New York, New York 10019<br>Attn: Jeffrey Cohen, Eric S. Chafetz, and Jordana Renert<br>Email: jcohen@lowenstein.com, echafetz@lowenstein.com, jrenert@lowenstein.com<br><br>- and -<br><br>**Morris James LLP**<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>Email: emonzo@morrisjames.com, bkeilson@morrisjames.com ||
| **U.S. Trustee** ||
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn: Linda J. Casey ||

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact the Debtors' Solicitation Agent by (a) writing to Proterra Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (b) calling the Debtors' restructuring

hotline at (888) 251-3076 (USA or Canada, toll-free) or +1 (310) 751-2617 (International) or emailing via www.kccllc.net/proterra/inquiry; or (c) visiting the Debtors' restructuring website at https://www.kccllc.net/proterra. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://www.deb.uscourts.gov.

---

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS CONTAINED IN ARTICLE IX OF THE PLAN.  ARTICLE IX.C OF THE PLAN CONTAINS THIRD-PARTY RELEASES.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT AS SPECIFIED ABOVE.  PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE.  IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.**

---

*[Remainder of Page Intentionally Left Blank]*

31183142.3

4

Dated:    [Month DD, YYYY]
        Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

[  ]_____
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  pmorgan@ycst.com
       amagaziner@ycst.com
       sborovinskaya@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Michael J. Colarossi (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
      rbritton@paulweiss.com
      mcolarossi@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

31183142.3