**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| PROTERRA INC, *et al.*,[1] | ) Case No. 23-11120 (BLS) |
|  | ) |
| DEBTORS. | ) (Jointly Administered) |
|  | ) |
|  | ) Re: Doc. No. 1090 |
|  | ) |
|  | ) Objection Deadline: 2/27/24 at 4:00 p.m. (ET) |
|  | ) Hearing Date: 3/5/24 at 10:00 a.m. (ET) |

**PHILADELPHIA INDEMNITY INSURANCE COMPANY'S LIMITED OBJECTION
AND RESERVATION OF RIGHTS TO THE DEBTORS'
THIRTY-FIRST OMNIBUS MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS, AND (II)
GRANTING RELATED RELIEF**

 **COMES NOW** Philadelphia Indemnity Insurance Company ("Philadelphia"), by and
through the undersigned counsel, and hereby submits this *Philadelphia Indemnity Insurance
Company's Limited Objection and Reservation of Rights to the Debtors' Thirty-First Omnibus
Motion for Entry of an Order (I) Authorizing the Debtors to Reject Certain Executory Contracts,
and (II) Granting Related Relief* (the "Limited Objection").  In support of this Limited Objection,
Philadelphia respectfully states as follows:

**PRELIMINARY STATEMENT**

 1. Philadelphia does not object to the Thirty-First Rejection Motion (as defined below)
*per se*.  However, Philadelphia asserts that any order granting it should incorporate or otherwise

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Proterra Inc (9565); and Proterra Operating Company, Inc. (8459).  The location of the Debtors' service address is: 1815 Rollins Road, Burlingame, California 94010.

make clear that the Phoenix Sale Order (as defined below), especially paragraphs 29 and 30, remains in effect and governs the assumption, assumption and assignment, or rejection of the Delayed Contracts (as defined below).

**PHILADELPHIA'S BONDS, INDEMNITY AGREEMENT, AND COLLATERAL**

2.      Prior to these chapter 11 cases, Philadelphia issued various surety bonds (the "Bonds", and each a "Bond"), as provided in **Exhibit 1**,[2] in the aggregate penal amount of not less than $32,343,956.34 on behalf of the above-referenced Debtors to assure the performance and payments of the Debtors' obligations owed to the various obligees under the Bonds with respect to certain contracts, permits, and/or licenses (collectively, the "Bonded Contracts").

3.      In consideration of Philadelphia issuing the Bonds on behalf of the Debtors, Debtor Proterra Inc. ("Proterra") executed that certain *General Indemnity Agreement Commercial Surety* dated September 30, 2016 (the "Indemnity Agreement"), on behalf of itself and any subsidiary or affiliate, including Debtor Proterra Operating Company, Inc. (the "Indemnitors"), and agreed, among other things, to indemnify and hold harmless Philadelphia from and against any Loss (as defined in the Indemnity Agreement) related to **any and all** Bonds and/or the Indemnity Agreement.  A redacted copy of the Indemnity Agreement is attached as **Exhibit 2**.

4.      Along with the contractual indemnity and other contractual rights and remedies provided under the Indemnity Agreement, Philadelphia has certain rights and remedies against both Debtors as named principals under the respective Bonds, especially indemnity, exoneration, and the right of equitable subrogation under common law, which includes, but is not limited to, the right to assert a subrogor's claim for setoff or recoupment.

---

[2] Exhibit A contains the Bonds identified by Philadelphia to the best of its knowledge, as currently in force.  The list of Bonds provided is not intended to be exhaustive and may not include all active Bonds.

5.     Moreover, as security for the Bonds issued on behalf of the Debtors, the Debtors provided Philadelphia with (a) $12,433,804.00 in cash held in a deposit account controlled by Philadelphia, (b) an irrevocable letter of credit issued by Bank of America, N.A. in the amount of $2,610,221.00 (the "BoA ILOC"), and (c) an irrevocable letter of credit issued by First-Citizens Bank & Trust Company (Successor by Purchase to the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bridge Bank, N.A. (as Successor to Silicon Valley Bank)) in the amount of $131,470.00 (the "FCB ILOC", and items a, b, and c, collectively with the rights and remedies discussed above and any and all proceeds of the foregoing, the "Collateral").

6.     As discussed in more detail below, the Bonds assure performance of the principal named in the Bond and no other party.  The Indemnity Agreement executed in favor of Philadelphia in connection with the Bonds obligate the Debtors to indemnify and hold harmless Philadelphia from and against any liability and/or loss in connection with the Bonds. While the Debtor may assume and assign contracts relating to the Bonds, subject to applicable bankruptcy and non-bankruptcy law, the Bonds are neither assumable nor assignable without Philadelphia's consent, which it is not required to provide.  The Indemnity Agreement is likewise neither assumable nor assignable without Philadelphia's consent, nor is it assumable or assignable in part. A transferee or assignee of a contract relating to a Bond must provide its own replacement bond, and its own indemnity agreement to the surety providing such replacement bond.  Otherwise, the transferee/assignee does not have the financial assurances that may be required to obtain the benefits of the underlying contract.

**BANKRUPTCY CASE BACKGROUND**

7.     On January 9, 2024, this Court approved two asset purchase agreements by and among the Debtors as sellers and Phoenix Motor, Inc. ("Phoenix") as purchaser (the "Transit

APA", the "Battery APA", and collectively, the "Phoenix APAs") through entry of the *Order (A) Authorizing and Approving the Debtors' Entry into the Asset Purchase Agreements (B) Authorizing the Sale of the Debtors' Transit and Battery Lease Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Executory Contracts and Unexpired Leases, and (D) Granting Related Relief* [Doc. No. 833] (the "Phoenix Sale Order").

8.     Philadelphia, along with other sureties, negotiated the following surety specific language for inclusion in the Phoenix Sale Order:

29.     Nothing in this Order, the APAs, or any document, agreement, or instrument contemplated by any of the foregoing shall:  (i) be construed to authorize or permit (a) the assumption and/or assignment of any surety bond issued by (x) Philadelphia Indemnity Insurance Company, (y) Atlantic Specialty Insurance Company, or (z) Lexon Insurance Company (collectively, the "Sureties" and, each individually, a "Surety") on behalf of the Debtors (collectively, the "Surety Bonds" and, each individually, a "Surety Bond"), (b) the assumption and/or assignment of any indemnity agreements executed by one or more of the Debtors pursuant to which the Surety Bonds were issued (the "Indemnity Agreements" and, each individually, an "Indemnity Agreement"), or (c) obligate a Surety to replace any Surety Bond and/or issue any new surety bond on behalf of a Buyer; or (ii) be deemed to provide a Surety's consent to the involuntary substitution of any principal under any Surety Bond and/or any Indemnity Agreement, including, for the avoidance of doubt, that the Buyer shall not be a substitute principal under any Surety Bond or any Indemnity Agreement absent a Surety's consent thereto or further order of the Court.  The Debtors and the Buyer reserve the right to add as an Assumed Contract any Indemnity Agreement, Surety Bond, or similar instrument (collectively, the "Surety Agreements"), and the inclusion of any of the Surety Agreements as an Assumed Contract shall not prejudice (I) the rights of the Sureties to object or respond to such proposed assumption and/or assignment of any Surety Agreement issued by the Surety, including, without limitation, the right to object to an involuntary substitution of principal under any Surety Bond or (II) the rights of the Debtors or any other party-in-interest's right to challenge any of the foregoing actions (or lack thereof).

30.     Additionally, nothing in this Order, the APAs, or any other document, agreement, or instrument contemplated by any of the foregoing shall be deemed to alter, limit, modify, release, waive, or prejudice any rights, remedies, and/or defenses that the Sureties have or may have under applicable bankruptcy and non-bankruptcy laws, under any of their respective Surety Agreements, or

related agreements, or any letters of credit, or other Surety collateral relating thereto.

9.      Exhibit C to the Phoenix Sale Order provided the schedule of contracts being assumed and assigned to Phoenix as part of the Phoenix APAs not subject to any assignment or cure objection (the "<u>Non-Contested Assumed Contracts</u>"), and Exhibit D provided the schedule of potentially assumed and assigned contracts subject to either an assignment or cure objection (the "<u>Delayed Contracts</u>"), with an outside date of February 16, 2024, for either (a) the various parties to resolve the applicable assignment or cure objection and assume and assign the relevant contract to Phoenix or (b) the Debtors to reject (the "<u>Delayed Contracts Rejection Date</u>").

10.     On January 11, 2024, the Debtors filed, in relevant part, a revised schedule of the Non-Contested Assumed Contracts related to the Transit APA [Doc. No. 848 Exhibit C-1] and a revised schedule of the Delayed Contracts[3] [Doc. No. 848 Exhibit D].  More specifically, the revised schedule of Non-Contested Assumed Contracts includes contracts related to the following obligees under the Bonds that likely constitute Bonded Contracts:

- Biddeford Saco Old Orchard Beach, lines 22-25,
- City of Visalia, lines 74, 469-470,
- Delaware Transit Authority, lines 113-115, 117-134,
- Rock Region Metro, lines 326-333,
- County of Sacramento, line 81, and
- Santa Clara Valley Transportation Authority, line 351.

The revised schedule of Non-Contested Assumed Contracts does not include any associated Bonds or the Indemnity Agreement.

11.     The revised schedule of Delayed Contracts includes contracts related to the following obligees under the Bonds that likely constitute Bonded Contracts:

- BC Transit, line 1,
- Chicago Transit Authority, line 7, and

---

[3] It is not immediately clear from the filings which of the Phoenix APAs the Delayed Contracts are related to.

- Metropolitan Washington Airports Authority, line 8.

12.    Further, on February 20, 2024, the Debtors filed the *Debtors' Thirty-First Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Reject Certain Executory Contracts, and (III)* [sic] *Granting Related Relief* (the "Thirty-First Rejection Motion"), which, in part, seeks (a) an extension to the Delayed Contracts Rejection Date to March 5, 2024, and (b) authority to reject any Delayed Contracts not assumed and assigned to Phoenix by March 5, 2024.  More specifically, the Thirty-First Rejection Motion lists the following Delayed Contracts related to the following obligees under the Bonds that likely constitute Bonded Contracts:

- BC Transit, lines 1-18,
- Chicago Transit Authority, lines 19-45,
- Metropolitan Washington Airports Authority, lines 46-48, and
- Miami Dade County, lines 49-52.

The Thirty-First Rejection Motion does not list any associated Bonds or the Indemnity Agreement.

13.    On February 8, 2024, the Debtors filed the *Fourth Amended Joint Chapter 11 Plan of Reorganization for Proterra Inc and Its Debtor Affiliate* [Doc. No. 1039 Exhibit A] (the "Plan"), and on February 16, 2024, the Debtors filed a supplement to the Plan consisting, in part, of a Schedule of Assumed Executory Contracts and Unexpired Leases [Doc. No. 1076-3 Exhibit C]. and a Schedule of Retained Causes of Action [Doc. No. 1076-2 Exhibit B].

14.    The Plan itself does not mention Philadelphia, the Bonds, the Indemnity Agreement, the Collateral, or the Delayed Contracts.

## PHILADELPHIA'S LIMITED OBJECTION

15.    As discussed above, certain Bonded Contracts appear to have already been assumed and assigned to Phoenix in relation to the Transit APA, and it remains unclear to Philadelphia whether Phoenix has provided the required replacement bonds. Moreover, it remains unclear whether certain other Bonded Contract will be so assumed and assigned or rejected.  As noted

above, none of the associated Bonds nor the Indemnity Agreement may be assumed, assumed and assigned, or rejected.  The Bonds must either be replaced and released by a purchaser, treated as assumed/reaffirmed with Philadelphia's consent on terms acceptable to Philadelphia (which include, without limitation, the assumption/reaffirmation of the Indemnity Agreement and/or execution of a new indemnity agreement).

16.    Assumption and assignment or rejection of the Delayed Contracts remains a moving target, potentially even post confirmation, and as provided in paragraph 29 of the Phoenix Sale Order:

> The Debtors and the Buyer reserve the right to add as an Assumed Contract any Indemnity Agreement, Surety Bond, or similar instrument (collectively, the "Surety Agreements"), and the inclusion of any of the Surety Agreements as an Assumed Contract shall not prejudice (I) the rights of the Sureties to object or respond to such proposed assumption and/or assignment of any Surety Agreement issued by the Surety, including, without limitation, the right to object to an involuntary substitution of principal under any Surety Bond or (II) the rights of the Debtors or any other party in-interest's right to challenge any of the foregoing actions (or lack thereof).

[Doc. No. 833 at 30].

17.    Thus, it is not clear to Philadelphia how the Debtors intend to treat the Bonds and the Indemnity Agreement when certain of the Bonded Contracts may be assumed or assumed and assigned, certain of the Bonded Contracts have been assumed and assigned, and still others may be rejected.  The Debtors' process for assumption and rejection (both in the Motion and otherwise) simply ignores the nature of Philadelphia's Bonds and the Indemnity Agreement, and it creates uncertainty to such a degree that it is impractical and raises questions of feasibility relative to the Amended Plan.

18.     Philadelphia reiterates that none of the Bonds may be assumed and assigned to Phoenix without Philadelphia's consent,[4] which it is not currently willing to provide, and providing adequate assurance of future performance to Philadelphia under the Bonds pursuant to section 365 of the Bankruptcy Code, including, without limitation, unimpaired treatment of Philadelphia's existing Collateral, the posting of additional collateral, and/or either an assumption/reaffirmation of the existing Indemnity Agreement or the execution a new indemnity agreement.

19.     For the avoidance of doubt and to ensure an equitable outcome, Philadelphia requests clarifying language in any order approving the Thirty-First Rejection Motion and allowing an extension to the Delayed Contracts Rejection Date to the effect that the Phoenix Sale

---

[4] First, the Debtors cannot assume and assign the Bonds because they do not constitute property of the estate.  *See O'Malley Lumber Co. v. Lockard (In re Lockard)*, 884 F.2d 1171, 1178 (9th Cir. 1989); *Ohio v. Mansfield Tire and Rubber Co. (In re Mansfield Tire and Rubber Co.)*, 660 F.2d 1108, 1115 (6th Cir. 1981); *Globe Constr. Co. v. Okla. City Hous. Auth.*, 571 F.2d 1140, 1143 (10th Cir. 1978), *cert. denied*, 439 U.S. 835 (1978); *In re Buna Painting & Drywall Co.*, 503 F.2d 618, 619 (9th cir. 1974); *McLean Trucking Co. v. Dep't of Indus. Relations (In re McLean Trucking Co.)*, 74 B.R. 820, 826 (Bankr. W.D.N.C. 1987); *Moran v. Johns-Manville Sales Corp.*, 28 B.R. 376, 378 (N.D. Ohio 1983); *Fintel v. Oregon (In re Fintel)*, 10 B.R. 50, 51 (Bankr. D. Or. 1981).  Second, even if the Bonds are property of the estate, they are executory contracts that constitute non-assumable/non-assignable financial accommodations.  *See* 11 U.S.C. § 365(c)(2) (debtors "may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if such contract is a contract to . . . extend . . . financial accommodations, to or for the benefit of the debtor"); *In re United Airlines*, 368 F.3d 720, 723-24 (7th Cir. 2004) ("Although the Bankruptcy Code does not define 'financial accommodation,' it is common ground among the parties that a guaranty or other form of suretyship fits the bill."); *In re Thomas B. Hamilton Co., Inc.*, 969 F.2d 1013, 1018-19 (11th Cir. 1992) (finding guaranty and surety contracts constitute financial accommodations); *In re Edwards Mobile Home Sales, Inc.*, 119 B.R. 857, 858-59 (Bankr. M.D. Fla. 1990) (finding that obligations to pay another's debts constitute financial accommodations); *Wegner Farms Co. v. Merchants Bonding Co. (In re Wegner Farms Co.)*, 49 B.R. 440, 444 (Bankr. N.D. Iowa 1985) (finding surety bonds constitute non-assumable financial accommodations); *In re Adana Mortg. Bankers, Inc.*, 12 B.R. 977, 987 (Bankr. N.D. Ga. 1980) (finding guaranty agreements constitute non-assumable financial accommodations).  Third, the Bonds only assure payment and/or performance of the named principal thereunder for which Philadelphia conducted underwriting, due diligence, and risk assessment of prior to issuing any surety credit.  Forcing Philadelphia to assure a different party's payment and/or performance materially alters the risks under the Bonds without Philadelphia's consent or ability to conduct underwriting, due diligence, and risk assessment.  It is a pillar of surety law that such constitutes an involuntary substitution of principal that discharges Philadelphia's obligations under the Bonds.  Thus, even if the Debtors were to attempt assumption and assignment, such would be ineffective because Philadelphia would be discharged and owe no obligations to Phoenix under to the Bonds.  *See In re Liquidation of Union Indem. Ins. Co.*, 749 N.Y.S.2d 250, 251 (N.Y. App. Div. 2002); *Nat'l Fuel Gas Distribution Corp. v. Hartford Fire Ins. Co.*, 815 N.Y.S.2d 495 (Sup. Ct. 2005), *aff'd as modified*, 814 N.Y.S.2d 436 (2006); RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 37 (1996); SURETY ASPECTS OF BANKRUPTCY LAW AND PRACTICE 147-48 (Chad L. Schexnayder & Michael E. Collins eds., 2021).

Order, especially paragraphs 29 and 30 quoted above, will remain in effective.  Philadelphia has also proposed related language in its contemporaneously filed objection to the Plan.

20.      Philadelphia remains willing and will continue to work with the Debtors, Phoenix, and other parties to resolve the issues discussed above and is hopeful that a consensual resolution may be obtained.

## **RESERVATION OF RIGHTS**

21.      Philadelphia reserves any and all liens, interests, rights, claims, remedies, defenses, and the like it may assert (a) with respect to the Bonds, the Indemnity Agreement, and/or the Collateral or (b) under any applicable bankruptcy or non-bankruptcy law, whether asserted in Philadelphia's personal capacity or in its capacity as equitable subrogee, and Philadelphia additionally reserves the right to amend and/or supplement this Limited Objection.

*[REST OF PAGE INTENTIONALLY LEFT BLANK]*

**WHEREFORE**, Philadelphia requests this Court deny the Thirty-First Rejection Motion and grant such other and further relief the Court deems just and proper.

Respectfully submitted,

_____

Gaston Loomis
McElroy, Deutsch, Mulvaney & Carpenter, LLP
300 Delaware Avenue, Suite 1014
Wilmington, Delaware 19801
T: (302) 300-4510
F: (302) 654-4031
gloomis@mdmc-law.com

and

**MANIER & HEROD, P.C.**

Scott C. Williams (admitted *pro hac vice*)
S. Marc Buchman (admitted *pro hac vice*)
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
T: (615) 244-0030
F: (615) 242-4203
swilliams@manierherod.com
mbuchman@manierherod.com

*Attorneys for Philadelphia Indemnity Insurance Company*

## CERTIFICATE OF SERVICE

**Exhibit 1 – Bonds**

| Bond Number | Principal Name | Obligee | Bond Amount |
|---|---|---|---|
| BDTO-340004-019 | Proterra Inc. | Toronto Transit Commission | $ 3,500,000.00 |
| PB00438200005 | Proterra Inc. | Miami Dade County | $ 4,254,513.34 |
| PB00438200008 | Proterra Inc. | State of Washington | $ 12,000.00 |
| PB00438200013 | Proterra Inc. | City of Visalia | $ 115,878.00 |
| PB00438200019 | Manasaveena Chennuri (as qualifying individual for Proterra Inc. as licensee) | State of California | $ 25,000.00 |
| PB00438200020 | Proterra Inc. | Santa Clara Valley | $ 440,393.00 |
| PB00438200023 | Proterra Operating Company Inc. | Biddeford Saco Old Orchard Beach Transit | $ 238,909.00 |
| PB00438200024 | Proterra Operating Company Inc. | Metropolitan Washington Airports Authority | $ 780,755.00 |
| PB01989700035 | Proterra Inc. | State of California | $ 50,000.00 |
| PB01989700045 | Proterra Inc. | Transportation District Commission of Hampton Roads | $ 506,638.00 |
| PB02182000037 | Proterra Inc. | Chicago Transit Authority | $ 17,399,426.00 |
| PB02182000042 | Proterra Inc. | State of California | $ 25,000.00 |
| PB02182000047 | David Lajoie Nguyen (as qualifying individual for Proterra Inc. as licensee) | State of California | $ 25,000.00 |
| PB02182000050 | Proterra Inc. | Delaware Transit Corporation | $ 1,885,988.00 |

| Bond Number | Principal Name | Obligee | Bond Amount |
|---|---|---|---|
| PB02182000051 | Proterra Inc. | SEPTA | $  1,127,997.00 |
| PB02182000052 | Proterra Inc. | Sacramento Regional Transit District | $     890,403.00 |
| PB12123600089 | Proterra Inc. | BC Transit | $  1,066,056.00 |
| | | Total: | $ 32,343,956.34 |

**<u>Exhibit 2 – Indemnity Agreement</u>**